**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| RALPH S. JANVEY, in his capacity as court-appointed receiver for the Stanford receivership estate; The OFFICIAL STANFORD INVESTORS COMMITTEE; SANDRA DORRELL; SAMUEL TROICE; and MICHOACAN TRUST; individually and on behalf of a class of all others similarly situated, | § § § § § § | |
| Plaintiffs. | § § | |
| vs. | § § | CASE NO. 3:12-cv-04641-L |
| GREENBERG TRAURIG, LLP; HUNTON & WILLIAMS, LLP;  and YOLANDA SUAREZ, | § § § § | |
| Defendants. | § | |

---

**HUNTON & WILLIAMS LLP'S MOTION TO DISMISS CLAIMS ASSERTED BY THE RECEIVER AND OFFICIAL STANFORD INVESTORS COMMITTEE AND SUPPORTING MEMORANDUM OF LAW**

---

Jeffrey D. Colman
David Jiménez-Ekman
April A. Otterberg
Kaija K. Hupila
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654-3456
jcolman@jenner.com
(312) 923-2940
(312) 840-7340 (Facsimile)

*Admitted Pro Hac Vice*

Richard A. Sayles
Shawn Long
SAYLES WERBNER
4400 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270
dsayles@swtriallaw.com
(214) 939-8701
(214) 939-8787 (Facsimile)

*Counsel for Hunton & Williams LLP*

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... iv

INTRODUCTION ................................................................................................. 1

FACTUAL BACKGROUND ................................................................................ 3

 A. The Stanford Enterprise & Ponzi Scheme. ........................................... 3

 B. Allegations Against Greenberg. .............................................................. 4

 C. Allegations Against Hunton. ................................................................... 6

  1. Hunton Was *Not* Securities Counsel And Was Not Involved In CD Sales Or Representations To Or Interactions With Investors. .................... 7

  2. Hunton Provided Standard Legal Services That Did Not Permit Insight Into The Alleged Ponzi Scheme. .................................................... 7

ARGUMENT ........................................................................................................ 9

I. Legal Standards: To State A Claim, The Receiver & OSIC Must Meet Rule 9(b)'s Demanding Requirements Or, At A Minimum, Rule 8's Plausibility Standard. ................ 9

II. The Court Should Dismiss The Entire Complaint Because The Receiver & OSIC Do Not Allege Facts Showing That Hunton Gave Flawed Legal Advice Or Knew About The Purported Ponzi Scheme (All Counts) ..................................................................... 10

 A. The Receiver & OSIC Do Not Allege That Hunton Provided Any Incorrect Or Deficient Legal Services (Counts 1-3). ............................................. 11

 B. The Receiver & OSIC Do Not Allege That Mr. Loumiet Or Other Hunton Attorneys Actually Knew About The Purported Ponzi Scheme (Counts 2, 4, 5, 6, & 7). .................................................................................................. 12

III. The Receiver & OSIC Fail To State A Malpractice Claim (Count 1). ............................ 15

 A. The OSIC Cannot Assert A Malpractice Claim Against Hunton. ........................ 15

 B. The Court Should Dismiss The Malpractice Claim Because The Receiver Merely Recites The Elements Of A Claim And Does Not Allege That Any Hunton Advice Was Wrong Or Caused Any Harm. ............................................... 16

  1. The Receiver Pleads No Facts Suggesting Hunton Breached A Duty To Its Former Stanford Clients. ................................................................. 16

  2. The Receiver Pleads No Facts Suggesting The Stanford Entities—As Opposed To Investors—Experienced Any Harm. .................................... 17

3.      The Receiver Pleads No Facts Suggesting Any Purported Breach By
        Hunton Proximately Caused Harm To The Stanford Entities. ................. 18

        a.      The Receiver Does Not Allege Facts Suggesting Hunton's
                Work Actually Caused Any Injury To The Stanford Entities. ...... 19

        b.      Mr. Stanford's Theft Of Assets Was The Superseding Cause
                Of Any Claimed Harm. ................................................................. 21

IV.   The Court Should Dismiss The Fiduciary Duty Claims (Counts 2 & 3). ........................ 22

      A.    The Court Should Dismiss The Fiduciary Duty Claims (Counts 2 & 3)
            Because They Are Impermissibly Fractured From The Malpractice Claim. ......... 22

      B.    The Court Should Dismiss The Receiver's & OSIC's Claim For Aiding &
            Abetting A Breach Of Fiduciary Duty (Count 2) Because Texas Does Not
            Recognize Aiding & Abetting Liability. ................................................................. 23

      C.    The Receiver & OSIC Do Not Adequately Plead Their Claims Related To
            Breaches Of Fiduciary Duty (Counts 2 & 3). ........................................................ 24

V.    The Fraudulent Transfer And Related Claims Fail (Counts 4, 5, & 6). ........................... 25

      A.    The Receiver & OSIC Do Not State A Fraudulent Transfer Claim (Count 4). ..... 25

      B.    The Receiver & OSIC Do Not State Claims For Unjust Enrichment Or
            Money Had & Received (Counts 5 & 6). ............................................................... 27

VI.   The Court Should Dismiss The Claim For Aiding & Abetting A Fraudulent Transfer
      (Count 7). ........................................................................................................................ 28

      A.    TUFTA Does Not Provide For Fraudulent Transfer Liability Against Non-
            Transferees. ........................................................................................................... 29

      B.    The Receiver & OSIC Do Not Sufficiently Plead Their (Non-Cognizable)
            Aiding And Abetting Claim. .................................................................................. 30

VII.  The Court Should Dismiss The Receiver's & OSIC's Claim For Negligent
      Retention/Supervision (Count 8). .................................................................................... 31

VIII. The Receiver & OSIC Lack Standing To Pursue Counts 1-3 And 7-9. .......................... 32

      A.    The Receiver & OSIC Improperly Seek To Recover Investor Losses. ................. 32

      B.    The Receiver & OSIC Do Not Claim The Receivership Entities Suffered An
            Injury Because They Claim The Entities' Sole Purpose Was To Perpetrate
            The Ponzi Scheme. ................................................................................................ 34

IX.    The Court Should Dismiss The *Respondeat Superior* Claim For The Same Reasons
       The Rest Of The Receiver's & OSIC's Claims Fail (Count 9)........................................ 35

X.     The Court Should Either Join The Antiguan Joint Liquidators To This Case, Or, If
       Joinder Is Not Feasible, Dismiss The Receiver's And OSIC's Claims For Failure To
       Join Required Parties. ................................................................................................ 35

CONCLUSION..................................................................................................................... 36

# TABLE OF AUTHORITIES

**Cases**

*Alpert v. Crain, Caton & James P.C.*, 178 S.W.3d 398 (Tex. App. – Houston [1st Dist.] 2005, pet. denied) ........................................................................................... 16, 24

*Am. Realty Trust, Inc. v. Travelers Cas. & Surety Co. of Am.*, 362 F. Supp. 2d 744 (N.D. Tex. 2005) (Godbey, J.) ............................................................................ 10, 11

*Amacker v. Renaissance Asset Mgmt., LLC*, 657 F.3d 252 (5th Cir. 2011) .......................... passim

*Arisma Grp., LLC v. Trout & Zimmer, Inc.*, No. 3:08-cv-1268, 2009 WL 3573418 (N.D. Tex. Oct. 30, 2009) ............................................................................................. 35

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................. 12

*Barcelo v. Elliott*, 923 S.W.2d 575 (Tex. 1996) .............................................................. 16

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................... 9

*Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57 (2d Cir. 1985) ................. 21, 22

*BMG Direct Mktg., Inc. v. Peake*, 178 S.W.3d 763 (Tex. 2005) ........................................ 27, 28

*Britton v. Seale*, 81 F.3d 602 (5th Cir. 1996) .................................................................... 16

*Brown v. Lippard*, 472 F.3d 384 (5th Cir. 2006) ............................................................. 7

*Cantu v. Horany*, 195 S.W.3d 867 (Tex. App. – Dallas 2006, no pet.) ............................... 19

*Casstevens v. Smith*, 269 S.W.3d 222 (Tex. App. – Texarkana 2008, pet. denied) ............... 13, 28

*City of Dallas v. Hall*, 562 F.3d 712 (5th Cir. 2009) ....................................................... 9, 17

*Congregation of Ezra Sholom v. Blockbuster, Inc.*, 504 F. Supp. 2d 151 (N.D. Tex. 2007) (Godbey, J.) ............................................................................................................ 9

*Connaway v. Vill. Farms, L.P.*, 200 S.W.3d 353 (Tex. App. – Dallas 2006) .................. 18, 19, 21

*Cooper v. Harris*, 329 S.W.3d 898 (Tex. App. – Houston [14th Dist.] 2010, pet. denied) .......... 23

*Dimitric v. Tex. Workforce Comm'n*, No. G-07-247, 2009 WL 674391 (S.D. Tex. Mar. 13, 2009) ........................................................................................... 16, 33

*Edwards v. Mid-Continent Office Distribs., L.P.*, 252 S.W.3d 833 (Tex. App. – Dallas 2008, pet. denied) ........................................................................................................... 27

*Ernst & Young, LLP v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573 (Tex. 2001) ....................... 24

*Fahlenbach v. Trans Pac. Capital*, No. 95 CIV 8776, 1996 WL 22602
(S.D.N.Y. Jan. 19, 1996) ........................................................................... 15

*FDIC v. White*, No. 3:96-cv-0560, 1998 WL 120298 (N.D. Tex. Mar. 5, 1998) ................. 29, 30

*Freeman v. First Union Nat'l Bank*, 865 So.2d 1271 (Fla. 2004) ................................ 29

*G&H Towing Co. v. Magee*, 347 S.W.3d 293 (Tex. 2011) .......................................... 35

*Grant Thornton LLP v. Prospect High Income Fund, ML CBO IV*, 314 S.W.3d 913
(Tex. 2010) .................................................................................... 24

*Greathouse v. McConnell*, 982 S.W.2d 165 (Tex. App. – Houston [1st Dist.] 1998,
pet. denied) ............................................................................. passim

*Harrison v. Proctor & Gamble Co.*, No. 7:06-cv-1210, 2009 WL 304573
(N.D. Tex. Feb. 9, 2009) ...................................................................... 19

*Hayden v. Feldman*, 753 F. Supp. 116 (S.D.N.Y. 1990) ......................................... 15

*Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39 (Tex. 1992) ................. 28

*Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552 (5th Cir. 2002)................... 10

*Hoarel Sign Co. v. Dominion Equity Corp.*, 910 S.W.2d 140 (Tex. App. – Amarillo 1995,
writ denied) .................................................................................. 27

*Hopson v. MetroPCS Commc'ns, Inc.*, No. 3:09-cv-2392-G, 2011 WL 1119727
(N.D. Tex. Mar. 25, 2011) ..................................................................... 12

*IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794
(Tex. 2004) ............................................................................. 18, 19, 20

*In re "Ronfin" Series C Bonds Sec. Interest Litig.*, 182 F.3d 366 (5th Cir. 1999)............. 28

*In re Enron Corp. Secs., Deriv. & ERISA Litig.*, 761 F. Supp. 2d 504 (S.D. Tex. 2011)...... passim

*In re Smith*, Bankr. No. 04-50723, Adv. No. 11-05136, 2012 WL 1123049
(Bankr. W.D. Tex. Apr. 3, 2012) ................................................................ 7

*In re SMTC Mfg. of Tex.*, 421 B.R. 251 (Bankr. W.D. Tex. 2009)............................... 26

*Janvey v. Democratic Senatorial Campaign Comm.*, --- F.3d ---, No. 11-10704,
2013 WL 1104172 (5th Cir. Mar. 18, 2013)....................................................... 33

*Juhl v. Airington*, 936 S.W.2d 640 (Tex. 1996).......................................... 12, 24

*Knauer v. Jonathon Roberts Fin. Grp., Inc.*, 348 F.3d 230 (7th Cir. 2003) .................... 34

*Ledesma v. Dillard Dep't Stores*, 818 F. Supp. 983 (N.D. Tex. 1993)..................................... 10, 28

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .................................................................. 32

*Mack v. Newton*, 737 F.2d 1343 (5th Cir. 1984).................................................................. 29, 30

*Melder v. Morris*, 27 F.3d 1097 (5th Cir. 1994) ................................................................ passim

*Murphy v. Gruber*, 241 S.W.3d 689 (Tex. App. – Dallas 2007, pet. denied)............. 11, 14, 22, 23

*Norris v. Hearst Trust*, 500 F.3d 454 (5th Cir. 2007) ................................................................. 9

*O'Halloran v. First Nat'l Bank of Fla.*, 350 F.3d 1197 (11th Cir. 2003)............................... 34, 35

*Phan Son Van v. Peña*, 990 S.W.2d 751 (Tex. 1999)................................................................. 21

*Pinter v. Dahl*, 486 U.S. 622 (1988) ....................................................................................... 35

*Rangel v. Lapin*, 177 S.W.3d 17 (Tex. App. – Houston [14th Dist.] 2005, pet. denied)............. 19

*Reneker v. Offill*, No. 08-cv-1394, 2009 WL 804134 (N.D. Tex. Mar. 26, 2009) ................ 23, 33

*Rogers v. McDorman*, 521 F.3d 381 (5th Cir. 2008)................................................................ 35

*Schakosky v. Client Servs., Inc.*, 634 F. Supp. 2d 732 (E.D. Tex. 2007)............................... 31, 32

*Sipes v. Petry & Stewart*, 812 S.W.2d 428 (Tex. App. – San Antonio 1991, no writ)................ 19

*Span Enters. v. Wood*, 274 S.W.3d 854 (Tex. App. – Houston [1st Dist.] 2008, no pet.)........... 24

*Spring Serv. Tex, Inc. v. McConnell*, 122 B.R. 41 (Bankr. S.D. Tex. 1989) ............................... 27

*Tabor v. Linder*, No. B14-88-00386, 1989 WL 91507 (Tex. App. – Houston [14th Dist.]
     Aug. 17, 1989, writ denied), *modified* 1989 WL 126996 (Tex. App. – Houston
     [14th Dist.] Oct. 19, 1989) .............................................................................................. 29, 30

*Tamburine v. Center Sav. Ass'n*, 583 S.W.2d 942 (Tex. App. – Tyler 1979, writ ref'd n.r.e.)...... 5

*Triad Contractors, Inc. v. Kelly*, 809 S.W.2d 683 (Tex. App. – Beaumont 1991, writ denied)..... 5

*Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061 (5th Cir. 1994)............................................... 13

*Valls v. Johanson & Fairless, L.L.P.*, 314 S.W.3d 624 (Tex. App. – Houston [14th Dist.]
     2010, no pet.) .................................................................................................................... 17

*Verinakis v. Medical Profiles, Inc.*, 987 S.W.2d 90 (Tex. App. – Houston [14th Dist.] 1999,
     pet. denied)........................................................................................................................ 32

*Wansey v. Hole*, 379 S.W.3d 246 (Tex. 2012).......................................................................... 31

*Warfield v. Byron*, 436 F.3d 551 (5th Cir. 2006) ......................................................................... 26

*Won Pak v. Harris*, 313 S.W.3d 454 (Tex. App. – Dallas 2010, pet. denied) ....................... 22, 23

*Zarzana v. Ashley*, 218 S.W.3d 152 (Tex. App. – Houston [14th Dist.] 2007, no pet.) ......... 31, 32

**Statutes**

TEX. BUS. & COM. CODE ANN. § 24.005 (West 2009) ..................................................... 12, 26, 27

TEX. BUS. & COM. CODE ANN. § 24.006 (West 2009) ..................................................... 12, 26, 27

TEX. BUS. & COM. CODE ANN. § 24.008 (West 2009) .................................................... 29

TEX. BUS. & COM. CODE ANN. § 24.009 (West 2009) ..................................................... 12, 26, 29

TEX. BUS. & COM. CODE ANN. § 24.010 (West 2009) .................................................... 27

**Rules**

FED. R. CIV. P. 8 ............................................................................................................. passim

FED. R. CIV. P. 9(b) ......................................................................................................... passim

FED. R. CIV. P. 12(b)(6) ...................................................................................................... 1

FED. R. CIV. P. 12(b)(7) .................................................................................................... 35

FED. R. CIV. P. 19 .............................................................................................................. 35

Hunton & Williams LLP ("Hunton") moves to dismiss with prejudice the claims brought by Receiver Ralph S. Janvey (the "Receiver") and the Official Stanford Investors Committee (the "OSIC") in the Plaintiffs' Original Complaint – Class Action (the "Complaint") pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6).[1]  Even accepting the Complaint's various factual allegations as true for purposes of this motion, the Receiver and OSIC do not state a claim, and the Court should dismiss their claims with prejudice.

## INTRODUCTION

This suit is a baseless attempt by the Receiver and OSIC to pin the blame on Hunton for the billions in losses caused by the purported Ponzi scheme perpetrated by Allen Stanford and a handful of his closest confidants (the "Ponzi scheme"[2]).  Because full recovery from those actually responsible for the Ponzi scheme is not possible, the Receiver and OSIC are attempting to recover from Hunton—a perceived "deep pocket" whose attorneys were *not* in Mr. Stanford's inner circle, let alone active contributors to his criminal conduct.  Indeed, Hunton lawyers *never* provided—and are not alleged to have provided—*any* advice on the securities law and investor disclosure matters that ultimately brought about the Receivership and the criminal charges against six Stanford insiders, including Allen Stanford himself.

Although the Receiver and OSIC purport to describe Hunton's alleged Stanford-related work at great length in their 164-page Complaint, nowhere do they allege any *facts* suggesting

---

[1] The claims by the putative investor class and its purported representatives (found in Parts VIII, IX, and X of the Complaint) are stayed pending the U.S. Supreme Court's consideration of the application of the Securities Litigation Uniform Standards Act ("SLUSA") in the Stanford-related cases of *Chadbourne & Parke LLP v. Troice*, No. 12-79, *Willis of Colorado, Inc. v. Troice*, No. 12-86, and *Proskauer Rose, LLP v. Troice*, No. 12-88.  (*See* Feb. 15, 2013 Order [Doc. 25].)  Therefore, in this motion to dismiss, Hunton does not address legal claims or factual allegations in the Complaint as they relate to the putative class's claims or those of the three individual plaintiffs who purport to be class representatives.

[2] The Receiver and OSIC assert that Mr. Stanford was engaged in a Ponzi scheme, run through entities he owned or controlled.  (*See, e.g.*, Compl. ¶ 37.)  Accepting the plaintiffs' factual allegations as true for purposes of this motion only, Hunton uses that term for ease of reference only.

that Hunton or its attorneys actually knew about the Ponzi scheme or provided any services that furthered it.  Even read liberally, all the Complaint suggests is that Hunton provided certain legal services to some Stanford entities.  But providing legal services to a client who turns out, unknown to the lawyer, to have been engaged in a fraud is ***not***—by itself—a basis to impose liability.  If it were, that would turn our entire legal system on its head.

Rather, regardless of the legal theory asserted, the Receiver and OSIC must allege and prove one of two essential ingredients to prevail.  They must show either that Hunton actually ***knew*** about and actively assisted the fraud, or that Hunton made a ***mistake***, *i.e.*, committed malpractice, in its legal representation of a Stanford entity.  As demonstrated in Part II below, because the Receiver and OSIC fail to adequately allege either, the Court should dismiss their claims in their entirety and with prejudice.  In addition, the Court should dismiss each of the Receiver's and OSIC's nine claims for the following reasons:

- The Court should dismiss Count 1,[3] the malpractice claim, because the OSIC lacks standing to pursue that claim, and the Receiver does not allege that Hunton gave incorrect legal advice or did anything that caused the Stanford entities any harm (Part III);[4]

- The Court should dismiss Counts 2 and 3, regarding alleged breaches of fiduciary duty, because these claims are improperly fractured from the malpractice claim and, in any event, fail for the same reasons that claim fails (Part IV);

- Count 4, for fraudulent transfer, fails because the Complaint's allegations show that Hunton received any transfers in good faith and in exchange for reasonably equivalent value, and because the Receiver and OSIC plead their claim based on transfers that are time-barred (Part V.A);

---

[3] Regrettably, the Receiver and OSIC do not number the claims they purport to bring against Hunton.  For the Court's convenience, Hunton has designated the Receiver's and OSIC's claims according to numerical counts and attaches a chart identifying each count in Exhibit A in the appendix to this motion.

[4] Hunton appreciates that the Court has motions to dismiss pending from professional defendants in other Stanford-related lawsuits.  Hunton's arguments are specific to the Complaint in this action.  Nevertheless, for the Court's convenience, and because Hunton recognizes that the Court may be presented with similar legal issues in other Stanford-related suits against professionals, Hunton has prepared Exhibit B, included in the appendix to this motion, to direct the Court's attention to the portions of other professional defendants' briefing in Stanford cases that address legal theories similar to those that the Receiver and OSIC assert against Hunton or that raise arguments similar to those Hunton sets forth in this motion.

- The Receiver's and OSIC's claims for unjust enrichment (Count 5) and money had and received (Count 6) fail because the Receiver and OSIC have an adequate remedy at law in the form of their fraudulent transfer claim, and they fail to plead necessary elements of a claim for unjust enrichment (Part V.B);

- The Receiver and OSIC cannot state a claim for aiding and abetting a fraudulent transfer, as they attempt to do in Count 7, because the fraudulent transfer statute does not create liability against an entity, like Hunton, that did not receive the allegedly fraudulent transfers (Part VI);

- The Court should dismiss Count 8, the claim for negligent retention and supervision, because the Receiver and OSIC do not allege that Hunton did anything wrong and fail to allege any actionable underlying conduct by any Hunton attorneys (Part VII);

- The Court should dismiss Counts 1-3 and 7-9 because the Receiver and OSIC lack standing to pursue those claims (Part VIII);

- The Court should dismiss Count 9, the *respondeat superior* claim, because the Receiver and OSIC do not allege any actionable underlying conduct by Hunton attorneys (Part IX); and

- The Court should either join the Antiguan joint liquidators as required parties to this case or, if they cannot be joined, dismiss the Receiver's and OSIC's claims, as set forth more fully in a separate motion filed concurrently with this motion (Part X).

Thus, the Court should dismiss all of the Receiver's and OSIC's claims, with prejudice.

## FACTUAL BACKGROUND[5]

### A.    The Stanford Enterprise & Ponzi Scheme.

According to the Receiver and OSIC, Allen Stanford "built a financial service empire that at its height boasted 30,000 customers in 130 countries managing billions of dollars in investment funds" and "was comprised of over 140 companies across the globe, all of which were ultimately owned by [Mr.] Stanford himself."  (Compl. ¶ 23.)  The Stanford enterprise "gave its clients all the appearances of a highly successful operation," and "[Mr.] Stanford himself made the Forbes list of richest people in the world with a personal fortune estimated at

---

[5] For purposes of this motion, and consistent with the applicable standard of review, Hunton accepts the Complaint's factual allegations as true.  Nevertheless, if this case proceeds past this motion (it should not), Hunton will vigorously dispute and prove utterly false many of the Complaint's allegations and unfair characterizations.

$2.2 billion." (*Id.* ¶ 24.)  But the Receiver and OSIC allege that, contrary to outward

appearances, the Stanford enterprise was a Ponzi scheme "fueled primarily by one product:

Certificates of Deposit ('CDs') issued by" Stanford International Bank, Ltd. ("SIBL").  (*Id.*

¶ 25.)  They contend that Mr. Stanford and his "cronies"[6] stole funds by convincing investors to

purchase CDs through misrepresentations about matters such as the existence of insurance for

SIBL CDs and the high liquidity of SIBL's investment portfolio.  (*Id.* ¶¶ 44, 46-47.)  As the

Receiver and OSIC concede, only six individuals—and certainly no Hunton lawyers—were

indicted in connection with the Ponzi scheme.  (*Id.* ¶ 399.)

     Many of the Complaint's allegations have nothing to do with Hunton.  For example, the

Receiver and OSIC do ***not*** allege that Hunton lawyers had anything to do with (1) SIBL's

"flashy marketing campaign" to attract investors, (2) the methods by which Stanford financial

advisors sold CDs, (3) Stanford employees' purported "reverse engineer[ing]" of reported SIBL

revenues, or (4) any investor disclosures or interactions whatsoever.  (*See id.* ¶¶ 34-36, 40-42,

245-396.)  Nor do the Receiver and OSIC allege that Hunton had anything to do with Mr.

Stanford's alleged "loans" to himself from Stanford entities.  (*See id.* ¶¶ 44, 245-396.)

    **B.**    **Allegations Against Greenberg.**

    Carlos Loumiet was an attorney at Greenberg Traurig LLP ("Greenberg") from 1982 to

2001, when he moved to Hunton.  (*Id.* ¶¶ 49, 245.)  The Receiver and OSIC describe legal

services that Mr. Loumiet performed while at Greenberg until 2001, and that other Greenberg

attorneys performed for certain Stanford entities between 1988 and the initiation of the

Receivership in 2009.  (*See id.* ¶¶ 49-244.)  Nowhere in their allegations against Greenberg,

however, do the Receiver and OSIC allege facts suggesting that Mr. Loumiet ever acquired

---

[6] Nowhere do the Receiver and OSIC allege—nor can they—that Hunton and its attorneys were among
this group or the group of those who purportedly stole investor funds.

knowledge of the Stanford Ponzi scheme during his time at Greenberg, let alone knowingly assisted that scheme.  As a result, there are no well-pled facts to support the Complaint's conclusory claim that Hunton was supposedly "infected" with knowledge of the fraud that Mr. Loumiet purportedly obtained while a lawyer at Greenberg.[7]  (*See id.* ¶ 245.)

Instead, the allegations related to Greenberg describe general legal work that Mr. Loumiet or others provided to certain Stanford entities.  Stripping away the Receiver's and OSIC's innuendo, unsupportable leaps in logic, and bald conclusions, the essence of their allegations for the time that Mr. Loumiet was a lawyer at Greenberg is as follows:

- Stanford clients consulted Mr. Loumiet and other Greenberg attorneys about how to **comply** with the law (*see*, *e.g.*, *id.* ¶¶ 54-55, 58, 88, 90-96);

- Greenberg attorneys drafted or advised upon intercompany agreements between and among certain Stanford entities between approximately 1988 and 1996 (*e.g.*, *id.* ¶¶ 55, 81, 88, 138);

- Greenberg attorneys negotiated and documented certain commercial transactions (*e.g.*, *id.* ¶¶ 66-68, 103-07, 186-88), not all of which were actually consummated (*see*, *e.g.*, *id.* ¶¶ 225-28);

- Mr. Loumiet served on a Stanford advisory board for an unspecified period, although the Receiver and OSIC do not allege that he gave any advice or learned any information or even attended any meetings as a result of his alleged membership on that board (*see*, *e.g.*, *id.* ¶ 89);

- Greenberg attorneys submitted requests for information pursuant to the Freedom of Information Act and, in return, received documents suggesting Mr. Stanford and/or the entities that he owned or controlled may have been under federal investigation at certain times for money laundering (**not** the operation of a Ponzi scheme) (*e.g.*, *id.* ¶¶ 97-100, 134-35), an allegation the Government was "not able to substantiate" in any event (*id.* ¶ 135);

---

[7] Hunton also disagrees with the Receiver's and OSIC's apparent contention that, as a matter of law, knowledge that Mr. Loumiet purportedly obtained at Greenberg would be imputed to Hunton.  *See Triad Contractors, Inc. v. Kelly*, 809 S.W.2d 683, 686 (Tex. App. – Beaumont 1991, writ denied) (refusing to impute knowledge not obtained in the course of the agent's duties for the principal); *Tamburine v. Center Sav. Ass'n*, 583 S.W.2d 942, 949-50 (Tex. App. – Tyler 1979, writ ref'd n.r.e.) (holding that information obtained in the context of a confidential relationship cannot be imputed to a subsequent principal).  In any event, there are no factual allegations that Mr. Loumiet **ever** obtained knowledge of the Ponzi scheme.

- Greenberg attorneys proposed to the Antiguan government revisions to Antiguan laws regarding offshore trust entities (*see id.* ¶¶ 118, 120) and the offshore banking industry that were intended to "address weaknesses" and "establish some credibility" for Antigua's offshore banking sector (*id.* ¶¶ 143-63);

- Mr. Loumiet and other Greenberg attorneys prepared or commented on a handful of draft investment disclosure documents, but the Receiver and OSIC do not allege that Greenberg attorneys were aware of or responsible for any purported misrepresentations in those or any final or other versions of the disclosures, or even ever saw final disclosure documents (*see id.* ¶¶ 139, 209);

- Mr. Loumiet and other Greenberg attorneys negotiated an agreement pursuant to which Florida regulators voluntarily agreed to the establishment of Stanford Fiduciary Investor Services ("SFIS") in 1998 (*id.* ¶¶ 165-85), but neither Mr. Loumiet nor any other Greenberg or Hunton lawyer had any involvement with that office for approximately ten years after it opened (*compare id.* ¶¶ 182-85, *with* ¶¶ 370-86);

- Mr. Loumiet and other Greenberg attorneys received some indication that some Stanford entities were having cash flow problems in 1999 (*id.* ¶¶ 220-24); and

- Mr. Loumiet and other Greenberg attorneys provided certain general advice regarding securities laws (*e.g.*, *id.* ¶¶ 83, 192-99, 208-13).

Despite their attempt to attribute nefarious overtones to any interaction between Mr. Loumiet and Greenberg's Stanford clients, nowhere in their seventy pages of allegations against Greenberg do the Receiver and OSIC point to *facts* suggesting: (1) that Mr. Stanford or his co-conspirators actually told Mr. Loumiet about the Ponzi scheme; (2) that Mr. Loumiet actually knew of the Ponzi scheme; or (3) that Mr. Loumiet knowingly assisted the Ponzi scheme.

## C.    Allegations Against Hunton.

The Receiver's and OSIC's allegations against Hunton are equally glaring for their complete omission of factual assertions that suggest Hunton actually knew about or was complicit in the Ponzi scheme.  The Receiver and OSIC concede that Hunton did not perform any legal work for any Stanford clients until 2001, when Mr. Loumiet joined Hunton.  (*See* Compl. ¶¶ 245-46.)  And their allegations of *fact* concerning Hunton's legal work likewise lack the essential ingredients to state a claim here:  a mistake, or any knowledge of the Ponzi scheme.

1.      **Hunton Was *Not* Securities Counsel And Was Not Involved In CD Sales Or Representations To Or Interactions With Investors.**

The Receiver's and OSIC's allegations do ***not*** suggest even a tenuous connection (let alone a plausible one) between Hunton's Stanford legal work and the purported Ponzi scheme. For example, the Receiver and OSIC do not allege that Hunton attorneys misrepresented facts about CDs or the Stanford enterprise generally to investors, had anything to do with representations or disclosures to investors, or indeed ever interacted with investors. Indeed, the Receiver and OSIC assert in other litigation arising from the purported Ponzi scheme that ***other attorneys*** served as securities counsel for the Stanford enterprise. *See, e.g.*, Plaintiffs' 1st Am. Compl. ¶¶ 99-255, *Janvey v. Proskauer Rose, LLP*, No. 12-cv-0644 (N.D. Tex. Aug. 8, 2012) [Doc. 44]. Moreover, there was ***no*** testimony—none whatsoever—in any of the twelve weeks of Stanford-related criminal trials suggesting any Hunton attorneys (or other attorneys or law firms, for that matter) had any knowledge of the purported Ponzi scheme. *See* Transcript of Jury Trial, *United States v. Stanford*, No. 09-cr-0342-1 (S.D. Tex.); Transcript of Jury Trial, *United States vs. Lopez*, No. 09-cr-0342-3,4 (S.D. Tex.).[8]

2.      **Hunton Provided Standard Legal Services That Did Not Permit Insight Into The Alleged Ponzi Scheme.**

At most, the Receiver and OSIC allege a handful of disparate, standard, and generally unrelated communications and representations each year, including work related to:

- commercial loan documentation (*e.g.*, Compl. ¶¶ 252-57);

- litigation or contemplated litigation to defend Stanford clients' interests (*e.g.*, *id.* ¶¶ 258-76, 319-24, 327-28);

---

[8] On this motion, the Court may take judicial notice of testimony given and allegations made in other Stanford-related proceedings. *See Brown v. Lippard*, 472 F.3d 384, 387 (5th Cir. 2006) (affirming district court's judicial notice of testimony from separate proceeding); *In re Smith*, Bankr. No. 04-50723, Adv. No. 11-05136, 2012 WL 1123049, at *2 (Bankr. W.D. Tex. Apr. 3, 2012) (taking judicial notice of allegations made in a parallel proceeding).

- investments in private equity transactions and other projects (*e.g.*, *id.* ¶¶ 345-64);

- a request from Florida regulators for documents related to SFIS, in response to which SFIS produced documents (*id.* ¶¶ 370-86);

- an analysis of requirements to comply with certain regulatory provisions in the Caribbean (*e.g.*, *id.* ¶¶ 329-34); and

- efforts to minimize Mr. Stanford's personal tax burden (*e.g.*, *id.* ¶¶ 335-44).

But the Receiver and OSIC do not allege any ***facts***—rather than bare conclusions—to show that Hunton knew the Stanford entities were any different from other large businesses that attempt to limit their liability, transact business with third parties, and seek to work within or to minimize the regulations with which they must comply.[9]  (*See id.* ¶¶ 245-397.)  Nor do the Receiver and OSIC allege that Hunton provided ***any*** incorrect or improper advice on these projects.  (*See id.*)

The Receiver and OSIC also allege Hunton was aware of: (1) reports that Mr. Stanford or Stanford entities were under investigation concerning a hospital project in Antigua; and (2) an unidentified report that "the Feds" were investigating Mr. Stanford for unspecified reasons in 2002.  (*Id.* ¶¶ 247-51, 307.)  But the Receiver and OSIC do not allege that Hunton attorneys were involved in those investigations, that those investigations related to suspicions that Stanford was engaging in a Ponzi scheme or fraud, or that those investigations led to any charges, fines, or other adjudications.  (*See id.*)

Further, the Receiver and OSIC allege that Mr. Loumiet considered Mr. Stanford a friend and tried to obtain additional legal business from him.  (*E.g.*, *id.* ¶¶ 284-306, 308-15, 394-96.)  But they also concede he was unsuccessful in that effort.  (*Id.* ¶ 288.)  The Receiver and OSIC

---

[9] Indeed, many of the conclusory connections the Receiver and OSIC try to make simply do not make logical sense.  At one point, the Receiver and OSIC observe that a Hunton attorney noted that Stanford's general counsel, Mauricio Alvarado, told her that a Stanford entity "had never been sued in the United States, and Stanford wanted to keep it that way."  (Compl. ¶ 328.)  The Receiver and OSIC appear to suggest that Hunton therefore should have assumed that Stanford had something to hide, but it is the rare client who ***wants*** to be sued, in the United States or elsewhere.  A client's desire to avoid litigation does not mean a client is engaged in fraud.

note that Mr. Loumiet congratulated Mr. Stanford on his purported successes (*e.g.*, *id.* ¶¶ 285, 292, 297), wrote reference letters on Mr. Stanford's behalf (*e.g.*, *id.* ¶¶ 286, 308-18, 395), and invited or met Mr. Stanford for drinks on a couple of occasions in 2003 and 2006 (*e.g.*, *id.* ¶¶ 289, 297).   Nowhere do the Receiver and OSIC allege, however, facts suggesting that Mr. Loumiet acquired knowledge of the Ponzi scheme as a result of his supposed relationship with Mr. Stanford.   Indeed, a number of their allegations are inconsistent with such a suggestion. (*See, e.g.*, *id.* ¶ 299 (alleging Mr. Loumiet invested in Stanford's Venezuelan bank).)

## ARGUMENT

**I.      Legal Standards: To State A Claim, The Receiver & OSIC Must Meet Rule 9(b)'s Demanding Requirements Or, At A Minimum, Rule 8's Plausibility Standard.**

As this Court knows, a complaint must be dismissed "when a plaintiff fails to allege sufficient facts that, taken as true, state a claim that is ***plausible*** on its face."  *Amacker v. Renaissance Asset Mgmt., LLC*, 657 F.3d 252, 254 (5th Cir. 2011) (emphasis added) (affirming dismissal of aiding and abetting Ponzi scheme claim).  To satisfy Rule 8, a complaint "must include some factual allegations to support the elements of the asserted claim," *Congregation of Ezra Sholom v. Blockbuster, Inc.*, 504 F. Supp. 2d 151, 158 (N.D. Tex. 2007) (Godbey, J.) (dismissing complaint), and those factual allegations "'must be enough to raise a right to relief above the speculative level,'" *Norris v. Hearst Trust*, 500 F.3d 454, 464 (5th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (affirming dismissal).  This means a complaint must contain more than "conclusory allegations or legal conclusions masquerading as factual conclusions."  *City of Dallas v. Hall*, 562 F.3d 712, 717 (5th Cir. 2009) (affirming dismissal).  Moreover, when a complaint "omits facts concerning pivotal elements of the pleaders' claim, the court is justified in assuming the nonexistence of such facts," *Ledesma v.*

*Dillard Dep't Stores*, 818 F. Supp. 983, 984 (N.D. Tex. 1993), and "[d]ismissal is proper," *In re Enron Corp. Secs., Deriv. & ERISA Litig.*, 761 F. Supp. 2d 504, 517 (S.D. Tex. 2011).

But a more demanding pleading burden—Rule 9(b)—applies here because the Receiver and OSIC seek to allege fraudulent conduct by Hunton, and they purport to rely on all of their various allegations to support each of their claims, whether fraud is an element of the claim or not. *See Am. Realty Trust, Inc. v. Travelers Cas. & Surety Co. of Am.*, 362 F. Supp. 2d 744, 751 (N.D. Tex. 2005) (Godbey, J.) (explaining that Rule 9(b) "applies not to claims per se, but to 'averments' of fraud"). Rule 9(b) requires parties alleging fraud or mistake to "state with particularity the circumstances constituting [the] fraud or mistake." FED. R. CIV. P. 9(b). The Fifth Circuit "interprets Rule 9(b) strictly, requiring a plaintiff pleading fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 564-65 (5th Cir. 2002) (affirming dismissal of fraud claims). Rule 9(b) thus requires the Receiver and OSIC to allege answers to "the essentials of the first paragraph of any newspaper story, namely the who, what, when, where, and how." *Melder v. Morris*, 27 F.3d 1097, 1100 n.5 (5th Cir. 1994) (affirming dismissal under Rule 9(b)).

## II.     The Court Should Dismiss The Entire Complaint Because The Receiver & OSIC Do Not Allege Facts Showing That Hunton Gave Flawed Legal Advice Or Knew About The Purported Ponzi Scheme (All Counts).

Although the Receiver and OSIC allege that Greenberg, and then Hunton, provided certain legal services to Stanford entities, and it turned out that those or related entities were engaged in a Ponzi scheme, that is not enough to state a claim. Regardless of the legal theory, an additional ingredient is required, one necessary to separate wrongful conduct from what all lawyers do every day:  either a ***mistake*** by Hunton in its legal representation, or ***knowledge*** by Hunton of the Stanford wrongdoing (plus assistance to it). The Receiver and OSIC do not even

attempt to allege the former, and they offer no facts—let alone the required particularized facts—to properly allege the latter.[10]   The Court should dismiss all of their claims, with prejudice.

### A.     The Receiver & OSIC Do Not Allege That Hunton Provided Any Incorrect Or Deficient Legal Services (Counts 1-3).

Three of the claims asserted by the Receiver and OSIC require them to plead (and ultimately prove) that Hunton gave incorrect legal advice or otherwise made a mistake while providing legal services to certain Stanford entities.  (*See* Compl. ¶¶ 407-13.)  Specifically, Count 1, the negligence claim, as well as the two related breach of fiduciary duty claims (Counts 2 and 3), each purport to be based on Hunton's alleged "failure to exercise ordinary care" by "giving a client bad legal advice or otherwise improperly representing the client."  *See Murphy v. Gruber*, 241 S.W.3d 689, 692-93 (Tex. App. – Dallas 2007, pet. denied).[11]

The Receiver and OSIC allege that Hunton provided legal services to certain Stanford entities, but that is *all* they allege.  Nowhere in their 164-page Complaint do they allege that *any* of that work was flawed, deficient, or different from what lawyers do for any client.  (*See, e.g.*, Compl. ¶¶ 252-55 (commercial loan documentation); *id.* ¶¶ 258-59, 264-76, 319-24, 327-28 (litigation or contemplated litigation); *id.* ¶¶ 345-64 (investments in private equity deals and other opportunities); *id.* ¶¶ 370-86 (responses to regulatory inquiries).)  In fact, the Receiver and OSIC allege a number of incidents in which Hunton's work on a project effectively led nowhere.  (*See, e.g.*, Compl. ¶ 315 (research regarding potential claims that were not pursued); *id.* ¶¶ 348-

---

[10] The Receiver and OSIC also merely "make general allegations that lump all defendants together" and fail to "segregate the alleged wrongdoing of one from another," which is impermissible.  *See In re Enron*, 761 F. Supp. 2d at 570.  They do not identify which of the allegations in their 164-page, 464-paragraph complaint support which claims, and they make only generalized assertions that the "Defendants" all committed various violations on the basis of unspecified factual allegations buried somewhere in the 164-page complaint.  That approach "fails to give [Hunton] fair notice of what the [claims are] and the grounds upon which [they] rest[]."  *Am. Realty Trust, Inc.*, 362 F. Supp. 2d at 748 (dismissing complaint).

[11] Hunton addresses Texas law for purposes of this motion but reserves its ability to argue that a different jurisdiction's law applies to some or all aspects of the Receiver's and OSIC's claims.

50, 364 (business opportunities that were not pursued).)  For example, the Receiver and OSIC allege that Hunton attorneys sued an individual for defamation after he criticized Mr. Stanford's involvement in Antiguan government and politics.  (*Id.* ¶¶ 264-76.)  By their own admission, however, the suit was dismissed voluntarily as part of Mr. Stanford's efforts to improve relations with a new government that came to power in Antigua.  (*Id.* ¶ 276.)

By failing to identify what Hunton supposedly did "wrong" in providing legal services, the Receiver and OSIC fail to plead a plausible claim for relief under Rule 8, let alone satisfy the particularity requirements of Rule 9(b).  *See Amacker*, 657 F.3d at 254; *Melder*, 27 F.3d at 1100 n.5.  Read liberally, all the Receiver and OSIC suggest is an entirely speculative, "sheer possibility that [Hunton] acted unlawfully," which is not sufficient to survive this motion. *Hopson v. MetroPCS Commc'ns, Inc.*, No. 3:09-cv-2392-G, 2011 WL 1119727, at *10 (N.D. Tex. Mar. 25, 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (granting dismissal).

### B.     The Receiver & OSIC Do Not Allege That Mr. Loumiet Or Other Hunton Attorneys Actually Knew About The Purported Ponzi Scheme (Counts 2, 4, 5, 6, & 7).

Count 2 and Counts 4 through 7 are defective because they require allegations that Hunton actually knew of the Ponzi scheme.[12]  The aiding and abetting claims (Counts 2 and 7)— assuming Texas law recognizes such claims, *see* Parts IV.B and VI.A—require allegations that Hunton specifically intended to assist a tortious act and provided knowing and substantial assistance to that act.  *See Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex. 1996).  Similarly, Count 4 (fraudulent transfer) and Count 5 (unjust enrichment) fail if Hunton acted in good faith and without knowledge of the Ponzi scheme, as discussed in Part V.  *See* TEX. BUS. & COM. CODE ANN. §§ 24.005(a)(2), 24.006(a), 24.009(a) (West 2009) (no liability for those who take in good

---

[12] Counts 8 (negligent retention/supervision) and 9 (*respondeat superior*) depend at least in part on the Receiver's and OSIC's other claims and therefore fall with them, as discussed in Parts VII and IX.

faith and in exchange for reasonably equivalent value); *Casstevens v. Smith*, 269 S.W.3d 222, 230 (Tex. App. – Texarkana 2008, pet. denied) (unjust enrichment requires "some connection with the wrongdoing").  Count 6, for money had and received, involves equitable considerations that similarly include Hunton's lack of knowledge.

But the Complaint contains no ***facts*** suggesting any Hunton attorney actually knew about the purported Ponzi scheme, was ever told about it, or agreed to participate in it.  Instead, the essence of the Receiver's and OSIC's claims is that: (1) Hunton represented certain Stanford entities that Mr. Stanford owned or controlled; (2) Mr. Stanford and a handful of his confidants used at least some Stanford entities—not necessarily the ones that Hunton represented—to perpetrate a Ponzi scheme; and (3) therefore, Hunton "must have" known that Mr. Stanford was operating a Ponzi scheme and been complicit in it.  Despite the length of their Complaint, the Receiver and OSIC simply do not allege any ***facts***—as opposed to bare conclusions, at most— that Hunton knew of the purported Ponzi scheme.  Although Rule 9(b) allows a plaintiff to aver scienter "generally," the Receiver's and OSIC's bare allegation of fraudulent knowledge and intent is insufficient.  *See Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994) (affirming dismissal for failure to allege scienter adequately).

For example, the Receiver and OSIC allege that Hunton learned, in the course of its representation, that Mr. Stanford or Stanford entities were being investigated in connection with matters such as a loan to an Antiguan hospital and an unidentified investigation by "the Feds." (*E.g.*, Compl. ¶¶ 247-51, 307.)  Even taking those assertions as true, ***all*** that the Receiver and OSIC allege is that some Hunton attorneys were aware of allegations that Mr. Stanford and certain Stanford entities were investigated for matters that did not relate to suspicions of fraud or a Ponzi scheme.  (*See id.*)  The Receiver and OSIC do ***not*** allege that those investigations led to any charges, convictions, regulatory sanctions, or conclusions suggesting that wrongdoing

13

actually occurred.  (*See id.*)  The mere fact of an investigation does not plausibly suggest Hunton knew that the Stanford entities had actually done anything wrong, let alone that they were in fact engaged in a Ponzi scheme.  Indeed, it would have been unusual for a business of Stanford's apparent size and in the financial sector ***not*** to be investigated for something at some point.  Consequently, "[i]nstead of pleading with particularity, the [Receiver and OSIC] offer only rote conclusions" and unsupported speculative assertions that do not satisfy their pleading obligations.  *See Melder*, 27 F.3d at 1104.

The Receiver and OSIC also appear to suggest that Hunton knew about the purported Ponzi scheme because Mr. Loumiet considered Mr. Stanford a friend and attempted to get more legal business from him.  (*E.g.*, Compl. ¶¶ 284-306, 308-15, 394-96.)  However, they ***never*** allege (because they cannot) that Mr. Stanford or others actually told Mr. Loumiet that they were engaged in a Ponzi scheme, let alone the "when, where, and how" of such communications.  *See Melder*, 27 F.3d at 1100 n.5.  Nor does the mere fact that Hunton was paid for (some of) its work suggest fraudulent intent, and the Receiver and OSIC do not allege (because they cannot) that Mr. Loumiet asked to share in the proceeds of the Ponzi scheme, or that he in any way personally profited from that scheme (which, after all, he did not know about).  *See Melder*, 27 F.3d at 1102 (plaintiffs failed to allege *scienter* when they did not allege that defendants personally profited from fraud); *Murphy*, 241 S.W.3d at 699 (allegation that attorneys were motivated by fees insufficient to establish breach of fiduciary duty).

At most, the Receiver and OSIC appear to suggest that Mr. Loumiet and other Hunton attorneys "must have" known about the scheme based on their mere provision of certain legal services to certain Stanford entities.  (*See, e.g.*, Compl. ¶¶ 245-46, 291-92.)  But this is not enough:  "[t]he existence of the attorney-client relationship in itself is an insufficient factual basis for [alleging] fraudulent knowledge."  *Fahlenbach v. Trans Pac. Capital*, No. 95 CIV

8776, 1996 WL 22602, at *3 (S.D.N.Y. Jan. 19, 1996) (dismissing claims because plaintiff did not sufficiently plead law firm's knowledge of fraud); *accord Hayden v. Feldman*, 753 F. Supp. 116, 120 (S.D.N.Y. 1990) (dismissing complaint after concluding that an attorney's knowledge of a client's fraud cannot be inferred from the attorney's "ongoing relationship" with the client).

*     *     *

For all of these reasons, the Receiver and OSIC do not allege facts that plausibly suggest either that Hunton performed flawed legal services or provided those services with knowledge of the Ponzi scheme.[13]  In the absence of those allegations, the Court should dismiss all of the claims asserted by the Receiver and OSIC, with prejudice.

## III.     The Receiver & OSIC Fail To State A Malpractice Claim (Count 1).

In addition to the general pleading defects demonstrated above in Part II, the Court should dismiss the malpractice claim for two reasons.  *First*, the OSIC cannot state a claim against Hunton because it was never Hunton's client, and any assignment by the Receiver of his malpractice claim is invalid.  *Second*, the Receiver (and thereby the OSIC) does not state a claim because he does not adequately allege all of the elements of a malpractice claim.

### A.     The OSIC Cannot Assert A Malpractice Claim Against Hunton.

To prevail on a malpractice claim, a plaintiff must plead and then prove that: (1) the attorney owed the plaintiff a duty; (2) the attorney breached that duty; (3) the breach proximately caused the plaintiff's injuries; and (4) the plaintiff suffered damages.  *See Greathouse v. McConnell*, 982 S.W.2d 165, 172 (Tex. App. – Houston [1st Dist.] 1998, pet. denied) (affirming summary judgment in favor of attorney on malpractice claim).

The OSIC's malpractice claim against Hunton fails at the first step, as a matter of law,

---

[13] Indeed, the absence of such allegations is all the more striking considering that the Receiver and OSIC drafted their Complaint with the benefit of their presumably extensive review of Hunton's and Greenberg's Stanford-related files.

because Hunton never represented the OSIC or any of its members.  It is well settled under Texas

law that an attorney owes no legal duty to those whom the attorney does not represent.  *Barcelo*

*v. Elliott*, 923 S.W.2d 575, 577 (Tex. 1996) (affirming summary judgment because attorney

owed no duty to non-client).  Consequently, "[a]n attorney in Texas . . . is not liable to non-client

third parties for legal malpractice."  *Alpert v. Crain, Caton & James P.C.*, 178 S.W.3d 398, 405

(Tex. App. – Houston [1st Dist.] 2005, pet. denied) (affirming dismissal of non-client's claims

against attorney).  Indeed, "Texas courts have long held that attorneys are 'qualifiedly immune'

and cannot be held civilly liable for damages to non-clients, under ***any*** theory of recovery, for

actions taken in connection with representing a client."[14]  *Dimitric v. Tex. Workforce Comm'n*,

No. G-07-247, 2009 WL 674391, at *9 (S.D. Tex. Mar. 13, 2009) (emphasis added).

Nor can the OSIC assert a malpractice claim as the purported "assignee of certain claims

owned by the Receiver" (Compl. ¶ 2; *accord* ¶ 420) because "[a]s a matter of Texas law, legal

malpractice claims are non-assignable," *In re J.E. Marion, Inc.*, 199 B.R. 635, 637 (Bankr. S.D.

Tex. 1996); *accord Britton v. Seale*, 81 F.3d 602, 606 (5th Cir. 1996) (affirming dismissal given

bar on assignment of legal malpractice claims).

    **B.**    **The Court Should Dismiss The Malpractice Claim Because The Receiver Merely Recites The Elements Of A Claim And Does Not Allege That Any Hunton Advice Was Wrong Or Caused Any Harm.**

        **1.**    **The Receiver Pleads No Facts Suggesting Hunton Breached A Duty To Its Former Stanford Clients.**

Fundamental to a malpractice claim is negligent legal advice or conduct on the part of the

lawyer.  *Greathouse*, 982 S.W.2d at 172.  The Receiver fails to plead even that basic element.

***First***, the Receiver fails to plead facts identifying the client to whom Hunton owed a

duty.  *See Valls v. Johanson & Fairless, L.L.P.*, 314 S.W.3d 624, 633, 636 (Tex. App. – Houston

---

[14] For this reason, the Court should dismiss ***all*** of the OSIC's tort claims.

[14th Dist.] 2010, no pet.) (affirming summary judgment because "only a client may sue his lawyer for professional negligence").  The Receiver alleges that Hunton owed duties to "SIBL, [Stanford Group Company], [Stanford Trust Company], SFIS and Stanford Financial generally." (Compl. ¶ 407.)  However, he fails to allege *facts* showing Hunton represented each of those entities, or the nature of Hunton's engagement and work for that entity.

*Second*, as demonstrated above in Part II.A, the Receiver does not allege that Hunton provided any incorrect or deficient legal advice or representation generally, or to any particular Stanford entity.  (*See, e.g.*, Compl. ¶ 407 (alleging unspecified "negligent acts").)

*Third*, the Receiver appears to allege that Hunton operated under a conflict of interest and "violated [its] duties to the Stanford entities by subordinating [its] duties to the [Stanford] entities to its loyalty to Allen Stanford personally."  (Compl. ¶ 407.)  But the Receiver does not suggest *how* Hunton purportedly "subordinat[ed]" the interests of one client to another, or *what* Hunton did as a result of the alleged conflict that purportedly harmed the Stanford entities. Therefore, this "legal conclusion[] masquerading as [a] factual conclusion[]" also fails to state a claim.  *See City of Dallas*, 562 F.3d at 717.

### 2.   The Receiver Pleads No Facts Suggesting The Stanford Entities—As Opposed To Investors—Experienced Any Harm.

The Receiver's malpractice claim also fails because he does not actually allege the Stanford entities suffered any harm (caused by Hunton's conduct or otherwise) that is distinct from losses suffered by Stanford investors.[15]

The Receiver and OSIC apparently seek $1.8 billion in damages that they claim Mr. Stanford misappropriated from the Stanford entities.  (Compl. ¶¶ 407, 460.)  However, the Receiver and OSIC specifically allege that this $1.8 billion is actually "SIBL CD funds" (*id.*

---

[15] The Receiver cannot sue for investor losses.  *See* Part VIII.A, below.

¶ 428), and the $7 billion in damages sought by the putative class includes the same $1.8 billion (*id.* ¶¶ 430, 433). The Receiver and OSIC also allege that Mr. Stanford "used the SIBL CDs to lure ***investor*** money into Stanford Financial," so that he could use that money for his own purposes, including issuing himself $1.8 billion in "bogus unsecured personal 'loans.'" (*Id.* ¶ 44 (emphasis added).) Other allegations also assert that the money Mr. Stanford allegedly misappropriated from the Stanford entities was SIBL investor money. (*See, e.g.*, *id.* ¶¶ 66, 106, 242-44.) The Receiver further alleges that the Stanford entities' "sole purpose was to sell the bogus CDs" that "fueled" the alleged Ponzi scheme. (*Id.* ¶¶ 10, 15, 25, 38, 383.) These allegations, even when read in the Receiver's favor, do not plausibly suggest the Stanford entities experienced any harm. To the contrary, the Receiver alleges those entities fulfilled the purpose for which they were created—allowing Mr. Stanford "to steal billions of dollars ***from thousands of investors*** through the fraudulent sale of bogus bank 'CDs.'" (*Id.* ¶ 10 (emphasis added).)

Thus, the Receiver fails to identify damages allegedly incurred by the Stanford entities. Without actual damages, the Receiver cannot state a malpractice claim on behalf of any of the Stanford entities, and the Court should dismiss his claim. *See Greathouse*, 982 S.W.2d at 172.

### 3.   The Receiver Pleads No Facts Suggesting Any Purported Breach By Hunton Proximately Caused Harm To The Stanford Entities.

The Receiver also makes no effort whatsoever to ***connect*** the (unspecified) Stanford entity damages to any supposed breach of duty committed by Hunton. Proximate cause consists of (1) cause in fact and (2) foreseeability. *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004); *Connaway v. Vill. Farms, L.P.*, 200 S.W.3d 353, 356 (Tex. App. – Dallas 2006). The Receiver fails to allege either and therefore fails to state a malpractice claim. *See Greathouse*, 982 S.W.2d at 172.

### a. The Receiver Does Not Allege Facts Suggesting Hunton's Work Actually Caused Any Injury To The Stanford Entities.

The Receiver fails to allege that the particular legal services Hunton provided to certain Stanford entities were a cause in fact of any harm to those entities.  Aside from the rote assertion that Hunton's conduct was the proximate cause of the Stanford entities' damages (*see* Compl. ¶ 407)—which, as noted above in Part III.B.2, are really disguised investor losses that cannot support a malpractice claim—the Receiver fails to "explain[] the legal significance of [Hunton's] alleged failure and the impact this failure had" on any Stanford entity.  *See Cantu v. Horany*, 195 S.W.3d 867, 873-74 (Tex. App. – Dallas 2006, no pet.).

In particular, the Receiver fails to allege any facts suggesting that Hunton's purported legal services constituted "a substantial factor in bringing about the injury, without which the harm would not have occurred."  *See Connaway*, 200 S.W.3d at 356 (affirming summary judgment because plaintiff failed to establish that farmer's maintenance of property created dust cloud that obscured road visibility, leading to a car accident).[16]  In other words, the Receiver was required to plead that, but for Hunton's alleged breach, a Stanford entity would have ***prevailed*** in an underlying litigation or transaction, or otherwise would have enjoyed a benefit it did not receive because of the breach.  *See Cantu*, 195 S.W.3d at 873-74 (affirming summary judgment because clients failed to show they would have prevailed but for alleged malpractice).[17]

---

[16] *Accord IHS Cedars*, 143 S.W.3d at 799,-802 (reversing appellate court and holding that medical professionals' discharge of patients from mental health care facility was not proximate cause of injuries that those patients suffered in a car accident after they were released).

[17] *Accord Harrison v. Proctor & Gamble Co.*, No. 7:06-cv-121, 2009 WL 304573, at *7 (N.D. Tex. Feb. 9, 2009) (granting summary judgment to attorney because plaintiff failed to establish that counterparty would have accepted term that attorney allegedly omitted); *Rangel v. Lapin*, 177 S.W.3d 17, 22-23 (Tex. App. – Houston [14th Dist.] 2005, pet. denied) (affirming summary judgment for attorney because client failed to establish he would have prevailed on underlying case but for the alleged negligence); *Sipes v. Petry & Stewart*, 812 S.W.2d 428, 431 (Tex. App. – San Antonio 1991, no writ) (affirming summary judgment for attorneys where client merely alleged conflict of interest but did not allege the conflict caused him harm).

The Receiver's allegations fall far short of pleading cause in fact.  The Receiver does not allege or even identify how Hunton's unspecified but supposedly deficient legal advice and representation caused *any* harm to any Stanford entity.  *See Greathouse*, 982 S.W.2d at 166, 173 (affirming summary judgment where client did not show he would have prevailed if the attorney had raised omitted affirmative defenses).  Nor does he allege that anything would have turned out differently had Hunton not committed its (unidentified) breach of duty.

Instead, the Receiver points to discrete legal services, apparently in an effort to *imply*— even against logic and common sense—that Hunton "must have" done something wrong, and he does not bother to connect that "something" to harm purportedly experienced by any Stanford entity.  This effort, too, is futile.  For example, the Receiver contends that Mr. Loumiet asked KPMG to audit two of Stanford's Caribbean airlines, and that in the course of those discussions, Mr. Loumiet forwarded to KPMG the financial statements of SIBL, the Bank of Antigua, Stanford Trust Company, Ltd., and Stanford Group Company.  (Compl. ¶ 316.)  If SIBL and other Stanford entities were in fact participants in a Ponzi scheme, KPMG may have been able to uncover that fraud in an audit.  If so, Mr. Loumiet's (failed) attempts to persuade KPMG to conduct that audit could not possibly have harmed the Stanford entities.  Other legal services the Receiver identifies similarly are in no way connected to any purported harm, logically or—the focus here—as a matter of pleading.  (*See, e.g.,* Compl. ¶¶ 264-76 (litigation resolved amicably); *id.* ¶ 315 (researching issues but taking no apparent action based on that research); *id.* ¶¶ 348-50, 364 (mentioning investment opportunities to no avail); *id.* ¶ 378 (production of documents to Florida regulators).

In short, the Receiver cannot plead proximate cause by implication, "mere conjecture, guess, or speculation."  *See IHS Cedars*, 143 S.W.3d at 798-99.  Because that is—at most—all he offers, he does not state a plausible malpractice claim.  *See Amacker*, 657 F.3d at 254.

**b.     Mr. Stanford's Theft Of Assets Was The Superseding Cause Of Any Claimed Harm.**

The Receiver also does not adequately plead the foreseeability aspect of proximate cause. Foreseeability means that "a person of ordinary intelligence should have anticipated the danger created by the negligent act." *Connaway*, 200 S.W.3d at 357.  The Receiver may not plead and prove foreseeability merely by "viewing the facts in retrospect and theorizing an extraordinary sequence of events whereby the defendant's conduct brings about the injury." *See id.*

Here, the Receiver's own allegations directly negate foreseeability.  The Receiver alleges that Mr. Stanford and a handful of his closest confidants used the Stanford entities as pawns in their Ponzi scheme and that, in doing so, they "[stole] billions of dollars in assets from Stanford Financial companies for their own personal benefit."  (Compl. ¶ 44.)  As discussed above in Part III.B.2, such purported losses are not distinct from those suffered by investors, and the Receiver cannot sue to recover investor losses.  But a supposed theft of "assets" from Stanford entities is still insufficient:  according to the Receiver's own allegations, Mr. Stanford's theft from the Stanford entities (really the investors)—***not*** any legal services from Hunton—was the real cause of that alleged harm.  *See Phan Son Van v. Peña*, 990 S.W.2d 751, 754-55 (Tex. 1999) (reversing court of appeals and granting summary judgment to defendant who sold alcohol to minors because it was not foreseeable that the minors would subsequently engage in criminal acts).

The Receiver's own allegations thus demonstrate—as a matter of law—that there is no proximate cause here.  For example, in *Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57, 59 (2d Cir. 1985), the Second Circuit affirmed judgment on the pleadings in favor of a law firm accused of assisting a company in committing fraud by performing run-of-the-mill services that purportedly helped the company to stay afloat.  As in *Bloor*, 754 F.2d at 61-62, the Receiver alleges both that: (1) Hunton provided legal services to an entity that theoretically

21

helped it to stay in business; and (2) corporate insiders subsequently looted that company of funds.  The Receiver therefore does not allege that ***Hunton's*** acts were the cause of harm to the Stanford entities, because a law firm cannot harm an entity by providing services that benefit an entity by helping it to generate or save money, even where those acts purportedly help it to "perpetrate and maintain the Fraud."  *See id.* at 62.  Put simply, "the failure of the [Stanford entities] to use proceeds wisely or the theft of corporate funds by officers was hardly a reasonably foreseeable result, let alone the direct result, of any of [Hunton's] alleged actions." *See id.*  The Court should dismiss the malpractice claim with prejudice.

**IV.    The Court Should Dismiss The Fiduciary Duty Claims (Counts 2 & 3).**

The Receiver and OSIC also assert claims against Hunton for (1) aiding, abetting, or participating in breaches of fiduciary duty (Count 2); and (2) breach of fiduciary duty (Count 3). The Court should dismiss those claims because: (A) they are impermissibly fractured from the Receiver's malpractice claim and therefore fail for that reason and for the same reasons the malpractice claim fails; (B) Texas does not recognize aiding and abetting liability; and (C) the Receiver and OSIC do not adequately plead either fiduciary duty claim.

**A.    The Court Should Dismiss The Fiduciary Duty Claims (Counts 2 & 3) Because They Are Impermissibly Fractured From The Malpractice Claim.**

Counts 2 and 3 are premised on precisely the same conduct as the Receiver's and OSIC's (deficiently pled) malpractice claim.  In taking this approach, the Receiver and OSIC violate the Texas anti-fracturing rule, which prevents plaintiffs "from converting what are actually professional negligence claims against an attorney into other claims."  *Won Pak v. Harris*, 313 S.W.3d 454, 457 (Tex. App. – Dallas 2010, pet. denied) (affirming summary judgment because claims for breach of fiduciary duty and conspiracy to commit fraud were impermissibly fractured from time-barred malpractice claim); *accord Murphy*, 241 S.W.3d at 699 (affirming summary

judgment based on impermissible fracturing of fiduciary duty claim).  Here, the Receiver's and

OSIC's fiduciary duty claims are really negligence claims because, at bottom, they challenge

Hunton's "alleged failure to provide adequate legal representation."  *Won Pak*, 313 S.W.3d at

458; *accord Reneker v. Offill*, No. 08-cv-1394, 2009 WL 804134, at *8-10 (N.D. Tex. Mar. 26,

2009) (dismissing fractured fiduciary duty claim with prejudice).

      For example, in Count 3, the Receiver and OSIC plead that Hunton breached its fiduciary

duty by: (1) "***failing to use reasonable care*** in . . . representing the Stanford Financial

companies;" and (2) "***failing to . . . represent*** Stanford Financial and its constituent companies ***in***

***compliance with all applicable laws and regulations***."  (Compl. ¶ 412 (emphasis added).)  In

other words, the Receiver and OSIC explicitly allege that Hunton breached a fiduciary duty

because its "representation fell below the quality required under the law" and because Hunton

failed to use reasonable care.  *See Murphy*, 241 S.W.3d at 699; *accord Won Pak*, 313 S.W.3d at

458.  That is precisely the nature of a malpractice claim.  *See Won Pak*, 313 S.W.3d at 458.

      The Receiver and OSIC also allege (in conclusory terms) that Hunton committed all three

torts—negligence, breach of fiduciary duty, and aiding and abetting a breach of fiduciary duty—

in exactly the same way.  (*See* Compl. ¶¶ 407 (Count 1), 409 (Count 2), 412 (Count 3).)  This

further demonstrates that their fiduciary duty claims are impermissibly fractured as a matter of

law.  *See Cooper v. Harris*, 329 S.W.3d 898, 900 (Tex. App. – Houston [14th Dist.] 2010, pet.

denied) (reversing jury verdict on contract claim because it was impermissibly fractured from

malpractice claim); *Greathouse*, 982 S.W.2d at 172 (affirming grant of summary judgment

because fiduciary duty claim was impermissibly fractured from deficient malpractice claim).

    **B.**    **The Court Should Dismiss The Receiver's & OSIC's Claim For Aiding &**
              **Abetting A Breach Of Fiduciary Duty (Count 2) Because Texas Does Not**
              **Recognize Aiding & Abetting Liability.**

Independently, the Court should dismiss Count 2 because the Texas Supreme Court has

not recognized aiding and abetting as a viable basis for recovery, and therefore the theory is not "legally cognizable." *See In re Enron*, 761 F. Supp. 2d at 519.   In *Juhl*, the Texas Supreme Court considered whether aiding and abetting, which it called a "concert of action" theory, is recognized in Texas.  936 S.W.2d at 643-45.  The Court noted that it was an "open question" in Texas and declined to resolve the question.  *Id.* at 643.  Since *Juhl*, the Texas Supreme Court has repeatedly declined to address the viability of aiding and abetting liability.  *See, e.g.*, *Grant Thornton LLP v. Prospect High Income Fund, ML CBO IV*, 314 S.W.3d 913, 930 n.28 (Tex. 2010) (declining to address whether Texas recognizes aiding and abetting theory independent of conspiracy); *Ernst & Young, LLP v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 583 n.7 (Tex. 2001) (same).  Therefore, the Court should dismiss this claim.[18]

### C.   The Receiver & OSIC Do Not Adequately Plead Their Claims Related To Breaches Of Fiduciary Duty (Counts 2 & 3).

The Court also should dismiss Counts 2 and 3 because the Receiver and OSIC fail to plead them with the requisite plausibility and particularity under Rules 8 and 9(b).  As to their aiding and abetting claim (Count 2), the Receiver and OSIC allege that Hunton, Greenberg, and Ms. Suarez aided breaches of fiduciary duty by Stanford officers and directors through "their conduct as alleged [in the Complaint]" and by "subordinating their duties to the entities to their loyalty to Allen Stanford personally."  (Compl. ¶ 409.)  Aside from those vague and general assertions, the Receiver and OSIC fail entirely to articulate how Hunton supposedly did anything to aid Stanford directors and officers in their own purported breaches of fiduciary duty.  Instead, they merely "lump all defendants together" and do not even attempt to identify which of the

---

[18] Texas courts have also "refused to expand Texas law to allow a non-client to bring a cause of action for aiding and abetting a breach of fiduciary duty, based upon the rendition of legal advice to an alleged tortfeasor client."  *Span Enters. v. Wood*, 274 S.W.3d 854, 858 (Tex. App. – Houston [1st Dist.] 2008, no pet.); *accord Alpert*, 178 S.W.3d at 407 (affirming dismissal of claim for aiding and abetting breach of fiduciary duty brought by non-client).  As a result, the OSIC may not assert this claim because it does not (and cannot) allege that it was ever Hunton's client, as discussed above in Part III.A.

three defendants purportedly aided which breaches by which directors and officers. *See In re Enron*, 761 F. Supp. 2d at 570 (dismissing complaint that failed to "segregate the alleged wrongdoing of one from another").

As to their breach of fiduciary duty claim (Count 3), the Receiver and OSIC allege that Hunton failed to use reasonable care in representing the Stanford entities, but they do not allege *how* Hunton did so.  (*See* Compl. ¶ 412.)  Similarly, the Receiver and OSIC accuse Hunton of failing to represent the Stanford entities in compliance with applicable regulations and laws (*see id.*), but they do not identify one piece of advice that Hunton gave that was allegedly contrary to law.  This vague and conclusory pleading fails under both Rules 8 and 9(b) because it does not put Hunton on notice as to what it supposedly did wrong, let alone allege that Hunton aided and abetted the purportedly fraudulent Ponzi scheme with the required particularity.  *See Amacker*, 657 F.3d at 254; *Melder*, 27 F.3d at 1100 n.5; *In re Enron*, 761 F. Supp. 2d at 517.

Further, the Receiver's and OSIC's fiduciary duty claims suffer from all of the damages and proximate causation defects that doom their malpractice claim.  (*See* Part III.B.3, above.)

## V.     The Fraudulent Transfer And Related Claims Fail (Counts 4, 5, & 6).

In Counts 4 through 6, the Receiver and OSIC seek to recover $6,852,987.69 in purported "CD Proceeds" that they allege Hunton received between February 16, 2006 and January 9, 2009, apparently as payments for legal services that Hunton provided to the Stanford entities.[19] (*See* Compl. ¶ 418.)  Each claim fails, and the Court should dismiss them with prejudice.

### A.     The Receiver & OSIC Do Not State A Fraudulent Transfer Claim (Count 4).

The Receiver and OSIC do not specify which provision of the Texas Uniform Fraudulent Transfer Act ("TUFTA") they invoke to support their fraudulent transfer claim, alleging only

---

[19] Hunton accepts these allegations as true on this motion, but it vigorously disputes the assertion that it received approximately $6.9 million in legal fees between 2006 and 2009, as the Receiver and OSIC appear to allege.  That number is simply false, as counsel for the Receiver and the OSIC well know.

that the transfers at issue involved "CD Proceeds from the Ponzi scheme." (*See* Compl. ¶¶ 414-21.)  Under any of the potentially relevant TUFTA provisions, the Receiver and OSIC cannot prevail if Hunton received the purportedly fraudulent transfers in exchange for reasonably equivalent value and in good faith.  *See* TEX. BUS. & COM. CODE ANN. §§ 24.005(a)(2), 24.006(a) (West 2009); *id.* § 24.009(a) (providing defense to liability under § 24.005(a)(1)).  Apparently recognizing that problem, the Receiver and OSIC conclusorily allege that Hunton received CD proceeds for which they "did not provide reasonably equivalent value . . . and cannot establish that they are good-faith transferees." (Compl. ¶ 415.)  But there are no *facts*— as the law requires, *see Amacker*, 657 F.3d at 254—to support these conclusions.

Indeed, the only allegations in the Complaint that relate to potential payments to Hunton describe the monies Hunton allegedly received for the legal services that it was providing. (*See, e.g.*, Compl. ¶¶ 246, 263, 288.)  If the Receiver and OSIC are indeed challenging the payment of legal bills, Hunton's provision of legitimate legal services in exchange for whatever fees it earned would constitute reasonably equivalent value.  *See In re SMTC Mfg. of Tex.*, 421 B.R. 251, 309 (Bankr. W.D. Tex. 2009) ("The definition of 'reasonably equivalent value' includes payment for services previously provided.").  And while a broker who advances a Ponzi scheme by selling fraudulent securities likely cannot invoke the reasonably equivalent value defense, *see, e.g.*, *Warfield v. Byron*, 436 F.3d 551, 560 (5th Cir. 2006), as described above in Part C.1 of the Factual Background, the legal services Hunton provided did not relate in any way to the sale of SIBL CDs.  Further, the Receiver and OSIC plead no facts to suggest that Hunton received the purported transfers in other than good faith. (*See* Part II.B.)

Independently, at a minimum, the Court should dismiss the time-barred transfers that the Receiver and OSIC challenge in Exhibit A to their Complaint.  Regardless of the TUFTA provision invoked by the Receiver, TUFTA claims are extinguished if not brought within four

years after the transfer was made.  TEX. BUS. & COM. CODE ANN. § 24.010(a)(2) (West 2009)

(governing claims for transfers under Sections 24.005(a)(2) or 24.006(a)); *id.* § 24.010(a)(1)

(governing claims for transfers under § 24.005(a)(1)).  As a result, the Receiver and OSIC may

not challenge transfers that occurred prior to February 1, 2007 (four years before the Receiver

and OSIC signed a tolling agreement with Hunton (*see* Compl. ¶ 404)).[20]  The Court should

dismiss Count 4 to the extent it is based on transactions preceding that date.

### B.    The Receiver & OSIC Do Not State Claims For Unjust Enrichment Or Money Had & Received (Counts 5 & 6).

In the alternative to their fraudulent transfer claim, the Receiver and OSIC contend they

are entitled to: (1) "disgorgement of the CD Proceeds paid to [Hunton] pursuant to the doctrine

of unjust enrichment under applicable law" (Compl. ¶ 422); and (2) the recovery of funds that

Hunton received pursuant to the doctrine of money had and received (*id.* ¶ 425).  But the

Receiver and OSIC cannot state claims under either theory because unjust enrichment and

money had and received are equitable remedies that are not available when a plaintiff has an

adequate remedy at law.  *See BMG Direct Mktg., Inc. v. Peake*, 178 S.W.3d 763, 770 (Tex.

2005); *Edwards v. Mid-Continent Office Distribs., L.P.*, 252 S.W.3d 833, 837 (Tex. App. –

Dallas 2008, pet. denied).  The Receiver and OSIC have such an available remedy in this case by

virtue of their (deficiently pled) TUFTA claims.[21]

---

[20] The following alleged transfers identified in Exhibit A to the Complaint are therefore time-barred: (1) a $12,193.61 payment from Stanford Financial Group Company ("SFGC") on March 6, 2006; (2) a $12,173.15 payment from SFGC on August 18, 2006; (3) a $109,128.88 payment from SFGC on August 30, 2006; (4) a $9,991.50 payment from SFGC on October 4, 2006; (5) a $8,096.68 payment from Stanford Group Company on February 16, 2006; and (6) a $100,000 payment from Mr. Stanford on August 5, 2004.  (*See* Compl., Ex. A.)

[21] A legal remedy is not rendered unavailable because a party fails to pursue it properly, as the Receiver and OSIC have done here for the reasons discussed above in Part V.A.  *See Spring Serv. Tex., Inc. v. McConnell)*, 122 B.R. 41, 45-46 (Bankr. S.D. Tex. 1989); *Hoarel Sign Co. v. Dominion Equity Corp.*, 910 S.W.2d 140, 143 (Tex. App. – Amarillo 1995, writ denied).  Further, uncertainty as to whether a

The Court should dismiss the unjust enrichment claim for two additional reasons.  *First*, the Receiver and OSIC fail to allege that Hunton obtained the alleged monies "by fraud, duress, or the taking of an undue advantage."  *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992).  For a plaintiff to recover, the unjust enrichment defendant must have "some connection with the wrongdoing."  *Casstevens*, 269 S.W.3d at 230.  Here, however, the Receiver and OSIC "wholly failed to plead facts which would support [that] pivotal element[]," *Ledesma*, 818 F. Supp. at 984, because they do *not* allege that Hunton engaged in any wrongdoing to obtain the alleged payments and, indeed, they claim those payments were compensation for Hunton's legal services (*see* Compl. ¶¶ 422-24).

*Second*, for the same reasons, the voluntary payment defense defeats the unjust enrichment claim.  That defense provides that "[m]oney voluntarily paid on a claim of right, with full knowledge of all the facts, in the absence of fraud, deception, duress, or compulsion, cannot be recovered back merely because the party at the time of payment was ignorant of or mistook the law as to his liability."  *BMG Direct Mktg., Inc.*, 178 S.W.3d at 768.

## VI.   The Court Should Dismiss The Claim For Aiding & Abetting A Fraudulent Transfer (Count 7).

In Count 7, the Receiver and OSIC assert a claim for aiding and abetting fraudulent transfers of "all of the funds transferred from the Stanford Financial entities to third parties." (Compl. ¶ 426.)  The Court should dismiss this claim because: (A) Hunton, as a non-transferee of the disputed assets, cannot be liable for fraudulent transfer under TUFTA; and (B) the Receiver and OSIC fail to satisfy Rules 8 and 9(b).

---

plaintiff will prevail also does not render a legal remedy unavailable.  *See In re "Ronfin" Series C Bonds Sec. Interest Litig.*, 182 F.3d 366, 374 (5th Cir. 1999).

### A.     TUFTA Does Not Provide For Fraudulent Transfer Liability Against Non-Transferees.

The Court should dismiss Count 7 because such a claim is not legally cognizable under TUFTA.[22] Each of the remedies provided under TUFTA targets *only* the recipient of the transferred asset.  *See* TEX. BUS. & COM. CODE ANN. §§ 24.008(a), 24.009(b) (West 2009). Based on the statutory language, courts have held that a party *cannot* be liable for aiding or facilitating a purportedly fraudulent transfer if it did not receive the funds at issue.  *Mack v. Newton*, 737 F.2d 1343, 1361 (5th Cir. 1984); *FDIC v. White*, No. 3:96-cv-0560, 1998 WL 120298, at *2 (N.D. Tex. Mar. 5, 1998); *Tabor v. Linder*, No. B14-88-00386-cv, 1989 WL 91507, at *3 (Tex. App. – Houston [14th Dist.] Aug. 17, 1989, writ denied), *modified* 1989 WL 126996 (Tex. App. – Houston [14th Dist.] Oct. 19, 1989); *accord Freeman v. First Union Nat'l Bank*, 865 So.2d 1272, 1273 n.1 (Fla. 2004) (interpreting Florida's codification of the same act to reject claim for aiding and abetting a fraudulent transfer as not contemplated in the statute).

For example, in *Mack*, 737 F.2d at 1361, the Fifth Circuit held that a trustee could not recover from parties that participated in a purportedly fraudulent transfer but did not receive the proceeds because TUFTA "does not provide for recovery other than recovery of the property transferred or its value form one who is, directly or indirectly, a transferee or recipient thereof." Similarly, in *White*, 1998 WL 120298, at *2, the court held that TUFTA does not "create personal liability on the part of a co-conspirator for fraudulent conveyances to an extent or in an amount beyond property which a co-conspirator actually receives."

Here, the Receiver and OSIC allege that Hunton aided and abetted unspecified fraudulent transfers to *other parties* (Compl. ¶ 426), and they do not allege that Hunton itself received a

---

[22] As discussed in Part IV.B, Texas has not recognized an aiding and abetting theory of liability generally.

portion of the proceeds of those transfers.  This claim does not exist under Texas law.  *See Mack*, 737 F.2d at 1361; *White*, 1998 WL 120298, at *2; *Tabor*, 1989 WL 91507, at *3.

### B.   The Receiver & OSIC Do Not Sufficiently Plead Their (Non-Cognizable) Aiding And Abetting Claim.

Assuming their aiding and abetting claim is cognizable (as we demonstrate in Parts IV.B and VI.A, it is not), the Receiver and OSIC do not plead that claim with the plausibility and particularity required under Rules 8 and 9(b).  Similar to their other claims, the Receiver and OSIC accuse Hunton of aiding and abetting fraudulent transfers but fail to provide any specific allegations as to how Hunton supposedly assisted anyone in accomplishing the disputed transfers.  Their sole allegation on this point is that "[b]y their conduct described herein"— meaning some unspecified allegations in the 164-page complaint—Hunton, Greenberg, and Ms. Suarez "knowingly or recklessly aided, abetted, or participated in these fraudulent transfers to third parties." (Compl. ¶ 427.)  The Receiver and OSIC also conclusorily allege that Hunton knew Stanford entities were "fraudulently transferring assets to third parties," and that Hunton was "aware" of its supposed participation in these fraudulent transfers.  (*Id.*)

However, the Receiver and OSIC do not plead any facts suggesting Hunton possessed such knowledge (*see* Part II.B), nor do the Receiver and OSIC identify any specific fraudulent transfers that Hunton is supposed to have knowingly aided and abetted.  (*See* Compl. ¶¶ 426-27.)  At one point, they merely allege that Hunton and the other defendants purportedly assisted transfers for "***undisclosed investments*** in venture capital companies."  (*Id.* ¶ 426 (emphasis added).)  Moreover, the Receiver and OSIC do not identify which defendant purportedly aided which transfers and based on what knowledge.  (*See id.* ¶ 427.)  The Court should dismiss Count 7 because such vague and generalized group pleading does not satisfy Rules 8 and 9(b).  *See Amacker*, 657 F.3d at 254; *Melder*, 27 F.3d at 1100 n.5; *In re Enron*, 761 F. Supp. 2d at 517.

**VII.    The Court Should Dismiss The Receiver's & OSIC's Claim For Negligent Retention/Supervision (Count 8).**

The Receiver and OSIC assert a claim against Hunton for its negligent retention and supervision of Mr. Loumiet in Count 8, but they misconstrue the purpose and requirements of that cause of action, which is ***not*** an alternate basis for vicarious liability. *Zarzana v. Ashley*, 218 S.W.3d 152, 158 (Tex. App. – Houston [14th Dist.] 2007, no pet.) (affirming summary judgment in favor of employer on negligent retention/supervision claim). A claim for negligent retention or supervision permits direct liability against only an employer who "employs one whom the employer knows, or by the exercise of reasonable care should have known, was incompetent or unfit, thereby creating an unreasonable risk of harm to others." *Schakosky v. Client Servs., Inc.*, 634 F. Supp. 2d 732, 737 (E.D. Tex. 2007) (dismissing negligent retention/supervision claim). Thus, an employer cannot be liable to the extent it was not foreseeable that its employee would engage in wrongdoing, and the "negligence in supervising the employee" also must be the proximate cause of the plaintiff's injuries. *Zarzana*, 218 S.W.3d at 158.

Here, the Receiver and OSIC allege no facts that Hunton should have reasonably foreseen that any of its employees would engage in wrongdoing, or even to support their conclusory assertion that Hunton should have known (1) "that [its] employees had been specifically retained by Stanford Financial and its affiliated entities to help them evade regulation of Stanford's activities," or (2) that the Stanford matter was "inherently high-risk." (Compl. ¶ 428; *see also* Part II.) Nor do the Receiver and OSIC suggest the purported negligent failure to supervise proximately caused damages to a Stanford entity. All of these omissions defeat Count 8.

Independently, the Court should dismiss Count 8 because the Receiver and OSIC have not pled "harmful or negligent conduct" by a Hunton employee that caused them injury. *See Wansey v. Hole*, 379 S.W.3d 246, 247 (Tex. 2012) (entering judgment in favor of employer

based on plaintiff's failure to establish that employee engaged in harmful or negligent conduct causing harm).  The Receiver and OSIC plead nothing more than legal conclusions to suggest that Mr. Loumiet or other Hunton employees actually did anything wrong, *see, e.g.*, *Schakosky*, 634 F. Supp. 2d at 737-38 (dismissing negligent retention claim because plaintiff alleged only legal conclusions, and no facts, in support), and they do not identify any supposed harm to any Stanford entity distinct from alleged investor losses (*see* Part III.B.2).[23]

## VIII.   The Receiver & OSIC Lack Standing To Pursue Counts 1-3 And 7-9.

It is axiomatic that a plaintiff cannot sue unless he has experienced an injury that gives him standing to assert the claim.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  A plaintiff must allege it "suffered an injury in fact" that is "fairly traceable to the challenged action of the defendant" and likely will be "redressed by a favorable decision."  *Id.* at 560-61.

The Receiver and OSIC lack standing to assert their six tort claims (Counts 1, 2, 3, 7, 8, and 9) because they have not pled the required injury.  *First*, the Receiver's and OSIC's allegations demonstrate that they improperly seek to recover for investor losses, rather than purported harm to the Stanford entities on whose behalf they claim to sue.  *Second*, the Stanford entities were *not* harmed because, according to the Receiver and OSIC, the sole purpose of those entities was to perpetuate the alleged Ponzi scheme.

### A.   The Receiver & OSIC Improperly Seek To Recover Investor Losses.

The Receiver and OSIC lack standing to assert their tort claims because they do not allege any harm to the Stanford receivership *entities*—on whose behalf they purport to sue—that is distinct from the alleged harm to Stanford *investors*.  As demonstrated above in Part III.B.2,

---

[23] In addition, there is disagreement under Texas law as to whether a negligent retention or supervision claim is viable in the absence of physical harm to a plaintiff.  *See Zarzana*, 218 S.W.3d at 158 n.3; *Verinakis v. Medical Profiles, Inc.*, 987 S.W.2d 90, 97-98 (Tex. App. – Houston [14th Dist.] 1999, pet. denied).  The Receiver and OSIC certainly plead no physical harms or injuries.

the Receiver and OSIC apparently seek $1.8 billion in damages that they claim Mr. Stanford

misappropriated from the Stanford entities, but their allegations make clear that this amount

really consists of disguised investor losses.  (Compl. ¶¶ 44, 66, 106, 242-44, 428, 430, 433, 460.)

The Receiver and OSIC lack standing to pursue claims for these alleged investor losses

for two reasons.  *First*, the Fifth Circuit has explicitly recognized that the Receiver, as a federal

equity receiver, "has standing to assert *only* the claims of the entities in receivership"—*not* those

of investors or creditors.  *Janvey v. Democratic Senatorial Campaign Comm.*, --- F.3d ---, No.

11-10704, 2013 WL 1104172, at *2 (5th Cir. Mar. 18, 2013) (emphasis added); *accord Reneker*,

2009 WL 804134, at *5 (dismissing claims because receiver was seeking investor losses).

*Second*, the OSIC similarly lacks standing to sue for the purported investor losses at issue

in the OSIC's tort claims.  As this Court is well aware, the OSIC is comprised of (1) a number of

attorneys who represent Stanford investors on a contingency fee basis, (2) a group of Stanford

investors, and (3) the Stanford Examiner.  *See* Agreed Mot. ¶¶ 6, 12, *SEC v. SIBL*, No. 09-cv-

0298 (N.D. Tex. Jan. 10, 2011) [Doc. 1207].  The Receiver and OSIC allege no facts suggesting

that the OSIC *itself* "suffered an injury in fact," and there is no conceivable basis that plaintiffs'

attorneys, who do not purport to have invested in SIBL CDs and are merely prosecuting the

action on a contingency fee basis, could have suffered any injury relevant to this suit.  The

Receiver and OSIC also do not allege the Examiner suffered any relevant injury, and the order

appointing him provides that he has no "enforcement duties."  *See* Order at 2, *SEC v. SIBL*, No.

09-cv-0298 (N.D. Tex. Apr. 20, 2009) [Doc. 322].  And as for the investor-members of the

OSIC, who were never Hunton's clients, they have no basis to sue Hunton for these tort claims.

Among other things, "Texas courts have long held that attorneys are 'qualifiedly immune' and

cannot be held civilly liable for damages to non-clients, under any theory of recovery, for actions

taken in connection with representing a client."  *Dimitric*, 2009 WL 674391, at *9.

33

**B.      The Receiver & OSIC Do Not Claim The Receivership Entities Suffered An Injury Because They Claim The Entities' Sole Purpose Was To Perpetrate The Ponzi Scheme.**

The Receiver and OSIC also lack standing to pursue their tort claims because, as discussed above in Part III.B.2, they allege that the Stanford entities' sole purpose was to perpetuate the Ponzi scheme.  (Compl. ¶¶ 10, 412.)  Where an entity's "primary existence was as a perpetrator of the Ponzi scheme," the entity's receiver (or bankruptcy trustee) lacks standing to pursue alleged damages resulting from the scheme because the entity "cannot be said to have suffered injury from the scheme [it] perpetrated."  *O'Halloran v. First Nat'l Bank of Fla.*, 350 F.3d 1197, 1202-03 (11th Cir. 2003).  For example, in *O'Halloran*, 350 F.3d at 1199-02, the Eleventh Circuit held that a bankruptcy trustee for a church organization that operated as "a classic pyramid scheme" lacked standing to assert claims against a bank for "any damages resulting from the Ponzi scheme itself" because the trustee alleged the church organization was run "for the sole purpose of perpetrating [the] Ponzi scheme."  Similarly, the Seventh Circuit in *Knauer v. Jonathon Roberts Fin. Grp., Inc.*, 348 F.3d 230, 234 (7th Cir. 2003), approved the district court's dismissal of a receiver's securities claims for lack of standing, reasoning that the "Ponzi entities themselves [we]re not injured by the sales of securities" to unsuspecting investors because such "misuse" of the entities results "only in the fattening of the companies' coffers."

This rationale applies here.  The Receiver and OSIC repeatedly allege that the Stanford receivership entities' "sole purpose was to sell the bogus CDs" that "fueled" the alleged Ponzi scheme.  (Compl. ¶¶ 10, 15, 25, 38, 383.)  The Receiver and OSIC allege the receivership entities were sham entities—"feeder" companies (*e.g., id.* ¶¶ 10, 15, 25, 29, 31, 37, 57, 246, 364)—"all of which were ultimately owned," "dominated, [and] controlled" by Mr. Stanford (*e.g., id.* ¶¶ 23, 29, 412).  These allegations, even when read in a light most favorable to the Receiver and OSIC, do not plausibly suggest that the receivership entities were harmed by the

Ponzi scheme.  Thus, the Receiver and OSIC lack standing to pursue their tort claims.[24]  *See*

*O'Halloran*, 350 F.3d at 1202-03.

**IX.     The Court Should Dismiss The *Respondeat Superior* Claim For The Same Reasons The Rest Of The Receiver's & OSIC's Claims Fail (Count 9).**

At the end of the Complaint, in Count 9, the Receiver and OSIC (and apparently the

putative investor class, whose claims are stayed) allege that Hunton is liable under the doctrine

of *respondeat superior* for the allegedly tortious acts of its employee, Mr. Loumiet, from 2001

until the Receivership was initiated in 2009.  (Compl. ¶ 459.)  The Court should dismiss that

claim because the Receiver's and OSIC's other claims fail, for the reasons stated herein.  *See*

*G&H Towing Co. v. Magee*, 347 S.W.3d 293, 295, 298 (Tex. 2011) (holding that employer

"cannot have vicarious liability . . . because its agent did not commit the tort"); *Arisma Grp.,*

*LLC v. Trout & Zimmer, Inc.*, No. 3:08-cv-1268, 2009 WL 3573418, at *8 (N.D. Tex. Oct. 30,

2009) (granting summary judgment to defendant because there could be no *respondeat superior*

liability when the claim on which it was premised failed).

**X.     The Court Should Either Join The Antiguan Joint Liquidators To This Case, Or, If Joinder Is Not Feasible, Dismiss The Receiver's And OSIC's Claims For Failure To Join Required Parties.**

Concurrently with this motion and supporting memorandum, Hunton is also filing a

motion to join to this case the Antiguan joint liquidators, Marcus Wide and Hugh Dickson, as

required parties under Federal Rule of Civil Procedure 19.  As set forth in that memorandum, to

the extent the Court determines that joinder is not feasible, Hunton asks this Court to dismiss the

Receiver's and OSIC's claims pursuant to Rule 12(b)(7), for failure to join required parties.

---

[24] Relatedly, the doctrine of *in pari delicto* also bars the Receiver's and OSIC's claims because they allege that the entities on whose behalf they purport to sue were instrumental to the fraud, and the principal of those entities used them to perpetrate the Ponzi scheme.  (*See* Compl. ¶¶ 10, 23, 25, 29, 31.)  Equity bars entities from recovering for a fraud of which they were allegedly a part.  *See, e.g.*, *Pinter v. Dahl*, 486 U.S. 622, 632 (1988); *Rogers v. McDorman*, 521 F.3d 381, 385 (5th Cir. 2008).

## CONCLUSION

For all of the reasons discussed herein, the Court should dismiss all of the Receiver's and

OSIC's claims with prejudice.

Date:  April 15, 2013                                   Respectfully submitted,

By:  s/ Jeffrey D. Colman
Jeffrey D. Colman
David Jiménez-Ekman
April A. Otterberg
Kaija K. Hupila
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654-3456
jcolman@jenner.com
(312) 923-2940
(312) 840-7340 (Facsimile)

*Counsel for Hunton & Williams LLP*
*Admitted Pro Hac Vice*

Richard A. Sayles
Shawn Long
SAYLES WERBNER
4400 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270
dsayles@swtriallaw.com
(214) 939-8701
(214) 939-8787 (Facsimile)

*Counsel for Hunton & Williams LLP*

## CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2013, I electronically filed the foregoing **Hunton & Williams LLP's Motion to Dismiss Claims Asserted by the Receiver and Official Stanford Investors Committee and Supporting Memorandum of Law** with the clerk of the U.S. District Court, Northern District of Texas, using the electronic case filing (ECF) system of the court.  The ECF system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this notice as service of this document by electronic means. Copies will be sent to those indicated as non-registered participants by U.S. Mail or facsimile at the addresses of their counsel of record or last known residence.

s/ Jeffrey D. Colman
JEFFREY D. COLMAN