# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| RALPH S. JANVEY, in his capacity as court-appointed receiver for the Stanford Receivership estate; The OFFICIAL STANFORD INVESTORS COMMITTEE; SANDRA DORRELL; SAMUEL TROICE; and MICHOACAN TRUST; individually and on behalf of a class of all others similarly situated, | § § § § § § § § § § | |
| Plaintiffs, | § | |
| v. | § § | Civil Action No. 3:12cv4641-N |
| GREENBERG TRAURIG, LLP, HUNTON & WILLIAMS, LLP; and YOLANDA SUAREZ, | § § § § | |
| Defendants. | § § | |
| v. | § § | |
| MARCUS WIDE AND HUGH DICKSON, as Joint Liquidators of Stanford International Bank, Ltd., | § § § § | |
| Third Party Defendants. | § | |

---

## GREENBERG TRAURIG, LLP'S REPLY TO RESPONSE TO MOTION TO DISMISS AND BRIEF IN SUPPORT

---

TABLE OF CONTENTS

PAGE

TABLE OF CONTENTS .................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT AND AUTHORITY ......................................................................................... 2

   I.   The Receiver's arguments and this Court's findings establish
       that the Receiver and OSIC have no viable claims against GT ...................... 2

      A.    The Fifth Circuit's *Janvey* opinion is not binding on GT ....................... 2
      B.    Texas law determines the Receiver's and OSIC's assigned rights........................ 3
      C.    The "adverse interest exception" invoked by the Receiver does not
            apply when the bad actor is the sole owner or when the bad actor
            is the alter ego of the corporation ....................................................... 4

           1.   *Sole ownership is not subject to the adverse interest exception* ........................... 4
           2.   *Alter ego treats Allen Stanford and the entities as one, such*
               *that the Receiver and OSIC are barred by Stanford's illegal conduct*.................. 6

      D.    Antiguan law would bar these claims ...................................................... 8

  II.   Other, specific claims of the Receiver and OSIC should be
       dismissed for independent reasons ............................................................ 9

      A.    Rule 9(b) pleading standards.................................................................. 9
      B.    Legal malpractice claim ...................................................................... 10
      C.    Breach of fiduciary duty claim .............................................................. 10

           1.   *Fracturing of claims is a question of law*............................................. 10
           2.   *The fiduciary duty allegations in the Complaint encompass*
               *negligence standards* ..................................................................... 11
            3.   *The response's references to conflicts and conflicting loyalties*
               *do not change the result* ................................................................ 12
            4.   *The substance of the alleged conflicts fails to demonstrate a claim* .................. 13
            5.   *Conflicted loyalties and future economic interests do not state a claim* ............. 15
            6.   *There is no duty to anticipate crime and no duty to blow*
               *the whistle on a client*................................................................... 17

      D.    Aiding and abetting claims ................................................................... 18
      E.    "Participation in" claims....................................................................... 22

           1.   *Participation in breach of fiduciary duty* ............................................. 22
            2.   *Texas does not recognize claims for knowing "participation in"*
               *a fraudulent transfer or a fraudulent scheme* ..................................... 25

**F.      Claims based upon underlying allegation of violation of
the Investment Company Act or Investment Advisors Act ................................... 26**

**III.   The Court should deny Plaintiffs' request to amend the Complaint ........................ 26**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Apex Oil Co. v. Wickland Oil Co.*,
No. CIV-S-94-1499, 1995 U.S. Dist. LEXIS 6398 (E.D. Ca. Feb. 28, 1995) ........................17

*Arnold v. Garlock, Inc.*,
278 F.3d 426 (5th Cir. Tex. 2001) ...........................................................................................2

*Attorney General of St. Lucia v. Isidore*,
No. 2003/0020 (Ct. App. St. Lucia May 24, 2004) .................................................................8

*In re Banks*,
584 P.2d 284 (Or. 1978) .........................................................................................................17

*Baxter v. Gardere Wynne Sewell LLP*,
182 S.W.3d 460 (Tex. App.—Dallas 2006, pet. denied).......................................................19

*Beck v. Law Offices of Edwin J. Terry*,
284 S.W.3d 416 (Tex. App.—Austin 2009, no pet.) .......................................................12, 16

*Benson & Ford, Inc. v. Wanda Petroleum Co.*,
833 F.2d 1172 (5th Cir. Tex. 1987) .........................................................................................2

*Bernstein v. Portland Sav. & Loan Ass'n*,
850 S.W.2d 694 (Tex. App.—Corpus Christi 1993, writ denied) ............................................1

*Bilouris v Sundance Res., Inc.*,
559 F. Supp. 2d 733 (N.D. Tex. 2008) ...................................................................................21

*Brescia v. Slack & Davis, L.L.P.*,
No. 03-08-00042-CV, 2010 Tex. App. LEXIS 9204 (Tex. App.—Austin
Nov. 19, 2010, pet. denied).....................................................................................................12

*Briggs v. Mississippi*,
331 F.3d 499 (5th Cir. 2003) ..................................................................................................27

*Brown v. Livingston*,
No. 12-50114, 2013 U.S. App. LEXIS 8966 (5th Cir. May 2, 2013).....................................27

*Cenco, Inc. v. Seidman & Seidman*,
686 F.2d 449 (7th Cir. 1982) ...................................................................................................7

*Chu v. Hong*,
249 S.W.3d 441 (Tex. 2008).......................................................................................19, 21, 25

*City of Clinton v. Pilgrim's Pride Corp.*,
632 F.3d 148 (5th Cir. 2010) ..................................................................................................27

*City of Lancaster v. Chambers*,
883 S.W.2d 650 (Tex. 1994) ............................................................................... 24

*City of San Antonio v. Pollock*,
284 S.W.3d 809 (Tex. 2009) ............................................................................... 24

*Cox Tex. Newspapers, LP v. Wootten*,
59 S.W.3d 717 (Tex. App.—Austin 2001, pet denied) ........................................ 20

*In re Crown Vantage, Inc.*,
No. 02-3836, 2003 U.S. Dist. LEXIS 27980 (N.D. Cal. Sept. 25, 2003) ................ 5

*Dallas Indep. Sch. Dist. v. Finlan*,
27 S.W.3d 220 (Tex. App.—Dallas 2000, pet. denied) ......................................... 1

*Darocy v. Abildtrup*,
345 S.W.3d 129 (Tex. App.—Dallas 2011, no pet.) ............................................... 1

*Dehres LLC v. Underwriters at Interest at Lloyds London*,
826 F. Supp. 2d 1338 (S.D. Fla. 2011) ................................................................ 7

*Deutsch v. Hoover, Bax & Slovacek, L.L.P.*,
97 S.W.3d 179 (Tex. App.—Houston [14th Dist.] 2002, no pet.) ......................... 12

*Dontos v. Vendomation NZ Ltd.*,
No. 3:11-CV-0553, 2012 U.S. Dist. LEXIS 122091 (N.D. Tex. Aug. 27, 2012) ........ 20

*Duerr v. Brown*,
262 S.W.3d 63 (Tex. App.—Houston [14th Dist.] 2008, no pet.) ............... 13, 14, 15

*Dunn v. Oil Well Supply Co.*,
8 S.W.2d 285 (Tex. Civ. App.—Dallas 1928, no writ) ........................................... 3

*Dussouy v. Gulf Coast Inv. Corp.*,
660 F.2d 594 (5th Cir. 1981) ............................................................................. 27

*Matter of Educators Group Health Trust v. Wright*,
25 F.3d 1281 (5th Cir. 1994) ......................................................................... 21, 26

*In re Enron Securities, Derivative & ERISA Litigation*,
511 F. Supp. 2d 742 (S.D. Tex. 2005) ................................................................ 20

*Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*,
51 S.W.3d 573 (Tex. 2001) ................................................................................. 19

*Essex Crane Rental Corp. v. Carter*,
371 S.W.3d 366 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) .............. 21, 26

*FDIC v. Ernst & Young*,
967 F.2d 166 (5th Cir. 1992) ............................................................................ 4, 5

*FDIC v. Lott*,
    460 F.2d 82 (5th Cir. 1972) ................................................................................4

*FDIC v. Shrader & York*,
    991 F.2d 216 (5th Cir. 1993) ..........................................................................4, 5

*Fine v. Sovereign Bank*,
    634 F. Supp. 2d 126 (D. Mass. 2008) ..............................................................6

*Floyd v. Hefner*,
    556 F. Supp. 2d 617 (S.D. Tex. 2008) ............................................................20

*Goldstein v. MCI Worldcom*,
    340 F.3d 238 (5th Cir. 2003) ..........................................................................26

*Gonsalves v. Joseph*,
    No. 9 of 2002 (Ct. App. Antigua & Barbuda Feb. 5, 2004) ............................8

*Goodlett v. Paul Revere Life Ins. Co.*,
    No. C97-0089, 2000 U.S. Dist. LEXIS 22532 (N.D. Iowa Jan. 15, 2000) ............17

*In re GPR Holdings, L.L.C.*,
    318 B.R. 384 (Bankr. N.D. Tex. 2004) ............................................................20

*Grant Thornton LLP v. Prospect High Income Fund ML CBO IV, Inc.*,
    314 S.W.3d 913 (Tex. 2010) ..........................................................................19

*Grassmueck v. Am. Shorthorn Ass'n*,
    402 F.3d 833 (8th Cir. 2005) ........................................................................5, 7

*Grayson Consulting, Inc. v. Wachovia Sec., Inc.*,
    716 F.3d 355 (4th Cir. 2013) ............................................................................5

*Grupo v. Garcia*,
    No. 13-98-247-CV, 1999 Tex. App. LEXIS 5845 (Tex. App.—Corpus Christi
    Aug. 5, 1999, pet. denied) ............................................................................24

*Hardy v. Johns-Manville Sales Corp.*,
    681 F.2d 334 (5th Cir. Tex. 1982) ....................................................................2

*Highland Crusader Offshore Partners v. Lifecare Holdings, Inc.*,
    No. 3:08-CV-0102-B, 2008 U.S. Dist. LEXIS 66229 (N.D. Tex. Aug. 27, 2008)............19, 25

*Isaacs v. Schleier*,
    356 S.W.3d 548 (Tex. App.—Texarkana 2011, pet. denied) ................................13

*Janvey v. Alguire*,
    No. 3:10-CV-01002 (N.D. Tex. Jan. 22, 2013) ........................................2, 3, 4, 6

*Janvey v. Dem. Sen. Camp. Comm.*,
    712 F.3d 185 (5th Cir. 2013) ............................................................................2

*Jones v. Wells Fargo Bank, N.A.*,
  666 F.3d 955 (5th Cir. 2012) ........................................................3, 7

*Juhl v. Airington*,
  936 S.W.2d 640 (Tex. 1996)..............................................................19

*Keese v. Continental Pipe Line Co.*,
  235 F.2d 386 (5th Cir. Tex. 1956) ....................................................23

*Kinzbach v. Tool Co. v. Corbett-Wallace Corp.*,
  160 S.W.2d 509 (Tex. 1942)........................................................20, 21

*Kline v. O'Quinn*,
  874 S.W.2d 776 (Tex. App.—Houston [14th Dist.] 1994, writ denied)................20

*Kremer v. Chem. Constr. Corp.*,
  456 U.S. 461 (1982)............................................................................3

*Lucas v. Abbott Labs.*,
  2013 U.S. Dist. LEXIS 83651 (N.D. Tex. June 13, 2013) ....................26

*Meadows v. Hartford Life Ins. Co.*,
  492 F.3d 634 (5th Cir. 2007) ............................................................20

*Mediators, Inc. v. Manney*,
  105 F.3d 822 (2d Cir. 1997)................................................................5

*Murphy v. Culhane*,
  [1976] 3 All ER..................................................................................14

*Murphy v. Gruber*,
  241 S.W.3d 689 (Tex. App.—Dallas 2007, no pet.)......................13, 14

*Nabors v. McColl*,
  No. 05-08-01491-CV, 2010 Tex. App. LEXIS 571 (Tex. App.—Dallas
  Jan. 25, 2010, no pet.) ......................................................................13

*Newby v. Enron Corp.*,
  761 F. Supp. 2d 504 (S.D. Tex. 2011) ..........................................20, 26

*O'Kane v. Coleman*,
  No. 14-06-00657-CV, 2008 Tex. App. LEXIS 4908 (Tex. App.—Houston
  [14th Dist.] July 1, 2008, no pet.) ......................................................19

*Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*,
  267 F.3d 340 (3d Cir. 2001)................................................................5

*Pak v. Harris*,
  313 S.W.3d 454 (Tex. App.—Dallas 2010, pet. denied)........11, 13, 14, 16

*Picard v. JPMorgan Chase Bank & Co.*,
Nos. 11-5044, 11-5051, 11-5175, 11-5207, 2013 U.S. App. LEXIS 12551
(2nd Cir. June 20, 2013) ................................................................................6, 7

*Ramirez v. Ramirez*,
413 B.R. 621 (Bankr. S.D. Tex. 2009) ...............................................................21

*Ex parte Renfro*,
273 S.W. 813 (Tex. 1925)....................................................................................3

*Riverwalk Cy Hotel Partners Ltd. v. Akin Gump Strauss Hauer & Feld, LLP*,
391 S.W.3d 229 (Tex. App.—San Antonio 2012, no pet.)........................11, 14, 16

*Saint Lucia Motor & General Ins. Co. v. Modeste*,
No. HCVAP 2009/008 (Ct. App. St. Lucia Jan. 11, 2010)...................................8, 9

*Scherrer v. Haynes & Boone*,
No. 01-99-01164-CV, 2002 Tex. App. LEXIS 999 (Tex. App.—Houston
[1st Dist.] Feb. 7, 2002, no pet.) ........................................................................22

*In re Schlotzsky's, Inc.*,
351 B.R. 430 (Bankr. W.D. Tex. 2006)...............................................................19

*Seay v. Diversified, Inc.*,
382 S.W.2d 518 (Tex. Civ. App.—Amarillo 1964, writ ref'd n.r.e.) .......................3

*Smith v. Aldridge*,
No. 14-11-00673-CV, 2012 Tex. App. LEXIS 2499 (Tex. App.—Houston
[14th Dist.] Mar. 29, 2012, pet. denied)..........................................................11, 15

*Span Enters. v. Wood*,
274 S.W.3d 854 (Tex. App.—Houston [1st Dist.] 2008, no pet.) .........................19

*In re Stanford International Bank, Ltd.*,
No. 3:09-CV-0298-N (N.D. Tex. Feb. 17, 2009) ...................................................8

*In re Stanford International Bank, Ltd.*,
No. 3:09-CV-0721-N (N.D. Tex. July 30, 2012)..........................................2, 6, 8

*Stone & Rolls Ltd v. Moore Stephens*,
[2009] UKHL 39, [2009] 4 All ER 431 .............................................................8, 9

*Stonecipher v. Butts*,
591 S.W.2d 806 (Tex. 1979).........................................................................21, 26

*Strickland v. Washington*,
466 U.S. 668 (1984)...........................................................................................24

*Teague v. Scott*,
60 F.3d 1167 (5th Cir. Tex. 1995) ......................................................................24

*Terlecky v. Hurd*,
  133 F.3d 377 (6th Cir. 1997) ......................................................................7

*Tigue Inv. Co. v. Chase Bank of Texas, N.A.*,
  No. 3:03-CV-2490, 2004 U.S. Dist. LEXIS 27582 (Nov. 15, 2004)..................9, 10

*Toles v. Toles*,
  113 S.W.3d 899 (Tex. App.—Dallas 2003, no writ) ......................................18, 21

*Vara v. Williams*,
  No. 03-10-00861-CV, 2013 Tex. App. LEXIS 4051 (Tex. App.—Austin
  Mar. 28, 2013, no pet.).............................................................................11

*Wadhwa v. Goldsberry*,
  No. 01-10-00944-CV, 2012 Tex. App. LEXIS 1597 (Tex. App.—Houston
  [1st Dist.] Mar. 1, 2012, no pet.).............................................................11

*Wal-Mart Stores, Inc. v. Sturges*,
  52 S.W.3d 711 (Tex. 2001)........................................................................23

*Watkins v. Plummer*,
  No. 14-08-01040-CV, 2010 Tex. App. LEXIS 4183 (Tex. App.—Houston
  [14th Dist.] June 3, 2010, no pet.)........................................................13, 16

**Statutes and Rules:**

12 U.S.C. § 1821(d)(2)(A) .............................................................................5

FED. R. CIV. P. 9(b) .................................................................................9, 10

FED. R. CIV. P. 12(b)(6)................................................................................27

FED. R. CIV. P. 15(a)(2)................................................................................26

TEX. R. PROF'L CONDUCT 1.06, cmt. 1 ........................................................1

**Other Authorities:**

ABA Formal Opinion 95-390 (Jan. 25, 1995) ...........................................16, 17

RESTATEMENT (SECOND) OF TORTS 876(b)...................................................21

Defendant Greenberg Traurig, LLP (GT) files this reply in further support of GT's partial motion to dismiss, and GT states as follows:

## PRELIMINARY STATEMENT

"Loyalty is an essential element in the lawyer's relationship to a client." TEX. R. PROF'L CONDUCT 1.06, cmt. 1.   GT is shocked that the Receiver and OSIC would find fault with Loumiet's expression of this essential element and from that expression imply knowledge and wrongdoing on GT's part.  Loyalty and knowledge are not the same things.

To prove a secondary claim against GT for aiding and abetting or participation in Stanford's primary wrong, the Receiver and OSIC must establish GT's knowledge of Stanford's wrong. *See e.g., Darocy v. Abildtrup*, 345 S.W.3d 129, 138 (Tex. App.—Dallas 2011, no pet.) (knowledge of primary actor's breach of fiduciary duty required).   The Receiver and OSIC cannot meet that requirement given the government's proof (by a higher standard of proof than in a civil case) that <u>only 6 or 7 insiders knew about Stanford's fraud</u>.

Aside from general representation and legal advice provided to Stanford and his entities during the ordinary course of the attorney-client relationship, the Receiver and OSIC identify no conduct by GT that would create secondary liability. *See Dallas Indep. Sch. Dist. v. Finlan*, 27 S.W.3d 220, 235 (Tex. App.—Dallas 2000, pet. denied).  Even their hyperbolic suggestions of knowledge taken from what GT allegedly "should have known" as a result of innuendo, reputation, and allegations made by third parties is insufficient to make out a case for a lawyer's participation in or aiding and abetting of a client's wrongful conduct. *See Bernstein v. Portland Sav. & Loan Ass'n,* 850 S.W.2d 694, 706 (Tex. App.—Corpus Christi 1993, writ denied).

The Court should grant GT's motion to dismiss.

ARGUMENT AND AUTHORITY

I. **The Receiver's arguments and this Court's findings establish that the Receiver and OSIC have no viable claims against GT.**

In their response, the Receiver and OSIC repeatedly invoke the Fifth Circuit's opinion in *Janvey v. Dem. Sen. Camp. Comm.*, 712 F.3d 185 (5th Cir. 2013), holding that the Stanford Entities were robotic tools under the control of Allen Stanford. [Response at pp.2-3; *see also id*. at pp.55-57, 62-63]. GT agrees. In fact, this Court went one step further and concluded (upon argument and proof from the Receiver) that Allen Stanford "utilized [the corporate structure] to perpetrate his fraud" such that the corporate form must be disregarded and Allen Stanford and his entities must be treated as one. *In re Stanford International Bank, Ltd.*, No. 3:09-CV-0721-N (N.D. Tex. July 30, 2012), p.36; *see also Janvey v. Alguire*, No. 3:10-CV-01002 (N.D. Tex. Jan. 22, 2013), at pp.8-9. Again, GT agrees. And it is because of this Court's alter ego findings and Allen Stanford's sole ownership—neither of which the Fifth Circuit was aware when it wrote *Janvey*—that Allen Stanford's illegal acts are attributed to the Stanford Entities so as to bar the Receiver's and OSIC's claims against GT.

A. **The Fifth Circuit's *Janvey* opinion is not binding on GT**

Decisions entered prior to the time GT was sued (including those entered under another cause number) are not binding on persons that have not had an opportunity to litigate the issues encompassed therein. "The right to a full and fair opportunity to litigate an issue is, of course, protected by the due process clause of the United States Constitution." *Hardy v. Johns-Manville Sales Corp.*, 681 F.2d 334, 338 (5th Cir. Tex. 1982); *see also Arnold v. Garlock, Inc.*, 278 F.3d 426, 443 (5th Cir. Tex. 2001) ("Our adversity toward group resolution sounds in our concern that no one be deprived the right to a full and fair opportunity to litigate their claims."); *Benson & Ford, Inc. v. Wanda Petroleum Co.*, 833 F.2d 1172, 1174 (5th Cir. Tex. 1987). GT cannot be bound by determinations made before GT was even sued. *A          .llen v. McCurry*, 449

U.S. 90, 95 (1980). Further, even when an issue has been litigated, "[r]edetermination of issues is warranted if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation." *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 481 (1982) (quoting *Montana v. United States*, 440 U.S. 147, 164 n.11 (1979)). The Fifth Circuit did not have all the evidence and relevant arguments before it when it wrote *Janvey*. It did not have before it this Court's alter ego findings, nor did it have before it the fact that Allen Stanford was the sole shareholder of the Stanford Entities. And the Fifth Circuit did not have before it any argument or briefing relating to the effect of these facts and findings on any legal rights the Receiver or OSIC might have. Thus, nothing decided in *Janvey* is binding on GT.

> ### B.      Texas law determines the Receiver's and OSIC's assigned rights.

"The rights of a receiver are determined by state law." *Jones v. Wells Fargo Bank, N.A.*, 666 F.3d 955, 966 n.11 (5th Cir. 2012). Under Texas law, "[t]he receiver of a corporation has no right of action where the corporation for which it is acting as receiver had none, and any claim on his part is subject to the same defenses with which it might be met if presented by the corporation." *Dunn v. Oil Well Supply Co.*, 8 S.W.2d 285, 287 (Tex. Civ. App.—Dallas 1928, no writ); *see also Seay v. Diversified, Inc.*, 382 S.W.2d 518 (Tex. Civ. App.—Amarillo 1964, writ ref'd n.r.e.) ("The appointment of a receiver destroys no vested right nor does it determine any right as between the parties by reason of a preexisting contract. Those rights remain enforceable."). The receiver merely stands in the shoes of the party over whose property he has been appointed receiver. *Ex parte Renfro*, 273 S.W. 813, 814 (Tex. 1925). In short, Texas law does not create any special exception to defenses merely because a receiver is the party bringing suit.

Nonetheless, assuming *Janvey* accurately states Texas law, the holding does not apply when the bad actor is the sole owner of the receivership entity, and the exception does not apply when the bad actor is the alter ego of the receivership entity.

### C.    The "adverse interest exception" invoked by the Receiver does not apply when the bad actor is the sole owner or when the bad actor is the alter ego of the corporation.

The rule invoked in *Janvey* (and now by the Receiver) is known as the "adverse interest exception" because it is an exception to the general rule that requires imputing the bad actor's knowledge and conduct to the receivership entities.  However, this exception does not apply when the bad actor/agent is the sole owner of the corporate entity or when the bad actor is the alter ego of the corporate entity.[1]

### 1.    Sole ownership is not subject to the adverse interest exception.

The general rule for imputing an officer's or director's knowledge is set out in *FDIC v. Lott*:

> Generally, an officer's or director's knowledge acquired while acting within the scope of his duties will be imputed to the bank.

460 F.2d 82, 88 (5th Cir. 1972).  In addressing the "adverse interest exception," the Fifth Circuit explains in *FDIC v. Ernst & Young*, 967 F.2d 166 (5th Cir. 1992), that whether an officer's or director's fraud is imputable to the corporation depends upon whether the fraud is on behalf of the corporation or against it. *Id.* at 170-71.  If the officer or shareholder is a sole shareholder, then as a matter of law, he is said to be acting on behalf of the corporation and his knowledge is imputed to the corporation. *Id.* at 171.  The facts in both the *Shrader & York* case and the *Ernst & Young* case show why the Receiver and OSIC cannot benefit from the adverse interest exception.

In *FDIC v. Ernst & Young*, 967 F.2d 166 (5th Cir. 1992), the FDIC brought suit in its capacity as a receiver and asserted that Ernst & Young negligently audited Western Savings Association.  Western engaged in some unsafe and unsound commercial ventures and its sole owner, Jarrett Woods, made false entries in Western's books to deceive the board and

---

[1] Some authorities draw no distinction between these two circumstances.

government regulators. *Id.* at 168.  The court set out the general rule that a bank officer's or director's knowledge is attributed to the bank unless the officer or director acts with an interest adverse to the bank.  Referring to Texas law, the court states that whether fraud is attributable to a corporation depends upon whether the fraud is on behalf of the corporation or against it. *Id.* at 170-71.  Because Woods was the sole owner, by serving himself, Woods was also serving Western.  Therefore, the court held that his knowledge was imputable to Western. *Id.* at 171.  Similarly, by serving himself, Allen Stanford as sole owner was serving the Stanford Entities, making his knowledge imputable to the Stanford Entities.

In *FDIC v. Shrader & York*, 991 F.2d 216 (5th Cir. 1993), the FDIC brought a legal malpractice action against Shrader & York, alleging negligence that contributed to the failure of two savings and loans.  Adams, who was the sole owner and a director of the savings and loan institutions, was part of an elaborate scheme to circumvent banking regulations.  Following its opinion in *Ernst & Young,* the Fifth Circuit held that Adam's knowledge must be imputed to the corporation. *Id.* at 222.  The court rejected the adverse interest exception.[2]  The agent must act adverse to the principal and entirely for his own or another purpose in order to avoid imputation. *Id.*  The court held that Adams could not fall within the adverse interest exception because he was a 100% shareholder of one of the savings and loans.[3] *Id.* at 225.  For the same reasons here, the Receiver and OSIC cannot rely upon the adverse interest exception because Allen Stanford

---

[2] The court also rejected an argument in favor of giving the FDIC special protection because of the fact that the FDIC was suing on behalf of depositors and other creditors. *Id.* at 223.  By statute, the FDIC succeeds to all rights and title held by the financial institution as well as to rights held by depositors. 12 U.S.C. § 1821(d)(2)(A).

[3] The sole owner rule is a well-established rule. *See Mediators, Inc. v. Manney*, 105 F.3d 822, 827 (2d Cir. 1997) ("the adverse interest exception does not apply to cases in which the principal is a corporation and the agent is its sole shareholder."); *Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340, 360 (3d Cir. 2001) (applying sole actor exception); *Grayson Consulting, Inc. v. Wachovia Sec., Inc.*, 716 F.3d 355, 368 (4th Cir. 2013) ("the sole actor rule is a well-established principle of agency law."); *Grassmueck v. Am. Shorthorn Ass'n*, 402 F.3d 833 (8th Cir. 2005) (applying sole actor exception); *In re Crown Vantage, Inc.*, No. 02-3836, 2003 U.S. Dist. LEXIS 27980, *35 (N.D. Cal. Sept. 25, 2003) ("where a sole shareholder is a participant in the wrongdoing, an allegation that independent or Innocent directors could have taken steps to stop the wrongful conduct is insufficient to avoid the bar of in pari delicto.").

was a 100% shareholder and owner of the Stanford Entities. *See In re Stanford International Bank, Ltd.*, No. 3:09-CV-0721-N (N.D. Tex. July 30, 2012), p. 28.

The Fifth Circuit does not discuss or cite either of these opinions in *Janvey*. Further, the parties' briefs in *Janvey* did not address these opinions, the fact that Allen Stanford was 100% owner of each of the Stanford Entities, or the application of the sole owner rule.

### 2.   Alter ego treats Allen Stanford and the entities as one, such that the Receiver and OSIC are barred by Stanford's illegal conduct.

The *Janvey* opinion's conclusion on imputing conduct is suspect for the additional reason that the Fifth Circuit did not have the benefit of this Court's alter ego findings. When the offending director or officer is the alter ego of the corporation, no imputation is required because the entity and bad actor are one in the same.

This Court found the following:

- "Stanford and his affiliates operated as one." *In re Stanford International Bank, Ltd.*, No. 3:09-CV-0721-N (July 30, 2012), p. 27.
- "The Receiver has shown that Stanford operated the entire network of Stanford Entities as an integrated unit in order to perpetrate a massive worldwide fraud." *Id.* at 36.
- Each Stanford Entity either participated in the scheme, derived benefit from the scheme, or lent the appearance of legitimacy to the entirety of Stanford's fraudulent enterprise. *Id.*

Further, this Court held that if these findings are ignored, it "would elevate form over substance" and "legitimiz[e] the corporate structure that Stanford utilized to perpetrate his fraud," thereby "running afoul of Fifth Circuit precedent cautioning courts to look beyond the surface." *Id.*; *see also Janvey v. Alguire*, No. 3:10-CV-01002 (N.D. Tex. Jan. 22, 2013), at pp.8-9 (reaffirming alter ego findings and treating entities as a single entity).

"Where a corporation's agent effectively is himself the corporation -- where the actor and the corporation are alter egos -- even acts that harm the corporation cannot be considered 'adverse.'" *Fine v. Sovereign Bank*, 634 F. Supp. 2d 126, 139 (D. Mass. 2008). Most recently, the Second Circuit applied this principle in the Bernie Madoff litigation. In *Picard v. JPMorgan*

*Chase Bank & Co.*, Nos. 11-5044, 11-5051, 11-5175, 11-5207, 2013 U.S. App. LEXIS 12551, *20-21 (2nd Cir. June 20, 2013), the court held that claims the defendants were complicit in Madoff's fraud and facilitated it by providing financial services while ignoring obvious warning signs, "fall squarely within" the rule barring such claims. The court reasoned that a claim against a third party for defrauding a corporation with cooperation of management accrues to creditors, not to the guilty corporation. *Id.* at *19. The debtor's misconduct is imputed to the trustee because he is acting as the debtor's representative. *Id.* Further, the court held that the adverse interest exception—the same one invoked by the Receiver—is itself subject to an exception when the principal and agent are one and the same. *Id.* at *22 n.14. Other jurisdictions have reached similar conclusions when the corporate form has been used as a fiction. *See, e.g., Grassmueck v. Am. Shorthorn Ass'n,* 402 F.3d 833, 838 (8th Cir. 2005) ("Where the principal and agent are alter egos, there is no reason to apply an adverse interest exception"); *Terlecky v. Hurd*, 133 F.3d 377 (6th Cir. 1997) (applying *in pari delicto* to bankruptcy trustee because officers and directors so dominated corporation that they were alter egos); *Cenco, Inc. v. Seidman & Seidman*, 686 F.2d 449, 454-55 (7th Cir. 1982) (corporation described as "engine of theft" used by corporate agent); *Dehres LLC v. Underwriters at Interest at Lloyds London*, 826 F. Supp. 2d 1338, 1348-49 (S.D. Fla. 2011) (owner of corporation and corporation were one and the same such that his actions were imputed to corporation).

The Receiver has cited and relied upon *Jones v. Wells Fargo Bank*, 666 F.3d 955 (5th Cir. 2012), as the law in this circuit. Key to *Jones*'s treatment of the *in pari delicto* defense is that it expressly rests upon recognition that a corporation and its agents are distinct. *Id.* at 966 ("[t]o conclude that W Financial [the corporation] stands *in pari delicto* simply because Wahab [the corporate agent] is a wrongdoer ignores the fundamental distinction between a corporation and its officers."). By contrast, this Court's findings (upon argument and proof of the Receiver) require disregard of the corporate fiction so that there is no difference between the Stanford

Entities and Allen Stanford.[4]   This Court concluded that the corporate structures should not be legitimized. *In re Stanford International Bank, Ltd.*, No. 3:09-CV-0721-N (N.D. Tex. July 30, 2012), p. 27.

###### D.   Antiguan law would bar these claims.

Finally, to the extent the Receiver maintains that Texas law contains some exception to application of *in pari delicto* to the Receiver's claims, then Texas law differs from the law of Antigua, thereby establishing a conflict of laws that must be resolved.  Antiguan courts refer to the illegal acts doctrine or *in pari delicto* doctrine primarily as the doctrine of "ex turpi causa," which is short for *ex turpi causa non oritur actio* and roughly means "a base case was not enforced." *See, e.g., Gonsalves v. Joseph*, No. 9 of 2002, Slip. Op. at 7 (Ct. App. Antigua & Barbuda Feb. 5, 2004) (quoting *Murphy v. Culhane*, [1976] 3 All ER).  This principle is a part of the English Common Law and it "applies to all causes of action including claims in tort." *Saint Lucia Motor & General Ins. Co. v. Modeste*, No. HCVAP 2009/008, slip op. at 9 (Ct. App. St. Lucia Jan. 11, 2010); *see also Attorney General of St. Lucia v. Isidore*, No. 2003/0020 (Ct. App. St. Lucia May 24, 2004) ("ex turpi causa is a part of the common law of tort (delict)").  And Antigua follows the English Common Law.  Thus, while GT could find no opinion from the Antiguan courts that specifically apply this principle to a receiver or liquidator, the English Common Law applies *ex turpi causa* to receivers and liquidators without exception.

In *Stone & Rolls Ltd v. Moore Stephens*, [2009] UKHL 39, [2009] 4 All ER 431, Stojevic was the sole owner of Stone and Rolls Ltd (S&R), and Stojevic essentially ran a Ponzi scheme.  Stojevic used a series of letters of credit issued by banks who thought they were financing commodity trades.  After S&R was declared insolvent a liquidator was appointed and he brought professional liability claims against Moore Stephens, the auditors S&R had hired for

---

[4] Further, lest it be forgotten, the Receiver was appointed to represent not only the entities, but also Allen Stanford individually. *In re Stanford International Bank, Ltd.*, No. 3:09-CV-0298-N (N.D. Tex. Feb. 17, 2009), p.1.  The Receiver made no distinction as to whether this action is brought on behalf of any particular entity or individual in the receivership.

the very purpose of detecting fraud within the company.  A majority of the House of Lords (the United Kingdom's highest civil court) concluded that even though the liquidator was suing on behalf of an insolvent company for the benefit of innocent third-party banks, the liquidator was precluded in his claim by the doctrine of *ex turpi causa*.  In order to make his claim, the liquidator would have to prove S&R's own primary involvement in the fraud scheme.  The majority expressly concluded that it would make no difference whether a recovery from Moore Stephens went to pay back the sole fraudulent shareholder or a company's innocent shareholders.  Notably, *Stone & Rolls* has been cited approvingly by the appellate courts of the Caribbean Islands. *See Saint Lucia Motor & Gen. Ins. Co. v. Modeste*, No. HCVAP 2009/008 (Ct. App. St. Lucia Jan. 11, 2010).  Because the alleged fraud of Allen Stanford and the findings that he used the fiction of the entities to perpetrate his fraud, the Receiver cannot avoid imputation of Stanford's knowledge and conduct to the Stanford Entities.

## II.     Other, specific claims of the Receiver and OSIC should be dismissed for independent reasons.

### A.     Rule 9(b) pleading standards

While it is true that this Court has held that Rule 9(b)'s particularity requirement does not extend to claims for which fraud is not an element, the Court has also held that "[e]xceptions arise when fraudulent conduct is alleged to underlie a claim for which fraud is a possible—but not a necessary—element." *Tigue Inv. Co. v. Chase Bank of Texas, N.A.*, No. 3:03-CV-2490, 2004 U.S. Dist. LEXIS 27582, *7 (Nov. 15, 2004).  In those instances, particularity is required to the extent that a plaintiff in fact alleges fraud. *Id.* at *7-8.

Here, the Receiver and OSIC take conflicting positions.  On one hand, they contend that they have not pled that any of the defendants knew that Stanford was running a Ponzi scheme, [Response at p.4], but then on the other hand, they have not withdrawn the allegation that the Ponzi scheme was fraud [Complaint, ¶401], and they expressly invoke Stanford's fraud in their response to the motion to dismiss when describing the basis of their claims against the

Defendants. [*See* Response at p.67 (Plaintiffs specifically allege that the Law Firms were the architects of the regulatory evasion structure that allowed Stanford to grow his fraudulent empire to the extent he did…"). Like the plaintiff in *Tigue*, the Receiver and OSIC specifically disclaim any fraud as a basis to support their negligence and breach of fiduciary duty claims. [Response at p.7]. Accordingly, the Receiver and OSIC have limited these claims to non-fraudulent conduct. *Tigue*, 2004 U.S. Dist. LEXIS 27582, at *11 & n.4. But the Receiver and OSIC do not purport to limit other claims, such as fraudulent transfer/unjust enrichment, and aiding and abetting fraudulent transfers, and "participation in" claims to exclude fraud. Accordingly, Rule 9(b) applies.

### B.      Legal malpractice claim

The Receiver represents that he "has brought the negligence/malpractice claims in his own name, and has not assigned that claim to the Committee." [Response at p.9 n.9]. This argument conflicts with Section VII of the Complaint, which is labelled "Receiver and Investor Committee Claims" and the negligence/malpractice claims fall under that heading. [Complaint at pp. 140-43]. Additionally, the Complaint expressly alleges damages caused to the Receiver and/or OSIC stemming from the alleged of breach of fiduciary duty. [Complaint at p. 143]. Accordingly, because OSIC has *pleaded* claims that the Receiver says it has not assigned, the Court should dismiss those unassigned, but asserted claims of OSIC.[5]

### C.      Breach of fiduciary duty claim

### 1.      Fracturing of claims is a question of law.

GT's challenge to the breach of fiduciary duty claim raises a question of law. "Whether allegations against a lawyer, labeled as breach of fiduciary duty, fraud, or some other cause of action, are actually claims for professional negligence or something else is a question of law to

---

[5] Dismissal of this claim would have no impact upon the investors' claims, which already encompass 100% of the damages alleged from Stanford's fraud.

be determined by the court." *Riverwalk Cy Hotel Partners Ltd. v. Akin Gump Strauss Hauer & Feld, LLP*, 391 S.W.3d 229, 236 (Tex. App.—San Antonio 2012, no pet.); *see also Pak v. Harris*, 313 S.W.3d 454, 457 (Tex. App.—Dallas 2010, pet. denied).

### 2.     The fiduciary duty allegations in the Complaint encompass negligence standards.

The breach of fiduciary duty allegations in the Complaint show an effort to recast an ordinary negligence claim as a breach of fiduciary duty.  When the gist of the client's complaint is that the attorney failed to exercise the degree of care, skill, or diligence that attorneys of ordinary skill and knowledge commonly possess, then the claim is based on negligence. *Riverwalk Cy Hotel Partners*, 391 S.W.3d at 236.  GT is accused of "failing to use reasonable care," failing to represent Stanford Financial in a "reasonably prudent manner," and failing to represent Stanford Financial and its constituent companies "in compliance with all laws and regulations." [Complaint at ¶ 412].  There is no complaint of personal gain.  There is no alleged conflict of interest[6] as the basis of the breach-of-fiduciary claim.

The allegations in the Complaint are nothing more than a restatement of a negligence claim and should be dismissed. *See, e.g.*:

- Gist of allegations were that attorney did not competently fulfill her duties. *Vara v. Williams*, No. 03-10-00861-CV, 2013 Tex. App. LEXIS 4051, *11 (Tex. App.—Austin Mar. 28, 2013, no pet.)

- Gist of allegations involved giving bad legal advice or otherwise improperly representing the client. *Riverwalk Cy Hotel Partners*, 391 S.W.3d at 239

- Allegations generally assailed the representation of the client. *Smith v. Aldridge*, No. 14-11-00673-CV, 2012 Tex. App. LEXIS 2499, *15 (Tex. App.—Houston [14th Dist.] Mar. 29, 2012, pet. denied)

- Claims essentially complained about adequacy of legal representation. *Wadhwa v. Goldsberry*, No. 01-10-00944-CV, 2012 Tex. App. LEXIS 1597, *16 (Tex. App.—Houston [1st Dist.] Mar. 1, 2012, no pet.)

- Gist or essence of allegations was that attorneys did not exercise degree of care, skill, or diligence that attorneys of ordinary skill and knowledge commonly

---

[6] Instead, Plaintiffs allege subordination of loyalties. [Complaint at ¶ 412].

possess. *Brescia v. Slack & Davis, L.L.P.*, No. 03-08-00042-CV, 2010 Tex. App. LEXIS 9204, *36 (Tex. App.—Austin Nov. 19, 2010, pet. denied)

The Receiver argues that Texas law allows a plaintiff to allege and prove the same underlying facts to support both a breach of fiduciary duty claim and a negligence claim and in those circumstances the jury should be charged on both claims. [Response at p.31].   The Receiver's argument completely disregards the authorities cited by GT, which hold otherwise. Further, the Receiver's own cited authority shows that breach of fiduciary claims that are properly classified as negligence claims may not be brought as breach of fiduciary duty claims.

In *Deutsch v. Hoover, Bax & Slovacek, L.L.P.*, 97 S.W.3d 179, 190 (Tex. App.—Houston [14th Dist.] 2002, no pet.), the court held that the trial court properly directed a verdict as to 11 of the alleged breach-of-fiduciary-duty claims because those claims were nothing more than repackaged professional malpractice claims.   However, the court held that the trial court should not have directed a verdict against three other allegations of breaches of fiduciary duty because these claims were appropriately classified as breach-of-fiduciary-duty claims. *Id.* at 191.

In *Beck v. Law Offices of Edwin J. Terry,* 284 S.W.3d 416, 435-36, 438-39 (Tex. App.—Austin 2009, no pet.), the court of appeals affirmed a summary judgment under the fracturing rule that simultaneously asserted professional negligence and breach of fiduciary duty claims predicated on the same common and overlapping facts, including a complaint that the lawyers failed to disclose conflicts of interest.

### 3.      The response's references to conflicts and conflicting loyalties do not change the result.

The Receiver recognizes that allegations of conflicts of interest and self-dealing may (with the right facts) raise a claim to the level of a breach of fiduciary duty claim. [Response at p.32].   To that end, the response attempts to recast and supplement the allegations in the Complaint in hopes of demonstrating a proper breach of fiduciary duty claim.   Even the recast and supplemented allegations fall short.   Merely adding a conclusory allegation of conflict of

interest to a complaint does not transform a negligence claim into one for breach of fiduciary duty. *Isaacs v. Schleier*, 356 S.W.3d 548, 559 (Tex. App.—Texarkana 2011, pet. denied); *see Duerr v. Brown*, 262 S.W.3d 63, 70 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (must do more than reassert claims under another label).

### 4.   The substance of the alleged conflicts fails to demonstrate a claim.

The response alleges the existence of "egregious conflicts of interest" as a basis for a breach of fiduciary duty claim. [Response at p.34].   Although Texas appellate courts have reached different results in cases involving alleged conflicts of interest, *Murphy v. Gruber*, 241 S.W.3d 689, 695 (Tex. App.—Dallas 2007, no pet.), the opinions provide clear distinctions as to which alleged conflicts establish a claim and which alleged conflicts do not.   Merely *characterizing* a relationship as one involving a conflict of interest does not alone transform what is really a professional negligence claim into either a fraud or a breach-of-fiduciary-duty claim. *Pak,* 313 S.W.3d at 457; *Murphy*, 241 S.W.3d at 697; *see also Watkins v. Plummer*, No. 14-08-01040-CV, 2010 Tex. App. LEXIS 4183, *16 (Tex. App.—Houston [14th Dist.] June 3, 2010, no pet.) ("a court is not bound by the labels the parties give their claims").   A court must "discern the real substance of the claims." *Nabors v. McColl*, No. 05-08-01491-CV, 2010 Tex. App. LEXIS 571, *10 (Tex. App.—Dallas Jan. 25, 2010, no pet.).

In the present case, the response points to two specific alleged conflicts: (1) GT's representation of Stanford Entities while simultaneously representing the Antiguan government in an effort to rewrite Antigua's banking laws; and (2) GT's representation of "certain Stanford entities" in making multiple loans to the Antiguan government during the time GT represented the government. [Response at pp.34-35]   The response does not allege any GT self-dealing or direct pecuniary interest that was adverse to the Stanford entities.   These alleged conflicts are not the type that will support a breach of fiduciary duty claim.

The types of conflicts of interest which might give rise to a breach of fiduciary duty are those in which the lawyer has a direct pecuniary interest in the transaction that is adverse to the client and the attorney pursues his own interest to the client's detriment. *Riverwalk Cy Hotel Partners Ltd.*, 391 S.W.3d at 236.   In *Riverwalk*, there was more than a mere allegation of a conflict.  The plaintiff alleged that the attorneys knew that the plaintiff had insurance coverage for its claim but intentionally did not tender the defense to the insurance carrier because of a financial self-interest (i.e., they would have lost a client on an existing matter). *Id.* at 237.

In *Pak v. Harris*, the plaintiffs alleged that attorney Harris represented them when a conflict of interest was present.  Specifically, they asserted that Harris failed to disclose a conflict that arose after one of a group of jointly represented clients shared information with Harris and asked him not to share it with the others.  The plaintiffs alleged that this failure to communicate the conflict allowed one party to the transaction to defraud the plaintiffs out of their business. 313 S.W.3d at 458.  The court of appeals held that this allegation did not give rise to a breach of fiduciary duty claim, even though the complaint might implicate the lawyer's fiduciary duties. *Id.*  Harris had not obtained an improper benefit from the representation or from his failure to disclose the conflict. *Id.*

In *Murphy*, the court held that a claim asserting that lawyers chose their own self-interest in obtaining a multi-million dollar settlement did not establish a breach of fiduciary duty without being accompanied by dishonesty and intentional deception. *Murphy,* 241 S.W.3d at 699.  Likewise, an allegation of self-dealing by continued representation, was not adequate to state a claim without allegations of receipt of an improper benefit by the continued representation. *Id.*

In *Duerr v. Brown*, the plaintiffs alleged that attorneys Fleming and Brown had a conflict of interest to get the plaintiffs to join in a class action because it would mean bigger recoveries for the other class members and a bigger fee for the attorneys. 262 S.W.3d at 73.  The court noted that the plaintiffs did not attribute their lack of recovery of additional money to the

attorneys' receipt of fees.   Rather the plaintiffs' real complaint had to do with mishandling of their case and to being abandoned by the lawyers. *Id.* at 75.   Thus, despite the attempt to create a breach of fiduciary duty claim by linking the complaint to the attorney's fee recoveries, the court held that the failure to deliver the promised legal services was the real complaint, which states nothing more than a legal malpractice claim. *Id.* at 74-75.

Here, the Receiver does not allege that GT improperly profited from its simultaneous representation of the Stanford Entities and the Antiguan Government.   Likewise, there is no allegation that GT improperly used any client confidence, failed to disclose any conflict of interest, retained client funds, or promoted its own interests over the Stanford Entities' interests. *Smith v. Aldridge*, No. 14-11-00673-CV, 2012 Tex. App. LEXIS 2499, *14 (Tex. App.— Houston [14th Dist.] Mar. 29, 2012, pet. denied).   Accordingly, the Receiver has failed to state a claim for breach of fiduciary duty.

### 5.    Conflicted loyalties and future economic interests do not state a claim.

The allegations in the response are made in very broad terms, without regard to any specific event or incident and without regard to any specific date or dates.   The response asserts that GT's representation of the Stanford Entities was adversely limited by GT's interest in keeping the business and that GT "became blinded to the obligations they owed to the Stanford Entities by their conflicted loyalty to Allen Stanford personally." [Response at pp. 33-34, 35]. This allegation is one that does nothing more than supply motive to the existing allegation of subpar performance (i.e., negligence).   There is no further allegation that the "blindness" or conflicted loyalty represent anything other than subpar performance.   Rather, the Complaint asserts that the divided loyalties between Stanford and the Stanford entities had to do with GT's hopes of future business.   In fact, in a footnote to the response, the Receiver alleges that the law

firms "billed and collected exorbitant fees through their continued representation." [Response a p.34, n.32].

An allegation that GT was interested in keeping the business is one that could be said about any attorney-client relationship.  Neither this allegation, nor the complaint about exorbitant fees in themselves show breach of any fiduciary obligation.  The allegation must challenge the integrity of the billing practices themselves rather than the mere expectancy of an attorney to be paid for continued representation. *Riverwalk*, 391 S.W.3d 238-39; *Beck,* 284 S.W.3d at 434.  In *Pak v. Harris*, 313 S.W.3d at 458, the court held that obtaining a legal fee, without more, is insufficient to allege the type of dishonesty or intentional deception that is necessary to convert a negligence claim into one for breach of fiduciary duty.  The gravamen of the complaint was not an improper personal benefit, but rather the attorney's actions having caused or contributed to the fellow client's ability to defraud the plaintiffs. *Id.* at 458-59.  In *Watkins v. Plummer*, No. 14-08-01040-CV, 2010 Tex. App. LEXIS 4183, *20 (Tex. App.—Houston [14th Dist.] June 3, 2010, no pet.), the only benefit the attorneys were alleged to have received was the legal fee, which the court found insufficient to state a claim for breach of fiduciary duty.  By contrast, in *Riverwalk*, the allegation expressly alleged that the plaintiff was challenging the integrity of the billing system and pointed out that the rates charged were almost double the rates set out in the written engagement agreement. *Id.* at 239.  No similar allegation is present here.

The Receiver's assertion of divided loyalties fails to state a claim for the additional reason that there can be no divided loyalties between Allen Stanford and the Stanford entities. This Court previously found that Stanford and his entities operated as one such that there was no separate identity between them.  *See* discussion *supra* at 6.  Under these findings, there is no conflict. *See* ABA Formal Opinion 95-390 (Jan. 25, 1995) (Conflicts of Interest in the Corporate Family Context) ("[W]hole ownership may well entail not merely a shared legal department but a management so intertwined that all members of the corporate family effectively operate as a

single entity; and in those circumstances representing one member of the family may effectively mean representing all the others as well."); *see also id.* ("the relationship of the corporate client to its affiliate may be such that the lawyer is required to regard the affiliate as his client.  This would clearly be true where one corporation is the alter ego of the other. . . . "); *Goodlett v. Paul Revere Life Ins. Co.,* No. C97-0089, 2000 U.S. Dist. LEXIS 22532, *10-11 (N.D. Iowa Jan. 15, 2000); *Apex Oil Co. v. Wickland Oil Co.*, No. CIV-S-94-1499, 1995 U.S. Dist. LEXIS 6398, *7 (E.D. Ca. Feb. 28, 1995).[7]

> **6.    There is no duty to anticipate crime and no duty to blow the whistle on a client.**

Despite the fact that the Complaint states, "Suarez and Loumiet breached their fiduciary duties by continuously ignoring the numerous red flags discussed in this Complaints," [Complaint at ¶412], the response now claims that "Plaintiffs do not allege a breach of fiduciary duty claim for Greenberg's failure to <u>anticipate</u> crimes" and that "Plaintiffs do not allege that Greenberg breached its fiduciary duty *solely* by failing to blow the whistle on Stanford and the Stanford Entities." [Response at p.36; *see also* p.3 (complaining of lack of attempts to prevent)]. Thus, the Receiver has not *withdrawn* the allegation in the Complaint and at least relies *in part* upon an alleged duty to blow the whistle on a client.[8]

Without any duty to blow the whistle—which Plaintiffs do not contest—Plaintiffs cannot rest any claim *in part* on existence of such a duty.  Further, Plaintiffs do not state what the remaining basis is for establishing this claim and they cite no authority to support existence of a claim *partly* based upon blowing the whistle.  However, Plaintiffs contend that GT owed its corporate clients a duty to steer them away from Allen Stanford and his illegal conduct.  This unsupported argument factually relates to the alleged conflict of interest between Allen Stanford

---

[7] Some jurisdictions hold that there is no conflict where the corporation is wholly owned or controlled in such a manner that there is no reason to differentiate. *See, e.g., In re Banks,* 584 P.2d 284, 292 (Or. 1978).

[8] In fact, the response cites authorities from other jurisdictions that the Receiver contends establish a duty to investigate. [Response at pp.11-13, 28-29].  This is not the law in Texas. *See* discussion *supra* at 17-18.

and the corporate entities.   The argument assumes that Allen Stanford and the entities are separate, but as discussed above, this Court has found that Allen Stanford and the entities are one. *See* discussion *supra* at 6.   Thus, even assuming there is a duty in law that supports Plaintiffs' argument, the facts found by this Court are at odds with the Plaintiffs' contentions.

Plaintiffs also assert that—rather than their breach of fiduciary duty claim resting on a requirement of the anticipated future criminal conduct set out in their complaint—they have detailed the factual basis for "real time" knowledge and participation in the response at pages 37-40. [Response at p.36].   As discussed below, the purported showing of "real time" knowledge and participation falls short of the representation. *See* discussion *infra* at 22-25.

Finally, Plaintiffs criticize GT's authority, on the basis that the cases involve negligence-based claims only and not breach of fiduciary duty claims. [Response at p.36 n.34].   Plaintiffs cite no contrary authority applicable to fiduciaries.   "The burden is on a plaintiff to prove the existence and violation of a legal duty owed by the defendant in order to establish tort liability." *Toles v. Toles*, 113 S.W.3d 899, 909 (Tex. App.—Dallas 2003, no writ).   Thus, even assuming GT's authority is limited to negligence, Plaintiffs still must affirmatively establish existence of a fiduciary duty to investigate or anticipate criminal conduct.   They have not done so.

### D.    Aiding and abetting claims

Common law aiding and abetting claims are not recognized in Texas and are considered suspect and/or duplicative claims.   The Complaint includes three causes of action for common law aiding and abetting an underlying alleged wrong:

- Aiding and abetting breaches of fiduciary duty. (Complaint at ¶¶ 408-10, 452-54);
- Aiding and abetting fraudulent transfers (Complaint at ¶¶ 426-27); and
- Aiding and abetting a fraudulent scheme (Complaint at ¶¶ 455).

The Texas Supreme Court has not determined whether an action for aiding and abetting is a distinct and valid claim under Texas law.   Rather, the Texas Supreme Court has chosen not to

answer that question on at least four occasions. *Grant Thornton LLP v. Prospect High Income Fund ML CBO IV, Inc.*, 314 S.W.3d 913, 930 n.28 (Tex. 2010) (declining to consider whether Texas law recognizes a cause of action for aiding and abetting separate and apart from a conspiracy claim); *Chu v. Hong*, 249 S.W.3d 441, 447 (Tex. 2008) (same ); *Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 583 n.7 (Tex. 2001) (same); *Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex. 1996) (discussing "concert of action of liability" theory and holding that even if such a claim exists the elements were not met). Tellingly, in *Chu*, the Court expressed its uncertainty that a distinction exists between an aiding and abetting claim and a conspiracy claim. *Chu*, 249 S.W.3d at 447 ("[a]ssuming such a claim exists and is somehow different from conspiracy to breach his fiduciary duty").

At least three Texas intermediate courts have acknowledged that claims for aiding and abetting have not been recognized under Texas law. *O'Kane v. Coleman*, No. 14-06-00657-CV, 2008 Tex. App. LEXIS 4908, *12 (Tex. App.—Houston [14th Dist.] July 1, 2008, no pet.) (citing *Juhl* and noting that it "is questionable whether Texas law recognizes a concert of action theory of liability."); *Baxter v. Gardere Wynne Sewell LLP*, 182 S.W.3d 460, 465 (Tex. App.— Dallas 2006, pet. denied) (noting that even the plaintiff recognizes that the claims have not been recognized as independent claims); *Span Enters. v. Wood*, 274 S.W.3d 854, 858-59 (Tex. App.— Houston [1st Dist.] 2008, no pet.) (noting refusal of Texas courts to recognize cause of action against attorney for aiding and abetting client).

At least two federal district courts have held that no such claim exists under Texas law. *Highland Crusader Offshore Partners v. Lifecare Holdings, Inc.*, No. 3:08-CV-0102-B, 2008 U.S. Dist. LEXIS 66229, *43 (N.D. Tex. Aug. 27, 2008) (holding that Texas does not recognize a claim for aiding and abetting fraud that is distinct from conspiracy); *In re Schlotzsky's, Inc.*, 351 B.R. 430, 439 (Bankr. W.D. Tex. 2006) (stating that Texas does not recognize a claim for aiding and abetting breach of fiduciary duty). Others have opined that the validity of such claims

is questionable. *Dontos v. Vendomation NZ Ltd.*, No. 3:11-CV-0553, 2012 U.S. Dist. LEXIS 122091, *39–40 (N.D. Tex. Aug. 27, 2012) (noting that Texas is undecided whether an aiding and abetting claim is viable under Texas law); *Newby v. Enron Corp.*, 761 F. Supp. 2d 504, 557 n. 51 (S.D. Tex. 2011) (noting that "it is questionable whether Texas recognizes [an aiding and abetting] claim separate from conspiracy or separate from the underlying wrongful act."); *In re Enron Securities, Derivative & ERISA Litigation*, 511 F. Supp. 2d 742, 794-95 (S.D. Tex. 2005) (recognizing that whether a cause of action for aiding and abetting is valid in Texas is still "an open question"); *In re GPR Holdings, L.L.C.,* 318 B.R. 384, 391 (Bankr. N.D. Tex. 2004) (noting that Texas law may not recognize a claim for aiding and abetting fraud separate and apart from a conspiracy claim).

The Receiver and OSIC provide the Court with no contrary authority.  Rather, the cases cited in the response are inapplicable.  For example, in several of the cases (i.e., *Cox*, *Kline*, and *Meadows*), the courts analyzed a claim for knowing "participation," not an aiding and abetting claim, and applied the elements of a "participation" claim adopted in *Kinzbach v. Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509 (Tex. 1942). *See Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 639 (5th Cir. 2007) (citing *Kinzbach* and stating elements of "participation in" breach of fiduciary duty claim); *Cox Tex. Newspapers, LP v. Wootten*, 59 S.W.3d 717, 721–22 (Tex. App.—Austin 2001, pet denied)(citing *Kinzbach* and determining whether sufficient evidence supported claim for knowing participation in breach of fiduciary duty); *Kline v. O'Quinn*, 874 S.W.2d 776, 785–87 (Tex. App.—Houston [14th Dist.] 1994, writ denied) (citing *Kinzbach* and addressing claim of knowing and active participation in breach of fiduciary duty).

Although the *Floyd v. Hefner* Court initially stated that "Texas recognizes a cause of action for aiding and abetting a breach of fiduciary duty," the court supported that statement by applying *Kinzbach*, *Cox*, and *Kline* and analyzing the claim as one for knowing participation in a breach of fiduciary duty. 556 F. Supp. 2d 617, 654–55 (S.D. Tex. 2008).  Moreover, the *Floyd*

court noted that Texas had not adopted section 876(b) of the Restatement (Second) of Torts, and, thus, had not recognized a claim for aiding and abetting a breach of fiduciary duty through substantial assistance and encouragement. *Id.* at 655 n.35. Similarly, although the *Ramirez* Court addressed "aiding and abetting or conspiracy" claims, the elements of the aiding and abetting claim cited by that court are actually the *Kinzbach* elements. *Ramirez v. Ramirez*, 413 B.R. 621, 629 (Bankr. S.D. Tex. 2009) (citing *Hill v. Day*, which relied on *Kinzbach*, for the elements of an aiding and abetting claim).

The remaining case, *Bilouris v Sundance Res., Inc.*, 559 F. Supp. 2d 733 (N.D. Tex. 2008), is inapplicable because the court did not address whether an aiding and abetting claim is recognized under Texas law. Rather, in *Bilouris*, the defendant moved to dismiss the aiding and abetting claim (as well as other derivative claims) on the ground that the underlying fraud-based claims should be dismissed. 559 F. Supp. 2d at 740. The court denied the motion to dismiss on that ground because the court determined that at least one fraud-based claim was sufficiently pleaded and, therefore, one claim remained upon which the derivative claims could stand. *Id.*

Plaintiffs' other cases either decline to address the validity or merit of an aiding and abetting claim or do not address such a claim at all. *Chu*, 249 S.W.3d at 447 (declining to address whether claim for aiding and abetting conspiracy exists under Texas law); *Toles v. Toles*, 113 S.W.3d 899, 912–13 (Tex. App.—Dallas 2003, no pet.) (expressing "no opinion on the merit of" claim for aiding and abetting breach of fiduciary duty); *Matter of Educators Group Health Trust v. Wright*, 25 F.3d 1281, 1285 (5th Cir. 1994) (conspiracy to commit fraudulent transfers); *Essex Crane Rental Corp. v. Carter*, 371 S.W.3d 366, 379 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) (same); *Stonecipher v. Butts*, 591 S.W.2d 806, 808 (Tex. 1979) (post-judgment conspiracy to prevent collection of judgment lien).

Simply put, Texas courts have not recognized a common law cause of action for aiding and abetting the commission of an underlying tort. The Court should, therefore, dismiss the

Receiver's and OSIC's claims for aiding and abetting breaches of fiduciary duty, aiding and abetting fraudulent transfers, and aiding and abetting a fraudulent scheme.

### E.  "Participation in" claims

#### 1.  Participation in breach of fiduciary duty

Assuming that Texas recognizes a claim for participation in a breach of fiduciary duty, the Receiver and OSIC cannot establish the elements of a claim.  The Receiver's and OSIC's response to the motion to dismiss the claim for "participation in" a breach of fiduciary duty suffers from several deficiencies.  First, their 26-item list of alleged acts they describe as acts of "participation in" a breach of fiduciary duty primarily relate to GT's rendition of legal services [*see* Response at pp. 47-50], and as such, the list is an improper fracturing of the legal malpractice claim. *See* discussion *supra* at 10-18.  In fact, at least one court of appeals has concluded that there are no Texas cases extending a claim for breach of fiduciary duty against a corporation to include the attorneys representing the corporation in the decisions alleged to have constituted the breach. *Scherrer v. Haynes & Boone*, No. 01-99-01164-CV, 2002 Tex. App. LEXIS 999, *6 (Tex. App.—Houston [1st Dist.] Feb. 7, 2002, no pet.).  Similarly, there should be no claim for breach of fiduciary duty against a corporate officer or director that would extend to the attorneys representing the corporation.

Second, although the Receiver and OSIC claim to have gone to great effort to show "real time" or contemporaneous knowledge of a breach of fiduciary duty at the time of GT's alleged participation, [*see* Response at p.43], they have made no meaningful effort to do just that. Instead, they have created two, separate lists—one that purports to show knowledge, and one that purports to show acts of "participation in." [Response at pp.47-50].  It's as if the Receiver and OSIC are asking the Court and GT to sift through the voluminous lists and mix and match—a feat that is impossible given a lack of complete information, and a lack of any categorization. Examination of the list of allegations purportedly showing actual knowledge of a breach of

fiduciary duty ranges from the absurd[9] to hyperbolic[10] to—at best—mere disputes regarding unsettled issues of law.[11]

Third, the Receiver and OSIC are unwilling even to describe GT's alleged knowledge as actual knowledge of a breach of fiduciary duty, much less which director or officer owed the duty and to which of the hundreds of Stanford Entities the duty was owed.  Indeed, in setting out a 31-item list, the Receiver and OSIC do not contend the list shows actual knowledge of a breach of a fiduciary duty; rather, they contend the allegations show knowledge of "illegal and deceptive conduct."[12] [Response at p.43].  Closer inspection of the list shows the most of the list fails even to meet the promise of allegations of illegal and deceptive conduct for the most part.

In fact, many of the listed allegations in both lists show only *legal* conduct.  Doing that which one has a legal right to do does not establish a cause of action in tort. *See Keese v. Continental Pipe Line Co.*, 235 F.2d 386 (5th Cir. Tex. 1956); *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 717 (Tex. 2001).  Thus, reference to efforts to avoid regulation, prolonged use of the same auditor, use of an informant in Montserrat, firing of employees, loans made to Antiguan officials, purchases of Antiguan real estate, the rewriting of Antiguan laws, threats of lawsuits, drafting letters for others' signatures, drafting proposed legislation, Freedom of Information Act requests,1998 financial difficulties, and successfully defending against drug-trafficking charges, money-laundering charges, and the like, are references to conduct that is not on its face wrongful or illegal, much less a breach of an (undisclosed) officer's or director's fiduciary duty to a (unnamed) corporation.

---

[9] *See, e.g.,* Response at p.44, ¶ (8) (describing Antigua's reputation).

[10] *See, e.g.,* Response at p.45, ¶ (12) referencing investigations of Stanford for money laundering and drug running).

[11] *See, e.g.,* Response at p.44, ¶ 4 (referencing 1988 legal opinion that it was an unsettled legal issue of whether CDs were securities).

[12] The Complaint includes allegations of knowing and "reckless" conduct. [Complaint, ¶ 409].

Fourth, the Receiver and OSIC hope to satisfy the knowledge element not by what GT actually knew at the time,[13] but by what they contend GT *should have known*. Indeed, they have admitted that their contentions against GT are at least *partly* based upon an alleged obligation to investigate. [*See* Response at p.36]. GT has pointed out that there is no such obligation. *See* discussion *supra* at 17-18; *see also Grupo v. Garcia*, No. 13-98-247-CV, 1999 Tex. App. LEXIS 5845, *19 (Tex. App.—Corpus Christi Aug. 5, 1999, pet. denied) ("the evidence must demonstrate an affirmative link, not mere suspicion, showing the third party's knowledge of the agent's fraudulent conduct.").[14] Alternatively, the Receiver and OSIC want to impute 20/20 hindsight taken from a collection of knowledge to Loumiet, which is contrary to the legal requirement that Loumiet must have had contemporaneous knowledge of the breach. Hindsight and suspicion are never sufficient to establish actual, contemporaneous knowledge. *See Strickland v. Washington*, 466 U.S. 668, 689 (1984) ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."); *Teague v. Scott*, 60 F.3d 1167, 1170 (5th Cir. Tex. 1995) (counsel's actions judged by what was known at the time); *City of San Antonio v. Pollock*, 284 S.W.3d 809, 821 (Tex. 2009) (knowledge ascertained at time of acts, not with hindsight).

Fifth, the list of alleged acts purportedly constituting "participation in" a director's breach of fiduciary duty draws no distinction between Allen Stanford individually and the Stanford Entities. This lack of distinction is not surprising given the Court's conclusion that Allen Stanford used the corporations to perpetrate his fraud and that he and the corporations operated as one. *See* discussion *supra* at 6. Thus, there is a threshold legal question as to whether Allen

---

[13] The response does not dispute that only 6 people knew of Stanford's misappropriation of corporate funds or the Government's position that Loumiet was not part of Stanford's scheme. [*See* Doc. 27, at p.2].

[14] Texas law would not even require GT to *anticipate* Stanford's criminal conduct. *See City of Lancaster v. Chambers*, 883 S.W.2d 650 (Tex. 1994).

Stanford was even capable of breaching a fiduciary duty to himself, much less whether GT could participate in such a breach.  Nonetheless, the Court's findings explain why the Receiver and OSIC are unable to connect GT's alleged acts of participation to Allen Stanford's breach of a duty to a specific Stanford Entity.

Sixth, the Receiver's and OSIC's list of alleged acts of "participation in" primarily includes legal advice or legal services GT rendered to Stanford over the years.  The services include legal advice GT rendered on unsettled issues of law, on matters wherein GT described the parameters of the law, and specifically on the Investment Company Act.  The Receiver and OSIC have not challenged GT's motion to dismiss insofar as it seeks to dismiss claims based upon some alleged violation of the Investment Company Act or the Investment Advisors Act since those Acts do not support any private right of action. *See* discussion *infra* at 26.  Moreover, it is unclear how giving advice on unsettled questions of law can constitute participation in another's breach of fiduciary duty.  It may be that the client might have a legal malpractice action if the advice is incorrect and without a reasonable foundation, but it would not give rise to participation in a breach of a fiduciary duty.

In sum, some of the listed allegations, if proven, may support some other cause of action (and by some other plaintiffs such as the investors), but the items listed simply do not support a "participation in" a breach of an officer's or director's fiduciary duty to a corporate entity.

### 2. Texas does not recognize claims for knowing "participation in" a fraudulent transfer or a fraudulent scheme.

The Receiver and OSIC assert claims for participation in fraudulent transfers (*Complaint at ¶¶426–27*) and participation in a fraudulent scheme (*Complaint at ¶ 455*).  Texas has recognized neither claim.  Instead, such claims are treated as duplicative of a conspiracy claim. *See Chu*, 249 S.W.3d at 447; *see also Highlander Crusader*, 2008 U.S. Dist. LEXIS 66229, at *43 (holding that Texas does not recognize claim for aiding and abetting fraud that is distinct

from conspiracy claim); *Newby*, 761 F. Supp. 2d at 557 n.51 ("it is questionable whether Texas recognizes such a claim separate from conspiracy or separate from the underlying wrongful act."). Indeed, the cases relied on by the Receiver and OSIC to support these claims involve conspiracy claims. *Wright*, 25 F.3d at 1285-86 (conspiracy to commit fraudulent transfers); *Essex Crane Rental Corp.*, 371 S.W.3d at 379 (conspiracy to defraud); *Stonecipher*, 591 S.W.2d at 808 (conspiracy to prebent the collection of a judgment lien). These claims should, therefore, be dismissed because they are duplicative of the conspiracy claim.

> ### F. Claims based upon underlying allegation of violation of the Investment Company Act or Investment Advisors Act.

GT moved to dismiss any of the secondary claims in the Complaint that were based upon allegations of a violation of the Investment Company or the Investment Advisors Act due to the fact that those two Acts do not support a direct private cause of action, and because there is no duty to disclose an alleged lack of compliance. [Doc.29, at pp.9-12]. The Receiver and OSIC did not respond to these grounds for dismissal, although the response continues to reference alleged violations of these Acts as predicates to other secondary claims. Because there is no dispute that such a secondary claim is not allowed, the Court should grant dismissal as to any claim based upon an alleged violation of either Act.

## III.    The Court should deny Plaintiffs' request to amend the Complaint.

Although Rule 15 instructs the courts to "freely" grant leave to amend pleadings "when justice so requires," leave should not be given if there is a "substantial reason" for denying leave, which includes circumstances in which the amendment would be futile. Fed. R. Civ. P. 15(a)(2); *Lucas v. Abbott Labs.*, 2013 U.S. Dist. LEXIS 83651, *4 (N.D. Tex. June 13, 2013) (quoting *Goldstein v. MCI Worldcom*, 340 F.3d 238, 254 (5th Cir. 2003)). Courts should also consider judicial economy, and "the most expeditious means to resolve the case on its merits." *Lucas*,

2013 U.S. Dist. LEXIS 83651 at *4 (*citing  Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598

(5th Cir. 1981)).

 A court does not abuse its discretion by denying leave when allowing amendment would

be futile. *Brown v. Livingston*, No. 12-50114, 2013 U.S. App. LEXIS 8966, *12 (5th Cir. May 2,

2013) (amendment futile where injuries remained speculative); *City of Clinton v. Pilgrim's Pride

Corp.*, 632 F.3d 148, 154 (5th Cir. 2010) (amendment futile where alleged facts would not

support claim as a matter of law); *Briggs v. Mississippi*, 331 F.3d 499, 508 (5th Cir. 2003)

("[T]he proposed amended complaint could not survive a FED. R. CIV. P. 12(b)(6) motion and

allowing [plaintiff] to amend the complaint would be futile.").  Here, as GT's motion to dismiss

indicates, GT has moved to dismiss not for mere factual pleading deficiencies, but rather for

legal reasons or because there is no set of facts in existence that would support the pleaded claim.

As such, no amendment can cure the defects and amendment is, therefore, futile.

 If the Court does not dismiss this suit due to non-joinder, GT requests that the Court grant

its motion to dismiss pursuant to Rule 12(b)(6) and dismiss those claims addressed herein. GT

requests such further and additional relief to which it is entitled at law or in equity.

Respectfully submitted,

By:  /s/ R. Michael Northrup
  **JIM E. COWLES**
  Texas Bar No. 04931000
  **SIM ISRAELOFF**
  Texas Bar No. 10435380
  **R. MICHAEL NORTHRUP**
  Texas Bar No. 15103250
 **COWLES & THOMPSON, P.C.**
 901 Main Street, Suite 3900
 Dallas, TX 75202
 (214) 672-2000
 (214) 672-2020 (Fax)

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on the 19th day of August, 2013, a true and correct copy of the foregoing document was delivered via electronic means using the ECF system pursuant to FED. R. CIV. P. 5(b)(2)(D) and Local Rule 5.1, to all counsel of record.


    /s/ R. Michael Northrup

**R. MICHAEL NORTHRUP**