**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| RALPH S. JANVEY, in his capacity as court-appointed receiver for the Stanford receivership estate; The OFFICIAL STANFORD INVESTORS COMMITTEE; SANDRA DORRELL; SAMUEL TROICE; and MICHOACAN TRUST; individually and on behalf of a class of all others similarly situated, | § § § § § § | |
| | § | |
| Plaintiffs. | § § | |
| vs. | § § | CASE NO. 3:12-cv-04641-L |
| GREENBERG TRAURIG, LLP; HUNTON & WILLIAMS, LLP;  and YOLANDA SUAREZ, | § § § § | |
| Defendants. | § § | |

---

**HUNTON & WILLIAMS LLP'S MOTION TO DISMISS CLAIMS ASSERTED**
**BY THE PUTATIVE CLASS AND ITS REPRESENTATIVES**
**AND SUPPORTING MEMORANDUM OF LAW**

---

Jeffrey D. Colman
David Jiménez-Ekman
April A. Otterberg
Kaija K. Hupila
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654-3456
jcolman@jenner.com
(312) 923-2940
(312) 840-7340 (Facsimile)

Richard A. Sayles
Shawn Long
SAYLES WERBNER
4400 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270
dsayles@swtriallaw.com
(214) 939-8701
(214) 939-8787 (Facsimile)

*Admitted* Pro Hac Vice

*Counsel for Hunton & Williams LLP*

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION ................................................................................................................ 1

FACTUAL BACKGROUND ............................................................................................... 3

    A.    The Stanford Enterprise & Ponzi Scheme. .............................................. 3

    B.    The Class Plaintiffs' Investments. ........................................................... 4

    C.    Allegations Against Hunton.................................................................... 4

        1.    The Class Plaintiffs Do Not Allege That Hunton Actually Knew Of The Ponzi Scheme Or Any Wrongdoing Involving CD Sales................... 4

        2.    The Class Plaintiffs Do Not Allege That Hunton Had Anything To Do With Securities Sales Or Disclosures To Investors. ................................ 5

ARGUMENT ...................................................................................................................... 6

I.    The Court Should Dismiss All Of The Claims Because Hunton Is Immune From Liability To The Non-Client Class Plaintiffs (All Counts)................................. 6

II.    The Court Should Dismiss The Class Plaintiffs' Claims, In Their Entirety, Because The Claims Fail To Satisfy Rule 8 Or Rule 9(b) (All Counts). ......................... 9

    A.    To State A Claim, The Class Plaintiffs Must Meet Rule 9(b)'s Demanding Requirements Or, At A Minimum, Rule 8's Plausibility Standard. ...................... 9

    B.    The Court Should Dismiss All Of The Class Plaintiffs' Claims Because They Rely On Impermissibly Vague & Conclusory Group Pleading............................ 10

III.    The Court Should Dismiss All Of The Class Plaintiffs' TSA Claims (Counts 1-4)......... 11

    A.    The Class Plaintiffs Do Not State An Aiding And Abetting Claim Because They Do Not Adequately Allege That Hunton (1) Actually Knew About Any TSA Violations, And (2) Materially Assisted Those Violations (Counts 1-4)..... 11

        1.    The Class Plaintiffs Do Not Adequately Allege That Hunton Was Subjectively Aware Of Stanford's Supposed TSA Violations. ................ 12

        2.    The Class Plaintiffs Do Not Adequately Allege That Hunton Materially Aided The Specific Alleged TSA Violations. ......................... 14

    B.    Texas Law Does Not Recognize A Claim For Conspiracy To Violate The TSA (Count 4 & Portion Of Count 7).................................................................. 16

C.    All Of The TSA Claims Fail Because The Class Plaintiffs Do Not Plead Viable TSA Violations (Counts 1-4 & Portion Of Count 7). ............................... 16

1.    The Claims Based On Sales Of Unregistered Securities Are (i) Preempted By Federal Law And (ii) Barred By The Applicable Statute Of Repose (Counts 1, 4, & Portion Of Count 7).......................... 17

2.    The Claims Based On Sales By Unregistered Dealers Fail Because (i) SIBL Was Exempt From Registering, And  (ii) The Statute Of Repose Bars All Claims (Counts 2, 4, & Portion Of Count 7). ................ 18

3.    The TSA's Statute Of Repose Bars The Claims Based On Alleged Untruths Or Omissions (Counts 3, 4, & Portion Of Count 7).................. 19

IV.    The Court Should Dismiss The Class Plaintiffs' Claims For Aiding & Abetting Breaches of Fiduciary Duty (Count 5). ............................................................. 19

V.    The Court Should Dismiss The Class Plaintiffs' Claims For Aiding & Abetting A Fraudulent Scheme (Count 6). .......................................................................... 21

VI.    The Class Plaintiffs Do Not State A Claim For Civil Conspiracy (Count 7). ................. 22

VII.    The Class Plaintiffs' *Respondeat Superior* Claim Fails Because It Does Not State A Viable Underlying Tort Claim Against Any Hunton Employee (Count 8). ..................... 25

CONCLUSION ........................................................................................................................ 25

APPENDIX

Exhibit A – Conversion of Purported Class Claims to Counts ........................................... APP001

Exhibit B – Summary of Related Briefing on Purported Class Claims by Other Professional Defendants ........................................................................ APP003

# TABLE OF AUTHORITIES

## Cases

*Abell v. Potomac Ins. Co.*, 858 F. 2d 1104 (5th Cir. 1988), *vacated on other grounds sub nom. Fryar v. Abell*, 492 U.S. 914 (1989) ...................................................................... 12, 15

*Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398 (Tex. App. – Houston [1st Dist.] 2005), pet. denied) ......................................................................... 7, 19

*Alpert v. Riley*, No. H-04-CV-3774, 2008 WL 304742 (S.D. Tex. Jan. 31, 2008)........................ 7

*Am. Realty Trust, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 362 F. Supp. 2d 744 (N.D. Tex. 2005) (Godbey, J.) .................................................................... 9, 16, 21

*Amacker v. Renaissance Asset Mgmt., LLC*, 657 F.3d 252 (5th Cir. 2011).................................... 9

*Arisma Grp., LLC v. Trout & Zimmer, Inc.*, No. 3:08-cv-1268, 2009 WL 3573418 (N.D. Tex. Oct. 30, 2009) ............................................................................. 25

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) .................................................................... 24

*Berry v. Indianapolis Life Ins. Co.*, 608 F. Supp. 2d 78 (N.D. Tex. 2009)............................. 23, 24

*Broad-Bussel Family LP v. Bayou Grp. LLC (In re Bayou Hedge Funds Inv. Litig.)*, 472 F. Supp. 2d 528 (S.D.N.Y. 2007)......................................................................... 21

*Camp v. Dema*, 948 F.2d 455 (8th Cir. 1991) ............................................................. 21

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994)......................................................................................... 20, 21

*Chapman Children's Trust v. Porter & Hedges, LLP*, 32 S.W.3d 429 (Tex. App. – Houston [14th Dist.] 2000, pet. denied) ........................................................ 7, 8

*Chu v. Hong*, 249 S.W.3d 441 (Tex. 2008) .............................................................. 23, 25

*City of Dallas v. Hall*, 562 F.3d 712 (5th Cir. 2009) ................................................... 9

*Congregation of Ezra Sholom v. Blockbuster, Inc.*, 504 F. Supp. 2d 151 (N.D. Tex. 2007) (Godbey, J.)................................................................................. 9

*Crescendo Invs., Inc. v. Brice*, 61 S.W.3d 465 (Tex. App. – San Antonio 2001, pet. denied).......................................................................... 15, 16, 18

*Dimitric v. Tex. Workforce Comm'n*, No. G-07-247, 2009 WL 674391 (S.D. Tex. Mar. 13, 2009) ............................................................................. 7

*Dyer v. Shafer, Gilliland, Davis, McCollum & Ashley, Inc.*, 779 S.W.2d 474
(Tex. App. – El Paso 1989, writ denied).................................................................. 21

*Ernst & Young, LLP v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573 (Tex. 2001)............................... 21

*Fernea v. Merrill Lynch Pierce Fenner & Smith*, ---S.W.3d ---, No. 03-09-00566-CV,
2011 WL 2769838 (Tex. App. – Austin July 12, 2011, no pet.) ........................................... 13

*Finserv Cas. Corp. v. Settlement Funding, LLC*, 724 F. Supp. 2d 662 (S.D. Tex. 2010) ............. 7

*Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608 (Tex. 1996)......................................... 23

*G&H Towing Co. v. Magee*, 347 S.W.3d 293 (Tex. 2011) ...................................................... 25

*Grant Thornton, LLP v. Prospect High Income Fund, ML CBO IV*, 314 S.W.3d 913
(Tex. 2010).......................................................................................................... 21

*Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552 (5th Cir. 2002)............................... 9

*In re Cascade Int'l Secs. Litig.*, 840 F. Supp. 1558 (S.D. Fla. 1993) ......................................... 21

*In re Enron Corp. Secs., Deriv. & ERISA Litig.*, 761 F. Supp. 2d 504
(S.D. Tex. 2011)............................................................................................ 10, 11, 22

*In re ML-Lee Acquisition Fund II, LP*, 848 F. Supp. 527 (D. Del. 1994) ................................... 20

*Juhl v. Airington*, 936 S.W.2d 640 (Tex. 1996)............................................................... 23, 24, 25

*Ledesma v. Dillard Dep't Stores*, 818 F. Supp. 983 (N.D. Tex. 1993)......................................... 9

*Marlin v. Moody Nat'l Bank, N.A.*, 248 F. App'x 534 (5th Cir. 2007)......................................... 23

*McLachlan v. Simon*, 31 F. Supp. 2d 731 (N.D. Cal. 1998) ...................................................... 20

*Melder v. Morris*, 27 F.3d 1097 (5th Cir. 1994) ............................................................... 10, 21

*Navarro v. Grant Thornton, LLP*, 316 S.W.3d 715 (Tex. App. – Houston [14th Dist.] 2010,
no pet.) ................................................................................................................ 16

*Norris v. Hearst Trust*, 500 F.3d 454 (5th Cir. 2007) ...................................................... 9

*Pinnacle Commc'ns Int'l, Inc. v. Am. Family Mortg. Co.*, 417 F. Supp. 2d 1073
(D. Minn. 2006) ..................................................................................................... 17

*R2 Invs. v. Phillips*, No. 302CV0323N, 2003 WL 22862738 (N.D. Tex. Mar. 26, 2003)
(Godbey, J.), *aff'd*, 401 F.3d 638 (5th Cir. 2005) ......................................................... 23, 24

*Rawhide Mesa-Partners, Ltd. v. Brown McCarroll, LLP*, 344 S.W.3d 56
(Tex. App. – Eastland 2011, no pet.) ........................................................................... 15

*Reagan Nat'l Adver. of Austin, Inc. v. Hazen*, No. 03-05-00699-CV, 2008 WL 2938823
(Tex. App. – Austin July 29, 2008, no pet.).............................................................. 8

*Schatz v. Rosenberg*, 943 F.2d 485 (4th Cir. 1991) ............................................. 15, 20

*Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854
(Tex. 1969)................................................................................................................ 24

*Sears v. Likens,* 912 F.2d 889 (7th Cir. 1990) .......................................................... 11

*Span Enters. v. Wood*, 274 S.W.3d 854 (Tex. App. – Houston [1st Dist.] 2008, no pet.)...... 19, 21

*Sterling Trust Co. v. Adderley*, 168 S.W.3d 835 (Tex. 2005)................................ 12, 13

*Swartz v. KPMG LLP*, 476 F.3d 756 (9th Cir. 2007) ................................................ 11

*Synergy Real Estate of Sw. Fla., Inc. v. Premier Property Mgmt. of Sw. Fla., LLC*,
No. 11-cv-707, 2013 WL 5596795 (M.D. Fla. Oct. 11, 2013) ......................... 11, 20

*Taco Bell Corp. v. Cracken*, 939 F. Supp. 528 (N.D. Tex. 1996) ............................. 8

*Tamburine v. Center Sav. Ass'n*, 583 S.W.2d 942 (Tex. App. – Tyler 1979, writ ref'd n.r.e.)...... 5

*Taylor v. Allstate Ins. Co.*, 356 S.W.3d 92 (Tex. App. – Houston [1st Dist.] 2011,
pet. denied)............................................................................................................... 19

*Temple v. Gorman*, 201 F. Supp. 2d 1238 (S.D. Fla. 2002) ..................................... 17

*Thornton v. Micrografx, Inc.*, 878 F. Supp. 931 (N.D. Tex. 1995) ............................ 10

*Tri v. J.T.T.*, 162 S.W.3d 552 (Tex. 2005)................................................................. 22

*Triad Contractors, Inc. v. Kelly*, 809 S.W.2d 683 (Tex. App. – Beaumont 1991, writ denied)..... 5

*Triplex Commc'ns, Inc. v. Riley*, 900 S.W.2d 716 (Tex. 1995).................................. 23

*Wesolek v. Layton*, 871 F. Supp. 2d 620 (S.D. Tex. 2012)........................................ 12

*Westcap Corp. v. City Colls. of Chi.(In re Westcap Enters.)*, 230 F.3d 717 (5th Cir. 2000)........ 15

*Zervas v. Faulkner*, 861 F.2d 823 (5th Cir. 1988) ................................................ 23, 24

**Statutes**

15 U.S.C. § 774r(b)(4)(D).............................................................................................. 17

15 U.S.C. § 77r(a)(1)(A)................................................................................................ 17

Tex. Rev. Civ. Stat. Ann. art. 581-10-1A .................................................................... 15

Tex. Rev. Civ. Stat. Ann. art. 581-12A ................................................................. 18

Tex. Rev. Civ. Stat. Ann. art. 581-33F ........................................................ 12, 15, 16

Tex. Rev. Civ. Stat. Ann. art. 581-33H ............................................................ 18, 19

Tex. Rev. Civ. Stat. Ann. art. 581-4(C) .............................................................. 18

**Rules**

Fed. R. Civ. P. 12(b)(6) ....................................................................................... 1

Fed. R. Civ. P. 8 ............................................................................................... 1, 9

Fed. R. Civ. P. 9(b) .................................................................................... passim

Tex. Disciplinary R. Prof. Conduct 1.05 (1989) ............................................... 16

**Regulations**

17 C.F.R. § 230.506(a) (2014) ........................................................................... 17

Hunton & Williams LLP ("Hunton") moves to dismiss with prejudice the claims brought by Sandra Dorell, Samuel Troice, and Michoacan Trust, individually and on behalf of a class of all others similarly situated (the "Class Plaintiffs") in the Plaintiffs' Original Complaint – Class Action (the "Complaint") pursuant to Federal Rules of Civil Procedure 8, 9(b), and 12(b)(6).[1]  As demonstrated below, the Court should dismiss all of the Class Plaintiffs' claims with prejudice.[2]

## INTRODUCTION

A putative class of purchasers of Stanford CDs seeks to hold Hunton liable for billions in alleged losses, all of which occurred because Allen Stanford and a handful of his closest confidants perpetrated a Ponzi scheme based on CD sales.[3]  But Hunton is not responsible for those losses.  Although Hunton provided some legal services to Mr. Stanford and certain Stanford entities, Hunton *never* prepared or advised on Stanford's marketing or disclosure materials, *never* advised on the securities laws that related to CD sales, and *never* represented Stanford in any SEC investigation.  Nor did Hunton represent any of the Class Plaintiffs—or, indeed, have any contact, *ever*, with any investors about Stanford.  And most significantly, as the Class Plaintiffs' counsel already conceded in briefing on Hunton's other pending motion to dismiss (Doc. 63 at 4), Hunton *did not know* about Stanford's Ponzi scheme.

These fundamental truths and pleading deficiencies defeat the Class Plaintiffs' effort to recoup their claimed losses from Hunton.  Because Hunton lacked knowledge of the Ponzi

---

[1] Hunton previously moved to dismiss the claims asserted by the Receiver and the Official Stanford Investors Committee.  (*See* Hunton's Motion to Dismiss [Doc. 49].)  That motion is fully briefed and awaiting this Court's decision.  (*See* Joint Response & Brief in Opposition [Doc. 63]; Hunton's Reply [Doc. 75].)  This Court stayed the Class Plaintiffs' claims pending the U.S. Supreme Court's decision in the SLUSA matters.  By using the term "Class Plaintiffs," Hunton does not concede that any class action can or should be certified in this matter, or that the three plaintiffs are proper class representatives.

[2] For the Court's convenience, and because the Class Plaintiffs do not number their claims, Hunton has assigned a number to each claim, as denoted in Exhibit A.

[3] The Class Plaintiffs assert that Mr. Stanford was engaged in a Ponzi scheme, that operated through entities he owned or controlled.  (*See, e.g.*, Compl. ¶ 37.)  Accepting the Class Plaintiffs' factual allegations as true for purposes of this motion, Hunton uses that term only for ease of reference.

scheme, there is little to distinguish Hunton from the thousands of law firms that provide legal services each day to their clients to the best of their lawyers' abilities.  The mere fact that it was later revealed that Hunton's client operated a Ponzi scheme does *not* make Hunton an aider or abettor, a co-conspirator, or otherwise liable in any way.  Yet that is the false premise on which the Class Plaintiffs' claims rely.  Knowledge of a client's wrongdoing is a minimum prerequisite to all of the Class Plaintiffs' claims.  Without it, attorneys could be liable to third parties simply for providing lawful services to clients who, unbeknownst to their attorneys, committed fraud.

The Class Plaintiffs do not and cannot state a claim against Hunton.  At the outset, the Class Plaintiffs, who were never clients of Hunton, ask this Court to ignore established Texas law holding that attorneys are immune from liability to non-clients *on any legal theory*.  In addition, rather than particularized facts or even plausible factual allegations, the Class Plaintiffs offer only vague and conclusory assertions that come nowhere close to stating the knowledge and intent elements necessary for their aiding and abetting and conspiracy claims.  Although the Class Plaintiffs vaguely assert that the undifferentiated "Defendants" they have named in this suit somehow participated in or furthered "a fraudulent scheme" (Compl. ¶ 455), *all* of the Class Plaintiffs' claims require them to allege (and ultimately prove) that each defendant *actually knew* about a fraudulent scheme and that each specific defendant materially assisted that scheme.  As we show below, the Class Plaintiffs do not—and cannot—satisfy that standard against Hunton.

The Court should dismiss the Class Plaintiffs' claims, with prejudice, for these reasons[4]:

- The Court should dismiss all of the Class Plaintiffs' claims because (1) the Class Plaintiffs were never Hunton's clients, and attorneys are immune from liability to non-clients under Texas law (Part I); and (2) the Class Plaintiffs fail to state a claim because they engage in impermissible conclusory group pleading (Part II);

---

[4] Although Hunton's arguments are specific to the Complaint in this action, Hunton recognizes that some similar legal issues exist in other Stanford-related suits against professional defendants.  For the Court's convenience, Exhibit B identifies the portions of professional defendants' motion to dismiss briefing in Stanford cases that address legal theories or issues similar to those in this case.

- The Court should dismiss Counts 1 through 4—claims that Hunton aided and abetted or conspired to commit violations of the Texas Securities Act (the "TSA")—because (a) the Class Plaintiffs do not allege facts suggesting that Hunton actually knew of or substantially assisted any primary TSA violations, (b) the Class Plaintiffs fail to allege any viable violation of the TSA, and (c) the TSA does not provide for co-conspirator liability (Part III);

- The Court should dismiss Count 5 because (a) Texas law does not allow a party to sue an attorney for aiding and abetting a breach of fiduciary duty absent an attorney-client relationship, (b) the Class Plaintiffs' claim is a futile attempt to avoid the bar on aiding and abetting liability under the federal securities laws, and (c) the Class Plaintiffs fail to state the elements of this claim (Part IV);

- The Court should dismiss Count 6 because (a) Texas courts have not recognized a cause of action for aiding and abetting a fraud, and (b) the Class Plaintiffs' allegations do not satisfy Rule 9(b)'s heightened standards even if such a claim exists (Part V);

- The Court should dismiss Count 7 because the Class Plaintiffs do not allege facts that suggest Hunton agreed or intended to join Mr. Stanford's conspiracy to perpetrate a Ponzi scheme—of which Hunton was admittedly unaware—or any other scheme (Part VI); and

- The Court should dismiss Count 8, the *respondeat superior* claim, because the Class Plaintiffs do not allege any actionable underlying conduct by Hunton attorneys (Part VII).

## FACTUAL BACKGROUND[5]

### A.    The Stanford Enterprise & Ponzi Scheme.

According to the Class Plaintiffs,[6] Allen Stanford "built a financial service empire that at its height boasted 30,000 customers in 130 countries managing billions of dollars in investment funds." (Compl. ¶ 23.)  Stanford "gave its clients all the appearances of a highly successful operation," and "[Mr.] Stanford himself made the Forbes list of richest people in the world."  (*Id.* ¶ 24.)  The Class Plaintiffs allege, however, that despite appearances, the Stanford enterprise was a Ponzi scheme "fueled primarily by one product: Certificates of Deposit ('CDs') issued by" Stanford International Bank, Ltd. ("SIBL").  (*Id.* ¶ 25.)  The Class Plaintiffs contend that Mr.

---

[5] Consistent with the applicable standard of review, and for this motion only, Hunton accepts the Complaint's factual allegations as true on this motion, but will dispute many of them if the case proceeds.

[6] Hunton's motion to dismiss the Receiver's and OSIC's claims includes a more extensive description of the Complaint's allegations.  *See* Doc. 49 at 3-9, 10-15; Doc.75 at 2-9.  For this motion, Hunton summarizes only those claims and allegations that may be relevant to the Class Plaintiffs' claims.

Stanford and his "cronies" [7] stole money by convincing investors to buy CDs by misrepresenting such matters as the existence of insurance for the CDs and the liquidity of SIBL's investment portfolio. (*Id.* ¶¶ 44, 46-47.) As the Class Plaintiffs concede, only six individuals—and certainly no Hunton lawyers—were indicted in connection with the Ponzi scheme. (*Id.* ¶ 399.)

**B.      The Class Plaintiffs' Investments.**

The Class Plaintiffs purportedly invested in SIBL CDs based on misrepresentations made "both in person by [their] Stanford Financial [financial advisors] and via Stanford Financial promotional materials." (Compl. ¶ 431.) In particular, the Class Plaintiffs assert they bought CDs without knowing that: (1) Stanford "evaded and skirted U.S laws and government regulation at every turn"; (2) the CDs were not insured; (3) "SIBL was operating illegally as an unregistered investment company"; (4) SIBL's portfolio was comprised largely of loans to Mr. Stanford; (5) Antiguan regulators did not effectively supervise SIBL; (6) "Allen Stanford controlled the Antiguan Government through loans, bribes and corrupt political machinations"; (7) Stanford had been under investigation by the U.S. government since 1988; and (8) Stanford was a Ponzi scheme. (*Id.* ¶ 430.) The Class Plaintiffs claim they would not have purchased CDs if they had known these alleged facts. (*See id.* ¶¶ 46, 429-31.)

**C.      Allegations Against Hunton.**

Although the Class Plaintiffs base their claims on their investments in SIBL CDs, they do not allege that Hunton had *anything* to do with CD sales, legal advice regarding securities laws or sales, or the marketing or promotional materials that allegedly induced them to buy CDs.

**1.      The Class Plaintiffs Do Not Allege That Hunton Actually Knew Of The Ponzi Scheme Or Any Wrongdoing Involving CD Sales.**

The Class Plaintiffs' theory appears to be that Hunton obtained knowledge of supposed

---

[7] Nowhere do the Class Plaintiffs allege—nor can they—that Hunton and its attorneys were among this group or the group of those who purportedly stole investor funds.

wrongdoing at Stanford when a former Greenberg Traurig LLP ("Greenberg") attorney, Carlos Loumiet, joined Hunton in 2001.  (*Id.* ¶ 245.)  Hunton demonstrated in its motion to dismiss the claims of the Receiver and OSIC that the Complaint does not allege facts showing that Mr. Loumiet became aware of the claimed Stanford fraud while at Greenberg.  (Doc. 49 at 4-6.)  In addition, Hunton notes that the Class Plaintiffs' counsel have *conceded* that Greenberg—like Hunton—*did not know* about the Ponzi scheme.  (*See* Doc. 63 at 4.)  As a result, Mr. Loumiet had no relevant knowledge that could have been transferred to Hunton, (Compl. ¶ 245), and no such knowledge can be imputed to Hunton as a matter of law.[8]

The Class Plaintiffs also do not allege any knowledge of supposed wrongdoing that Hunton itself obtained.  For example, the Class Plaintiffs do *not* allege that Hunton knew (1) the truth about insurance for SIBL CDs, (2) the true contents of SIBL's investment portfolio, or (3) the existence of personal loans to Allen Stanford.  Nor do the Class Plaintiffs allege specific facts that plausibly suggest that Hunton actually knew anything about Stanford's compliance (or non-compliance) with the TSA and federal securities laws.

### 2. The Class Plaintiffs Do Not Allege That Hunton Had Anything To Do With Securities Sales Or Disclosures To Investors.

As discussed further in Hunton's motion to dismiss the Receiver's and OSIC's claims, the sum total of the Class Plaintiffs' allegations regarding Hunton's legal work is that between 2001 and 2009: (1) Hunton performed services related to a handful of disparate, standard, and generally unrelated transactional and litigation matters that had nothing to do with securities or CD sales; (2) Mr. Loumiet was friendly with Mr. Stanford, occasionally socialized with him, and attempted to gain additional legal business from him and his companies; and (3) individual

---

[8] *See Triad Contractors, Inc. v. Kelly*, 809 S.W.2d 683, 686 (Tex. App. – Beaumont 1991, writ denied) (refusing to impute knowledge not obtained in the course of the agent's duties for the principal); *Tamburine v. Center Sav. Ass'n*, 583 S.W.2d 942, 949-50 (Tex. App. – Tyler 1979, writ ref'd n.r.e.) (information obtained in a confidential relationship cannot be imputed to a subsequent principal).

Hunton attorneys were aware of often vague reports that Mr. Stanford had been investigated for supposed wrongdoing that was unrelated to that alleged here and that led to no indictments or criminal proceedings, let alone convictions or findings of wrongdoing.[9]  (Doc. 49 at 6-9.)

But the Class Plaintiffs do not allege that any of Hunton's legal work had anything to do with CD sales or disclosures to investors, the matters at the heart of their claims.  The Class Plaintiffs do *not* allege that Hunton lawyers performed services that were related in any way to: (1) SIBL's "flashy marketing campaign" to attract investors, (2) the methods by which Stanford financial advisors sold CDs, (3) Stanford employees' purported "reverse engineer[ing]" of the revenues that SIBL reported, or (4) any investor disclosures, publications, or marketing materials.  (*See* Compl. ¶¶ 34-36, 40-42, 245-396, 442, 448.)  In fact, the Class Plaintiffs do not allege—nor can they—that they ever interacted with Hunton in any manner.  Nor do the Class Plaintiffs allege (because, again, they cannot) that Hunton had anything to do with the Stanford disclosures that allegedly caused them to purchase SIBL CDs.

The Class Plaintiffs also allege no facts suggesting that any Hunton attorneys evaluated or opined on any aspect of the TSA or federal securities laws.  Indeed, the Class Plaintiffs do not allege that Hunton gave any advice regarding securities matters at all.  Rather, putative classes – represented by the same counsel who are suing Hunton – assert in other litigation arising from the purported Ponzi scheme that *other attorneys* served as Stanford securities counsel.[10]

## ARGUMENT

## I. The Court Should Dismiss All Of The Claims Because Hunton Is Immune From Liability To The Non-Client Class Plaintiffs (All Counts).

The Class Plaintiffs' claims fail at the outset because they do not plead—nor can they—

---

[9] The legal system would be seriously disrupted if attorneys could be liable simply because their clients were once investigated for wrongdoing.

[10] *E.g.*, 2d Am. Compl. ¶¶ 60-69, *Troice v. Proskauer Rose*, No. 3:09-cv-01600 (N.D. Tex. Oct. 9, 2009) [Doc. 6].

that they had an attorney-client relationship with Hunton.  Without an attorney-client relationship with Hunton, Texas's qualified immunity doctrine bars the Class Plaintiffs' claims as a matter of law.[11]  Under that doctrine, "attorneys are 'qualifiedly immune' and cannot be held civilly liable for damages to non-clients, under *any* theory of recovery, for actions taken in connection with representing a client."  *Dimitric v. Tex. Workforce Comm'n*, No. G-07-247, 2009 WL 674391, at *9 (S.D. Tex. Mar. 13, 2009) (emphasis added).  The doctrine makes eminent sense:  while an attorney has a duty to zealously represent his client, an attorney who could be subject to liability to non-clients for that conduct "would be forced constantly to balance his own potential exposure against his client's best interest."  *Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 404 (Tex. App. – Houston [1st Dist.] 2005, pet. denied).  The Texas qualified immunity doctrine thus bars a plaintiff's claim whenever the attorney's alleged conduct "was part of discharging his duties" to his client—and even if the attorney's conduct was fraudulent or otherwise wrongful. *Chapman Children's Trust v. Porter & Hedges, LLP*, 32 S.W.3d 429, 441-42 (Tex. App. – Houston [14th Dist.] 2000, pet. denied).  Accordingly, courts regularly dismiss claims against lawyers asserted by non-clients.  *See, e.g.*, *Finserv Cas. Corp. v. Settlement Funding, LLC*, 724 F. Supp. 2d 662, 665 (S.D. Tex. 2010) (dismissing complaint where plaintiff alleged attorney wrongfully converted his property to enforce a judgment for a client); *Alpert v. Riley*, No. H-04-CV-3774, 2008 WL 304742, at *18 (S.D. Tex. Jan. 31, 2008) (dismissing complaint where plaintiffs alleged attorney conspired with client to provide false information to the IRS).

The Class Plaintiffs' claims are exactly the kind of claims by non-clients that the qualified immunity doctrine was designed to prevent.  The only Hunton conduct at issue in the Class Plaintiffs' claims is conduct that Hunton allegedly undertook as part of its representation of

---

[11] Hunton addresses Texas law for purposes of this motion but reserves its right to demonstrate that a different jurisdiction's law applies to some or all aspects of the Class Plaintiffs' claims.

the Stanford entities or Allen Stanford.  For example, the Class Plaintiffs allege that Hunton drafted loan documents for commercial loans by Stanford entities to unrelated third parties (Compl. ¶¶ 252-57), analyzed regulatory provisions (*id.* ¶¶ 370-86), responded to inquiries from regulators (*id.*), and represented some Stanford entities in litigation (*id.* ¶¶ 258-76, 327-28).  This is precisely the type of conduct during an attorney-client representation that the qualified immunity doctrine protects, and that doctrine prevents the Class Plaintiffs from suing Hunton on *any theory* of liability.  *See, e.g.*, *Reagan Nat'l Adver. of Austin, Inc. v. Hazen*, No. 03-05-00699-CV, 2008 WL 2938823, at *6-8, 11 (Tex. App. – Austin July 29, 2008, no pet.) (no liability for advising clients, corresponding with third parties about legal disputes, and drafting legal documents).

It does not matter that the Class Plaintiffs attempt to allege that Hunton participated in a fraudulent scheme (while acknowledging that Hunton did not know about the Ponzi scheme).  Even assuming the Class Plaintiffs pled those allegations with the requisite particularity (they do not, *see* Parts II, V), all they accuse Hunton of doing is taking certain lawful actions while representing Mr. Stanford or Stanford entities.  Courts routinely apply the qualified immunity doctrine to bar fraud and related claims under these circumstances.  *See, e.g.*, *Taco Bell Corp. v. Cracken*, 939 F. Supp. 528, 532-33 (N.D. Tex. 1996) (barring fraud claim based on actions attorney took while representing client); *Chapman*, 32 S.W.3d at 441-42 (same).  Moreover, nowhere do the Class Plaintiffs allege that Hunton *itself* engaged in an allegedly fraudulent or illegal act.  Rather, the Class Plaintiffs concede that Mr. Stanford, his "cronies," and the Stanford entities committed all of the allegedly fraudulent acts (*see* Compl. ¶¶ 44-48), and the Receiver and OSIC—based on the same allegations made by the Class Plaintiffs—concede that Hunton did not know about the Ponzi scheme (Doc. 63 at 4).  Thus, the qualified immunity doctrine bars the Class Plaintiffs' claims as a matter of law, and the Court should dismiss them with prejudice.

II.     **The Court Should Dismiss The Class Plaintiffs' Claims, In Their Entirety, Because The Claims Fail To Satisfy Rule 8 Or Rule 9(b) (All Counts).**

A.      **To State A Claim, The Class Plaintiffs Must Meet Rule 9(b)'s Demanding Requirements Or, At A Minimum, Rule 8's Plausibility Standard.**

This Court should dismiss a complaint "when a plaintiff fails to allege sufficient facts that, taken as true, state a claim that is plausible on its face." *Amacker v. Renaissance Asset Mgmt., LLC*, 657 F.3d 252, 254 (5th Cir. 2011) (affirming dismissal of aiding and abetting Ponzi scheme claim). To satisfy Rule 8, a complaint "must include some factual allegations to support the elements of the asserted claim," *Congregation of Ezra Sholom v. Blockbuster, Inc.*, 504 F. Supp. 2d 151, 158 (N.D. Tex. 2007) (Godbey, J.), and the factual allegations "must be enough to raise a right to relief above the speculative level," *Norris v. Hearst Trust*, 500 F.3d 454, 464 (5th Cir. 2007). Thus, a complaint must contain more than "conclusory allegations or legal conclusions masquerading as factual conclusions." *City of Dallas v. Hall*, 562 F.3d 712, 717 (5th Cir. 2009). When a complaint "omits facts concerning pivotal elements of the pleaders' claim, the court is justified in assuming the nonexistence of such facts." *Ledesma v. Dillard Dep't Stores*, 818 F. Supp. 983, 984 (N.D. Tex. 1993).

Rule 9(b)'s more demanding pleading burden applies to all of the Class Plaintiffs' claims because all depend on allegations that Hunton somehow knowingly furthered Mr. Stanford's fraudulent scheme. As a result, averments of fraud are "necessary" to and "intertwined" with all of their claims, and Rule 9(b) applies. *See Am. Realty Trust, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 362 F. Supp. 2d 744, 749-53 (N.D. Tex. 2005) (Godbey, J.). Rule 9(b) requires the Class Plaintiffs to "state with particularity the circumstances constituting [the] fraud or mistake," Fed. R. Civ. P. 9(b)—"to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent," *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 564-65 (5th Cir. 2002); *accord*

*Melder v. Morris*, 27 F.3d 1097, 1100 n.5 (5th Cir. 1994) (affirming dismissal where plaintiff failed to allege "the who, what, when, where, and how").  Moreover, the Class Plaintiffs cannot state a claim by "mak[ing] general allegations that lump all defendants together."  *In re Enron Corp. Secs., Deriv. & ERISA Litig.*, 761 F. Supp. 2d 504, 570 (S.D. Tex. 2011).

> **B.      The Court Should Dismiss All Of The Class Plaintiffs' Claims Because They Rely On Impermissibly Vague & Conclusory Group Pleading.**

As to all of their claims, the Class Plaintiffs fail to comply with Rule 8, and especially Rule 9(b), because they impermissibly use the generic term "Defendants" without specifying what it is that *Hunton* knew and did that supposedly gives rise to liability.  Although earlier allegations in the Complaint reference Hunton alone, the 18 paragraphs in which the Class Plaintiffs actually attempt to plead their claims do not link these allegations to the elements of their claims.  (*See* Compl. ¶¶ 441-59.)  Instead, the Class Plaintiffs incorporate all of their prior allegations "while stringing together a lengthy series of premises and conclusory allegations" purporting to state the elements of their claims against the combined set of "Defendants."  *See Thornton v. Micrografx, Inc.*, 878 F. Supp. 931, 937 (N.D. Tex. 1995) (dismissing claims).

 All of the Class Plaintiffs' claims suffer from these defects.  For example, the Class Plaintiffs allege that "[i]n performing the acts described herein to aid and abet the sale of securities in Texas by an unregistered dealer, *Defendants* acted with the intent to perpetuate the sale of securities by an unregistered dealer, or acted with reckless disregard for the truth or the law."  (Compl. ¶ 447 (emphasis added).)  With that conclusory allegation, Hunton (and the Court) is left guessing as to both the basis for alleging that *Hunton* acted with such "intent," as well as what conduct purportedly found in the 464-paragraph Complaint supposedly constituted *Hunton*'s aiding and abetting.  As another example, the Class Plaintiffs assert that "Defendants took various overt acts designed to assist Stanford Financial to accomplish the goal of selling

10

CDs from and through the State of Texas . . . ."  (*Id.* ¶ 451.)  That allegation similarly does not

specify where the Class Plaintiffs supposedly identify *Hunton's* "overt acts" related to this claim.

Such allegations, found throughout the Class Plaintiffs' claims, improperly "lump[] all

the defendants together and do[] not specify who was involved in what activity" at issue in the

claims.  *See Sears v. Likens,* 912 F.2d 889, 893 (7th Cir. 1990); *accord In re Enron*, 761 F. Supp.

2d at 570.  Rule 9(b) "require[s] plaintiffs to differentiate their allegations when suing more than

one defendant . . . and inform each defendant separately of the allegations surrounding his

alleged participation in the fraud."  *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007).

The Class Plaintiffs' approach also fails under Rule 8, because "indiscriminately lumping

'defendants' together" "does not give each defendant fair notice of the nature of the claims and

the grounds on which the claims rest."  *Synergy Real Estate of Sw. Fla., Inc. v. Premier Prop.*

*Mgmt. of Sw. Fla., LLC*, No. 11-cv-707, 2013 WL 5596795, at *2 (M.D. Fla. Oct. 11, 2013).

## III.    The Court Should Dismiss All Of The Class Plaintiffs' TSA Claims (Counts 1-4).

The Class Plaintiffs contend that Hunton aided and abetted Stanford entities in violating

the TSA in three ways: (1) by selling unregistered securities (Count 1); (2) by selling securities

through certain Stanford entities that were not registered as dealers in Texas (Count 2); and

(3) by selling securities through "untrue representations or materially misleading omissions"

(Count 3).  The Class Plaintiffs also assert that Hunton conspired with a large group to commit

these alleged TSA violations (Count 4).  (Compl. ¶ 451.)  As demonstrated in this Part III, the

Class Plaintiffs fail to state a claim under the TSA.

### A.    The Class Plaintiffs Do Not State An Aiding And Abetting Claim Because They Do Not Adequately Allege That Hunton (1) Actually Knew About Any TSA Violations, And (2) Materially Assisted Those Violations (Counts 1-4).

The Class Plaintiffs fail to state a claim for aiding and abetting a TSA violation because

they do not allege facts showing that Hunton acted (1) "with reckless disregard for the truth or

the law" in (2) "materially aid[ing] a seller, buyer, or issuer of a security" in a primary violation

of the TSA. *See* Tex. Rev. Civ. Stat. Ann. art. 581-33F(2).[12]  The Class Plaintiffs allege no facts

(and certainly no particularized facts) showing that Hunton actually knew of Stanford's supposed

TSA violations, or that Hunton assisted, let alone materially assisted, those specific violations.

*See Wesolek v. Layton*, 871 F. Supp. 2d 620, 635-36 (S.D. Tex. 2012) (applying Rule 9(b) to

TSA claims because they require "averments of fraud or mistake").

### 1. The Class Plaintiffs Do Not Adequately Allege That Hunton Was Subjectively Aware Of Stanford's Supposed TSA Violations.

As a threshold matter, the Class Plaintiffs' bald suggestion that Hunton ignored or was

"willfully blind" to supposed "red flags" (Compl. ¶¶ 412, 441) does not, as a matter of law,

allege actual knowledge of a TSA violation.  Aiding and abetting claims under the TSA rest on

intentional misconduct, which demands proof of much more than that a purported aider "should

have known" of the primary violation or "fail[ed] to investigate" potentially suspicious facts.

*Sterling Trust Co. v. Adderley*, 168 S.W.3d 835, 841-42 (Tex. 2005).  "Aroused suspicions"—

even if that was alleged here through specific facts (it is not)—"do not constitute actual

awareness of one's role in a fraudulent scheme." *Abell v. Potomac Ins. Co.*, 858 F. 2d 1104,

1128 (5th Cir. 1988), *vacated on other grounds sub nom. Fryar v. Abell*, 492 U.S. 914 (1989).

Rather, the Texas Supreme Court limits liability for aiding and abetting the TSA only to a

party that "rendered assistance to the seller in the face of a perceived risk that its assistance

would facilitate untruthful or illegal activity by the primary violator." *Sterling*, 168 S.W.3d at

837.  Thus, to state an aiding and abetting claim, the Class Plaintiffs were required to plead that

Hunton had subjective, "general awareness"—which *Sterling* holds means "actual awareness"—

---

[12] The TSA also imposes liability for those who substantially assist a primary violation "with intent to deceive or defraud." Tex. Rev. Civ. Stat. Ann. art. 581-33F(2).  The Class Plaintiffs do not allege facts that plausibly suggest that Hunton acted with such intent, especially given their counsel's concession that Hunton did not know about the Ponzi scheme.  As a result, Hunton focuses on the recklessness standard.

of Stanford's primary TSA violations.  *See* 168 S.W.3d at 840-42 & n.3.  Further, the Class

Plaintiffs must provide factual allegations showing that Hunton knew facts that were "directly

related" to Stanford's alleged TSA violations.  *See Sterling*, 168 S.W.3d at 842.  Thus, the Class

Plaintiffs must allege not only that Hunton knew the details of Stanford's CD business, but *also*

that Hunton knew that those operations supposedly violated the TSA in specific ways.  *See id.*

The Class Plaintiffs do not satisfy this high burden.  As discussed above at pages 4-6,

nowhere do the Class Plaintiffs allege that Hunton actually knew anything about how Stanford

CDs were registered, marketed, or sold during the period Hunton represented Stanford entities—

the factual predicates for their TSA claims.  The Class Plaintiffs do not allege any facts that

plausibly suggest that Hunton knew: (1) that Stanford should have registered CDs under the

TSA, and that it did not; (2) that certain Stanford entities should have registered as dealers under

the TSA, and that they did not; or (3) that Stanford sold CDs based on representations that were

not true.  And what they do allege is plainly insufficient.  For example, even if it is true (it is not)

that Hunton knew that SIBL was not properly registered in Mexico and Ecuador (Compl. ¶¶ 319-

26), that supposed knowledge is of no moment:  it does not show that Hunton knew the Stanford

business violated *Texas* law.  The Class Plaintiffs' vague assertion that Hunton allegedly knew

that Allen Stanford wanted to avoid additional regulation in Antigua (*id.* ¶¶ 246, 329-34) fails for

the same reason (not to mention that it is not illegal to avoid regulatory burdens that the law does

not require).  Even Hunton's supposed knowledge that Stanford was selling CDs in Texas (*id.*

¶ 442) is insufficient because the Class Plaintiffs were required to plead that Hunton had "'a

general awareness of its role in the *violation*'—*i.e.*, the actual sale of unregistered securities."

*Fernea v. Merrill Lynch Pierce Fenner & Smith*, ---S.W.3d ---, No. 03-09-00566-CV, 2011 WL

2769838, at *14 (Tex. App. – Austin July 12, 2011, no pet.) (emphasis in original).

The Class Plaintiffs also do not state a TSA claim based on a theory that Hunton

13

supposedly failed to disclose facts that would have contradicted Stanford's representations to investors.  The Class Plaintiffs do not point to facts that plausibly suggest that Hunton knew what Stanford was telling investors orally or in offering materials and other marketing documents.[13]  (*See* Compl. ¶¶ 46, 429-30, 442, 448-49.)  Nor do the Class Plaintiffs allege (because they cannot) that Hunton ever advised upon marketing or investor disclosure materials. Without knowing what was being represented to investors, Hunton could not have known that any specific representations were allegedly false.

The Class Plaintiffs also do not allege facts showing that Hunton knew about the alleged facts that the Class Plaintiffs complain were omitted from Stanford promotional materials and sales pitches.  (*See* Compl. ¶ 430.)   For example, the Class Plaintiffs allege that they were not told that SIBL's portfolio was comprised largely of loans to Mr. Stanford (*id.*), but they do not provide facts showing that Hunton knew about either the loans or that the loans were not disclosed to investors.[14]  Nor do the Class Plaintiffs allege facts showing that Hunton knew that "SIBL was not adequately or effectively regulated or supervised by the Antiguan Government" or that "Allen Stanford controlled the Antiguan Government through loans, bribes and corrupt political machinations."  (*Id.*)  In sum, the Class Plaintiffs do not—because they cannot—plead facts showing that Hunton was aware of any of Stanford's alleged TSA violations.

### 2.   The Class Plaintiffs Do Not Adequately Allege That Hunton Materially Aided The Specific Alleged TSA Violations.

The Class Plaintiffs also fail to allege that Hunton assisted, let alone "materially"

---

[13] The Class Plaintiffs include some allegations regarding Mr. Loumiet's review of a draft CD disclosure document in 1998, while Mr. Loumiet was employed by Greenberg.  (Compl. ¶ 209.)  Although the Class Plaintiffs allege that this document was used for the following ten years, until the receivership was implemented, the Class Plaintiffs offer no facts to support that conclusion, nor do they identify any specific representations in any disclosure documents that they claim Hunton knew were false.

[14] Indeed, the 1998 disclosure document that Mr. Loumiet reviewed in draft form while at Greenberg actually discloses $13 million in loans to Mr. Stanford.  (Compl. ¶ 209.)

assisted, Stanford's purported TSA violations.  *See* Tex. Rev. Civ. Stat. Ann. art. 581-33F(2).

Although the Class Plaintiffs allege that Hunton provided legal services to certain Stanford

entities (Compl. ¶¶ 15, 246), they do not identify legal services that had anything to do with the

subjects that matter for their TSA claims.  Texas law is clear that a purported aider must provide

"substantial assistance of the [TSA] *violation*" itself, *Crescendo Invs., Inc. v. Brice*, 61 S.W.3d

465, 473 (Tex. App. – San Antonio 2001, pet. denied) (emphasis added), not merely "substantial

assistance . . . to the person committing the violation," *Schatz v. Rosenberg*, 943 F.2d 485, 497

(4th Cir. 1991).[15]  The Class Plaintiffs do not allege Hunton had anything to do with the

registration (or non-registration) of CDs in Texas, the sale of CDs in Texas, or the drafting or

dissemination of materials that allegedly prompted the Class Plaintiffs to buy CDs.  Without

such allegations (and allegations of actual knowledge), the Class Plaintiffs do not state a claim.

The Class Plaintiffs also cannot state a TSA claim by suggesting (as they do in only

vague, conclusory terms (Compl. ¶¶ 448-50)) that Hunton materially assisted TSA violations by

failing to disclose unspecified information to investors.  The Class Plaintiffs do not allege that

Hunton prepared (or assisted in preparing) any materials specifically intended for Stanford

investors, *see, e.g.*, *Abell*, 858 F.2d at 1125, or itself "solicit[ed] any purchase of securities or

prepare[d] any solicitation documents," *Schatz*, 943 F.2d at 492.  The consequence is that

Hunton did not owe investors any duty of disclosure; indeed, the law is clear that attorneys "have

privileges not to disclose" to third parties information acquired while representing a client.[16]  *See*

*Abell*, 858 F. 2d at 1133; *accord Rawhide Mesa-Partners, Ltd. v. Brown McCarroll, LLP*, 344

S.W.3d 56, 62 (Tex. App. – Eastland 2011, no pet.); *Schatz*, 943 F.2d at 490-93; Tex.

---

[15] Courts may look to the federal securities laws "to aid in the interpretation" of the TSA.  *See Westcap Corp. v. City Colls. of Chi.(In re Westcap Enters.)*, 230 F.3d 717, 726 (5th Cir. 2000); *accord* Tex. Rev. Civ. Stat. Ann. art. 581-10-1A.

[16] Of course, the Complaint also lacks facts showing that Hunton knew information that Stanford was required to disclose to investors.  (*See* Factual Background, § C.1.)

Disciplinary R. Prof. Conduct 1.05 (1989).  Because Hunton did not owe investors any duty, its alleged failure to disclose "cannot be considered in determining whether [Hunton] rendered substantial assistance in the primary violation of the Securities Act."  *Navarro v. Grant Thornton, LLP*, 316 S.W.3d 715, 721-22 (Tex. App. – Houston [14th Dist.] 2010, no pet.).

### B.     Texas Law Does Not Recognize A Claim For Conspiracy To Violate The TSA (Count 4 & Portion Of Count 7).

In Count 4, the Class Plaintiffs seek to state a claim for "Co-Conspirator Liability" under the TSA.  (Compl. ¶ 451.)  However, their scant and conclusory allegations do not tell Hunton what aspect of the TSA that Hunton purportedly conspired to violate.  That approach "fails to give [Hunton] fair notice of what the [claims are] and the grounds upon which [they] rest[]" and thus fails Rule 8's most basic requirement.  *See Am. Realty Trust, Inc.*, 362 F. Supp. 2d at 748.

In any event, to the extent Count 4 is an effort to enhance the TSA by imposing co-conspirator liability, Count 4 fails as a matter of law.  Only two categories of defendants may be sued under the TSA:  (1) those who directly violate the statute's terms, and (2) those who knowingly aid the direct violators.  *See* Tex. Rev. Civ. Stat. Ann. art. 581-33F.  The TSA thus provides no basis for a conspiracy claim.  Count 4 also partially duplicates Count 7, in which the Class Plaintiffs assert a claim for "Civil Conspiracy" based on, among other things, alleged violations of the TSA.  (*See* Compl. ¶ 456.)  Ultimately, the Class Plaintiffs fail to state any conspiracy claim—based on the TSA or otherwise—as demonstrated in Part VI below.

### C.     All Of The TSA Claims Fail Because The Class Plaintiffs Do Not Plead Viable TSA Violations (Counts 1-4 & Portion Of Count 7).

The Class Plaintiffs also fail to plead viable TSA violations.  Without primary violations of the TSA, the Class Plaintiffs fail to state a claim for derivative TSA liability against Hunton. *See Crescendo Invs., Inc.*, 61 S.W.3d at 472; *see also* Tex. Rev. Civ. Stat. Ann. art. 581-33F(2).

**1.    The Claims Based On Sales Of Unregistered Securities Are (i) Preempted By Federal Law And (ii) Barred By The Applicable Statute Of Repose (Counts 1, 4, & Portion Of Count 7).**

For two reasons, as a matter of law, the Class Plaintiffs cannot base a derivative claim against Hunton on Stanford's alleged sale of unregistered securities in violation of the TSA.

*First*, the National Securities Market Improvement Act ("NSMIA") preempts the Class Plaintiffs' claims.  The NSMIA provides that "no law . . . of any State" that requires registration of securities "shall directly or indirectly apply to a security that is a covered security."  15 U.S.C. § 77r(a)(1)(A).  "Covered securities" include offerings exempt under Regulation D ("Reg D."). 15 U.S.C. § 774r(b)(4)(D); *see also* 17 C.F.R. § 230.506(a) (2014).  The Class Plaintiffs specifically allege that Stanford sold CDs pursuant to a Reg. D exemption (Compl. ¶¶ 40-42), meaning the CDs were "covered securities" for NSMIA purposes and therefore exempt from TSA registration.  Although the Class Plaintiffs baldly assert that Stanford's offerings did not actually meet the Reg. D requirements (*see id.* ¶ 444), securities are "covered securities" under NSMIA as long as the offeror purports to sell them under Reg. D, "[r]egardless of whether the private placement actually complied with the substantive requirements of Regulation D or Rule 506," *Temple v. Gorman*, 201 F. Supp. 2d 1238, 1244 (S.D. Fla. 2002).  In *Temple*, the court dismissed two claims for the sale of unregistered securities in violation of Florida law, holding that as long as the securities were sold pursuant to Reg. D, "any attempt by [the state] to require registration of such securities or securities transaction would be preempted by NSMIA."  *Id.* Thus, because the Class Plaintiffs themselves allege that Stanford sold CDs pursuant to a Reg. D exemption (Compl. ¶¶ 40-42), "any allegation of improper registration is covered exclusively by federal law" and *not* the TSA, *see Pinnacle Commc'ns Int'l, Inc. v. Am. Family Mortg. Co.*, 417 F. Supp. 2d 1073, 1087 (D. Minn. 2006) (dismissing claim for failure to register securities).

*Second*, the TSA's three-year statute of repose, Tex. Rev. Civ. Stat. Ann. art. 581-

33H(1)(a), bars the Class Plaintiffs' claims to the extent they are based on securities the Class Plaintiffs purchased before February 1, 2008, which is three years before Hunton and the Class Plaintiffs executed a tolling agreement (*see* Compl. ¶ 404).  In addition, CD sales within the repose period (*i.e.*, after February 1, 2008) cannot serve as the basis for a viable aiding and abetting or conspiracy claim because the Class Plaintiffs do not allege that Hunton advised on or engaged in any conduct related to securities sales, marketing, or registration (the premise of their TSA claims) after February 1, 2008.  *Cf. Crescendo Invs., Inc.*, 61 S.W.3d at 473.

> **2.     The Claims Based On Sales By Unregistered Dealers Fail Because (i) SIBL Was Exempt From Registering, And  (ii) The Statute Of Repose Bars All Claims (Counts 2, 4, & Portion Of Count 7).**

Nor do the Class Plaintiffs state a claim by asserting that Hunton supposedly assisted "the global conglomeration of entities collectively known as 'Stanford Financial'" in acting as an unregistered dealer of securities in Texas.  (Compl. ¶ 445.)  *First*, the TSA applies only to sales of securities by a "person, firm, corporation, or dealer," not by a "conglomeration" without a formal corporate identity.  *See* Tex. Rev. Civ. Stat. Ann. art. 581-12A.

*Second*, and more importantly, the Class Plaintiffs *concede* that Stanford Group Company—through which SIBL sold many of its CDs—was, in fact, registered as a broker-dealer.  (Compl. ¶¶ 23, 31.)  The TSA does not extend to securities sold through a registered dealer.  *See* Tex. Rev. Civ. Stat. Ann. art. 581-4(C).  As a matter of law, there was no registration violation that Hunton supposedly aided and abetted (or conspired to commit).

*Third*, the Class Plaintiffs' claims based on sales by unregistered dealers are subject to the same three-year statute of repose that applies to claims based on unregistered sales of securities, as discussed in Part III.C.1.  Thus, the statute bars the Class Plaintiffs' attempt to recover for sales that occurred before February 1, 2008.  As to claims arising from sales after that date, the Class Plaintiffs allege no conduct by Hunton within that period that had anything to do

with securities sales or marketing, or the registration of Stanford entities.

### 3.   The TSA's Statute Of Repose Bars The Claims Based On Alleged Untruths Or Omissions (Counts 3, 4, & Portion Of Count 7).

The Class Plaintiffs also cannot state a derivative claim against Hunton based on alleged untruths or omissions made by Stanford to investors because a five-year statute of repose applies to such claims. *See* Tex. Rev. Civ. Stat. Ann. art. 581-33H(2)(b). Here, the Class Plaintiffs may not sue based on any CDs that they purchased before February 1, 2006 (five years before the tolling agreement). Again, however, the Class Plaintiffs allege no conduct by Hunton within the five-year repose period that had anything to do with any representations to Stanford investors.

### IV.   The Court Should Dismiss The Class Plaintiffs' Claims For Aiding & Abetting Breaches of Fiduciary Duty (Count 5).

Count 5 fails as a matter of law for three reasons. *First*, the qualified immunity doctrine bars the claim. Courts have refused to "expand Texas law to allow a non-client"—like the Class Plaintiffs here—"to bring a cause of action for 'aiding and abetting' a breach of fiduciary duty, based upon the rendition of legal advice to an alleged tortfeasor client." *Crain, Caton & James, P.C.*, 178 S.W.3d at 407; *see also Taylor v. Allstate Ins. Co.*, 356 S.W.3d 92, 100 n.4 (Tex. App. – Houston [1st Dist.] 2011, pet. denied); *Span Enters. v. Wood*, 274 S.W.3d 854, 858-59 (Tex. App. – Houston [1st Dist.] 2008, no pet.).

*Second*, Count 5 fails because it is a thinly veiled and flawed attempt to circumvent the bar on liability for aiding and abetting violations of the federal securities laws. According to the Class Plaintiffs, (1) Mr. Stanford and certain Stanford entities owed fiduciary duties to investors because they were "investment advisers" under the federal securities laws (*see* Compl. ¶¶ 452-53); (2) those "investment advisers" breached their fiduciary duties (*id.* ¶¶ 453-54); and (3) "Defendants" supposedly aided and abetted those breaches—*i.e.*, Stanford's violations of federal law—in some unspecified manner (*id.* ¶ 454). Such vague and conclusory group

pleading falls far short of satisfying pleading requirements, *see, e.g.*, *Synergy Real Estate*, 2013 WL 5596795, at *2, but even if it did, the U.S. Supreme Court's decision in *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 191 (1994) bars the claim.

In *Central Bank*, 511 U.S. at 191, the Supreme Court made clear that there is no private cause of action for aiding and abetting a violation of Section 10(b) of the Securities Exchange Act of 1934 (the " '34 Act"). The Class Plaintiffs cannot use state law to put a "gloss" on federal law that the Supreme Court has confirmed does not exist. Nor can they circumvent *Central Bank* by sporadically alleging that the "Defendants" somehow aided Stanford in violating the federal Investment Company Act of 1940 rather than the '34 Act. (*See, e.g.*, Compl. ¶ 448.) Courts have made clear that the ban on aiding and abetting claims extends to the Investment Company Act as well. *See, e.g.*, *McLachlan v. Simon*, 31 F. Supp. 2d 731, 739 n.7 (N.D. Cal. 1998); *In re ML-Lee Acquisition Fund II, LP*, 848 F. Supp. 527, 547 (D. Del. 1994).

*Third*, the Class Plaintiffs fail to state the elements of a claim for aiding and abetting a breach of fiduciary duty. As to knowledge, the Class Plaintiffs baldly assert that "Defendants" "were aware" that Mr. Stanford and others were breaching their fiduciary duties by, among other things, "advising [the Class Plaintiffs] to invest their money in the SIBL CDs" when such investments were "imprudent and unsuitable for any investor." (Compl. ¶¶ 453-54.) Yet the Class Plaintiffs do not explain *how* Hunton was supposedly "aware" that CDs were "imprudent" investments (*see id.*), especially in light of their counsel's admission that Hunton did not know of the Ponzi scheme. As to assistance, the Class Plaintiffs allege only that Hunton performed limited legal services advising on and drafting documentation for transactions and litigation that had nothing to do with securities work. (*Id.* ¶¶ 246, 252-76, 300-02, 308-15, 329-386.) Attorneys are not liable to non-clients when their work consisted of "daily grist of the mill" activities or merely acting as "scrivener." *Schatz*, 943 F.2d at 497; *accord Camp v. Dema*, 948

F.2d 455, 464 (8th Cir. 1991); *Broad-Bussel Family LP v. Bayou Grp. LLC (In re Bayou Hedge Funds Inv. Litig.)*, 472 F. Supp. 2d 528, 533-34 (S.D.N.Y. 2007); *In re Cascade Int'l Secs. Litig.*, 840 F. Supp. 1558, 1566 (S.D. Fla. 1993); *cf. Dyer v. Shafer, Gilliland, Davis, McCollum & Ashley, Inc.*, 779 S.W.2d 474, 479 (Tex. App. – El Paso 1989, writ denied).

## V.     The Court Should Dismiss The Class Plaintiffs' Claims For Aiding & Abetting A Fraudulent Scheme (Count 6).

The Court should dismiss Count 6, for aiding and abetting a fraudulent scheme.  *First*, Count 6 fails as a matter of law because Texas courts, including the Texas Supreme Court, have declined to recognize this cause of action.  *See Grant Thornton, LLP v. Prospect High Income Fund, ML CBO IV*, 314 S.W.3d 913, 930 n.28 (Tex. 2010); *Ernst & Young, LLP v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 583 n.7 (Tex. 2001); *Span*, 274 S.W.3d at 859.

*Second*, the Class Plaintiffs do not come close to meeting the heightened standards of Rule 9(b), which indisputably apply to any fraud claim.  *See Am. Realty Trust, Inc.*, 362 F. Supp. 2d at 749-53.  In the one-paragraph Count 6, the Class Plaintiffs allege that "Defendants assisted and enabled Stanford Financial . . . in their sales of SIBL CDs to Plaintiffs through their services to Stanford."  (Compl. ¶ 455.)  That vague group pleading utterly fails to provide the "who, what, when, where, and how" that Rule 9(b) requires.  *See Melder*, 27 F.3d at 1100 n.5.

*Third*, even if Texas recognized claims for aiding and abetting a fraud, the Class Plaintiffs do not plead the elements of such a claim.  As to the fraudulent scheme that Hunton purportedly knowingly aided and abetted, counsel for the Class Plaintiffs have already conceded that Hunton did not know about the Ponzi scheme.  (Doc. 63 at 4).  As a result, it is unclear what fraud Hunton is supposed to have knowingly furthered.  The Class Plaintiffs cannot, for example, base Count 6 on alleged securities fraud; that would run afoul of *Central Bank*, as described above in Part IV, as well as flout the TSA, which itself provides for claims for aiding and

abetting the violation of its terms.  The Class Plaintiffs also fail to plead particularized facts

showing Hunton's supposed actual knowledge of and assistance to a fraudulent scheme.  For all

of the reasons discussed above in Parts II and III, the Class Plaintiffs do not allege facts showing

that Hunton actually had anything to do with "sales of SIBL CDs to Plaintiffs," the language

used in the one paragraph constituting Count 6.  (Compl. ¶ 455.)

## VI.    The Class Plaintiffs Do Not State A Claim For Civil Conspiracy (Count 7).

In Count 7, the Class Plaintiffs attempt—but fail—to state a claim for civil conspiracy.

They allege that undifferentiated "Defendants" supposedly "had a meeting of the minds with the

principals of Stanford Financial since 1988"—before Hunton ever represented Stanford—and

supposedly "agreed to assist Stanford Financial to establish SIBL CD sales operations in the U.S.

while evading U.S. laws and regulations, which evasion was crucial and central to the

perpetuation of Stanford's Ponzi scheme."  (*Id.* ¶ 457.)  The Class Plaintiffs further allege that

"Stanford's Ponzi scheme conspiracy revolved around evading regulation," which was necessary

"to allow Stanford Financial and SIBL to continue in business" operating as a "global securities

fraud Ponzi scheme."  (*Id.* ¶¶ 11, 457-58.)  As demonstrated below, these allegations fall far

short of stating a conspiracy claim, let alone with the particularity that Rule 9(b) requires.  *See,

e.g.*, *In re Enron*, 761 F. Supp. 2d at 570.

A claim for civil conspiracy requires the Class Plaintiffs to allege facts to support each of

the following elements: (1) a combination of two or more persons; (2) an object to be

accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more

unlawful, overt acts in furtherance of the object or course of action; and (5) damages as the

proximate result.  *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005).  Importantly, the "meeting of

the minds" element requires the Class Plaintiffs to plead facts demonstrating that Hunton, as an

alleged co-conspirator, knew the object and purpose of the conspiracy, agreed to join the scheme,

and did so with the *specific intent to injure* the Class Plaintiffs.  *See, e.g.*, *Marlin v. Moody Nat'l Bank, N.A.*, 248 F. App'x 534, 538 (5th Cir. 2007); *Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex. 1996).  Hunton can "only be liable for conspiracy if [it] agreed to the *injury* to be accomplished; agreeing to the *conduct* ultimately resulting in [the Class Plaintiffs' alleged] injury is not enough" to state a claim.  *See Chu v. Hong*, 249 S.W.3d 441, 446 (Tex. 2008); *accord Juhl*, 936 S.W.2d at 644; *Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 617 (Tex. 1996); *Triplex Commc'ns, Inc. v. Riley*, 900 S.W.2d 716, 719-20 (Tex. 1995).

*First*, the Class Plaintiffs fail to allege (because they cannot honestly do so) any facts showing that Hunton supposedly agreed to join a conspiracy.  The Class Plaintiffs' allegations impermissibly lump together all of the "Defendants" and allege in conclusory fashion that those undifferentiated Defendants "joined the conspiracy and had a meeting of the minds with the principals of Stanford Financial since 1988."  (Compl. ¶ 457.)  This is far from sufficient: the Class Plaintiffs were required to allege facts demonstrating that *Hunton* and its alleged co-conspirators shared "a common purpose" to injure the Class Plaintiffs and that *Hunton* understood that the other alleged conspirators shared that same purpose.  *See Zervas v. Faulkner*, 861 F.2d 823, 836 (5th Cir. 1988).  This means the Class Plaintiffs had to plead "when any [supposed] meeting of the minds occurred" between *Hunton* and other alleged co-conspirators, and "precisely what the interaction was or what actions were decided upon."  *See Berry v. Indianapolis Life Ins. Co.*, 608 F. Supp. 2d 785, 794-95 & n.10 (N.D. Tex. 2009); *accord R2 Invs. v. Phillips*, No. 302CV0323N, 2003 WL 22862738, at *7 (N.D. Tex. Mar. 26, 2003) (Godbey, J.) (same), *aff'd*, 401 F.3d 638 (5th Cir. 2005).  Here, however, the Class Plaintiffs fail to allege such basic facts as: (1) when, within an over 20-year period, including a 13-year period before Hunton had any contact with Stanford (Compl. ¶ 245), Hunton supposedly had a meeting of the minds; (2) with whom Hunton allegedly had a meeting of the minds; and (3) what was

supposedly agreed upon.  *See Berry*, 608 F. Supp. 2d at 794-95.  The Court should reject the

Class Plaintiffs' group pleading and "formulaic recitation of the elements" of civil conspiracy,

*see Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009), which certainly fail under Rule 9(b).

     *Second*, the Class Plaintiffs do not allege any facts (let alone particularized ones) that

plausibly suggest that Hunton agreed to conspire to commit the "Ponzi scheme" that injured the

Class Plaintiffs.  (Compl. ¶ 457.)  The reason is simple: as the Receiver and OSIC have conceded

(Doc. 63 at 4), Hunton *did not know* of the alleged "Ponzi scheme conspiracy," and thus could

not—and did not—join that conspiracy.  That defeats the conspiracy claim:  "[o]ne without

knowledge of the object and purpose of a conspiracy cannot be a co-conspirator; he cannot agree,

either expressly or tacitly, to the commission of a wrong which he knows not of."  *Schlumberger

Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 857 (Tex. 1969); *accord

Zervas*, 861 F.2d at 836; *R2 Invs.*, 2003 WL 22862738, at *7; *Juhl*, 936 S.W.2d at 644.

     *Third*, the Class Plaintiffs fail to allege facts that plausibly suggest that any *other*

conspiracy existed in which Hunton purportedly agreed to participate.  The Class Plaintiffs allege

that "Defendants" engaged in conduct supposedly designed to "shield Stanford Financial from

regulatory scrutiny so as to allow Stanford Financial and SIBL to continue in business."  (Compl.

¶ 458.)  But Stanford Financial's and SIBL's alleged business was to sell the SIBL CDs that

were used to effectuate the alleged "Ponzi scheme conspiracy" (*id.* ¶¶ 10-11, 44), and Hunton

admittedly *did not know* about the Ponzi scheme.  A claim for "'civil conspiracy requires specific

intent' to agree 'to accomplish an *unlawful* purpose or to accomplish a lawful purpose by

unlawful means.'"  *Juhl*, 936 S.W.2d at 644 (emphasis added) (quoting *Triplex*, 900 S.W.2d at

719).  The Class Plaintiffs plead neither here; under their own allegations, the only reason it was

allegedly unlawful to continue the Stanford business was because that business was a Ponzi

scheme, and Hunton was *not* aware of that scheme.  For the same reason, the Class Plaintiffs do

not allege, as required, that Hunton specifically intended to injure the Class Plaintiffs by

supposedly conspiring to continue the Stanford business.  *See, e.g.*, *Chu*, 249 S.W.3d at 446;

*Juhl*, 936 S.W.2d at 644.  Accordingly, the Court should dismiss Count 7 with prejudice.

**VII.    The Class Plaintiffs' *Respondeat Superior* Claim Fails Because It Does Not State A Viable Underlying Tort Claim Against Any Hunton Employee (Count 8).**

At the end of the Complaint, in Count 8, the Class Plaintiffs appear to allege that Hunton

is liable under the doctrine of *respondeat superior* for the allegedly tortious acts of its partner,

Mr. Loumiet, from 2001 until the Receivership was initiated in 2009.  (Compl. ¶ 459.)  The

Court should dismiss that claim because the Class Plaintiffs' other claims fail, and there is no

*respondeat superior* liability without an underlying tort.  *See G&H Towing Co. v. Magee*, 347

S.W.3d 293, 295 (Tex. 2011); *Arisma Grp., LLC v. Trout & Zimmer, Inc.*, No. 3:08-cv-1268,

2009 WL 3573418, at *8 (N.D. Tex. Oct. 30, 2009).

## CONCLUSION

For all of the reasons discussed herein, the Court should dismiss all of the Class

Plaintiffs' claims with prejudice.

Date:  April 18, 2014                                    Respectfully submitted,

Richard A. Sayles                                       By:   s/ Jeffrey D. Colman
Shawn Long                                                      Jeffrey D. Colman
SAYLES WERBNER                                          David Jiménez-Ekman
4400 Renaissance Tower                                  April A. Otterberg
1201 Elm Street                                         Kaija K. Hupila
Dallas, Texas 75270                                     JENNER & BLOCK LLP
dsayles@swtriallaw.com                                  353 N. Clark Street
(214) 939-8701                                          Chicago, IL 60654-3456
(214) 939-8787 (Facsimile)                              jcolman@jenner.com
                                                        (312) 923-2940
*Counsel for Hunton & Williams LLP*                     (312) 840-7340 (Facsimile)

                                                        *Counsel for Hunton & Williams LLP*
                                                        *Admitted* Pro Hac Vice

## CERTIFICATE OF SERVICE

I hereby certify that on April 18, 2014, I electronically filed the foregoing **Hunton & Williams LLP's Motion to Dismiss Claims Asserted by the Putative Class and Its Representatives and Supporting Memorandum of Law** with the clerk of the U.S. District Court, Northern District of Texas, using the electronic case filing (ECF) system of the court. The ECF system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this notice as service of this document by electronic means. Copies will be sent to those indicated as non-registered participants by U.S. Mail or facsimile at the addresses of their counsel of record or last known residence.

s/ Jeffrey D. Colman
JEFFREY D. COLMAN