IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THE OFFICIAL STANFORD | § | |
| INVESTORS COMMITTEE, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:12-CV-4641-N |
| | § | |
| GREENBERG TRAURIG, LLP, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

This Order addresses Defendants Greenberg Traurig's ("Greenberg") motion for partial dismissal [27][1], Hunton & Williams LLP's ("Hunton") motion to dismiss [49], and Yolanda Suarez's motion to dismiss [56].[2]  The Court grants Defendants' motions in part and denies them in part.

## I. THE ORIGIN OF THE DISPUTE

This case arises out of the Ponzi scheme perpetrated by R. Allen Stanford, his associates, and various entities under his control (collectively "Stanford").  As part of the litigation associated with the Stanford scheme, this Court assumed exclusive jurisdiction and took possession of the "Receivership Assets" and "Receivership Records" (collectively, the

---

[1]This Order resolves only Greenberg's arguments for dismissal directed at the Receiver's and the Official Stanford Investors Committee's claims.  Insofar as it seeks dismissal of Class claims also pending in this suit, the motion remains pending.

[2]The Order also grants Suarez's motion to join in Greenberg's and Hunton's replies [77].

"Receivership Estate").  *See* Second Am. Order Appointing Receiver, July 19, 2010 [1130] (the "Receivership Order"), *in SEC v. Stanford Int'l Bank*, Civil Action No. 3:09-CV-0298-N (N.D. Tex. filed Feb. 17, 2009).  The Court appointed Ralph S. Janvey to serve as Receiver of the Receivership Estate and vested him with "the full power of an equity receiver under common law as well as such powers as are enumerated" in the Receivership Order.  *Id.* at 3. Among these enumerated powers, the Court "authorized [the Receiver] to immediately take and have complete and exclusive control, possession, and custody of the Receivership Estate and to any assets traceable to assets owned by the Receivership Estate."  *Id.* at 4. Additionally, the Court "specifically directed and authorized [the Receiver] to . . . [c]ollect, marshall, and take custody, control, and possession of all the funds, accounts, mail, and other assets of, or in the possession or under the control of, the Receivership Estate, or assets traceable to assets owned or controlled by the Receivership Estate, wherever situated," *id.*, and to file in this Court "such actions or proceedings to impose a constructive trust, obtain possession, and/or recover judgment with respect to persons or entities who received assets or records traceable to the Receivership Estate."  *Id.* at 5.

Pursuant to those powers, the Receiver, along with the Official Stanford Investors Committee ("OSIC") (collectively, "Plaintiffs")[3] filed this suit against Greenberg and Hunton, firms that represented Stanford in various capacities, and against Suarez, former General Counsel for Stanford Financial Group and later Allen Stanford's Chief of Staff.

---

[3]This action also involves claims filed by a putative class of investors against Greenberg and Hunton.  The Court will address the motions to dismiss those claims by separate Order.

Plaintiffs bring claims in this action for (1) professional negligence/malpractice; (2) aiding, abetting, or participation in breaches of fiduciary duties; (3) breaches of fiduciary duties; (4) fraudulent transfer/unjust enrichment (as to Greenberg and Hunton only); (5) aiding, abetting, or participation in fraudulent transfers; and (6) negligent retention/negligent supervision (as to Greenberg and Hunton only).

The theories supporting Plaintiffs' claims are complex.  At root, Plaintiffs allege Defendants contributed to the success and eventual downfall of the Stanford Ponzi scheme through the provision of deficient legal services.  Greenberg's and Hunton's liability is primarily predicated on the conduct of Carlos Loumiet, an attorney and partner first at Greenberg and later at Hunton.  Defendants seek dismissal of Plaintiffs' claims on various grounds including failure to meet applicable pleading standards, limitations, and the nonexistence of certain causes of action.

## II. THE LEGAL STANDARD

### A. Rule 12(b)(6)

When faced with a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief.  *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995).  A viable complaint must include "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A court generally accepts

well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). But a court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

### B. Rule 9(b) Does Not Apply to Plaintiffs' Claims

Defendants assert Plaintiffs must meet the higher pleading standard enumerated in Federal Rule of Civil Procedure 9(b). *See* FED. R. CIV. P. 9(b). Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *Id.* However, "[b]y its clear terms, Rule 9(b) applies only to averments of fraud or mistake, not to averments of negligence, breach of fiduciary duty or non-fraudulent misstatement." *Tigue Inv. Co., Ltd. v. Chase Bank of Tex., N.A.*, 2004 WL 3170789, at *2 (N.D. Tex. 2004). Additionally, Rule 9(b) generally does not apply to claims brought pursuant to the Texas Uniform Fraudulent Transfer Act ("TUFTA"). *See Janvey v. Alguire*, 846 F. Supp. 2d 662, 675–76 (N.D. Tex. 2011). Exceptions to these rules may arise "when fraudulent conduct is alleged to underlie a claim for which fraud is a possible – but not a necessary – element. In such cases, particularity is only required to the extent that a plaintiff in fact alleges fraud." *Tigue*, 2004 WL 3170789, at *2.

Here, the Court rejects Defendants contentions that Plaintiffs' claims are subject to Rule 9(b).  Plaintiffs do not bring claims for fraud; rather, their claims sound in negligence and breach of fiduciary duty.  The only claim that overtly implicates fraudulent conduct is the TUFTA claim which, as discussed, is not subject to Rule 9(b).  *Alguire*, 846 F. Supp. 2d at 675–76.  Defendants assert that because Plaintiffs' claims are based in part on the perpetuation of the Stanford fraud, fraud underlies the claims and implicates Rule 9(b).  *See* Greenberg's Reply 9–10 [74].  However, this argument mischaracterizes the nature of the exception as described in *Tigue*.  Rule 9(b) may apply to nonfraud claims if fraud is a possible *element* of the claim.  *Tigue*, 2004 WL 3170789, at *2.  Although Plaintiffs' claims arise from the perpetuation of the Stanford Ponzi scheme, Defendants make no showing that proof of the Ponzi scheme or any other fraud is an element of Plaintiffs' claims.  Accordingly, Plaintiffs' claims are subject to the pleading standards enumerated in Federal Rule of Civil Procedure 8(a).

### III. The Court Denies Hunton and Suarez's Threshold Defenses

Hunton and Suarez assert Plaintiffs' claims against them should be dismissed for failure to plead that either provided actionable, deficient legal services.  Hunton also argues that a number of claims against it must be dismissed because Plaintiffs' fail to allege Hunton knew about the Stanford Ponzi scheme.  The Court declines to dismiss based on either argument.

### A. Plaintiffs Adequately Plead Deficient Legal Services

Hunton and Suarez challenge Plaintiffs' claims for (1) negligence/professional malpractice, (2) aiding, abetting, or participation in breach of fiduciary duty, and (3) breach of fiduciary duty for failure to plead that any of the legal services provided were deficient. The Court finds Plaintiffs adequately plead Hunton and Suarez provided actionably deficient legal services.

Lawyers owe their clients a duty to protect them from liability in every possible way. *See FDIC v. O'Melveny & Myers*, 969 F.2d 744, 748–49 (9th Cir. 1992), *rev'd on other grounds*, 512 U.S. 79 (1994). Lawyers discharge this duty by "us[ing] the skill, prudence, and dilligence commonly exercised by practitioners of [their] profession." *Willis v. Maverick*, 760 S.W.2d 642, 645 (Tex. 1988). This duty has been interpreted variously to require lawyers to "advise [clients] of the legality of their actions,"[4] to "take appropriate action to advise [a client's directors], and to help them avoid wrongdoing that could seriously harm [their] corporate client,"[5] and "where a law firm believes the management of a corporate client is committing serious regulatory violations," to "actively discuss the violative conduct, urge cessation of the activity, and withdraw from representation where the firm's legal services may contribute to the continuation of such conduct."[6] Hunton proposes

---

[4] *Reneker v. Offill*, 2009 WL 3365616, at *5 (N.D. Tex. 2009).

[5] *Antioch Litig. Trust v. McDermott Will & Emery LLP*, 738 F. Supp. 2d 758, 771 (S.D. Ohio 2010).

[6] *In re American Continental Corp./Lincoln Sav. & Loan Sec. Litig.*, 794 F. Supp. 1424, 1453 (D. Ariz. 1992).

no principled reason for restricting these cases to their facts.  *See* Hunton's Reply 11–14 [76]. As set forth by Plaintiffs, the cases support a general duty belonging to an attorney to shield clients from liability stemming from known wrongdoing, and to avoid rendering assistance to a client in violation of the law.

Plaintiffs plead facts concerning both Hunton and Suarez that give rise to actionable claims.  As to Suarez, for example, Plaintiffs allege (1) she knowingly assisted in procuring regulator letters designed to mislead the Federal Reserve, *see* Compl. ¶¶ 93–94 [1]; (2) she attempted to stymie journalistic investigation into Stanford's ties to Antigua, *see id.* ¶ 160; (3) she assisted in Stanford's continuing efforts to sell securities in the U.S. while avoiding regulation, *see, e.g.*, *id.* ¶¶ 165–185; (4) she knew Stanford was accused of violating Mexican and Ecuadorian law, *see id.* ¶¶ 319–326; and (5) she assisted in the provision of false Reg. D Disclosures for the sale of Stanford certificates of deposit ("CDs") in the U.S., *see id.* ¶¶ 208–213.  Taken together with the remainder of the complaint, Plaintiffs make out a case that Suarez, in possession of a plethora of facts suggesting Stanford's wrongdoing, continued to assist Stanford and his entities in skirting regulation.

Plaintiffs allege Hunton possessed awareness of a similar set of red flags concerning the Stanford enterprise.  For example, Plaintiffs allege that Hunton knew Stanford had been accused by the U.S. Office of the Comptroller of the Currency of violating U.S. banking laws by operating unlicensed banks, *see id.* ¶ 57, that Stanford's goal was to operate an offshore investment company and evade U.S. regulation, *see id.* ¶ 49, and that Stanford International Bank's ("SIBL") operations were actually being run from the United States, *see id.* ¶¶ 83–84.

Plaintiffs further allege that despite awareness of these red flags, Hunton assisted in skirting Panamanian and Venezuelan regulators, *see id.* ¶¶ 309–311, making private equity and venture capital investments using CD proceeds without disclosing the investments to CD investors, *see id.* ¶¶ 345–350, and structuring real estate deals using CD proceeds without disclosing the deals to CD investors, *see id.* ¶¶ 351–359.  Accepted as true, these allegations support a reasonable inference that Hunton and Suarez were aware to a substantial degree of Stanford's misconduct, yet nevertheless continued to provide legal services that ultimately contributed to the proliferation and success of the underlying scheme.  These are sufficient allegations to support claims based on attorney malpractice.

### B. Plaintiffs Are Not Required to Plead Hunton Knew of the Stanford Ponzi Scheme

Hunton contends Plaintiffs' aiding and abetting claims, fraudulent transfer claims, and unjust enrichment claims must be dismissed because Plaintiffs fail to plead Hunton was aware of the Stanford Ponzi scheme, and thus cannot plead the requisite scienter for those claims.  This argument fails because Plaintiffs need not allege Defendants' awareness of the scheme itself in order to plead scienter.  Rather, aiding and abetting claims "require that the defendant have 'an unlawful intent, i.e., knowledge that the other party is breaching a duty and the intent to assist that party's actions.'" *Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex. 1996) (quoting *Payton v. Abbott Labs*, 512 F. Supp. 1031, 1035 (D. Mass. 1981)).  Thus, while an aider must have knowledge of an underlying breach, it need not be specific knowledge of the extent of that breach.  *Cf. Sterling Trust Co. v. Adderley*, 168 S.W.3d 835, 842 (Tex. 2005) (holding that for aiding and abetting claims under the Texas Securities Act

the knowledge requirement demands only a general awareness of an overall activity that is improper).

Hunton's argument as to the fraudulent transfer claims similarly fails. Hunton argues its lack of knowledge of the underlying Ponzi scheme entitles it to rely on the TUFTA good faith defense.[7] However, a defendant cannot rely on the TUFTA good faith defense merely because it did not know *the extent* of the transferor's misconduct. Plaintiff need not allege Hunton knew of the Ponzi scheme to allege bad faith.

### C. The Receiver Has Standing to Assert Tort Claims

Finally, Hunton and Suarez argue that dismissal of Plaintiffs' tort claims is required because Plaintiffs lack standing to assert them. This argument is multi-fold. Defendants assert (1) the Receiver lacks standing to assert claims on behalf of investors; (2) OSIC lacks standing to assert claims on behalf of investors; and (3) the Receiver's claims are barred by *in pari delicto*.

**1. The Receiver's Tort Claims Do Not Belong to Investors.** – Defendants' first argument fails because the Receiver's tort claims belong to the Receivership Estate. This Court has held that the Receiver may assert tort claims against third parties based on allegations that the third parties' torts contributed to the liabilities of the Receivership Estate. *See* Sept. 11, 2013 Order 8–9 [58], *in Janvey v. Adams & Reese*, Civil Action No. 3:12-CV-0495-N (N.D. Tex. filed Feb. 16, 2012) (the "*Adams & Reese* Order"). In the *Adams &*

---

[7]*See* TEX. BUS. & COM. CODE ANN. § 24.009(a). The TUFTA good faith defense is discussed in greater detail *infra* Subpart VI.A.1.

*Reese* Order, the Court held that claims against lawyer and director-defendants could go forward where the Receiver alleged that the defendants failed to prevent the Stanford Ponzi scheme and thus "harmed the Stanford Entities' ability to repay their creditor-investors." *Id.* at 9.  Similar logic applies here, because the Receiver alleges that Defendants' services were essential to the growth and success of the Stanford Ponzi scheme, and the liabilities that ultimately accompanied it.   The Receiver thus pleads that his claims belong to the Receivership Estate.

### 2. OSIC Has Standing to Bring the Asserted Tort Claims. – As an assignee of the Receiver's tort claims, OSIC has standing.  Indeed, Defendants concede that if the Receiver has standing to bring tort claims, then OSIC does as well.  *See* Hunton's Reply 29–30 (arguing OSIC lacks standing because the Receiver has none to assign).  Thus, having found that the Receiver does have standing to assert tort claims, Defendants' argument against OSIC's standing likewise fails.  OSIC has standing to assert the tort claims.

### 3. The Receiver's Standing Is Not Barred by In Pari Delicto. – The *in pari delicto* defense "is based on the common law notion that a plaintiff's recovery may be barred by his own wrongful conduct."  *In re Royale Airlines, Inc.*, 98 F.3d 852, 855 (5th Cir. 1996).  This Court has already held that the *in pari delicto* defense has little application when a receiver seeks to reclaim assets for innocent investors.  *See Adams & Reese* Order at 5–8; *see also Jones v. Wells Fargo Bank, N.A.*, 666 F.3d 955, 966 (5th Cir. 2012) ("[I]t is well established that 'when the receiver acts to protect innocent creditors . . . he can maintain and defend actions done in fraud of creditors even though the corporation would not be permitted to do

so.'" (quoting *Akin, Gump, Strauss, Hauer and Feld, L.L.P. v. E-Court, Inc.*, 2003 WL 21025030, at *5 (Tex. App. – Austin 2003, no pet.))).   The Court finds no basis for distinguishing this action from that considered in *Adams & Reese*.   Accordingly, the Court finds *in pari delicto* no impediment to the Receiver's standing to assert his tort claims. Having disposed of the Defendants' threshold defenses, the Court moves to consideration of defenses particular to Plaintiffs' individual claims.

## IV. THE NEGLIGENCE/MALPRACTICE CLAIMS

Plaintiffs style their first claim as one for negligence.   Because a legal malpractice claim is based on negligence, *see Kimleco Petroleum, Inc. v. Morrison & Shelton*, 91 S.W.3d 921, 923 (Tex. App. – Fort Worth 2002, pet. denied), and Plaintiffs base this claim on Defendants' duties as attorneys, the Court refers to the claim as one for legal malpractice. In order to state a claim for legal malpractice, a plaintiff must allege four elements: (1) the attorney owed the plaintiff a duty; (2) the attorney breached that duty; (3) the breach proximately caused the plaintiff's injuries; and (4) damages occurred.   *Alexander v. Turtur & Assocs., Inc.*, 146 S.W.3d 113, 117 (Tex. 2004).   Hunton and Suarez challenge elements two and three and four.   Hunton and Suarez also challenge OSIC's ability to bring a claim for legal malpractice.

### A. OSIC Does Not Assert a Malpractice Claim

Hunton and Suarez argue that as a nonclient, OSIC may not assert malpractice claims against attorney-Defendants.   In their response to Defendants' motions, the Receiver and OSIC represent that the negligence/professional malpractice claim belongs to the Receiver

alone.  *See* Pls.' Resp. 9 n.9 [63].  Subject to that concession, the Court denies Hunton and

Suarez's motions to dismiss OSIC's professional malpractice claim because OSIC does not

assert a professional malpractice claim.

### B. The Receiver Adequately Pleads that Hunton and Suarez Breached Duties

#### 1. The Receiver Adequately Alleges to Which Stanford Entities Duties Were Owed.

– Hunton and Suarez argue the Receiver fails to adequately plead to which of the Stanford

entities Hunton and Suarez owed duties.  The Court finds that the Receiver makes these

allegations with sufficient particularity at this stage.  First, the Receiver alleges generally that

Defendants owed a duty to each of the member entities of Stanford Financial Group.  *See*

Compl. ¶ 407.  The Receiver's factual allegations concerning Hunton's conduct adequately

supports this contention by stating which of the Stanford entities were involved in the matters

for which Hunton provided legal services.  *See, e.g.*, *id.* ¶¶ 329–334 (alleging Loumiet, while

at Hunton, assisted SIBL in avoiding regulation by the Eastern Carribean Central Bank); *id.*

¶¶ 370–386 (alleging Hunton assisted Stanford Fiduciary Investor Services in evading

regulation in Florida).  As to Suarez, the Receiver alleges her duty arose from her service as

general counsel of Stanford Financial Group from 1992 to 2002.  *Id.* ¶¶ 259, 411.  Accepting

these allegations as true, the Receiver adequately pleads that Defendants owed duties to the

relevant Stanford entities.

#### 2. The Receiver Adequately Alleges Deficient Legal Services.  – Hunton and Suarez

also argue the complaint fails to plead any deficient legal advice or service.  The Court

disagrees.  As previously discussed, the Receiver adequately pleads actionable conduct by Hunton and Suarez.  *See supra* Part III.A.

### 3. The Receiver Adequately Pleads Injury to the Stanford Entities. – Hunton and

Suarez argue the Receiver fails to plead any injury to the Stanford entities (as opposed to investors).  The Court has already addressed this contention and accordingly finds that the Receiver does assert claims belonging to the Stanford entities.  *See supra* Subpart III.C.1.

## C. The Receiver Adequately Pleads Causation

The proximate cause element of a malpractice claim consists of cause in fact, and foreseeability.  *Law Office of Oscar C. Gonzalez, Inc. v. Sloan*, 2014 WL 4257875, at *10 (Tex. App. – San Antonio 2014, pet. filed).  Cause in fact is established by a showing that the negligent act was a substantial factor in bringing about his injury and without which no harm would have been incurred." *Southwest Key Program, Inc. v. Gil-Perez*, 81 S.W.3d 269, 274 (Tex. 2002).  "The test for forseeability is whether 'the actor, as a person of ordinary intelligence, should have anticipated the dangers that [his] negligent conduct created for others.'" *Sloan*, 2014 WL 4257875, at *10 (quoting *Byrd v. Woodruff*, 891 S.W.2d 689, 701 (Tex. App. – Dallas 1994, writ dism'd by agr.)).

"The determination of proximate cause is usually a question of fact." *Millhouse v. Wiesenthal*, 775 S.W.2d 626, 627 (Tex. 1989).  This general rule applies to legal malpractice claims.  *Id.*  "Nonetheless, causation may be determined as a matter of law if the circumstances are such that reasonable minds could not arrive at a different conclusion." *Mackie v. McKenzie*, 900 S.W.2d 445, 449 (Tex. App. – Texarkana 1995, writ denied) (citing

*Missouri Pac. R.R. Co. v. American Statesman*, 552 S.W.2d 99, 105 (Tex. 1977)).  That standard is not yet met in this action.  The Receiver alleges that in the face of a number of red flags concerning the legality of Stanford's operations, Defendants continued to provide assistance in skirting regulation and enabling the Stanford entities to conduct their business. *See supra* Part III.A.  Reading the complaint in a light most favorable to the Receiver, he raises a reasonable inference that the Defendants' deficient legal services contributed to the size and scope of the underlying scheme, which ultimately resulted in Stanford's financial ruin.  At this stage, these are sufficient allegations to foreclose dismissal for lack of causation.

## V. THE BREACH OF FIDUCIARY DUTY CLAIMS

The Receiver and OSIC bring claims for (1) aiding and abetting or participation in breaches of fiduciary duty, and (2) breach of fiduciary duty.  Defendants assert that the standalone breach of fiduciary duty claim is impermissibly fractured from Plaintiffs' malpractice claims, and that Texas does not recognize a claim for aiding and abetting or participation in breaches of fiduciary duty.

### A. Defendants' Fracturing Arguments

The Texas "anti-fracturing" rule prevents plaintiffs from "convert[ing] what are really negligence claims into claims for fraud, breach of contract, *breach of fiduciary duty*, or violation of the DTPA." *Murphy v. Gruber*, 241 S.W.3d 689, 693 (Tex. App. – Dallas 2007, pet. denied) (emphasis added).  "If the gist of a client's complaint is that the attorney failed to exercise the degree of care, skill, or diligence that attorneys of ordinary skill and

knowledge commonly possess, then the legal malpractice claim is based on negligence." *Riverwalk Cy Hotel Partners, Ltd. v. Akin Gump Strauss Hauer & Feld, LLP*, 391 S.W.3d 229, 236 (Tex. App. – San Antonio 2012, no pet.). "Such a claim encompasses a cause of action based on an attorney giving a client bad legal advice or otherwise improperly representing the client." *Id.*

A breach of fiduciary duty claim, on the other hand, "involves the 'integrity and fidelity' of an attorney and focuses on whether an attorney obtained an improper benefit from representing the client." *Gibson v. Ellis*, 126 S.W.3d 324, 330 (Tex. App. – Dallas 2004, no pet.). A breach of fiduciary duty claim arises where an attorney "subordinates his client's interest to his own, retains the client's funds, engages in self-dealing, improperly uses client confidences, fails to disclose conflicts of interest, or makes misrepresentations to achieve these ends." *Riverwalk Cy Hotel Partners*, 391 S.W.3d at 236. Conflicts of interest giving rise to a breach of fiduciary duty claim "are those in which the lawyer has a direct pecuniary interest in the litigation that is adverse to the client, and the attorney pursues his own interest to the client's detriment. *Id.* (citing *Beck v. Law Offices of Edwin J. (Ted) Terry, Jr., P.C.*, 284 S.W.3d 416, 436 (Tex. App. – Austin 2009, no pet.). The mere expectation of continuing legal fees is not ordinarily a pecuniary interest sufficient to raise a claim for breach of fiduciary duty. *Beck*, 284 S.W.3d at 433; *Reneker*, 2009 WL 804134, at *10. A plaintiff may maintain both claims if he pleads facts supporting each. *See, e.g.*, *Sullivan v. Bickel & Brewer*, 943 S.W.2d 477, 482–83 (Tex. App. – Dallas 1995, writ denied) (allowing legal malpractice and fraud claims against attorney-defendants to proceed).

***1. Plaintiffs Fail to Plead an Independent Claim for Breach of Fiduciary Duty Against the Law Firms.*** – Plaintiffs argue that Hunton and Greenberg breached their fiduciary duties to the Stanford entities by subordinating the Stanford entities' interests to those of R. Allen Stanford in order to ensure the continued receipt of his business and legal fees. *See* Pls.' Resp. 33–34. Plaintiffs also allege Greenberg breached its duties by representing the Antiguan government contemporaneously with its representation of Stanford, and by assisting the Stanford entities in making loans to the Antiguan government during that time. *See id.* at 34–35.

These are not the kinds of conflicts that are contemplated by the cases interpreting Texas's breach of fiduciary duty claim. A conflict for the purposes of breach of fiduciary duty entails "self-dealing, deception, or misrepresentations" in the attorney's representation of the client. *Goffney v. Rabson*, 56 S.W.3d 186, 194 (Tex. App. – Houston [14th Dist.] 2001, pet. denied). An interest in the receipt of ordinary legal fees, while no doubt a pecuniary interest, is not an improper interest, and thus can not ordinarily support a claim for breach of fiduciary duty. *See Murphy*, 241 S.W.3d at 699 (holding allegations that attorneys took a case detrimental to plaintiff-clients' case in order to increase legal fees did not state a claim for breach of fiduciary duty); *cf. Archer v. Med. Protective Co. of Ft. Wayne, IN*, 197 S.W.3d 422, 427–28 (Tex. App. – Amarillo 2006, pet. denied) (finding actionable breach of fiduciary duty claim where attorney was alleged to have represented plaintiff-client despite having a business relationship with a defendant in the same litigation).

The cases allowing a breach of fiduciary duty claims based on legal fees focus on the impropriety underlying the collection of the fees, not the conduct performed in pursuit of the fees. For instance, in *Sullivan v. Bickel & Brewer*, the Court found a breach of fiduciary duty claim could be based on legal fees where the attorney was alleged to have both artificially inflated the legal fees charged, and to have unduly extended the duration of the litigation so as to improperly benefit from the continued receipt of the fees. 943 S.W.2d at 483. Here, on the other hand, the Receiver does not allege any impropriety in the collection or structuring of the legal fees. Rather, the Receiver alleges that Greenberg delivered substandard legal services in order to assure its continued employment by Stanford and the Stanford entities. This does not allege an improper pecuniary interest supporting a conflict of interest; rather, it alleges the same general interest in getting paid that underlies every legal representation, an interest that Texas courts have consistently found insufficient to support a claim for breach of fiduciary duty. *See Reneker*, 2009 WL 804134, at *10.

*Won Pak v. Harris*, 313 S.W.3d 454 (Tex. App. – Dallas 2010, pet. denied), is instructive. There, plaintiffs were a subset of clients who retained the defendant-attorney to represent them as part of a corporate merger. *Id.* at 456. After the plaintiffs were eventually excluded from the merger, they brought a breach of fiduciary duty claim against the attorney, alleging he had communicated in private with co-clients, and agreed to keep those communications confidential from plaintiffs. *Id.* at 457–58. The plaintiffs alleged that had they been aware the other clients were communicating in confidence with their shared attorney, they would have backed out of the merger. *Id.* at 458. The claim was based on the

attorneys' alleged interest in obtaining his legal fee from all clients, rather than in making the necessary disclosures each client was entitled to. *Id.* The Court held these allegations did not present an actionable claim for breach of fiduciary duty because the attorney's pecuniary interest in receiving his legal fee was not the type of improper benefit contemplated by a breach of fiduciary duty claim. *Id.* at 458–59. The situation here is analogous. Plaintiffs allege Defendants subordinated the interests of one client (the Stanford entities) to those of another client (R. Allen Stanford) in order to ensure continued receipt of business and legal fees from the latter. As in *Harris*, this is not an improper benefit supporting a claim for breach of fiduciary duty. Instead, "the gist of [Plaintiffs'] allegations involves the quality of [Defendants'] representation rather than the integrity and fidelity of the attorney. These complaints sound in negligence and not breach of fiduciary duty or fraud." *Id.* at 458.

### 2. *Plaintiffs Successfully Plead a Claim for Breach of Fiduciary Duty Against Suarez.* – Plaintiffs can successfully maintain claims for both malpractice and breach of fiduciary duty against Suarez because of her role as a director for the Stanford entities. As a director, Suarez took on fiduciary duties independent of those arising from her provision of legal services. *See, e.g.*, *In re Harwood*, 637 F.3d 615, 619–20 (5th Cir. 2011) ("Under Texas law, corporate officers and directors owe fiduciary duties to the corporations they serve and must not allow their personal interests to prevail over the interests of the corporation."). An officer or director may be held liable for breach of fiduciary duty "for acts of gross negligence, which may include the complete abdication of their responsibilities." *Resolution Trust Corp. v. Acton*, 844 F. Supp. 307, 315 (N.D. Tex. 1994).

Under this standard, Plaintiffs adequately plead a claim against Suarez for breach of fiduciary duty because the complaint as a whole alleges Suarez actively assisted the growth and success of Stanford's scheme.  *See supra* Part III.A.

### B. Texas Recognizes an "Aiding and Abetting Breach of Fiduciary Duty" Claim

Defendants next contend Plaintiffs' claims for aiding and abetting, and participation in breaches of fiduciary duty must be dismissed because Texas does not recognize such a claim.  The Court acknowledges some confusion as to whether this cause of action exists in Texas.  *Compare Floyd v. Hefner*, 556 F. Supp. 2d 617, 654-55 (S.D. Tex. 2008) (recognizing aiding and abetting breach of fiduciary duty claim), *with O'Kane v. Coleman*, 2008 WL 2579832, at *5 (Tex. App. – Houston [14th Dist.] 2008, no pet.) (noting a lack of authority to support the existence of an aiding and abetting claim).  The Texas Supreme Court has expressly declined to determine whether Texas law supports a claim for aiding and abetting.  *See Juhl*, 936 S.W.2d at 643–44.

Although there is no binding case law directing the outcome here, the Court aligns itself with the number of courts that have recognized claims for aiding and abetting breach of fiduciary duty.  *See, e.g.*, *C.W. v. Zirus*, 2012 WL 3776978, at *8 (W.D. Tex. 2012); *Woloshen v. State Farm Lloyds*, 2008 WL 4133386, at *3 (N.D. Tex. 2008); *Floyd*, 556 F. Supp. 2d at 654–55.  Thus, the Court declines to hold that Plaintiffs' aiding and abetting breach of fiduciary duty claims are not recognized in Texas.

### C. Plaintiffs Adequately Plead Claims for Aiding and Abetting Breach of Fiduciary Duty

To plead a claim for aiding and abetting a breach of fiduciary duty, a plaintiff must allege "(1) the existence of a fiduciary relationship; (2) that the third party knew of the fiduciary relationship; and (3) that the third party was aware that it was participating in the breach of that fiduciary relationship." *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 639 (5th Cir. 2007) (citing *Cox Tex. Newspapers, L.P. v. Wootten*, 59 S.W.3d 717, 721–22 (Tex. App. – Austin 2001, pet. denied)).  Plaintiffs' claims satisfy this standard.[8]

### 1. Plaintiffs Plead the Existence of a Fiduciary Relationship. – Only Greenberg

appears to contest the existence of an underlying fiduciary duty.  *See* Greenberg's Brief Supp. Mot. Dismiss 11 [29] (arguing "the relationship between Stanford and the depositors is not a fiduciary relationship that might potentially give rise to [a fiduciary duty]"). However, the underlying fiduciary duties on which Plaintiffs' claims are based are those owed by directors and officers of the Stanford Financial Group to their respective Stanford entities.  Greenberg's argument is thus inapplicable.

### 2. Plaintiffs Adequately Plead Defendants' Knew of Underlying Fiduciary

**Relationships.** – Plaintiffs allege "Defendants knew that the Stanford Financial directors and officers owed fiduciary duties to their respective Stanford Financial companies . . . ."  Compl.

---

[8]The Court also notes that the aiding and abetting breach of fiduciary duty claims are not subject to Defendants' anti-fracturing argument.  *See Floyd*, 556 F. Supp. 2d at 659 (Where supporting evidence exists, Texas law permits a party to bring both a malpractice action based on his lawyer's breach of independent duties and a separate claim for the lawyer's assistance with the breach of another's fiduciary duties.").

¶ 409.  Given the Defendants' alleged familiarity with the Stanford businesses and the basic rule that officers and directors owe fiduciary duties to their companies, *see, e.g.*, *Fagan v. La Gloria Oil & Gas Co.*, 494 S.W.2d 624, 628 (Tex. App. – Houston [14th Dist.] 1973, no writ), Plaintiffs' allegation is sufficient as to this element.

### 3. Plaintiffs Adequately Plead Defendants Knew of Their Participation in the Underlying Breaches.

– As to Greenberg, Plaintiffs allege a number of facts supporting a reasonable inference that Greenberg had knowledge of underlying breaches of fiduciary duty. For instance, Plaintiffs make a number of allegations concerning Loumiet's assistance in operating an investment company engaged in selling certificates of deposit from U.S. soil while skirting U.S. regulation. *See, e.g.*, Compl. ¶¶ 165–166, 168.  Plaintiffs also allege that Loumiet knew of Antigua's reputation as a haven for financial corruption, and continued to assist Stanford in his operations there. *See id.* ¶¶ 64–65.  Moreover, Plaintiffs allege Stanford used his operations in Antigua to facilitate his evasion of U.S. regulation.  *See id.* ¶¶ 147–149.  When combined with the multitude of factual allegations Plaintiffs make concerning Loumiet's willing participation in assisting Stanford's operations, which were consistently flagged as unscrupulous, a reasonable inference arises that Loumiet, and thus Greenberg, knew of Stanford's and others' breaches of fiduciary duties to the Stanford entities.

As to Hunton, many of the same factual allegations concerning Loumiet's knowledge can suffice to establish Hunton's knowledge as well.[9] Indeed, when charged with Loumiet's knowledge of the Stanford enterprise and its operations, a reasonable inference arises that Hunton knew of Stanford's and others' underlying breaches of fiduciary duties.

Finally, as to Suarez, Plaintiffs make similarly sufficient allegations concerning Suarez's knowledge of the underlying breaches to satisfy this element. *See supra* Part III.A.

## VI. THE FRAUDULENT TRANSFER CLAIMS

Plaintiffs bring claims for fraudulent transfer/unjust enrichment against Greenberg and Hunton, and for aiding and abetting fraudulent transfers against Greenberg, Hunton, and Suarez. Defendants argue the claims must be dismissed because they are deficiently pled and because Texas does not recognize claims for aiding and abetting fraudulent transfers.

### A. Plaintiffs Adequately Plead Fraudulent Transfer and Related Claims

*1. The TUFTA Good Faith Defense Does Not Mandate Dismissal.* – Hunton first seeks dismissal of Plaintiffs' TUFTA claims by asserting Plaintiffs fail to plead Hunton did not receive the disputed transfers in good faith. *See* TEX. BUS. & COM. CODE ANN. § 24.009(a) (providing that an otherwise fraudulent transfer is not voidable if the recipient "took in good faith and for a reasonably equivalent value . . ."). Defendants bear the burden of establishing good faith. *Citizens Nat. Bank of Tex. v. NXS Constr., Inc.*, 387 S.W.3d 74,

---

[9]*See Floyd*, 556 F. Supp. 2d at 655 (holding Texas follows the rule that, except for information obtained in confidence, the knowledge of an agent is fully imputed to the principle); *see also Pan E. Exploration Co. v. Hufo Oils*, 855 F.2d 1106, 1128 (5th Cir. 1988), *superseded on other grounds by* TEX. BUS. CORP. ACT ANN. art. 2.21, *as recognized by In re Mirant Corp.*, 613 F.3d 584, 589 (5th Cir. 2010).

85 (Tex. App. – Houston [14th Dist.] 2012, no pet.).  Plaintiffs plead sufficient facts to preclude dismissal on this basis.  As discussed *supra* Part III.A, Plaintiffs make a number of allegations concerning Defendants' knowledge of Stanford's underlying misconduct such that Defendants cannot carry their burden at this stage.

### 2. Plaintiffs's TUFTA Claims Are Not Necessarily Time Barred. – TUFTA provides

that fraudulent transfer claims must be brought "within one year after the transfer or obligation was or could reasonably have been discovered by the claimant."  TEX. BUS. & COM. CODE ANN. § 24.010(a)(1).  Application of the TUFTA "discovery rule" is a factual question generally inappropriate for resolution on a motion to dismiss.  *See Trinity Indus. Leasing Co. v. Midwest Gas Storage, Inc.*, 2014 WL 1245071, at *17 (N.D. Ill. 2014) ("Whether Plaintiff reasonably should have discovered the fraudulent transfers earlier is a question of fact, to be resolved by a jury (or on a summary judgment record)." (citing *Duran v. Henderson*, 71 S.W.3d 833, 839 (Tex. App. – Texarkana 2002, pet. denied))).  By pleading the TUFTA discovery rule, *see* Compl. ¶ 403, Plaintiffs escape dismissal based on limitations.

### 3. Plaintiffs May Assert Unjust Enrichment/Money Had and Received Claims. –

Hunton assails Plaintiffs' unjust enrichment and money had and received claims, arguing that, as equitable remedies, they may not be claimed where Plaintiffs have an adequate remedy at law.  However, Plaintiffs explicitly plead these claims in the alternative to their claims under TUFTA.  *See* Compl. ¶¶ 422, 425.  Hunton cites no authority suggesting a party

may not plead equitable claims in the alternative to claims for which an adequate remedy at law is possible, but not guaranteed.  The Court declines to dismiss the claims on this basis.

Plaintiffs adequately plead the unjust enrichment claim.  Unjust enrichment permits recovery "when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992).  Pursuant to the same findings supporting the Court's holdings *supra*, Plaintiffs' sufficiently allege these elements.  As discussed, Plaintiffs have alleged Greenberg's and Hunton's assistance in the facilitation of massive Ponzi scheme.  These allegations are sufficient to support a finding that Greenberg and Hunton obtained financial benefits from the Stanford entities by "taking of an undue advantage."

Hunton's voluntary payment defense also fails at this stage.  Under the voluntary payment defense, "money voluntarily paid on a claim of right, with full knowledge of all the facts, in the absence of fraud, duress, or compulsion, cannot be recovered back merely because the party at the time of payment was ignorant of or mistook the law as to his liability." *Pennell v. United Ins. Co.*, 243 S.W.2d 572, 576 (Tex. 1951) (citation omitted). Hunton bears the burden of establishing its voluntary payment defense.  *See Dallas Cnty. Cmty. Coll. Dist. v. Bolton*, 185 S.W.3d 868, 871 (Tex. 2005).  The defense fails at this stage because Hunton makes no showing that the elements of the defense are satisfied.  Hunton does not, for instance, make any showing that the Stanford entities made payment with full knowledge of all the facts or in the absence of fraud.  Because Plaintiffs have no obligation to affirmatively disprove the defense at this stage, dismissal on this basis is inappropriate.

### B. The Court Dismisses Plaintiffs' Aiding and Abetting Fraudulent Transfer Claims

The Court grants Defendants' motions to dismiss Plaintiffs' aiding and abetting fraudulent transfer claims because Texas does not recognize such a cause of action.  In *Mack v. Newton*, 737 F.2d 1343 (5th Cir. 1984), the Fifth Circuit held that the precursor to TUFTA did not allow for recovery from a party who was not a direct or indirect recipient of a fraudulent transfer.  *See id.* at 1361 ("Although we have found no Texas decision in point, we are persuaded that the Texas statute, like the Bankruptcy Act, does not provide for recovery other than recovery of the property transferred or its value from one who is, directly or indirectly, a transferee or recipient itself.").  Subsequent state and federal decisions support this conclusion.  *See FDIC v. White*, 1998 WL 120298, at *2 (N.D. Tex. 1998) (holding TUFTA "do[es] not create personal liability on the part of a co-conspirator for fraudulent conveyances to an extent or in an amount beyond property which a co-conspirator actually receives or in which he acquires an interest"); *Essex Crane Rental Corp. v. Carter*, 371 S.W.3d 366, 386–87 (Tex. App. – Houston [1st Dist.] 2012, pet. denied) (recognizing a claim for conspiracy to commit fraudulent transfer, but acknowledging *Mack* as restricting the claim to defendants who were parties to the transfer).

Consideration of other states' fraudulent transfer laws also supports this conclusion.[10] A majority of jurisdictions do not permit claims based on derivative liability for fraudulent

---

[10]TUFTA is intended to be interpreted consistently with analagous statutes in other jurisdictions.  *See* TEX. BUS. & COM. CODE ANN. § 24.012 ("This chapter shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this chapter among states enacting it.").

transfers. *See Mann v. GreenbergCR Golder Raunder, LLC*, 483 F. Supp. 2d 884, 918–19 (D. Ariz. 2007) ("When scrutinizing the plain language of the UFTA, courts agree that it is unambiguous in that it does not 'suggest[] an intent to create an independent tort for damages [for aider-abettor liability].'" (alteration in original) (quoting *Freeman v. First Union Nat'l Bank*, 865 So.2d 1272, 1277 (Fla. 2004))); *Magten Asset Mgmt. Corp. v. Paul Hastings Janofsky & Walker LLP*, 2007 WL 129003, at *2 (D. Del. 2007) ("The majority of courts interpreting the state [fraudulent transfer] laws . . . have concluded that liability cannot be imposed on non-transferees under aiding and abetting or conspiracy theories."). Thus, restricting TUFTA liability to parties to the transfer is in line with other jurisdictions' interpretations of analogous statutes.

Plaintiffs' cited authority fails to convince the Court this conclusion is incorrect. A number of Plaintiffs' cases refer to aiding and abetting fraudulent transfer claims, but do so in contexts in which the viability of the claim is not in question. *See In re Educators Grp. Health Trust*, 25 F.3d 1281, 1285 (5th Cir. 1994) (determining to which party an aiding and abetting fraudulent transfer claim belonged); *Chu v. Hong*, 249 S.W.3d 441, 444–45 (Tex. 2008) (determining on appeal that defendant had not committed any of three underlying torts, including fraudulent transfer, and thus could not be liable for conspiracy). In *Bilouris v. Sundance Resources, Inc.*, 559 F. Supp. 2d 733 (N.D. Tex. 2008), this Court did hold that a viable TUFTA claim could support a claim for secondary liability. *Id.* at 740. However, the decision in that case was reached without the benefit of briefing on this particular issue. Other cases, *Stonecipher v. Butts*, 591 S.W.3d 806, 808 (Tex. 1979), and *Essex Crane*, 371

S.W.3d at 379, do not support Plaintiffs' arguments.  As referenced *supra*, *Essex Crane*, which construed *Stonecipher*, followed *Mack*'s restriction of derivative causes of action to transferees.  Given the weight of authority concluding that TUFTA does not provide for secondary liability, the Court dismisses Plaintiffs' claims for aiding and abetting fraudulent tranfers.

## VII. PLAINTIFFS' NEGLIGENT RETENTION/NEGLIGENT SUPERVISION CLAIMS

Plaintiffs bring claims for negligent retention/negligent supervision against Greenberg and Hunton only.  In turn, only Hunton seeks dismissal of these claims.  "[A]n employer is liable for negligent hiring, retention, or supervision if it hires an incompetent or unfit employee whom it knows, or by the exercise of reasonable care should have known, was incompetent or unfit, thereby creating an unreasonable risk of harm to others."  *Morris v. JTM Materials, Inc.*, 78 S.W.3d 28, 49 (Tex. App – Fort Worth 2002, no pet.).  A claim for negligent retention "requires that the employer's failure to investigate, screen, or supervise its employees proximately cause[d] the injuries the plaintiff alleges." *Dangerfield v. Ormsby*, 264 S.W.3d 904, 912 (Tex. App. – Fort Worth 2008, no pet.).  Meanwhile, "to establish a claim for negligent supervision, a plaintiff must show that an employer's failure to supervise its employees caused his injuries."  *Id.* at 913.

The Court finds Plaintiffs adequately plead these claims.  As discussed at length in this Order, Plaintiffs make a myriad of claims concerning Loumiet's assistance in the growth and success of the Stanford Ponzi scheme.  Even if Loumiet was unaware Stanford was running a Ponzi scheme, Plaintiffs allegations at the least paint a picture in which Loumiet

was aware of serious wrongdoing by Stanford and his entities, and yet continued to facilitate Stanford's enterprises.  Because Loumiet's knowledge is imputed to Hunton, *see supra* note 8, Plaintiffs allege Hunton knew or should have known of Loumiet's support of Stanford's activities.  Finally, as discussed *supra* Part IV.C, causation is well-pled at this stage.  Accordingly, the Court denies Hunton's motion to dismiss the negligent retention/negligent supervision claims.

## CONCLUSION

The Court dismisses with prejudice Plaintiffs' claims for aiding and abetting fraudulent transfers against all Defendants.  The Court dismisses without prejudice Plaintiffs' claims against Greenberg and Hunton for breach of fiduciary duty.  The Court denies Defendants' motions to dismiss the Receiver's and OSIC's claims in all other regards.  The Court grants Plaintiffs leave to replead the breach of fiduciary duty claims within thirty (30) days from the date of this Order.

Signed December 17, 2014.

David C. Godbey
United States District Judge