IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THE OFFICIAL STANFORD INVESTORS COMMITTEE, *et al.*, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 3:12-CV-4641-N |
| GREENBERG TRAURIG, LLP, *et al.*, | § § | |
| Defendants. | § § | |

## ORDER

This Order addresses Defendant Greenberg Traurig LLP's ("Greenberg") motion for partial dismissal ("Greenberg's Mot.") [27], and Defendant Hunton & Williams LLP's ("Hunton") motion to dismiss claims asserted by the putative class ("Hunton's Mot.") [90]. The Court grants in part and denies in part Defendants' motions.[1]

## I. THE ORIGIN OF THE ACTION

This action arises from the Ponzi scheme perpetrated by R. Allen Stanford, his associates, and the entities under his control (collectively, "Stanford"). The claims addressed in this Order, asserted on behalf of a putative class of investors, are one half of the claims brought in this action as a whole. The claims addressed in this Order are for (1) aiding and abetting various violations of the Texas Securities Act ("TSA"); (2) participation in/aiding and abetting breaches of fiduciary duty; (3) participation in/aiding and abetting a fraudulent

---

[1]The Court additionally denies Hunton's motion for leave to file a supplemental brief in support of its motion to dismiss [115].

scheme; and (4) civil conspiracy. For resolution of the motions to dismiss the claims brought

by the Receiver and the Official Stanford Investors Committee ("OSIC") and a fuller

recitation of the facts at issue here, see this Court's December 17, 2014 Order [114].

## II. THE LEGAL STANDARD

### A. Rule 12(b)(6)

When faced with a Rule 12(b)(6) motion to dismiss, a court must determine whether

the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*,

42 F.3d 925, 931 (5th Cir. 1995). A viable complaint must include "enough facts to state a

claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content

that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court generally accepts

well-pleaded facts as true and construes the complaint in the light most favorable to the

plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). But a court does not

accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions."

*Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). A plaintiff must provide "more

than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right

to relief above the speculative level on the assumption that all the allegations in the complaint

are true (even if doubtful in fact)." *Id.* (internal citations omitted).

### B. Rule 9(b)

Hunton argues that all of Plaintiffs' claims must be dismissed for failure to meet the heightened pleading standards of Federal Rule of Civil Procedure 9(b).  Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  FED. R. CIV. P. 9(b).  However, "[b]y its clear terms, Rule 9(b) applies only to averments of fraud or mistake, not to averments of negligence, breach of fiduciary duty or non-fraudulent misstatement."  *Tigue Inv. Co., Ltd. v. Chase Bank of Tex., N.A.*, 2004 WL 3170789, at *2 (N.D. Tex. 2004).  Rule 9(b) may also apply "when fraudulent conduct is alleged to underlie a claim for which fraud is a possible – but not a necessary – element.  In such cases, particularity is only required to the extent that a plaintiff in fact alleges fraud."  *Id.* at *2.  Finally, Rule 9(b) also applies to claims brought under Article 33 of the Texas Securities Act.  *See Billitteri v. Sec. America, Inc.*, 2010 WL 6785484, at *4–5 (N.D. Tex. 2010) (concluding Rule 9(b) is appropriately applied to state securities law claims).

Pursuant to the above principles, the Court holds that Rule 9(b) applies to each of Plaintiffs' claims.  Each of Plaintiffs' claims relies on underlying fraudulent conduct as an element of the claim.  For instance, Plaintiffs' aiding and abetting/participation in breach of fiduciary duty claim pleads as the underlying breach Stanford's fraudulent deception of Stanford investors.  Therefore, to the extent each claim relies on proof of underlying

fraudulent conduct as an element of the claim, that conduct must be pled with particularity.[2]

### III. ATTORNEY IMMUNITY DOES NOT BAR PLAINTIFFS' CLAIMS

Hunton asserts at the outset that Texas's doctrine of attorney immunity bars all of Plaintiffs' claims.  In Hunton's estimation, the doctrine of attorney immunity holds that lawyers "cannot be held civilly liable for damages to non-clients, under any theory of recovery, for actions taken in connection with representing a client."  *Dimitric v. Texas Workforce Comm'n*, 2009 WL 674391, at *9 (S.D. Tex. 2009).  Further, Hunton argues this immunity applies "even if the attorney's conduct was fraudulent or otherwise wrongful."  Hunton's Mot. 7.  Under the doctrine as Hunton conceives it, Plaintiffs' claims fail because they are based on actions Hunton took while engaged in its representation of Stanford.

The attorney immunity doctrine is not as broad as Hunton would have it.  For example, "[i]f an attorney participates in independently fraudulent activities, his action is 'foreign to the duties of an attorney,'" and he can accordingly be sued by third-parties.  *Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 406 (Tex. App. – Houston [1st Dist.] 2005, pet. denied); *see also Santiago v. Mackie Wolf Zientz & Mann, P.C.*, 2014 WL

---

[2]In the Fifth Circuit, a plaintiff must plead "time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby."  *Williams v. WMX Tech., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997) (alteration in original) (internal quotation marks omitted) (quoting *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)).  In effect, Rule 9(b) requires a plaintiff to state "the who, what, when, where, and how" of alleged fraud.  *Id.* at 179 (internal quotation marks omitted).  "What constitutes 'particularity' will necessarily differ with the facts of each case."  *Id.* (quoting *Guidry v. Bank of LaPlace*, 954 F.2d 278, 288 (5th Cir. 1992)); *see also* Nov. 30, 2011 Order 12–13, *in SEC v. SIB*, Civil Action No. 3:09-CV-0298-N (N.D. Tex. filed Feb. 17, 2009) (Holding SEC's various allegations of fraud were sufficient to put defendants on notice such that they could prepare a defense).

4072131, at *3 (Tex. App. – Dallas 2014, pet. filed) ("Thus, if the only ground for summary judgment is attorney immunity, and the plaintiff alleges claims that could arguably involve fraudulent conduct, the trial court should deny a motion for summary judgment based on attorney immunity as to those claims.").  In some situations, attorneys may also be held liable for lying on a client's behalf, *Chu v. Hong*, 249 S.W.3d 441, 446 (Tex. 2008), or for malicious activity, *Likeover v. Sunflower Terrace II, Ltd*, 696 S.W.2d 468, 472 (Tex. App. – Houston [1st Dist.] 1985, no writ).

The Court declines to grant dismissal at this stage based on the doctrine of attorney immunity.  Attorney immunity is an affirmative defense.  *Rhodes Colleges, Inc. v. Johnson*, 2012 WL 627273, at *4 (N.D. Tex. 2012).  To support dismissal on a Rule 12(b)(6) motion, a successful affirmative defense must "appear[] clearly on the face of the pleadings." *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986).  Indeed, as one Texas court has held in the context of a motion for summary judgment, "if the only ground for summary judgment is attorney immunity, and the plaintiff alleges claims that could arguably involve fraudulent conduct, the trial court should deny a motion for summary judgment based on attorney immunity as to those claims." *Santiago*, 2014 WL 4072131, at *3; *see also Toles v. Toles*, 113 S.W.3d 899, 912–13 (Tex. App. – Dallas 2003, no pet.) (holding summary judgment for attorney based on immunity defense was improper where plaintiffs maintained an aiding and abetting breach of fiduciary duty claim that arguably involved fraudulent conduct).

Here, Plaintiffs plead conduct on the part of Loumiet[3] and Hunton that is arguably fraudulent.  For instance, Plaintiffs allege Loumiet lied to Panamanian regulators by claiming "Stanford always adhered strictly to the law and observed very high ethical standards," when in fact he knew Stanford had consistently been under government investigation.  Compl. ¶ 309.  Plaintiffs make similar allegations concerning statements Loumiet made to Venezuelan and Floridian regulators.  *Id.* ¶¶ 311, 374.  In addition, as discussed below, Plaintiffs state a claim for conspiracy to commit fraud, which is a claim explicitly excepted from the attorney immunity doctrine.  *See, e.g.*, *Querner v. Rindfuss*, 966 S.W.2d 661, 666 (Tex. App. – San Antonio 1998, pet. denied).  These allegations of fraudulent conduct support Plaintiffs' claims, and thus preclude dismissal under attorney immunity at this stage.  *See Toles*, 113 S.W.3d at 912–913.

## IV. PLAINTIFFS' CONSPIRACY CLAIM

Defendants assert Plaintiffs fail to state a claim for civil conspiracy.  The elements of a claim for civil conspiracy are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result.  *Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex. 1996).  The agreement may be tacit and can be alleged and proven by circumstantial evidence.  *See Bradt v. Sebek*, 14 S.W.3d 756, 766 (Tex. App. – Houston [1st Dist.] 2000, pet. denied).  In addition, "[f]or a civil conspiracy to arise, the parties must be aware of the

---

[3]Carlos Loumiet is a former partner at both Greenberg and Hunton who Plaintiffs allege was largely responsible for Defendants' assistance of Stanford.  *See, e.g.*, Compl. ¶¶ 12–13.

harm or wrongful conduct at the inception of the combination or agreement." *Triplex Comm'ns, Inc. v. Riley*, 900 S.W.2d 716, 719 (Tex. 1995). Plaintiffs allege a civil conspiracy to commit breaches of fiduciary duty, violations of the Texas Securities Act,[4] and fraud. *See* Compl. ¶ 456. Rule 9(b) applies to the allegations of fraud which necessarily underlie each of the conspiracy claims.

The Court finds Plaintiffs adequately plead with particularity claims for civil conspiracy. Plaintiffs' allegations concerning the duration and depth of the relationship between Loumiet and Stanford, along with other allegations pertaining to the knowledge Loumiet had of Stanford's operations and the likelihood that Stanford was misleading its investors adequately supports an inference of a tacit agreement between the two to market unregulated securities. Hunton argues that even this finding is insufficient because Plaintiffs must plead Defendants had intent to actually engage in conduct constituting a Ponzi scheme. Hunton's Reply 27–29 [104]. The Court rejects such a rigid construction of a claim for conspiracy. Given knowledge that Stanford's primary intent was to avoid regulation, *e.g.*, Compl. ¶¶ 49–50, as well as familiarity with Stanford's personal history, *e.g.*, *id.* ¶ 57, Plaintiffs' complaint raises a plausible inference that Loumiet knew of impending underlying wrongdoing, yet nevertheless agreed to support it and insulate it from oversight. Given the existence of a plausible inference Loumiet knew Stanford had nefarious purposes, and indeed that Loumiet later confirmed those nefarious purposes, *e.g.*, *id.* ¶ 139, the Court finds the

---

[4]The Court will address arguments pertaining specifically to the conspiracy to violate the TSA claim *infra* Part V.C.

complaint adequately pleads that Loumiet agreed to "accomplish an unlawful purpose . . . ." *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 856 (Tex. 1968).

Greenberg's causation defense is no impediment at this stage. As Plaintiffs point out, causation is typically a question of fact resolved by a jury or a motion for summary judgment. *See, e.g.*, *Grider v. Mike O'Brien, P.C.*, 260 S.W.3d 49, 55 (Tex. App. – Houston [1st Dist.] 2008, pet. denied). However, causation may be a question of law "when the evidence is without material dispute and where only one reasonable inference may be drawn." *Ambrosio v. Carter's Shooting Ctr., Inc.*, 20 S.W.3d 262, 266 (Tex. App. – Houston [14th Dist.] 2000, pet. denied). Greenberg essentially argues that the connection between the services it provided and Stanford's fraudulent activity is too attenuated to support a claim for conspiracy. The Court finds that reasonable minds could differ on this question and thus reserves this issue as a question of fact. Plaintiffs allege Greenberg's assistance to Stanford in avoiding regulation permitted Stanford to perpetuate and grow his fraudulent activity without fear of discovery. Plaintiffs have adequately pled causation.

Finally, the Court also denies dismissal based on Greenberg's argument that routine legal services cannot state a claim for conspiracy. For purposes of conspiracy, it is important not so much what a Defendant does, but why he does it. *See Riley*, 900 S.W.2d at 719–20 (requiring for conspiracy a combination to accomplish an unlawful *purpose*); *see also Greenberg Traurig of New York, P.C. v. Moody*, 161 S.W.3d 56, 88–89 (Tex. App. – Houston 2004, no pet.) (finding sufficient evidence to support a conspiracy verdict against

defendant where evidence showed law firm provided basic legal services with knowledge of underlying wrongdoing).  Here, Plaintiffs plead Defendants rendered legal advice in order to assist Stanford in evading regulation in order to sell fraudulent securities.  The fact that provision of legal advice is lawful in the abstract is of no consequence.

## V. THE TEXAS SECURITIES ACT CLAIMS

Article 581-33F(2) of the TSA provides that "a person who directly or indirectly with intent to deceive or defraud or with reckless disregard for the truth or the law materially aids a seller, buyer, or issuer of a security is liable under [various provisions of the TSA] jointly and severally with the seller, buyer, or issuer, and to the same extent as if her were the seller, buyer, or issuer."  TEX. REV. CIV. STAT. ANN. art. 581-33F(2).  Thus, to state a claim Plaintiffs must allege "(1) that a primary violation of the securities laws occurred; (2) that the alleged aider and abettor had a 'general awareness' of its role in this violation; (3) that the aider and abettor rendered 'substantial assistance' in this violation; and (4) that the aider and abettor either intended to deceive plaintiff or acted with reckless disregard of the truth of the representations made by the primary violator."  *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 491 F. Supp. 2d 690, 691 n.2 (S.D. Tex. 2007).  Plaintiffs allege three primary violations: (1) the sale of unregistered securities, (2) the sale of securities by unregistered dealers, and (3) the sale of securities through untruth or omission.

## A. The Statute of Repose Bars Certain of Plaintiffs' Claims

The TSA includes an absolute statute of repose. *See* TEX. REV. CIV. STAT. ANN. art. 581-33H.[5] Claims based on sales of unregistered securities or sales by unregistered dealers may not be brought more than three years after the relevant sale. *Id.* art. 581-33H(1)(a). Claims based on sales of securities through untruth or omission may not be brought more than five years after the relevant sale. *Id.* art. 581-33H(2)(b). Defendants assert that certain of Plaintiffs' claims are barred by the relevant statutes of repose, as measured from February 1, 2011, the date on which the parties entered into a tolling agreement. The Court agrees.

Plaintiffs argue that because they maintain a conspiracy to violate the TSA claim, the statute of limitations applicable to conspiracy preserves their TSA claims and trumps the TSA's statute of repose.[6] Pls.' Resp. 42 [99]. However, this argument contravenes the explicit purpose of statutes of repose. The Texas Supreme Court has made it clear that a statute of repose constitutes "an absolute bar to suit." *Fed. Deposit Ins. Corp. v. Lenk*, 361 S.W.3d 602, 609 (Tex. 2012). "The purpose of repose statutes is to give absolute protection

---

[5]Article 581-33H of the TSA has consistently been characterized as a statute of repose, not a statute of limitations. *See, e.g.*, *In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, 966 F. Supp. 2d 1018, 1023–24 (C.D. Cal. 2013) (citing *Williams v. Khalaf*, 802 S.W.2d 651, 654 n.3 (Tex. 1990)).

[6]The Court could find no Texas authority explicitly resolving the question of whether a civil conspiracy claim can overcome statutes of repose applicable to some of the underlying tortious conduct. Greenberg's authority is not to the contrary. *See, e.g.*, *Stroud v. VBFSB Holding Corp.*, 917 S.W.2d 75, 82 (Tex. App. – San Antonio 1996, writ denied) (dismissing civil conspiracy claim where *all* the underlying tortious conduct was barred by a statute of repose). Accordingly, the Court makes an *Erie* guess as to how the Texas Supreme Court would resolve the question. *See, e.g.*, *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010).

to certain parties from the burden of indefinite potential liability." *Holubec v. Brandenberger*, 111 S.W.3d 32, 37 (Tex. 2003).  With these rationales in mind, the Court sees no reason why the maintenance of a civil conspiracy claim should prolong these absolute limitations on a defendant's liability.  *Cf Greene v. Brown & Williamson Tobacco Corp.*, 72 F. Supp. 2d 882, 886–88 (W.D. Tenn. 1999) (holding under Tennessee law that claims barred by a statute of repose could not be revived by an otherwise viable civil conspiracy claim).  Thus, Plaintiffs' maintenance of a civil conspiracy claim does not preserve their right to bring suit on any of the sales falling outside period set by the statutes of repose.

Plaintiffs next argue that the discovery rule should preserve all of their claims. However, the Texas Supreme Court has held that the Texas discovery rule does not revive claims barred by statutes of repose, as distinguished from statutes of limitation.  *See Galbraith Eng'g Consultants, Inc. v. Puchucha*, 290 S.W.3d 863, 864 (Tex. 2009).  Plaintiffs also argue that the equities support permitting the entirety of their TSA claims to go forward. However, the TSA statute of repose is absolute and Plaintiffs present no authority supporting this Court's ability to circumvent it when the equities so require.  Accordingly, the Court dismisses all of Plaintiffs' TSA claims for sale of unregistered securities and sale of securities by unregistered dealers arising from sales taking place prior to February 1, 2008.

The Court further dismisses all of Plaintiffs' TSA claims for sale of securities through untruth or omission arising from sales taking place prior to February 1, 2006.[7]

Hunton asserts a related argument that it may not be held liable for claims within the repose period because Plaintiffs do not allege it provided assistance after February 1, 2008. The Court considered and rejected the same argument in its December 15, 2014 Order [208], *in Troice v. Willis of Colorado*, Civil Action No. 3:09-CV-1274-N (N.D. Tex. filed July 2, 2009). There, this Court held that the statute of repose did not bar TSA claims based on alleged assistance occurring prior to the repose period because the alleged assistance could conceivably have assisted the sales taking place within the repose period. *Id.* at 15–17. For the reasons more fully discussed in the Court's previous Order, the Court denies dismissal based on this argument.

### B. Plaintiffs Adequately Plead Their Aiding and Abetting TSA Claims[8]

*1. Plaintiffs Plead Primary Violations.* – Hunton asserts Plaintiffs' claims based on the sale of unregistered securities are preempted by the National Securities Markets Improvement Act of 1996, Pub. L. No. 104-290, 110 Stat. 3416 (1996) ("NSMIA"), and that

---

[7]This determination does not contradict the Court's holding in its December 15, 2014 Order 16–17 [208], *in Troice v. Willis*, Civil Action No. 3:09-CV-1274-N (N.D. Tex. filed July 2, 2009). There, the Court declined to dismiss TSA claims based on the statute of repose where the asserted defense was that the defendant did not provide any assistance to the primary violator within the repose period. The Court determined plaintiffs adequately pled that assistance rendered outside the repose period continued to facilitate primarily violations that took place within the repose period.

[8]Only Hunton challenges the sufficiency of Plaintiffs' pleadings supporting their TSA claims.

claims based on sales by unregistered dealers are barred because Stanford International Bank Limited ("SIBL") was exempt from registration requirements.[9]  Hunton also argues Plaintiffs have failed to plead the underlying TSA violations with particularity under Rule 9(b).

The Court addressed the preemption argument in its December 5, 2014 Order [64], *in Janvey v. Willis of Colorado*, Civil Action No. 3:13-CV-3980-N (N.D. Tex. filed Oct. 1, 2013).  Specifically, this Court held, in line with the only circuit court to have considered the question, that preemption under the NSMIA applies only when the relevant securities actually meet the requirements for the Regulation D exemption.  *See id.* at 25 (citing *Brown v. Earthboard Sports USA, Inc.*, 481 F.3d 901, 909 (6th Cir. 2007)).  For the reasons discussed in the *Janvey v. Willis of Colorado* Order, the Court holds Plaintiffs' TSA claims are not preempted by the NSMIA.

Hunton's second argument fails because it seeks to resolve factual questions.  Hunton asserts Plaintiffs fail to allege a primary violation for sales by an unregistered dealer because Stanford Group Company ("SGC"), the entity through which SIBL sold *many* of its CDs, was registered as a broker–dealer.  Hunton's Mot. 18.  However, even accepting Plaintiffs' admission that SGC was a registered broker dealer, *see* Compl. ¶ 23, Hunton cannot demonstrate at this stage that SIBL sold all of its securities through SGC.  Dismissal based on this argument is thus inappropriate.

---

[9]SIBL is the Antiguan-based bank through which Stanford sold his fraudulent certificates of deposit.  Compl. ¶ 14.

Plaintiffs plead three primary violations of the TSA with the requisite particularity under Rule 9(b).  First, Plaintiffs allege Stanford sold unregistered securities in violation of TSA articles 581-7 and 581-33A(1).  Article 581-7 requires that, prior to issuing a security, a vendor must register or acquire a permit to sell from the commissioner.  TEX. REV. CIV. STAT. ANN. art. 581-7.  Plaintiffs allege the SIBL CDs constituted "securities," but were not registered as such.  Compl. ¶ 441.  Plaintiffs also allege Stanford established an SGC office in Houston in 1995, and entered the U.S. securities market in 1996.  *Id.* ¶¶ 26–38.  Plaintiffs allege Stanford obtained over $7.2 billion in CD sales.  *Id.* ¶ 12.  The Court finds these allegations sufficient under Rule 9(b) to plead a primary violation for sale of unregistered securities.

Plaintiffs also adequately plead a primary violation for sale of securities by an unregistered vendor, in violation of TSA articles 581-12 and 581-33A(1).  In addition to the above, Plaintiffs allege Stanford was acting as an investment fund without being registered with the Texas Securities Board.  *Id.* ¶ 445.  Taken together, these allegations plead with particularity a primary violation for sale of securities by an unregistered dealer.

Finally, Plaintiffs plead a primary violation for sale of securities through untruth or omission.  Among other omissions and misrepresentations, Plaintiffs allege Stanford sold them securities while misrepresenting how their funds were being invested.  *Id.* ¶¶ 139–142.  Again, in tandem with the general allegations above concerning the duration and scope of the Stanford fraud, Plaintiffs plead this primary violation with the requisite particularity.

     ***2. Plaintiffs Adequately Plead Scienter.*** – To adequately plead scienter for an aiding and abetting TSA claim, a plaintiff must allege the defendant "rendered assistance 'in the face of a perceived risk' that its assistance would facilitate untruthful or illegal activity by the primary violator." *Adderly*, 168 S.W.3d at 842 (quoting TEX. REV. CIV. STAT. ANN. art. 581-33F(2)). "In order to perceive such a risk, the alleged aider must possess a general awareness that his role was part of an overall activity that is improper." *Id.* (citation omitted) (internal quotation marks omitted).

     The Court finds Plaintiffs adequately plead facts supporting a reasonable inference that Hunton, through Loumiet, possessed the requisite scienter. Plaintiffs allege Loumiet had knowledge of a host of circumstances pertaining to Stanford's sale of securities. For example, Loumiet assisted Stanford in dealing with a former employee who alleged Stanford was misrepresenting to investors that the SIBL CDs were insured, when in fact they were not. Compl. ¶¶ 200–206. Loumiet knew Stanford had a history of violating banking laws and running unlicensed sales offices in the U.S. *Id.* ¶ 57. Indeed, Loumiet himself acknowledged that Stanford was consistently under investigation by regulatory authorities. *Id.* ¶ 307. Plaintiffs also allege Loumiet knew Stanford was misrepresenting to investors how the CD proceeds were being invested. *Id.* ¶¶ 139, 141–142. Taken together and viewed through a lens most favorable to Plaintiffs, these allegations support an inference that Loumiet, and thus Hunton, "possess[ed] a general awareness that his role was part of an overall activity that [was] improper." *Adderly*, 168 S.W.3d at 842 (citation omitted) (internal quotation marks omitted).

*3. Plaintiffs Adequately Plead Substantial Assistance.* – Under the TSA, an aider is one who "materially aids a seller, buyer or issuer of a security."  TEX. REV. CIV. STAT. ANN. art. 581-33F(2).   Texas courts have interpreted this language to require that one "substantially assist" a primary violation in order to be held liable.  *See, e.g.*, *Navarro v. Grant Thornton, LLP*, 316 S.W.3d 715, 720–21 (Tex. App. – Houston [14th Dist.] 2010, no pet.).

Plaintiffs make a number of allegations supporting a finding that Hunton provided substantial assistance to Stanford in his TSA violations.  For instance, Plaintiffs allege Hunton misled regulators as to Stanford's previous legal issues, Compl. ¶¶ 309–311, assisted Stanford in investing funds Hunton knew were derived from SIBL investor funds, *id.* ¶¶ 345–350, represented Stanford in real estate deals that Hunton knew were likely to involve SIBL investor funds, *id.* ¶¶ 351–359, and arranged for the establishment of U.S. sales offices in Florida with the knowledge that Stanford's SFIS operations had unlawfully sold  millions of dollars worth of CDs, *id.* ¶ 366.  At this stage, these allegations are sufficient to plead that Hunton provided the requisite assistance to Stanford's primary violations of the TSA.[10]

Hunton's attempt to distance its provision of these legal services from any underlying TSA violations fails at this stage because the alleged legal services have a sufficiently close nexus to alleged TSA violations to at least create a fact issue as to whether they were of

---

[10]Additionally, a number of state courts deem the "substantial assistance" element of an aiding and abetting a securities violation a factual issue which must be resolved on summary judgment or by a jury. *See Hirata Corp. v. J.B. Oxford & Co.*, 193 F.R.D. 589, 600 (S.D. Ind. 2000) (collecting cases).

substantial assistance.  Misleading regulators is the kind of assistance that allowed Stanford

to "continue to operate" and indeed grow.  *See Goldstein v. Mortenson*, 113 S.W.3d 769, 777

(Tex. App. – Austin 2003, no pet.) (finding conduct which sustained the operation of the

primary violator sufficient to prove substantial assistance).  To the extent Hunton argues its

legal services were insufficiently related to underlying TSA violations, those arguments are

better considered at the motion for summary judgment stage.  The Court finds Plaintiffs

adequately plead their claims for aiding and abetting TSA violations.

### C. Plaintiffs May Maintain A Claim for Conspiracy to Violate the TSA

The Court declines to hold that Texas does not recognize a claim for conspiracy to

violate the TSA.  Texas Courts have held generally that any agreement to undertake an

unlawful act may support a claim for conspiracy.  *See, e.g.*, *Laxson v. Giddens*, 48 S.W.3d

408, 410–11 (Tex. App. – Waco 2001, pet. denied) (holding that an agreement to violate the

Texas Deceptive Trade Practices Act could support a claim for conspiracy because it was by

definition an agreement to commit an unlawful act).  Defendants argue the TSA is

distinguishable because it explicitly provides for aider and abettor liability, foreclosing the

need for any common law basis for secondary liability.  However, Defendants fail to

establish that provision for one secondary liability claim forecloses the availability of others.

The Court finds Defendants fail to carry their burden in establishing that Texas does not

recognize a claim for conspiracy to violate the TSA and thus declines to dismiss the claims.

## VI. PLAINTIFFS' AIDING AND ABETTING/PARTICIPATION CLAIMS

Plaintiffs bring claims for aiding and abetting/participation in breach of fiduciary duty, and aiding and abetting/participation in a fraudulent scheme. The Court will address each in turn. However, as a threshold matter the Court rejects Defendants' assertion that Texas does not provide a cause of action for aiding and abetting. Although the law is admittedly unclear, this Court at this stage sides with the courts that have recognized a cause of action for aiding and abetting. *See* Dec. 17, 2014 Order 19–20.

### A. Aiding and Abetting/Participation In Breach of Fiduciary Duty

*1. Plaintiffs' Claim Is Not Barred by* **Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.** – Defendants assert Plaintiffs' aiding and abetting breach of fiduciary duty claims are barred by the Supreme Court's holding in *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994). In that case, the Court held that Section 10(b) of the Securities Exchange Act of 1934 does not provide a cause of action for aiding and abetting. *Id.* at 191. Defendants argue that this rule operates to bar claims based on breaches of fiduciary duties related to the sale of securities.[11]

The Court disagrees with Defendants' conclusion. First, the text of *Central Bank of Denver* does not indicate that the opinion is to be extended to state law causes of action. Nor does Hunton cite to any portion of that opinion that might imply such a conclusion. Second, and more importantly, the fiduciary duties serving as a predicate for Plaintiffs' claims are

---

[11]Greenberg's argument is based on *Central Bank of Denver*'s application to the Investment Company Act and the Investment Advisor Act. *See* Greenberg's Mot. 9.

those owed under state law by investment managers. *See* Pls.' Resp. 45 n.28. While Plaintiffs' claim may implicate some of the same fiduciary duties implicated by the Federal securities laws, the bases for their fiduciary duties claims remain rooted in state law. Defendants fail to convince the Court that the *Central Bank of Denver* decision precludes Plaintiffs' aiding and abetting breach of fiduciary duty claims.

**2. Plaintiffs Adequately Plead the Claim.** – Both Greenberg and Hunton argue Plaintiffs fail to adequately plead their claims for participation in breach of fiduciary duty. To state a claim for participation in a breach of fiduciary duty, a plaintiff must allege facts establishing (1) the existence of a fiduciary relationship; (2) the defendant's knowledge of the fiduciary relationship; and (3) the defendant's awareness that it was participating in the breach of the fiduciary duty. *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 639 (5th Cir. 2007) (citing *Cox Texas Newspapers, L.P. v. Wootten*, 59 S.W.3d 717, 721 (Tex. App. – Austin 2001, pet. denied). Defendants challenge all three elements.

Plaintiffs adequately plead the existence of a fiduciary relationship between Stanford and the investors. *See* Compl. ¶¶ 452–454. Greenberg argues no fiduciary relationship existed because Texas law does not create a fiduciary relationship between investor and broker when the broker does not exercise discretion in making investments. *See* Greenberg's Reply 4–6; *see also Rauscher Pierce Refsnes, Inc. v. Great Southwest Sav., F.A.*, 923 S.W.2d 112, 115 (Tex. App. – Houston [14th Dist.] 1996, no writ). Greenberg primarily argues that Plaintiffs are precluded from arguing that Stanford investment advisors exercised discretion over their investments because the Supreme Court's decision in *Chadbourne & Park LLP*

*v. Troice*, 134 S.Ct. 1058 (2014), which was favorable to Plaintiffs, held the investors were the final decision makers.  *Id.* at 1066.  This holding does not preclude Plaintiffs from arguing that Stanford's investment brokers assumed a position of trust by lobbying them to invest in the fraudulent CDs.  Indeed, Plaintiffs' complaint alleges just that.  Compl. ¶¶ 452–454.  Greenberg's arguments concerning the nature and extent of the relationship between the brokers and investors, *see* Greenberg's Reply 5–6, are left for consideration at the summary judgment stage.[12]

Plaintiffs adequately allege Defendants were aware they were participating in the breach.[13]  Plaintiffs allege both Defendants had knowledge of Stanford's fraudulent conduct.  As referenced above, Plaintiffs allege Loumiet, while at Greenberg, knew Stanford was investing CD proceeds in a manner inconsistent with what was being disclosed to investors.  Compl. ¶¶ 139, 141–142.  This allegation alone suffices to plead that both law firms, through

---

[12]The Court also rejects Greenberg's argument that the existence of a factual question as to a fiduciary relationship prevents Loumiet from having had knowledge of the fiduciary relationship.  Loumiet is an attorney and may well have access to more facts supporting the existence of a fiduciary relationship than does the Court at this stage.  A court's uncertainty as to a legal fact early in a litigation does not imply that the legal fact is inherently unknowable to all.

[13]Although the "participation in" claim requires knowledge, *see Meadows*, 492 F.3d at 639, it does not require knowledge from the "beginning of the combination or agreement," as Greenberg alleges.  Greenberg's Mot. 4.  The standard Greenberg cites is the scienter requirement for conspiracy claims.  Greenberg's cited cases are not to the contrary.  *See Darocy v. Abildtrup*, 345 S.W.3d 129, 138 (Tex. App. – Dallas 2011, no pet.) (requiring only "knowing participation" in the breach); *Southwest Sec., Inc. v. Sungard Data Sys., Inc.*, 2000 WL 1196338, at *6 (stating the scienter standard for a conspiracy claim).

Loumiet, knew of at least one specific way that Stanford was breaching its fiduciary duties to its investors.  Defendants cannot achieve dismissal for failure to plead knowledge.

Finally, Plaintiffs adequately allege Defendants rendered assistance sufficient for liability under a "participation in" theory.  Only Hunton challenges the Plaintiffs' pleading of assistance, but it cites a standard applicable to aiding and abetting securities fraud violations, not "participation in" under Texas law.  *See* Hunton's Mot. 21.  Indeed, the "participation in" standard as laid out by *Meadows* does not explicitly define an "assistance" element.  In any event, the Court finds Plaintiffs' allegations are sufficient to plead assistance for both aiding and abetting securities fraud claims, and "participation in" claims.  *See supra* Subpart V.B.3.

### B. Aiding and Abetting/Participation in a Fraudulent Scheme

*1. The Court Assumes Texas Recognizes the Cause of Action.* – As referenced *supra* Section VI, the Court assumes for the purposes of this motion that Texas recognizes the aiding and abetting/participation claims Plaintiffs assert, including one for aiding and abetting fraud or fraudulent scheme.  Indeed, the cases Hunton cites do not affirmatively conclude Texas does not recognize such a cause of action.  *See Grant Thornton LLP v. Prospect High Income Fund, ML CBO IV*, 314 S.W.3d 913, 930 n.28 (Tex. 2010) (declining to decide whether Texas recognizes a claim for aiding and abetting fraud).

*2. Plaintiffs Adequately Plead the Claim.* – As an initial matter, the Court finds Plaintiffs successfully plead the circumstances of the underlying fraud with particularity.  As discussed above, Plaintiffs make numerous allegations of Stanford's fraudulent conduct.  *See,*

ORDER – PAGE 21

*e.g.*, Compl. ¶¶ 139, 141–142, 200–206.   In a scheme as complex as this one, these allegations adequately state the "who, what, when, where, and why" necessary to plead the underlying fraudulent conduct in compliance with Rule 9(b).

Additionally, Plaintiffs adequately plead the remaining elements of the claim.  Only Hunton challenges Plaintiffs' pleading of the claim, arguing Plaintiffs fail to allege Hunton's knowledge of and assistance to a fraudulent scheme.  The Court reiterates its holding above as to Plaintiffs' claims for aiding and abetting violations of the TSA.  *See supra* Part V.B. Holdings regarding scienter and substantial assistance in that Part apply equally to Plaintiffs' claims here.[14]  Thus, the Court finds Plaintiffs adequately state a claim for aiding and abetting fraud.

## CONCLUSION

Defendants' motions to dismiss are granted in part and denied in part.  The Court dismisses Plaintiffs' TSA claims for aiding and abetting and civil conspiracy for the sale of unregistered securities and the sale of securities by an unregistered dealer arising from sales taking place prior to February 1, 2008.  The Court dismisses TSA claims for aiding and abetting and civil conspiracy for the sale of securities through untruth or omission arising from sales taking place prior to February 1, 2006.  Because those claims are absolutely barred

---

[14]Hunton appears to argue that aiding and abetting fraud claims cannot be based on conduct that also forms the basis for aiding and abetting TSA claims.  *See* Hunton's Mot. Dismiss 21–22.  However, Hunton provides no authority for that argument.  Indeed, the TSA explicitly preserves all common law rights and remedies.  *See* TEX. REV. CIV. STAT. ANN. art. 581-33M.

by a statute of repose, the Court dismisses them with prejudice.  Defendants' motions to dismiss are denied in all other regards.

Signed February 4, 2015.

David C. Godbey
United States District Judge