**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| RALPH S. JANVEY, in his capacity as court-appointed receiver for the Stanford receivership estate; The OFFICIAL STANFORD INVESTORS COMMITTEE; PAM REED; SAMUEL TROICE; and MICHOACAN TRUST; individually and on behalf of a class of all others similarly situated, | § § § § § § § | |
| Plaintiffs. | § § | |
| vs. | § § | CASE NO. 3:12-cv-04641-N |
| GREENBERG TRAURIG, LLP; HUNTON & WILLIAMS LLP;  and YOLANDA SUAREZ, | § § § § | |
| Defendants. | § | |

---

**DEFENDANT HUNTON & WILLIAMS LLP'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR SEVERANCE OF ESTATE CLAIMS ASSERTED BY THE RECEIVER AND OSIC AND REQUEST FOR ENTRY OF SCHEDULING ORDER**

---

| | |
|---|---|
| Jeffrey D. Colman | Richard A. Sayles |
| David Jiménez-Ekman | Shawn Long |
| April A. Otterberg | SAYLES WERBNER |
| JENNER & BLOCK LLP | 4400 Renaissance Tower |
| 353 N. Clark Street | 1201 Elm Street |
| Chicago, IL 60654-3456 | Dallas, TX 75270 |
| jcolman@jenner.com | dsayles@swtriallaw.com |
| (312) 923-2940 | (214) 939-8701 |
| (312) 840-7340 (Facsimile) | (214) 939-8787 (Facsimile) |

*Admitted* Pro Hac Vice

*Counsel for Hunton & Williams LLP*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... ii

INTRODUCTION AND FACTUAL BACKGROUND .................................................. 1

ARGUMENT ............................................................................................................. 3

I.     Legal Standard For Severance Under Federal Rule Of Civil Procedure 21. ...................... 3

II.    Plaintiffs Have Failed To Meet Their Burden To Show Severance Is Justified Under Federal Rule Of Civil Procedure 21 ................................................................................ 4

       A.    Severance Would Create Inefficiency And Waste Resources. ............................... 4

            1.    Severance Would Result In Duplicative, Confusing, And Burdensome Discovery And Motion Practice .............................................................. 4

            2.    The Court And Plaintiffs Previously Recognized The Efficiencies To Be Gained By Conducting Merits Discovery Once, As To All Claims ...... 6

            3.    Plaintiffs' Proposed Approach Ignores The Broader Context Of The Stanford MDL Litigation In Which This Case Proceeds ........................... 8

       B.    Plaintiffs Admit Their Claims Arise Out Of The Same Transaction Or Occurrence And Present Common Questions Of Law Or Fact. ............................. 9

            1.    Plaintiffs Concede Their Claims Against Hunton Arise Out Of The Same Transaction Or Occurrence, Which Weighs Against Severance. ...... 9

            2.    The Commonalities Among The Sets Of Claims Demonstrate That Severance At This Time Would Be Inefficient And Improper. .................. 9

            3.    The Designation Of Responsible Third Parties Does Not Support Severance. ...................................................................................... 11

       C.    Hunton Would Be Prejudiced If The Claims Were Severed, And Plaintiffs Are Not Prejudiced By Continuing To Litigate Their Claims In The Same Case .................................................................................................................... 13

       D.    Plaintiffs Do Not Dispute The Substantial Overlap In The Witnesses And Documentary Proof Required For All Claims. ...................................................... 14

CONCLUSION ........................................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**

*Butcher v. Allstate Ins. Co.*, No. 1:06-cv-423, 2008 WL 5101339
(S.D. Miss. Nov. 26, 2008) ................................................................................. 9, 14

*El Aguilla Food Prods., Inc. v. Gruma Corp.*, 167 F. Supp. 2d 955 (S.D. Tex. 2001) ................... 10

*Flanagan v. Wells Fargo Fin. Nat'l Bank*, No. 4:09-cv-44, 2009 WL 2143439
(E.D. Tex. July 14, 2009) ........................................................................................ 12

*In re Acacia Media Techs. Corp. Patent Litig.*, 360 F. Supp. 2d 1377, 1379 (J.P.M.L. 2005) ...... 8

*Johnson v. Bae Sys. Land & Armaments, L.P.*, No. 3:12-cv-1790, 2014 WL 1714487
(N.D. Tex. Apr. 30, 2014) .............................................................................. passim

*Kumar v. Hyundai Semiconductors Inc.*, No. 3:97-cv-1947, 1999 WL 202543
(N.D. Tex. Mar. 31, 1999) ................................................................................ 10, 14

*Paragon Office Servs., LLC, v. UnitedHealthcare Ins. Co., Inc.*, No. 3:11-cv-2205-D,
2012 WL 4442368 (N.D. Tex. Sept. 26, 2012) .......................................................... 4, 8, 12

*Roberts v. First Fin. Planner, Inc.*, No. 1:05-cv-38-D-D, 2008 WL 4283366
(N.D. Miss. Sept. 18, 2008) ............................................................................... 10, 11

*Trugreen Ltd. P'ship v. Rogers*, No. 3:97-cv-0606-H, 1998 WL 136585
(N.D. Tex. Mar. 18, 1998) ..................................................................................... 12

*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966) ......................................... 3

*United States v. Dawn Props. Inc.*, No. 1:14-cv-224-LG-JCG, 2015 WL 420295
(S.D. Miss. Feb. 2, 2015) .............................................................................. 4, 12, 14

**Statutes**

28 U.S.C. § 1407(a) ............................................................................................... 8

**Rules**

FED. R. CIV. P. 21 ........................................................................................ 3, 4, 11, 14

FED. R. CIV. P. 26(b)(2)(C) .................................................................................... 8

## INTRODUCTION AND FACTUAL BACKGROUND

Plaintiffs—the Receiver, the Official Stanford Investor Committee ("OSIC"), and the three plaintiffs who purport to represent a putative class—filed this lawsuit as one of many Stanford-related civil lawsuits and one of the handful of cases in which a putative class asserts claims.  As Plaintiffs themselves previously acknowledged, they decided to assert all their claims against Hunton & Williams LLP ("Hunton") and Greenberg Traurig, LLP ("Greenberg") together, in one lawsuit, "in order to promote efficiency and judicial economy."  (Pls.' Resp. in Opp. to Mot. for Stay on SLUSA Issues at 4 [ECF 26].)

Plaintiffs now reverse course and ask this Court to eliminate that "efficiency and judicial economy" by severing into a separate case the claims asserted by the Receiver and OSIC.  (*See* Pls.' Mot. to Sever [ECF 163].)  In doing so, Plaintiffs (1) ignore that this case is assigned to the Court as part of the MDL proceedings the Court is coordinating, and (2) ask the Court to change its prior—and correct—determination that the most efficient and appropriate way to proceed is to address class certification first, and then the merits, as to all (remaining) claims.  Specifically, in June 2015, Plaintiffs asked this Court to enter an order that would have indefinitely stayed class certification proceedings yet required the parties to conduct merits discovery on the Receiver/OSIC claims during that stay.  (Pls.' Prior Mot. for Scheduling Order [ECF 131].)  In that motion—just as in their current Motion to Sever—Plaintiffs argued that they wanted to avoid delaying proceedings on the Receiver/OSIC claims while the parties addressed class certification.  (*Id.* at 8-9.)  On August 11, 2015, this Court rejected Plaintiffs' request, explaining that it has "repeatedly taken the view that judicial efficiency is best served by proceeding to first resolve issues pertaining to class certification."  (Order at 2 [ECF 141].)  Accordingly, on August 21, 2015, the Court entered a class certification scheduling order [ECF 142], under which merits

discovery is stayed, class certification discovery is almost entirely complete,[1] and the parties are to submit their briefing to the Court less than two months from now, on February 26, 2016.

Back in August and again now: "The question before the Court is how to move this case forward most reasonably and efficiently.  Splitting the case in two . . . is not the answer." (Hunton's Resp. in Opp. to Pls.' Prior Mot. for Scheduling Order at 2 [ECF 134].)  Although the Court noted in its August 11, 2015 order that it would consider a motion to sever if filed by Plaintiffs (Order at 2 n.1 [ECF 141]), nothing has changed that justifies altering the Court's decision at that time on the appropriate order and manner of proceeding in this case.  Indeed, *all* that has changed since the Court's August orders is the passage of a few more months, during which time the parties have materially advanced their litigation of class certification issues.

By seeking to sever the Receiver/OSIC claims into a separate case, Plaintiffs effectively ask this Court to force Hunton and Greenberg to undergo costly and complex merits discovery twice[2]—once now, on the Receiver/OSIC claims, and again later, on the claims asserted by the putative class ("Class Claims"), assuming a class is certified.[3]  Much of the same evidence and witnesses are involved across the claims in this case, and it would be improper, and directly contrary to judicial economy, to sever Plaintiffs' claims into two cases.  (*See* Hunton's Opp. to Pls.' Prior Mot. for Scheduling Order at 11 [ECF 134].)  Severing the Receiver/OSIC claims also would catapult this case ahead of cases against other defendants in Stanford cases that also face

---

[1] The December 28, 2015 deadline for the close of discovery set forth in the Court's order was extended until January 11, 2016 for certain, limited discovery by the parties' agreement.

[2] Yolanda Suarez, a former in-house lawyer at the Stanford entities, is also a defendant in this case. However, only the Receiver and OSIC assert claims against her.

[3] Hunton opposes Class Plaintiffs' request to certify a class in this case and is briefing that opposition consistent with the Court's class certification scheduling order.

putative class claims,[4] thereby eliminating the economies to be gained from allowing this Court to supervise merits discovery in all of these cases in a coordinated way. For these and the other reasons set forth below, Plaintiffs fail to satisfy their burden to show severance is warranted under Federal Rule of Civil Procedure 21. The Court should deny Plaintiffs' motion.

## ARGUMENT

### I.      Legal Standard For Severance Under Federal Rule Of Civil Procedure 21.

Under the Federal Rules of Civil Procedure, "the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966). Although Federal Rule of Civil Procedure 21 gives this Court discretion to "sever any claim against a party," Plaintiffs "bear[] the burden" of proving severance is warranted. *See Johnson v. Bae Sys. Land & Armaments, L.P.*, No. 3:12-cv-1790, 2014 WL 1714487, at *35 (N.D. Tex. Apr. 30, 2014). District courts in the Fifth Circuit apply the following five factors in deciding Rule 21 motions to sever:

> (1) whether the claims arise out of the same transaction or occurrence;
>
> (2) whether the claims present some common questions of law or fact;
>
> (3) whether settlement of the claims or judicial economy would be facilitated;
>
> (4) whether prejudice would be avoided if severance were granted; and
>
> (5) whether different witnesses and documentary proof are required for separate claims.

---

[4] These cases include: *Rotstain v. Trustmark Nat'l Bank*, No. 3:09-cv-02384 (N.D. Tex); *Troice v. Proskauer Rose LLP*, No. 3:09-cv-01600 (N.D. Tex); *Troice v. Willis of Colorado Inc.*, No. 3:09-cv-01274 (N.D. Tex.); and *Turk v. Pershing LLC*, No. 3:09-cv-02199 (N.D. Tex.).

*Id.* at *35; *see also Paragon Office Servs., LLC, v. UnitedHealthcare Ins. Co., Inc.*, No. 3:11-cv-2205-D, 2012 WL 4442368, at *1 (N.D. Tex. Sept. 26, 2012).

## II.      Plaintiffs Have Failed To Meet Their Burden To Show Severance Is Justified Under Federal Rule Of Civil Procedure 21.

Each of the factors under Rule 21 weighs against severing the Receiver/OSIC claims into a separate case.  Below, Hunton first addresses the factors concerning the facilitation of judicial economy and the presence of common questions, and then examines the (largely undisputed) remaining factors that also weigh against severance.

### A.      Severance Would Create Inefficiency And Waste Resources.

#### 1.      Severance Would Result In Duplicative, Confusing, And Burdensome Discovery And Motion Practice.

Severing this case into two at this juncture would waste the parties' and the Court's resources, force the parties to engage in duplicative discovery and motion practice (*see, e.g.*, Hunton's Opp. to Pls.' Prior Mot. for Scheduling Order at 12-13 [ECF 134]), and potentially create confusion about what discovery and legal rulings apply to whom and how.  The case law recognizes that judicial resources are conserved when claims are consolidated, not by forcing parties to engage "in separate discovery and separate trials involving many of the same issues and witnesses . . . ."  *United States v. Dawn Props. Inc.*, No. 1:14-cv-224-LG-JCG, 2015 WL 420295, at *4 (S.D. Miss. Feb. 2, 2015) (applying the same five-factor severance standard accepted in the Northern District of Texas).  In *Johnson*, the court denied a motion to sever, reasoning that the "overarching question" was the same for all plaintiffs, the movants failed to show that a jury instruction would be insufficient to address any differences among the claims, and the same evidence and witnesses would be required for each set of claims.  2014 WL 1714487, at *35-36. Similarly, in *Paragon Office Services, LLC, v. UnitedHealthcare Insurance Co., Inc.*, the court denied a motion to sever because the "inefficiency of conducting dual litigation," given the

4

similarity of parties and the likelihood of substantial similarity of evidence, outweighed any efficiency that arguably could be gained through severance.  2012 WL 4442368, at *1-3.

In their Motion to Sever, Plaintiffs attempt to sidestep the very real burdens that severance would impose on all parties and this Court with the simple assertion that "any discovery taken in connection with the [Receiver/OSIC] Claims can be used by the parties in connection with the Class Claims when those claims proceed."  (Pls.' Mot. to Sever at 6.)  But Plaintiffs make no effort to show that such a process would even be workable, let alone that it would facilitate judicial economy in any way.

A few examples illustrate the point.  Assume that what Plaintiffs seek occurs—the claims against Hunton proceed in two separate cases, and merits discovery on the Receiver/OSIC claims occurs first, while the process remains stayed on the Class Claims.  Then assume that, during the Receiver/OSIC merits discovery process, Hunton succeeds in obtaining a legal ruling from this Court, such as a protective order against certain discovery the Receiver and OSIC wish to take or an order granting summary judgment in Hunton's favor as to one of its defenses that applies to both sets of claims.  Would the Court's orders in the Receiver/OSIC case also bind the putative class members who, if severance is granted, would not be part of the Receiver/OSIC case?  Or would the putative class be entitled to (or attempt to take) a second bite at the apple, forcing Hunton to litigate (and this Court to decide) the same issues twice?

Similarly, assume that, in the Receiver/OSIC case, Hunton seeks to depose the Receiver as to various aspects of his claims.  Would Hunton be required to depose the Receiver as to all issues—even those that are more directly relevant to the merits of the Class Claims—at that time, and before Hunton even knows which Class Claims (if any) will survive the certification process?  The converse is also true:  would Hunton be forced to choose between, on the one

hand, subjecting its own witnesses to multiple depositions and, on the other hand, preparing those witnesses to be deposed in the Receiver/OSIC case on matters that are more properly at issue in the Class Claims case, the scope of which has not yet been determined?  Further, Hunton believes the Court has always intended to supervise and coordinate merits discovery proceedings across the major cases pending in the Stanford MDL, in an effort to prevent, for example, multiple and repeated depositions of Allen Stanford, James Davis, the Receiver, and others. Splitting the case against Hunton in two also conflicts with these aspects of an MDL process.

These are just a few examples of the confusion, duplication, and overall inefficiency that Plaintiffs' bare-bones proposal to apply merits discovery to both sets of claims simply does not (and cannot) solve.

### 2.   The Court And Plaintiffs Previously Recognized The Efficiencies To Be Gained By Conducting Merits Discovery Once, As To All Claims.

In another Stanford case, this Court directly acknowledged that it would be inefficient for claims to proceed the way Plaintiffs propose for this case—for merits discovery to occur on some but not all claims, and before class certification is resolved.  In *Rotstain v. Trustmark Nat'l Bank*, a case that involves both OSIC claims and putative class claims pending in the same case, counsel for the OSIC asked the Court to allow merits discovery to move forward while class certification proceedings took place.  (Tr. of May 15, 2015 Status Phone Conf., *Rotstain* at 5:4-11, found at page 5 of the Appendix to Hunton's Resp. to Pls.' Prior Mot. for Scheduling Order [ECF 134-1].)  This Court disagreed, stating it would be "too difficult to try and manage" a situation where "merits discovery [would] go forward with regard to some claims and some parties and not the others."  (*Id.* at 8:13-16 (ECF 134-1 App. 8).)  Instead, the Court advised the parties to "go forward as scheduled" with class certification proceedings and "wait for merits discovery until class certification is resolved."  (*Id.* at 8:17-21 (ECF 134-1 App. 8).)  In response

to further argument from counsel for the OSIC, the Court stated, "the thing we need to do to most move the case towards resolution on the merits is stick with the schedule that is in place," allow the Court to do its "very best to rule promptly on class certification once it is fully briefed," and then proceed into merits discovery. (*Id.* at 10:3-12 (ECF 134-1 App. 10).) That same rationale applies readily here.

The plaintiffs in other Stanford litigation, represented by many of the same counsel who represent Plaintiffs here, also have previously recognized the efficiencies of litigating Receiver/OSIC and putative class claims in one case. In 2014, the plaintiffs in the litigation against Adams & Reese LLP and Breazeale, Sachse & Wilson LLP moved to consolidate, for discovery purposes, two separate cases, one filed by the Receiver and the OSIC and the other filed by a putative class and the OSIC. Pls.' Mot. to Consol. With Related Action for Disc. Purposes, *Janvey v. Adams & Reese LLP*, No. 3:12-cv-0495, at 2 (N.D. Tex. Mar. 27, 2014) [ECF 99].[5] There, the plaintiffs argued that "the overlap in factual allegations" among the two sets of claims meant they would have to "prove essentially the same set of facts through the same documents and witness testimony in both cases." *Id.* The plaintiffs argued that, as a result, "it [made] sense for this Court to consolidate the Class Case with the [Receiver/OSIC] case for discovery purposes," "[to] allow plaintiffs in the Class Case to proceed with discovery in tandem with discovery in the [Receiver/OSIC] case," and "[to] coordinate discovery between the two cases so that, e.g., the same witnesses do not have to be deposed twice concerning the same facts." *Id.* In this case, however, Plaintiffs seek the contrary relief—to proceed in two cases, in a manner they previously agreed would be inefficient and waste resources. (*See* Pls.' Resp. in

---

[5] On March 20, 2014, the putative class suing Adams & Reese filed a similar motion that also sought to consolidate the class case with the Receiver/OSIC case for discovery purposes. Pls.' Mot. to Defer Resolution of Mots. to Dismiss, to Compel Rule 26(f) Conf. and for Entry of Sched. Order, and to Consol. with Related Action for Disc. Purposes, at 7-10, *OSIC v. Adams & Reese LLP*, No. 3:11-cv-0329 (N.D. Tex. Mar. 20, 2014) [ECF 98].

Opp. to Mot. for Stay on SLUSA Issues at 4 [ECF 26].)  The Court should avoid this result and deny severance.[6]

### 3. Plaintiffs' Proposed Approach Ignores The Broader Context Of The Stanford MDL Litigation In Which This Case Proceeds.

Just as with their Prior Motion for a Scheduling Order ([ECF 131]), Plaintiffs also continue to ignore that this case is one of many related to the Stanford MDL proceedings. Plaintiffs make no effort in their Motion to Sever to address the practicalities of discovery in this case within the broader context of the Stanford MDL.  *See generally* FED. R. CIV. P. 26(b)(2)(C) (requiring a court to "limit the frequency or extent of discovery" where it is unreasonably cumulative, duplicative, or unduly burdensome).  The core purpose of the MDL process is to allow for "coordinated or consolidated pretrial proceedings," 28 U.S.C. § 1407(a), to avoid duplicative discovery and promote judicial economy for the parties and the court, *see, e.g.*, *In re Acacia Media Techs. Corp. Patent Litig.*, 360 F. Supp. 2d 1377, 1379 (J.P.M.L. 2005).  Thus, courts appropriately and routinely consider the need to coordinate discovery when determining case schedules and discovery plans in MDL proceedings, to ensure "that common parties and witnesses are not subjected to discovery demands which duplicate activity that will occur or has already occurred in constituent [MDL] actions."  *Id.*

The need to avoid undue discovery burdens is particularly true in this large and complex MDL proceeding.  The many Stanford-related cases that remain pending presumably will require discovery involving many of the same documents and the same witnesses.  Plaintiffs and defendants in the Stanford MDL should share a goal of avoiding a situation where any witness

---

[6] Nor have Plaintiffs argued that severance would increase the likelihood of a settlement of Plaintiffs' claims, the other aspect of this Rule 21 factor.  *See Paragon Office Servs., LLC*, 2012 WL 4442368, at *2-3.

would unnecessarily be deposed more than once.[7]   But Plaintiffs' Motion to Sever fails even to acknowledge these significant issues.

For all these reasons, severing this case into two would be directly contrary to efficiency and judicial economy, and the Court should deny Plaintiffs' motion.

### B.   Plaintiffs Admit Their Claims Arise Out Of The Same Transaction Or Occurrence And Present Common Questions Of Law Or Fact.

#### 1.   Plaintiffs Concede Their Claims Against Hunton Arise Out Of The Same Transaction Or Occurrence, Which Weighs Against Severance.

Plaintiffs concede that the Receiver/OSIC claims and the Class Claims "generally arise out of the same basic facts (i.e., the Defendants' [alleged] involvement in the Stanford Ponzi scheme)." (Pls.' Mot. to Sever at 6; *see also* Pls.' Prior Mot. for Scheduling Order at 9 (stating that the two sets of claims "are based on the same set of acts and omissions [allegedly] committed by the Defendants").)   That claims against a defendant arise from the same transaction or occurrence, or series of transactions or occurrences, weighs against severing the claims into separate cases. *See, e.g.*, *Johnson*, 2014 WL 1714487, at *35.

#### 2.   The Commonalities Among The Sets Of Claims Demonstrate That Severance At This Time Would Be Inefficient And Improper.

Plaintiffs also appear to acknowledge that the Receiver/OSIC claims and Class Claims involve common questions of law or fact[8] (*see* Pls.' Mot. to Sever at 6), a factor that also weighs against severance, *see Johnson*, 2014 WL 1714487, at *35; *see also Butcher v. Allstate Ins. Co.*, No. 1:06-cv-423, 2008 WL 5101339, at *2 (S.D. Miss. Nov. 26, 2008) (denying motion to sever despite a finding that the claims involved separate transactions, instead focusing on common

---

[7] The Receiver and OSIC took this very position just last year in *Adams & Reese*.  (*See* Part II.A.2, above.)

[8]  Hunton does not concede that the putative class can satisfy the commonality or predominance requirements for class certification purposes under Federal Rule of Civil Procedure 23.  Hunton will challenge the putative class's showing on those matters in its forthcoming brief opposing Plaintiffs' motion to certify a class.

9

questions of law and fact).  Plaintiffs are not entitled to severance when, as here, Hunton would be forced to engage in duplicative litigation on factually similar claims, which would dramatically increase costs and potentially lead to inconsistent verdicts.  *See El Aguilla Food Prods., Inc. v. Gruma Corp.*, 167 F. Supp. 2d 955, 960-61 (S.D. Tex. 2001) (denying motion to sever and noting the "factual similarity of the claims").  Indeed, in the Complaint, all Plaintiffs adopt the same set of more than 100 pages of factual allegations against Defendants.  (*See* Compl. at pp. 8-138 [ECF 1].) A number of legal issues among the Receiver/OSIC claims and the Class Claims also are similar. For example, both the Receiver and OSIC and the putative class assert claims against Hunton for aiding and abetting a breach of fiduciary duty (Pls.' Mot. to Sever at 4), and those claims involve such common legal issues as who owed fiduciary duties to whom and what constitutes the level of participation or assistance required to aid a breach of duty.

Given the existence of common questions of fact in particular, Plaintiffs are incorrect in arguing that the Receiver/OSIC claims and Class Claims (if they continue) are "logically separable."  (Pls.' Mot. to Sever at 5, 8.)  Plaintiffs ignore the analysis in *Kumar v. Hyundai Semiconductors, Inc.*, a case they cite on this point.  No. 3:97-cv-1947, 1999 WL 202543, at *2 (N.D. Tex. Mar. 31, 1999) (cited in Pls.' Mot. to Sever at 5).  In *Kumar*, the defendant argued that Title VII and tort claims were dissimilar, and "that [the] failure to sever the tort claims will result in confusion, inefficiency, and prejudice to [the defendant]."  *Id.*  The court rejected that argument, reasoning that because the same testimony would be presented for both sets of claims, there was "a factual link" between them, and the claims were not "logically separable."  *Id.*  The same is true here, where the Receiver/OSIC and putative class rely on the exact same factual allegations to state their claims against Hunton.[9]  (*See* Compl. at pp. 8-138 [ECF 1].)

[9] *Roberts v. First Financial Planner, Inc.*, No. 1:05-cv-38-D-D, 2008 WL 4283366 (N.D. Miss. Sept. 18, 2008) (cited in Pls.' Mot. to Sever at 8), is inapposite.  There, the court certified a class for breach of

### 3. The Designation Of Responsible Third Parties Does Not Support Severance.

Plaintiffs' Motion to Sever focuses on one legal issue—the designation of responsible third parties ("RTPs")—that Plaintiffs contend differs among their claims such that it justifies split this case in two. (*See* Pls.' Mot. to Sever at 2-3, 7-8.) Plaintiffs are wrong, for four reasons.

*First*, Plaintiffs are incorrect in asserting that RTPs may be designated only for the Receiver/OSIC claims and not the Class Claims (if they continue). (*See* Greenberg's Reply in Support of Mot. to Designate RTPs at 8-9 [ECF 165]; Hunton's Proposed Brief Concerning the Designation of Responsible Third Parties in This Case at 3-5 [ECF 166-1].) Because RTPs are an issue on both the Receiver/OSIC claims and the Class Claims,[10] there is no potential for the kind of "juror confusion" that, according to Plaintiffs (Pls.' Mot. to Sever at 2-3, 7-8), warrants severance.[11]

*Second*, even if Plaintiffs are correct that the RTP designation applies to some but not all claims in this case (which Hunton disputes), the "common questions of law and fact" analysis under Rule 21 does not require *all* questions of law and fact to be the same. Rather, only "*some* questions of law or fact must be common to all parties." *Johnson*, 2014 WL 1714487, at *35 (emphasis added). Plaintiffs do not dispute that common questions exist. (*See* Pls.' Mot. to

---

contract claims against one defendant and denied class certification for fraud and tort claims against other defendants, meaning the fraud and tort claims continued only for the named plaintiffs but not absent class members. *Id.* at *1-2. The court severed those individuals' tort and fraud claims because they were no longer relevant to the claims that were certified and severance would serve the interests of judicial economy. *Id.* at *2. That is not the situation here.

[10] In its answer filed in March 2015, Hunton indicated it intended to designate RTPs as to both Receiver/OSIC claims and Class Claims. (Hunton Ans. at 267-68 [ECF 128].) Hunton has not yet filed a motion to designate RTPs given the procedural posture of this case (with merits discovery stayed), but it intends to do so at a later date.

[11] The issue of the designation of RTPs also is not new and thus cannot explain (or justify) Plaintiffs' about-face in their position about the efficiencies of joining all claims against Hunton in one case. For example, Greenberg indicated its intent to seek to designate RTPs in its answer filed back in February 2013, a few months after this case was filed in November 2012. (Greenberg Ans. at 67 [ECF 27].)

Sever at 6.)  Thus, some differences in the law or facts that apply to the Receiver/OSIC claims compared to the law or facts that apply to the Class Claims do not—by themselves—justify severance.  *See Johnson*, 2014 WL 1714487, at *35-36.  That is especially true when severance would generate inefficiency and prejudice Hunton, as demonstrated above in Part II.A.

*Third*, Plaintiffs' speculation about eventual "juror confusion" on damages (Pls.' Mot. to Sever at 2-3, 7-8) does not necessitate severance, especially given the current discovery posture of this case.  Plaintiffs' apparent concern about juror confusion is more properly presented down the road, as part of an eventual trial planning process, rather than now, before merits discovery has occurred on claims that Plaintiffs agree involve common questions of law and fact.  Indeed, in one of the cases Plaintiffs cite, the court denied the plaintiff's motion to sever his claims from the defendant's third-party claims against two RTPs, concluding severance would be "premature."  *Flanagan v. Wells Fargo Fin. Nat'l Bank*, No. 4:09-cv-44, 2009 WL 2143439, at *3 (E.D. Tex. July 14, 2009) (cited in Pls.' Mot. to Sever at 7).  The plaintiff in *Flanagan* filed his motion to sever about six months after filing his lawsuit.  *Id.* at *1.

*Fourth*, in any event, Plaintiffs have not demonstrated why this Court could not use jury instructions to address any concerns they have about jury confusion as to the designation of RTPs.  *See, e.g.*, *Johnson*, 2014 WL 1714487, at *36 n.30.  Courts frequently refuse to sever claims where jury instructions can alleviate the potential for juror confusion.  *See, e.g.*, *Dawn Props. Inc.*, 2015 WL 420295, at *5-6 (confusion can be addressed with jury instructions); *Paragon Office Servs., LLC*, 2012 WL 4442368, at *2 (explaining that "[a]lthough the legal standards differ, there is no risk of confusion of legal standards" because a jury can be instructed on the law); *Trugreen Ltd. P'ship v. Rogers*, No. 3:97-cv-0606-H, 1998 WL 136585, at *4 (N.D. Tex. Mar. 18, 1998) (rejecting argument that a single trial "would cause jury confusion and

12

unnecessary delay" when there was "substantial overlap between the parties as well as the fact and expert witnesses that will be required to litigate the various causes of action").  The RTP issue is a red herring and does not justify splitting this case in two.

> **C.    Hunton Would Be Prejudiced If The Claims Were Severed, And Plaintiffs Are Not Prejudiced By Continuing To Litigate Their Claims In The Same Case.**

Hunton would be prejudiced if the Court severed the claims against it into two cases at this time, particularly because of the inefficiencies and confusion severance would create as Hunton attempted to navigate through two duplicative discovery processes.  (*See* Part II.A.1, above.)   In addition, severance would prejudice Hunton if it resulted in Hunton being forced to litigate the merits of the Receiver/OSIC claims without any of the benefits to be gained (for all parties and this Court) from this Court's supervision of a coordinated merits discovery process in the various Stanford cases filed against professional defendants.  (*See* Part II.A.3, above.)

By contrast, Plaintiffs overstate the supposed "undue delay and prejudice" the Receiver and OSIC will experience in the absence of severance.  (*See* Pls.' Mot. to Sever at 1-2.)  Other than their (incorrect) speculation about juror confusion (*see* Part II.B.3, above), Plaintiffs do not elaborate or provide relevant authority on the alleged prejudice they will experience, *see Johnson*, 2014 WL 1714487, at *36 (denying motion to sever and explaining that movant failed to "provide any other reason why it will be prejudiced by a single trial," other than "speculative prospects of jury confusion").  Rather, Plaitniffs merely lament any delay that may occur on the Receiver/OSIC claims if—as the Court has already determined (Class Certification Scheduling Order [ECF 142])—class certification is decided first (*see* Pls.' Mot. to Sever at 6-7).

But Plaintiffs' complaints about a potential delay on the Receiver/OSIC claims ring hollow.  The parties have materially advanced through the steps needed to present class certification to the Court less than two months from now.  Further, the mere potential for a delay

in resolving the Receiver/OSIC claims does not overcome the utter inefficiency that severance would create.  In *Kumar*, the court denied a motion to sever, explaining that even "an additional six-month delay is not an undue burden when weighed against the inefficiency that severance would create."  1999 WL 202543 at *2 (cited in Pls.' Mot. to Sever at 5).

Moreover, the Receiver and OSIC themselves are responsible for some of the time that has already passed on their claims.  Although the Receiver and OSIC successfully persuaded the Court *not* to stay their claims pending the U.S. Supreme Court's ruling on SLUSA issues in another Stanford matter, they never sought discovery from Hunton for approximately a year while the Class Claims were stayed pending that ruling.  (*See* Order Denying Request for Stay [ECF 45]; Pls.' Resp. in Opp. to Mot. for Stay on SLUSA Issues at 2-4 [ECF 26].)

Finally, that Plaintiffs waited to move to sever the Receiver/OSIC claims until now, when the case has been proceeding (with motions to dismiss decided) and when class certification proceedings have substantially progressed, concretely demonstrates that any concerns about delay on the Receiver/OSIC claims are unfounded.  *See Butcher*, 2008 WL  5101339, at *2 (denying motion to sever, citing in part two-year delay in filing motion to sever and the fact that plaintiffs' pleading was the reason the claims were consolidated).

> **D.**     **Plaintiffs Do Not Dispute The Substantial Overlap In The Witnesses And Documentary Proof Required For All Claims.**

The final Rule 21 factor addresses whether the same witnesses and documentary proof are required for the claims.  *Dawn Props. Inc.*, 2015 WL 420295, at *5 (rejecting motion to sever when one party anticipated using many of the same expert and fact witnesses despite an opposing argument that the claims required different evidentiary proof).  Plaintiffs do not address this factor in their motion, but it, too, weighs against severance.  Courts are clear that a consolidated case and single trial is favored when "multiple trials would certainly involve

duplicative presentations of evidence." *Johnson*, 2014 WL 1714487, at *36.  Here, Plaintiffs agree that the Receiver/OSIC claims and the Class Claims "are based on the same set of acts and omissions [allegedly] committed by the Defendants."  (Pls.' Prior Mot. for Scheduling Order at 9; *see also* Pls.' Mot. to Sever at 6.)  As a necessary corollary, there will be a significant overlap between the lay and expert witnesses and documentary proof required for the Class Claims and the Receiver/OSIC Claims.  Severance at this juncture would be inefficient and inappropriate.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion to Sever and enter an order with such other and further relief to which Hunton may be entitled.

Dated: December 31, 2015                              Respectfully submitted,

By:   /s/ Jeffrey D. Colman

| | |
|---|---|
| Richard A. Sayles (Tex. # 17697500) | Jeffrey D. Colman (Ill. # 0491160) |
| Shawn Long (Tex. # 24047859) | David Jiménez-Ekman (Ill. # 6210519) |
| SAYLES WERBNER | April A. Otterberg (Ill. # 6290396) |
| 4400 Renaissance Tower | JENNER & BLOCK LLP |
| 1201 Elm Street | 353 N. Clark Street |
| Dallas, TX 75270 | Chicago, IL 60654-3456 |
| dsayles@swtriallaw.com | jcolman@jenner.com |
| (214) 939-8701 | (312) 923-2940 |
| (214) 939-8787 (Facsimile) | (312) 840-7340 (Facsimile) |

*Counsel for Defendant*                          *Counsel for Defendant Hunton & Williams LLP*
*Hunton & Williams LLP*                        *Admitted* Pro Hac Vice

## CERTIFICATE OF SERVICE

I, Jeffrey Colman, hereby certify that on December 31, 2015, I electronically filed the foregoing **Defendant Hunton & Williams LLP's Response in Opposition to Plaintiffs' Motion for Severance of Estate Claims Asserted by the Receiver and OSIC and Request for Entry of Scheduling Order** with the clerk of the U.S. District Court, Northern District of Texas, using the electronic case filing (ECF) system of the court. The ECF system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this notice as service of this document by electronic means.

/s/ Jeffrey D. Colman
Jeffrey D. Colman