Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

### Section 443
### Safekeeping of suspicious records or documents

Records or documents, the authenticity of which is at issue, or the content of which is said to have been modified, shall remain in the safekeeping of the court registry until the legal dispute has been dealt with and terminated, unless they must be surrendered to another authority in the interests of public order.

### Section 444
### Consequences of the removal of a record or document

Where a record or document has been removed or has been rendered unfit for use in the intention of preventing the opponent from using it, the allegations made by the opponent regarding the nature and the content of the record or document may be deemed to have been proven.

### Title 10
### Evidence provided by examination of a party

### Section 445
### Examination of the opponent; offer to provide evidence

(1) Any party that has not fully provided other evidence by way of complying with its obligation to provide evidence, or that has failed to so submit other evidence, may offer to provide evidence by filing the petition that the opponent be examined regarding the facts and circumstances to be proven.

(2) This petition is not to be complied with if it concerns facts and circumstances regarding which the court deems the contrary to have been proven.

### Section 446
### Refusal by the opponent to be examined

Should the opponent refuse to have himself examined, or should he fail to make a statement in spite of having been asked to do so by the court, the court is to decide at its discretion and conviction, taking account of the overall factual situation and in particular the grounds cited in the refusal, whether or not it intends to deem proven the facts and circumstances alleged.

### Section 447
### Examination, upon corresponding application being made, of the party upon whom it is incumbent to provide evidence

The court may also examine the party upon whom it is incumbent to provide evidence regarding the facts and circumstances at issue where one party petitions that this be done and the other consents.

### Section 448
### Ex officio examination

Even if no petition has been filed by a party, and without consideration of the onus of proof, the court may direct that a party or both of the parties be examined regarding the facts and circumstances at issue, if the results of the hearings and of the taking of evidence, if any, do not suffice to establish to the satisfaction of the court the truth or untruth of a fact or circumstance that is to be proven.

### Section 449
### Examination of joined parties

Where the party to be examined consists of several joined parties, the court shall determine, depending on the circumstances of the case, whether all of the joined parties or only some of them are to be examined.

### Section 450
### Court order for evidence to be taken

APP 1658

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

(1) The court shall direct the examination of a party by issuing an order for evidence to be taken. If the party is not present in person when the order is pronounced, it is to be summoned ex officio to the examination, with the order for evidence being communicated to it. The summons shall be communicated to the party in person even if it has appointed an attorney of record; the summons need not be served.

(2) The implementation of the order may be suspended if, following its issuance, new evidence regarding the facts and circumstances to be proven is brought before the court. Once the new evidence has been taken, the court is to refrain from examining a party if the court regards the question to have been dealt with regarding which evidence is to be taken.

## Section 451
### Actual examination

The stipulations of sections 375, 376, 395 (1), subsection (2), first sentence, and of sections 396, 397, 398 shall apply mutatis mutandis to the examination of a party.

## Section 452
### Placing a party under oath

(1) Should the result obtained from the testimony of a party that has not been sworn in not suffice to convince the court of the truth or untruth of the fact or circumstance that is to be proven, the court may direct that the party is to be placed under oath regarding its testimony. Where both parties have been examined, the court may demand only of one party that it swear an oath regarding its statement on the same facts and circumstances.

(2) The oath shall be worded to the effect that the party has said nothing but the truth to the best of its knowledge, and that it has not concealed anything.

(3) The opponent may waive having the respectively other party sworn in.

(4) No party may admissibly be placed under oath if it has been convicted of perjury in a final and binding judgment.

## Section 453
### Evaluation of the evidence obtained in examining a party

(1) The court is to evaluate, at its discretion and conviction, the testimony of the party pursuant to section 286.

(2) Should the party refuse to testify or to swear an oath, section 446 shall apply mutatis mutandis.

## Section 454
### Failure of the party to appear

(1) Should the party fail to appear at the hearing determined for its examination, or for it to be placed under oath, the court shall decide at its sole discretion whether or not the testimony is to be deemed to have been refused, and shall do so in consideration of all circumstances, in particular of the reasons, if any, that the party has cited for its failure to appear.

(2) Where the hearing, at which the party failing to appear was to be examined or placed under oath, was arranged by the court hearing the case, then that hearing is to be used to hear oral argument on the merits of the case unless the court believes that arranging a new hearing for the examination is mandated.

## Section 455
### Persons under a legal disability

(1) If a party is a person under a legal disability, their legal representative is to be examined, subject to the rule set out in subsection (2). Should the party have a plurality of legal representatives, section 449 shall apply mutatis mutandis.

(2) Minors who are 16 years of age or older may be examined regarding facts and circumstances consisting of their own actions, or facts and circumstances they have perceived, and may also be placed under oath pursuant to section 452 wherever the court deems this to be reasonable based on the circumstances of the case. The same shall apply

APP 1659

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

for a person having the capacity to sue and to be sued who is represented in the legal dispute by a custodian or curator.

**Sections 456 to 477**
**(repealed)**

**Title 11**
**Administration of oaths and affirmations**

**Section 478**
**Oath taken in person**

The oath must be sworn in person by the person under obligation to so swear it.

**Section 479**
**Oath taken before the judge correspondingly delegated or requested**

(1) The court hearing the case may direct that the oath be taken before one of its members, or before another court if the person under obligation to swear an oath is prevented from appearing before the court hearing the case, or if he is located at a great distance from the seat of the court and the oath will not be taken in the form governed by section 128a (2).
(2) The President of the Federal Republic of Germany shall take the oath in his residence before a member of the court hearing the case, or before another court.

**Section 480**
**Cautionary remarks regarding the oath to be sworn**

Prior to the oath being taken, the judge is to appropriately instruct the person under obligation to swear an oath as to the importance of swearing an oath, and is to likewise instruct him that he may swear the oath with or without a religious confirmation.

**Section 481**
**Taking of the oath; wording of the oath**

(1) The oath with religious confirmation is sworn such that the judge speaks the oath's words, introducing it by the words
"You hereby swear, by God the almighty and all-knowing",
with the person under obligation to swear an oath thereupon speaking the words (wording of the oath)
"I swear it, so help me God."
(2) The oath without a religious confirmation is sworn such that the judge speaks the oath's words, introducing it by the words
"You hereby swear",
with the person under obligation to swear an oath thereupon speaking the words (wording of the oath)
"I swear it."
(3) Where the person under obligation to swear an oath states that, as a member of a specific religious community or of a faith-based group, he wishes to confirm his oath using words of that community, he may add such words to the oath.
(4) In taking the oath, the party so swearing it is to raise his right hand.
(5) In cases in which a plurality of witnesses is to be sworn in simultaneously, the oath's words shall be spoken by each person individually who is under obligation to swear an oath.

**Section 482**
**(repealed)**

**Section 483**
**Oaths taken by persons suffering from a speech disorder or a hearing impairment**

(1) A person suffering from a speech disorder or a hearing impairment shall, at his selection, take the oath by repeating the words of the oath, by copying them and signing them, or by being assisted by a person enabling communication with such person, whereby such

Page 104 of 275

**APP 1660**

App. 2341

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

assistant is to be involved by the court. The court is to provide the technical aids suitable for this purpose. The court is to draw the attention of the person suffering from a speech disorder or from a hearing impairment to his right to choose in this regard.

(2) Where the person suffering from a speech disorder or a hearing impairment has not exercised his right to choose pursuant to subsection (1), the court may demand that he take the oath in writing, or it may direct that a person enabling communication with such person be involved; the court may also do so if it is not possible to take the oath in the form selected pursuant to subsection (1), or only by making efforts that are not justified by the intended purpose.

## Section 484
### Solemn affirmation deemed equivalent to an oath

(1) If the person under obligation to swear an oath states that, for reasons of his faith or of his conscience, he does not wish to swear an oath, he is to make an affirmation. This affirmation shall be equivalent to an oath; the attention of the party so obligated is to be drawn to this fact.

(2) The affirmation shall be made such that the judge speaks the wording of the oath as the wording of the affirmation, introducing them by the words

"You affirm, being conscious of your responsibility before the court",

with the person under obligation to make an affirmation thereupon speaking the words: "Yes."

(3) Section 481 subsections (3) and (5) and section 483 shall apply mutatis mutandis.

## Title 12
### Independent evidentiary proceedings

## Section 485
### Admissibility

(1) Upon the corresponding petition having been filed by a party, the court may direct in the course of litigation or outside of the proceedings that visual evidence be taken on site, that witnesses be examined, or that an expert prepare a report, provided that the opponent consents to doing so, or provided that there is the concern that evidence might be lost, or that it will become difficult to use it.

(2) Wherever a legal dispute is not yet pending, a party may petition that an expert prepare a written report if it has a legitimate interest in establishing:

    1.        The state of a person or the state or value of an object;

    2.        The cause of personal injury, property damage, or a material defect;

    3.        The effort required to remedy a personal injury, property damage or material defect.

Interests under law are assumed to be given if the establishment of the above facts may serve to avoid a legal dispute.

(3) To the extent the court has already directed that a report be prepared, a new report shall be prepared only if the prerequisites set out in section 412 have been met.

Section 486
Competent court

(1) Wherever a legal dispute is pending, the petition is to be filed with the court hearing the case.

(2) If a legal dispute is not yet pending, the petition is to be filed with that court that would be competent, according to the submission by the petitioner, to take the decision in the main action. In the subsequent litigation, the petitioner may not take recourse to the court having lacked jurisdiction.

(3) In cases of imminent danger, the petition may also be filed with the local court (Amtsgericht, AG) within the judicial district of which the person has his abode who is to be

APP 1661

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

examined, or regarding whom a report is to be prepared, or within the judicial district of which the object is located that is to be visually inspected on site, or regarding which a report is to be prepared.

(4) The petition may be recorded with the registry for the files of the court.

### Section 487
### Content of the petition

The petition must:

1.    Designate the opponent;

2.    Designate the facts and circumstances regarding which evidence is to be taken;

3.    Name the witnesses or designate the other evidence that may admissibly be taken pursuant to section 485;

4.    Demonstrate to the satisfaction of the court the facts and circumstances the petitioner believes justify the independent evidentiary proceedings and the jurisdiction of the court.

### Sections 488 and 489
### (repealed)

### Section 490
### Decision on the petition

(1) The court shall decide on the petition by a court order.

(2) The order by which the court complies with the petition is to set out the facts and circumstances regarding which evidence is to be taken, as well as the evidence, naming the witnesses to be examined and the experts. The order is not contestable.

### Section 491
### Summons of the opponent

(1) The opponent is to be summoned to the hearing determined for the taking of evidence in such due time that he is able to protect his rights, provided that this can be achieved in light of the circumstances of the case; the order and a copy of the petition are to be served on him.

(2) Failure to comply with this rule shall not contravene the taking of evidence.

### Section 492
### Taking of evidence

(1) Evidence shall be taken in accordance with the rules applicable for the taking of evidence as such.

(2) The record of the taking of evidence is to remain in the safekeeping of the court that has directed the evidence to be taken.

(3) The court may summon the parties to the dispute to be heard in oral argument if it can be expected that the parties will settle; any such settlement is to be recorded by the court.

### Section 493
### Use in proceedings

(1) Should a party refer to facts or circumstances in proceedings regarding which independent evidentiary proceedings have been held, the independent evidentiary proceedings shall be equivalent to the taking of evidence before the court hearing the case.

(2) Where the opponent has failed to make an appearance at a hearing of the independent evidentiary proceedings, the result obtained therein may be used only if the opponent had been summoned in due time.

### Section 494
### Unknown opponent

APP 1662

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

(1) If the party tendering evidence does not designate an opponent, its petitions shall be admissible only if the party tendering evidence demonstrates to the satisfaction of the court that it is unable, through no fault of its own, to designate the opponent.

(2) Should the court comply with the petition, it may appoint a representative for the unknown opponent, who is to protect that opponent's rights in the course of the evidence being taken.

### Section 494a
### Period for bringing proceedings in the courts

(1) Absent a pending legal dispute, the court is to direct that the petitioner is to bring proceedings within a period to be determined, and shall do so following the close of the taking of evidence, and upon corresponding application being made, without a hearing for oral argument.

(2) Where the petitioner fails to comply with this order, and upon corresponding application being made, the court is to pronounce in a corresponding court order that the petitioner is to bear the costs incurred by the opponent. A complaint subject to a time limit may be lodged against the decision.

### Chapter 2
### Proceedings pursued before the local courts (Amtsgerichte)

### Section 495
### Rules to be applied

(1) The rules applying to proceedings before the regional courts (Landgerichte) shall apply to the proceedings before the local courts, unless deviations result from the general regulations set out in Book 1 hereof, the special provisions made hereinbelow, and the constitution of the local courts.

### Section 495a
### Proceedings performed at the court's equitably exercised discretion

The court may decide at its equitably exercised discretion on how to implement its proceedings if the value of the claim does not exceed the amount of 600 euros. Upon corresponding application being made, the matter must be dealt with in oral argument.

### Section 496
### Submission of written pleadings; declarations made for the record

The action, the statement of defence as well as any other petitions and declarations by a party that are to be served must be submitted to the court in writing, or must be recorded with the registry for the files of the court.

### Section 497
### Summonses

(1) The summons of the plaintiff to the hearing determined for the action is to be communicated by simple letter unless the court orders that it be served. Section 270 second sentence shall apply mutatis mutandis.

(2) A party need not be sent a summons if it was informed of the hearing when it brought the action or the petition, or recorded same with the registry for the files of the court, based on which the date of the hearing is determined by the court. This communication is to be recorded in the files.

### Section 498
### Service of the record of the action

Where an action has been recorded with the registry for the files of the court, the record of this filing shall be served instead of the statement of claim.

### Section 499
### Instructions

APP 1663

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

(1) In serving the statement of claim, or the record as to the action having been brought, to the defendant, he is to be instructed that the rules do not require him to be represented by counsel.

(2) Together with the instruction provided for by section 276, the defendant is to be instructed about the consequences of any written acknowledgment he may submit.

### Sections 499a to 503
### (repealed)

### Section 504
### Notification in the event the local court lacks jurisdiction

Should the local court (Amtsgericht) lack jurisdiction, this being local jurisdiction or competence ratione materiae, it shall indicate this fact to the defendant prior to holding the hearing on the merits of the case, and shall likewise draw the defendant's attention to the consequences of entering an appearance on the merits of the case without filing a corresponding objection.

### Section 505
### (repealed)

### Section 506
### Subsequent lack of jurisdiction ratione materiae

(1) If, by countercharges being brought or by extending the demand for relief (section 264 numbers 2 and 3), a claim is raised for which the regional courts (Landgerichte) are competent, or if it is petitioned pursuant to section 256 subsection (2) that the court determine a legal relationship, for which the regional courts are competent, the local court is to declare by corresponding court order, provided a party has filed the corresponding petition, that it lacks jurisdiction, and shall do so prior to any further hearings being held on the merits of the case; the local court is to refer the legal dispute to the regional court.

(2) The stipulations of section 281 subsections (2) and (3), first sentence, shall apply mutatis mutandis.

### Sections 507 to 509
### (repealed)

### Section 510
### Declarations made regarding records or documents

A record or document is to be deemed as having been acknowledged as authentic if, in the event of a declaration not having been made, the party is asked by the court to make a declaration regarding its authenticity.

### Section 510a
### Content of the record

Declarations by a party, other than admissions and declarations regarding the petition for examination of a party, are to be included in the record of the hearing to the extent the court believes this is required.

### Section 510b
### Judgment requiring a party to take specific action

Should a party be sentenced to take specific action, the defendant may concurrently be sentenced, upon corresponding application being made by the plaintiff, to pay compensation for the case that the action is not taken within the period to be determined; the court is to assess such compensation at its sole discretion.

### Section 510c
### (repealed)

APP 1664

App. 2345

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

**Book 3**
**Appellate remedies**

**Chapter 1**
**Appeal**

**Section 511**
**Appeal available as a remedy**

(1) Appeals are an available remedy against the final judgments delivered by the court of first instance.

(2) An appeal shall be admissible only if:

1.      The value of the subject matter of the appeal is greater than 600 euros, or if

2.      In its ruling, the court of first instance has granted leave to appeal.

(3) The plaintiff in the appeal is to demonstrate to the satisfaction of the court the value pursuant to subsection (2) number 1; the plaintiff in the appeal may not file a statutory declaration in lieu of an oath.

(4) The court of first instance shall admit an appeal in cases in which:

1.      The legal matter is of fundamental significance or wherever the further development of the law or the interests in ensuring uniform adjudication require a decision to be handed down by the court of appeal, and wherever

2.      The judgment does not adversely affect the party by an amount higher than 600 euros.

The court of appeal is bound to the admission.

**Section 512**
**Prior decisions handed down by the court of first instance**

Those decisions taken prior to the final judgments shall also be subject to the assessment by the court of appeal unless they are incontestable pursuant to the stipulations of the present Code, or unless they are contestable by way of filing a complaint subject to a time limit.

**Section 513**
**Grounds for appeal**

(1) An appeal may only be based on the decision handed down having been based on a violation of the law (section 546), or on the facts and circumstances that should have been used as a basis pursuant to section 529 justifying a different decision.

(2) The appeal may not be based on the fact that the court of first instance erred in assuming it had jurisdiction.

**Section 514**
**Default judgments**

(1) A default judgment may not be contested by the party against which it has been delivered by filing an appeal or a cross appeal.

(2) A default judgment against which protest as such is not an available remedy shall be liable to appeal or cross appeal nonetheless insofar as such an appeal or cross appeal is based on the fact that there was no negligent or intentional failure to comply with procedural requirements. Section 511 (2) shall not be applied.

**Section 515**
**Waiver of the right to appellate remedy**

The waiver of the right to file an appeal shall be valid regardless of whether or not the opponent has accepted the declaration of waiver.

**Section 516**
**Withdrawal of an appeal**

**APP 1665**

App. 2346

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

(1) The plaintiff in the appeal may withdraw the appeal until the appellate judgment is pronounced.
(2) The withdrawal shall be declared to the court. Unless the withdrawal is declared at the hearing, it shall be declared by submitting a written pleading.
(3) The withdrawal shall result in the loss of the appeal filed and in the obligation to bear the costs arising as a consequence of the appeal having been filed. These effects are to be pronounced in a corresponding court order.

## Section 517
### Time limit for filing an appeal
The time limit for filing an appeal shall amount to one (1) month; this is a statutory period and shall begin upon the fully worded ruling having been served, at the latest, however, upon the expiry of five (5) months following pronouncement of the judgment.

## Section 518
### Time limit for filing an appeal in the event the judgment is amended
Should, within the time limit set for filing an appeal, a judgment be amended by a subsequent ruling (section 321), the period set for filing an appeal shall recommence upon the subsequent ruling having been served, also for the appeal against the ruling first promulgated. Should the same party lodge an appeal against both judgments, the two appeals are to be consolidated into a single appeals procedure.

## Section 519
### Notice of appeal
(1) The appeal is lodged by way of submitting a notice of appeal with the court of appeal.
(2) The notice of appeal must set out:

    1.      The reference number and designation of the judgment against which the appeal is being lodged;

    2.      The declaration as to an appeal being filed against the said judgment.

(3) An execution or certified copy of the judgment being challenged shall be submitted together with the notice of appeal.
(4) The general regulations as to preparatory written pleadings shall apply also to the notice of appeal.

## Section 520
### Particulars of the appeal
(1) The plaintiff in the appeal must provide particulars of the appeal.
(2) The period for submitting the particulars of the appeal shall amount to two (2) months and shall begin upon the fully worded ruling having been served, at the latest, however, with the expiry of five (5) months following pronouncement of the judgment. Upon a corresponding petition having been filed, the presiding judge may extend the period provided the opponent has consented. Without such consent, and if the presiding judge is satisfied that an extension will not delay the legal dispute, or if the plaintiff in the appeal has submitted substantial grounds to the court, then the presiding judge may exercise his discretion in extending the period by up to one (1) month.
(3) Unless already included in the notice of the appeal, the particulars of the appeal must be submitted to the court of appeal as a written pleading. The particulars of the appeal must:

    1.      Declare the extent to which the judgment is being contested, and must set out the specific petition as to how the judgment is to be modified (petitions in the appeal proceedings);

    2.      Designate the circumstances indicating a violation of the law and the significance they have for the ruling being contested;

APP 1666

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

3.      Name the specific indications giving rise to doubts as to the court having correctly or completely established the facts in the ruling being contested, and therefore mandating a new fact-finding process;

4.      Designate the new means by which the plaintiff in the appeal intends to challenge the opponent or defend his case, listing the facts and circumstances based on which these new means of challenge or defence are to be admitted pursuant to section 531 (2).

(4) The particulars of the appeal furthermore shall include:

1.      Information on the value of the subject matter of the appeal if this does not consist of a specific amount of money, provided that the admissibility of the appeal depends on it;

2.      A statement as to whether any reasons would prevent the matter from being ruled on by a judge sitting alone.

(5) The general regulations governing preparatory written pleadings apply also to the particulars of the appeal.

## Section 521
### Service of the notice of appeal and its particulars

(1) The notice of appeal and the particulars of the appeal are to be served on the opponent party.

(2) The presiding judge or the court of appeal may set a deadline by which the opponent party is to submit a written statement of defence in appeal proceedings and by which the plaintiff in the appeal is to submit its reply to the statement of defence in appeal proceedings. Section 277 shall apply mutatis mutandis.

## Section 522
### Review of the appeal's admissibility; court order denying leave to appeal

(1) The court of appeal is to review, ex officio, whether the appeal as such is admissible, whether it has been lodged in the form required by law and within the period set and whether particulars have been provided. Should one of these requirements not have been met, the appeal is to be overruled as inadmissible. The decision may be given as a court order. The court order may be challenged by way of filing a complaint on points of law.

(2) The court of appeal is to immediately deny leave to appeal in a decision if all of its members are unanimously satisfied that:

1.      The appeal manifestly has no chance of success,

2.      The legal matter is not of any fundamental significance,

3.      The further development of the law or the interests in ensuring uniform adjudication do not require a decision to be handed down by the court of appeal, and that

4.      No hearing for oral argument is mandated.

Prior to handing down such a ruling, the court of appeal or the presiding judge is to indicate to the parties to the dispute its intention to deny leave to appeal and the reasons therefor, and is to provide the plaintiff in the appeal with the opportunity to submit its position within a period of time to be set. Insofar as the reasons for denying leave to appeal are not already provided in the notice stipulated by the second sentence hereof, the court order provided for in the first sentence is to set out these reasons. Moreover, a court order, which is contestable, is to refer to the facts as established by the court of prior instance in the ruling being contested, and is to summarise any modifications or amendments that may have been made.

APP 1667

App. 2348

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

(3) The plaintiff in the appeal is entitled to lodge such appellate remedy against the court order pursuant to subsection (2), first sentence, that would have been admissible had the court handed down its decision by a ruling.

### Section 523
### Notice scheduling a hearing

(1) Should leave to appeal not be denied or should the appeal not be overruled by a court order pursuant to section 522, the court of appeal shall decide on whether or not to transfer the legal dispute to the judge sitting alone. Thereupon, a hearing is to be scheduled without undue delay.

(2) Section 274 (3) shall apply mutatis mutandis to the period that must lapse between the time at which notice of the hearing scheduled is given and the hearing itself.

### Section 524
### Cross appeal

(1) The respondent in the appeal may join the appeal. This shall be effected by filing the notice of cross appeal with the court of appeal.

 (2) A cross appeal is an available remedy also if the respondent in the appeal has waived an appeal or if the time limit for filing an appeal has lapsed. A cross appeal may admissibly be filed until the deadline has expired by which the respondent in the appeal is to submit its statement of defence in appeal proceedings. This deadline shall not apply should the cross appeal have as its subject matter a sentence for recurrent performance becoming due in the future (section 323).

(3) The reasons for the cross appeal must be set out in the notice of cross appeal. The stipulations of section 519 subsections (2) and (4), of section 520 (3) and of section 521 shall apply mutatis mutandis.

(4) The cross appeal shall cease to be effective should the appeal be withdrawn, should leave to appeal have been denied, or should it have been overruled by a court order.

### Section 525
### General procedural rules

Unless otherwise provided for in the present Chapter, the rules applying to the proceedings before the regional courts (Landgerichte) as courts of first instance are to be applied mutatis mutandis to the further proceedings. No conciliation hearing need be held.

### Section 526
### Judge taking the decision

(1) The court of appeal may transfer, by a court order, the legal dispute to one of its members as a judge sitting alone, for him to take the decision where:

1.    The contested decision was delivered by a judge sitting alone,

2.    The matter does not entail any factual or legal difficulties,

3.    The legal matter is not of any fundamental significance, and

4.    Oral argument on the merits of the case has not already been heard at the main hearing, unless a judgment subject to a reservation of rights, partial judgment, or interlocutory judgment has been handed down in the meantime.

(2) The judge sitting alone shall submit the legal dispute to the court of appeal for it to decide on whether it intends to assume the proceedings or not if:

1.    A material change to the litigation circumstances engenders special factual or legal difficulties of the matter or the fundamental significance of the legal matter, or if

2.    This is petitioned by the parties in congruent declarations.

APP 1668
App. 2349

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

The court of appeal shall assume the legal dispute if the prerequisites stipulated by number 1 first sentence are met. Upon having heard the parties, it shall rule on the matter by court order. Once again transferring the matter to the judge sitting alone is ruled out.
(3) An appellate remedy may not be based on the fact that a transfer, referral or assumption has been made or has been failed to be made.
(4) Solely the presiding judge of the division for commercial matters may act as judge sitting alone on matters in that division's purview.

### Section 527
### Judge sitting alone in preparatory proceedings

(1) Should the legal dispute not be transferred to a judge sitting alone pursuant to section 526, the court of appeal may assign the matter to one of its members as a judge sitting alone by way of preparing the decision. The presiding judge of the division for commercial matters shall act as judge sitting alone; outside of a hearing no such assignment need be made.
(2) The judge sitting alone is to promote the matter such that it can be dealt with and terminated in a hearing before the court of appeal. For this purpose, he may take individual evidence to the extent this is desirable in the interests of simplifying the hearing before the court of appeal and insofar as it is to be assumed, from the outset, that the court of appeal will be able to properly evaluate the results obtained in taking evidence also without having a direct impression of its course.
(3) The judge sitting alone shall decide:

1.      On the referral pursuant to section 100 in conjunction with sections 97 to 99 of the Courts Constitution Act (Gerichtsverfassungsgesetz, GVG);

2.      Wherever the action or the appeal is withdrawn, the claim lodged is waived or acknowledged;

3.      In the event of one of the parties or both parties failing to comply with procedural rules;

4.      On the obligation to bear the costs of the proceedings unless the court of appeal will rule on this together with the merits of the case;

5.      On the value of the subject matter being litigated;

6.      On costs, fees and expenditures.

(4) Should the parties agree to so proceeding, the judge sitting alone may also decide on other matters.

### Section 528
### Binding effect of petitions filed in appeal proceedings

Solely the petitions filed in the appeal proceedings shall be subject to review and decision by the court of appeal. The judgment handed down by the court of first instance may be modified only to the extent its modification has been petitioned.

### Section 529
### Scope of the review by the court of appeal

(1) The court of appeal is to base its hearing and decision on:

1.      The facts established by the court of first instance, unless specific indications give rise to doubts as to the court having correctly or completely established the facts relevant for its decision, and therefore mandate a new fact-finding process;

2.      New facts and circumstances insofar as these may permissibly be considered.

(2) The judgment contested will only be reviewed for a defect in the proceedings that is not to be taken into account ex officio if such defect has been asserted pursuant to

APP 1669

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

section 520 (3). In all other regards, the court of appeal shall not be bound to the grounds for appeal asserted.

### Section 530
### Delays in submitting means of challenge or of defence

Should, in contravention of the stipulations made in section 520 and section 521 (2), means of challenge or defence not be submitted in due time, section 296 subsections (1) and (4) shall apply mutatis mutandis.

### Section 531
### Means of challenge or defence that have been dismissed; new means of challenge or defence

(1) Any means of challenge or defence that were rightly dismissed in the proceedings before the court of first instance shall be ruled out.

(2) New means of challenge or defence are to be admitted only if they:

1.      Concern an aspect that the court of first instance has recognisably failed to see or has held to be insignificant,

2.      Were not asserted in the proceedings before the court of first instance due to a defect in the proceedings or

3.      Were not asserted in the proceedings before the court of first instance, without this being due to the negligence of the party.

The court of appeal may demand that those facts be demonstrated to its satisfaction based on which the new means of challenge or defence may permissibly be brought before the court.

### Section 532
### Objections as to a complaint being inadmissible

Non-essential objections concerning the admissibility of the complaint that, in contravention of the stipulations made in sections 520 and 521 (2), were not lodged in due time are to be admitted only if the party provides sufficient excuse for such delay. The same shall apply to any non-essential new objections concerning the admissibility of the complaint if the party would have been able to submit them in the proceedings before the court of first instance. Should the court so demand, the grounds precluding culpability are to be substantiated.

### Section 533
### Modification of the suit filed; declaration as to claims being offset; counterclaims

The suit filed may admissibly be modified, claims may admissibly be declared to be offset and counterclaims may admissibly be brought only if:

1.      The opponent consents to this being done or the court believes this to be expedient, and

2.      These actions can be based on facts and circumstances on which, pursuant to section 529, the court of appeal is to base its hearing and decision regarding the appeal in any case.

### Section 534
### Loss of the right to file objections

Should a rule concerning the proceedings before the court of first instance have been violated, this can no longer be objected to before the appellate instance on fact and law wherever the party has already lost its right to file objections in the proceedings before the court of first instance pursuant to the stipulations of section 295.

### Section 535
### Admission of guilt before the court

APP 1670

App. 2351

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

Any admission of guilt made before the court of first instance shall remain effective also before the appellate instance on fact and law.

## Section 536
### Examination of a party

(1) The court of appeal may only order a party to be examined or to be sworn in, which has declined to be examined in the proceedings before the court of first instance or which has refused to make a statement or to be sworn in, if the court is satisfied that the party had sufficient reason to so decline to be examined or refuse to be sworn in and that these grounds have in the meantime ceased to exist.

(2) If a party was examined in the proceedings before the court of first instance and was sworn in as regards the statements made, the court of appeal may order the opponent to be examined under oath only if the examination or placement under oath in the proceedings before the court of first instance was inadmissible.

## Section 537
### Provisionally enforceable judgments

(1) A judgment handed down by the court of first instance that is not, or not unconditionally, declared provisionally enforceable is to be declared provisionally enforceable by the court of appeal by delivering a corresponding court order upon accordingly having been petitioned to do so, unless the petitions in the appeal proceedings have contested the judgment. The decision may permissibly be taken only following expiry of the deadline set for submitting particulars of the appeal.

(2) The court order is incontestable.

## Section 538
### Referral to a court of lower instance

(1) The court of appeal is to take the evidence required and is to decide on the matter as such.

(2) The court of appeal may refer the matter to a court of lower instance, insofar as further hearings are required, while repealing the judgment and the proceedings, only:

1.      Insofar as the proceedings before the court of first instance are subject to a material irregularity and, due to this irregularity, it will be necessary to take evidence in a comprehensive scope or under considerable expenditure of time and effort;

2.      If a protest entered has been overruled as inadmissible by the judgment contested;

3.      If the judgment contested has only ruled on the admissibility of the action;

4.      If, in the case of a claim that is in dispute both on its merits and as regards its amount, a preliminary decision has been taken by the judgment contested as regards the merits of the claim, or if the action has been dismissed, unless, however, the dispute regarding the amount of the claim is ready for decision;

5.      If the judgment contested was delivered, subject to a reservation of rights, in proceedings on claims arising from a deed, in which solely documentary evidence is submitted, or proceedings on claims arising from a bill of exchange;

6.      If the judgment contested is a default judgment; or

7.      If the judgment contested is a partial judgment delivered contrary to the pre-requisites set out in section 301;

and if one party petitions that the matter be referred to a court of lower instance. In the case set out under number 3 hereinabove, the court of appeal is to conclusively deal with all objections. In the case set out under number 7, no petition need be filed.

APP 1671

App. 2352

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

### Section 539
### Default proceedings

(1) Should the plaintiff in the appeal fail to appear at the hearing scheduled, his appeal shall be dismissed by a default judgment at the petition of a party.

(2) Should the respondent in the appeal fail to appear at the hearing scheduled, and should the plaintiff in the appeal petition for a default judgment to be delivered against the respondent in the appeal, the submissions admissibly made by the plaintiff in the appeal as regards the facts and circumstances of the matter shall be deemed to have been acknowledged by the respondent. Insofar as these statements justify the petition filed in the appeal, the court is to decide in accordance with the petition filed; to the extent this is not the case, leave to file the appeal shall be denied.

(3) In all other regards, the rules governing default proceedings before the court of first instance shall apply mutatis mutandis.

### Section 540
### Content of the appellate judgment

(1) Instead of the facts of the case and the reasons on which the ruling is based, the appellate judgment shall set out:

    1.      A reference to the findings of fact as made in the ruling being contested, depicting any changes or amendments,

    2.      A brief summary of the reasons for the modification, repeal or confirmation of the decision contested.

Should the judgment be pronounced at the hearing at which the court proceedings have been declared terminated, the presentation of the case as stipulated by the first sentence hereof may also be included in the record of the hearing.

(2) Section 313a and section 313b shall apply mutatis mutandis.

### Section 541
### Court records of the dispute

(1) Immediately upon the notice of appeal having been submitted, the registry of the court of appeal is to procure the records of the dispute from the registry of the court of first instance. The records are to be sent to the court of appeal without undue delay.

(2) Upon the appeal having been conclusively dealt with and terminated, the registry of the court of first instance is to return the records, together with a certified copy of the decision handed down by the appellate instance on fact and law.

### Chapter 2
### Appeal on points of law

### Section 542
### Appeal on points of law as an available remedy

(1) Subject to the following provisions, an appeal on points of law may be filed against the final judgments delivered by the appellate instance on fact and law.

(2) No appeal on points of law may be filed against rulings by which a decision was taken on the issuance, modification, or repeal of a seizure or an injunction. The same shall apply to any judgments regarding instances in which a party has been put into possession early in expropriation proceedings or procedures for the reallocation of land.

### Section 543
### Admission to appeal

(1) An appeal on points of law may be lodged only if:

    1.      The court of appeal has admitted its being lodged in the judgment, or

APP 1672

App. 2353

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

2.      The court hearing the appeal on points of law has admitted its being lodged based on a complaint against the refusal to grant leave to appeal on points of law.

(2) An appeal on points of law is to be admitted if:

1.      The legal matter is of fundamental significance, or

2.      The further development of the law or the interests in ensuring uniform adjudication require a decision to be handed down by the court hearing the appeal on points of law.

The court hearing the appeal on points of law is bound to the admission of the appeal by the court of appeal.

### Section 544
### Complaint against denial of leave to appeal

(1) Any denial of leave to appeal on points of law by the court of appeal is subject to the right to file a complaint against it (complaint against denial of leave to appeal). Such complaint is to be lodged with the court hearing the appeal on points of law within a statutory period of one (1) month following service of the fully worded ruling, at the latest, however, by the expiry of six (6) months after the judgment has been pronounced. An execution or certified copy of the ruling against which an appeal on points of law is to be lodged shall be submitted to the court along with the brief on appeal.

(2) A reasoning for the complaint is to be filed within two (2) months following service of the fully worded ruling, at the latest, however, by the expiry of seven (7) months after the judgment has been pronounced. Section 551 (2) fifth and sixth sentences shall apply mutatis mutandis. The reasoning must set out the grounds on which leave to file an appeal should be granted (section 543 (2)).

(3) The court hearing the appeal on points of law shall give the claimant's opponent in the appeal the opportunity to state his position.

(4) The court hearing the appeal on points of law shall rule on the complaint in a corresponding court order. The reasons on which the order is based shall be summarised briefly; such reasoning may be forgone where it would not contribute to clearing up the prerequisites based on which leave for filing an appeal on points of law is to be granted, or where the court finds for the party filing the complaint. The decision regarding the complaint is to be served upon the parties.

(5) If a complaint is lodged, this shall suspend the legal validity of the judgment. Section 719 subsections (2) and (3) shall apply mutatis mutandis. Once the court hearing the appeal on points of law refuses to comply with the appeal, the judgment will become final and binding.

(6) Insofar as the court finds for the party filing a complaint against the refusal to grant leave to appeal on points of law, the complaint procedure shall be continued as appellate proceedings on points of law. In such event, the complaint filed in proper form and in due time against denial of leave to appeal shall count as the filing of the appeal on points of law. Upon the decision being served on the parties, the period for submitting the reasoning for the appeal on points of law shall commence.

(7) Should the court of appeal have violated the claimant's right to be given an effective and fair legal hearing in a manner relevant to the decision, the court hearing the appeal on points of law may repeal the judgment contested, in derogation from subsection (6), in its order complying with the appeal, and may refer the legal dispute back to the court of appeal, for it to once again hear the case and to rule on it.

Footnote: Section 544: Regarding the application of this stipulation until December 31st, 2011 cf. Section 26 number 8 first sentence of the Introductory Law for the Code of Civil Procedure (Gesetz, betreffend die Einführung der Zivilprozessordnung, ZPOEG).

### Section 545
### Grounds for an appeal on points of law

**APP 1673**

App. 2354

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

(1) An appeal on points of law may only be based on the reason that the contested decision is based on a violation of the law.
(2) An appeal on points of law may not be based on the fact that the court of first instance was wrong in assuming that it had or did not have jurisdiction.

### Section 546
### Definition of the term "violation of the law"
The law is violated where a legal norm has not been applied, or has not been applied properly.

### Section 547
### Absolute grounds for an appeal on points of law
A decision shall always be regarded to have been based on a violation of the law where:

1.      The composition of the court of decision was not compliant with the relevant provisions;

2.      A judge was involved in the decision who, by law, was prohibited from holding judicial office, unless this impediment has been asserted by a motion to recuse a judge without meeting with success;

3.      A judge was involved in the decision although he had been recused for fear of bias and the motion to so recuse him had been declared justified;

4.      A party to the proceedings had not been represented in accordance with the stipulations of the law, unless it had expressly or tacitly approved the litigation;

5.      The decision has been given based on a hearing for oral argument in which the rules regarding the admission of the public to the proceedings were violated;

6.      Contrary to the provisions of the present Code, the decision does not set out the reasons for the judgment.

### Section 548
### Time limit for filing an appeal on points of law
The period for submitting an appeal on points of law shall amount to one (1) month; this is a statutory period and shall begin upon the fully worded appellate judgment having been served, at the latest, however, upon the expiry of five (5) months of the judgment having been pronounced.

### Section 549
### Filing an appeal on points of law
(1) The appeal on points of law is filed by submitting the notice on appeal on points of law to the court hearing the appeal on points of law. The notice on appeal on points of law must include:

1.      The reference number and designation of the judgment against which the appeal on points of law is being filed;

2.      The declaration that an appeal on points of law is being filed against the said judgment.
Section 544 (6), second sentence, shall remain unaffected hereby.
(2) The general regulations regarding preparatory written pleadings are applicable also to notices on appeal on points of law.

### Section 550
### Service of the notice on appeal on points of law

**APP 1674**

App. 2355

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

(1) An execution or certified copy of the judgment being contested is to be enclosed with the notice on appeal on points of law, unless this has already been done pursuant to section 544 (1), third sentence.

(2) The notice on appeal on points of law is to be served on the opponent party.

## Section 551
### Reasoning provided for the appeal on points of law

(1) The appellant must provide reasoning for filing the appeal on points of law.

(2) Unless already set out in the brief on appeal on points of law, the reasoning for the appeal on points of law is to be submitted to the court hearing the appeal on points of law in a written pleading. The period for submitting the reasoning for the appeal on points of law shall amount to two (2) months. It shall commence upon the fully worded ruling having been served, at the latest, however, with the expiry of five (5) months upon the judgment having been pronounced. Section 544 (6), third sentence, shall remain unaffected hereby. Upon a corresponding petition having been filed, the presiding judge may extend the period, subject to this being consented to by the opponent. Should the opponent not grant his consent, the period may be extended by up to two (2) months provided that the presiding judge is satisfied, at his discretion and conviction, that this extension will not delay the legal dispute, or if the appellant demonstrates substantial grounds; if, within this period, it is not possible to grant the appellant the opportunity to inspect the court records of the dispute for a reasonable period of time, the presiding judge may extend the period, upon corresponding application being made, by up to two (2) months following the court records of the dispute having been sent.

(3) The reasoning for the appeal on points of law must include:

    1.      The declaration to which extent the judgment is being contested and a petition is being made for its repeal (petitions made in the appeal on points of law);

    2.      The grounds for the appeal on points of law, these being:

        a)   The specific designation of the circumstances from which the violation of the law is apparent;

        b)   Insofar as the appeal on points of law is based on the allegation that the law has been violated with regard to the proceedings: the designation of the facts that reflect this irregularity.

If the appeal on points of law has been admitted on the basis of a complaint against denial of leave to appeal, reference may be made, in providing the reasoning for the appeal on points of law, to the reasons cited in the complaint against denial of leave to appeal.

(4) Section 549 (2) and section 550 (2) shall apply mutatis mutandis to the reasoning for the appeal on points of law.

## Section 552
### Review of admissibility

(1) The court hearing the appeal on points of law is to review ex officio whether the appeal on points of law as such is an available remedy, whether or not it has been filed in keeping with statutory requirements as to form and time, and whether or not the grounds for it have been provided. Should one of these requirements not have been met, the appeal on points of law is to be overruled as inadmissible.

(2) The decision may be given as a court order.

## Section 552a
### Court order denying leave to appeal

The court hearing the appeal on points of law shall dismiss by unanimous decision the appeal on points of law admitted by the court of appeal if the court hearing the appeal on points of law is convinced that the prerequisites for admitting the appeal on points of law

**APP 1675**

App. 2356

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

have not been met and that the appeal on points of law has no chance of success.
Section 522 (2) second and third sentences hereof shall apply mutatis mutandis.

## Section 553
### Hearing date as determined by the court; time for entering an appearance
(1) Where the appeal on points of law is not overruled as inadmissible by a court order and where it is not dismissed pursuant to section 552a, a hearing is to be scheduled for oral argument and this date is to be made known to the parties.
(2) Section 274 (3) shall apply mutatis mutandis to the period that must lapse between the time at which the hearing date is made known and the hearing itself.

## Section 554
### Cross appeal on points of law
(1) The respondent in the appeal on points of law may join the appeal on points of law. This shall be effected by filing a notice of cross appeal on points of law with the court hearing the appeal on points of law.
(2) A cross appeal on points of law is an available remedy also if the respondent in the appeal on points of law has waived an appeal on points of law, if the time limit for filing an appeal on points of law has lapsed, or if the appeal on points of law has been dismissed. A cross appeal on points of law is to be declared prior to the expiry of one (1) month following service of the reasoning for the appeal on points of law.
(3) The grounds for the cross appeal on points of law must be set out in the notice of cross appeal. Section 549 (1), second sentence, and subsection (2) and sections 550 and 551 (3) shall apply mutatis mutandis.
(4) The cross appeal on points of law shall cease to be effective should the appeal on points of law be withdrawn, should it have been overruled or dismissed by a court order.

## Section 555
### General procedural rules
(1) Unless otherwise provided for in the present Chapter, the rules applying to the proceedings before the regional courts (Landgerichte) as courts of first instance are to be applied mutatis mutandis to the further proceedings. No conciliation hearing need be held.
(2) The stipulations of sections 348 to 350 are not to be applied.
(3) A judgment based on the defendant's acknowledgment shall be handed down only where the plaintiff has filed a separate petition to this effect.

## Section 556
### Loss of the right to file objections
Should a rule concerning the proceedings before the appellate instance on fact and law have been violated, this can no longer be objected to before the court hearing the appeal on points of law wherever, pursuant to the stipulations of section 295, the party has already lost its right to file objections in the proceedings before the appellate instance on fact and law.

## Section 557
### Scope of the review performed upon an appeal having been filed on points of law
(1) Solely the petitions filed by the parties shall be subject to review by the court hearing the appeal on points of law.
(2) Those decisions shall also be subject to assessment by the court hearing the appeal on points of law that preceded the final judgment, unless they are incontestable pursuant to the stipulations of the present Code.
(3) The court hearing the appeal on points of law is not bound to the grounds being asserted in the appeal on points of law. The judgment contested may only be reviewed for irregularities in the proceedings that are not to be taken into account ex officio if such irregularities have been objected to pursuant to sections 551 and 554 (3).

**APP 1676**

App. 2357

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

## Section 558
### Provisionally enforceable judgments

A judgment handed down by the court of appeal that is not, or not unconditionally, declared provisionally enforceable is to be declared provisionally enforceable by the court hearing the appeal on points of law delivering a corresponding court order upon having been petitioned to do so, unless the judgment has been contested by the petitions submitted in the proceedings of the appeal on points of law. The decision may permissibly be taken only following expiry of the period set for submitting the reasoning for the appeal on points of law.

## Section 559
### Limited review of the facts as established by the courts of prior instance

(1) Only those submissions by the parties in the proceedings shall be subject to assessment by the court hearing the appeal on points of law that are apparent from the appellate judgment or the record of the session of the court. Moreover, solely those facts may be taken into account that have been set out in section 551 (3) number 2 lit. b.

(2) If the court of appeal has established that an allegation as to fact is true or untrue, this determination shall be binding upon the court hearing the appeal on points of law, unless it has been challenged by an admissible and justified petition that the court hearing the appeal on points of law review such determination.

## Section 560
### Acts not open to review

The decision of the court of appeal regarding the existence and the content of acts, on the violation of which the appeal on points of law pursuant to section 545 cannot be based, shall govern for the decision to be delivered in the appeal on points of law.

## Section 561
### Denial of leave to appeal on points of law

If the reasoning provided for the appellate judgment does indicate that the law has been violated, but the decision itself appears to be correct based on other grounds, leave to appeal on points of law is to be denied.

## Section 562
### Reversal of the contested judgment

(1) To the extent the appeal on points of law is deemed justified, the contested judgment is to be reversed.

(2) Where the judgment is reversed due to irregularities in the proceedings, the proceedings are to be reversed concurrently to the extent they are affected by such irregularities.

## Section 563
### Referral to a court of lower instance; decision on the merits of the case by the court hearing the appeal on points of law

(1) In the event the judgment is reversed, the matter is to be referred to the court of appeal, which is to hear it once again and is to decide on it. The matter may also be referred to another formation of the court of appeal.

(2) The court of appeal is to base its decision on the legal assessment on which the reversal of the judgment was based.

(3) However, the court hearing the appeal on points of law is to decide on the matter as such if the judgment is reversed only due to a violation of the law, in application of the law to the situation of fact as established, and if in light of said situation the matter is ready for the final decision to be taken.

(4) If it is conceivable, in the case set out hereinabove in subsection (3) for the decision to be delivered on the matter as such, that acts might be applied on the violation of which the appeal on points of law pursuant to section 545 cannot be based, the matter may be referred to the court of appeal, which is to hear it once again and is to decide on it.

APP 1677

App. 2358

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

## Section 564
### No reasoning for the decision in the case of objections due to irregularities in the proceedings

No reasoning need be provided for the decision insofar as the court hearing the appeal on points of law is of the opinion that the objections as to irregularities in the proceedings are inconsequential. This shall not apply to objections pursuant to section 547.

## Section 565
### Rules of the appeal proceedings to be applied in appeals on points of law

The rules applicable to the appeal regarding the contestability of default judgments, regarding the declaration of waiver of appellate remedies and their withdrawal, regarding the objections as to a complaint being inadmissible and regarding the demand for, transmission and return of the court records of the dispute, shall apply mutatis mutandis to the appeal on points of law. An appeal on points of law may be withdrawn without the consent of the respondent in the appeal on points of law only prior to the time at which the respondent in the appeal on points of law commences oral argument on the merits of the case.

## Section 566
### Immediate appeal on points of law in lieu of an appeal on facts and law

(1) Upon corresponding application being made, an appeal on points of law may be filed directly with the competent court against final judgments delivered in proceedings before the court of first instance where an appeal against such judgments is admissible, thus passing over the appellate instance on fact and law (leap-frog appeal), if:

1. The opponent consents to passing over the appellate instance on fact and law; and

2. The court hearing the appeal on points of law allows the leap-frog appeal.

The petition for leave to file a leap-frog appeal as well as the declaration of consent shall be deemed to be a waiver of the appellate remedies provided by the appeal.

(2) Leave to appeal is to be petitioned by submitting a written pleading (brief for leave to appeal) to the court hearing the appeal on points of law. Sections 548 to 550 shall apply mutatis mutandis. The petition must set out the prerequisites for granting leave to file a leap-frog appeal (subsection (4)). The written declaration of consent by the respondent is to be attached to the petition for leave to appeal; it may also be submitted by the attorney of record in the proceedings of first instance or, if the legal dispute in the proceedings before the court of first instance was none in which the parties had to be represented by counsel, it may be recorded with the registry for the files of the court.

(3) The petition for leave to file a leap-frog appeal shall suspend the legal validity of the judgment. Section 719 subsections (2) and (3) shall apply mutatis mutandis. The court registry of the court hearing the appeal on points of law is to demand, and shall do so without undue delay once the petition has been submitted, that the registry of the court of first instance provide it with the court records of the dispute.

(4) Leave to file a leap-frog appeal shall be granted only if:

1. The legal matter is of fundamental significance; or

2. The further development of the law or the interests in ensuring uniform adjudication require a decision by the court hearing the appeal on points of law.

The leap-frog appeal may not be based on irregularities in the proceedings.

(5) The court hearing the appeal on points of law shall decide on the petition for leave to file a leap-frog appeal by delivering a corresponding order. The order is to be served on the parties.

(6) Should the court refuse to comply with the petition for leave to appeal on points of law, the judgment shall become final and binding.

APP 1678
App. 2359

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

(7) Where leave is granted to file an appeal on points of law, the proceedings shall be continued as appellate proceedings on points of law. In this case, the petition for leave to appeal on points of law, submitted in proper form and in due time, shall be deemed to be the filing of the appeal on points of law. Upon the decision being served, the period for submission of the reasoning for the appeal on points of law shall commence.

(8) The further procedure is determined by the provisions applying to the appeal on points of law. Section 563 is to be applied subject to the proviso that the matter is referred to the court of first instance. If an appeal is filed against the subsequent decision of the court of first instance, the court of appeal is to base its decision on the legal assessment that serves as the basis for the reversal of the judgment by the court hearing the appeal on points of law.

## Chapter 3
## Complaints

### Title 1
### Complaints subject to a time limit

#### Section 567
#### Complaints subject to a time limit; cross appeal under a complaint

(1) A complaint subject to a time limit may be filed against the decisions delivered by the local courts (Amtsgerichte) and regional courts (Landgerichte) in proceedings before them as courts of first instance if

    1.      This has been expressly determined by law; or

    2.      The decisions so being challenged did not require a hearing for oral argument and dismissed a petition concerning the proceedings.

(2) A complaint may be filed against decisions as to costs only if the subject matter of the appeal is in excess of 200 euros.

(3) The respondent in the complaint may join the complaint even in those cases in which he has waived filing a complaint, or the period within which such a complaint must be filed has lapsed. This joinder shall cease to be effective should the complaint be retracted or overruled as inadmissible.

#### Section 568
#### Judge sitting alone as the court of decision

The court hearing the complaint shall rule by one of its members acting as a judge sitting alone in cases in which the contested decision was delivered by a judge sitting alone or a senior judicial officer. The judge sitting alone shall transfer the proceedings to the court hearing the complaint for it to decide in the composition required by the stipulations of the Courts Constitution Act (Gerichtsverfassungsgesetz, GVG) if:

    1.      The matter is characterised by particular difficulties in fact or in law; or

    2.      The legal matter is of fundamental significance.

Appellate remedies may not be based on a transfer that has been made or has been failed to have been made.

#### Section 569
#### Time limit and formal requirements

(1) Unless any other period has been determined, the complaint subject to a time limit is to be filed within a statutory period of two (2) weeks with the court the decision of which is being contested, or with the court hearing the complaint. Unless determined otherwise, the statutory period shall commence running upon service of the decision, and at the latest upon expiry of five (5) months of the judgment having been pronounced. Should the requirements be met for an action for annulment or for an action for retrial of the case, the complaint may

**APP 1679**

App. 2360

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

also be filed following expiry of the statutory period within the statutory periods applying for these actions.

(2) The complaint is filed by submitting a notice regarding the complaint on points of law. The brief regarding the complaint on points of law must designate the contested decision as well as the declaration that a complaint is being filed against this decision.

(3) The complaint may also be declared by recording it with the registry for the files of the court if:

1. The legal dispute in the proceedings before the court of first instance is not, or was not, to be pursued as proceedings in which the parties must be represented by counsel;

2. The complaint concerns assistance with court costs; or

3. The complaint is brought by a witness, an expert or a third party in the sense as defined by sections 142 and 144.

### Section 570
### Suspensive effect; interim orders

(1) The complaint shall have suspensive effect only where it concerns an order of means of administrative coercion or other coercive measures.

(2) The court or the presiding judge whose decision is being contested may suspend the enforcement of the decision.

(3) The court hearing the complaint may issue an interim order prior to delivering its decision; in particular, it may suspend the enforcement of the contested decision.

### Section 571
### Reasoning; extinction of the exercise of a right (preclusion); exceptions from the statutory requirement to be represented by an attorney

(1) The grounds for filing the complaint are to be provided.

(2) The complaint may be based on new means of challenge or defence. It may not be based on the fact that the court of first instance was wrong in assuming that it had jurisdiction.

(3) The presiding judge or the court hearing the complaint may set a period within which the means of challenge or defence are to be submitted to the court. If the means of challenge or defence are not submitted within this period, they are to be admitted only if the court holds, in its discretion and conviction, that admitting them would not delay the proceedings being dealt with and terminated, or if the party provides sufficient excuse for such delay. Should the court so require, the grounds ruling out culpability are to be demonstrated to the satisfaction of the court.

(4) Should the court order that a written declaration be made, this may be recorded with the registry for the files of the court in all instances in which the complaint may be recorded with the registry for the files of the court (section 569 (3)).

### Section 572
### Course of the complaint procedure

(1) Should the court or the presiding judge whose decision is being contested hold that the complaint is justified, they are to grant redress; in all other cases, the complaint is to be presented to the court hearing the complaint without undue delay. Section 318 shall remain unaffected hereby.

(2) The court hearing the complaint is to review ex officio whether the complaint as such is an available remedy and whether or not it has been filed in keeping with statutory requirements as to form and time. Should one of these requirements not have been met, the complaint is to be overruled as inadmissible.

**APP 1680**

App. 2361

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

(3) Should the court hearing the complaint hold that the complaint is justified, it may transfer the required order to the court or presiding judge who had delivered the decision giving rise to the complaint.

(4) The decision as to the complaint shall be delivered by court order.

### Section 573
### Reminder as a legal remedy

(1) A petition may be filed for a decision to be issued by the court against the decisions taken by the judge correspondingly delegated or requested, or against those taken by the records clerk of the court registry, within a statutory period of two (2) weeks (reminder). The reminder is to be filed in writing or is to be recorded with the registry for the files of the court. Section 569 (1) first and second sentences, subsection (2) and sections 570 and 572 shall apply mutatis mutandis.

(2) A complaint subject to a time limit may be lodged against the decision of the court delivered on the reminder in the proceedings before the court of first instance.

(3) The rule set out in subsection (1) shall also apply to the higher regional courts (Oberlandesgerichte, OLG) and the Federal Court of Justice (Bundesgerichtshof, BGH).

### Title 2
### Complaint on points of law

### Section 574
### Complaint on points of law; cross appeal under a complaint on points of law

(1) A complaint on points of law is an available remedy against a court order if:

    1.      This has been expressly determined in the law; or

    2.      The court hearing the complaint, the court of appeal, or the higher regional court (Oberlandesgericht, OLG) has granted leave to do so in its order in the proceedings before the court of first instance.

Section 542 (2) shall apply mutatis mutandis.

(2) In the cases provided for by subsection (1) number 1, the complaint on points of law shall be admissible only if:

    1.      The legal matter is of fundamental significance; or

    2.      The further development of the law or the interests in ensuring uniform adjudication requires a decision to be taken by the court hearing the complaint on points of law.

(3) In the cases provided for by subsection (1) number 2, leave to file a complaint on points of law shall be granted where the prerequisites of subsection (2) have been met. The court hearing the complaint on points of law shall be bound by such leave granted.

(4) The respondent of the complaint on points of law may join the complaint on points of law within a statutory period of one (1) month following service of the brief setting out the reasoning for the complaint on points of law by submitting the notice of cross appeal under a complaint on points of law with the court hearing the complaint on points of law, and may do so also in those cases in which it has waived a complaint on points of law, in which the period within which such a complaint on points of law must be filed has lapsed or in which no leave has been granted to file a complaint on points of law. The reasoning for filing a cross appeal under a complaint is to be provided in the notice of cross appeal. The joinder shall cease to be effective where the complaint on points of law is retracted or overruled as inadmissible.

### Section 575
### Time limit, formal requirements, and reasoning of the complaint on points of law

APP 1681

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

(1) The complaint on points of law is to be filed within a statutory period of one (1) month following service of the order by submitting a notice on appeal under a complaint with the court hearing the complaint on points of law. The notice or brief regarding the complaint on points of law must include:

1.      The designation of the decision against which the complaint on points of law is directed, and

2.      The declaration that a complaint on points of law was filed against this decision.

An execution or certified copy of the contested decision is to be enclosed with the notice or brief regarding the complaint on points of law.

(2) Unless the notice regarding the complaint on points of law sets out its reasons, the grounds for filing the complaint on points of law are to be provided within a period of one (1) month. The period shall begin running upon service of the contested decision.
Section 551 (2) fifth and sixth sentences hereof shall apply mutatis mutandis.

(3) The reasoning of the complaint on points of law must include:

1.      The declaration as to the extent to which the decision of the court hearing the complaint or of the court of appeal is contested and its reversal is petitioned (petitions under the complaint on points of law);

2.      In the cases provided for by section 574 (1) number 1, a presentation of the prerequisites for leave to be granted as set out in section 574 (2);

3.      The grounds for the complaint on points of law, these being:

      a)   The specific designation of the circumstances from which the violation of the law is apparent;

      b)   Insofar as the complaint on points of law is based on the allegation that the law was violated with reference to the proceedings: the designation of the facts that reflect this irregularity.

(4) The general regulations governing preparatory written pleadings are to be applied also to the notice regarding the complaint on points of law and the brief setting out the reasoning for the complaint. The notice regarding the complaint on points of law and the brief setting out the reasoning for the complaint are to be served on the opponent party.

(5) Sections 541 and 570 subsections (1) and (3) shall apply mutatis mutandis.

### Section 576
### Grounds for filing the complaint on points of law

(1) The complaint on points of law may only be based on the fact that the decision is based on a violation of federal law or of a rule the territorial scope of which extends beyond the judicial district of a higher regional court (Oberlandesgericht, OLG).

(2) The complaint on points of law may not be based on the fact that the court of first instance was wrong in assuming that it had or did not have jurisdiction.

(3) Sections 546, 547, 556 and 560 shall apply mutatis mutandis.

### Section 577
### Review of the complaint on points of law and decision

(1) The court hearing the complaint on points of law is to review ex officio whether the complaint on points of law as such is an available remedy and whether or not it has been filed in keeping with statutory requirements as to form and time and whether reasoning was provided. Should one of these requirements not have been met, the complaint on points of law is to be overruled as inadmissible.

(2) Solely the petitions filed by the parties shall be subject to review by the court hearing the complaint on points of law. The court hearing the complaint on points of law is not bound to the grounds being asserted in the complaint on points of law. The decision contested in the

**APP 1682**

App. 2363

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

proceedings may only be reviewed for irregularities in the proceedings that are not to be taken into account ex officio wherever such irregularities have been objected to pursuant to section 575 (3) and section 574 (4), second sentence, hereof. Section 559 shall apply mutatis mutandis.

(3) In cases in which the reasoning provided for the contested decision does indicate that the law has been violated, but the decision itself appears to be correct based on other grounds, leave to file a complaint on points of law is to be denied.

(4) Where the complaint on points of law is deemed justified, the contested decision is to be reversed and the matter is to be referred back for a new decision to be taken. Section 562 (2) shall apply mutatis mutandis. The matter may be referred to another formation of the court that has delivered the contested decision. The court to which the matter is referred is to base its decision on the legal assessment on which the reversal of the judgment is based.

(5) The court hearing the complaint on points of law is to decide on the matter as such if the decision is reversed only for a violation of the law, in application of the law to the situation of fact as established, and if in light of said situation the matter is ready for the final decision to be taken. Section 563 (4) shall apply mutatis mutandis.

(6) The decision as to the complaint on points of law shall be delivered by court order. Section 564 shall apply mutatis mutandis. The requirement to provide reasoning may be forgone in all other regards if this would not be suited to contribute to clearing up fundamental legal issues, to the further development of the law, or to ensuring uniform adjudication.

## Book 4
## Reopening of proceedings

### Section 578
### Types of reopening proceedings

(1) Proceedings terminated by a final judgment that has become res judicata may be reopened by an action for annulment and by an action for retrial of the case.

(2) Where both actions are brought by one and the same party, or by different parties, the hearing and decision as to the action for retrial of the case is to be suspended until the decision on the action for annulment has become final and binding.

### Section 579
### Action for annulment

(1) An action for annulment may be brought:

1.    Where the composition of the court of decision was not compliant with the relevant provisions;

2.    Where a judge was involved in the decision who, by law, was prohibited from holding judicial office, unless this impediment had been asserted by a motion to recuse a judge or by filing appellate remedies without meeting with success;

3.    Where a judge was involved in the decision although he had been recused for fear of bias and the motion to so recuse him had been declared justified;

4.    Where a party to the proceedings had not been represented in accordance with the stipulations of the law, unless it had expressly or tacitly approved the litigation.

(2) No complaint may be filed in the cases set out under numbers 1 and 3 if it was possible to enforce such annulment by appellate remedies.

### Section 580
### Action for retrial of the case

An action for retrial of the case may be brought:

APP 1683

# Exhibit 4

# Enforcement of Foreign Judgments
# – Germany December 2014

**APP 1684**

App. 2365

# Enforcement of Foreign Judgments

### Edited by Louis Garb and Julian D.M. Lew

## Supplement 32 (December 2014)

**Enforcement of Foreign Judgments** helps alleviate the time and costs of consulting foreign attorneys or government agencies for information regarding the specific procedures of individual nations and their policies towards enforcement of foreign judgments.

It addresses the most pertinent specifications, requirements, and legislation of each individual nation.

The following chapters have been reviewed and updated where necessary:

- **Australia**
  *Herbert Smith Freehills*

- **European Union**
  *Gleiss Lutz*

- **Indonesia**
  *Kusnandar & Co.*

- **South Africa**
  *Sandton Advocates Chambers Group III*

- **Ukraine**
  *Andreas Neocleous & Co.*

- **Austria**
  *Law Offices Dr F. Schwank*

- **Germany**
  *Gleiss Lutz*

- **Isle of Man**
  *M&P Legal*

- **Sweden**
  *Advokatfirman Berlin AB*

- **United States of America**
  *Taft Stettinius & Hollister LLP*

9888003258

**APP 1685**

App. 2366

APP 1686

# Table of Contents

VOLUME 1

Preface                                        General Section – 5–6

List of Authors                                General Section – 21–38-48

Signatures and Ratifications                   General Section – 49–52

Questionnaire
  by Louis Garb                                Questionnaire – 1–8

**Africa**

*Algeria*
  by Adnane Bouchaib                           Algeria – 1–12

*Cameroon*
  by David Etah Akoh                           Cameroon – 1–14

*Egypt*
  by Wagdi Maher Bishara                       Egypt – 1–12

*Kenya*
  by Caroline Thuo                             Kenya – 1–14

*Nigeria*
  by Ajumogobia & Okeke                        Nigeria – 1–16

*South Africa*
  by Warren Bank                               South Africa – 1–26

*Tunisia*
  by Habib & Slim Malouche                     Tunisia – 1–14

**Asia**

*Brunei*
  by Colin Y.C. Ong                            Brunei – 1–16

*Hong Kong*
  by Ella Cheong                               Hong Kong – 1–28

**APP 1687**

App. 2368

**Table of Contents**

*India*
  by Lalit Bhasin ........................................... India – 1–14

*Indonesia*
  by Winita E. Kusnandar ........................... Indonesia – 1–12

*Israel*
  by Louis Garb ............................................ Israel – 1–16

*Japan*
  by Takahiro Yamauchi
  & Eriko Ogata ........................................... Japan – 1–16

*Jordan*
  by Samah Sultan & Abdurrahman Awad ...... Jordan – 1–10

*Korea*
  by Jay K. Lee ............................................. Korea – 1–12

*Lebanon*
  by Mohamed Alem & Leila Y. Alem ........... Lebanon – 1–18

*Malaysia*
  by Ira Biswas ............................................. Malaysia – 1–24

*Pakistan*
  by Farrukh Zia Shaikh ............................... Pakistan – 1–14

*People's Republic of China*
  by Enzo Wh Chow ..................................... PR China – 1–10

*Philippines*
  by Eduardo de los Angeles ......................... Philippines – 1–18

*Singapore*
  by Harish Kumar, Goh Seow Hui
  & Jonathan Toh .......................................... Singapore – 1–22

*Taiwan*
  by Nigel N.T. Li & Rebecca Hsiao .............. Taiwan – 1–16

*Thailand*
  by Stephen Frost ........................................ Thailand – 1–16

*Vietnam*
  by Dang The Duc ........................................ Vietnam – 1–10

**Australia and Oceania**

*Australia*
  by Michael Pryse ....................................... Australia – 1–14

Foreign Judgments – Suppl. 32 (December 2014)

APP 1688

App. 2369

**Table of Contents**

*New Zealand*
  by Margaret A. Helen Macfarlance,
Ashley Ayton, Sarah Holderness,
Kirsty Jones, Gennise Luen
& Michael O'Brien of Hesketh Henry      New Zealand – 1–26

**North America**

*The Bahamas*
  by C.R. Matthew Paton      The *Bahamas* – 1–18

*British Virgin Islands*
  by Phillip R. Kite      British Virgin Islands – 1–12

*Canada (British Columbia)*
  by Chuck Blanaru & Jennifer M. Moir      Canada (British Columbia) – 1–20

*Canada (Ontario)*
  by Peter L. Biro & Mandy L. Seidenberg      Canada (Ontario) – 1–22

*Canada (Quebec)*
  by Antonietta Melchiorre & James Woods      Canada (Quebec) – 1–16

*United States*
  by Allan T. Slagel & Daniel R. Saeedi      United States – 1–28

**Central America**

*Bermuda*
  by Keith Robinson      Bermuda – 1–18

*Cayman Islands*
  by Andrew Bolton      Cayman Islands – 1–18

*Guatemala*
  by Armando Mérida      Guatemala – 1–12

*Mexico*
  by Marcos Berkman Margolis      Mexico – 1–12

*Panama*
  by David J. Arosemena      Panama – 1–12

**South America**

*Argentina*
  by Alberto Molinario      Argentina – 1–16

*Brazil*
  by Adriana Camargo Rodrigues      Brazil – 1–12

General Section – 11

Foreign Judgments – Suppl. 32 (December 2014)

APP 1689

## Table of Contents

*Chile*
  by Francisco Javier Illanes & Felipe
Benavides                                          Chile – 1–14

*Colombia*
  by Edouardo Zuleta                          Colombia – 1–20

*Ecuador*
  by Xavier Sisa & Bruce Horowitz        Ecuador – 1–14

*Uruguay*
  by Federico Formento                        Uruguay – 1–14

*Venezuela*
  by Angel Gabriel Viso                       Venezuela – 1–16

VOLUME 2

**Europe**

*Austria*
  by Friedrich Schwank & Thomas Pichler        Austria – 1–16

*Belarus*
  by Alexei Anischenko & Mikalai
Markounik                                          Belarus – 1–14

*Belgium*
  by Karel Mul                                    Belgium – 1–14

*Bulgaria*
  by Rossitsa Voutcheva, Peter Mihaylov &
Dilyan Nachev                                     Bulgaria – 1–18

*Cyprus*
  by Chrysanthos Christoforou                   Cyprus – 1–24

*Czech Republic*
  by JUDr Richard Gürlich & Iva Pokorná      Czech Republic – 1–24

*Denmark*
  by Jens Rostock-Jensen &
Jakob Dahl Mikkelsen                            Denmark – 1–18

*England and Wales*
  by Steven Philippsohn & Lucinda Fenton    England and Wales – 1–30

*Estonia*
  by Carri Ginter & Veikko Puolakainen       Estonia – 1–24

**APP 1690**

App. 2371

## Table of Contents

*European Union*
  by Stephan Wilske & Gerhard Wegen
    European Union – 1–20

*Finland*
  by Petrik Obstbaum
    Finland – 1–14

*France*
  by Olivier G. Binder
    France – 1–14

*Germany*
  by Stephan Wilske & Gerhard Wegen
    Germany – 1–16

*Gibraltar*
  by Isaac S. Marrache
    Gibraltar – 1–16

*Greece*
  by Alkistis Christofilou
    Greece – 1–12

*Guernsey*
  by St. John A. Robilliard
    Guernsey – 1–12

*Hungary*
  by Péter Nógrádi
    Hungary – 1–20

*Ireland*
  by Gearoid Carey &
  Julie Murphy O'Connor
    Ireland – 1–16

*Isle of Man*
  by Christopher Brooks
    Isle of Man – 1–24

*Italy*
  by Tiziana Tampieri
    Italy – 1–22

*Jersey*
  by Anthony Dessain, Edward Drummond
& Michael Wilkins
    Jersey – 1–22

*Liechtenstein*
  by Markus Wanger
    Liechtenstein – 1–18

*Lithuania*
  by Renata Beržanskienė
    Lithuania – 1–20

*Luxembourg*
  by François Moyse
    Luxembourg – 1–20

*Monaco*
  by Jean-Charles S. Gardetto
    Monaco – 1–16

**APP 1691**

App. 2372

**Table of Contents**

*The Netherlands*
  by Peter Bernard Hemmes                         The Netherlands – 1–16

*Norway*
  by Kaare Andreas Shetelig & Ola Haugen              Norway – 1–18

*Poland*
  by Michał Gruca                                     Poland – 1–16

*Portugal*
  by Guilherme Santos Silva, Francisco
  Patrício & Tiago Moreira da Silva                 Portugal – 1–16

*Romania*
  by Vitzman, Webster & partners                    Romania – 1–12

*Russia*
  by Vladimir Melnikov                                Russia – 1–18

*Scotland*
  by Douglas Blyth                                   Scotland – 1–16

*Serbia*
  by Borivoje Trgovčević                               Serbia – 1–22

*Slovak Republic*
  by Jozef Mesároš & Eva Komrsková          Slovak Republic – 1–20

*Spain*
  by Isabel Escudero, Héctor Sbert &
  Ángeles Subirá                                       Spain – 1–14

*Sweden*
  by Mikael Berglund, Lars Berlin &
  Cecilia Peterson                                    Sweden – 1–12

*Switzerland*
  by Nedim Peter Vogt & Matthew Reiter          Switzerland – 1–28

*Turkey*
  by Ilter, Turan & Argun                             Turkey – 1–14

*Ukraine*
  by Andreas Neocleous & Co                          Ukraine – 1–14

Index                                                 Index –1–4

APP 1692

App. 2373

**List of Authors**

*British Virgin Islands*

Phillip R. Kite
Harney Westwood & Riegels
Craigmuir Chambers
PO Box 71
Road Town, Tortola
British Virgin Islands

| | |
|---|---|
| Tel.: | +1 284 494 2233 |
| Fax: | +1 284 494 3547 |
| E-mail: | phillip.kite@harneys.com |

*Canada (British Columbia)*

Chuck Blanaru & Jennifer M. Moir
Heath Law LLP, Barristers &
Solicitors
200 – 1808 Bowen Road
Nanaimo, British Columbia
V9S 5W4

| | |
|---|---|
| Tel.: | (250) 753-2202 |
| Fax: | (250) 753-3949 |
| E-mail: | cblanaru@vancouverisland
lawyers.com |
| Website: | jmoir@nanaimolaw.com
www.nanaimolaw.com |

*Canada (Ontario)*

Peter L. Biro
Newcon Optik
105 Sparks Ave., Toronto, ON
M2H 2S5 Canada

| | |
|---|---|
| Tel.: | +16-663-6963 |
| Fax: | +416-663-9065 |
| E-mail: | pbiro@newcon-optik.com |

Mandy L. Seidenberg
WeirFoulds LLP, Barristers and
Solicitors
Suite 4100, 66 Wellington Street West,
PO Box 35
Toronto, Ontario
Canada M5X 1B7

| | |
|---|---|
| Tel.: | +1 416 365 1110 |
| Fax: | +1 416 365 1876 |
| E-mail: | mseidenberg
@weirfoulds.com |

*Canada (Quebec)*

Antonietta Melchiorre & James Woods
Lapointe Rosenstein Marchand
Melançon, L.L.P.
1250 René-Lévesque Blvd.
West, Suite1400
Montreal, Quebec
Canada H3B 5E9

| | |
|---|---|
| Tel.: | +1 514 925-6355 |
| Fax: | +1 514 925-5055 |
| E-mail: | antonietta.melchiorre@lrmm.com |

*United States*

Allan T. Slagel & Daniel R. Saeedi
Taft Stettinius & Hollister LLP
Suite 2800
111 E. Wacker
Chicago, Illinois 60601
USA

| | |
|---|---|
| Tel.: | +1 312 527 4000 |
| Fax: | +1 312 527 4011 |
| E-mail: | aslagel@taftlaw.com,
dsaeedi@taftlaw.com |
| Website: | www.taftlaw.com |

Foreign Judgments – Suppl. 32 (December 2014)                    General Section – 27

## List of Authors

### Central America

*Bermuda*

Keith Robinson
Appleby
Canon's Court
22 Victoria Street
PO Box HM 1179
Hamilton HM EX
Bermuda

Tel.: +1 441 295 2244
Fax: +1 441 292 8666
E-mail: klrobinson@appleby global.com

*Cayman Islands*

Andrew Bolton
Appleby (Cayman) Limited
Clifton House
75 Fort Street
P.O. Box 190 KY1-1104
Grand Cayman
Cayman Islands

Tel.: +1 345 949 4900
Fax: +1 345 949 4901
E-mail: abolton@applebyglobal.com

*Guatemala*

Armando Mérida
Mérida & Asociados.
20 calle 12-51 'A' zona 10.
Guatemala, Guatemala

Tel.: +502 2366 7427
Fax: +502 2366 7423
E-mail: amerida meridayasociados. com.gt
Website: www.meridayasociados.com.gt

*Mexico*

Marcos Berkman Margolis
BBL Legal Abogados, S.C.
San Francisco Núm. 2, Pisos 5 y 6
Colonia del Valle
C.P. 03100, México, D.F.

Tel.: +52 55 5687 0411
Fax: +52 55 5669 1582
E-mail: mberkman@bbl-legal.com.mx
Website: www.bbl-legal.com.mx

*Panama*

David J. Arosemena
Castro & Berguido
Edificio Vallarino
6th Floor, Panama City
Panama

Tel.: +507 264 0506
Fax: +507 264 0516
E-mail: darosemena@castroberguido.com
Website: http://www.castroberguido.com

APP 1694

App. 2375

*Republic of Bulgaria*

Rossitsa Voutcheva, Peter Mihaylov
& Dilyan Nachev
BWSP Ilieva, Voutcheva &
Co Law Firm 28 'Hristo Botev' blvd.,
4th floor, SOFIA 1000,
Bulgaria

Tel.:    +359 2 981 49 53
         +359 2 980 61 55
         +359 2 895 21 79
Fax:    +359 2 980 59 82
E-mail:  office@ivlawfirm.com
Website: www.ivlawfirm.com

*Cyprus*

Chrysanthos Christoforou
Andreas Neocleous & Co. LLC
Neocleous House
195 Archbishop Makarios III Avenue
PO Box 50613
CY- 3608 Limassol
Cyprus

Tel.:    +357 25 110000
Fax:    +357 25 110001
E-mail:  chrysanthos@
         neocleous.com

*Czech Republic*

JUDr Richard Gürlich & Iva Pokorna
Advokátní kancelář Gürlich & Co.
(Law Firm Gürlich & Co)
Politických vězňů 19,
Praha 1, Postal code 110 00,
Czech Republic

Tel.:    +420 222 101 591
Fax:    +420 222 101 590
E-mail:  gurlich@akrg.cz
Website: www.akrg.cz

*Denmark*

Jens Rostock-Jensen & Jakob
Dahl Mikkelsen
Kromann Reumert
Sundkrogsgade 5
2100 Copenhagen East
Denmark

Tel.:    +45 38 77 44 50
         +45 38 77 46 12
         +45 70 12 12 11
Fax:    +45 70 12 13 11
E-mail:  jrj@kromannreumert.com,
         jdm@kromannreumert.com
Website: www.kromannreumert.com

*England and Wales*

Steven Philippsohn & Lucinda Fenton
PCB Litigation LLP
4th Floor
190 Chancery Lane
London WC2A 1EU
United Kingdom

Tel.:    +44 (0)20 7831 2691
Fax:    +44 (0)20 7404 9435
E-mail:  snp@pcblitigation.com
Website: www.pcblitigation.com

APP 1695

App. 2376

## List of Authors

*Estonia*

Carri Ginter (PhD) & Veikko
Puolakainen
Law firm SORAINEN
Pärnu mnt. 15
10141 Tallinn, Estonia

Tel.:     +372 640 0900
Fax:      +372 640 0901
E-mail:   estonia@sorainen.com
Website:  www.sorainen.com

*European Union*

Dr Stephan Wilske,
Maître en Droit, LL.M.,
Lautenschlagerstraβe 21
D-70173 Stuttgart
Germany
and

Tel.:     +49 711 8997-152
Fax:      +49 711 855096
E-mail:   stephan.wilske
          @gleisslutz.com
Website:  www.gleisslutz.com

Prof. Dr Gerhard Wegen, LL.M.
Lautenschlagerstraβe 21
D-70173 Stuttgart
Germany

Tel.:     +49 711 8997-156
Fax:      +49 711 855096
E-mail:   gerhard.wegen@
          gleisslutz.com

*Finland*

Petrik Obstbaum
Obstbaum Harju & Sorjonen
Attorneys at Law
Annankatu 29A
SF-00100 Helsinki
Finland

Tel.:     +358 0 95657955
Fax:      +358 0 956579560
E-mail:   petrik.obstbaum@ohh.fi
Website:  www.ohh.fi

*France*

Olivier G. Binder
Avocat à la Cour
Partner,
GRANRUT Law firm
Address: 91, rue du Faubourg Saint
Honoré - 75008 Paris

Tel.:     +33.1.53.43.15.15
Fax:      +33.1.53.43.15.00
E-mail:   o.binder@granrut.com
Website:  www.granrut.com

*Germany*

Dr Stephan Wilske,
Maître en Droit, LL.M.,
Lautenschlagerstraβe 21
D-70173 Stuttgart
Germany
and

Tel.:     +49 711 8997-152
Fax:      +49 711 855096
E-mail:   stephan.wilske
          @gleisslutz.com
Website:  www.gleisslutz.com

Foreign Judgments – Suppl. 32 (December 2014)

**APP 1696**

App. 2377

**List of Authors**

Prof. Dr Gerhard Wegen, LL.M.
Lautenschlagerstraße 21
D-70173 Stuttgart
Germany

Tel.: +49 7118997-156
Fax: +49 711855096
E-mail: gerhard.wegen
@gleisslutz.com

*Gibraltar*

Isaac S. Marrache,
Marrache & Co.
5 Cannon Lane
Gibraltar

Tel.: +350 79918/74901
Fax: +350 73315/74042
E-mail: mail@marrache.com
ism@marrache.com

*Greece*

Alkistis Christofilou
I.K. Rokas & Partners Law Firm
25 Boukourestiou Street
106 71 Athens
Greece

Tel.: +30 210 361 6816
Fax: +30 210 361 5425
E-mail: a.christofilou@rokas.com
Website: www.rokas.com

*Guernsey*

St. John A. Robilliard
Mourant Ozannes
1, Le Marchant Street
St. Peter Port
Guernsey
GY1 4HP

Tel.: +44 (0) 1481 723466
Fax: +44 (0) 1481 713839
E-mail: stjohnrobilliard
@mourantozannes.com

*Hungary*

Péter Nógrádi
Nógrádi Law Firm
H-1037 Budapest,
Montevideo str 3./A
Hungary

Tel.: +36 1 240-6354
Fax: +36 1 240-6353
E-mail: nogradilaw@nogradilaw.hu

*Ireland*

Gearoid Carey &
Julie Murphy O'Connor
70 Sir John Rogerson's Quay
Dublin-2
Ireland

Tel.: +353 1 232 2000
Fax: +353 1 232 3333
E-mail: Gearoid.carey@matheson
.com
Julie.murphy-oconnor@
matheson.com
Website: www.matheson.com

**APP 1697**

App. 2378

## List of Authors

*Isle of Man*

Christopher Brooks
Advocate, M&P Legal
New Court Chambers
23-25 Bucks Road
Douglas

Isle of Man
IM99 2EN

Tel.:     +44(0)1624 695800
Fax:      +44(0)1624 695801
E-mail:   cmb@mplegal.im
Website:  www.mplegal.im

E-mail:   cmb@mplegal.im
Website:  www.mplegal.im

*Italy*

Tiziana Tampieri
Studio Tampieri e Associati
Via Guido Reni, 4
40125 Bologna
Italy

Tel.:     +39 51 223990
Fax:      +39 51 264425
E-mail:   stampass@tampieri
          associati.it
Website:  www.studiolegaletampierie
          associati.com

*Jersey*

Anthony Dessain & Edward Drummond
Bedell Cristin
PO Box 75
26 New Street
St Helier
Jersey
Channel Islands
JE4 8PP

Tel.:     + 44 (0) 1543 814814
Fax:      + 44 (0) 1534 814815
E-mail:   anthony.dessain@bedell
          group.com
E-mail:   edward.drummond@bedell
          group.com
Website:  www.bedellgroup.com

Michael Wilkins, M.B.E.
Viscount of the Royal Court
Morier House
St. Helier
Jersey
Channel Islands
JE1 1DD.

Tel.:     + 44 (0) 1543 441450/44
          1401
Fax:      + 44 (0) 1534 441399
E-mail:   M.Wilkins@gov.je
Website:  www.gov.je

*Liechtenstein*

Dr iur. Markus Wanger
Rechtsanwalt – FCIArb
Aeulestrasse 45
P.O. Box 1608
FL-9490 Vaduz
Liechtenstein

Tel.:     +423 237 52 52
Fax:      +423 237 52 53
E-mail:   wanger@wanger.net
Website:  www.wanger.net

APP 1698

App. 2379

*Lithuania*

Renata Beržanskienė
Sorainen
Jogailos g. 4
LT-01116 Vilnius
Lithuania

Tel.:    +370 5 2685 040
Fax:    +370 5 2685 041
E-mail:  renata.berzanskiene
         @sorainen.com
Website: www.sorainen.com

*Luxembourg*

François Moyse
Avocat à la Cour
Partner in the law firm DSM
Di Stefano, Sedlo & Moyse
2A, boulevard Joseph II
B.P. 2648 L-1026 Luxembourg

Tel.:    +352 262 562-1
Fax:    +352 262 562-2
E-mail:  fmoyse@dsmlegal.com
Website: www.dsmlegal.com

*Monaco*

Jean-Charles S. Gardetto
Avocat Defenseur a la Cour
19 Boulevard des Moulins
MC 98000 Monaco
Principaute de
Monaco

Tel.:    +377 92 16 16 17
Fax:    +377 93 50 42 41
E-mail:  info@gardetto.mc

*The Netherlands*

Peter Bernard Hemmes
Glenn C. Haulussy LL.M.
Westblaak 5,
3012 KC Rotterdam

Tel.:    +31-10-4148614
Fax:    +31-10-4149415
E-mail:  ghaulussy@thelaw
         company.nl

*Norway*

Kaare Andreas Shetelig &
Ola Haugen
Wikborg, Rein & Co.
Kronprinsesse Märthas pl. 1
N-0160 Oslo
Norway

Tel.:    +47 22 82 75 00
Fax:    +47 22 82 75 01

*Poland*

Michał Gruca
Schönherr Pietrzak Siekierzyński
Bogen Sp.k.
ul. Złota 59
PL-00-120 Warszawa
Poland

Tel.:    +48 22 222 42 00
Fax:    +48 22 222 42 99
E-mail:  m.gruca@schoenherr.pl
Website: www.schoenherr.eu

**APP 1699**

App. 2380

## List of Authors

*Portugal*

| | | |
|---|---|---|
| Guilherme Santos Silva, Francisco Patrício & Tiago Moreira da Silva Abreu & Associados, Sociedade de Advogados, RL Av. das Forças Armadas, 125,12° 1600-079 Lisboa Portugal | Tel.: Fax: E-mail: | + 351 21 729 18 00 +351 21 723 18 99 guilherme.s.silva@abreuad vogados.com |

*Romania*

| | | |
|---|---|---|
| Vitzman, Webster & Partners 2 Univii Blud, bl. 8A, et 5-7 ap. 24, 25, sector 4, Bucharest RO-76104 Romania | Tel.: Fax: E-mail: Website: | +40 1 335 4803 +40 1 337 0738 hugo.vitzman@vwp.ro www.vwp.ro |

*Russia*

| | | |
|---|---|---|
| Vladimir Melnikov Herbert Smith Freehills CIS LLP 10, Ulitsa Nikolskaya 109012 Moscow Russian Federation | Tel.: Fax: E-mail: Website: | +7 (495) 363 65 00 +7 (495) 363 65 01 vladimir.melnikov@hsf.com www.herbertsmithfreehills.com |

*Scotland*

| | | |
|---|---|---|
| Douglas Blyth 1 George Square, Glasgow Scotland United Kingdom | Tel.: Fax: E-mail: | +44 330 222 1664 +44 141 248 5819 Douglas.Blyth@mms.co.uk |

*Serbia*

| | | |
|---|---|---|
| Borivoje Trgovčević Attorney-at-Law, Law Office of B. Trgovčević Kneginje Zorke 9a/13 11000 Belgrade Serbia | Tel.: Fax: Mobile: E-mail: Website: | +381 11 2430644 +381 11 2430644 +381 63 377857 btrgovcevic@yahoo.com www.belgradelawoffice.com |

*Slovak Republic*

| | | |
|---|---|---|
| Jozef Mesároš & Eva Komrsková Jurisinvest, advokátska kancelária, v.o.s. Pluhová 5 831 03 Bratislava 3 Slovak Republic | Tel.: Fax: E-mail: | +421 2 44455326 +421 2 44455329 jurisinvest@jurisinvest.sk |

**APP 1700**

App. 2381

List of Authors

*Spain*

| Isabel Escudero, Héctor Sbert & Ángeles Subirá BROSA, Abogados y Economistas, S.L. Avenida Diagonal No. 598 08021 Barcelona, Spain and | Tel.: | +34 93 2404151 |
| | Fax: | +34 93 2022907 and 93 2008764 |
| | E-mail: | www.info.bcn@brosa.es |

| Veláquez No. 10 28001 Madrid, Spain and Gran Via 42 48001 Bilbao, Spain | Tel.: | +34 91 5934244 |
| | Fax: | +34 91 5930455 |
| | E-mail: | www.info.mad@brosa.es |
| | Tel.: | +34 94 4355380 |
| | Fax: | +34 94 4239382 |
| | E-mail: | www.info.bio@brosa.es |

*Sweden*

| Mikael Berglund Enforcement Director, Lars Berlin and Cecilia Peterson Attorneys-at-Law Box 284, SE–746 26 Bålsta Sweden | Tel.: | +46171467019 |
| | Fax: | +46171469641 |
| | E-mail: | lawyer@berlin.se, Cecilia.Peterson@berlin.se |
| | Website: | www.berlin.se |

*Switzerland*

| Nedim Peter Vogt & Matthew Reiter Bär & Karrer AG Brandschenkestrasse 90 8027 Zurich Switzerland | Tel.: | +41 58 261 50 00 |
| | Fax: | +41 58 261 50 01 |
| | Website: | www.baerkarrer.ch |

*Turkey*

| Ilter, Turan & Argun Attorneys at Law Nuruosmaniye Caddesi, No:15 K:3 Cagalaoglu Istanbul | Tel.: | +90 212 5287533 / +90 232 4647576 |
| | Fax: | +90 212 5265324 / +90 232 4647566 |
| | E-mail: | info@ita-law.com |

*Ukraine*

| Andreas Neocleous & Co, Kiev office 24/7, Instytutska Street, Suite 12 Kiev 01021 Ukraine | Tel./Fax: | +38 044 2534495 |
| | E-mail: | kyiv@neocleous.com |
| | Website: | www.neocleous.com www.neocleous.com.ua |

APP 1701

App. 2382

List of Authors

Foreign Judgments – Suppl. 32 (December 2014)

APP 1702

App. 2383

**Germany**

This chapter was last reviewed by the Author and
is up-to-date as of October 2014

APP 1703

App. 2384

**Europe**

Foreign Judgments – Suppl. 32 (December 2014)

APP 1704

App. 2385

# Germany

Prepared by Stephan Wilske and Gerhard Wegen

GLEISS LUTZ

| | |
|---|---|
| Address: | Lautenschlagerstraβe 21 |
| | D-70173 Stuttgart |
| | Germany |
| Tel.: | +49 711 8997 0 |
| Fax: | +49 711 85 50 96 |
| and: | Friedrichstraße 71 |
| | D-10117 Berlin |
| | Germany |
| Tel.: | +49 30 8009790 |
| Fax: | +49 30 800979-979 |
| and: | Taunusanlage 11 |
| | D-60329 Frankfurt/Main |
| | Germany |
| Tel.: | +49 69 95514 0 |
| Fax: | +49 69 95514 198 |
| and: | Karl-Scharnagl-Ring 6 |
| | D-80539 München |
| | Germany |
| Tel.: | +49 89 21667 0 |
| Fax: | +49 89 21667 111 |
| and: | Dreischeibenhaus 1 |
| | D-40211 Düsseldorf |
| Tel.: | +49 211 54061 0 |
| Fax: | +49 211 54061 111 |
| and: | Hohe Bleichen 19 |
| | D-20354 Hamburg |
| Tel.: | +49 40 460017 0 |
| Fax: | +49 40 460017 28 |
| Website: | www.gleisslutz.com |

APP 1705

App. 2386

1–1 / Europe

1. UNIFORMITY OF LAW AND REGULATIONS

Germany has a federal system. The law of enforcement of foreign judgments is federal law and is therefore applicable in every German state. Bilateral or multilateral treaties take precedence over federal law, except when federal law is more favourable to the party seeking enforcement. In addition, law of the European Union takes precedence over federal law. That means in particular that Council Regulation (EC) No. 44/2001 of 22 December 2000 on Jurisdiction and the Recognition and Enforcement of Judgments in Civil and Commercial Matters (Regulation (EU) No. 1215/2012 of 12 December 2012 on Jurisdiction and the Recognition and Enforcement of Judgments in Civil and Commercial Matters (recast) will take effect from 10 January 2015 and replaces Council Regulation (EC) No. 44/2001 of 22 December 2000; for details see Chapter 'European Union') and Council Regulation (EC) No. 2201/2003 of 27 November 2003 concerning Jurisdiction and the Recognition and Enforcement of Judgments in Matrimonial Matters and the Matters of Parental Responsibility, take precedence over federal law with respect to judgments given by a court or tribunal of another Member State of the European Union. Moreover, Regulation (EC) No. 805/2004 of the European Parliament and of the Council of 21 April 2004 creating a European Enforcement Order for Uncontested Claims provides for the recognition and enforceability of certified enforcement orders in all Member States. The same is true for European payment orders rendered under the procedure set forth in Regulation (EC) No. 1896/2006 of the European Parliament and of the Council of 12 December 2006 creating a European Order for Payment Procedure. Further, Regulation (EC) No. 861/2007 of the European Parliament and of the Council of 11 July 2007 establishing a European Small Claims Procedure stipulates a simplified recognition and enforcement procedure for judgments in cases where the value in dispute does not exceed EUR 2,000.00. On 19 November 2013, the European Commission put forward Proposal for a Regulation of the European Parliament and of the Council amending Regulation (EC) No. 861/2007 of 11 July 2007 and Regulation (EC) No. 1896/2006 of 12 December 2006 (COM [2013] 794 final). The major proposed changes are: (1) an 'extension of the scope of the Regulation to cross-border claims up to EUR 10,000', (2) an 'extension of the definition of cross border cases', (3) and 'providing a maximum limitation on court fees charged for the procedure'. It has to be noted, however, that Regulation (EC) No. 2201/2003, Regulation (EC) No. 805/2004, Regulation (EC) No. 1896/2006 and Regulation (EC) No. 861/2007 do not apply in relation to Denmark. As a general rule, these regulations supersede conventions between Germany and other Member States.

**APP 1706**

App. 2387

2.   JUDGMENTS

2.1.   **Definition**

An enforceable judgment is a court decision in a civil matter finally resolving a dispute between the parties before a court. As to arbitration awards and injunctions, see below.

2.2.   **Categories**

(a)  Money judgments are enforceable.
(b)  Judgments for specific performance are enforceable.
(c)  Injunctions are enforceable.
(d)  Arbitration awards are enforceable pursuant to the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards of

*[Next page continues on GERMANY–5]*

**APP 1707**

App. 2388

**2–2 / Europe**

Foreign Judgments – Suppl. 32 (December 2014)

**APP 1708**

App. 2389

later proves to have been unjustified, the applicant must pay damages to the respondent.

### 16. INTEREST

Interest will be granted from the time of and to the extent determined in the foreign judgment. If the foreign judgment does not fix the interest rate and time period but provides for 'legal interest' to be paid, the German court will determine the interest pursuant to the rules of the foreign law on legal interest.

### 17. TIME OF ENFORCEMENT AND SUBSEQUENT ACTION

(a)  (i)  If the enforcement action is not contested, the German proceedings will take approximately three months from the time of service of process to the time of final judgment.

      (ii)  If the application for enforcement is contested, there may be one or even two appeals and the entire proceedings may take up to five years.

(b)  The judgment will be enforced according to German law.

      (i)  The enforcement of a money judgment may proceed by attachment of movable and immovable property.

      (ii)  In practice, civil imprisonment is rare. It may, however, be ordered if the debtor does not have sufficient attachable assets and does not give an affidavit stating all of his or her assets. In rare cases, civil imprisonment may be ordered as interim relief to prevent the dissipation of the assets by the debtor.

      (iii)  If the debtor is unable to pay, a claim for insolvency may be filed by a creditor.

      (iv)  Aside from civil imprisonment, no special restraint on leaving the country is foreseen.

(c)  If the judgment calls for specific performance, a German court may levy fines on the respondent if he or she does not perform. Civil imprisonment is also possible. If a third party is asked to perform in his or her place because the respondent does not do so, he or she must prepay the costs.

(d)  In the event of an appeal against a decision granting or refusing to grant enforcement:

      (i)  A first appeal is permissible if the value of the matter in dispute exceeds EUR 600.00, or if the Court of First Instance granted leave to appeal in its decision. In contrast, a second appeal (*Revision*) is only permissible if leave to appeal was granted in the first appellate decision or an application to appeal is granted by the court of second appeal. As to the first and the second appeal, leave may be granted either if the matter is of fundamental significance, or if a decision is required to further develop or maintain the consistency of the law. Overall, German courts infrequently find that said conditions are fulfilled.

APP 1709

(ii) Generally, the first and the second appeal must be filed within one month and supported by a brief on appeal within two months, the time period in each case commencing with the service of the judgment. The judgment granting enforcement is provisionally enforceable irrespective of a pending appeal. In order to prevent provisional enforcement, the party concerned needs to apply for suspension of the enforcement. It may be granted at the discretion of court, taking into account in particular whether the appeal has sufficient chances of success.

18. EXPENSES, LEGAL FEES AND SECURITY FOR COSTS

(a) Court fees depend upon the value in dispute (which in an action to enforce a money judgment will be the amount sought to be enforced). The fees for the proceedings and the expenses for the service of process must be paid in advance to the court. Court fees are a declining percentage of the value in dispute. As an example, in a case where the value in dispute is EUR 50,000.00, one court fee unit amounts to EUR 546.00. However, this amount is multiplied by a certain factor according to the kind of proceedings. In some cases fixed or framework fees are levied. The proceedings to declare a foreign judgment enforceable, for instance, would trigger as a rule, a fixed fee in the amount of EUR 240.00.

(b) Lawyers' fees in litigation are based on the Federal Attorney Remuneration Act (RVG). The lawyer generally receives 2.5 fee units for a lawsuit in the first instance, comprised of 1.3 fee units for initiating proceedings and 1.2 fee units for pleading the case. If, for instance, there is a value in dispute of EUR 50,000.00, the basic lawyers' fee unit will be EUR 1,163.00. In a lawsuit in the first instance the lawyers' fees will therefore add up to EUR 2,907.50 (plus expenses and Value Added Tax). The lawyer and his or her client may agree on higher fees, but fee above the RVG fees will not have to be reimbursed by the losing party.

(c) Contingency fees are only admissible under the restrictive condition that without such fee agreement the client, due to its financial circumstances, would be deterred from asserting its legal rights.

(d) All costs of a prevailing party (other than lawyers' fees) which were necessary for the appropriate handling of the action must be reimbursed by the losing party. The lawyers' legal fees are fully reimbursable to the extent they do not exceed the RVG.

(e) Apart from the prepayment of the court fees, the applicant may be required to post a security deposit for the costs of the respondent if:
    (i) the respondent so requests;
    (ii) the applicant does not have his or her habitual residence in the European Union or in a state which is a party to the Agreement on the European Economic Area; and

(iii) the applicant does not have sufficient real property or claims secured by a property lien in Germany. For nationals of many countries this requirement is excluded by treaties.

19. BANKRUPTCY/LIQUIDATION

(a) A foreign creditor has the same rights as a local creditor. Generally, all *insolvency* creditors are treated equally, unless they have a privileged status (e.g., as secured creditors).
(b) Foreign insolvency proceedings will be recognized. Therefore, the foreign trustee enjoys the same position and rights as in his or her own jurisdiction. Accordingly, the foreign trustee has, in general, full power of disposal over the local assets of the bankrupt debtor. However, the foreign trustee does not have the authority to use coercive measures in Germany.

20. LAWYERS (WHO CAN APPEAR?)

Every attorney (*Rechtsanwalt*) admitted to the German bar (*Rechtsanwaltskammer*) may appear before every Local Court (*Amtsgericht*), District Court (*Landgericht*) or Higher Regional Court (*Oberlandesgericht*). Local Courts have jurisdiction over cases involving a value of up to EUR 5,000.00 and over all family matters. In cases with a higher value in dispute, the District Court has jurisdiction. There is a specialized bar of attorneys (currently numbering less than fifty) at the Federal Court of Justice, the members of which are exclusively admitted to appear before that court.

21. INTERNATIONAL TREATIES

There is not yet a general multilateral treaty on the recognition and enforcement of foreign judgments. However, for the Member States of the European Union, the recognition and enforcement of court judgments is extensively regulated by Council Regulation (EC) No. 44/2001 of 22 December 2000 and No. 2201/2003 of 27 November 2003 (the latter not applying to Denmark). Apart from cases relating to personal status, all judgments rendered in one EU State will be recognized in all other EU States. In relation to Iceland, Switzerland and Norway the Convention on Jurisdiction and the Recognition and Enforcement of Judgments in civil and commercial Matters of 30 October 2007 (Lugano Convention 2007) applies.

Bilateral recognition and enforcement treaties exist with The Netherlands, Great Britain and Northern Ireland, Greece, Austria, Belgium, Italy, Switzerland, Tunisia, Hungary, Israel, Norway and Spain. These treaties continue to apply with regard to legal issues not covered by Council Regulations (EC) No. 44/2001 and No. 2201/2003 or the Lugano Convention (if applicable at all).

In addition to the treaties listed under 5., the following treaties could affect the answers in this questionnaire with regard to specific matters: Revised

APP 1711

App. 2392

Convention on Navigation on the Rhine of 17 October 1868 (Article 40), International Convention Relating to the Arrest of Seagoing Ships of 10 May 1952 (Article 4), Agreement on German External Debts of 27 February 1953 (Article 17), Convention on the Contract for the International Carriage of Goods by Road (CMR) of 19 May 1956 (Article 31), Additional Protocol to the Convention on Third Party Liability in the Field of Nuclear Energy of 29 July 1960 (Article 13), Convention on the Liability of Operators of Nuclear Ships of 25 May 1962 (Article XI), United Nations Convention on the Law of the Sea of 10 December 1982 (Annex III, Article 21 and Annex VI, Article 39) and International Convention on Civil Liability for Oil Pollution Damage (1984 Liability Convention) (Article X).

22. CROSS-EXAMINATION OF AFFIDAVIT'S DEPONENT

(a, b)  Affidavits are not admissible evidence in court proceedings other than in proceedings for interim relief. In enforcement proceedings, a party may request an interrogation of the other party by the court. A party ordered by the court to appear for interrogation must comply, but in practice such orders are not enforceable if the party resides in a foreign country. Cross-examination as such does not exist.

(c)  Because a German court generally must reimburse a witness for his or her costs (including travel expenses) relating to the interrogation, a German court has the authority to condition any order to appear upon the requesting party's payment of a security deposit for such costs, to the extent such costs would otherwise be payable from public funds.

23. REQUIRED AFFIDAVIT

Not applicable.

24. NEW ACTION INSTEAD OF ENFORCEMENT

(a)  A new action on the underlying claim may not be instituted. Rather, the res judicata effect of the foreign judgment will be recognized.

(b)  The statute of limitations for the enforcement of a foreign judgment depends on the applicable law under which the judgment was rendered.

25. PRESCRIPTION

The statute of limitations for the enforcement of the foreign judgment is determined by the laws of the foreign jurisdiction. However, the prevailing opinion among German legal commentators is that a respondent can object to the enforcement of a foreign judgment in Germany if more than thirty years have passed since the foreign judgment became final and non-appealable.

# Exhibit 5

## Decision of Stuttgart Regional Court
## IPRax 2001, 240-249

APP 1713

zugrunde liegenden Rechtsverhältnis nichts zu tun hat (vgl. *Baumbach/ Hefermehl*, Wechsel- und Scheckgesetz, 20. Aufl. 1997, Art 12 ScheckG Rdnr. 1). Wenn ein ausländisches Gesetz an diese Verpflichtungserklärung anknüpft und der Durchsetzung verfahrensrechtlich erleichtert, so verletzt das den deutschen ordre public grundsätzlich nicht.

Solche Regelungen sind dem Recht der Bundesrepublik Deutschland zwar nicht bekannt, aber bereits in ihm angelegt. Art. 8 des Abkommens über die Bestimmungen auf dem Gebiet des internationalen Scheckprivatrechts (RGBl 1933 II 595) als Teil des deutschen internationalen Scheckrechts sieht vor, daß sich nach dem Recht des Landes, in dessen Gebiet ein Protest zu erheben oder die Handlung vorzunehmen ist, die Form des Protestes, die Fristen für die Protesterhebung sowie die Form der übrigen Handlungen, die zur Ausübung oder Erhaltung des Scheckrechts erforderlich sind, bestimmen. Nach Art. 7 Nr. 6 des Übereinkommens (Art. 65 Nr. 6 ScheckG) bestimmt das Recht des Landes, in dessen Gebiet ein Scheck zahlbar ist, ob sein Inhaber besondere Rechte auf Deckung hat. Ob darunter auch prozessuale Regelungen zu verstehen sind, kann offen bleiben. Jedenfalls läßt sich aus einer Zusammenschau dieser Regelungen die Wertung entnehmen, daß das deutsche Scheckrecht im Interesse des internationalen Zahlungsverkehrs in weitem Maße bereit ist, ausländische scheckrechtliche Regelungen, die aus der Sicht dieses fremden Rechts die Verkehrsfähigkeit eines Schecks beeinflussen, anzuerkennen. Die Verringerung des Schutzes des Ausstellers eines Schecks durch ausländische Regelungen, die Durchsetzung der Erfüllung einer Verpflichtung betreffen, ist – soweit sie am Maßstab fundamentaler verfahrensrechtlicher Grundsätze des deutschen Rechts gemessen wird – dieser Wertung des deutschen Rechts über die Wirkungen der Verpflichtungserklärung durchaus vergleichbar. Sie entfernt sich nicht grundlegend von der auch nach deutschem Recht denkbaren Begehung eines Schecks an Erfüllungs Statt, dessen naheliegende und interessengerechte prozessuale Sicherung sie darstellen soll.

Allerdings können nach dem in Frankreich geltenden Verfahrensrecht Einwendungen gegen den Titel und damit auch gegen den Scheck nicht gerichtlich geltend gemacht werden. Dies ist aber durch die Besonderheiten des Scheckrechts vorbestimmt und auch im deutschen internationalen Scheckrecht bereits angelegt. Die Wirkungen der Scheckerklärung bestimmen sich nach Art. 63 ScheckG nach dem Recht des Landes, in dessen Gebiet die Erklärungen unterschrieben worden sind. Diese Vorschrift entspricht inhaltlich Art. 93 WechselG. Dazu ist anerkannt, daß zu den Wirkungen alles das gehört, was die Haftung betrifft, also Art und Umfang der rechtlichen Verpflichtung, Zulässigkeit von Einwendungen aus dem Grundgeschäft, das Entstehen eines Bereicherungsanspruchs und die Notwendigkeit von Rechtserhaltungsmaßnahmen (vgl. *Baumbach/Hefermehl*, a. a. O., Art. 93 WG, Rdnr. 1; Münchner Kommentar zum BGB/*Martiny*, 3. Aufl. 1998, Internationales Privatrecht, Art 37 Rdnr. 26). Demnach kann das Verfahren des einzelnen Landes auch bestimmen, daß Einwendungen aus dem Grundgeschäft auf die Erteilung des Vollstreckungstitels für die Scheckumme nicht erhoben werden können. Das zeigt aber auch, daß die dem französischen Recht bekannte Möglichkeit, die Scheckverpflichtung zu titulieren, über das vom deutschen Rechtsordnung ohnehin Anerkannte nicht in einem ins Gewicht fallenden Maße hinausgeht und geradezu rechtswidrig erscheint.

Eine Verletzung von Art. 19 Abs. 4 GG liegt, anders als das Landgericht meint, nicht dadurch vor, daß gegen die Erteilung der Vollstreckungsklausel in Frankreich gerichtlicher Rechtsschutz nicht vorgesehen ist. Art. 19 Abs. 4 GG als Teil des allgemeinen Justizgewährleistungsanspruchs erfaßt "nur" die Akte deutscher öffentlicher Gewalt. Die Entscheidung über die Erteilung der Vollstreckungsklausel in Deutschland erfolgt aber in einem gerichtlichen Verfahren. In diesem ist auch der Vollstreckbarkeitserklärung öffentlicher Urkunden vorgesehen (§ 13 Abs. 2 AVAG), daß der Schuldner alle Einwendungen, die gegen den Anspruch selbst richten, im Verfahren zur Erteilung der Vollstreckungsklausel geltend machen kann. Allerdings nimmt Vorbehalte des § 328 Abs. 1 Nr. 4 ZPO auch für Art. 50 EuGVÜ gelten. Nach dieser Vorschrift ist die Anerkennung zu versagen, wenn die Anerkennung mit den Grundrechten unvereinbar ist. Bei dem Justizgewährleistungsanspruch der Art. 19 Abs. 4 GG handelt es sich zwar um ein grundrechtsgleiches Recht, das sich aber nur auf Akte deutscher Gewalt bezieht.

3. Die übrigen Voraussetzungen für die Vollstreckbarkeitserklärung nach dem EuGVÜ liegen vor. Die Gläubigerin hat jeweils die "*titres executoire*", die Nichtzahlungsbescheinigung und die Zustellungsurkunde über die Nichtzahlungsbescheinigung sowie die Schecks im Original vorgelegt (Art. 50 Abs. 3, Art. 46 Abs. 1 EuGVÜ). Der Gläubiger hat auch bei der Antrag auf Erteilung der Vollstreckungsklausel am 22. 4. 1997 Urkunden des zuständigen Gerichtsvollziehers vorgelegt, aus denen sich die wirksame Zustellung ergibt. Aus diesen ist zwar zu ersehen, daß die Nichtzahlungsbescheinigung und der Vollstreckungstitel dem Schuldner mit persönlich übergeben wurden (Art. 47 Abs. 1 EuGVÜ verlangt jedoch lediglich eine Zustellung. Die Art der Zustellung richtet sich nach dem Recht des Staates, aus dem der vollstreckbare Titel stammt (vgl. *Kropholler*, a. a. O., Art. 47 Rdnr. 5). hier also nach den französischen Vorschriften. Nach diesen ist die Zustellung durch Niederlegung beim Bürgermeister und Benachrichtigung durch einfachen Brief wirksam erfolgt.

Die Entscheidung über die Kosten des Beschwerdeverfahrens folgt aus § 91 ZPO, diejenige über den Wert des Beschwerdeverfahrens aus § 3 ZPO. Diese Vorschriften sind ergänzend zu denjenigen in §§ 12-14 AVAG heranzuziehen (vgl. *Kropholler*, a. a. O., Art. 37 EuGVÜ, Rdnr. 2). Der Senat hat bei der Umrechnung von FF 7.700,- (1.000 + 1.000 + 2.500 + 3.200) einen Kurs von 0,29 zugrunde gelegt.

**Nr. 24*** LG Stuttgart – Haager Landkriegsordnung Art. 52; Londoner Schuldenabkommen Art. 5; BGB § 196; ZPO §§ 261, 328; GG Art. 100 Abs. 2; GVG § 17 a Abs. 3; ArbGG § 32

(Urteil v. 24. 11. 1999 – 24 O 192/99)

**Die Klage eines im NS-Staat als Zwangsarbeiter für ein deutsches Unternehmen tätigen Ausländers auf Entgelt und Schmerzengeld für die Zwangsarbeit ist zulässig.**

**Ihr steht Art. 5 Abs. 2 Londoner Schuldenabkommen nicht entgegen. Die klageweise geltend gemachten Ansprüche sind jedoch nach §§ 196 f., 852 BGB verjährt. Eine Verjährungshemmung mit Blick auf das Londoner Schuldenabkommen ist nicht eingetreten.**

**Völkerrechtliche Reparationsansprüche der betroffenen Zwangsarbeiter selbst bestehen nicht. Eine Vorlage nach Art. 100 Abs. 2, 25 GG scheidet aus.**

(Leitsätze der Redaktion)

Der Kl. begehrt von der Bekl. Bezahlung und Schmerzensgeld für Zwangsarbeit, die er nach seinen Angaben bei der Rechtsvorgängerin der Bekl. in den Jahren 1942 bis 1945 leisten mußte. Die Bekl. hält die Klage wegen möglicher anderweitiger Rechtszuständigkeit und fehlendem Justizbarkeit für unzulässig und beruft sich im übrigen u. a. auf Verjährung. Der 1925 in L. in der Woiwodschaft Posen geborene Kl. ist seit seiner Geburt polnischer Staatsangehöriger. Im Frühjahr 1942 wurde er dort zum Schlosser ausgebildet. Die Rechtsvorgängerin der Bekl. war damals als Konstruktionsbüro mit angeschlossenem Prototypenbau tätig und zwar zumindest im Bereich Fahrzeug- und Sonderfahrzeugbau. Sie beschäftigte bis Kriegsende zahlreiche verschiedener Nationen. Jedenfalls ein Teil der deutschen Firmen forderte während des Zweiten Weltkriegs aktiv und eigenmäßig, weil gewinnsteigernd ausländische Arbeitskräfte an, die hierzu zwangsweise ins Reich verbracht wurden. Parallel zu den gegenwärtigen Verhandlungen über die "Stiftungsinitiative: Erinnerung, Verantwortung, Zukunft" wurden in den USA von ehemaligen Zwangsarbeitern Sammelklagen gegen verschiedene deutsche Unternehmen anhängig gemacht.

Der Kl. trägt vor, er habe 1942 aufgrund eines polizeilichen Befehls auf dem Arbeitsamt in seinem benachbarten B melden müssen, wo er sofort arrestiert und zu einem Sammeltransport geführt worden sei. Mit der Bahn sei er nach Stuttgart transportiert worden. Dort habe er von Stellen des Deutschen Reichs gegen seinen Willen festgehalten – vom 21. 3. 1942 bis 30. 4. 1945 bei der Bekl. im Werk D zu arbeiten gehabt. Er habe Autoreparaturen und Umrüstungen an Schnee- und Schwimm-

* Dazu oben *Oberhammer/Reinisch*, Zwangsarbeiter vor deutschen Gerichten, IPRax 2001, 211 (in diesem Heft).

Case 3:09-cv-00241-NN-BGS   Document 35-10-18   Filed 02/26/16   Page 58 of 152   PageID 2456

wagen durchführen müssen, sei im Bereich des Baus von Flugzeugrümpfen und Tragflächen eingesetzt gewesen und nach Gehäuse für Hochleistungsmotoren gebaut.

Obwohl seine Arbeitszeit 12 Stunden pro Tag bei sieben Tagen in der Woche betragen habe, habe er bei der Bekl. keinerlei Vergütung oder Entgelt erhalten. Es sei in einem von der Bekl. geführten und verwalteten Barackenlager untergebracht worden, das mit primitiven Betten mit Säcken aus Stroh oder Heu ausgestattet gewesen sei. Die Ernährung sei sehr schlecht gewesen. Sein Einsatz beruhe auf einer Anforderung ausländischer Arbeitskräfte durch die in der fraglichen Zeit tätigen Organe der Bekl. oder deren Mitarbeiter. Insgesamt habe die Rechtsvorgängerin der Bekl. bis zu fünfzig Zwangsarbeiter beschäftigt. Außerdem habe – wie der Bevollmächtigte des Kl. in der mündlichen Verhandlung unter Berufung auf einen Artikel in der S Zeitung vom 12. 10. 1999 vortrug – R zusammen mit seinem Sohn noch im März 1944 bei Himmler vorgesprochen und persönlich um KZ-Häftlinge für die Untertage-Rüstungsproduktion nachgesucht. Bei einem (unstreitig) damals üblichen Stundenlohn von 1,25 Reichsmark errechnet der Kl. unter Berücksichtigung von Zuschlägen einen ihm zustehenden Verdienst von 19.472,48 Reichsmark. Dieser sei durch die Schadensersatzansprüche nicht der Abwertung durch die Währungsreform von 1948 unterfallen und deshalb im Verhältnis 1:1 in Deutsche Mark umzustellen. Den Geldwertverlust in Anbetracht des langen Zeitraums bis heute auszugleichen, sei der Betrag mit dem Faktor 4,545454 zu multiplizieren, was eine Forderung von 88.511,26 Deutsche Mark ergebe. Wegen der weiteren Einzelheiten der Berechnung wird auf Seite 6 fortfolgende der Klageschrift verwiesen. Er sei weiter der Auffassung, daß ihm daneben noch Schmerzensgeld in Höhe von mindestens 10.000 Deutsche Mark zustehe. Der Kl. beantragt: Die Bekl. wird verurteilt, an den Kl. 88.511,26 Deutsche Mark sowie ein angemessenes Schmerzensgeld, mindestens aber 10.000 Deutsche Mark, nebst 4 % Zinsen aus 98.511,26 Deutschen Mark seit Rechtshängigkeit zu bezahlen. Der Bekl. beantragt: Die Klage wird abgewiesen.

Die Bekl. bestreitet die tatsächlichen Angaben des Kl. im wesentlichen mit Nichtwissen. Ihre Unterlagen seien (unstreitig) durch den Bombenangriff vom 19./20. 10. 1944 sowie Beschlagnahmen und Plünderungen direkt nach der Besetzung Stuttgarts vernichtet worden. Ihre damaligen Mitarbeiter seien verstorben. Auch anderweitige ergiebige Aussagen lägen ihr nicht vor. Die damaligen Arbeitszeiten hätten allerdings – einschließlich Pausen – von Montag bis Freitag zehn Stunden und samstags sechs Stunden betragen. Ihre Rechtsvorgängerin sei im Rahmen der Gleichschaltung der deutschen Wirtschaft von Akten der hoheitlichen Gewalt des nationalsozialistischen Staates in Form von Befehlen und Planungen abhängig gewesen. Die Einflußnahme des Staates sei bei ihr als einem in der Rüstungsproduktion tätigen Unternehmen beherrschend gewesen. Die Bekl. sei lediglich als Zuweisungsempfängerin tätig geworden, habe selbst keine Anstaltsgewalt ausüben können und statt eines Lohns nur die staatlich verordnete Alimentation erbringen können. Jedenfalls lasse es sich aber nicht ausschließen, daß sie erheblichem Druck ausgesetzt gewesen sei, ausländische Arbeitskräfte anzufordern. Im übrigen liege ein unverschuldeter Irrtum der Mitarbeiter ihrer Rechtsvorgängerin über die Rechtmäßigkeit des Handelns vor. Wegen des weiteren Vorbringens im Hinblick auf tatsächlichen Vortrag wird auf die bis zur mündlichen Verhandlung eingegangenen Schriftsätze verwiesen. Für die Auffassungen der Parteivertreter zu den Rechtsproblemen im einzelnen wird gleichfalls auch auf die Schriftsätze vom 29. 10. und 17. 11. 1999 Bezug genommen.

*Entscheidungsgründe:*

Die Klage ist zulässig (A). Ihr steht Art. 5 Abs. 2 des Londoner Schuldenabkommens nicht entgegen (B). Sie ist jedoch nicht begründet (C).

A. Der Zulässigkeit der Klage stehen weder eine anderweitige Rechtshängigkeit (I) noch ein Ausschluß des Rechtswegs entgegen (II). Weiter sind die ordentlichen Gerichte zur Entscheidung berufen (III). Der Kl. ist ordnungsgemäß vertreten (IV).

1. Der Klage steht keine von der Beklagtenseite als "möglicherweise beachtlich" bezeichnete anderweitige Rechtshängigkeit entgegen. Das folgt zwar noch nicht daraus, daß der tatsächliche Vortrag der Bekl. hierzu auch nicht ansatzweise substan-

tiiert ist. Dieses Verfahrenshindernis wäre nämlich von Amts wegen zu beachten. Aber zum einen kann eine anderweitige Rechtshängigkeit einer Klage unter ausdrücklicher Beteiligung der Parteien nicht festgestellt werden (1). Und zum anderen wäre bei der von der Bekl. in den Raum gestellten Konstellationen einer Sammelklage die weitere Voraussetzung nicht gegeben, daß ein in diesem anderen Verfahren ergehendes Urteil in Deutschland anerkennungsfähig (*Geimer* in Zöller Zivilprozeßordnung 21. Auflage 1ZPR Randnummer 96) wäre (2).

1. Sofern das Verfahrensrecht des Staates, in dem eine andere Klage unter Beteiligung des Kl. gegen die Bekl. rechtshängig sein soll, für die Rechtshängigkeit eine Zustellung der Klage erfordert, kann die anderweitige Rechtshängigkeit ausgeschlossen werden. Weder behauptet die Bekl., eine solche Zustellung erhalten zu haben, noch erfolgte eine solche im dafür vorgesehenen Rechtshilfeverfahren. Die hierfür zuständige Stelle im Hause hat auf Anfrage erklärt, daß für die Bekl. kein Antrag auf eine solche Klagezustellung einging. Sollte nach dem Verfahrensrecht des betreffenden Staats Rechtshängigkeit schon bei Einreichung der Klage bei Gericht eintreten, was im Rahmen der Prüfung einer anderweitigen Rechtshängigkeit hingenommen wird (BGH NJW 1987, S. 3083 f.), so geht eine Unaufklärbarkeit zu Lasten der Bekl. Verfahrensfragen sind zwar von Amts wegen zu erforschen, sucht sich diese aber nicht endgültig klären lassen, greift die materielle Beweislast. Bei negativem Prozeßvoraussetzungen trifft dies die Bekl., weil sie sich vorliegend auf ein Verfahrenshindernis beruft (*Thomas/Putzo* Zivilprozeßordnung 20. Auflage vor § 253 Randnummer 13). Eine Aussetzung des Rechtsstreits bis zur Klärung kommt vorliegend nicht in Betracht. Die vorliegende Klage ist nunmehr seit sechs Monaten anhängig. Es kann davon ausgegangen werden, daß der Bekl. eine andere und vor allem frühere Rechtshängigkeit inzwischen bekannt geworden wäre.

2. Ein von der Bekl. befürchtetes Urteil in einer Sammelklage ohne aktive Beteiligung des Kl., bei der ihr unter Umständen die Klage noch nicht einmal zugestellt werden müßte, wäre zudem nicht anerkennungsfähig. So ist bereits nicht ersichtlich, daß Gerichte in den USA bei einer fiktiven Anwendung deutscher Gesetze international zuständig wären (§ 328 Abs. 1 Nr. 1 ZPO – dies gälte im übrigen auch für Einzelklagen. Außerdem widerspräche ein Urteil in einer von der Beklagtenseite erwähnten Sammelklage – jedenfalls soweit es den Kläger ohne dessen aktive Beteiligung an einem solchen Verfahren betrifft – dem ordre public (§ 328 Abs. 1 Nr. 4 ZPO). Sie läßt sich nämlich mit grundlegenden Verfahrensmaximen (*Zöller/Geimer* Zivilprozeßordnung 21. Auflage § 328 Randnummer 155) des deutschen – und im übrigen auch des sonstigen kontinentaleuropäischen – Rechts offensichtlich nicht vereinbaren (*Mark* EuZW 1994 S. 238, 240 f. einer 1a; *Mann* NJW 1994 S. 1187, 1188 f. unter 2.; *Frauendorf* ZRP 1999 S. 1, 5 f.; anderer Ansicht: OLG Frankfurt Entscheidungen der Oberlandesgerichte in Zivilsachen 1992 S. 89, 94 f., das ohne eigene Begründung auf *Stiefel/Stürner* VersR 1987 S. 829 f. verweist, die aber jedenfalls für den konkreten Fall wohl ebenfalls eine Anerkennungsfähigkeit verneinen würden, a. a. O. S. 830). Nach kontinentaleuropäischer Auffassung ist nämlich Rechtsschutz individuell zu gewähren und braucht sich niemand durch Dritte – gegebenenfalls sogar ohne rechtliches Gehör – allein wegen seiner Mitgliedschaft in einer Gruppe ("class") eine ihn bindende Entscheidung aufzwingen zu lassen. Soweit das betreffende Recht – auf Klägerseite – einen Austritt aus der "class" zuläßt, entschärft dies die Problematik nicht. Denn entweder das betroffene Recht stellt lückenlos sicher, daß alle Mitglieder der "class" von dem Prozeß unter-

richtet werden. Dies verbietet im vorliegenden Fall aber eine Sammelklage, da nicht ersichtlich ist, wie die in alle Welt verstreuten betroffenen Zwangsarbeiter – wie dann wenn das Verfahren auf der Passivseite nur der Bekl. mit einer unstreitig überschaubaren Zahl von Zwangsarbeitern betreffen sollte – zuverlässig erreicht werden sollen. Oder es stellt dies nicht sicher, dann besteht aber die Möglichkeit zum Austritt nicht, womit ein Verstoß gegen den oben beschriebenen ordre public vorliegt. Denn selbst bei prominenteren Fällen berichten die öffentlichen Medien nur selektiv. Dies wird letztlich durch das Verhalten der Bekl. bestätigt, die noch nicht einmal als ein auch in den USA namhaftes Unternehmen mit weitaus besseren Informationsquellen als der Kl. zu wissen scheint, ob sie von einer Sammelklage betroffen ist. Sollte der Beklagtenvortrag dagegen dahingehend zu verstehen sein, daß sie die Rechtsauffassung vertritt, aus einem Urteil in einer abstrakten Sammelklage gegen "die deutsche Wirtschaft" ohne ihre vorherige Einbeziehung und ohne Zustellung einer Klage an sie verpflichtet zu sein (dem stehen die beiden auf S. 12 f. des Schriftsatzes vom 4. 10. 1999 genannten Verfahren aber entgegen), so bestehen schon nachhaltige Zweifel, ob dies nach dem US-Zivilprozeßrecht der USA (Bundesrecht oder Recht der Einzelstaaten) der Fall ist. Daß eine solche Vorgehensweise gegen den ordre public verstieße, versteht sich aber von selbst.

II. Es liegt kein Ausschluß des Rechtsweges ("nicht justiziabel") vor.

1. Dies gilt zunächst für zivilrechtliche Anspruchsgrundlagen.

a. Auf die zivilrechtlichen Anspruchsgrundlagen, insbesondere §§ 823 ff. BGB, hätte die behauptete fehlende Justiziabilität von Reparationsansprüchen keinen Einfluß. Sie sind nämlich vom Völkerrecht und den dortigen Reparations- und sonstigen Ansprüchen unabhängig und werden nicht "absorbiert" (BVerfG Beschluß vom 13. 5. 1996 NJW 1996 S. 2717, 2719 rechte Spalte 2. Absatz). Dasselbe gilt für das Verhältnis der Haager Landkriegsordnung (RGBl. 1910 S. 107 ff.) zum Bürgerlichen Gesetzbuch.

aa. Auch wenn die Kammer an die oben genannte Entscheidung des BVerfG nach nach § 31 des Gesetzes über das BVerfG gebunden ist, folgt sie den dortigen überzeugenden Ausführungen, die die Beklagtenseite im wesentlichen (vergleiche hierzu noch bb.) ohne neue Argumente unter Berufung auf ebenfalls nicht näher begründete Auffassungen der Bundesregierung und frühere sowie spätere angeblich in ihrem Sinn ergangene Entscheidungen der Fachgerichte bekämpft. Letzteres erfolgt schon deshalb zu Unrecht, weil in sämtlichen drei Entscheidungen, die zeitlich nach der Entscheidung des BVerfG ergingen und auf die sich die Beklagtenseite beruft, die Zulässigkeit der Klage bejaht wurde (OLG Köln, Urteil vom 27. 8. 1998 – 7 U 167/97 ausdrücklich auf S. 9 Blatt 296 der Akten; Urteil vom 3. 12. 1998 – 7 U 222/97 WM 1999 S. 242, 244 durch Bejahung der tatbestandlichen Voraussetzungen des § 839 BGB; OVG Münster NJW 1998 S. 2302, 2304 rechte Spalte sowie 2305 durch Einstieg in die materielle Prüfung des Abkommens über die Behandlung von Kriegsgefangenen sowie der behaupteten vertraglichen Vereinbarungen des Erblassers mit der Beklagten). Aus dem oben genannten Urteil des OLG Köln vom 3. 12. 1998 kann die Beklagtenseite im übrigen noch nicht einmal aus der Begründetheitsprüfung etwas für sich herleiten, nachdem die Verneinung der Ansprüche der Kl. allein auf das ebenfalls innerstaatliche Bundesentschädigungsgesetz gestützt wird. Im übrigen war es ebenfalls entgegen den früheren Behauptungen der Beklagtenseite selbst zu Zeiten, als die Frage des Parallellaufens

der Ansprüche noch offen war, als selbstverständlich angesehen worden, daß die Gerichtsbarkeit eröffnet war. Es stellte sich allenfalls die Frage, ob das Londoner Schuldenabkommen sie (ausnahmsweise) ausschließt, was aber vom BGH verneint wurde (MDR 1963 S. 492, 493 l. Absatz am Ende, weswegen – siehe noch unten B – die Zivilgerichte die Klagen als zur Zeit unbegründet abweisen). Dies wird von der Beklagtenseite neuerdings (Schriftsatz vom 17. 11. 1999, Seite 8 ff.) wohl auch so gesehen.

bb. Die einzigen nicht bereits vom BVerfG ausdrücklich abgehandelten Argumente rechtfertigen keine andere Beurteilung.

(1) Soweit die Beklagtenvertreter sich darauf berufen, daß das Zivilrecht nicht geeignet sei, einen Ausgleich für Kriegsschäden in Form von Millionen von Klagen zu leisten, lag dies schon der Auffassung *France de la Croix* (NJW 1960 S. 2268 ff.) zur Exklusivität zugrunde, die das BVerfG in seiner Entscheidung zitiert und es nicht zu überzeugen vermochte. Dasselbe gilt für die Kammer. Denn zum einen werden Ansprüche üblicherweise ohne Zuhilfenahme von Gerichten erfüllt und zum anderen bleibt es dem einzelnen Staat unbenommen, ob er solche – nach Ansicht der Beklagtenvertreter unpraktikablen – Millionen von Ansprüchen gewähren will. Das Völkerrecht hat nicht die Aufgabe, die einzelnen Staaten zu bevormunden. Ob das nationale Recht bestimmten solche Ansprüche gewährt, ist dann im übrigen eine Frage der Begründetheit.

(2) Weiterhin wollen die Beklagtenvertreter die fehlende Justiziabilität zu Unrecht auf das Londoner Schuldenabkommen vom 27. 2. 1953 stützen. Eine Entscheidung über das Bestehen oder Nichtbestehen von Ansprüchen beziehungsweise ihre Struktur war mit ihm nicht beabsichtigt. Es legt lediglich fest, wie mit vorhandenen Schulden vorläufig verfahren wird, ohne an ihnen etwas zu verändern (so auch OLG Köln, Urteil vom 3. 12. 1998 a. a. O. S. 250). Deshalb kann die Erwähnung der Reparationen in Art. 5 Abs. 2 des Abkommens entgegen der Auffassung der Beklagtenvertreter nicht dazu herangezogen werden, den Begriff der Reparationen im innerstaatlichen Recht festzulegen, zumal – unabhängig davon, ob eine Festlegung Wirkungen über das Abkommen hinaus haben sollte – der mit "Begriffsbestimmungen" betitelte Artikel 3 des Abkommens gerade keine Definition der Reparationen enthält. Aus früheren Entscheidungen der Fachgerichte, die aufgrund von Klagen anderer Zwangsarbeiter zu seinem Art. 5 Abs. 2 ergingen, läßt sich für die vorliegende Frage ebenfalls nichts herleiten. Zwar der BGH hatte nämlich bereits in seinem Urteil vom 26. 2. 1963 (MDR 1963 S. 492, 493) die Klagesperre des Art. 5 Abs. 2 des Londoner Schuldenabkommens nach Sinn und Zweck auf zivilrechtliche Ansprüche angewandt und die Frage der "Exklusivität der völkerrechtlichen Reparationsansprüche", das "schlechthin zivilrechtliche Individualansprüche . . . von vornherein" ausschlösse, ohnehin offengelassen.

cc. Die Anspruchsparallelität besteht nicht nur zwischen Spezialgesetzen wie dem Bundesentschädigungsgesetz oder – wie die Beklagtenseite neuerdings meint – erst nach dem Abschluß des 2 + 4-Vertrags neu zu erlassenden Gesetzen und völkerrechtlichen Reparationsansprüchen. Vielmehr führt das BVerfG in der Entscheidung in klarer logischer Schlußfolgerung selbst ausdrücklich aus, daß dies erst recht für Vorschriften gilt, die in keinem spezifischen Zusammenhang mit der Regelung von Kriegsfolgen (BVerfG a. a. O. S. 2719 rechte Spalte 2. Absatz) oder der nationalsozialistischen Zwangsherrschaft stehen. Der Vortrag der Beklagtenvertreter auf Seite 5 des Schriftsatzes vom 17. 11. 1999, daß dies alles "gerade" im "Zusammenhang mit NS-Zwangsarbeit" nicht gelte, ignoriert

im übrigen geflissentlich, daß die Entscheidung des BVerfG ebenfalls in einer Zwangsarbeitersache erging.

dd. Wollte man dies mit den Beklagtenvertretern dennoch generell anders sehen, würde sich im konkreten Fall wohl trotzdem nichts ändern. Es spricht nämlich viel dafür, an dieser Stelle zugunsten des Kl. von einem rein innerstaatlichen Vorgang auszugehen. Die Zwangsverpflichtung des Kl. wurde vom Deutschen Reich nämlich als rein deutsche Angelegenheit behandelt, woran sich Deutschland auch seinen Gebietsansässen festhalten lassen muß (ähnliche Ansätze finden sich – allerdings beschränkt auf den Staat als Anspruchsgegner und das anwendbare Recht – in der Entscheidung des BVerfG a. a. O. S. 2717 rechte Spalte unten). Soweit sich dies aufgrund der spärlichen Angaben der Parteien beurteilen läßt, beruhte die behauptete Zwangsarbeit des Kl. auf der Verordnung zur Sicherstellung des Kräftebedarfs für Aufgaben von besonderer staatspolitischer Bedeutung (RGBl. 1939 Teil I S. 206 f. mit der Ersten Durchführungsverordnung S. 403 ff., die auch den Vordruck zur Anforderung der Arbeitskräfte enthält, S. 407 f.). Sie war noch in Friedenszeiten im Reichsgebiet eingeführt worden und entspricht an sich in zahlreichen Punkten dem heute in Deutschland geltenden Arbeitssicherstellungsgesetz (BGBl. 1968 Teil I S. 787 ff.). Auf den Kl. wurde sie nur deswegen angewandt, weil die Verordnung ab 1. 9. 1940 im Wohngebiet des Kl. eingeführt worden war (Verordnung über den Arbeitseinsatz in den eingegliederten Ostgebieten RGBl. 1940 Teil I S. 1129). Dieses war nämlich zwar völkerrechtswidrig, da auf einem Verstoß gegen das Verbot des Angriffskriegs im Briand-Kellogg-Pakt (RGBl. 1929 Teil 2 S. 97 ff.) beruhend, aber durch die anfängliche militärische Überlegenheit Deutschlands faktisch wirksam als Teil des „Reichsgaus Posen" (§ 1 Abs. 1 des Führererlasses vom 8. 10. 1939, RGBl. 1939 Teil 1 S. 2042 f.) vom Deutschen Reich annektiert worden. Ohne diese Annektion hätte die Verpflichtung des Kl. nämlich schon offenkundig einen Verstoß gegen § 1 Abs. 2 der Verordnung in Verbindung mit Art. 52 der Haager Landkriegsordnung (RGBl. 1910 S. 107 ff.) dargestellt, die hierzu wegen des Verweises in § 1 Abs. 2 der Verordnung zur Staatsverträge und anerkannte Regeln des Völkerrechts auch nicht transformiert werden brauchte. Dabei kommt es nicht darauf an, ob – was in den hier zugänglichen Werken nicht festgestellt werden kann – die Haager Landkriegsordnung trotz Ratifizierung durch sämtliche Staaten, deren Staatsgebiet Teile des später wiedererstandenen Polens umfaßten, für Polen nach seiner Unabhängigkeit nicht mehr gegolten haben sollte, denn die entsprechenden Normen waren jedenfalls bis zum Zweiten Weltkrieg Völkergewohnheitsrecht geworden. Die Schlechterbehandlung des Kl. gegenüber Deutschen, die wie er zwangsweise verpflichtet wurden, beruht ebenfalls auf einer vom Reich als innerstaatliche Angelegenheit angesehenen „Anordnung über die arbeitsrechtliche Behandlung der polnischen Beschäftigten" vom 5. 10. 1941 (Reichsarbeitsblatt 1941 Teil 1 S. 448 ff.). Die von den Parteivertretern angesprochene Verordnung über die Einsatzbedingungen der Ostarbeiter (RGBl. 1942 Teil 1 S. 419 ff.), die eindeutig einen grenzüberschreitenden Bezug hatte, galt demgegenüber nicht für den Kl., sondern nur für Arbeitskräfte aus Gebieten östlich des „Generalgouvernement", also praktisch östlich der heutigen Ostgrenze Polens (§ 1 der Verordnung).

b. Wenn sich die Beklagtenseite weiter darauf beruft, daß durch den Krieg das geltende Recht suspendiert worden sei (und damit nichts parallellaufen könne), hat sie auch damit keinen Erfolg. Abgesehen davon, daß dies wohl eher eine Frage des materiellen Rechts sein dürfte, galten die hier einschlägigen Teile des Bürgerlichen Gesetzbuches uneingeschränkt fort.

Soweit völkerrechtliche Vorschriften eine Rolle spielen, so stellt der Krieg – wie die Klägervertreter zu Recht anführen – keinen völlig rechtlosen Raum dar, es wird lediglich teilweise – ein ius in bello eingeführt. Wer sich an diesen nicht hält, der hat die Folgen zu tragen, wobei es – unabhängig von einer Verpflichtung aus dem Völkerrecht – im allgemeinen im eigenen Interesse des betroffenen Staats liegen dürfte, innerstaatliche Sanktionsmaßnahmen vorzusehen, um einer ausufernden eigenen (völkerrechtlichen) Inanspruchnahme für ein Fehlverhalten seiner Angehörigen von vornherein einen Riegel vorzuschieben. Daß er nicht in gleicher Weise ein Interesse für Ansprüche gegen sich selbst hat, liegt dabei auf der Hand.

Dementsprechend sind die bereits oben unter a. aa. diskutierten Urteile des OLG Köln und des OVG Münster entgegen der Auffassung der Beklagtenvertreter im Schriftsatz vom 17. 11. 1999 auf Seite 16 ff. auf Ansprüche zwischen Zivilpersonen auch nicht unbesehen übertragbar. Im übrigen kommt das OLG Köln im Urteil vom 3. 12. 1998 – 7 U 222/97 WM 1999 S. 242, 244 zum Ergebnis, daß die an sich gegebenen Ansprüche aus § 839 BGB am später eingeführten Bundesentschädigungsgesetz scheitern und nicht daran, daß § 839 BGB in Verbindung mit der Haager Landkriegsordnung von 1939 bis 1945 gar nicht oder wenigstens nicht für den dortigen Kläger gegolten hätte. Daß bei Amtshaftungsansprüchen im Rahmen des Einsatzes bewaffneter Kampfverbände außerhalb des eigenen Staatsgebiets etwas anderes gilt (so OLG Köln, Entscheidung vom 27. 8. 1998 – 7 U 167/97 S. 17 f., Blatt 304 f. der Akten), ist im übrigen nachvollziehbar. Unabhängig von der Frage des Anspruchsgegners handelt es sich beim vorliegenden Fall – wenn von der Eroberung des Wohngebiets des Kl. einmal abgesehen wird – im Gegensatz zu den sonstigen Kriegsereignissen nur mittelbar zusammenhängenden Vorgang, für den – siehe schon oben a dd. – das Reich selbst damals kein anderes Recht anzuwenden gedachte als zu Friedenszeiten.

Weiterhin würde es selbst dann nicht an einem parallel laufenden innerstaatlichen Recht fehlen, wenn eine allgemeine Vermutungsregel existieren sollte, daß das nationale Recht des Schädigerstaats sein allgemeines deliktsrechtliches Instrumentarium nicht zugunsten der durch Kriegshandlungen geschädigten Personen fremder Staatsangehörigkeit zur Verfügung stellen will (*Tomuschat* IPRax 1999 S. 237, 239; gälte dies nicht für „collateral damages" im Kosovo?). Denn selbst wenn man dem folgen wollte, so läge hier – selbst bei Annahme von Kriegshandlungen – ein Sachverhalt vor, in dem die Vermutung erschüttert wäre. Wegen der unter a dd. abgehandelten Situation wäre der Kl. damals zwar als Reichsunternan minderer Klasse behandelt worden, aber eben doch als Reichsunternan. Daß bei Anwendung der damaligen „völkischen" Rechtsauffassungen dem Kl. keine Ansprüche zugestanden hätten, ist bei dieser Betrachtung unerheblich, weil diese Rechtsperversion nach allgemeiner Ansicht selbst unter Berücksichtigung intertemporalen Rechts keine Anwendung findet.

c. Schließlich kann das Argument der Gewaltenteilung nicht dazu führen, die Justiziabilität zu verneinen. Die Beklagtenseite führt vergeblich an, daß die Bundesregierung mit ihrer Beteiligung an der „Stiftungsinitiative: Erinnerung, Verantwortung und Zukunft" über die auswärtigen Beziehungen allein zu entscheiden und sich die Justiz jeder Einmischung in die äußeren Angelegenheiten zu enthalten habe, die dieser Lösung vorgreife.

Als Schlagwort besitzt das Prinzip der Gewaltenteilung (Art. 20 Abs. 3 GG) nämlich keine Überzeugungskraft. Das GG hat es an nahezu keiner Stelle (einzige Ausnahme: Art. 97 GG) nach der reinen Lehre im Sinne der scharfen Trennung der Staatsge-

APP 1717

walten verwirklicht, vielmehr besteht sein Zweck darin, daß sich die drei Staatsgewalten gegenseitig kontrollieren und begrenzen (Prinzip der „cheques and balances"). Die hierbei bestehende Grenze, daß keine der betroffenen Gewalten, also hier der Exekutive, der für die Erfüllung ihrer verfassungsmäßigen Aufgaben erforderlichen Zuständigkeiten beraubt werden darf (BVerfGE 9 S. 268, 279 f.), wird durch vorliegend nicht erreicht. Der von Beklagtenseite befürchtete Eingriff in Art. 59 GG als einer der Kompetenznormen genügt dafür nicht. Außerdem steht es der Bundesregierung in Zusammenarbeit mit der ersten Gewalt (cheques and balances, siehe oben) jederzeit offen, durch entsprechende Gesetzesänderungen erneut den Vorrang herzustellen, sei es daß die zivilrechtlichen Ansprüche der Zwangsarbeiter für einen Verhandlungszeitraum erneut auf Eis gelegt werden – wie das durch die innerstaatliche Umsetzung des Londoner Schuldenabkommens bereits einmal der Fall war – oder daß die Ansprüche – soweit dem Völkerrecht, insbesondere zwischenstaatliche Verträge nicht entgegenstehen – enteignet werden, was dann allerdings eine angemessene Entschädigung (Art. 14 Abs. 3 S. 2 und 3 GG) zur Folge haben müßte. Bis zu einer solchen Entscheidung sieht sich das Zivilgericht an der Behandlung der Sache aber nicht gehindert.

2. Soweit sich der Bevollmächtigte des Kl. in der mündlichen Verhandlung auf direkte Ansprüche des Kl. gegen die Bekl. aus Reparationsrecht als Teil des Völkerrechts gestützt hat, ist auch die Frage des Bestehens solcher Ansprüche jedenfalls zwischen Individuen justiziabel. Das Grundgesetz gibt – selbst wenn sich Art. 19 Abs. 4 GG in der Tat auf Eingriffe der öffentlichen Gewalt beschränkt – von einer im Rechtsstaatsprinzip der Art. 20 Abs. 3 GG enthaltenen umfassenden Rechtsschutzgarantie aus (BVerfGE 54 S. 277, 291). Für Reparationen gilt nichts besonderes. Soweit sich die Klägerseite darauf beruft, daß diese nur in völkerrechtlichen Verträgen geschaffen werden, hat dies mit der Frage der Zulässigkeit einer Klage nichts zu tun. Ist eine solche Schaffung erforderlich und kam es ihr zu, so wäre die Klage unschlüssig und damit als unbegründet abzuweisen. Daß Reparationen nicht per se unklagbar sind, entspricht allgemeiner Ansicht und liegt zum Beispiel Art. 3 Abs. 3 des sechsten Teils des Vertrags zur Regelung aus Krieg und Besatzung entstandener Folgen (BGBl. 1954 Teil 2 S. 157, 202 ff.) zugrunde, wonach in der Bundesrepublik Deutschland Klagen nicht zugelassen werden, mit denen die Rückabwicklung von Reparationen begehrt wird. Auch der Einwand einer „political question" greift nicht. Es bestehen zwar mit den Begriffen des „Ermessens" und des „Beurteilungsspielraums" Rechtsfiguren, die in weiten Bereichen der „political question" gleichkommen, wenn auch mit einer engeren Mißbrauchskontrolle, für den vorliegenden Fall greifen sie aber nicht. Ein völkerrechtliches Verbot, Rechtsschutz im Bereich von Reparationen zu gewähren, ist ebenfalls nicht ersichtlich.

III. Die ordentlichen Gerichte und damit das LG Stuttgart als internationaler und nationaler allgemeiner Gerichtsstand (§§ 12, 17 ZPO) für die Bekl. sind zuständig. Soweit die parallellaufenden zivilrechtlichen Ansprüche betroffen sind, liegt weder eine Zuweisung an die Arbeits- (1) noch an die Verwaltungsgerichte (2) vor. Für die behaupteten individuellen Reparationsforderungen aus Völkerrecht besteht Gesamtzuständigkeit (3). Ein Vorabbeschluß war nicht angezeigt (4).

1. Nach der inzwischen weit überwiegenden Auffassung (statt vieler: LG München, Urteil vom 16. 9. 1999 – 6 O 8417/99 S. 4 sowie Arbeitsgericht Nürnberg, Beschluß vom 9. 6. 1999 – 15 Ca 2117/99), der sich die Kammer anschließt, fällt

der Streit zwischen den Parteien nicht in die Zuständigkeit der Arbeitsgerichtsbarkeit.

a. Es fehlt an der hierfür nach § 2 Arbeitsgerichtsgesetz heutiger Fassung erforderlichen Arbeitnehmereigenschaft des Kl. Denn das Beschäftigungsverhältnis war jedenfalls von seiten des Kl. nicht freiwillig und damit nicht privatrechtlich, die Hauptdefinitionsmerkmale für den Arbeitnehmerbegriff nach der herkömmlichen Definition darstellt (zum Beispiel: *Schaub* Arbeitsrechtshandbuch 8. Auflage § 8 II 2 oder *Germelmann/Matthes/Prütting* Arbeitsgerichtsgesetz 2. Aufl. S. 260). Die vom Arbeitsgericht Hannover (Beschluß vom 5. 8. 1999 – 10 Ca 272/99 S. 24) vorgebrachten Argumente sind nicht zwingend. Denn der Gesetzgeber wollte auch mit der bis dahin in Rechtsprechung und Lehre entwickelte Definition zurückgreifen. Wenn der Kl. – wie er behauptet – keinerlei Entgelt erhalten hätte und dies aufgrund der „völkischen" Rechtslage der Fall war, wäre eine Arbeitnehmereigenschaft erst recht zu verneinen.

b. Zwar würde zur Begründung der Zuständigkeit der Arbeitsgerichte ein arbeitnehmerähnliches Verhältnis zwischen den Parteien genügen. Aber auch hierfür ist Freiwilligkeit erforderlich (wie hier: Arbeitsgericht Nürnberg, Beschluß vom 9. 6. 1999 – 15 Ca 2117/99 S. 8).

c. Dasselbe gilt für faktische Arbeitsverhältnisse (Arbeitsgericht Augsburg Beschluß vom 30. 11. 1998 – 6 Ha 5/98; *Schröder* Jura 1994 S. 118 f.).

d. Etwas anderes ergibt sich nicht aus dem Argument a majore ad minus, daß Zwangsarbeiter aufgrund des Zwangs schutzwürdiger seien und deswegen erst recht geschützt werden müßten. Dieser Gedanke steht wohl hinter der Argumentation des Arbeitsgerichts Hannover in dem obengenannten Beschluß.

Denn die Abgrenzung zwischen Arbeitsgerichten und ordentlichen Zivilgerichten beruht zwar auf der größeren Sachnähe der Arbeitsgerichte, führt aber materiell-rechtlich nicht zur Anwendung anderer Vorschriften. Soweit Rechtsstreite vor den Arbeitsgerichten anderen Kostenregelungen folgen, ist dies kein ausschlaggebendes Argument, da zum einen im Bedürfnisfall Prozeßkostenhilfe in Anspruch genommen werden kann und zum anderen in Fall des Obsiegens die Kostenregelung für die erste Instanz für den Arbeitnehmer nachteilig ist. Die Möglichkeit des Auftretens von Verbandsvertretern als kostengünstigere Alternative zu Rechtsanwälten spielt in den Fällen der vorliegenden Art eine untergeordnete Rolle, weil nicht typische Fragen eines Arbeitsverhältnisses Streitgegenstand sind (im Ergebnis ebenfalls ablehnend: *Schröder* a. a. O.).

e. Die Ansätze *Arndts* (Süddeutsche Juristenzeitung 1947 S. 517 f.) und des Arbeitsgerichts Hannover (a. a. O. S. 14 ff.) vermögen jedenfalls für den Fall der Zwangsarbeiter, die vom Kl. aufgrund Dienstpflicht zur Arbeit gezwungen wurden, nicht zu überzeugen. Was zunächst *Arndt* anbelangt, so ist zwar seinem Ausgangspunkt zuzustimmen, daß die Ersetzung des normalen Arbeitsverhältnisses durch SS-Befehle sittenwidrig war; die Verneinung des Arbeitsverhältnisses und damit des Rechtswegs zu den Arbeitsgerichten beruht aber auf der faktischen Folge, daß das anschließende Verhältnis zwischen den dortigen Parteien eben nicht mehr von Freiwilligkeit und Gleichordnung gekennzeichnet war. Und im Falle der Entscheidung des Arbeitsgerichts Hannover handelte es sich um Häftlinge aus einem Konzentrationslager, für die wenigstens insoweit ein vertragliches Element vorhanden war, als die SS und die dortige Bekl. einen privatrechtlichen Arbeitsverschaffungsvertrag geschlossen hatten.

f. Schließlich kann eine Zuständigkeit auch nicht daraus hergeleitet werden, daß im Recht der Bundesrepublik Deutschland

**APP 1718**

bei dem der Verordnung zur Sicherstellung des Kräftebedarfs für Aufgaben von besonderer staatspolitischer Bedeutung vom 13. 2. 1939 (RGBl. 1939 Teil I S. 206 f.) ähnlichen Arbeitssicherstellungsgesetz (BGBl. 1968 Teil I S. 787 ff.) allgemein davon ausgegangen wird, daß zwar der Verpflichtungsakt des Arbeitsamts öffentlich-rechtlicher Natur ist, aber das damit begründete Dienstverhältnis als normales Arbeitsverhältnis behandelt wird (*Scholz* in Maunz/Dürig Kommentar zum GG, Stand Februar 1999, Artikel 12 a Randnummer 165; *von Münch/König* GG 4. Auflage Art. 12 a Randnummer 16; *Schmidt-Bleibtreu/Klein* Kommentar zum GG 8. Aufl. Art. 12 a Randnummer 7, anderer Ansicht: Bonner Kommentar zum GG, Stand April 1999, Art. 12 a Randnummer 181, Arbeitsgericht Hannover a. a. O. S. 24 f.). Dies beruht nämlich auf einer ausdrücklichen verfassungsrechtlichen Vorgabe in Art. 12 a Abs. 2 GG.

2. Eine Zuständigkeit der Verwaltungsgerichte ergibt sich nicht daraus, daß die Beklagtenseite im Zusammenhang mit der Frage der Passivlegitimation von der Ausübung öffentlicher Gewalt im Über-/Unterordnungsverhältnis ausgeht, wegen das tatsächliche Geschehen dem Reich zuzurechnen sei. Soweit die Bekl. im Bereich der Haftung aus unerlaubter Handlung auf das Reich als passivlegitimiert verweist, weil ihre Rechtsvorgängerin beliehene Unternehmerin gewesen sei (Art. 131 Abs. 1 S. 1 Weimarer Reichsverfassung), handelt es sich (abgesehen davon, daß die Zivilgerichte für Sonderzuweisung in Art. 34 S. 3 GG wie schon damals in Art. 131 Abs. 1 S. 3 Weimarer Reichsverfassung ohnehin zuständig sind) nicht um eine Frage der Zulässigkeit, sondern eine solche der Begründetheit. Für andere als Staatshaftungsansprüche sprächen gegen die Bekl. sind die ordentlichen Gerichte allein schon deswegen zuständig, weil unabhängig von der genauen Subsumtion des klägerischen Tatsachenvortrags (*Zöller/Gummer* Kommentar zur Zivilprozeßordnung 21. Aufl. § 13 GVG Randnummer 11) unter bestimmte Anspruchsgrundlagen jedenfalls gegen die Bekl. selbst sowohl nach der Subjektions- als auch nach der Sonderrechtstheorie (*Kissel* GVG 2. Aufl. § 3 Randnummer 88) nur zivilrechtliche Rechtsbeziehungen und Rechtsfolgen in Betracht kommen, ohne daß offensichtlich keine Anspruchsgrundlage gegeben wäre (ähnlich für Häftlinge aus Konzentrationslagern bereits OLG Stuttgart Rechtsprechung zum Wiedergutmachungsrecht 1964 S. 425; für Ostarbeiter: Arbeitsgericht Nürnberg, Beschluß vom 9. 6. 1999 – Ca 2117/99 S. 8 unter 2 a; soweit das Arbeitsgericht Berlin, Urteil vom 4. 8. 1950 – 10 Arb. 1645/49, Blatt 174 ff. der Akten, auf S. 3 von einem „Staatsakt" spricht, dürfte damit nicht das Verhältnis zwischen der die Klägerin beschäftigenden Beklagten und der Klägerin gemeint sein, sondern die Festnahme und Unterbringung im Konzentrationslager und Zuweisung an die Beklagte durch den Staat). Etwas anderes folgt schließlich entgegen der Ansicht der Beklagtenvertreter nicht daraus, daß – weil die Arbeitsgerichte mangels Freiwilligkeit des Verhältnisses zwischen den Parteien nicht zuständig sind – die Zivilgerichte erst recht nicht zuständig sein sollen. Eine Vielzahl der Anspruchsgrundlagen des Bürgerlichen Gesetzbuches, über die die Zivilgerichte entscheiden, beruht auf unfreiwilligen Verpflichtungen (Geschäftsführung ohne Auftrag, Eigentümer-Besitzer-Verhältnis, Deliktsrecht, Bereicherungsrecht, Unterhaltsansprüche, Pflichtteilsansprüche et cetera).

3. Die Zuständigkeit des LG ist auch insoweit gegeben, als der Bevollmächtigte des Kl. individuelle Reparationsansprüche des Kl. gegen die Bekl. aus Völkerrecht behauptet. Ohne daß entschieden werden müßte, welche Gerichte hierfür primär zuständig sind, folgt die Zuständigkeit im konkreten Fall aus § 17 Abs. 2 S. 1 GVG, denn das angerufene Gericht hat über den

Rechtsstreit unter allen in Betracht kommenden rechtlichen Gesichtspunkten zu entscheiden.

4. Eine Vorabentscheidung, um die Zuständigkeitsfrage durch die Instanzen prüfen zu lassen (§ 17 a Abs. 3 und 4 GVG), war nicht angezeigt. Keine der Parteien hat die Zulässigkeit des Rechtswegs im Sinne der Zuständigkeit eines anderen Gerichtszweigs gerügt (nur so kann Abs. 3 § 17 a GVG im Hinblick auf den Vorhergehenden Absatz 2 verstanden werden). Die Bekl. wendet sich mit ihrer Argumentation vielmehr gegen die Behandlung der Frage durch sämtliche Gerichte. Soweit der Vorabbeschluß im Ermessen des Gerichts steht, erschien er nicht geboten. Zwar ist die Abgrenzung zur Arbeitsgerichtsbarkeit in anderen Prozessen streitig, eine Vorabentscheidung nach § 17 a Abs. 3 S. 1 GVG macht aber keinen Sinn, wenn keine der Parteien dieses Rechtsstreits eine andere Zuständigkeit vertritt und damit der Instanzenweg nicht beschritten würde.

IV. Die Zulässigkeit der Klage scheitert schließlich auch nicht daran, daß der Kl. nicht ordnungsgemäß vertreten wäre. Die Vollmachtskette vom Kl. über seinen Bevollmächtigten zur Prozeßbevollmächtigten ist nachgewiesen (Blatt 340 f. der Akten), zwischen dem Kl. und dem Bevollmächtigten inzwischen sogar öffentlich beglaubigt (Blatt 390 der Akten). Damit steht der Kl. so, wie wenn die beglaubigte Bevollmächtigung von Anfang an vorgelegen hätte (*Stein/Jonas* Zivilprozeßordnung § 89 Randnummer 12).

B. Das Londoner Schuldenabkommen steht der Geltendmachung der Ansprüche jedenfalls nicht mehr entgegen, weswegen es nicht darauf ankommt, ob es sich hierbei um eine Frage der Zulässigkeit (so die Verwaltungsrechtsprechung, zum Beispiel BVerwGE 35 S. 262, 264) oder der Begründetheit (so die Zivilrechtsprechung, zum Beispiel BGH VersR 1964 S. 637, 638 oder NJW 1973 S. 1549, 1552 unter 3.) handelt.

1. Sollte der anfängliche Beklagtenvortrag dahingehend zu verstehen sein, daß ihre Prozeßbevollmächtigten der Auffassung sind, daß die Klagesperre bis zur Aufhebung des Umsetzungsgesetzes (BGBl. 1953 Teil 2 S. 331) fortgelte, so kann dem nicht gefolgt werden. Das mit ihm ins deutsche nationale Recht umgesetzte Londoner Schuldenabkommen enthält seine zeitliche Begrenzung nämlich selbst. Denn Art. 5 Abs. 2 verbietet die Prüfung nicht auf alle Zeiten, sondern stellt sie nur bis zur endgültigen Regelung der Reparationsfrage zurück. Zu dieser Auffassung scheinen die Beklagtenvertreter nunmehr auch gelangt zu sein (Schriftsatz vom 17. 11. 1999 S. 17).

II. Eine andere, ebenfalls zu bejahende Frage ist, ob eine solche endgültige Regelung der Reparationsfrage im Sinne des Londoner Schuldenabkommens getroffen ist. Insoweit kann weitgehend auf die zutreffenden Ausführungen des LG Bonn in Urteil vom 5. 11. 1997 – 1 O 134/92 (S. 2 ff. der Urteilsgründe), des LG Bremens in Urteil vom 2. 6. 1998 – 1 O 2889/90 (S. 11 f. der Urteilsgründe) und des OVG Münster NJW 1998 S. 2302, 2303 verwiesen werden. Demnach erfolgen Regelungen über Reparationen regelmäßig in einem Friedensvertrag und als ein solcher muß der 2 + 4-Vertrag angesehen werden. Dem steht – entgegen der Auffassung des Bevollmächtigten des Kl. – nicht entgegen, daß unter anderen das Heimatland des Kl. nicht Signatarstaat des 2 + 4-Vertrags war. Denn gerade Polen war – obwohl nicht Mitglied der „vier" Siegermächte – insoweit in diesen Vertrag einbezogen, als die Grenzregelung zwischen Deutschland und Polen in den 2 + 4-Vertrag eingebunden worden war (Art. 1 Abs. 2 sowie zur historischen Entwicklung: Stern in „Einführung zum 2 + 4-Vertrag", Band 3 der Reihe „Verträge und Rechtsakte der Deutschen Einheit", Beck-Verlag 1991, S. 32–34). Und in der Präambel des hierzu

**APP 1719**

Case 3:02-cv-00941-NN-BGS   Document 351-18   Filed 02/20/15   Page 63 of 152   PageID 2451711

geschlossenen Vertrags zwischen Deutschland und Polen (BGBl. 1991 Teil 2 S. 1329 ff.) wurde auf den 2 + 4-Vertrag Bezug genommen, woraus zu schließen ist, daß auch Polen keine eigenstaatlichen friedensvertraglichen Regelungen mehr anstrebt (vergleiche OVG Münster a. a. O. S. 2303). Im übrigen war aus der Stellung der vier Besatzungsmächte in Nachkriegsdeutschland allgemein anerkannt, daß diese die Interessen der übrigen Staaten bei allen weiteren Verhandlungen mit Deutschland vertraten. Dies begann bereits mit der in der Gesamtkapitulation enthaltenen Waffenstillstandsvereinbarung im Mai 1945, die auch von solchen Staaten respektiert wurde, die ihre Streitkräfte nicht den beteiligten alliierten Oberkommandos unterstellt hatten und die daher bei der Unterzeichnung nicht vertreten waren. Es setzte sich über die Nachkriegskonferenzen wie zum Beispiel die Potsdamer Konferenz fort, an der insbesondere Polen zwar nicht direkt beteiligt war, in denen aber über die Befriedigung polnischer Reparationsforderungen (aus dem sowjetischen Anteil) oder die „Ausweisung der Deutschen" aus unter anderem der polnischen Verwaltung unterstellten Gebieten mitentschieden wurde.

III. Schließlich haben sich die Argumente an dieser Stelle ohnehin gegenseitig auf, weil Polen am Londoner Schuldenabkommen ebenfalls nicht beteiligt war. Wer demnach die Ansicht vertritt, daß Polen deshalb nicht gebunden war, für den kommt es auf den actus contrarius nicht mehr an.

C. Die Klage ist jedoch nicht begründet.

Zivilrechtliche Ansprüche sind verjährt (I). Im Völkerrecht wurzelnde individuelle Ansprüche auf Reparationen bestehen nicht (II).

I. Nachdem sich die Bekl. – nicht justiziabel – dafür entschieden hat, die Einrede der Verjährung zu erheben und diese durchdringt, kommt es nicht mehr darauf an, daß die Klage im übrigen zumindest dem Grunde nach schlüssig ist.

1. Soweit vertragliche oder quasi-vertragliche Ansprüche sowie solche aus Geschäftsführung ohne Auftrag (*Schröder* Jura 1994 S. 118, 119 ff.) oder Bereicherungsrecht in Betracht kommen, ist bei Anwendung deutschen materiellen Rechts die hierfür geltende zweijährige Verjährungsfrist nach § 196 f. BGB direkt beziehungsweise analog abgelaufen (BGHZ 48 S. 125, 127; BAG NJW 1966 S. 268, 269; 13. Zivilkammer des erkennenden Gerichts Beschluß vom 26. 8. 1999 – 13 O 98/99 S. 4 ff. mit weiteren Nachweisen; anderer Ansicht: *Schröder* a. a. O. S. 125 ohne nähere Begründung). Ohne daß auf die Frage einer Verjährung vor Inkrafttreten des Londoner Schuldenabkommens eingegangen werden müßte und ohne daß es darauf ankäme, ob die Hemmung bereits vor Veröffentlichung der Entscheidung des BVerfG vom 13. 5. 1996 am 2. 7. 1996 beendet war, lief die Verjährungsfrist jedenfalls ab diesem Tag (gegebenenfalls später) und endete somit spätestens am 2. 7. 1998 und damit rund zehn Monate vor Einreichung der Klage. Ob bei Anwendung des deutschen Internationalen Privatrechts der Jahre 1942 bis 1945 die Annektion des Wohngebiets des Kl. in Verbindung mit der aus der fehlenden Verleihung der deutschen Staatsangehörigkeit aus Sicht des Deutschen Reichs folgenden Staatenlosigkeit des Kl. außer Betracht zu bleiben hat, daher bei einigen Anspruchsgrundlagen polnisches materielles Recht zur Anwendung käme (eventuell bei Geschäftsführung ohne Auftrag) und dort unter Umständen längere Verjährungsfristen gelten, kann offenbleiben. Denn angesichts der Einführung deutschen Rechts in dem Gebiet, aus dem der Kl. stammt (§ 1 der Verordnung über die bürgerliche Rechtspflege in den eingegliederten Ostgebieten vom 25. 9. 1941, RGBl. 1941 Teil 1 S. 597 ff.), kann nicht ange-

nommen werden, daß das Deutsche Reich als Schädigerstaat über die verfahrenstechnischen Vorschriften des Internationalen Privatrechts dem Kl. auch dieses Recht zugute kommen lassen wollte. Zudem bezichen Zweifel, ob das BVerfG mit dem „gegenen nationalen Recht" (NJW 1996 S. 2717, 2719) ausländisches Recht gemeint hätte, das über das Internationale Privatrecht Anwendung findet.

2. Ansprüche aus unerlaubter Handlung sind ebenfalls verjährt (wie hier: LG München I, Urteil vom 16. 9. 1999 – 6 O 8417/99 Blatt 354–358 der Akten; 13. Zivilkammer des erkennenden Gerichts a. a. O.). Die dreijährige Verjährungsfrist für Ansprüche aus unerlaubter Handlung nach § 852 BGB – auch hier findet unabhängig von der Zurechnung des Abtransports des Kl. aus S tark und Recht Anwendung, siehe unter 1. – ist anwendbar (a). Sie ist abgelaufen, weil jedenfalls nicht unmittelbar mit Auslaufen des Londoner Schuldenabkommens ein anderer Hemmungstatbestand eingriff (b). Die Bekl. verstößt nicht gegen Treu und Glauben (§ 242 BGB), wenn sie sich hierauf beruft (c). Die Verhandlungen zur Stiftungsinitiative helfen dem Kl. bei der Frage der Verjährung nicht weiter (d).

a. Der Auffassung der Klägervertreter, daß § 852 BGB nicht anwendbar sei, weil die (nicht justiziellen?) Entschädigungsansprüche völkerrechtlichen Ursprungs seien (Schriftsatz vom 29. 10. 1999 S. 1 f.), kann nicht gefolgt werden. Die zivilrechtlichen Ansprüche kommen unter anderem deswegen zum Zug, weil sie unabhängig vom Völkerrecht an anderer Stelle auch selbst annehmen. Auf die Existenz und Länge völkerrechtlicher Verjährungsfristen kommt es damit nicht an. Daß allgemeine Regeln des Völkerrechts bestünden, die in die Verjährung normaler zivilrechtlicher Ansprüche eingriffen oder wenigstens in solche zivilrechtlichen Ansprüche, die mehr geben, als das Völkerrecht selbst verlangt, ist nicht ersichtlich und wird außer von den Klägervertretern von niemandem behauptet. Eine Vorlage an das BVerfG nach Art. 100 Abs. 2 GG kommt daher nicht in Betracht.

b. Nachdem der Kl. von Anfang an die Person des Schädigers und den Schaden selbst kannte, wäre die Klage nur dann noch rechtzeitig eingereicht, wenn nach Auslaufen des Londoner Schuldenabkommens spätestens am 15. 9. 1990 (Inkrafttreten des 2 + 4-Vertrags am 15. 3. 1991 (BGBl. 1991 Teil 2 S. 587) nebst eventuell weiterer 18 Monate infolge analoger Anwendung des § 1 Abs. 2 des Gesetzes über die Verjährung von deutschen Auslandsschulden und ähnlichen Schulden, BGBl. 1956 Teil 1 S. 915) eine andere Hemmung bis zur Veröffentlichung der obengenannten Entscheidung des BVerfG stattgefunden hätte. Dem ist aber nicht so.

aa. Eine Hemmung unter dem Gesichtspunkt einer ständigen anspruchsfeindlichen Rechtsprechung der Fachgerichte (kritisch hierzu *Palandt/Heinrichs* Kommentar zum Bürgerlichen Gesetzbuch 58. Aufl. § 203 Randnummer 7) konnte nicht eintreten. Dies gilt zunächst für die Wirkungen des Londoner Schuldenabkommens. Denn die klagabweisenden Urteile waren immer darauf gestützt, daß während seiner Geltung keine Klagbarkeit gegeben war (weshalb die Klagen als zur Zeit unzulässig beziehungsweise unbegründet und nicht endgültig abgewiesen wurden). Mit der Tatsache, daß ohne Friedensvertrag eine Regelung der Reparationsfrage und damit eine Beendigung der Zurückstellung eingetreten war, hatte sich die Zivilrechtsprechung nur auf landgerichtlicher Ebene und in zugunsten des Klägers auseinandergesetzt (LG Bonn, Urteil vom 5. 11. 1998 – 1 O 134/92 Blatt 25 der Akten; LG Bremen, Urteil vom 2. 6. 1998 – 1 O 2889/90 Blatt 135 ff. der Akten). Im übrigen hatte das BVerfG in der obengenannten Entscheidung auch keine

**APP 1720**

App. 2401

Wende herbeigeführt, da es zwar die Ansichten des LG Bonn hierzu referiert, aber selbst keine Stellungnahme abgibt, noch nicht einmal als obiter dictum. Weiter lag keine ständige anspruchsfeindliche Rechtsprechung dazu vor, ob zivilrechtliche Ansprüche parallel zu Reparationsansprüchen bestanden. Dies wurde allenfalls beiläufig erwähnt und dabei dann offengelassen (BGH NJW 1963 S. 492, 493; BVerwGE 35 S. 262, 264 – dort werden beide Anspruchsarten erwähnt und anschließend die individuellen Ansprüche geprüft –; *Schröder* Jura 1994 S. 118, 126; anderer Ansicht ohne Begründung: *Frauendorf* ZRP 1999 S. 1, 5). Die der Klägerseite günstige Auffassung der Beklagtenseite im Schriftsatz vom 17. 10. 1999 S. 22 f., daß die Rechtslage in dem Sinne klar war, daß die Exklusivität nach einhelliger Meinung bestanden hätte, ist damit widerlegt.

bb. Wohl deshalb beruft sich die Klägerseite darauf, daß eine Hemmung wegen einer unsicheren Rechtslage (BGH NJW 1994 S. 2752, 2753 sowie Nachschlagewerk des BGH in Zivilsachen, herausgegeben von Lindenmaier und Möhring § 203 BGB Nummer 5) vorgelegen habe, die erst durch die Entscheidung des BVerfG geklärt worden sei. Aber auch dem ist nicht zu folgen.

(1) Was zunächst die Frage anbelangt, ob die Zurückstellung durch das Londoner Schuldenabkommen mit dem 2 + 4-Vertrag beendet war, so entsprach es bereits kurz nach dessen Abschluß der allgemeinen Rechtsauffassung in dem Sinne geregelt war, daß keine Ansprüche mehr geltend gemacht werden (zum Beispiel: *Rauschning* DVBl. 1990 S. 1275, 1279 oder *Seidl-Hohenveldern* Völkerrecht 8. Aufl. 1994 Randnummer 1872). Damit war aber eindeutig, daß die Zurückstellung nach Art. 5 Abs. 2 des Londoner Schuldenabkommens beendet war (*Rauschning* a. a. O. weist ausdrücklich darauf hin, daß überall dort, wo es auf einen Friedensvertrag ankommt, der 2 + 4-Vertrag einen solchen darstellt).

(2) Nicht so eindeutig, aber im Ergebnis nicht hinreichend unklar für die Annahme einer Hemmung der Verjährungsansprüche stellt sich dagegen die Lage hinsichtlich der Anspruchsparallelität dar. Immerhin vertrat die Bundesregierung noch zwischen dem Ergehen der Entscheidung des BVerfG und ihrer Veröffentlichung in einer in der Bundestags-Drucksache 13/4787 vom 3. 6. 1996 abgedruckten Stellungnahme in Fortsetzung früherer Stellungnahmen (zum Beispiel Bundestags-Drucksache 10/6287) die Auffassung, eine Anspruchsparallelität bestehe nicht, und konnte sich dafür auf die überwiegende Meinung in der Literatur (u. a. *Féaux de la Croix* NJW 1960 S. 2268 f.) stützen. Auf der anderen Seite hatte der BGH (MDR 1963 S. 492, 493) und Teile des Schrifttums (*Domke* Schweizerische Juristenzeitung 1962 S. 2 ff.; *Schröder* Jura 1994 S. 118, 128) diese Auffassung aber in Frage gestellt. Scheinbar – für die Gerichte nicht zugänglich – wurde dies auch sonst vertreten (vergleiche die Nachweise in der Entscheidung des BVerfG a. a. O. S. 1719 linke Spalte unten; die dortigen Zitaten zugrundeliegende Auffassung macht nur dann Sinn, wenn eine Parallelität angenommen wird, selbst wenn *Dolzer* vom BVerfG auf der vorigen Seite neben *Féaux de la Croix* zitiert wird). Trotz dieser offenen Lage trat aber keine Hemmung ein. Würde nämlich allein schon der Streit über die Lösung eines Rechtsproblems zu einer Hemmung führen, so würde die rechtsbefriedigende Wirkung der Verjährung in weiten Bereichen ausfallen, weil in der Jurisprudenz, die eben keine exakte mathematische Wissenschaft darstellt, über vieles gestritten werden kann (ähnlich: Nachschlagewerk des BGH in Zivilsachen, herausgegeben von Lindenmaier und Möhring § 852 BGB Nummer 12 unter II). Zwar ist

eine Unverjährbarkeit nicht völlig ausgeschlossen, wie dies im Falle einer mangelhaften Planung eines Architekten angenommen wird, bei der die abnahmefähige Herstellung des Architektenwerks verneint wird und deshalb weder dessen Erfüllungsanspruch noch Gewährleistungsansprüche verjähren (BGH WM 1999 S. 1181). Dort beruht dies aber auf ausdrücklichen gesetzlichen Regelungen, die die Verjährung an die Abnahme(fähigkeit) anknüpfen. Um diese Unverjährbarkeit (wenn nämlich – gerade weil eine Verjährung nicht droht – niemand durch den Instanzenzug klagt und eine Klärung herbeiführt) zu rechtfertigen, bedarf es daher mehr, nämlich wie der BGH (BGHZ 129 S. 282, 289) festgestellt hat, daß die vertretenen Auffassungen in ihrer Fülle, Komplexität und Unterschiedlichkeit kaum noch zu überschauen und zu bewerten sind und in dieser unsicheren Lage nur der Gesetzgeber oder eine höchstrichterliche Entscheidung eine Klärung herbeiführen kann. Wie aus den dazu entschiedenen Fällen ersichtlich, ging es jeweils darum, daß nicht nur wie hier klar herauszuarbeitende Einzelfragen, sondern ganze Themenkomplexe so wenig geklärt waren, daß allein schon das Herausarbeiten der entscheidungserheblichen Fragen wegen der Vielfalt der unterschiedlichen und konkurrierenden Normen an der Vielzahl der hierzu vertretbaren Meinungen scheiterte. Daß es sich bei Kl. um einen polnischen Staatsangehörigen ohne Deutschkenntnisse handelt, ändert hieran nichts. Daß nach der Wiedervereinigung des wirtschaftlich erholten Deutschlands eine neue Situation bestand, mußte auch ihnen bekannt sein. Sofern er daraufhin überhaupt Rechtsrat eingeholt hätte, was wegen des Anwaltszwangs vor deutschen Landgerichten ohnehin erforderlich gewesen wäre, hätten sich die Rechtsprobleme nicht mehr in seiner eigenen Person gestellt.

c. Wenn sich die Bekl. nunmehr auf Verjährung beruft, verstößt sie entgegen der Auffassung der Klägerseite nicht deshalb gegen Treu und Glauben, weil die Bundesregierung als ihre Vertreterin durch die Art der Führung der Verhandlungen zum Abschluß des 2 + 4-Vertrags die Gläubiger in die Irre geführt habe, indem sie immer erklärt habe, keinen Friedensvertrag (und damit keine Reparationsregelung) zu wollen, und das Ergebnis für die Kl. nun das sei, daß wegen Klausel 12 der Präambel zum 2 + 4-Vertrag für das Londoner Schuldenabkommen doch die Wirkungen eines Friedensvertrags angenommen werden und damit seine Forderung verjährt sein solle. Dies folgt allerdings schon daraus, daß sich die Kl. in Gegenzug das Verhalten der polnischen Regierung zurechnen lassen muß. Zumindest ist jedoch schon zweifelhaft, ob das von Klägerseite behauptete venire contra factum proprium beim geschilderten Sachverhalt anzunehmen ist oder ob nicht verlangt werden muß, daß vom Schuldner oder seinem Gehilfen der positive Eindruck einer gewollten Schuldentilgung erweckt werden muß, was die Bundesregierung nach dem Vortrag der Klägerseite nach außen hin nie beabsichtigte. Weiterhin erscheint es bei Anlegung des Maßstabes des § 278 BGB zweifelhaft, ob die Bundesregierung Gehilfe der Bekl. bei der Erfüllung der ihr obliegenden Pflichten sein kann. Dies braucht aber nicht entschieden zu werden, weil der Kl. selbst bei Unterstellung einer für ihn positiven Ansicht mit der Klägererhebung zu lange wartete. Bei Anwendung der Grundsätze von Treu und Glauben tritt nämlich keine Hemmung ein. Vielmehr hat der Anspruchsinhaber nach Wegfall der die Unzulässigkeit der Rechtsausübung begründenden Umstände innerhalb angemessener Frist Schritte zur Unterbrechung der Verjährung einzuleiten (Staudinger/*Peters* Kommentar zum Bürgerlichen Gesetzbuch 13. Auflage § 222 Randnummer 23 mit weiteren Nachweisen). Diese Frist ist knapp bemessen (allenfalls Monate: *Peters* a. a. O. Randnummer 24) und bleibt

**APP 1721**

selbst dann deutlich hinter den mindestens benötigten zweieinhalb Jahren (dazu gleich noch) zurück, wenn ein längerer Zeitraum einkalkuliert wird, bis die Entscheidung des BVerfG vom 13. 5. 1996 in Polen bekannt wurde.

d. Hieran ändert sich nichts dadurch etwas, daß ab Beginn der gegenwärtigen Verhandlungen im Zusammenhang mit der Stiftungsinitiative eine neue rechtzeitige Hemmung nach § 852 Abs. 2 BGB eingetreten wäre. Denn die Verhandlungen sind der Bekl. nicht zuzurechnen, nachdem diese sich an der Stiftungsinitiative nicht beteiligt hat und dies auch nicht beabsichtigt. Im übrigen kann eine Hemmung erst ab Beginn der Verhandlungen und noch nicht mit Beginn der deutschen internen Willensbildung angenommen werden. Selbst diese war aber erst Folge der Koalitionsverhandlungen nach den Wahlen vom 27. 9. 1998 (*Frauendorf* a. a. O. S. 5), als die Verjährung – wie unter a–c dargestellt – bereits eingetreten war.

II. Ein Anspruch des Kl. gegen den Bekl. direkt aus Völkerrecht besteht nicht (1). Dies kann das Gericht ohne Vorlage an das BVerfG selbst feststellen (2).

1. Daß Reparationen als Haftung für völkerrechtswidriges Verhalten – hier der Einsatz zur Zwangsarbeit – geschuldet werden, ist allgemein anerkannt, lediglich über die innere Begründung besteht Streit (vergleiche *Kischel* JZ 1998 S. 126 ff., zusammenfassend S. 129 unter VI). Dies bedeutet aber nicht, daß der Kläger (a) diese von den Beklagten (b) verlangen kann. Außerdem bestehen noch weitere hier nicht vorliegende Voraussetzungen (c).

a. Eine Berechtigung von Individuen, in eigener Person Reparationsansprüche geltend zu machen, bestand jedenfalls für die Zeit von 1942 bis 1945 nicht.

In der Zeit bis zum Ende des 2. Weltkriegs gab es zwar vereinzelte Vorschriften, in denen Individuen ausnahmsweise solche Rechte eingeräumt wurden. Hierzu zählt unter anderem der vom Bevollmächtigten des Kl. angesprochene Art. 297 Buchstabe e des Versailler Vertrags (RGBl. 1919 S. 687 ff.), der allerdings nicht Reparationen im Sinne dieses Vertrags betraf (Teil VIII), sondern im Teil X mit dem Titel „wirtschaftliche Bestimmungen" die Folgen der während des Krieges von Deutschland durchgeführten Liquidation von im Inland gelegenen „Feindesvermögen" regelte. Ein solcher Individualanspruch findet sich auch im deutsch-polnischen Oberschlesien-Abkommen von 1922. Außerdem wird vertreten, daß Art. 6 der Haager Landkriegsordnung ebenfalls Individualansprüche begründe. Es entspricht aber allgemeiner Ansicht, daß diese Ansätze nicht verallgemeinerungsfähig waren, was speziell für den Bereich der Reparationen dadurch bestätigt wird, daß für die Teil VIII des Versailler Vertrags (in der deutschen Übersetzung „Wiedergutmachungen") eine Staatenberechtigung vereinbart ist. Soweit in Art. 232 Abs. 2 die Angehörigen der Siegerstaaten erwähnt werden, gilt nichts anderes, denn dies dient der Berechnung der Höhe des Schadens und nicht dazu, diesen einen Individualanspruch zu verschaffen, wie die Klägervertreter inzwischen (Schriftsatz vom 29. 10. 1999 S. 10 f.) selbst betonen. Die sonstigen im Schriftsatz der Klägervertreter vom 29. 10. 1999 angeführten Konventionen aus der Vorkriegszeit wenden sich ebenfalls nur an die Hohen Vertragsschließenden Staaten zur Umsetzung in nationales Recht. Allerdings zeichnet sich seit dem 2. Weltkrieg – vor allem durch die im Schriftsatz vom 29. 10. 1999 unter e und f genannte Erklärung beziehungsweise Konvention – eine Entwicklung ab, daß Individuen insbesondere im Bereich der Menschenrechte in größerem Umfang eigene völkerrechtliche Ansprüche geltend machen können (BVerfG

a. a. O. S. 2719 linke Spalte unter aa). Es ist aber zweifelhaft, ob diese Entwicklung Reparationen bereits erreicht hat (verneinend: *Tomuschat* IPRax 1999 S. 238 linke Spalte). Dies kann aber letzlich offenbleiben, denn die Rechtsfortbildung kommt für den Kl. zu spät. Auch hier gilt intertemporales Recht.

b. Außerdem wird bisher soweit ersichtlich nirgends angenommen, daß Individuen Reparationsforderungen – einerlei ob im ursprünglichen oder neueren Sinn (nach der Diktion auf S. 8 f. des Schriftsatzes der Klägerseite vom 24. 8. 1999) – ausgesetzt sein können. Art. 25 GG hilft – neben anderen Bedenken – allein schon deshalb nicht weiter. Daran ändert sich nicht dadurch etwas, daß Individuen Adressaten einzelner Vorschriften sind, für deren Einhaltung sie strafrechtlich zur Verantwortung gezogen werden konnten (insbesondere durch das Nürnberger Kriegsverbrechertribunal) und noch können. Zum einen ist bereits streitig, ob die Haftung auf völkerrechtlicher oder einzelstaatenrechtlicher Ebene erfolgt. Und zum anderen läßt sich Strafrecht nicht mediatisieren.

c. Weiterhin entspricht es der völkerrechtlichen Praxis, daß die Modalitäten von (auf Völkerrecht beruhenden) Reparationen, insbesondere die Höhe, durch völkerrechtlichen Vertrag festgelegt werden (zum Beispiel: BVerfGE 41 S. 126, 154 f.; *Seidl-Hohenveldern* Völkerrecht 8. Aufl. Randnummer 1867; BGH NJW 1963 S. 525, 527 rechte Spalte Mitte). Dem stehen die Feststellungen des BVerfG in seiner Entscheidung vom 13. 5. 1996 (a. a. O. S. 2719 rechte Spalte) nicht entgegen, daß eine Exklusivität nicht in ausschließe, sondern eine solche gar nicht existiere. Dies ändert nämlich nichts daran, daß auf Völkerrechtsebene eben doch eine nähere Ausgestaltung erforderlich ist. Solange dies nicht gegeschehen ist und das Londoner Schuldenabkommen leistet dies nicht (siehe schon oben A II 1 a bb (2), S. 10 des Urteils), besteht kein durchsetzbarer Anspruch auf Zahlung eines Betrags oder sonstige Leistungen, sondern allenfalls auf Abschluß eines solchen Vertrags, wobei Anspruchsgegner für diesen Anspruch ein Staat aber nicht ein Individuum wäre. Die vom Bevollmächtigten des Kl. herangezogenen Reparationen Deutschlands und Österreichs nach dem 1. Weltkrieg beruhten im übrigen gerade auf entsprechenden Regelungen im Versailler Vertrag (RGBl. 1919 S. 687 ff. – dort Teil VIII, S. 985 ff.) in Verbindung mit dem Londoner Zahlungsabkommen vom 27. 4. 1921 beziehungsweise im Vertrag von St. Germain. Auf die Frage eines Verzichts der polnischen Regierung mit Wirkung für die Staatsbürger oder eines Verlustes mangels Regelung im Zusammenhang mit dem 2 + 4-Vertrag kommt es damit nicht mehr an.

2. Eine Vorlage an das BVerfG nach Art. 100 Abs. 2 2. Alternative GG in Verbindung mit Art. 25 GG zur Klärung der Frage unter 1. bedarf es nicht. Zwar ist die Frage nach dem Bestand einer allgemeinen Regel des Völkerrechts, nach der Individuen völkerrechtliche Reparationsansprüche gegen andere Individuen ohne vorherige Begründung durch Verträge zustehen sollen, entscheidungserheblich, weil der Kl. mit sonstigen Ansprüchen wegen der Erhebung der Einrede der Verjährung nicht durchdringen kann. Weiterhin besteht die Pflicht zur Vorlage im Falle des Art. 100 Abs. 2 GG nicht nur dann, wenn das erkennende Gericht eine Regel des Völkerrechts bejaht oder Zweifel hat, ob eine solche besteht. Aber auch die geringeren Voraussetzungen für die Vorlagepflicht, nämlich ernstzunehmende objektive Zweifel, die sich aus einer Abweichung von der Meinung eines Verfassungsorgans, von Entscheidungen hoher deutscher, ausländischer oder internationaler Gerichte oder von den Lehren anerkannter Autoren der Völkerrechtswissenschaften ergeben

**APP 1722**

App. 2403

(BVerfGE 23 S. 288, 319), sind nicht gegeben. Soweit ersichtlich und dadurch gestützt, daß die Prozeßbevollmächtigten des Kl. hierzu ebenfalls nichts vorgetragen haben, wird diese Meinung lediglich vom Bevollmächtigten des Kl. vertreten. [. . .]

**Nr. 25\* OLG Hamm – RBerG Art. 1 § 1; EGV Art. 59 (EG Art. 49)**

*(Urteil v. 15. 6. 1999 – 4 U 10/99)*

1. **Betreibt ein im Ausland ansässiges Inkassounternehmen die Einziehung einer Forderung, deren Gläubiger und Schuldner beide im Inland ansässig sind, so benötigt das Unternehmen für diese Tätigkeit eine Erlaubnis nach Art. 1 § 1 RBerG.**

2. **Die Pflicht zur Einholung einer Erlaubnis gemäß Art. 1 § 1 RBerG verletzt nicht die Dienstleistungsfreiheit nach Art. 59 EGV.**

*(Leitsätze der Redaktion)*

Der Bekl. zu 2. – deutscher Staatsangehöriger – ist der Geschäftsführer der in den Niederlanden ansässigen Bekl. zu 1., die nicht die deutsche behördliche Erlaubnis zur Besorgung fremder Rechtsangelegenheiten gemäß Art. 1 § 1 RBerG hat. An ihrem Geschäftssitz beriet die Bekl. zu 1. eine in der Bundesrepublik ansässige deutsche Mandantin in rechtlichen Angelegenheiten. Sie übersandte dann unter dem 4. 11. 1997 an eine in [der Bundesrepublik] ansässiges Unternehmen ein in den Niederlanden zur Post gegebenes Schreiben, in welchem sie mitteilte, von dem Mandanten „mit der Wahrnehmung seiner rechtlichen, betriebswirtschaftlichen und finanziellen Interessen beauftragt" worden zu sein, und in welchem sie mit Fristsetzung zur Bezahlung einer Geldschuld aufforderte.

Der Kl., der in D. als zugelassener Rechtsanwalt tätig ist, sieht in diesem Schreiben die rechtswidrige Besorgung fremder Rechtsangelegenheiten und damit zugleich einen Wettbewerbsverstoß.

Der Kläger hat beantragt, die Beklagten unter Androhung von Ordnungsmitteln zu verurteilen, es künftig zu unterlassen, Rechtsangelegenheiten Dritter einschließlich der Beratung und Einziehung fremder oder zu Einziehungszwecken abgetretener Forderungen geschäftsmäßig in der Weise zu besorgen, daß Zahlungsansprüche eines Auftraggebers gegenüber Dritten auf dem Gebiet der Bundesrepublik Deutschland außergerichtlich geltend gemacht werden.

Das Landgericht hat durch Urteil vom 3. November 1998 die Klage antragsgemäß abgewiesen. [. . .] Gegen dieses Urteil hat der Kläger form- und fristgerecht Berufung eingelegt.

Unter Ergänzung und Vertiefung seines erstinstanzlichen Vortrages ist der Kläger der Ansicht, daß das vom Bekl. zu 2. am Geschäftssitz der Bekl. zu 1. in den Niederlanden geführte Beratungsgespräch zwar nicht an dem deutschen Rechtsberatungsgesetz zu messen sei; dies gelte aber nicht für das beanstandete Schreiben an den Drittschuldner vom 4. November 1997. Ohne den Zugang dieses Schreibens beim Schuldner sei die Rechtsbesorgung für die Gläubigerin nicht abgeschlossen gewesen. Der Zugang der Zahlungsaufforderung beim Schuldner könne nicht als bloßer Reflex der im Ausland erfolgten Tätigkeit angesehen werden. Vielmehr habe man sich gegenüber der Schuldnerin erboten, möglichst kurzfristig miteinander in Verbindung zu treten, um eine drohende Liquidation der Schuldnerin zu verhindern. Es liege somit auch das Angebot von Regulierungsverhandlungen im Rahmen des erteilten Mandates vor, was als „klassischer" Fall einer Rechtsbesorgung im Sinne des Rechtsberatungsgesetzes anzusehen sei.

Der Kl. beantragt, unter Abänderung des angefochtenen Urteils die Bekl. zu verurteilen, bei Vermeidung eines für jeden Fall der Zuwiderhandlung zu verhängenden Ordnungsgeldes, ersatzweise Ordnungshaft, zu vollstrecken an dem Bekl. zu 2., es zu unterlassen, Rechtsangelegenheiten Dritter einschließlich der Einziehung fremder Forderungen geschäftsmäßig im Bereich der Bundesrepublik Deutschland zu besorgen, insbesondere in der Weise, daß Zahlungsansprüche eines deutschen Auftraggebers gegenüber Dritten auf dem Gebiet der Bundesrepublik Deutschland außergerichtlich geltend gemacht werden.

Die Bekl. beantragen, die gegnerische Berufung zurückzuweisen.

Unter Ergänzung und Vertiefung ihres erstinstanzlichen Vortrages sind die Bekl. der Ansicht, daß der jeweilige Staat seinen eingeschränkten Hoheitsbereich beachten müsse. Die Bekl. zu 1. habe aber ihren Sitz in den Niederlanden, ebenso der Bekl. zu 2. Das Beratungsgespräch mit dem Gläubiger habe nur in den Niederlanden stattgefunden. Leistungsort für sämtliche erbrachten Leistungen der Bekl. zugunsten der Gläubigerin seien damit die Niederlande, so daß schon von daher das Rechtsberatungsgesetz im vorliegenden Falle nicht eingreifen könne. Die Durchführung der Beratung durch einen im Ausland und anschließender Absendung eines Schreibens über die Grenze hinweg spiele sich nicht im Hoheitsbereich des deutschen Staates ab und werde somit vom Rechtsberatungsgesetz nicht erfaßt. Die Bekl. hätten ihre Tätigkeiten ausschließlich in den Niederlanden erbracht, und zwar im Einklang mit den dortigen Gesetzen, die für die Beurteilung der Tätigkeit der Beklagten auch allein maßgeblich seien. [. . .]

*Entscheidungsgründe:*

Die Berufung des Kl. ist zulässig und begründet.

Die örtliche Zuständigkeit des angerufenen Gerichts ist nicht mehr zu prüfen, nachdem das Landgericht seine örtliche Zuständigkeit bejaht hat, § 512 a ZPO.

Die internationale Zuständigkeit folgt aus Art. 5 Nr. 3 EUGVÜ. Der Kl. beanstandet die Versendung eines bestimmten Schreibens als wettbewerbswidrig. Damit ist der Ankunftsort dieses Schreibens als Erfolgsort zugleich auch Tatort. Ob die Versendung tatsächlich wettbewerbswidrig war, nämlich einen Verstoß gegen das Rechtsberatungsgesetz darstellt, ist eine Frage der Begründetheit der Klage, die der internationalen Zuständigkeit des angerufenen Gerichts als Tatortgericht im Sinne des Art. 5 Nr. 3 EUGVÜ nicht entgegensteht (*Pastor/Ahrens*, Der Wettbewerbsprozeß, 4. Aufl., Kap. 22, Rz. 7, 33).

Das verlangte Verbot ist auch hinreichend bestimmt.

Wie in der mündlichen Verhandlung vor dem Senat noch einmal vom Klägervertreter ausdrücklich klargestellt worden ist, ist Gegenstand des Verbotsbegehrens das Schreiben der Bekl. vom 4. November 1997, also die Einziehung von Forderungen, bei denen sowohl der Gläubiger, als auch der Schuldner jeweils in der Bundesrepublik Deutschland ansässig sind. Dieses eigentliche Verbotsbegehren kommt in dem „insbesondere"-Zusatz auch hinreichend zum Ausdruck (*Pastor/Ahrens*, a.a.O., Kap. 27, Rz. 28; *Teplitzky*, Wettbewerbsrechtliche Ansprüche, 7. Aufl., Kap. 51, Rz. 36). Entsprechend diesem erkennbaren eigentlichen Verbotsbegehren des Kl. hat der Senat den Verbotstenor

---

\* Dazu oben *Budzikiewicz*, Die Anwendbarkeit des Rechtsberatungsgesetzes im Fall grenzüberschreitender Inkassotätigkeit, IPRax 2001, 218 (in diesem Heft).

APP 1723

App. 2404

# Exhibit 6

# German Constitution
# English Translation

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

Übersetzung durch: Professor Christian Tomuschat und Professor David P. Currie
Übersetzung überarbeitet durch: Professor Christian Tomuschat und Professor Donald P. Kommers in Kooperation mit dem Sprachendienst des Deutschen Bundestages
Translated by: Professor Christian Tomuschat and Professor David P. Currie
Translation revised by: Professor Christian Tomuschat and Professor Donald P. Kommers in cooperation with the Language Service of the German Bundestag
Stand: Die Übersetzung berücksichtigt die Änderung(en) des Gesetzes durch Gesetz vom 11.7.2012 (BGBl. I S. 1478)
Version information: The translation includes the amendment(s) to the Act by the Act of 11.7.2012 (Federal Law Gazette I p. 1478)
© 2014 juris GmbH, Saarbrücken

# Basic Law for the Federal Republic of Germany

Basic Law for the Federal Republic of Germany in the revised version published in the Federal Law Gazette Part III, classification number 100-1, as last amended by the Act of 11 July 2012 (Federal Law Gazette I p. 1478).

The Parliamentary Council, meeting in public session at Bonn am Rhein on 23 May 1949, confirmed that the Basic Law for the Federal Republic of Germany, which was adopted by the Parliamentary Council on 8 May 1949, was ratified in the week of 16 to 22 May 1949 by the parliaments of more than two thirds of the participating German Länder.

By virtue of this fact the Parliamentary Council, represented by its Presidents, has signed and promulgated the Basic Law.

The Basic Law is hereby published in the Federal Law Gazette pursuant to paragraph (3) of Article 145.

## Preamble

Conscious of their responsibility before God and man, Inspired by the determination to promote world peace as an equal partner in a united Europe, the German people, in the exercise of their constituent power, have adopted this Basic Law. Germans in the Länder of Baden-Württemberg, Bavaria, Berlin, Brandenburg, Bremen, Hamburg, Hesse, Lower Saxony, Mecklenburg-Western Pomerania, North Rhine-Westphalia, Rhineland-Palatinate, Saarland, Saxony, Saxony-Anhalt, Schleswig-Holstein and Thuringia have achieved the unity and freedom of Germany in free self-determination. This Basic Law thus applies to the entire German people.

## I. Basic Rights

### Article 1
### [Human dignity – Human rights – Legally binding force of basic rights]

(1) Human dignity shall be inviolable. To respect and protect it shall be the duty of all state authority.

(2) The German people therefore acknowledge inviolable and inalienable human rights as the basis of every community, of peace and of justice in the world.

(3) The following basic rights shall bind the legislature, the executive and the judiciary as directly applicable law.

### Article 2
### [Personal freedoms]

(1) Every person shall have the right to free development of his personality insofar as he does not violate the rights of others or offend against the constitutional order or the moral law.

APP 1725

App. 2406

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

(2) Every person shall have the right to life and physical integrity. Freedom of the person shall be inviolable. These rights may be interfered with only pursuant to a law.

### Article 3
### [Equality before the law]

(1) All persons shall be equal before the law.

(2) Men and women shall have equal rights. The state shall promote the actual implementation of equal rights for women and men and take steps to eliminate disadvantages that now exist.

(3) No person shall be favoured or disfavoured because of sex, parentage, race, language, homeland and origin, faith, or religious or political opinions. No person shall be disfavoured because of disability.

### Article 4
### [Freedom of faith and conscience]

(1) Freedom of faith and of conscience, and freedom to profess a religious or philosophical creed, shall be inviolable.

(2) The undisturbed practice of religion shall be guaranteed.

(3) No person shall be compelled against his conscience to render military service involving the use of arms. Details shall be regulated by a federal law.

### Article 5
### [Freedom of expression, arts and sciences]

(1) Every person shall have the right freely to express and disseminate his opinions in speech, writing and pictures, and to inform himself without hindrance from generally accessible sources. Freedom of the press and freedom of reporting by means of broadcasts and films shall be guaranteed. There shall be no censorship.

(2) These rights shall find their limits in the provisions of general laws, in provisions for the protection of young persons, and in the right to personal honour.

(3) Arts and sciences, research and teaching shall be free. The freedom of teaching shall not release any person from allegiance to the constitution.

### Article 6
### [Marriage – Family – Children]

(1) Marriage and the family shall enjoy the special protection of the state.

(2) The care and upbringing of children is the natural right of parents and a duty primarily incumbent upon them. The state shall watch over them in the performance of this duty.

(3) Children may be separated from their families against the will of their parents or guardians only pursuant to a law, and only if the parents or guardians fail in their duties or the children are otherwise in danger of serious neglect.

(4) Every mother shall be entitled to the protection and care of the community.

(5) Children born outside of marriage shall be provided by legislation with the same opportunities for physical and mental development and for their position in society as are enjoyed by those born within marriage.

### Article 7
### [School system]

APP 1726

App. 2407

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

(1) The entire school system shall be under the supervision of the state.

(2) Parents and guardians shall have the right to decide whether children shall receive religious instruction.

(3) Religious instruction shall form part of the regular curriculum in state schools, with the exception of non-denominational schools. Without prejudice to the state's right of supervision, religious instruction shall be given in accordance with the tenets of the religious community concerned. Teachers may not be obliged against their will to give religious instruction.

(4) The right to establish private schools shall be guaranteed. Private schools that serve as alternatives to state schools shall require the approval of the state and shall be subject to the laws of the Länder. Such approval shall be given when private schools are not inferior to the state schools in terms of their educational aims, their facilities, or the professional training of their teaching staff, and when segregation of pupils according to the means of their parents will not be encouraged thereby. Approval shall be withheld if the economic and legal position of the teaching staff is not adequately assured.

(5) A private elementary school shall be approved only if the educational authority finds that it serves a special pedagogical interest or if, on the application of parents or guardians, it is to be established as a denominational or interdenominational school or as a school based on a particular philosophy and no state elementary school of that type exists in the municipality.

(6) Preparatory schools shall remain abolished.

### Article 8
### [Freedom of assembly]

(1) All Germans shall have the right to assemble peacefully and unarmed without prior notification or permission.

(2) In the case of outdoor assemblies, this right may be restricted by or pursuant to a law.

### Article 9
### [Freedom of association]

(1) All Germans shall have the right to form corporations and other associations.

(2) Associations whose aims or activities contravene the criminal laws, or that are directed against the constitutional order or the concept of international understanding, shall be prohibited.

(3) The right to form associations to safeguard and improve working and economic conditions shall be guaranteed to every individual and to every occupation or profession. Agreements that restrict or seek to impair this right shall be null and void; measures directed to this end shall be unlawful. Measures taken pursuant to Article 12a, to paragraphs (2) and (3) of Article 35, to paragraph (4) of Article 87a, or to Article 91 may not be directed against industrial disputes engaged in by associations within the meaning of the first sentence of this paragraph in order to safeguard and improve working and economic conditions.

### Article 10
### [Privacy of correspondence, posts and telecommunications]

(1) The privacy of correspondence, posts and telecommunications shall be inviolable.

(2) Restrictions may be ordered only pursuant to a law. If the restriction serves to protect the free democratic basic order or the existence or security of the Federation or of a Land, the law may provide that the person affected shall not be informed of the restriction and that recourse to the courts shall be replaced by a review of the case by agencies and auxiliary

APP 1727

agencies appointed by the legislature.

## Article 11
### [Freedom of movement]

(1) All Germans shall have the right to move freely throughout the federal territory.

(2) This right may be restricted only by or pursuant to a law, and only in cases in which the absence of adequate means of support would result in a particular burden for the community, or in which such restriction is necessary to avert an imminent danger to the existence or the free democratic basic order of the Federation or of a Land, to combat the danger of an epidemic, to respond to a grave accident or natural disaster, to protect young persons from serious neglect, or to prevent crime.

## Article 12
### [Occupational freedom]

(1) All Germans shall have the right freely to choose their occupation or profession, their place of work and their place of training. The practice of an occupation or profession may be regulated by or pursuant to a law.

(2) No person may be required to perform work of a particular kind except within the framework of a traditional duty of community service that applies generally and equally to all.

(3) Forced labour may be imposed only on persons deprived of their liberty by the judgment of a court.

## Article 12a
### [Compulsory military and alternative civilian service]

(1) Men who have attained the age of eighteen may be required to serve in the Armed Forces, in the Federal Border Police, or in a civil defence organisation.

(2) Any person who, on grounds of conscience, refuses to render military service involving the use of arms may be required to perform alternative service. The duration of alternative service shall not exceed that of military service. Details shall be regulated by a law, which shall not interfere with the freedom to make a decision in accordance with the dictates of conscience, and which shall also provide for the possibility of alternative service not connected with units of the Armed Forces or of the Federal Border Police.

(3) Persons liable to compulsory military service who are not called upon to render service pursuant to paragraph (1) or (2) of this Article may, when a state of defence is in effect, be assigned by or pursuant to a law to employment involving civilian services for defence purposes, including the protection of the civilian population; they may be assigned to public employment only for the purpose of discharging police functions or such other sovereign functions of public administration as can be discharged only by persons employed in the public service. The employment contemplated by the first sentence of this paragraph may include services within the Armed Forces, in the provision of military supplies, or with public administrative authorities; assignments to employment connected with supplying and servicing the civilian population shall be permissible only to meet their basic requirements or to guarantee their safety.

(4) If, during a state of defence, the need for civilian services in the civilian health system or in stationary military hospitals cannot be met on a voluntary basis, women between the age of eighteen and fifty-five may be called upon to render such services by or pursuant to a law. Under no circumstances may they be required to render service involving the use of arms.

(5) Prior to the existence of a state of defence, assignments under paragraph (3) of this Article may be made only if the requirements of paragraph (1) of Article 80a are met. In

APP 1728

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

preparation for the provision of services under paragraph (3) of this Article that demand special knowledge or skills, participation in training courses may be required by or pursuant to a law. In this case the first sentence of this paragraph shall not apply.

(6) If, during a state of defence, the need for workers in the areas specified in the second sentence of paragraph (3) of this Article cannot be met on a voluntary basis, the right of German citizens to abandon their occupation or place of employment may be restricted by or pursuant to a law in order to meet this need. Prior to the existence of a state of defence, the first sentence of paragraph (5) of this Article shall apply mutatis mutandis.

### Article 13
### [Inviolability of the home]

(1) The home is inviolable.

(2) Searches may be authorised only by a judge or, when time is of the essence, by other authorities designated by the laws, and may be carried out only in the manner therein prescribed.

(3) If particular facts justify the suspicion that any person has committed an especially serious crime specifically defined by a law, technical means of acoustical surveillance of any home in which the suspect is supposedly staying may be employed pursuant to judicial order for the purpose of prosecuting the offence, provided that alternative methods of investigating the matter would be disproportionately difficult or unproductive. The authorisation shall be for a limited time. The order shall be issued by a panel composed of three judges. When time is of the essence, it may also be issued by a single judge.

(4) To avert acute dangers to public safety, especially dangers to life or to the public, technical means of surveillance of the home may be employed only pursuant to judicial order. When time is of the essence, such measures may also be ordered by other authorities designated by a law; a judicial decision shall subsequently be obtained without delay.

(5) If technical means are contemplated solely for the protection of persons officially deployed in a home, the measure may be ordered by an authority designated by a law. The information thereby obtained may be otherwise used only for purposes of criminal prosecution or to avert danger and only if the legality of the measure has been previously determined by a judge; when time is of the essence, a judicial decision shall subsequently be obtained without delay.

(6) The Federal Government shall report to the Bundestag annually as to the employment of technical means pursuant to paragraph (3) and, within the jurisdiction of the Federation, pursuant to paragraph (4) and, insofar as judicial approval is required, pursuant to paragraph (5) of this Article. A panel elected by the Bundestag shall exercise parliamentary oversight on the basis of this report. A comparable parliamentary oversight shall be afforded by the Länder.

(7) Interferences and restrictions shall otherwise only be permissible to avert a danger to the public or to the life of an individual, or, pursuant to a law, to confront an acute danger to public safety and order, in particular to relieve a housing shortage, to combat the danger of an epidemic, or to protect young persons at risk.

### Article 14
### [Property – Inheritance – Expropriation]

(1) Property and the right of inheritance shall be guaranteed. Their content and limits shall be defined by the laws.

(2) Property entails obligations. Its use shall also serve the public good.

APP 1729

App. 2410

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

(3) Expropriation shall only be permissible for the public good. It may only be ordered by or pursuant to a law that determines the nature and extent of compensation. Such compensation shall be determined by establishing an equitable balance between the public interest and the interests of those affected. In case of dispute concerning the amount of compensation, recourse may be had to the ordinary courts.

### Article 15
### [Socialisation]

Land, natural resources and means of production may for the purpose of socialisation be transferred to public ownership or other forms of public enterprise by a law that determines the nature and extent of compensation. With respect to such compensation the third and fourth sentences of paragraph (3) of Article 14 shall apply mutatis mutandis.

### Article 16
### [Citizenship – Extradition]

(1) No German may be deprived of his citizenship. Citizenship may be lost only pursuant to a law, and against the will of the person affected only if he does not become stateless as a result.

(2) No German may be extradited to a foreign country. The law may provide otherwise for extraditions to a member state of the European Union or to an international court, provided that the rule of law is observed.

### Article 16a
### [Right of asylum]

(1) Persons persecuted on political grounds shall have the right of asylum.

(2) Paragraph (1) of this Article may not be invoked by a person who enters the federal territory from a member state of the European Communities or from another third state in which application of the Convention Relating to the Status of Refugees and the Convention for the Protection of Human Rights and Fundamental Freedoms is assured. The states outside the European Communities to which the criteria of the first sentence of this paragraph apply shall be specified by a law requiring the consent of the Bundesrat. In the cases specified in the first sentence of this paragraph, measures to terminate an applicant's stay may be implemented without regard to any legal challenge that may have been instituted against them.

(3) By a law requiring the consent of the Bundesrat, states may be specified in which, on the basis of their laws, enforcement practices and general political conditions, it can be safely concluded that neither political persecution nor inhuman or degrading punishment or treatment exists. It shall be presumed that a foreigner from such a state is not persecuted, unless he presents evidence justifying the conclusion that, contrary to this presumption, he is persecuted on political grounds.

(4) In the cases specified by paragraph (3) of this Article and in other cases that are plainly unfounded or considered to be plainly unfounded, the implementation of measures to terminate an applicant's stay may be suspended by a court only if serious doubts exist as to their legality; the scope of review may be limited, and tardy objections may be disregarded. Details shall be determined by a law.

(5) Paragraphs (1) to (4) of this Article shall not preclude the conclusion of international agreements of member states of the European Communities with each other or with those third states which, with due regard for the obligations arising from the Convention Relating to the Status of Refugees and the Convention for the Protection of Human Rights and Fundamental Freedoms, whose enforcement must be assured in the contracting states,

APP 1730

App. 2411

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

adopt rules conferring jurisdiction to decide on applications for asylum, including the reciprocal recognition of asylum decisions.

## Article 17
### [Right of petition]

Every person shall have the right individually or jointly with others to address written requests or complaints to competent authorities and to the legislature.

## Article 17a
### [Restriction of basic rights in specific instances]

(1) Laws regarding military and alternative service may provide that the basic right of members of the Armed Forces and of alternative service freely to express and disseminate their opinions in speech, writing and pictures (first clause of paragraph (1) of Article 5), the basic right of assembly (Article 8), and the right of petition (Article 17) insofar as it permits the submission of requests or complaints jointly with others, be restricted during their period of military or alternative service.

(2) Laws regarding defence, including protection of the civilian population, may provide for restriction of the basic rights of freedom of movement (Article 11) and inviolability of the home (Article 13).

## Article 18
### [Forfeiture of basic rights]

Whoever abuses the freedom of expression, in particular the freedom of the press (paragraph (1) of Article 5), the freedom of teaching (paragraph (3) of Article 5), the freedom of assembly (Article 8), the freedom of association (Article 9), the privacy of correspondence, posts and telecommunications (Article 10), the rights of property (Article 14), or the right of asylum (Article 16a) in order to combat the free democratic basic order shall forfeit these basic rights. This forfeiture and its extent shall be declared by the Federal Constitutional Court.

## Article 19
### [Restriction of basic rights – Legal remedies]

(1) Insofar as, under this Basic Law, a basic right may be restricted by or pursuant to a law, such law must apply generally and not merely to a single case. In addition, the law must specify the basic right affected and the Article in which it appears.

(2) In no case may the essence of a basic right be affected.

(3) The basic rights shall also apply to domestic artificial persons to the extent that the nature of such rights permits.

(4) Should any person's rights be violated by public authority, he may have recourse to the courts. If no other jurisdiction has been established, recourse shall be to the ordinary courts. The second sentence of paragraph (2) of Article 10 shall not be affected by this paragraph.

## II. The Federation and the Länder

## Article 20
### [Constitutional principles – Right of resistance]

(1) The Federal Republic of Germany is a democratic and social federal state.

(2) All state authority is derived from the people. It shall be exercised by the people through elections and other votes and through specific legislative, executive and judicial bodies.

APP 1731

App. 2412

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

(3) The legislature shall be bound by the constitutional order, the executive and the judiciary by law and justice.

(4) All Germans shall have the right to resist any person seeking to abolish this constitutional order, if no other remedy is available.

### Article 20a
### [Protection of the natural foundations of life and animals]

Mindful also of its responsibility toward future generations, the state shall protect the natural foundations of life and animals by legislation and, in accordance with law and justice, by executive and judicial action, all within the framework of the constitutional order.

### Article 21
### [Political parties]

(1) Political parties shall participate in the formation of the political will of the people. They may be freely established. Their internal organisation must conform to democratic principles. They must publicly account for their assets and for the sources and use of their funds.

(2) Parties that, by reason of their aims or the behaviour of their adherents, seek to undermine or abolish the free democratic basic order or to endanger the existence of the Federal Republic of Germany shall be unconstitutional. The Federal Constitutional Court shall rule on the question of unconstitutionality.

(3) Details shall be regulated by federal laws.

### Article 22
### [Federal capital – Federal flag]

(1) Berlin is the capital of the Federal Republic of Germany. The Federation shall be responsible for representing the nation as a whole in the capital. Details shall be regulated by federal law.

(2) The federal flag shall be black, red and gold.

### Article 23
### [European Union – Protection of basic rights – Principle of subsidiarity]

(1) With a view to establishing a united Europe, the Federal Republic of Germany shall participate in the development of the European Union that is committed to democratic, social and federal principles, to the rule of law, and to the principle of subsidiarity, and that guarantees a level of protection of basic rights essentially comparable to that afforded by this Basic Law. To this end the Federation may transfer sovereign powers by a law with the consent of the Bundesrat. The establishment of the European Union, as well as changes in its treaty foundations and comparable regulations that amend or supplement this Basic Law, or make such amendments or supplements possible, shall be subject to paragraphs (2) and (3) of Article 79.

(1a) The Bundestag and the Bundesrat shall have the right to bring an action before the Court of Justice of the European Union to challenge a legislative act of the European Union for infringing the principle of subsidiarity. The Bundestag is obliged to initiate such an action at the request of one fourth of its Members. By a statute requiring the consent of the Bundesrat, exceptions from the first sentence of paragraph (2) of Article 42, and the first sentence of paragraph (2) of Article 52, may be authorised for the exercise of the rights granted to the Bundestag and the Bundesrat under the contractual foundations of the European Union.

(2) The Bundestag and, through the Bundesrat, the Länder shall participate in matters

APP 1732

App. 2413

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

concerning the European Union. The Federal Government shall keep the Bundestag and the Bundesrat informed, comprehensively and at the earliest possible time.

(3) Before participating in legislative acts of the European Union, the Federal Government shall provide the Bundestag with an opportunity to state its position. The Federal Government shall take the position of the Bundestag into account during the negotiations. Details shall be regulated by a law.

(4) The Bundesrat shall participate in the decision-making process of the Federation insofar as it would have been competent to do so in a comparable domestic matter, or insofar as the subject falls within the domestic competence of the Länder.

(5) Insofar as, in an area within the exclusive competence of the Federation, interests of the Länder are affected, and in other matters, insofar as the Federation has legislative power, the Federal Government shall take the position of the Bundesrat into account. To the extent that the legislative powers of the Länder, the structure of Land authorities, or Land administrative procedures are primarily affected, the position of the Bundesrat shall be given the greatest possible respect in determining the Federation's position consistent with the responsibility of the Federation for the nation as a whole. In matters that may result in increased expenditures or reduced revenues for the Federation, the consent of the Federal Government shall be required.

(6) When legislative powers exclusive to the Länder concerning matters of school education, culture or broadcasting are primarily affected, the exercise of the rights belonging to the Federal Republic of Germany as a member state of the European Union shall be delegated by the Federation to a representative of the Länder designated by the Bundesrat. These rights shall be exercised with the participation of, and in coordination with, the Federal Government; their exercise shall be consistent with the responsibility of the Federation for the nation as a whole.

(7) Details regarding paragraphs (4) to (6) of this Article shall be regulated by a law requiring the consent of the Bundesrat.

### Article 24
### [Transfer of sovereign powers – System of collective security]

(1) The Federation may by a law transfer sovereign powers to international organisations.

(1a) Insofar as the Länder are competent to exercise state powers and to perform state functions, they may, with the consent of the Federal Government, transfer sovereign powers to transfrontier institutions in neighbouring regions.

(2) With a view to maintaining peace, the Federation may enter into a system of mutual collective security; in doing so it shall consent to such limitations upon its sovereign powers as will bring about and secure a lasting peace in Europe and among the nations of the world.

(3) For the settlement of disputes between states, the Federation shall accede to agreements providing for general, comprehensive and compulsory international arbitration.

### Article 25
### [Primacy of international law]

The general rules of international law shall be an integral part of federal law. They shall take precedence over the laws and directly create rights and duties for the inhabitants of the federal territory.

### Article 26
### [Securing international peace]

APP 1733

App. 2414

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

(1) Acts tending to and undertaken with intent to disturb the peaceful relations between nations, especially to prepare for a war of aggression, shall be unconstitutional. They shall be made a criminal offence.

(2) Weapons designed for warfare may be manufactured, transported or marketed only with the permission of the Federal Government. Details shall be regulated by a federal law.

## Article 27
### [Merchant fleet]

All German merchant vessels shall constitute a unitary merchant fleet.

## Article 28
### [Land constitutions – Autonomy of municipalities]

(1) The constitutional order in the Länder must conform to the principles of a republican, democratic and social state governed by the rule of law, within the meaning of this Basic Law. In each Land, county and municipality the people shall be represented by a body chosen in general, direct, free, equal and secret elections. In county and municipal elections, persons who possess citizenship in any member state of the European Community are also eligible to vote and to be elected in accord with European Community law. In municipalities a local assembly may take the place of an elected body.

(2) Municipalities must be guaranteed the right to regulate all local affairs on their own responsibility, within the limits prescribed by the laws. Within the limits of their functions designated by a law, associations of municipalities shall also have the right of self-government according to the laws. The guarantee of self-government shall extend to the bases of financial autonomy; these bases shall include the right of municipalities to a source of tax revenues based upon economic ability and the right to establish the rates at which these sources shall be taxed.

(3) The Federation shall guarantee that the constitutional order of the Länder conforms to the basic rights and to the provisions of paragraphs (1) and (2) of this Article.

## Article 29
### [New delimitation of the federal territory]

(1) The division of the federal territory into Länder may be revised to ensure that each Land be of a size and capacity to perform its functions effectively. Due regard shall be given in this connection to regional, historical and cultural ties, economic efficiency, and the requirements of local and regional planning.

(2) Revisions of the existing division into Länder shall be effected by a federal law, which must be confirmed by referendum. The affected Länder shall be afforded an opportunity to be heard.

(3) The referendum shall be held in the Länder from whose territories or parts of territories a new Land or a Land with redefined boundaries is to be established (affected Länder). The question to be voted on is whether the affected Länder are to remain as they are or whether the new Land or the Land with redefined boundaries should be established. The proposal to establish a new Land or a Land with redefined boundaries shall take effect if the change is approved by a majority in the future territory of such Land and by a majority in the territories or parts of territories of an affected Land taken together whose affiliation with a Land is to be changed in the same way. The proposal shall not take effect if within the territory of any of the affected Länder a majority reject the change; however, such rejection shall be of no consequence if in any part of the territory whose affiliation with the affected Land is to be changed a two-thirds majority approves the change, unless it is rejected by a two-thirds majority in the territory of the affected Land as a whole.

APP 1734

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

(4) If in any clearly defined and contiguous residential and economic area located in two or more Länder and having at least one million inhabitants one tenth of those entitled to vote in Bundestag elections petition for the inclusion of that area in a single Land, a federal law shall specify within two years whether the change shall be made in accordance with paragraph (2) of this Article or that an advisory referendum shall be held in the affected Länder.

(5) The advisory referendum shall establish whether the changes the law proposes meet with the voters' approval. The law may put forward not more than two distinct proposals for consideration by the voters. If a majority approves a proposed change of the existing division into Länder, a federal law shall specify within two years whether the change shall be made in accordance with paragraph (2) of this Article. If a proposal is approved in accordance with the third and fourth sentences of paragraph (3) of this Article, a federal law providing for establishment of the proposed Land shall be enacted within two years after the advisory ballot, and confirmation by referendum shall no longer be required.

(6) A majority in a referendum or in an advisory referendum shall consist of a majority of the votes cast, provided that it amounts to at least one quarter of those entitled to vote in Bundestag elections. Other details concerning referenda, petitions and advisory referenda shall be regulated by a federal law, which may also provide that the same petition may not be filed more than once within a period of five years.

(7) Other changes concerning the territory of the Länder may be effected by agreements between the Länder concerned or by a federal law with the consent of the Bundesrat, if the territory that is to be the subject of the change has no more than 50,000 inhabitants. Details shall be regulated by a federal law requiring the consent of the Bundesrat and of a majority of the Members of the Bundestag. The law must provide affected municipalities and counties with an opportunity to be heard.

(8) Länder may revise the division of their existing territory or parts of their territory by agreement without regard to the provisions of paragraphs (2) to (7) of this Article. Affected municipalities and counties shall be afforded an opportunity to be heard. The agreement shall require confirmation by referendum in each of the Länder concerned. If the revision affects only part of a Land's territory, the referendum may be confined to the areas affected; the second clause of the fifth sentence shall not apply. In a referendum under this paragraph a majority of the votes cast shall be decisive, provided it amounts to at least one quarter of those entitled to vote in Bundestag elections; details shall be regulated by a federal law. The agreement shall require the consent of the Bundestag.

## Article 30
### [Sovereign powers of the Länder]

Except as otherwise provided or permitted by this Basic Law, the exercise of state powers and the discharge of state functions is a matter for the Länder.

## Article 31
### [Supremacy of federal law]

Federal law shall take precedence over Land law.

## Article 32
### [Foreign relations]

(1) Relations with foreign states shall be conducted by the Federation.

(2) Before the conclusion of a treaty affecting the special circumstances of a Land, that Land shall be consulted in timely fashion.

(3) Insofar as the Länder have power to legislate, they may conclude treaties with foreign

APP 1735

App. 2416

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

states with the consent of the Federal Government.

## Article 33
### [Equal citizenship – Public service]

(1) Every German shall have in every Land the same political rights and duties.

(2) Every German shall be equally eligible for any public office according to his aptitude, qualifications and professional achievements.

(3) Neither the enjoyment of civil and political rights, nor eligibility for public office, nor rights acquired in the public service shall be dependent upon religious affiliation. No one may be disadvantaged by reason of adherence or non-adherence to a particular religious denomination or philosophical creed.

(4) The exercise of sovereign authority on a regular basis shall, as a rule, be entrusted to members of the public service who stand in a relationship of service and loyalty defined by public law.

(5) The law governing the public service shall be regulated and developed with due regard to the traditional principles of the professional civil service.

## Article 34
### [Liability for violation of official duty]

If any person, in the exercise of a public office entrusted to him, violates his official duty to a third party, liability shall rest principally with the state or public body that employs him. In the event of intentional wrongdoing or gross negligence, the right of recourse against the individual officer shall be preserved. The ordinary courts shall not be closed to claims for compensation or indemnity.

## Article 35
### [Legal and administrative assistance and assistance during disasters]

(1) All federal and Land authorities shall render legal and administrative assistance to one another.

(2) In order to maintain or restore public security or order, a Land in particularly serious cases may call upon personnel and facilities of the Federal Border Police to assist its police when without such assistance the police could not fulfil their responsibilities, or could do so only with great difficulty. In order to respond to a grave accident or a natural disaster, a Land may call for the assistance of police forces of other Länder or of personnel and facilities of other administrative authorities, of the Armed Forces, or of the Federal Border Police.

(3) If the natural disaster or accident endangers the territory of more than one Land, the Federal Government, insofar as is necessary to combat the danger, may instruct the Land governments to place police forces at the disposal of other Länder, and may deploy units of the Federal Border Police or the Armed Forces to support the police. Measures taken by the Federal Government pursuant to the first sentence of this paragraph shall be rescinded at any time at the demand of the Bundesrat, and in any event as soon as the danger is removed.

## Article 36
### [Personnel of federal authorities]

(1) Civil servants employed by the highest federal authorities shall be drawn from all Länder in appropriate proportion. Persons employed by other federal authorities shall, as a rule, be drawn from the Land in which they serve.

(2) Laws regarding military service shall also take into account both the division of the

APP 1736

App. 2417

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

Federation into Länder and the regional loyalties of their people.

## Article 37
### [Federal execution]

(1) If a Land fails to comply with its obligations under this Basic Law or other federal laws, the Federal Government, with the consent of the Bundesrat, may take the necessary steps to compel the Land to comply with its duties.

(2) For the purpose of implementing such coercive measures, the Federal Government or its representative shall have the right to issue instructions to all Länder and their authorities.

## III. The Bundestag

## Article 38
### [Elections]

(1) Members of the German Bundestag shall be elected in general, direct, free, equal and secret elections. They shall be representatives of the whole people, not bound by orders or instructions, and responsible only to their conscience.

(2) Any person who has attained the age of eighteen shall be entitled to vote; any person who has attained the age of majority may be elected.

(3) Details shall be regulated by a federal law.

## Article 39
### [Electoral term – Convening]

(1) Save the following provisions, the Bundestag shall be elected for four years. Its term shall end when a new Bundestag convenes. New elections shall be held no sooner than forty-six months and no later than forty-eight months after the electoral term begins. If the Bundestag is dissolved, new elections shall be held within sixty days.

(2) The Bundestag shall convene no later than the thirtieth day after the elections.

(3) The Bundestag shall determine when its sessions shall be adjourned and resumed. The President of the Bundestag may convene it at an earlier date. He shall be obliged to do so if one third of the Members, the Federal President or the Federal Chancellor so demand.

## Article 40
### [Presidency – Rules of procedure]

(1) The Bundestag shall elect its President, Vice-Presidents and secretaries. It shall adopt rules of procedure.

(2) The President shall exercise proprietary and police powers in the Bundestag building. No search or seizure may take place on the premises of the Bundestag without his permission.

## Article 41
### [Scrutiny of elections]

(1) Scrutiny of elections shall be the responsibility of the Bundestag. It shall also decide whether a Member has lost his seat.

(2) Complaints against such decisions of the Bundestag may be lodged with the Federal Constitutional Court.

(3) Details shall be regulated by a federal law.

APP 1737

App. 2418

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

### Article 42
### [Public sittings – Majority decisions]

(1) Sittings of the Bundestag shall be public. On the motion of one tenth of its Members, or on the motion of the Federal Government, the public may be excluded by a two-thirds majority. The motion shall be voted upon at a sitting not open to the public.

(2) Decisions of the Bundestag shall require a majority of the votes cast unless this Basic Law otherwise provides. The rules of procedure may permit exceptions with respect to elections to be conducted by the Bundestag.

(3) Truthful reports of public sittings of the Bundestag and of its committees shall not give rise to any liability.

### Article 43
### [Right to require presence, right of access and right to be heard]

(1) The Bundestag and its committees may require the presence of any member of the Federal Government.

(2) The members of the Bundesrat and of the Federal Government as well as their representatives may attend all sittings of the Bundestag and meetings of its committees. They shall have the right to be heard at any time.

### Article 44
### [Committees of inquiry]

(1) The Bundestag shall have the right, and on the motion of one quarter of its Members the duty, to establish a committee of inquiry, which shall take the requisite evidence at public hearings. The public may be excluded.

(2) The rules of criminal procedure shall apply mutatis mutandis to the taking of evidence. The privacy of correspondence, posts and telecommunications shall not be affected.

(3) Courts and administrative authorities shall be required to provide legal and administrative assistance.

(4) The decisions of committees of inquiry shall not be subject to judicial review. The courts shall be free to evaluate and rule upon the facts that were the subject of the investigation.

### Article 45
### [Committee on the European Union]

The Bundestag shall appoint a Committee on the Affairs of the European Union. It may authorise the committee to exercise the rights of the Bundestag under Article 23 vis-à-vis the Federal Government. It may also empower it to exercise the rights granted to the Bundestag under the contractual foundations of the European Union.

### Article 45a
### [Committees on Foreign Affairs and Defence]

(1) The Bundestag shall appoint a Committee on Foreign Affairs and a Defence Committee.

(2) The Defence Committee shall also have the powers of a committee of inquiry. On the motion of one quarter of its members it shall have the duty to make a specific matter the subject of inquiry.

(3) Paragraph (1) of Article 44 shall not apply to defence matters.

### Article 45b
### [Parliamentary Commissioner for the Armed Forces]

APP 1738

App. 2419

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

A Parliamentary Commissioner for the Armed Forces shall be appointed to safeguard basic rights and to assist the Bundestag in exercising parliamentary oversight over the Armed Forces. Details shall be regulated by a federal law.

### Article 45c
### [Petitions Committee]

(1) The Bundestag shall appoint a Petitions Committee to deal with requests and complaints addressed to the Bundestag pursuant to Article 17.

(2) The powers of the Committee to consider complaints shall be regulated by a federal law.

### Article 45d
### [Parliamentary Control Panel]

(1) The Bundestag shall appoint a panel to scrutinise the intelligence activities of the Federation.

(2) Details shall be regulated by a federal law.

### Article 46
### [Immunities of Members]

(1) At no time may a Member be subjected to court proceedings or disciplinary action or otherwise called to account outside the Bundestag for a vote cast or for any speech or debate in the Bundestag or in any of its committees. This provision shall not apply to defamatory insults.

(2) A Member may not be called to account or arrested for a punishable offence without permission of the Bundestag, unless he is apprehended while committing the offence or in the course of the following day.

(3) The permission of the Bundestag shall also be required for any other restriction of a Member's freedom of the person or for the initiation of proceedings against a Member under Article 18.

(4) Any criminal proceedings or any proceedings under Article 18 against a Member and any detention or other restriction of the freedom of his person shall be suspended at the demand of the Bundestag.

### Article 47
### [Right of refusal to give evidence]

Members may refuse to give evidence concerning persons who have confided information to them in their capacity as Members of the Bundestag, or to whom they have confided information in this capacity, as well as evidence concerning this information itself. To the extent that this right of refusal to give evidence applies, no seizure of documents shall be permissible.

### Article 48
### [Candidature – Protection of membership – Remuneration]

(1) Every candidate for election to the Bundestag shall be entitled to the leave necessary for his election campaign.

(2) No one may be prevented from accepting or exercising the office of Member of the Bundestag. No one may be given notice of dismissal or discharged from employment on this ground.

(3) Members shall be entitled to remuneration adequate to ensure their independence. They

APP 1739

App. 2420

shall be entitled to the free use of all publicly owned means of transport. Details shall be
regulated by a federal law.

### Article 49 [repealed]

### IV. The Bundesrat

### Article 50
### [Functions]

The Länder shall participate through the Bundesrat in the legislation and administration of
the Federation and in matters concerning the European Union.

### Article 51
### [Composition – Weighted voting]

(1) The Bundesrat shall consist of members of the Land governments, which appoint and
recall them. Other members of those governments may serve as alternates.

(2) Each Land shall have at least three votes; Länder with more than two million inhabitants
shall have four, Länder with more than six million inhabitants five, and Länder with more than
seven million inhabitants six votes.

(3) Each Land may appoint as many members as it has votes. The votes of each Land may
be cast only as a unit and only by Members present or their alternates.

### Article 52
### [President – Decisions – Rules of procedure]

(1) The Bundesrat shall elect its President for one year.

(2) The President shall convene the Bundesrat. He shall be obliged to do so if the delegates
of at least two Länder or the Federal Government so demand.

(3) Decisions of the Bundesrat shall require at least a majority of its votes. It shall adopt rules
of procedure. Its meetings shall be open to the public. The public may be excluded.

(3a) For matters concerning the European Union the Bundesrat may establish a Chamber for
European Affairs, whose decisions shall be considered decisions of the Bundesrat; the
number of votes to be uniformly cast by the Länder shall be determined by paragraph (2) of
Article 51.

(4) Other members or representatives of Land governments may serve on committees of the
Bundesrat.

### Article 53
### [Attendance of members of the Federal Government]

The members of the Federal Government shall have the right, and on demand the duty, to
participate in meetings of the Bundesrat and of its committees. They shall have the right to
be heard at any time. The Bundesrat shall be kept informed by the Federal Government with
regard to the conduct of its affairs.

### IVa. The Joint Committee

### Article 53a
### [Composition – Rules of procedure]

(1) The Joint Committee shall consist of Members of the Bundestag and members of the
Bundesrat; the Bundestag shall provide two thirds and the Bundesrat one third of the
committee members. The Bundestag shall designate Members in proportion to the relative

APP 1740

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

strength of the various parliamentary groups; they may not be members of the Federal Government. Each Land shall be represented by a Bundesrat member of its choice; these members shall not be bound by instructions. The establishment of the Joint Committee and its proceedings shall be regulated by rules of procedure to be adopted by the Bundestag and requiring the consent of the Bundesrat.

(2) The Federal Government shall inform the Joint Committee about its plans for a state of defence. The rights of the Bundestag and its committees under paragraph (1) of Article 43 shall not be affected by the provisions of this paragraph.

## V. The Federal President

### Article 54
### [Election – Term of office]

(1) The Federal President shall be elected by the Federal Convention without debate. Any German who is entitled to vote in Bundestag elections and has attained the age of forty may be elected.

(2) The term of office of the Federal President shall be five years. Re-election for a consecutive term shall be permitted only once.

(3) The Federal Convention shall consist of the Members of the Bundestag and an equal number of members elected by the parliaments of the Länder on the basis of proportional representation.

(4) The Federal Convention shall meet not later than thirty days before the term of office of the Federal President expires or, in the case of premature termination, not later than thirty days after that date. It shall be convened by the President of the Bundestag.

(5) After the expiration of an electoral term, the period specified in the first sentence of paragraph (4) of this Article shall begin when the Bundestag first convenes.

(6) The person receiving the votes of a majority of the members of the Federal Convention shall be elected. If after two ballots no candidate has obtained such a majority, the person who receives the largest number of votes on the next ballot shall be elected.

(7) Details shall be regulated by a federal law.

### Article 55
### [Incompatibilities]

(1) The Federal President may not be a member of the government or of a legislative body of the Federation or of a Land.

(2) The Federal President may not hold any other salaried office, or engage in any trade or profession, or belong to the management or supervisory board of any enterprise conducted for profit.

### Article 56
### [Oath of office]

On assuming his office, the Federal President shall take the following oath before the assembled Members of the Bundestag and the Bundesrat:

"I swear that I will dedicate my efforts to the well-being of the German people, promote their welfare, protect them from harm, uphold and defend the Basic Law and the laws of the Federation, perform my duties conscientiously, and do justice to all. So help me God."

The oath may also be taken without religious affirmation.

APP 1741

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

**Article 57**
**[Substitution]**

If the Federal President is unable to perform his duties, or if his office falls prematurely vacant, the President of the Bundesrat shall exercise his powers.

**Article 58**
**[Countersignature]**

Orders and directions of the Federal President shall require for their validity the countersignature of the Federal Chancellor or of the competent Federal Minister. This provision shall not apply to the appointment or dismissal of the Federal Chancellor, the dissolution of the Bundestag under Article 63, or a request made under paragraph (3) of Article 69.

**Article 59**
**[Representation of the Federation for the purposes of international law]**

(1) The Federal President shall represent the Federation for the purposes of international law. He shall conclude treaties with foreign states on behalf of the Federation. He shall accredit and receive envoys.

(2) Treaties that regulate the political relations of the Federation or relate to subjects of federal legislation shall require the consent or participation, in the form of a federal law, of the bodies responsible in such a case for the enactment of federal law. In the case of executive agreements the provisions concerning the federal administration shall apply mutatis mutandis.

**Article 59a**
**[repealed]**

**Article 60**
**[Appointment of civil servants – Pardon – Immunity]**

(1) The Federal President shall appoint and dismiss federal judges, federal civil servants, and commissioned and non-commissioned officers of the Armed Forces, except as may otherwise be provided by a law.

(2) He shall exercise the power to pardon individual offenders on behalf of the Federation.

(3) He may delegate these powers to other authorities.

(4) Paragraphs (2) to (4) of Article 46 shall apply to the Federal President mutatis mutandis.

**Article 61**
**[Impeachment before the Federal Constitutional Court]**

(1) The Bundestag or the Bundesrat may impeach the Federal President before the Federal Constitutional Court for wilful violation of this Basic Law or of any other federal law. The motion of impeachment must be supported by at least one quarter of the Members of the Bundestag or one quarter of the votes of the Bundesrat. The decision to impeach shall require a majority of two thirds of the Members of the Bundestag or of two thirds of the votes of the Bundesrat. The case for impeachment shall be presented before the Federal Constitutional Court by a person commissioned by the impeaching body.

(2) If the Federal Constitutional Court finds the Federal President guilty of a wilful violation of this Basic Law or of any other federal law, it may declare that he has forfeited his office. After the Federal President has been impeached, the Court may issue an interim order preventing him from exercising his functions.

APP 1742

App. 2423

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

## VI. The Federal Government

### Article 62
### [Composition]

The Federal Government shall consist of the Federal Chancellor and the Federal Ministers.

### Article 63
### [Election of the Federal Chancellor]

(1) The Federal Chancellor shall be elected by the Bundestag without debate on the proposal of the Federal President.

(2) The person who receives the votes of a majority of the Members of the Bundestag shall be elected. The person elected shall be appointed by the Federal President.

(3) If the person proposed by the Federal President is not elected, the Bundestag may elect a Federal Chancellor within fourteen days after the ballot by the votes of more than one half of its Members.

(4) If no Federal Chancellor is elected within this period, a new election shall take place without delay, in which the person who receives the largest number of votes shall be elected. If the person elected receives the votes of a majority of the Members of the Bundestag, the Federal President must appoint him within seven days after the election. If the person elected does not receive such a majority, then within seven days the Federal President shall either appoint him or dissolve the Bundestag.

### Article 64
### [Appointment and dismissal of Federal Ministers – Oath of office]

(1) Federal Ministers shall be appointed and dismissed by the Federal President upon the proposal of the Federal Chancellor.

(2) On taking office the Federal Chancellor and the Federal Ministers shall take the oath provided for in Article 56 before the Bundestag.

### Article 65
### [Power to determine policy guidelines – Department and collegiate responsibility]

The Federal Chancellor shall determine and be responsible for the general guidelines of policy. Within these limits each Federal Minister shall conduct the affairs of his department independently and on his own responsibility. The Federal Government shall resolve differences of opinion between Federal Ministers. The Federal Chancellor shall conduct the proceedings of the Federal Government in accordance with rules of procedure adopted by the Government and approved by the Federal President.

### Article 65a
### [Command of the Armed Forces]

(1) Command of the Armed Forces shall be vested in the Federal Minister of Defence.

(2) [repealed]

### Article 66
### [Incompatibilities]

Neither the Federal Chancellor nor a Federal Minister may hold any other salaried office, or engage in any trade or profession, or belong to the management or, without the consent of the Bundestag, to the supervisory board of an enterprise conducted for profit.

APP 1743

App. 2424

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

## Article 67
### [Vote of no confidence]

(1) The Bundestag may express its lack of confidence in the Federal Chancellor only by electing a successor by the vote of a majority of its Members and requesting the Federal President to dismiss the Federal Chancellor. The Federal President must comply with the request and appoint the person elected.

(2) Forty-eight hours shall elapse between the motion and the election.

## Article 68
### [Vote of confidence]

(1) If a motion of the Federal Chancellor for a vote of confidence is not supported by the majority of the Members of the Bundestag, the Federal President, upon the proposal of the Federal Chancellor, may dissolve the Bundestag within twenty-one days. The right of dissolution shall lapse as soon as the Bundestag elects another Federal Chancellor by the vote of a majority of its Members.

(2) Forty-eight hours shall elapse between the motion and the vote.

## Article 69
### [Deputy Federal Chancellor – Term of office]

(1) The Federal Chancellor shall appoint a Federal Minister as his deputy.

(2) The tenure of office of the Federal Chancellor or of a Federal Minister shall end in any event when a new Bundestag convenes; the tenure of office of a Federal Minister shall also end on any other occasion on which the Federal Chancellor ceases to hold office.

(3) At the request of the Federal President the Federal Chancellor, or at the request of the Federal Chancellor or of the Federal President a Federal Minister, shall be obliged to continue to manage the affairs of his office until a successor is appointed.

## VII. Federal Legislation and Legislative Procedures

### Article 70
### [Division of powers between the Federation and the Länder]

(1) The Länder shall have the right to legislate insofar as this Basic Law does not confer legislative power on the Federation.

(2) The division of authority between the Federation and the Länder shall be governed by the provisions of this Basic Law concerning exclusive and concurrent legislative powers.

### Article 71
### [Exclusive legislative power of the Federation]

On matters within the exclusive legislative power of the Federation, the Länder shall have power to legislate only when and to the extent that they are expressly authorised to do so by a federal law.

### Article 72
### [Concurrent legislative powers]

(1) On matters within the concurrent legislative power, the Länder shall have power to legislate so long as and to the extent that the Federation has not exercised its legislative power by enacting a law.

(2) The Federation shall have the right to legislate on matters falling within clauses 4, 7, 11, 13, 15, 19a, 20, 22, 25 and 26 of paragraph (1) of Article 74, if and to the extent that the

APP 1744
App. 2425

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

establishment of equivalent living conditions throughout the federal territory or the maintenance of legal or economic unity renders federal regulation necessary in the national interest.

(3) If the Federation has made use of its power to legislate, the Länder may enact laws at variance with this legislation with respect to:

1.      hunting (except for the law on hunting licenses);

2.      protection of nature and landscape management (except for the general principles governing the protection of nature, the law on protection of plant and animal species or the law on protection of marine life);

3.      land distribution;

4.      regional planning;

5.      management of water resources (except for regulations related to materials or facilities);

6.      admission to institutions of higher education and requirements for graduation in such institutions.

Federal laws on these matters shall enter into force no earlier than six months following their promulgation unless otherwise provided with the consent of the Bundesrat. As for the relationship between federal law and law of the Länder, the latest law enacted shall take precedence with respect to matters within the scope of the first sentence.

(4) A federal law may provide that federal legislation that is no longer necessary within the meaning of paragraph (2) of this Article may be superseded by Land law.

**Article 73**
**[Matters under exclusive legislative power of the Federation]**

(1) The Federation shall have exclusive legislative power with respect to:

1.      foreign affairs and defence, including protection of the civilian population;

2.      citizenship in the Federation;

3.      freedom of movement, passports, residency registration and identity cards, immigration, emigration and extradition;

4.      currency, money and coinage, weights and measures, and the determination of standards of time;

5.      the unity of the customs and trading area, treaties regarding commerce and navigation, the free movement of goods, and the exchange of goods and payments with foreign countries, including customs and border protection;

5a.     safeguarding German cultural assets against removal from the country;

6.      air transport;

6a.     the operation of railways wholly or predominantly owned by the Federation (federal railways), the construction, maintenance and operation of railroad lines belonging to federal railways, and the levying of charges for the use of these lines;

7.      postal and telecommunications services;

8.      the legal relations of persons employed by the Federation and by federal corporations under public law;

**APP 1745**

App. 2426

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

9.      industrial property rights, copyrights and publishing;

9a.      protection by the Federal Criminal Police Office against the dangers of international terrorism when a threat transcends the boundary of one Land, when the jurisdiction of a Land's police authorities cannot be perceived, or when the highest authority of an individual Land requests the assumption of federal responsibility;

10.      cooperation between the Federation and the Länder concerning

     a)   criminal police work,

     b)   protection of the free democratic basic order, existence and security of the Federation or of a Land (protection of the constitution), and

     c)   protection against activities within the federal territory which, by the use of force or preparations for the use of force, endanger the external interests of the Federal Republic of Germany,

as well as the establishment of a Federal Criminal Police Office and international action to combat crime;

11.      statistics for federal purposes;

12.      the law on weapons and explosives;

13.      benefits for persons disabled by war and for dependents of deceased war victims as well as assistance to former prisoners of war;

14.      the production and utilisation of nuclear energy for peaceful purposes, the construction and operation of facilities serving such purposes, protection against hazards arising from the release of nuclear energy or from ionising radiation, and the disposal of radioactive substances.

(2) Laws enacted pursuant to clause 9a of paragraph (1) require the consent of the Bundesrat.

### Article 74
### [Matters under concurrent legislative powers]

(1) Concurrent legislative power shall extend to the following matters:

1.      civil law, criminal law, court organisation and procedure (except for the correctional law of pretrial detention), the legal profession, notaries, and the provision of legal advice;

2.      registration of births, deaths and marriages;

3.      the law of association;

4.      the law relating to residence and establishment of foreign nationals;

4a.      [repealed]

5.      [repealed]

6.      matters concerning refugees and expellees;

7.      public welfare (except for the law on social care homes);

8.      [repealed]

9.      war damage and reparations;

**APP 1746**

App. 2427

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

10.     war graves and graves of other victims of war or despotism;

11.     the law relating to economic matters (mining, industry, energy, crafts, trades, commerce, banking, stock exchanges and private insurance), except for the law on shop closing hours, restaurants, game halls, display of individual persons, trade fairs, exhibitions and markets;

11a.     [repealed]

12.     labour law, including the organisation of enterprises, occupational health and safety, and employment agencies, as well as social security, including unemployment insurance;

13.     the regulation of educational and training grants and the promotion of research;

14.     the law regarding expropriation, to the extent relevant to matters enumerated in Articles 73 and 74;

15.     the transfer of land, natural resources, and means of production to public ownership or other forms of public enterprise;

16.     prevention of the abuse of economic power;

17.     the promotion of agricultural production and forestry (except for the law on land consolidation), ensuring the adequacy of food supply, the importation and exportation of agricultural and forestry products, deep-sea and coastal fishing, and preservation of the coasts;

18.     urban real estate transactions, land law (except for laws regarding development fees), and the law on rental subsidies, subsidies for old debts, home building loan premiums, miners' homebuilding and homesteading;

19.     measures to combat human and animal diseases which pose a danger to the public or are communicable, admission to the medical profession and to ancillary professions or occupations, as well as the law on pharmacies, medicines, medical products, drugs, narcotics and poisons;

19a.     the economic viability of hospitals and the regulation of hospital charges;

20.     the law on food products including animals used in their production, the law on alcohol and tobacco, essential commodities and feedstuffs as well as protective measures in connection with the marketing of agricultural and forest seeds and seedlings, the protection of plants against diseases and pests, as well as the protection of animals;

21.     maritime and coastal shipping, as well as navigational aids, inland navigation, meteorological services, sea routes, and inland waterways used for general traffic;

22.     road traffic, motor transport, construction and maintenance of long-distance highways, as well as the collection of tolls for the use of public highways by vehicles and the allocation of the revenue;

23.     non-federal railways, except mountain railways;

24.     waste disposal, air pollution control, and noise abatement (except for the protection from noise associated with human activity);

25.     state liability;

26.     medically assisted generation of human life, analysis and modification of genetic information as well as the regulation of organ, tissue and cell transplantation;

APP 1747

App. 2428

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

27.     the statutory rights and duties of civil servants of the Länder, the municipalities and other corporations of public law as well as of the judges in the Länder, except for their career regulations, remuneration and pensions;

28.     hunting;

29.     protection of nature and landscape management;

30.     land distribution;

31.     regional planning;

32.     management of water resources;

33.     admission to institutions of higher education and requirements for graduation in such institutions.

(2) Laws enacted pursuant to clauses 25 and 27 of paragraph (1) shall require the consent of the Bundesrat.

### Article 74a
### [repealed]

### Article 75
### [repealed]

### Article 76
### [Bills]

(1) Bills may be introduced in the Bundestag by the Federal Government, by the Bundesrat, or from the floor of the Bundestag.

(2) Federal Government bills shall first be submitted to the Bundesrat. The Bundesrat shall be entitled to comment on such bills within six weeks. If for important reasons, especially with respect to the scope of the bill, the Bundesrat demands an extension, the period shall be increased to nine weeks. If in exceptional circumstances the Federal Government on submitting a bill to the Bundesrat declares it to be particularly urgent, it may submit the bill to the Bundestag after three weeks or, if the Bundesrat has demanded an extension pursuant to the third sentence of this paragraph, after six weeks, even if it has not yet received the Bundesrat's comments; upon receiving such comments, it shall transmit them to the Bundestag without delay. In the case of bills to amend this Basic Law or to transfer sovereign powers pursuant to Article 23 or 24 the comment period shall be nine weeks; the fourth sentence of this paragraph shall not apply.

(3) Bundesrat bills shall be submitted to the Bundestag by the Federal Government within six weeks. In submitting them the Federal Government shall state its own views. If for important reasons, especially with respect to the scope of the bill, the Federal Government demands an extension, the period shall be increased to nine weeks. If in exceptional circumstances the Bundesrat declares a bill to be particularly urgent, the period shall be three weeks or, if the Federal Government has demanded an extension pursuant to the third sentence of this paragraph, six weeks. In the case of bills to amend this Basic Law or to transfer sovereign powers pursuant to Article 23 or 24 the comment period shall be nine weeks; the fourth sentence of this paragraph shall not apply. The Bundestag shall consider and vote on bills within a reasonable time.

### Article 77
### [Legislative procedure – Mediation Committee]

(1) Federal laws shall be adopted by the Bundestag. After their adoption the President of the Bundestag shall submit them to the Bundesrat without delay.

**APP 1748**

App. 2429

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

(2) Within three weeks after receiving an adopted bill, the Bundesrat may demand that a committee for joint consideration of bills, composed of Members of the Bundestag and of the Bundesrat, be convened. The composition and proceedings of this committee shall be regulated by rules of procedure adopted by the Bundestag and requiring the consent of the Bundesrat. The members of the Bundesrat on this committee shall not be bound by instructions. When the consent of the Bundesrat is required for a bill to become law, the Bundestag and the Federal Government may likewise demand that such a committee be convened. Should the committee propose any amendment to the adopted bill, the Bundestag shall vote on it a second time.

(2a) Insofar as its consent is required for a bill to become law, the Bundesrat, if no request has been made pursuant to the first sentence of paragraph (2) of this Article or if the mediation proceeding has been completed without a proposal to amend the bill, shall vote on the bill within a reasonable time.

(3) Insofar as its consent is not required for a bill to become law, the Bundesrat, once proceedings under paragraph (2) of this Article are completed, may within two weeks object to a bill adopted by the Bundestag. The time for objection shall begin, in the case described in the last sentence of paragraph (2) of this Article, upon receipt of the bill as re-adopted by the Bundestag, and in all other cases upon receipt of a communication from the chairman of the committee provided for in paragraph (2) of this Article to the effect that the committee's proceedings have been concluded.

(4) If the objection is adopted by the majority of the votes of the Bundesrat, it may be rejected by a decision of the majority of the Members of the Bundestag. If the Bundesrat adopted the objection by a majority of at least two thirds of its votes, its rejection by the Bundestag shall require a two-thirds majority, including at least a majority of the Members of the Bundestag.

### Article 78
### [Passage of federal laws]

A bill adopted by the Bundestag shall become law if the Bundesrat consents to it, or fails to make a demand pursuant to paragraph (2) of Article 77, or fails to enter an objection within the period stipulated in paragraph (3) of Article 77, or withdraws such an objection, or if the objection is overridden by the Bundestag.

### Article 79
### [Amendment of the Basic Law]

(1) This Basic Law may be amended only by a law expressly amending or supplementing its text. In the case of an international treaty regarding a peace settlement, the preparation of a peace settlement, or the phasing out of an occupation regime, or designed to promote the defence of the Federal Republic, it shall be sufficient, for the purpose of making clear that the provisions of this Basic Law do not preclude the conclusion and entry into force of the treaty, to add language to the Basic Law that merely makes this clarification.

(2) Any such law shall be carried by two thirds of the Members of the Bundestag and two thirds of the votes of the Bundesrat.

(3) Amendments to this Basic Law affecting the division of the Federation into Länder, their participation on principle in the legislative process, or the principles laid down in Articles 1 and 20 shall be inadmissible.

### Article 80
### [Issuance of statutory instruments]

(1) The Federal Government, a Federal Minister or the Land governments may be

APP 1749

App. 2430

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

authorised by a law to issue statutory instruments. The content, purpose and scope of the authority conferred shall be specified in the law. Each statutory instrument shall contain a statement of its legal basis. If the law provides that such authority may be further delegated, such subdelegation shall be effected by statutory instrument.

(2) Unless a federal law otherwise provides, the consent of the Bundesrat shall be required for statutory instruments issued by the Federal Government or a Federal Minister regarding fees or basic principles for the use of postal and telecommunication facilities, basic principles for levying of charges for the use of facilities of federal railways, or the construction and operation of railways, as well as for statutory instruments issued pursuant to federal laws that require the consent of the Bundesrat or that are executed by the Länder on federal commission or in their own right.

(3) The Bundesrat may submit to the Federal Government drafts of statutory instruments that require its consent.

(4) Insofar as Land governments are authorised by or pursuant to federal laws to issue statutory instruments, the Länder shall also be entitled to regulate the matter by a law.

### Article 80a
### [State of tension]

(1) If this Basic Law or a federal law regarding defence, including protection of the civilian population, provides that legal provisions may be applied only in accordance with this Article, their application, except when a state of defence has been declared, shall be permissible only after the Bundestag has determined that a state of tension exists or has specifically approved such application. The determination of a state of tension and specific approval in the cases mentioned in the first sentence of paragraph (5) and the second sentence of paragraph (6) of Article 12a shall require a two-thirds majority of the votes cast.

(2) Any measures taken pursuant to legal provisions by virtue of paragraph (1) of this Article shall be rescinded whenever the Bundestag so demands.

(3) Notwithstanding paragraph (1) of this Article, the application of such legal provisions shall also be permissible on the basis of and in accordance with a decision made by an international body within the framework of a treaty of alliance with the approval of the Federal Government. Any measures taken pursuant to this paragraph shall be rescinded whenever the Bundestag, by the vote of a majority of its Members, so demands.

### Article 81
### [Legislative emergency]

(1) If, in the circumstances described in Article 68, the Bundestag is not dissolved, the Federal President, at the request of the Federal Government and with the consent of the Bundesrat, may declare a state of legislative emergency with respect to a bill, if the Bundestag rejects the bill although the Federal Government has declared it to be urgent. The same shall apply if a bill has been rejected although the Federal Chancellor had combined it with a motion under Article 68.

(2) If, after a state of legislative emergency has been declared, the Bundestag again rejects the bill or adopts it in a version the Federal Government declares unacceptable, the bill shall be deemed to have become law to the extent that it receives the consent of the Bundesrat. The same shall apply if the Bundestag does not pass the bill within four weeks after it is reintroduced.

(3) During the term of office of a Federal Chancellor, any other bill rejected by the Bundestag may become law in accordance with paragraphs (1) and (2) of this Article within a period of six months after the first declaration of a state of legislative emergency. After the expiration

**APP 1750**

App. 2431

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

of this period, no further declaration of a state of legislative emergency may be made during the term of office of the same Federal Chancellor.

(4) This Basic Law may neither be amended nor abrogated nor suspended in whole or in part by a law enacted pursuant to paragraph (2) of this Article.

### Article 82
### [Certification – Promulgation – Entry into force]

(1) Laws enacted in accordance with the provisions of this Basic Law shall, after countersignature, be certified by the Federal President and promulgated in the Federal Law Gazette. Statutory instruments shall be certified by the agency that issues them and, unless a law otherwise provides, shall be promulgated in the Federal Law Gazette.

(2) Every law or statutory instrument shall specify the date on which it shall take effect. In the absence of such a provision, it shall take effect on the fourteenth day after the day on which the Federal Law Gazette containing it was published.

### VIII. The Execution of Federal Laws and the Federal Administration

### Article 83
### [Execution by the Länder]

The Länder shall execute federal laws in their own right insofar as this Basic Law does not otherwise provide or permit.

### Article 84
### [Länder administration – Federal oversight]

(1) Where the Länder execute federal laws in their own right, they shall provide for the establishment of the requisite authorities and regulate their administrative procedures. If federal laws provide otherwise, the Länder may enact deviating regulations. If a Land has enacted a law pursuant to the second sentence, subsequent federal laws regulating the organisation of authorities and their administrative procedure shall not be enacted until at least six months after their promulgation, provided that no other determination has been made with the consent of the Bundesrat. The third sentence of paragraph (2) of Article 72 shall apply accordingly. In exceptional cases, owing to a special need for uniform federal legislation, the Federation may regulate the administrative procedure with no possibility of separate Land legislation. Such laws shall require the consent of the Bundesrat. Federal laws may not entrust municipalities and associations of municipalities with any tasks.

(2) The Federal Government, with the consent of the Bundesrat, may issue general administrative rules.

(3) The Federal Government shall exercise oversight to ensure that the Länder execute federal laws in accordance with the law. For this purpose the Federal Government may send commissioners to the highest Land authorities and, with their consent or, where such consent is refused, with the consent of the Bundesrat, also to subordinate authorities.

(4) Should any deficiencies that the Federal Government has identified in the execution of federal laws in the Länder not be corrected, the Bundesrat, on application of the Federal Government or of the Land concerned, shall decide whether that Land has violated the law. The decision of the Bundesrat may be challenged in the Federal Constitutional Court.

(5) With a view to the execution of federal laws, the Federal Government may be authorised by a federal law requiring the consent of the Bundesrat to issue instructions in particular cases. They shall be addressed to the highest Land authorities unless the Federal Government considers the matter urgent.

APP 1751

App. 2432

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

## Article 85
### [Execution by the Länder on federal commission]

(1) Where the Länder execute federal laws on federal commission, establishment of the authorities shall remain the concern of the Länder, except insofar as federal laws enacted with the consent of the Bundesrat otherwise provide. Federal laws may not entrust municipalities and associations of municipalities with any tasks.

(2) The Federal Government, with the consent of the Bundesrat, may issue general administrative rules. It may provide for the uniform training of civil servants and other salaried public employees. The heads of intermediate authorities shall be appointed with its approval.

(3) The Land authorities shall be subject to instructions from the competent highest federal authorities. Such instructions shall be addressed to the highest Land authorities unless the Federal Government considers the matter urgent. Implementation of the instructions shall be ensured by the highest Land authorities.

(4) Federal oversight shall extend to the legality and appropriateness of execution. For this purpose the Federal Government may require the submission of reports and documents and send commissioners to all authorities.

## Article 86
### [Federal administration]

Where the Federation executes laws through its own administrative authorities or through federal corporations or institutions established under public law, the Federal Government shall, insofar as the law in question contains no special provision, issue general administrative rules. The Federal Government shall provide for the establishment of the authorities insofar as the law in question does not otherwise provide.

## Article 87
### [Matters]

(1) The foreign service, the federal financial administration, and, in accordance with the provisions of Article 89, the administration of federal waterways and shipping shall be conducted by federal administrative authorities with their own administrative substructures. A federal law may establish Federal Border Police authorities and central offices for police information and communications, for the criminal police, and for the compilation of data for purposes of protection of the constitution and of protection against activities within the federal territory which, through the use of force or acts preparatory to the use of force, endanger the external interests of the Federal Republic of Germany.

(2) Social insurance institutions whose jurisdiction extends beyond the territory of a single Land shall be administered as federal corporations under public law. Social insurance institutions whose jurisdiction extends beyond the territory of a single Land but not beyond that of three Länder shall, notwithstanding the first sentence of this paragraph, be administered as Land corporations under public law, if the Länder concerned have specified which Land shall exercise supervisory authority.

(3) In addition, autonomous federal higher authorities as well as new federal corporations and institutions under public law may be established by a federal law for matters on which the Federation has legislative power. When the Federation is confronted with new responsibilities with respect to matters on which it has legislative power, federal authorities at intermediate and lower levels may be established, with the consent of the Bundesrat and of a majority of the Members of the Bundestag, in cases of urgent need.

APP 1752

App. 2433

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

### Article 87a
### [Armed Forces]

(1) The Federation shall establish Armed Forces for purposes of defence. Their numerical strength and general organisational structure must be shown in the budget.

(2) Apart from defence, the Armed Forces may be employed only to the extent expressly permitted by this Basic Law.

(3) During a state of defence or a state of tension the Armed Forces shall have the power to protect civilian property and to perform traffic control functions to the extent necessary to accomplish their defence mission. Moreover, during a state of defence or a state of tension, the Armed Forces may also be authorised to support police measures for the protection of civilian property; in this event the Armed Forces shall cooperate with the competent authorities.

(4) In order to avert an imminent danger to the existence or free democratic basic order of the Federation or of a Land, the Federal Government, if the conditions referred to in paragraph (2) of Article 91 obtain and the police forces and the Federal Border Police prove inadequate, may employ the Armed Forces to support the police and the Federal Border Police in protecting civilian property and in combating organised armed insurgents. Any such employment of the Armed Forces shall be discontinued if the Bundestag or the Bundesrat so demands.

### Article 87b
### [Federal Defence Administration]

(1) The Federal Defence Administration shall be conducted as a federal administrative authority with its own administrative substructure. It shall have jurisdiction for personnel matters and direct responsibility for satisfaction of the procurement needs of the Armed Forces. Responsibilities connected with pensions for injured persons or with construction work may be assigned to the Federal Defence Administration only by a federal law requiring the consent of the Bundesrat. Such consent shall also be required for any laws to the extent that they empower the Federal Defence Administration to interfere with rights of third parties; this requirement, however, shall not apply in the case of laws regarding personnel matters.

(2) In addition, federal laws concerning defence, including recruitment for military service and protection of the civilian population, may, with the consent of the Bundesrat, provide that they shall be executed, wholly or in part, either by federal administrative authorities with their own administrative substructures or by the Länder on federal commission. If such laws are executed by the Länder on federal commission, they may, with the consent of the Bundesrat, provide that the powers vested in the Federal Government or in the competent highest federal authorities pursuant to Article 85 be transferred wholly or in part to federal higher authorities; in this event the law may provide that such authorities shall not require the consent of the Bundesrat in issuing general administrative rules pursuant to the first sentence of paragraph (2) of Article 85.

### Article 87c
### [Production and utilisation of nuclear energy]

Laws enacted under clause 14 of paragraph (1) of Article 73 may, with the consent of the Bundesrat, provide that they shall be executed by the Länder on federal commission.

### Article 87d
### [Air transport administration]

(1) Air transport administration shall be conducted under federal administration. Air navigation services may also be provided by foreign air navigation service providers which

APP 1753
App. 2434

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

are authorised in accordance with European Community law.

(2) By a federal law requiring the consent of the Bundesrat, responsibilities for air transport administration may be delegated to the Länder acting on federal commission.

### Article 87e
### [Rail transport administration]

(1) Rail transport with respect to federal railways shall be administered by federal authorities. Responsibilities for rail transport administration may be delegated by a federal law to the Länder acting in their own right.

(2) The Federation shall discharge rail transport administration responsibilities assigned to it by a federal law, above and beyond those regarding federal railways.

(3) Federal railways shall be operated as enterprises under private law. They shall remain the property of the Federation to the extent that their activities embrace the construction, maintenance and operation of the tracks. The transfer of federal shares in these enterprises under the second sentence of this paragraph shall be effected pursuant to a law; the Federation shall retain a majority of the shares. Details shall be regulated by a federal law.

(4) The Federation shall ensure that in developing and maintaining the federal railway system as well as in offering services over this system, other than local passenger services, due account is taken of the interests and especially the transportation needs of the public. Details shall be regulated by a federal law.

(5) Laws enacted pursuant to paragraphs (1) to (4) of this Article shall require the consent of the Bundesrat. The consent of the Bundesrat shall also be required for laws regarding the dissolution, merger or division of federal railway enterprises, the transfer of tracks of federal railways to third parties, or the abandonment of such tracks, or affecting local passenger services.

### Article 87f
### [Posts and telecommunications]

(1) In accordance with a federal law requiring the consent of the Bundesrat, the Federation shall ensure the availability of adequate and appropriate postal and telecommunications services throughout the federal territory.

(2) Services within the meaning of paragraph (1) of this Article shall be provided as a matter of private enterprise by the firms succeeding to the special trust Deutsche Bundespost and by other private providers. Sovereign functions in the area of posts and telecommunications shall be discharged by federal administrative authorities.

(3) Notwithstanding the second sentence of paragraph (2) of this Article, the Federation, by means of a federal institution under public law, shall discharge particular responsibilities relating to the firms succeeding to the special trust Deutsche Bundespost as prescribed by a federal law.

### Article 88
### [The Federal Bank – The European Central Bank]

The Federation shall establish a note-issuing and currency bank as the Federal Bank. Within the framework of the European Union, its responsibilities and powers may be transferred to the European Central Bank, which is independent and committed to the overriding goal of assuring price stability.

### Article 89
### [Federal waterways – Administration of waterways]

APP 1754

App. 2435

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

(1) The Federation shall be the owner of the former Reich waterways.

(2) The Federation shall administer the federal waterways through its own authorities. It shall exercise those state functions relating to inland shipping which extend beyond the territory of a single Land, and those functions relating to maritime shipping, which are conferred on it by a law. Insofar as federal waterways lie within the territory of a single Land, the Federation on its application may delegate their administration to that Land on federal commission. If a waterway touches the territory of several Länder, the Federation may commission that Land which is designated by the affected Länder.

(3) In the administration, development and new construction of waterways, the requirements of land improvement and of water management shall be assured in agreement with the Länder.

### Article 90
### [Federal highways]

(1) The Federation shall be the owner of the former Reich motorways and highways.

(2) The Länder, or such self-governing corporate bodies as are competent under Land law, shall administer the federal motorways and other federal highways used by long-distance traffic on federal commission.

(3) On application of a Land, the Federation may assume the administration of federal motorways and other federal highways used by long-distance traffic insofar as they lie within the territory of that Land.

### Article 91
### [Internal emergency]

(1) In order to avert an imminent danger to the existence or free democratic basic order of the Federation or of a Land, a Land may call upon police forces of other Länder, or upon personnel and facilities of other administrative authorities and of the Federal Border Police.

(2) If the Land where such danger is imminent is not itself willing or able to combat the danger, the Federal Government may place the police in that Land and the police forces of other Länder under its own orders and deploy units of the Federal Border Police. Any such order shall be rescinded once the danger is removed, or at any time on the demand of the Bundesrat. If the danger extends beyond the territory of a single Land, the Federal Government, insofar as is necessary to combat such danger, may issue instructions to the Land governments; the first and second sentences of this paragraph shall not be affected by this provision.

### VIIIa. Joint Tasks

### Article 91a
### [Joint tasks – Responsibility for expenditure]

(1) In the following areas the Federation shall participate in the discharge of responsibilities of the Länder, provided that such responsibilities are important to society as a whole and that federal participation is necessary for the improvement of living conditions (joint tasks):

1.  improvement of regional economic structures;

2.  improvement of the agrarian structure and of coastal preservation.

(2) Federal laws enacted with the consent of the Bundesrat shall specify the joint tasks as well as the details of coordination.

(3) In cases to which clause 1 of paragraph (1) of this Article applies, the Federation shall

APP 1755

App. 2436

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

finance one half of the expenditure in each Land. In cases to which clause 2 of paragraph (1) of this Article applies, the Federation shall finance at least one half of the expenditure, and the proportion shall be the same for all Länder. Details shall be regulated by law. The provision of funds shall be subject to appropriation in the budgets of the Federation and the Länder.

(4) - (5) [repealed]

### Article 91b
### [Education programmes and promotion of research]

(1) The Federation and the Länder may mutually agree to cooperate in cases of supraregional importance in the promotion of:

    1.      research facilities and projects apart from institutions of higher education;

    2.      scientific projects and research at institutions of higher education;

    3.      construction of facilities at institutions of higher education, including large scientific installations.

Agreements under clause 2 of paragraph (1) shall require the consent of all the Länder.

(2) The Federation and the Länder may mutually agree to cooperate for the assessment of the performance of educational systems in international comparison and in drafting relevant reports and recommendations.

(3) The apportionment of costs shall be regulated in the pertinent agreement.

### Article 91c
### [Information technology systems]

(1) The Federation and the Länder may cooperate in planning, constructing, and operating information technology systems needed to discharge their responsibilities.

(2) The Federation and the Länder may agree to specify the standards and security requirements necessary for exchanges between their information technology systems. Agreements regarding the bases of cooperation under the first sentence may provide, for individual responsibilities determined by their content and scope, that detailed regulations be enacted with the consent of a qualified majority of the Federation and the Länder as laid down in the agreements. They require the consent of the Bundestag and the legislatures of the participating Länder; the right to withdraw from these agreements cannot be precluded. The agreements shall also regulate the sharing of costs.

(3) The Länder may also agree on the joint operation of information technology systems along with the establishment of installations for that purpose.

(4) For linking the information networks of the Federation and the Länder, the Federation shall establish a connecting network. Details regarding the establishment and the operation of the connecting network shall be regulated by a federal law with the consent of the Bundesrat.

### Article 91d
### [Comparison of performance]

With a view to ascertaining and improving the performance of their administrations, the Federation and the Länder may conduct comparative studies and publish the results thereof.

### Article 91e
### [Cooperation in respect of basic support for persons seeking employment]

APP 1756

App. 2437

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

(1) In the execution of federal laws in the field of basic support for persons seeking employment the Federation and the Länder or the municipalities and associations of municipalities responsible pursuant to Land law shall generally cooperate in joint institutions.

(2) The Federation may authorise a limited number of municipalities and associations of municipalities, at their request and with the consent of the highest Land authority, to discharge the tasks pursuant to paragraph (1) alone. In this case, the Federation shall bear the necessary expenditures including the administrative expenses for the tasks which are to be discharged by the Federation in the execution of laws pursuant to paragraph (1).

(3) Details shall be regulated by a federal law requiring the consent of the Bundesrat.

### IX. The Judiciary

### Article 92
### [Court organisation]

The judicial power shall be vested in the judges; it shall be exercised by the Federal Constitutional Court, by the federal courts provided for in this Basic Law, and by the courts of the Länder.

### Article 93
### [Jurisdiction of the Federal Constitutional Court]

(1) The Federal Constitutional Court shall rule:

    1.    on the interpretation of this Basic Law in the event of disputes concerning the extent of the rights and duties of a supreme federal body or of other parties vested with rights of their own by this Basic Law or by the rules of procedure of a supreme federal body;

    2.    in the event of disagreements or doubts concerning the formal or substantive compatibility of federal law or Land law with this Basic Law, or the compatibility of Land law with other federal law, on application of the Federal Government, of a Land government, or of one fourth of the Members of the Bundestag;

    2a.    in the event of disagreements whether a law meets the requirements of paragraph (2) of Article 72, on application of the Bundesrat or of the government or legislature of a Land;

    3.    in the event of disagreements concerning the rights and duties of the Federation and the Länder, especially in the execution of federal law by the Länder and in the exercise of federal oversight;

    4.    on other disputes involving public law between the Federation and the Länder, between different Länder, or within a Land, unless there is recourse to another court;

    4a.    on constitutional complaints, which may be filed by any person alleging that one of his basic rights or one of his rights under paragraph (4) of Article 20 or under Article 33, 38, 101, 103 or 104 has been infringed by public authority;

    4b.    on constitutional complaints filed by municipalities or associations of municipalities on the ground that their right to self-government under Article 28 has been infringed by a law; in the case of infringement by a Land law, however, only if the law cannot be challenged in the constitutional court of the Land;

    4c.    on constitutional complaints filed by associations concerning their non-recognition as political parties for an election to the Bundestag;

    5.    in the other instances provided for in this Basic Law.

APP 1757

App. 2438

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

(2) At the request of the Bundesrat, a Land government or the parliamentary assembly of a Land, the Federal Constitutional Court shall also rule whether in cases falling under para

graph (4) of Article 72 the need for a regulation by federal law does not exist any longer or whether in the cases referred to in clause 1 of paragraph (2) of Article 125a federal law could not be enacted any longer. The Court's determination that the need has ceased to exist or that federal law could no longer be enacted substitutes a federal law according to paragraph (4) of Article 72 or clause 2 of paragraph (2) of Article 125a. A request under the first sentence is admissible only if a bill falling under paragraph (4) of Article 72 or the second sentence of paragraph (2) of Article 125a has been rejected by the German Bundestag or if it has not been considered and determined upon within one year, or if a similar bill has been rejected by the Bundesrat.

(3) The Federal Constitutional Court shall also rule on such other matters as shall be assigned to it by a federal law.

## Article 94
### [Composition of the Federal Constitutional Court]

(1) The Federal Constitutional Court shall consist of federal judges and other members. Half the members of the Federal Constitutional Court shall be elected by the Bundestag and half by the Bundesrat. They may not be members of the Bundestag, of the Bundesrat, of the Federal Government, or of any of the corresponding bodies of a Land.

(2) The organisation and procedure of the Federal Constitutional Court shall be regulated by a federal law, which shall specify in which instances its decisions shall have the force of law. The law may require that all other legal remedies be exhausted before a constitutional complaint may be filed, and may provide for a separate proceeding to determine whether the complaint will be accepted for decision.

## Article 95
### [Supreme federal courts]

(1) The Federation shall establish the Federal Court of Justice, the Federal Administrative Court, the Federal Finance Court, the Federal Labour Court and the Federal Social Court as supreme courts of ordinary, administrative, financial, labour and social jurisdiction.

(2) The judges of each of these courts shall be chosen jointly by the competent Federal Minister and a committee for the selection of judges consisting of the competent Land ministers and an equal number of members elected by the Bundestag.

(3) A Joint Chamber of the courts specified in paragraph (1) of this Article shall be established to preserve the uniformity of decisions. Details shall be regulated by a federal law.

## Article 96
### [Other federal courts]

(1) The Federation may establish a federal court for matters concerning industrial property rights.

(2) The Federation may establish federal military criminal courts for the Armed Forces. These courts may exercise criminal jurisdiction only during a state of defence or over members of the Armed Forces serving abroad or on board warships. Details shall be regulated by a federal law. These courts shall be under the aegis of the Federal Minister of Justice. Their full-time judges shall be persons qualified to hold judicial office.

(3) The supreme court of review from the courts designated in paragraphs (1) and (2) of this Article shall be the Federal Court of Justice.

APP 1758

App. 2439

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

(4) The Federation may establish federal courts for disciplinary proceedings against, and for proceedings on complaints by, persons in the federal public service.

(5) With the consent of the Bundesrat, a federal law may provide that courts of the Länder shall exercise federal jurisdiction over criminal proceedings in the following matters:

1.    genocide;

2.    crimes against humanity under international criminal law;

3.    war crimes;

4.    other acts tending to and undertaken with the intent to disturb the peaceful relations between nations (paragraph (1) of Article 26);

5.    state security.

### Article 97
### [Judicial independence]

(1) Judges shall be independent and subject only to the law.

(2) Judges appointed permanently to full-time positions may be involuntarily dismissed, permanently or temporarily suspended, transferred or retired before the expiration of their term of office only by virtue of judicial decision and only for the reasons and in the manner specified by the laws. The legislature may set age limits for the retirement of judges appointed for life. In the event of changes in the structure of courts or in their districts, judges may be transferred to another court or removed from office, provided they retain their full salary.

### Article 98
### [Legal status of judges – Impeachment]

(1) The legal status of federal judges shall be regulated by a special federal law.

(2) If a federal judge infringes the principles of this Basic Law or the constitutional order of a Land in his official capacity or unofficially, the Federal Constitutional Court, upon application of the Bundestag, may by a two-thirds majority order that the judge be transferred or retired. In the case of an intentional infringement it may order him dismissed.

(3) The legal status of the judges in the Länder shall be regulated by special Land laws if clause 27 of paragraph (1) of Article 74 does not otherwise provide.

(4) The Länder may provide that Land judges shall be chosen jointly by the Land Minister of Justice and a committee for the selection of judges.

(5) The Länder may enact provisions regarding Land judges that correspond with those of paragraph (2) of this Article. Existing Land constitutional law shall not be affected. The decision in cases of judicial impeachment shall rest with the Federal Constitutional Court.

### Article 99
### [Constitutional disputes within a Land]

A Land law may assign the decision of constitutional disputes within a Land to the Federal Constitutional Court, and the final decision in matters involving the application of Land law to the supreme courts specified in paragraph (1) of Article 95.

### Article 100
### [Concrete judicial review]

(1) If a court concludes that a law on whose validity its decision depends is unconstitutional,

APP 1759

App. 2440

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

the proceedings shall be stayed, and a decision shall be obtained from the Land court with jurisdiction over constitutional disputes where the constitution of a Land is held to be violated, or from the Federal Constitutional Court where this Basic Law is held to be violated. This provision shall also apply where the Basic Law is held to be violated by Land law and where a Land law is held to be incompatible with a federal law.

(2) If, in the course of litigation, doubt exists whether a rule of international law is an integral part of federal law and whether it directly creates rights and duties for the individual (Article 25), the court shall obtain a decision from the Federal Constitutional Court.

(3) If the constitutional court of a Land, in interpreting this Basic Law, proposes to deviate from a decision of the Federal Constitutional Court or of the constitutional court of another Land, it shall obtain a decision from the Federal Constitutional Court.

### Article 101
### [Ban on extraordinary courts]

(1) Extraordinary courts shall not be allowed. No one may be removed from the jurisdiction of his lawful judge.

(2) Courts for particular fields of law may be established only by a law.

### Article 102
### [Abolition of capital punishment]

Capital punishment is abolished.

### Article 103
### [Fair trial]

(1) In the courts every person shall be entitled to a hearing in accordance with law.

(2) An act may be punished only if it was defined by a law as a criminal offence before the act was committed.

(3) No person may be punished for the same act more than once under the general criminal laws.

### Article 104
### [Deprivation of liberty]

(1) Liberty of the person may be restricted only pursuant to a formal law and only in compliance with the procedures prescribed therein. Persons in custody may not be subjected to mental or physical mistreatment.

(2) Only a judge may rule upon the permissibility or continuation of any deprivation of liberty. If such a deprivation is not based on a judicial order, a judicial decision shall be obtained without delay. The police may hold no one in custody on their own authority beyond the end of the day following the arrest. Details shall be regulated by a law.

(3) Any person provisionally detained on suspicion of having committed a criminal offence shall be brought before a judge no later than the day following his arrest; the judge shall inform him of the reasons for the arrest, examine him, and give him an opportunity to raise objections. The judge shall, without delay, either issue a written arrest warrant setting forth the reasons therefor or order his release.

(4) A relative or a person enjoying the confidence of the person in custody shall be notified without delay of any judicial decision imposing or continuing a deprivation of liberty.

### X. Finance

APP 1760

App. 2441

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

## Article 104a
### [Apportionment of expenditures – Financial system – Liability]

(1) The Federation and the Länder shall separately finance the expenditures resulting from the discharge of their respective responsibilities insofar as this Basic Law does not otherwise provide.

(2) Where the Länder act on federal commission, the Federation shall finance the resulting expenditures.

(3) Federal laws providing for money grants to be administered by the Länder may provide that the Federation shall pay for such grants wholly or in part. If any such law provides that the Federation shall finance one half or more of the expenditure, it shall be executed by the Länder on federal commission.

(4) Federal laws that oblige the Länder to provide money grants, benefits in kind or comparable services to third persons and which are executed by the Länder in their own right or according to the second sentence of paragraph (3) on commission of the Federation shall require the consent of the Bundesrat if the expenditure resulting therefrom shall be borne by the Länder.

(5) The Federation and the Länder shall finance the administrative expenditures incurred by their respective authorities and shall be responsible to one another for ensuring proper administration. Details shall be regulated by a federal law requiring the consent of the Bundesrat.

(6) In accord with the internal allocation of competencies and responsibilities, the Federation and the Länder shall bear the costs entailed by a violation of obligations incumbent on Germany under supranational or international law. In cases of financial corrections by the European Union with effect transcending one specific Land, the Federation and the Länder shall bear such costs at a ratio of 15 to 85. In such cases, the Länder as a whole shall be responsible in solidarity for 35 per cent of the total burden according to a general formula; 50 per cent of the total burden shall be borne by those Länder which have caused the encumbrance, adjusted to the size of the amount of the financial means received. Details shall be regulated by a federal law requiring the consent of the Bundesrat.

## Article 104b
### [Financial assistance for investments]

(1) To the extent that this Basic Law confers on it the power to legislate, the Federation may grant the Länder financial assistance for particularly important investments by the Länder and municipalities (associations of municipalities) which are necessary to:

1.    avert a disturbance of the overall economic equilibrium;

2.    equalise differing economic capacities within the federal territory; or

3.    promote economic growth.

In deviating from the first sentence, the Federation may grant financial assistance even outside its field of legislative powers in cases of natural disasters or exceptional emergency situations beyond governmental control and substantially harmful to the state's financial capacity.

(2) Details, especially with respect to the kinds of investments to be promoted, shall be regulated by a federal law requiring the consent of the Bundesrat or by an executive agreement based on the federal budget law. The duration of the grants shall be limited and the grants must be reviewed at regular intervals with respect to the manner in which they are used. The financial assistance must be designed with descending annual contributions.

APP 1761

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

(3) Upon request, the Bundestag, the Federal Government as well as the Bundesrat shall be informed about the implementation of such measures and the improvements reached.

## Article 105
### [Distribution of powers regarding tax laws]

(1) The Federation shall have exclusive power to legislate with respect to customs duties and fiscal monopolies.

(2) The Federation shall have concurrent power to legislate with respect to all other taxes the revenue from which accrues to it wholly or in part or as to which the conditions provided for in paragraph (2) of Article 72 apply.

(2a) The Länder shall have power to legislate with regard to local taxes on consumption and expenditures so long and insofar as such taxes are not substantially similar to taxes regulated by federal law. They are empowered to determine the rate of the tax on acquisition of real estate.

(3) Federal laws relating to taxes the revenue from which accrues wholly or in part to the Länder or to municipalities (associations of municipalities) shall require the consent of the Bundesrat.

## Article 106
### [Apportionment of tax revenue and yield of fiscal monopolies]

(1) The yield of fiscal monopolies and the revenue from the following taxes shall accrue to the Federation:

1.      customs duties;

2.      taxes on consumption insofar as they do not accrue to the Länder pursuant to paragraph (2), or jointly to the Federation and the Länder in accordance with paragraph (3), or to municipalities in accordance with paragraph (6) of this Article;

3.      the road freight tax, motor vehicle tax, and other taxes on transactions related to motorised vehicles;

4.      the taxes on capital transactions, insurance and bills of exchange;

5.      non-recurring levies on property and equalisation of burdens levies;

6.      income and corporation surtaxes;

7.      levies imposed within the framework of the European Communities.

(2) Revenue from the following taxes shall accrue to the Länder:

1.      the property tax;

2.      the inheritance tax;

3.      the motor vehicle tax;

4.      such taxes on transactions as do not accrue to the Federation pursuant to paragraph (1) or jointly to the Federation and the Länder pursuant to paragraph (3) of this Article;

5.      the beer tax;

6.      the tax on gambling establishments.

(3) Revenue from income taxes, corporation taxes and turnover taxes shall accrue jointly to the Federation and the Länder (joint taxes) to the extent that the revenue from the income

APP 1762

App. 2443

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

tax and the turnover tax is not allocated to municipalities pursuant to paragraphs (5) and (5a) of this Article. The Federation and the Länder shall share equally the revenues from income taxes and corporation taxes. The respective shares of the Federation and the Länder in the revenue from the turnover tax shall be determined by a federal law requiring the consent of the Bundesrat. Such determination shall be based on the following principles:

    1.      The Federation and the Länder shall have an equal claim against current revenues to cover their necessary expenditures. The extent of such expenditures shall be determined with due regard to multi-year financial planning.

    2.      The financial requirements of the Federation and of the Länder shall be coordinated in such a way as to establish a fair balance, avoid excessive burdens on taxpayers, and ensure uniformity of living standards throughout the federal territory.

In determining the respective shares of the Federation and the Länder in the revenue from the turnover tax, reductions in revenue incurred by the Länder from 1 January 1996 because of the provisions made with respect to children in the income tax law shall also be taken into account. Details shall be regulated by the federal law enacted pursuant to the third sentence of this paragraph.

(4) The respective shares of the Federation and the Länder in the revenue from the turnover tax shall be apportioned anew whenever the ratio of revenues to expenditures of the Federation becomes substantially different from that of the Länder; reductions in revenue that are taken into account in determining the respective shares of revenue from the turnover tax under the fifth sentence of paragraph (3) of this Article shall not be considered in this regard. If a federal law imposes additional expenditures on or withdraws revenue from the Länder, the additional burden may be compensated for by federal grants pursuant to a federal law requiring the consent of the Bundesrat, provided the additional burden is limited to a short period of time. This law shall establish the principles for calculating such grants and distributing them among the Länder.

(5) A share of the revenue from the income tax shall accrue to the municipalities, to be passed on by the Länder to their municipalities on the basis of the income taxes paid by their inhabitants. Details shall be regulated by a federal law requiring the consent of the Bundesrat. This law may provide that municipalities may establish supplementary or reduced rates with respect to their share of the tax.

(5a) From and after 1 January 1998, a share of the revenue from the turnover tax shall accrue to the municipalities. It shall be passed on by the Länder to their municipalities on the basis of a formula reflecting geographical and economic factors. Details shall be regulated by a federal law requiring the consent of the Bundesrat.

(6) Revenue from taxes on real property and trades shall accrue to the municipalities; revenue from local taxes on consumption and expenditures shall accrue to the municipalities or, as may be provided for by Land legislation, to associations of municipalities. Municipalities shall be authorised to establish the rates at which taxes on real property and trades are levied, within the framework of the laws. If there are no municipalities in a Land, revenue from taxes on real property and trades as well as from local taxes on consumption and expenditures shall accrue to the Land. The Federation and the Länder may participate, by virtue of an apportionment, in the revenue from the tax on trades. Details regarding such apportionment shall be regulated by a federal law requiring the consent of the Bundesrat. In accordance with Land legislation, taxes on real property and trades as well as the municipalities' share of revenue from the income tax and the turnover tax may be taken as a basis for calculating the amount of apportionment.

(7) An overall percentage of the Land share of total revenue from joint taxes, to be determined by Land legislation, shall accrue to the municipalities or associations of

APP 1763

App. 2444

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

municipalities. In all other respects Land legislation shall determine whether and to what extent revenue from Land taxes shall accrue to municipalities (associations of municipalities).

(8) If in individual Länder or municipalities (associations of municipalities) the Federation requires special facilities to be established that directly result in an increase of expenditure or in reductions in revenue (special burden) to these Länder or municipalities (associations of municipalities), the Federation shall grant the necessary compensation if and insofar as the Länder or municipalities (associations of municipalities) cannot reasonably be expected to bear the burden. In granting such compensation, due account shall be taken of indemnities paid by third parties and financial benefits accruing to these Länder or municipalities (associations of municipalities) as a result of the establishment of such facilities.

(9) For the purpose of this Article, revenues and expenditures of municipalities (associations of municipalities) shall also be deemed to be revenues and expenditures of the Länder.

## Article 106a
### [Federal grants for local mass transit]

Beginning 1 January 1996 the Länder shall be entitled to an allocation of federal tax revenues for purposes of local mass transit. Details shall be regulated by a federal law requiring the consent of the Bundesrat. Allocations made pursuant to the first sentence of this Article shall not be taken into account in determining the financial capacity of a Land under paragraph (2) of Article 107.

## Article 106b
### [Länder share of motor vehicle tax]

As of 1 July 2009, following the transfer of the motor vehicle tax to the Federation, the Länder shall be entitled to a sum from the tax revenue of the Federation. Details shall be regulated by a federal law requiring the consent of the Bundesrat.

## Article 107
### [Distribution of tax revenue – Financial equalisation among the Länder – Supplementary grants]

(1) Revenue from Land taxes and the Land share of revenue from income and corporation taxes shall accrue to the individual Länder to the extent that such taxes are collected by finance authorities within their respective territories (local revenue). Details regarding the delimitation as well as the manner and scope of allotment of local revenue from corporation and wage taxes shall be regulated by a federal law requiring the consent of the Bundesrat. This law may also provide for the delimitation and allotment of local revenue from other taxes. The Land share of revenue from the turnover tax shall accrue to the individual Länder on a per capita basis; a federal law requiring the consent of the Bundesrat may provide for the grant of supplementary shares not exceeding one quarter of a Land share to Länder whose per capita income from Land taxes, from income and corporation taxes and from taxes under Article 106b ranks below the average of all the Länder combined; with respect to the tax on the acquisition of real estate, the capacity to generate revenue shall be considered.

(2) Such law shall ensure a reasonable equalisation of the disparate financial capacities of the Länder, with due regard for the financial capacities and needs of municipalities (associations of municipalities). It shall specify the conditions governing the claims of Länder entitled to equalisation payments and the liabilities of Länder required to make them as well as the criteria for determining the amounts of such payments. It may also provide for grants to be made by the Federation to financially weak Länder from its own funds to assist them in meeting their general financial needs (supplementary grants).

APP 1764

App. 2445

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

## Article 108
### [Financial administration of the Federation and the Länder – Financial courts]

(1) Customs duties, fiscal monopolies, taxes on consumption regulated by a federal law, including the turnover tax on imports, the motor vehicle tax and other transaction taxes related to motorised vehicles as from 1 July 2009, and charges imposed within the framework of the European Communities shall be administered by federal finance authorities. The organisation of these authorities shall be regulated by a federal law. Inasmuch as intermediate authorities have been established, their heads shall be appointed in consultation with the Land governments.

(2) All other taxes shall be administered by the financial authorities of the Länder. The organisation of these authorities and the uniform training of their civil servants may be regulated by a federal law requiring the consent of the Bundesrat. Inasmuch as intermediate authorities have been established, their heads shall be appointed in agreement with the Federal Government.

(3) To the extent that taxes accruing wholly or in part to the Federation are administered by revenue authorities of the Länder, those authorities shall act on federal commission. Paragraphs (3) and (4) of Article 85 shall apply, provided that the Federal Minister of Finance shall take the place of the Federal Government.

(4) Where and to the extent that execution of the tax laws will be substantially facilitated or improved thereby, a federal law requiring the consent of the Bundesrat may provide for collaboration between federal and Land revenue authorities in matters of tax administration, for the administration of taxes enumerated in paragraph (1) of this Article by revenue authorities of the Länder, or for the administration of other taxes by federal revenue authorities. The functions of Land revenue authorities in the administration of taxes whose revenue accrues exclusively to municipalities (associations of municipalities) may be delegated by the Länder to municipalities (associations of municipalities) wholly or in part.

(5) The procedures to be followed by federal revenue authorities shall be prescribed by a federal law. The procedures to be followed by Land revenue authorities or, as provided by the second sentence of paragraph (4) of this Article, by municipalities (associations of municipalities) may be prescribed by a federal law requiring the consent of the Bundesrat.

(6) Financial jurisdiction shall be uniformly regulated by a federal law.

(7) The Federal Government may issue general administrative rules which, to the extent that administration is entrusted to Land revenue authorities or to municipalities (associations of municipalities), shall require the consent of the Bundesrat.

## Article 109
### [Budget management in the Federation and the Länder]

(1) The Federation and the Länder shall be autonomous and independent of one another in the management of their respective budgets.

(2) The Federation and the Länder shall perform jointly the obligations of the Federal Republic of Germany resulting from legal acts of the European Community for the maintenance of budgetary discipline pursuant to Article 104 of the Treaty Establishing the European Community and shall, within this framework, give due regard to the requirements of overall economic equilibrium.

(3) The budgets of the Federation and the Länder shall in principle be balanced without revenue from credits. The Federation and Länder may introduce rules intended to take into account, symmetrically in times of upswing and downswing, the effects of market developments that deviate from normal conditions, as well as exceptions for natural

APP 1765

App. 2446

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

disasters or unusual emergency situations beyond governmental control and substantially harmful to the state's financial capacity. For such exceptional regimes, a corresponding amortisation plan must be adopted. Details for the budget of the Federation shall be governed by Article 115 with the proviso that the first sentence shall be deemed to be satisfied if revenue from credits does not exceed 0.35 percent in relation to the nominal gross domestic product. The Länder themselves shall regulate details for the budgets within the framework of their constitutional powers, the proviso being that the first sentence shall only be deemed to be satisfied if no revenue from credits is admitted.

(4) A federal law requiring the consent of the Bundesrat may establish principles applicable to both the Federation and the Länder governing budgetary law, the responsiveness of budgetary management to economic trends, and long-term financial planning.

(5) Sanctions imposed by the European Community on the basis of the provisions of Article 104 of the Treaty Establishing the European Community in the interest of maintaining budgetary discipline, shall be borne by the Federation and the Länder at a ratio of 65 to 35 percent. In solidarity, the Länder as a whole shall bear 35 percent of the charges incumbent on the Länder according to the number of their inhabitants; 65 percent of the charges incumbent on the Länder shall be borne by the Länder according to their degree of causation. Details shall be regulated by a federal law which shall require the consent of the Bundesrat.

### Article 109a
### [Budgetary emergencies]

To avoid a budgetary emergency, a federal law requiring the consent of the Bundesrat shall provide for:

    1.      the continuing supervision of budgetary management of the Federation and the Länder by a joint body (Stability Council),

    2.      the conditions and procedures for ascertaining the threat of a budgetary emergency,

    3.      the principles for the establishment and administration of programs for taking care of budgetary emergencies.

The decisions of the Stability Council and the accompanying documents shall be published.

### Article 110
### [Federal budget]

(1) All revenues and expenditures of the Federation shall be included in the budget; in the case of federal enterprises and special trusts, only payments to or remittances from them need be included. The budget shall be balanced with respect to revenues and expenditures.

(2) The budget for one or more fiscal years shall be set forth in a law enacted before the beginning of the first year and making separate provision for each year. The law may provide that various parts of the budget apply to different periods of time, divided by fiscal years.

(3) Bills to comply with the first sentence of paragraph (2) of this Article as well as bills to amend the Budget Law or the budget itself shall be submitted simultaneously to the Bundesrat and to the Bundestag; the Bundesrat shall be entitled to comment on such bills within six weeks or, in the case of amending bills, within three weeks.

(4) The Budget Law may contain only such provisions as relate to federal revenues and expenditures and to the period for which it is enacted. The Budget Law may specify that its provisions shall expire only upon promulgation of the next Budget Law or, in the event of an authorisation pursuant to Article 115, at a later date.

APP 1766

App. 2447

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

## Article 111
### [Interim budget management]

(1) If, by the end of a fiscal year, the budget for the following year has not been adopted by a law, the Federal Government, until such law comes into force, may make all expenditures that are necessary:

   a)      to maintain institutions established by a law and to carry out measures authorised by a law;

   b)      to meet the legal obligations of the Federation;

   c)      to continue construction projects, procurements, and the provision of other benefits or services, or to continue to make grants for these purposes, to the extent that amounts have already been appropriated in the budget of a previous year.

(2) To the extent that revenues based upon specific laws and derived from taxes, or duties, or other sources, or the working capital reserves, do not cover the expenditures referred to in paragraph (1) of this Article, the Federal Government may borrow the funds necessary to sustain current operations up to a maximum of one quarter of the total amount of the previous budget.

## Article 112
### [Extrabudgetary expenditures]

Expenditures in excess of budgetary appropriations or for purposes not contemplated by the budget shall require the consent of the Federal Minister of Finance. Such consent may be given only in the event of an unforeseen and unavoidable necessity. Details may be regulated by a federal law.

## Article 113
### [Increase of expenditures]

(1) Laws that increase the budget expenditures proposed by the Federal Government, or entail or will bring about new expenditures, shall require the consent of the Federal Government. This requirement shall also apply to laws that entail or will bring about decreases in revenue. The Federal Government may demand that the Bundestag postpone its vote on bills to this effect. In this event the Federal Government shall submit its comments to the Bundestag within six weeks.

(2) Within four weeks after the Bundestag has adopted such a law, the Federal Government may demand that it vote on the law a second time.

(3) If the bill has become law pursuant to Article 78, the Federal Government may withhold its consent only within six weeks and only after having initiated the procedure provided for in the third and fourth sentences of paragraph (1) or in paragraph (2) of this Article. Upon the expiration of this period such consent shall be deemed to have been given.

## Article 114
### [Submission and auditing of accounts]

(1) For the purpose of discharging the Federal Government, the Federal Minister of Finance shall submit annually to the Bundestag and to the Bundesrat an account of all revenues and expenditures as well as of assets and debts during the preceding fiscal year.

(2) The Federal Court of Audit, whose members shall enjoy judicial independence, shall audit the account and determine whether public finances have been properly and efficiently administered. It shall submit an annual report directly to the Bundestag and the Bundesrat as well as to the Federal Government. In other respects the powers of the Federal Court of

APP 1767

App. 2448

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

Audit shall be regulated by a federal law.

## Article 115
### [Limits of borrowing]

(1) The borrowing of funds and the assumption of surety obligations, guarantees, or other commitments that may lead to expenditures in future fiscal years shall require authorisation by a federal law specifying or permitting computation of the amounts involved.

(2) Revenues and expenditures shall in principle be balanced without revenue from credits. This principle shall be satisfied when revenue obtained by the borrowing of funds does not exceed 0.35 percent in relation to the nominal gross domestic product. In addition, when economic developments deviate from normal conditions, effects on the budget in periods of upswing and downswing must be taken into account symmetrically. Deviations of actual borrowing from the credit limits specified under the first to third sentences are to be recorded on a control account; debits exceeding the threshold of 1.5 percent in relation to the nominal gross domestic product are to be reduced in accordance with the economic cycle. The regulation of details, especially the adjustment of revenue and expenditures with regard to financial transactions and the procedure for the calculation of the yearly limit on net borrowing, taking into account the economic cycle on the basis of a procedure for adjusting the cycle together with the control and balancing of deviations of actual borrowing from the credit limit, requires a federal law. In cases of natural catastrophes or unusual emergency situations beyond governmental control and substantially harmful to the state's financial capacity, these credit limits may be exceeded on the basis of a decision by a majority of the Bundestag's Members. The decision has to be combined with an amortisation plan. Repayment of the credits borrowed under the sixth sentence must be accomplished within an appropriate period of time.

## Xa. State of Defence

## Article 115a
### [Declaration of state of defence]

(1) Any determination that the federal territory is under attack by armed force or imminently threatened with such an attack (state of defence) shall be made by the Bundestag with the consent of the Bundesrat. Such determination shall be made on application of the Federal Government and shall require a two-thirds majority of the votes cast, which shall include at least a majority of the Members of the Bundestag.

(2) If the situation imperatively calls for immediate action, and if insurmountable obstacles prevent the timely convening of the Bundestag or the Bundestag cannot muster a quorum, the Joint Committee shall make this determination by a two-thirds majority of the votes cast, which shall include at least a majority of its members.

(3) The determination shall be promulgated by the Federal President in the Federal Law Gazette pursuant to Article 82. If this cannot be done in time, promulgation shall be effected in another manner; the determination shall be printed in the Federal Law Gazette as soon as circumstances permit.

(4) If the federal territory is under attack by armed force, and if the competent federal authorities are not in a position at once to make the determination provided for in the first sentence of paragraph (1) of this Article, the determination shall be deemed to have been made and promulgated at the time the attack began. The Federal President shall announce that time as soon as circumstances permit.

(5) If the determination of a state of defence has been promulgated, and if the federal territory is under attack by armed force, the Federal President, with the consent of the Bundestag, may issue declarations under international law regarding the existence of the

APP 1768

App. 2449

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

state of defence. Under the conditions specified in paragraph (2) of this Article, the Joint
Committee shall act in place of the Bundestag.

### Article 115b
### [Power of command of the Federal Chancellor]

Upon the promulgation of a state of defence the power of command over the Armed Forces
shall pass to the Federal Chancellor.

### Article 115c
### [Extension of the legislative powers of the Federation]

(1) The Federation shall have the right to legislate concurrently for a state of defence even
with respect to matters within the legislative powers of the Länder. Such laws shall require
the consent of the Bundesrat.

(2) To the extent required by circumstances during a state of defence, a federal law for a
state of defence may:

    1.    make temporary provisions concerning compensation in the event of
expropriation that deviate from the requirements of the second sentence of paragraph (3)
of Article 14;

    2.    establish a time limit for deprivations of freedom different from that specified in
the third sentence of paragraph (2) and the first sentence of paragraph (3) of Article 104,
but not exceeding four days, for cases in which no judge has been able to act within the
time limit that normally applies.

(3) To the extent necessary to repel an existing or imminently threatened attack, a federal
law for a state of defence may, with the consent of the Bundesrat, regulate the administration
and finances of the Federation and the Länder without regard to Titles VIII, VIIIa and X of
this Basic Law, provided that the viability of the Länder, municipalities, and associations of
municipalities, especially with respect to financial matters, is assured.

(4) Federal laws enacted pursuant to paragraph (1) or clause 1 of paragraph (2) of this
Article may, for the purpose of preparing for their enforcement, be applied even before a
state of defence arises.

### Article 115d
### [Urgent bills]

(1) During a state of defence the federal legislative process shall be governed by the
provisions of paragraphs (2) and (3) of this Article without regard to the provisions of
paragraph (2) of Article 76, the second sentence of paragraph (1) and paragraphs (2) to (4)
of Article 77, Article 78, and paragraph (1) of Article 82.

(2) Federal Government bills that the Government designates as urgent shall be forwarded
to the Bundesrat at the same time as they are submitted to the Bundestag. The Bundestag
and the Bundesrat shall debate such bills in joint session without delay. Insofar as the
consent of the Bundesrat is necessary for any such bill to become law, a majority of its votes
shall be required. Details shall be regulated by rules of procedure adopted by the Bundestag
and requiring the consent of the Bundesrat.

(3) The second sentence of paragraph (3) of Article 115a shall apply to the promulgation of
such laws mutatis mutandis.

### Article 115e
### [Joint Committee]

(1) If, during a state of defence, the Joint Committee by a two-thirds majority of the votes

APP 1769

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

cast, which shall include at least a majority of its members, determines that insurmountable obstacles prevent the timely convening of the Bundestag or that the Bundestag cannot muster a quorum, the Joint Committee shall occupy the position of both the Bundestag and the Bundesrat and shall exercise their powers as a single body.

(2) This Basic Law may neither be amended nor abrogated nor suspended in whole or in part by a law enacted by the Joint Committee. The Joint Committee shall have no power to enact laws pursuant to the second sentence of paragraph (1) of Article 23, paragraph (1) of Article 24, or Article 29.

### Article 115f
### [Use of Federal Border Police – Extended powers of instruction]

(1) During a state of defence the Federal Government, to the extent circumstances require, may:

    1.       employ the Federal Border Police throughout the federal territory;

    2.       issue instructions not only to federal administrative authorities but also to Land governments and, if it deems the matter urgent, to Land authorities, and may delegate this power to members of Land governments designated by it.

(2) The Bundestag, the Bundesrat and the Joint Committee shall be informed without delay of the measures taken in accordance with paragraph (1) of this Article.

### Article 115g
### [Federal Constitutional Court]

Neither the constitutional status nor the performance of the constitutional functions of the Federal Constitutional Court or its judges may be impaired. The law governing the Federal Constitutional Court may be amended by a law enacted by the Joint Committee only insofar as the Federal Constitutional Court agrees is necessary to ensure that it can continue to perform its functions. Pending the enactment of such a law, the Federal Constitutional Court may take such measures as are necessary to this end. Determinations by the Federal Constitutional Court pursuant to the second and third sentences of this Article shall be made by a majority of the judges present.

### Article 115h
### [Expiry of electoral terms and terms of office]

(1) Any electoral terms of the Bundestag or of Land parliaments due to expire during a state of defence shall end six months after the termination of the state of defence. A term of office of the Federal President due to expire during a state of defence, and the exercise of his functions by the President of the Bundesrat in case of the premature vacancy of his office, shall end nine months after the termination of the state of defence. The term of office of a member of the Federal Constitutional Court due to expire during a state of defence shall end six months after the termination of the state of defence.

(2) Should it be necessary for the Joint Committee to elect a new Federal Chancellor, it shall do so by the votes of a majority of its members; the Federal President shall propose a candidate to the Joint Committee. The Joint Committee may express its lack of confidence in the Federal Chancellor only by electing a successor by a two-thirds majority of its members.

(3) The Bundestag shall not be dissolved while a state of defence exists.

### Article 115i
### [Powers of the Land governments]

(1) If the competent federal bodies are incapable of taking the measures necessary to avert

APP 1770

App. 2451

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

the danger, and if the situation imperatively calls for immediate independent action in particular areas of the federal territory, the Land governments or the authorities or representatives they designate shall be authorised, within their respective spheres of competence, to take the measures provided for in paragraph (1) of Article 115f.

(2) Any measures taken in accordance with paragraph (1) of this Article may be rescinded at any time by the Federal Government, or, with respect to Land authorities and subordinate federal authorities, by Minister-Presidents of the Länder.

### Article 115k
### [Rank and duration of emergency provisions]

(1) Laws enacted in accordance with Articles 115c, 115e and 115g, as well as statutory instruments issued on the basis of such laws, shall suspend the operation of incompatible law so long as they are in effect. This provision shall not apply to earlier law enacted pursuant to Articles 115c, 115e or 115g.

(2) Laws adopted by the Joint Committee, as well as statutory instruments issued on the basis of such laws, shall cease to have effect no later than six months after the termination of a state of defence.

(3) Laws containing provisions that diverge from Articles 91a, 91b, 104a, 106 and 107 shall apply no longer than the end of the second fiscal year following the termination of a state of defence. After such termination they may, with the consent of the Bundesrat, be amended by a federal law so as to revert to the provisions of Titles VIIIa and X.

### Article 115l
### [Repeal of emergency measures – Conclusion of peace]

(1) The Bundestag, with the consent of the Bundesrat, may at any time repeal laws enacted by the Joint Committee. The Bundesrat may demand that the Bundestag reach a decision on this question. Any measures taken by the Joint Committee or by the Federal Government to avert a danger shall be rescinded if the Bundestag and the Bundesrat so decide.

(2) The Bundestag, with the consent of the Bundesrat, may at any time, by a decision to be promulgated by the Federal President, declare a state of defence terminated. The Bundesrat may demand that the Bundestag reach a decision on this question. A state of defence shall be declared terminated without delay if the conditions for determining it no longer exist.

(3) The conclusion of peace shall be determined by a federal law.

### XI. Transitional and Concluding Provisions

### Article 116
### [Definition of "German" – Restoration of citizenship]

(1) Unless otherwise provided by a law, a German within the meaning of this Basic Law is a person who possesses German citizenship or who has been admitted to the territory of the German Reich within the boundaries of 31 December 1937 as a refugee or expellee of German ethnic origin or as the spouse or descendant of such person.

(2) Former German citizens who between 30 January 1933 and 8 May 1945 were deprived of their citizenship on political, racial or religious grounds, and their descendants, shall on application have their citizenship restored. They shall be deemed never to have been deprived of their citizenship if they have established their domicile in Germany after 8 May 1945 and have not expressed a contrary intention.

### Article 117
### [Suspended entry into force of two basic rights]

APP 1771

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

(1) Law which is inconsistent with paragraph (2) of Article 3 of this Basic Law shall remain in force until adapted to that provision, but not beyond 31 March 1953.

(2) Laws that restrict freedom of movement in view of the present housing shortage shall remain in force until repealed by a federal law.

### Article 118
### [New delimitation of Baden and Württemberg]

The division of the territory comprising Baden, Württemberg-Baden and Württemberg-Hohenzollern into Länder may be revised, without regard to the provisions of Article 29, by agreement between the Länder concerned. If no agreement is reached, the revision shall be effected by a federal law, which shall provide for an advisory referendum.

### Article 118a
### [New delimitation of Berlin and Brandenburg]

The division of the territory comprising Berlin and Brandenburg into Länder may be revised, without regard to the provisions of Article 29, by agreement between the two Länder with the participation of their inhabitants who are entitled to vote.

### Article 119
### [Refugees and expellees]

In matters relating to refugees and expellees, especially as regards their distribution among the Länder, the Federal Government, with the consent of the Bundesrat, may issue statutory instruments having the force of law, pending settlement of the matter by a federal law. In this connection the Federal Government may be authorised to issue individual instructions in particular cases. Unless time is of the essence, such instructions shall be addressed to the highest Land authorities.

### Article 120
### [Occupation costs – Burdens resulting from the war]

(1) The Federation shall finance the expenditures for occupation costs and other internal and external burdens resulting from the war, as regulated in detail by federal laws. To the extent that these war burdens were regulated by federal laws on or before 1 October 1969, the Federation and the Länder shall finance such expenditures in the proportion established by such federal laws. Insofar as expenditures for such of these war burdens as neither have been nor will be regulated by federal laws were met on or before 1 October 1965 by Länder, municipalities (associations of municipalities), or other entities performing functions of the Länder or municipalities, the Federation shall not be obliged to finance them even after that date. The Federation shall be responsible for subsidies toward meeting the costs of social security, including unemployment insurance and public assistance to the unemployed. The distribution of war burdens between the Federation and the Länder prescribed by this paragraph shall not be construed to affect any law regarding claims for compensation for consequences of the war.

(2) Revenue shall pass to the Federation at the time it assumes responsibility for the expenditures referred to in this Article.

### Article 120a
### [Equalisation of burdens]

(1) Laws implementing the equalisation of burdens may, with the consent of the Bundesrat, provide that with respect to equalisation payments they shall be executed partly by the Federation and partly by the Länder acting on federal commission, and that the relevant powers vested in the Federal Government and the competent highest federal authorities by

APP 1772

App. 2453

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

virtue of Article 85 shall be wholly or partly delegated to the Federal Equalisation of Burdens Office. In exercising these powers, the Federal Equalisation of Burdens Office shall not require the consent of the Bundesrat; except in urgent cases, its instructions shall be given to the highest Land authorities (Land Equalisation of Burdens Offices).

(2) The second sentence of paragraph (3) of Article 87 shall not be affected by this provision.

### Article 121
### [Definition of "majority of the members"]

Within the meaning of this Basic Law, a majority of the Members of the Bundestag and a majority of the members of the Federal Convention shall be a majority of the number of their members specified by a law.

### Article 122
### [Date of transmission of legislative powers]

(1) From the date on which the Bundestag first convenes, laws shall be enacted only by the legislative bodies recognised by this Basic Law.

(2) Legislative bodies and institutions participating in the legislative process in an advisory capacity whose competence expires by virtue of paragraph (1) of this Article shall be dissolved as of that date.

### Article 123
### [Continued applicability of pre-existing law]

(1) Law in force before the Bundestag first convenes shall remain in force insofar as it does not conflict with this Basic Law.

(2) Subject to all rights and objections of interested parties, treaties concluded by the German Reich concerning matters within the legislative competence of the Länder under this Basic Law shall remain in force, provided they are and continue to be valid under general principles of law, until new treaties are concluded by the authorities competent under this Basic Law, or until they are in some other way terminated pursuant to their provisions.

### Article 124
### [Continued applicability of law within the scope of exclusive legislative power]

Law regarding matters subject to the exclusive legislative power of the Federation shall become federal law in the area in which it applies.

### Article 125
### [Continued applicability of law within the scope of concurrent legislative power]

Law regarding matters subject to the concurrent legislative power of the Federation shall become federal law in the area in which it applies:

1.     insofar as it applies uniformly within one or more occupation zones;

2.     insofar as it is law by which former Reich law has been amended since 8 May 1945.

### Article 125a
### [Continued applicability of federal law – Replacement by Land law]

(1) Law that was enacted as federal law but that by virtue of the amendment of paragraph (1) of Article 74, the insertion of the seventh sentence of paragraph (1) of Article 84, the second sentence of paragraph (1) of Article 85 or of the second sentence of paragraph (2a) of Article 105, or because of the repeal of Articles 74a, 75 or the second sentence of paragraph (3) of

APP 1773

App. 2454

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

Article 98 could no longer be enacted as federal law, shall remain in force as federal law. It may be superseded by Land law.

(2) Law that was enacted pursuant to paragraph (2) of Article 72 as it stood up to 15 November 1994 but which, because of the amendment of paragraph (2) of Article 72, could no longer be enacted as federal law shall remain in force as federal law. A federal law may provide that it may be superseded by Land law.

(3) Law that has been enacted as Land law but which, because of the amendment of Article 73, could not be enacted any longer as Land law shall continue in force as Land law. It may be superseded by federal law.

## Article 125b
### [Continued applicability of framework laws – Deviation power of the Länder]

(1) Law that was enacted pursuant to Article 75 as it stood up to 1 September 2006, and which could be enacted as federal law even after this date, shall remain in force as federal law. The powers and duties of the Länder to legislate shall in this regard remain unaffected. In the areas referred to in the first sentence of paragraph (3) of Article 72 the Länder may enact regulations that deviate from this law; however, in those areas covered by clauses 2, 5 and 6 of the first sentence of Article 72 the Länder may do so only if and insofar as the Federation has made use of its power to legislate after 1 September 2006, in those areas covered by clauses 2 and 5 beginning at the latest on 1 January 2010, in cases under clause 6 beginning at the latest on 1 August 2008.

(2) The Länder may enact regulations deviating from federal regulations enacted pursuant to paragraph (1) of Article 84 as it stood up to 1 September 2006; up to 31 December 2008, however, they may deviate from regulations on administrative procedure only if, after 1 September 2006, regulations on administrative procedure in the relevant federal law have been amended.

## Article 125c
### [Continued applicability of law within the scope of joint tasks]

(1) Law that was enacted by virtue of paragraph (2) of Article 91a in conjunction with clause 1 of paragraph (1) as it stood up to 1 September 2006 shall continue in force until 31 December 2006.

(2) The regulations enacted in the areas of municipal traffic financing and promotion of social housing by virtue of paragraph (4) of Article 104a as it stood up to 1 September 2006 shall remain in force until 31 December 2006. The regulations enacted on municipal traffic financing for special programmes pursuant to paragraph (1) of Article 6 of the Municipal Traffic Financing Act, as well as the other regulations enacted pursuant to paragraph (4) of Article 104a as it stood up to 1 September 2006, shall continue in force until 31 December 2019, provided no earlier repeal has been or is determined.

## Article 126
### [Determination about continued applicability of law as federal law]

Disagreements concerning the continued applicability of law as federal law shall be resolved by the Federal Constitutional Court.

## Article 127
### [Extension of law to the French zone and to Berlin]

Within one year after promulgation of this Basic Law the Federal Government, with the consent of the governments of the Länder concerned, may extend to the Länder of Baden, Greater Berlin, Rhineland-Palatinate and Württemberg-Hohenzollern any law of the

APP 1774

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

Administration of the Combined Economic Area, insofar as it remains in force as federal law under Article 124 or 125.

## Article 128
### [Continued authority to issue instructions]

Insofar as law that remains in force grants authority to issue instructions within the meaning of paragraph (5) of Article 84, this authority shall remain in existence until a law otherwise provides.

## Article 129
### [Continued authority to issue legal acts]

(1) Insofar as legal provisions that remain in force as federal law grant authority to issue statutory instruments or general administrative rules or to make administrative decisions in individual cases, such powers shall pass to the authorities that henceforth have competence over the subject matter. In cases of doubt the Federal Government shall decide in agreement with the Bundesrat; such decisions shall be published.

(2) Insofar as legal provisions that remain in force as Land law grant such authority, it shall be exercised by the authorities competent under Land law.

(3) Insofar as legal provisions within the meaning of paragraphs (1) and (2) of this Article grant authority to amend or supplement the provisions themselves or to issue legal provisions that have the force of laws, such authority shall be deemed to have expired.

(4) The provisions of paragraphs (1) and (2) of this Article shall apply mutatis mutandis to legal provisions that refer to provisions no longer in force or to institutions no longer in existence.

## Article 130
### [Transfer of existing administrative institutions]

(1) Administrative agencies and other institutions that serve the public administration or the administration of justice and are not based on Land law or on agreements between Länder, as well as the Administrative Union of South West German Railways and the Administrative Council for Postal and Telecommunications Services for the French Occupation Zone, shall be placed under the control of the Federal Government. The Federal Government, with the consent of the Bundesrat, shall provide for their transfer, dissolution, or liquidation.

(2) The supreme disciplinary authority for the personnel of these administrative bodies and institutions shall be the competent Federal Minister.

(3) Corporations and institutions under public law not directly subordinate to a Land nor based on agreements between Länder shall be under the supervision of the competent highest federal authority.

## Article 131
### [Persons formerly in the public service]

The legal relations of persons, including refugees and expellees, who on 8 May 1945 were employed in the public service, have left the service for reasons other than those recognised by civil service regulations or collective bargaining agreements, and have not yet been reinstated or are employed in positions that do not correspond to those they previously held, shall be regulated by a federal law. The same shall apply mutatis mutandis to persons, including refugees and expellees, who on 8 May 1945 were entitled to pensions and related benefits and who for reasons other than those recognised by civil service regulations or collective bargaining agreements no longer receive any such pension or related benefits. Until the pertinent federal law takes effect, no legal claims may be made, unless Land law

APP 1775

App. 2456

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

otherwise provides.

### Article 132
### [Retirement of civil servants]

(1) Civil servants and judges who enjoy life tenure when this Basic Law takes effect may, within six months after the Bundestag first convenes, be retired, suspended, or transferred to lower-salaried positions if they lack the personal or professional aptitude for their present positions. This provision shall apply mutatis mutandis to salaried public employees, other than civil servants or judges, whose employment cannot be terminated at will. In the case of salaried employees whose employment may be terminated at will, notice periods longer than those set by collective bargaining agreements may be rescinded within the same period.

(2) The preceding provision shall not apply to members of the public service who are unaffected by the provisions regarding "Liberation from National Socialism and Militarism" or who are recognised victims of National Socialism, absent important personal grounds.

(3) Persons affected may have recourse to the courts in accordance with paragraph (4) of Article 19.

(4) Details shall be specified by a statutory instrument issued by the Federal Government with the consent of the Bundesrat.

### Article 133
### [Succession to the Administration of the Combined Economic Area]

The Federation shall succeed to the rights and duties of the Administration of the Combined Economic Area.

### Article 134
### [Succession to Reich assets]

(1) Reich assets shall, in principle, become federal assets.

(2) Insofar as such assets were originally intended to be used principally for administrative tasks not entrusted to the Federation under this Basic Law, they shall be transferred without compensation to the authorities now entrusted with such tasks and to the extent that such assets are now being used, not merely temporarily, for administrative tasks that under this Basic Law are now performed by the Länder, they shall be transferred to the Länder. The Federation may also transfer other assets to the Länder.

(3) Assets that were placed at the disposal of the Reich without compensation by Länder or municipalities (associations of municipalities) shall revert to those Länder or municipalities (associations of municipalities) insofar as the Federation does not require them for its own administrative purposes.

(4) Details shall be regulated by a federal law requiring the consent of the Bundesrat.

### Article 135
### [Assets in case of territorial changes between the Länder]

(1) If after 8 May 1945 and before the effective date of this Basic Law an area has passed from one Land to another, the Land to which the area now belongs shall be entitled to the assets of the Land to which it previously belonged that are located in that area.

(2) The assets of Länder or other public-law corporations or institutions that no longer exist, insofar as they were originally intended to be used principally for administrative tasks or are now being so used, not merely temporarily, shall pass to the Land, corporation or institution that now performs those tasks.

**APP 1776**

App. 2457

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

(3) Real property of Länder that no longer exist, including appurtenances, shall pass to the Land within which it is located, insofar as it is not among the assets already referred to in paragraph (1) of this Article.

(4) Insofar as an overriding interest of the Federation or the particular interest of a region requires, a federal law may depart from the rules prescribed by paragraphs (1) to (3) of this Article.

(5) In all other respects, the succession to and disposition of assets, insofar as it has not been effected before 1 January 1952 by agreement between the affected Länder or corporations or institutions established under public law, shall be regulated by a federal law requiring the consent of the Bundesrat.

(6) Holdings of the former Land of Prussia in enterprises established under private law shall pass to the Federation. Details shall be regulated by a federal law, which may also depart from this provision.

(7) Insofar as assets that on the effective date of this Basic Law would devolve upon a Land or a corporation or institution established under public law pursuant to paragraphs (1) to (3) of this Article have been disposed of by or pursuant to a Land law or in any other manner by the party thus entitled, the transfer of assets shall be deemed to have taken place before such disposition.

## Article 135a
### [Old debts]

(1) Federal legislation enacted pursuant to paragraph (4) of Article 134 or paragraph (5) of Article 135 may also provide that the following debts shall not be discharged, or that they shall be discharged only in part:

    1.    debts of the Reich, of the former Land of Prussia, or of such other corporations and institutions under public law as no longer exist;

    2.    such debts of the Federation or of corporations and institutions under public law as are connected with the transfer of assets pursuant to Article 89, 90, 134 or 135, and such debts of these bodies as arise from measures taken by the bodies designated in clause 1;

    3.    such debts of the Länder or municipalities (associations of municipalities) as have arisen from measures taken by them before 1 August 1945 within the framework of administrative functions incumbent upon or delegated by the Reich to comply with orders of the occupying powers or to terminate a state of emergency resulting from the war.

(2) Paragraph (1) of this Article shall apply mutatis mutandis to debts of the German Democratic Republic or its institutions as well as to debts of the Federation or other corporations and institutions under public law that are connected with the transfer of assets of the German Democratic Republic to the Federation, Länder or municipalities, and to debts arising from measures taken by the German Democratic Republic or its institutions.

## Article 136
### [First convening of the Bundesrat]

(1) The Bundesrat shall convene for the first time on the day the Bundestag first convenes.

(2) Until the election of the first Federal President, his powers shall be exercised by the President of the Bundesrat. He shall not have authority to dissolve the Bundestag.

## Article 137
### [Right of state employees to stand for election]

APP 1777

App. 2458

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

(1) The right of civil servants, other salaried public employees, professional or volunteer members of the Armed Forces, and judges to stand for election in the Federation, in the Länder or in the municipalities may be restricted by a law.

(2) The election of the first Bundestag, of the first Federal Convention and of the first Federal President shall be governed by an electoral law to be enacted by the Parliamentary Council.

(3) Until the Federal Constitutional Court is established, its authority under paragraph (2) of Article 41 shall be exercised by the German High Court for the Combined Economic Area, which shall make determinations in accordance with its procedural rules.

### Article 138
### [South German notaries]

Changes in the rules governing the notarial profession as it now exists in the Länder of Baden, Bavaria, Württemberg-Baden and Württemberg-Hohenzollern shall require the consent of the governments of these Länder.

### Article 139
### [Continued applicability of denazification provisions]

The legal provisions enacted for the "Liberation of the German People from National Socialism and Militarism" shall not be affected by the provisions of this Basic Law.

### Article 140
### [Law of religious denominations]

The provisions of Articles 136, 137, 138, 139 and 141 of the German Constitution of 11 August 1919 shall be an integral part of this Basic Law.

### Article 141
### ["Bremen Clause"]

The first sentence of paragraph (3) of Article 7 shall not apply in any Land in which Land law otherwise provided on 1 January 1949.

### Article 142
### [Reservation in favour of basic rights in Land constitutions]

Notwithstanding Article 31, provisions of Land constitutions shall also remain in force insofar as they guarantee basic rights in conformity with Articles 1 to 18 of this Basic Law.

### Article 142a
### [repealed]

### Article 143
### [Duration of deviations from the Basic Law]

(1) The law in the territory specified in Article 3 of the Unification Treaty may deviate from provisions of this Basic Law for a period extending no later than 31 December 1992 insofar and so long as disparate circumstances make full compliance impossible. Deviations may not violate paragraph (2) of Article 19 and must be compatible with the principles specified in paragraph (3) of Article 79.

(2) Deviations from Titles II, VIII, VIIIa, IX, X and XI shall be permissible for a period extending no later than 31 December 1995.

(3) Independently of paragraphs (1) and (2) of this Article, Article 41 of the Unification Treaty and the rules for its implementation shall also remain in effect insofar as they provide for the irreversibility of acts interfering with property rights in the territory specified in Article 3 of this

APP 1778

App. 2459

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

Treaty.

## Article 143a
### [Exclusive legislative power concerning federal railways]

(1) The Federation shall have exclusive power to legislate with respect to all matters arising from the transformation of federal railways administered by the Federation into business enterprises. Paragraph (5) of Article 87e shall apply mutatis mutandis. Civil servants employed by federal railways may be assigned by a law to render services to federal railways established under private law without prejudice to their legal status or the responsibility of their employer.

(2) Laws enacted pursuant to paragraph (1) of this Article shall be executed by the Federation.

(3) The Federation shall continue to be responsible for local passenger services of the former federal railways until 31 December 1995. The same shall apply to the corresponding functions of rail transport administration. Details shall be regulated by a federal law requiring the consent of the Bundesrat.

## Article 143b
### [Privatisation of the Deutsche Bundespost]

(1) The special trust Deutsche Bundespost shall be transformed into enterprises under private law in accordance with a federal law. The Federation shall have exclusive power to legislate with respect to all matters arising from this transformation.

(2) The exclusive rights of the Federation existing before the transformation may be transferred by a federal law for a transitional period to the enterprises that succeed to the Deutsche Bundespost Postdienst and to the Deutsche Bundespost Telekom. The Federation may not surrender its majority interest in the enterprise that succeeds to the Deutsche Bundespost Postdienst until at least five years after the law takes effect. To do so shall require a federal law with the consent of the Bundesrat.

(3) Federal civil servants employed by the Deutsche Bundespost shall be given positions in the private enterprises that succeed to it, without prejudice to their legal status or the responsibility of their employer. The enterprises shall exercise the employer's authority. Details shall be regulated by a federal law.

## Article 143c
### [Compensation for the cessation of joint tasks]

(1) From 1 January 2007 until 31 December 2019, the Länder shall be entitled to receive annual payments from the federal budget as compensation for losing the Federation's financial contributions resulting from the abolition of the joint tasks of extension and construction of institutions of higher education, including university hospitals and educational planning, as well as for losing financial assistance for the improvement of municipal traffic infrastructure and for the promotion of social housing. Until 31 December 2013, these amounts are to be determined by averaging the financial share of the Federation for the years 2000 to 2008.

(2) Until 31 December 2013, the payments pursuant to paragraph (1) shall be distributed among the Länder in the form of:

    1.     fixed annual payments the amounts of which shall be determined according to the average share of each Land during the period 2000 to 2003;

    2.     payments earmarked for the functional area of the former joint financing.

**APP 1779**

App. 2460

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

(3) Until the end of 2013, the Federation and the Länder shall review the extent to which the financing allotted to individual Länder pursuant to paragraph (1) is still appropriate and necessary for the discharge of their tasks. Beginning with 1 January 2014, the earmarking pursuant to clause 2 of paragraph (2) of the financial means allotted under paragraph (1) shall cease; the earmarking for the volume of the means for investment purposes shall remain unchanged. Agreements resulting from Solidarity Pact II shall remain unaffected.

(4) Details shall be regulated by a federal law which shall require the consent of the Bundesrat.

### Article 143d
### [Transitional provisions relating to consolidation assistance]

(1) Articles 109 and 115 in the version in force until 31 July 2009 shall apply for the last time to the 2010 budget. Articles 109 and 115 in the version in force as from 1 August 2009 shall apply for the first time to the 2011 budget; debit authorisations existing on 31 December 2010 for special trusts already established shall remain untouched. In the period from 1 January 2011 to 31 December 2019, the Länder may, in accordance with their applicable legal regulations, deviate from the provisions of paragraph (3) of Article 109. The budgets of the Länder are to be planned in such a way that the 2020 budget fulfils the requirements of the fifth sentence of paragraph (3) of Article 109. In the period from 1 January 2011 to 31 December 2015, the Federation may deviate from the provisions of the second sentence of paragraph (2) of Article 115. The reduction of the existing deficits should begin with the 2011 budget. The annual budgets are to be planned in such a way that the 2016 budget satisfies the requirement of the second sentence of paragraph (2) of Article 115; details shall be regulated by federal law.

(2) As assistance for compliance with the provisions of paragraph (3) of Article 109 after 1 January 2020, the Länder of Berlin, Bremen, Saarland, Saxony-Anhalt, and Schleswig-Holstein may receive, for the period 2011 to 2019, consolidation assistance from the federal budget in the global amount of 800 million euros annually. The respective amounts are 300 million euros for Bremen, 260 million euros for Saarland, and 80 million euros each for Berlin, Saxony-Anhalt, and Schleswig-Holstein. The assistance payments shall be allocated on the basis of an administrative agreement under the terms of a federal law requiring the consent of the Bundesrat. These grants require a complete reduction of financial deficits by the end of 2020. The details, especially the annual steps to be taken to reduce financial deficits, the supervision of the reduction of financial deficits by the Stability Council, along with the consequences entailed in case of failure to carry out the step-by-step reduction, shall be regulated by a federal law requiring the consent of the Bundesrat and by an administrative agreement. There shall be no simultaneous granting of consolidation assistance and redevelopment assistance on the grounds of an extreme budgetary emergency.

(3) The financial burden resulting from the granting of the consolidation assistance shall be borne equally by the Federation and the Länder, to be financed from their share of the value-added tax. Details shall be regulated by a federal law requiring the consent of the Bundesrat.

### Article 144
### [Ratification of the Basic Law – Berlin]

(1) This Basic Law shall require ratification by the parliaments of two thirds of the German Länder in which it is initially to apply.

(2) Insofar as the application of this Basic Law is subject to restrictions in any Land listed in Article 23 or in any part thereof, such Land or part thereof shall have the right to send representatives to the Bundestag in accordance with Article 38 and to the Bundesrat in accordance with Article 50.

APP 1780

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

### Article 145
### [Entry into force of the Basic Law]

(1) The Parliamentary Council, with the participation of the members for Greater Berlin, shall confirm the ratification of this Basic Law in public session and shall certify and promulgate it.

(2) This Basic Law shall take effect at the end of the day on which it is promulgated.

(3) It shall be published in the Federal Law Gazette.

### Article 146
### [Duration of the Basic Law]

This Basic Law, which since the achievement of the unity and freedom of Germany applies to the entire German people, shall cease to apply on the day on which a constitution freely adopted by the German people takes effect.

Extracts from the German Constitution of 11 August 1919

### [Weimar Constitution]

### Religion and Religious Societies

### Article 136

(1) Civil and political rights and duties shall be neither dependent upon nor restricted by the exercise of religious freedom.

(2) Enjoyment of civil and political rights and eligibility for public office shall be independent of religious affiliation.

(3) No person shall be required to disclose his religious convictions. The authorities shall have the right to inquire into a person's membership in a religious society only to the extent that rights or duties depend upon it or that a statistical survey mandated by a law so requires.

(4) No person may be compelled to perform any religious act or ceremony, to participate in religious exercises, or to take a religious form of oath.

### Article 137

(1) There shall be no state church.

(2) The freedom to form religious societies shall be guaranteed. The union of religious societies within the territory of the Reich shall be subject to no restrictions.

(3) Religious societies shall regulate and administer their affairs independently within the limits of the law that applies to all. They shall confer their offices without the participation of the state or the civil community.

(4) Religious societies shall acquire legal capacity according to the general provisions of civil law.

(5) Religious societies shall remain corporations under public law insofar as they have enjoyed that status in the past. Other religious societies shall be granted the same rights upon application, if their constitution and the number of their members give assurance of their permanency. If two or more religious societies established under public law unite into a single organisation, it too shall be a corporation under public law.

(6) Religious societies that are corporations under public law shall be entitled to levy taxes on the basis of the civil taxation lists in accordance with Land law.

APP 1781

App. 2462

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

(7) Associations whose purpose is to foster a philosophical creed shall have the same status as religious societies.

(8) Such further regulation as may be required for the implementation of these provisions shall be a matter for Land legislation.

### Article 138

(1) Rights of religious societies to public subsidies on the basis of a law, contract or special grant shall be redeemed by legislation of the Länder. The principles governing such redemption shall be established by the Reich.

(2) Property rights and other rights of religious societies or associations in their institutions, foundations, and other assets intended for purposes of worship, education or charity shall be guaranteed.

### Article 139

Sunday and holidays recognised by the state shall remain protected by law as days of rest from work and of spiritual improvement.

### Article 141

To the extent that a need exists for religious services and pastoral work in the army, in hospitals, in prisons, or in other public institutions, religious societies shall be permitted to provide them, but without compulsion of any kind.

APP 1782

App. 2463

# Exhibit 7

## Decision of the German Constitutional Court
## NJW 1998, 745

**APP 1783**

App. 2464

*Kammerbeschlüsse*

**4. Leichtfertiger Umgang mit prozessualen Grundrechten durch Gericht**

GG Art. 3 I, 103 I; ZPO § 579 I Nr. 4

1. Art. 103 I GG verlangt, daß die Gerichte die unterlassene Gewährung rechtlichen Gehörs nachholen, sofern die Auslegung des Verfahrensrechts dies ermöglicht.

2. Die Abweisung einer auf § 579 I Nr. 4 ZPO gestützten Nichtigkeitsklage mit der Begründung, diese Vorschrift erfasse lediglich minderjährige Kinder, beschränkt Geschäftsfähige, Gebrechliche und juristische Personen, die nur durch das Handeln natürlicher Personen im Rechtsverkehr auftreten können, verletzt die Art. 3 I und 103 I GG. (Leitsätze der Redaktion)

*BVerfG (3. Kammer des Zweiten Senats), Beschl. v. 29. 10. 1997 – 2 BvR 1390/95*

**Zum Sachverhalt:** Dem Verfahren 6 C 378/93 wurde zunächst nur die Ehefrau des Bf. auf Zahlung eines Rechtsanwaltshonorars in Höhe von 91,20 DM in Anspruch genommen. Nachdem die Ehefrau den Bf. für ihr Vorbringen als Zeugen benannt hatte, erstreckte der Kl. im Termin zur mündlichen Verhandlung die Klage auch auf den Bf. Der Anwalt der Ehefrau nahm den die Klage erweiternden Schriftsatz „zustellungshalber" in Empfang und beantragte – auch im Namen des Bf. – Klageabweisung. Beide Eheleute wurden vom *AG* antragsgemäß verurteilt. Das Urteil verhält sich in den Entscheidungsgründen lediglich dazu, warum es die Klage gegen die Ehefrau für begründet hält.

Gegen dieses Urteil erhob der Bf. in dem Verfahren 6 C 1168/93 Nichtigkeitsklage nach § 579 I Nr. 4 ZPO, rügte die Verletzung von Art. 103 I GG und machte hierzu unter Beweisantritt geltend, der im Ausgangsverfahren aufgetretene Prozeßbevollmächtigte habe keinerlei Legitimation gehabt, ihn zu vertreten. Die Vertretung sei gegen seinen Willen und ohne Auftrag erfolgt. Auch nachträglich habe er diese Vertretung nicht genehmigt. Das *AG* wies die Nichtigkeitsklage mit Urteil vom 7. 12. 1994 ab. Durch § 579 I Nr. 4 ZPO seien nur minderjährige Kinder, beschränkt Geschäftsfähige, Gebrechliche und juristische Personen geschützt, die nur durch das Handeln natürlicher Personen im Rechtsverkehr auftreten könnten. Daß der Bf. zu einem dieser Personenkreise gehöre, habe er nicht behauptet. Im übrigen sei der Bf., wie dieser genau wisse, durch das Büro *B-J* (die Anwälte der Ehefrau) vertreten gewesen.

Die Verfassungsbeschwerde gegen das Urteil vom 7. 12. 1994 hatte Erfolg.

**Aus den Gründen:** IV. 1. Die Annahme der gegen die Abweisung der Nichtigkeitsklage gerichteten Verfassungsbeschwerde ist zur Durchsetzung der in § 90 I BVerfGG genannten Rechte (hier: Art. 3 I und Art. 103 I GG) angezeigt. Zwar ist das materielle Interesse des Bf. am Ausgang des Rechtsstreits gering; die von ihm geltend gemachte Grundrechtsverletzung hat aber besonderes Gewicht, weil sie einen geradezu leichtfertigen Umgang mit prozessualen Grundrechten offenbart (vgl. dazu *BVerfGE* 90, 22 [25] = NJW 1994, 993). Die Verfassungsbeschwerde ist insoweit auch offensichtlich begründet. Denn für diese Beurteilung maßgeblichen verfassungsrechtlichen Fragen hat das *BVerfG* bereits entschieden (§ 93 c BVerfGG). Danach verletzt das Urteil vom 7. 12. 1994 die verfassungsrechtliche Rechtsschutzgarantie aus Art. 103 I GG und den Art. 3 I GG in seiner Ausprägung als objektives Willkürverbot.

a) Die Auslegung des Gesetzes ist Sache der dafür zuständigen Fachgerichte und der Nachprüfung durch das *BVerfG* grundsätzlich entzogen. Unter dem Gesichtspunkt des Willkürverbots des Art. 3 I GG greift das *BVerfG* jedoch dann ein, wenn ein Richterspruch unter Berücksichtigung der das Grundgesetz beherrschenden Gedanken unter keinem denkbaren Aspekt rechtlich vertretbar ist und daher der Schluß aufdrängt, daß er auf sachfremden Erwägungen beruht (vgl. *BVerfGE* 74, 102 [127] = NJW 1988, 45; *BVerfGE* 87, 273 [278 f.] = NJW 1993, 996 jew. m. w. Nachw.). Art. 103 I GG verlangt, daß die Gerichte die unterlassene Gewährung rechtlichen Gehörs (Art. 103 I GG) nachholen, sofern die Auslegung des Verfahrensrechts dies ermöglicht (vgl. auch *BGHZ* 84, 24 [29 f.] = NJW 1982, 2449 = LM § 579 ZPO Nr. 6 ausdrücklich zur Nichtigkeitsklage nach § 579 I Nr. 4 ZPO).

b) Die Auffassung des *AG*, § 579 I Nr. 4 ZPO erfasse lediglich minderjährige Kinder, beschränkt Geschäftsfähige, Gebrechliche und juristische Personen, die nur durch das Handeln natürlicher Personen im Rechtsverkehr auftreten können,

verletzt die Art. 3 I und 103 I GG. Es spricht allgemeiner Auffassung, daß die Nichtigkeitsklage nach § 579 I Nr. 4 ZPO auch das Auftreten von Prozeßvertretern erfaßt, die hierfür von vornherein keine Vollmacht hatten (vgl. *BGHZ* 84, 24 [28 ff.] = NJW 1982, 2449 = LM § 579 ZPO Nr. 6; *Greger*, in: *Zöller*, ZPO, 20. Aufl., § 579 Rdnr. 6; *Grunsky*, in: *Stein/Jonas*, ZPO, 21. Aufl., § 579 Rdnr. 6, jew. m. w. Nachw.; *Henckel*, ProzeßR und materielles Recht, 1970, S. 76, 78 f.; *Baumgärtel*, Wesen und Begriff der Prozeßhandlung einer Partei im Zivilprozeß, 1957, S. 177 f.). § 579 I Nr. 4 ZPO bezweckt den Schutz von Parteien, die ihre Angelegenheiten im Prozeß nicht verantwortlich regeln konnten oder denen die Handlungen vollmachtloser Vertreter nicht zugerechnet werden dürfen (*BGHZ* 84, 24 [28] = NJW 1982, 2449 = LM § 579 ZPO Nr. 6). Dies ist in dem Lichte zu sehen, daß das Wiederaufnahmeverfahren nach § 579 I Nr. 4 ZPO die nachträgliche Gewährung des rechtlichen Gehörs sicherstellt, wenn eine Partei infolge von Umständen, die sie nicht zu vertreten hat, daran gehindert war, sich im Prozeß (eigenverantwortlich) zu äußern (vgl. *BGHZ* 84, 24 [29] = NJW 1982, 2449 = LM § 579 ZPO Nr. 6). Das hat das *AG* unter Verstoß gegen Art. 3 I, 103 I GG verkannt, indem es dem Bf. den Zugang zum Wiederaufnahmeverfahren trotz des geltend gemachten Gehörsverstoßes versagt hat.

c) Die Entscheidung des *AG* beruht auch auf dem Verfassungsverstoß. Da der Bf. im Verfahren der Nichtigkeitsklage substantiiert und unter Beweisantritt eine fehlende Vollmacht behauptet hatte, kann nicht ausgeschlossen werden, daß das *AG* bei Beachtung der Maßstäbe der Art. 3 I, 103 I GG genügenden Rechtsanwendung zu einem anderen Ergebnis gelangt wäre.

2. Soweit sich die Verfassungsbeschwerde gegen das (Leistungs-)Urteil vom 19. 5. 1993 richtet, ist ihre Annahme nicht angezeigt, weil sie mangels Erschöpfung des Rechtswegs derzeit unzulässig ist (§ 90 II BVerfGG). Wird das die Nichtigkeitsklage abweisende Urteil aufgehoben, kann die Frage, ob das im ersten Verfahren wirksam vertreten war, im Wiederaufnahmeverfahren nach § 579 I Nr. 4 ZPO geklärt werden.

**Anm. d. Schriftltg.:** S. auch *Sangmeister*, NJW 1998, 721 (in diesem Heft), sowie die unter Nr. 3 ebenfalls in diesem Heft abgedruckte Entscheidung des *BVerfG*, NJW 1998, 743. Zur Erschöpfung des Rechtswegs vor Einlegung einer Verfassungsbeschwerde durch Erhebung einer Nichtigkeitsklage s. *BVerfG* (3. Kammer des Zweiten Senats), NJW 1992, 1030; 1. Kammer des Zweiten Senats, NJW 1992, 496.

---

# Landesverfassungsgerichte

**5. Mietspiegeleinsatz im Rahmen von § 5 WiStrG und Einwand methodischer Mängel**

WiStrG § 5; BerlVerf Art. 15 I

1. Der in der Berliner Verfassung verankerte Grundsatz rechtlichen Gehörs wird nicht allein dadurch verletzt, daß das Instanzgericht bei der Beurteilung der Frage, ob ein Mietzins überhöht i. S. von § 5 WiStrG ist, auf den einschlägigen Berliner Mietspiegel zurückgreift, statt ein kosten- und zeitaufwendiges Sachverständigengutachten einzuholen. Dies gilt jedenfalls dann, wenn sich dem Gericht nicht aufgrund substantiierten Vortrags ernste Zweifel an der Verwendbarkeit des Mietspiegels im gegebenen Fall aufdrängen mußten.

2. Macht der Beschwerdeführer weiter geltend, der verwendete Mietspiegel sei methodisch fehlerhaft erstellt, so hat er – jedenfalls unter dem Blickwinkel des Vorwurfs eines Verfassungsverstoßes des erkennenden Gerichts – darzulegen, wie die behaupteten Mängel des Mietspiegels auf das konkrete Mietspiegelfeld und damit auf die vom Gericht für die Bestimmung der Miete als maßgeblich angesehene Mietpreisspanne ausgewirkt hat. (Leitsätze der Redaktion)

*BerlVerfGH, Beschl. v. 17. 12. 1997 – VerfGH 112/96*

**Anm. d. Schriftltg.:** Die Entscheidung ist mit Sachverhalt und Gründen abgedruckt in NZM 1998, 183.

**APP 1784**

# Exhibit 8

# Decision of the
# German Federal Court of Justice
# BGHZ 144, 390

APP 1785

App. 2466

ENTSCHEIDUNGEN
DES BUNDESGERICHTSHOFES

HERAUSGEGEBEN VON
DEN MITGLIEDERN DES BUNDESGERICHTSHOFES
UND DER BUNDESANWALTSCHAFT



CARL HEYMANNS VERLAG KG
KÖLN · BERLIN

ENTSCHEIDUNGEN
DES BUNDESGERICHTSHOFES
IN ZIVILSACHEN

BGHZ

144. BAND



2001

CARL HEYMANNS VERLAG KG
KÖLN · BERLIN

(1a) BGHZ 144

APP 1786

## 47

Ein ausländisches Urteil, das darauf beruht, daß dem Schuldner die Vertretung durch einen in der Verhandlung anwesenden, zugelassenen Rechtsanwalt nur deswegen verwehrt wurde, weil der Schuldner nicht persönlich erschienen war, kann in Deutschland nicht anerkannt werden.

EuGVÜ Art. 27 Nr. 1; GG Art. 103 Abs. 1.
IX. Zivilsenat. Beschl. vom 29. Juni 2000
i. S. Dr. K. (Schuldner) w. B. (Gläubiger).
IX ZB 23/97.

I. Landgericht Kempten (Allgäu)
II. Oberlandesgericht München (Augsburg)

Die 1967 geborene eheliche Tochter des Gläubigers – K. B. – lebte eine Zeitlang beim Schuldner in der Bundesrepublik Deutschland. Der Schuldner, ein Arzt, gab ihr dort am 9. Juli 1982 eine Kobalt-Ferrlecit-Injektion. Das Mädchen, das französische Staatsangehörige war, starb tags darauf. Der Schuldner behauptet, die Spritze sei medizinisch geboten und der Tod nicht voraussehbar gewesen. Gegen ihn wurde in Deutschland ein vieljähriges Ermittlungsverfahren wegen des Verdachts einer Tötungshandlung geführt, aber zuletzt – auch nach gerichtlicher Überprüfung (§§ 172 bis 174 StPO) – mangels Beweises eingestellt.

Auf eine Strafanzeige des Gläubigers hin wurde gegen den Schuldner vor dem Schwurgericht Paris eine Anklage wegen vorsätzlicher Tötung erhoben. Mit der Anklage wurde dem Schuldner am 5. Juni 1993 in Deutschland die damit zugleich erhobene Zivilklage des Gläubigers zugestellt. Das französische Gericht ordnete das persönliche Erscheinen des Schuldners an und erließ gegen ihn einen Haftbefehl zur Erzwingung seiner Anwesenheit in der Hauptverhandlung vom 9. und 13. März 1995. Zu dieser Hauptverhandlung kam der Schuldner nicht selbst nach Paris; für ihn erschienen aber ein französischer und ein deutscher Rechtsanwalt. Das Schwurgericht Paris untersagte ihnen, in Abwesenheit des Schuldners für die-

sen aufzutreten, und erklärte die von ihnen vorgelegten Verteidigungsschriften für unzulässig.

Der Schuldner wurde in Abwesenheit wegen vorsätzlicher gewaltsamer Nötigung, die – ohne daß dies seiner Absicht entsprochen hätte – den Tod der K. B. herbeigeführt habe, zu 15 Jahren Zuchthaus verurteilt. Am 13. März 1995 verurteilte das Schwurgericht den Schuldner in Abwesenheit weiter, an den Gläubiger 350 000 FF (250 000 FF als Wiedergutmachung für immaterielle Schäden und 100 000 FF gemäß Artikel 375 der früheren französischen Strafprozeßordnung – CPP) zu zahlen. Der Gläubiger hatte diese Anträge durch einen Rechtsanwalt gestellt.

Auf Antrag des Gläubigers hat der Vorsitzende einer Zivilkammer des zuständigen Landgerichts Kempten (Allgäu) angeordnet, das Urteil des Schwurgerichts Paris vom 13. März 1995 mit der Vollstreckungsklausel zu versehen. Die dagegen gerichtete Beschwerde hat das Oberlandesgericht zurückgewiesen. Mit der form- und fristgerecht eingelegten Rechtsbeschwerde rügt der Schuldner vor allem, er habe sich gegen seine Verurteilung in Paris nicht wirksam verteidigen können. Das Rechtsmittel hatte Erfolg.

### Aus den Gründen:

Nach Artikel 27 Nr. 1 in Verbindung mit Artikel 34 Abs. 2 EuGVÜ wird eine Entscheidung nicht für vollstreckbar erklärt, wenn die Anerkennung der öffentlichen Ordnung des Staates, in dem sie geltend gemacht wird, widersprechen würde.

1. Das Schwurgericht Paris hat die Rechtsanwälte, die in der Verhandlung für den Schuldner auftreten wollten, auf der Grundlage des Artikels 630 Satz 1 CPP zurückgewiesen. Danach darf kein Verteidiger für einen Angeklagten im Abwesenheitsverfahren gemäß Artikel 627 ff. CPP auftreten. Das Schwurgericht hat sodann die Schuld des Angeklagten (Schuldners) ohne Berücksichtigung seiner Einlassung ausgesprochen und den Entschädigungsbetrag für immaterielle Schäden einseitig aufgrund der Angaben des Adhäsionsklägers

25 BGHZ 144

(Gläubigers) festgestellt. Es geht also – entgegen der Ansicht des Gläubigers – nicht allein darum, daß der Schuldner nicht vor dem französischen Gericht erschienen ist. Vielmehr hat er versucht, sich verteidigen zu lassen; dies wurde ihm verwehrt.

2. Die Vollstreckbarerklärung eines so zustande gekommenen Versäumnisurteils verletzt die deutsche öffentliche Ordnung. Eine in Deutschland verklagte Partei darf sich in jeder Lage eines Zivilverfahrens durch einen Rechtsanwalt mit der Wirkung vertreten lassen, daß sie nicht säumig ist. Zwar kann in gewissen, eng begrenzten Fällen eine erstinstanzliche Hauptverhandlung in einer Strafsache auch ohne Anwesenheit des Angeklagten stattfinden; er ist nach § 234 StPO jedoch stets befugt, sich durch einen bevollmächtigten Verteidiger vertreten zu lassen. Das gilt zugleich gegenüber einem im Adhäsionsverfahren als Verfahren im Adhäsionsverfahren geltend gemachten Entschädigungsantrag des Verletzten (vgl. § 404 Abs. 5 Satz 2 StPO).

Artikel 103 Abs. 1 GG schreibt vor, daß vor einem gerichtlichen Gericht jedermann Anspruch auf rechtliches Gehör hat. Regelmäßig ist auch jeder befugt, dieses Recht durch einen Rechtsanwalt auszuüben (vgl. BVerfGE 7, 53, 57 f.). Insbesondere im Strafverfahren darf der Angeklagte sich durch einen Verteidiger seines Vertrauens verteidigen lassen (BVerfGE 66, 313, 318 f.). Soweit der Rechtsanwalt das Recht auf Gehör für seine Partei ausübt, ist er es, den das Gericht auf jeden Fall durchgängig am Verfahren zu beteiligen hat; wird dieses nicht beachtet, so ist grundsätzlich Artikel 103 Abs. 1 GG verletzt (Maunz/Dürig/Schmidt-Aßmann, GG Artikel 103 Rdnr. 108). Der Anspruch auf rechtliches Gehör bedeutet auch, daß das entscheidende Gericht die Ausführungen der Prozeßbeteiligten zur Kenntnis nehmen und in Erwägung ziehen muß (BVerfGE 53, 219, 222; 60, 247, 249; 70, 215, 218, jeweils m.w.Nachw.). Das Gericht darf nicht Vortrag unberücksichtigt lassen, der ihm in der anberaumten Verhandlung unterbreitet wird.

Die Beachtung der Grundrechte gehört zum Inhalt der deutschen öffentlichen Ordnung. Nach der Sachlage ist auch nicht auszuschließen, daß das Schwurgericht Paris über den

Schadensersatzanspruch anders entschieden hätte, wenn es bei seiner Entscheidung die Verteidigung des Schuldners berücksichtigt hätte. Dieser behauptet, die Injektion sei medizinisch geboten gewesen, und bestreitet insbesondere den – in die »conclusions« für das Schwurgericht aufgenommenen – Vorwurf des Gläubigers, daß der Schuldner sich zuvor an dem Mädchen sexuell vergangen habe.

3. Der dargestellte Verstoß gegen die deutsche öffentliche Ordnung darf im Rahmen des Art. 27 Nr. 1 EuGVÜ berücksichtigt werden. Auf die Vorlage des erkennenden Senats hat der Europäische Gerichtshof (Rechtssache C-7/98, Urt. v. 28. März 2000 – NJW 2000, 1853 f.) entschieden:

> Das Gericht des Vollstreckungsstaats darf im Rahmen der Ordre-Public-Klausel des Art. 27 Nr. 1 EuGVÜ im Fall eines Beklagten, der seinen Wohnsitz im Hoheitsgebiet dieses Staates hat und wegen einer vorsätzlich begangenen Straftat angeklagt worden ist, berücksichtigen, daß das Gericht des Ursprungsstaats diesem das Recht versagt hat, sich verteidigen zu lassen, ohne persönlich zu erscheinen.

Der Berücksichtigung steht auch Art. 11 Abs. 1 des Protokolls vom 27. September 1968 zum EuGVÜ nicht entgegen. Diese Vorschrift gewährleistet zwar das Recht, sich ohne persönliches Erscheinen vor den Strafgerichten eines Vertragsstaats verteidigen zu lassen, auswärtigen Personen nur dann ausdrücklich, wenn sie wegen einer fahrlässig begangenen Straftat verfolgt werden. Sie kann aber nicht dahin ausgelegt werden, daß sie bei der Strafverfolgung wegen einer vorsätzlich begangenen Straftat die Anwendung der Ordre-Public-Klausel des Art. 27 Nr. 1 EuGVÜ wegen Verletzung des rechtlichen Gehörs hindert (Urt. des Europäischen Gerichtshofs aaO unter Nr. 44).

Danach kann das französische Urteil, das unter Verletzung des rechtlichen Gehörs des Schuldners ergangen ist, in Deutschland nicht anerkannt werden.

APP 1788

# Exhibit 9

## Court of Justice of the European Union
## Krombach v. Bamberski Case No. C7/98
## ECR 2000 I 1935 No. 44

**APP 1789**

App. 2470

# JUDGMENT OF THE COURT

## 28 March 2000 *

In Case C-7/98,

REFERENCE to the Court pursuant to the Protocol of 3 June 1971 on the interpretation by the Court of Justice of the Convention of 27 September 1968 on Jurisdiction and the Enforcement of Judgments in Civil and Commercial Matters by the Bundesgerichtshof (Germany) for a preliminary ruling in the proceedings pending before that court between

Dieter Krombach

and

André Bamberski

on the interpretation of Article 27, point 1, of the abovementioned Convention of 27 September 1968 (OJ 1978 L 304, p. 36), as amended by the Convention of 9 October 1978 on the Accession of the Kingdom of Denmark, Ireland and the United Kingdom of Great Britain and Northern Ireland (OJ 1978 L 304, p. 1 and — amended version — p. 77) and by the Convention of 25 October 1982 on the Accession of the Hellenic Republic (OJ 1982 L 388, p. 1),

---

* Language of the case: German.

I - 1956

APP 1790

App. 2471

KROMBACH V BAMBERSKI

## THE COURT,

composed of: G.C. Rodríguez Iglesias, President, J.C. Moitinho de Almeida, D.A.O. Edward, L. Sevón, R. Schintgen (Presidents of Chambers), P.J.G. Kapteyn, C. Gulmann, J.-P. Puissochet, G. Hirsch, P. Jann (Rapporteur) and H. Ragnemalm, Judges,

Advocate General: A. Saggio,
Registrar: L. Hewlett, Administrator,

after considering the written observations submitted on behalf of:

— Mr Bamberski, by H. Klingelhöffer, Rechtsanwalt, Ettlingen,

— the German Government, by R. Wagner, Regierungsdirektor in the Federal Ministry of Justice, acting as Agent,

— the French Government, by K. Rispal-Bellanger, Deputy Head of the Legal Directorate of the Ministry of Foreign Affairs, and R. Loosli-Surrans, Chargée de Mission in that Directorate, acting as Agents,

— the Commission of the European Communities, by J.L. Iglesias Buhigues, Legal Adviser, acting as Agent, assisted by B. Wägenbaur, of the Brussels Bar,

I - 1957

APP 1791

App. 2472

having regard to the Report for the Hearing,

after hearing the oral observations of the French Government and the Commission at the hearing on 2 March 1999,

after hearing the Opinion of the Advocate General at the sitting on 23 September 1999,

gives the following

## Judgment

1   By order of 4 December 1997, received at the Court on 14 January 1998, the Bundesgerichtshof (Federal Court of Justice), Germany, referred to the Court for a preliminary ruling pursuant to the Protocol of 3 June 1971 on the interpretation by the Court of Justice of the Convention of 27 September 1968 on Jurisdiction and the Enforcement of Judgments in Civil and Commercial Matters three questions concerning the interpretation of Article 27, point 1, of the above-mentioned Convention of 27 September 1968 (OJ 1978 L 304, p. 36), as amended by the Convention of 9 October 1978 on the Accession of the Kingdom of Denmark, Ireland and the United Kingdom of Great Britain and Northern Ireland (OJ 1978 L 304, p. 1 and — amended version — p. 77) and by the Convention of 25 October 1982 on the Accession of the Hellenic Republic (OJ 1982 L 388, p. 1) (hereinafter 'the Convention').

2   Those questions have arisen in proceedings between Mr Bamberski, who is domiciled in France, and Mr Krombach, who is domiciled in Germany, relating

I - 1958

APP 1792

App. 2473

to the enforcement, in the latter Contracting State, of a judgment delivered on 13 March 1995 by the Cour d'Assises de Paris (Paris Assizes) which ordered Mr Krombach to pay to Mr Bamberski, the plaintiff in a civil claim, compensation in the amount of FRF 350 000.

### The Convention

3  The first paragraph of Article 1 provides that the Convention 'shall apply in civil and commercial matters whatever the nature of the court or tribunal'.

4  With regard to jurisdiction, the rule of principle, set out in the first paragraph of Article 2 of the Convention, states that persons domiciled in a Contracting State shall, whatever their nationality, be sued in the courts of that State. The second paragraph of Article 3 prohibits a plaintiff from relying on certain rules of exorbitant jurisdiction, in particular, so far as France is concerned, those based on nationality which derive from Articles 14 and 15 of the Code Civil (Civil Code).

5  The Convention also sets out special rules of jurisdiction. Thus, Article 5 of the Convention provides:

'A person domiciled in a Contracting State may, in another Contracting State, be sued:

...

I - 1959

APP 1793

4.  as regards a civil claim for damages or restitution which is based on an act giving rise to criminal proceedings, in the court seised of those proceedings, to the extent that that court has jurisdiction under its own law to entertain civil proceedings'.

6   In matters relating to the recognition and enforcement of judgments, the rule of principle, set out in the first paragraph of Article 31 of the Convention, provides that a judgment given in a Contracting State and enforceable in that State is to be enforced in another Contracting State when, on the application of any interested party, it has been declared enforceable there.

7   Under the second paragraph of Article 34, '[t]he application may be refused only for one of the reasons specified in Articles 27 and 28'.

8   Article 27, point 1, of the Convention states:

'A judgment shall not be recognised:

1.  if such recognition is contrary to public policy in the State in which recognition is sought'.

I - 1960

9    Article 28, third paragraph, of the Convention states:

'Subject to the provisions of the first paragraph, the jurisdiction of the court of the State of origin may not be reviewed; the test of public policy referred to in point 1 of Article 27 may not be applied to the rules relating to jurisdiction'.

10    Article 29 and the third paragraph of Article 34 of the Convention provide:

'Under no circumstances may a foreign judgment be reviewed as to its substance.'

11    Article II of the Protocol annexed to the Convention (hereinafter 'the Protocol'), which, according to Article 65 of the Convention, forms an integral part thereof, provides:

'Without prejudice to any more favourable provisions of national laws, persons domiciled in a Contracting State who are being prosecuted in the criminal courts of another Contracting State of which they are not nationals for an offence which was not intentionally committed may be defended by persons qualified to do so, even if they do not appear in person.

However, the court seised of the matter may order appearance in person; in the case of failure to appear, a judgment given in the civil action without the person concerned having had the opportunity to arrange for his defence need not be recognised or enforced in the other Contracting States.'

I - 1961

APP 1795

App. 2476

## The dispute in the main proceedings

12    Mr Krombach was the subject of a preliminary investigation in Germany following the death in Germany of a 14-year-old girl of French nationality. That preliminary investigation was subsequently discontinued.

13    In response to a complaint by Mr Bamberski, the father of the young girl, a preliminary investigation was opened in France, the French courts declaring that they had jurisdiction by virtue of the fact that the victim was a French national. At the conclusion of that investigation, Mr Krombach was, by judgment of the Chambre d'Accusation (Chamber of Indictments) of the Cour d'Appel de Paris (Paris Court of Appeal), committed for trial before the Cour d'Assises de Paris.

14    That judgment and notice of the introduction of a civil claim by the victim's father were served on Mr Krombach. Although Mr Krombach was ordered to appear in person, he did not attend the hearing. The Cour d'Assises de Paris thereupon applied the contempt procedure governed by Article 627 et seq. of the French Code of Criminal Procedure. Pursuant to Article 630 of that Code, under which no defence counsel may appear on behalf of the person in contempt, the Cour d'Assises reached its decision without hearing the defence counsel instructed by Mr Krombach.

15    By judgment of 9 March 1995 the Cour d'Assises imposed on Mr Krombach a custodial sentence of 15 years after finding him guilty of violence resulting in involuntary manslaughter. By judgment of 13 March 1995, the Cour d'Assises, ruling on the civil claim, ordered Mr Krombach, again as being in contempt, to pay compensation to Mr Bamberski in the amount of FRF 350 000.

16    On application by Mr Bamberski, the President of a civil chamber of the Landgericht (Regional Court) Kempten (Germany), which had jurisdiction

I - 1962

*ratione loci*, declared the judgment of 13 March 1995 to be enforceable in Germany. Following dismissal by the Oberlandesgericht (Higher Regional Court) of the appeal which he had lodged against that decision, Mr Krombach brought an appeal on a point of law ('Rechtsbeschwerde') before the Bundesgerichtshof in which he submitted that he had been unable effectively to defend himself against the judgment given against him by the French court.

17   Those are the circumstances in which the Bundesgerichtshof decided to stay proceedings and to refer the following questions to the Court for a preliminary ruling:

'1.   May the provisions on jurisdiction form part of public policy within the meaning of Article 27, point 1, of the Brussels Convention where the State of origin has based its jurisdiction as against a person domiciled in another Contracting State (first paragraph of Article 2 of the Brussels Convention) solely on the nationality of the injured party (as in the second paragraph of Article 3 of the Brussels Convention in relation to France)?

If Question 1 is answered in the negative:

2.   May the court of the State in which enforcement is sought (first paragraph of Article 31 of the Brussels Convention) take into account under public policy within the meaning of Article 27, point 1, of the Brussels Convention that the criminal court of the State of origin did not allow the debtor to be defended by a lawyer in a civil-law procedure for damages instituted within the criminal proceedings (Article II of the Protocol of 27 September 1968 on the interpretation of the Brussels Convention) because he, a resident of another Contracting State, was charged with an *intentional* offence and did not appear in person?

I - 1963

APP 1797

If Question 2 is also answered in the negative:

3. May the court of the State in which enforcement is sought take into account under public policy within the meaning of Article 27, point 1, of the Brussels Convention that the court of the State of origin based its jurisdiction solely on the nationality of the injured party (see Question 1 above) and *additionally* prevented the defendant from being legally represented (see Question 2 above)?'

**Preliminary observations**

18  By its questions, the national court is essentially asking the Court how the term 'public policy in the State in which recognition is sought' in point 1 of Article 27 of the Convention should be interpreted.

19  The Convention is intended to facilitate, to the greatest possible extent, the free movement of judgments by providing for a simple and rapid enforcement procedure (see, *inter alia*, Case C-414/92 *Solo Kleinmotoren* v *Boch* [1994] ECR I-2237, paragraph 20, and Case C-267/97 *Coursier* v *Fortis Bank* [1999] ECR I-2543, paragraph 25).

20  It follows from the Court's case-law that this procedure constitutes an autonomous and complete system independent of the legal systems of the Contracting States and that the principle of legal certainty in the Community legal system and the objectives of the Convention in accordance with Article 220 of the EC Treaty (now Article 293 EC), on which it is founded, require a uniform application in all Contracting States of the Convention rules and the relevant case-law of the Court (see, in particular, Case C-432/93 *SISRO* v *Ampersand* [1995] ECR I-2269, paragraph 39).

I - 1964

21  So far as Article 27 of the Convention is concerned, the Court has held that this provision must be interpreted strictly inasmuch as it constitutes an obstacle to the attainment of one of the fundamental objectives of the Convention (*Solo Kleinmotoren*, cited above, paragraph 20). With regard, more specifically, to recourse to the public-policy clause in Article 27, point 1, of the Convention, the Court has made it clear that such recourse is to be had only in exceptional cases (Case 145/86 *Hoffmann* v *Krieg* [1988] ECR 645, paragraph 21, and Case C-78/95 *Hendrikman and Feyen* v *Magenta Druck & Verlag* [1996] ECR I-4943, paragraph 23).

22  It follows that, while the Contracting States in principle remain free, by virtue of the proviso in Article 27, point 1, of the Convention, to determine, according to their own conceptions, what public policy requires, the limits of that concept are a matter for interpretation of the Convention.

23  Consequently, while it is not for the Court to define the content of the public policy of a Contracting State, it is none the less required to review the limits within which the courts of a Contracting State may have recourse to that concept for the purpose of refusing recognition to a judgment emanating from a court in another Contracting State.

24  It should be noted in this regard that, since the Convention was concluded on the basis of Article 220 of the Treaty and within the framework which it defines, its provisions are linked to the Treaty (Case C-398/92 *Mund & Fester* v *Hatrex Internationaal Transport* [1994] ECR I-467, paragraph 12).

25  The Court has consistently held that fundamental rights form an integral part of the general principles of law whose observance the Court ensures (see, in particular, Opinion 2/94 [1996] ECR I-1759, paragraph 33). For that purpose, the Court draws inspiration from the constitutional traditions common to the Member States and from the guidelines supplied by international treaties for the protection of human rights on which the Member States have collaborated or of

I - 1965

APP 1799

App. 2480

which they are signatories. In that regard, the European Convention for the Protection of Human Rights and Fundamental Freedoms (hereinafter 'the ECHR') has particular significance (see, *inter alia*, Case 222/84 *Johnston* v *Chief Constable of the Royal Ulster Constabulary* [1986] ECR 1651, paragraph 18).

26   The Court has thus expressly recognised the general principle of Community law that everyone is entitled to fair legal process, which is inspired by those fundamental rights (Case C-185/95 P *Baustahlgewebe* v *Commission* [1998] ECR I-8417, paragraphs 20 and 21, and judgment of 11 January 2000 in Joined Cases C-174/98 P and C-189/98 P *Netherlands and Van der Wal* v *Commission* [2000] ECR I-1, paragraph 17).

27   Article F(2) of the Treaty on European Union (now, after amendment, Article 6(2) EU) embodies that case-law. It provides: 'The Union shall respect fundamental rights, as guaranteed by the European Convention for the Protection of Human Rights and Fundamental Freedoms signed in Rome on 4 November 1950 and as they result from the constitutional traditions common to the Member States, as general principles of Community law'.

28   It is in the light of those considerations that the questions submitted for a preliminary ruling fall to be answered.

**The first question**

29   By this question, the national court is essentially asking whether, regard being had to the public-policy clause contained in Article 27, point 1, of the Convention, the court of the State in which enforcement is sought can, with respect to a

I - 1966

defendant domiciled in that State, take into account the fact that the court of the State of origin based its jurisdiction on the nationality of the victim of an offence.

30   It should be noted at the outset that it follows from the specific terms of the first paragraph of Article 1 of the Convention that the Convention applies to decisions given in civil matters by a criminal court (Case C-172/91 *Sonntag* v *Waidmann and Others* [1993] ECR I-1963, paragraph 16).

31   Under the system of the Convention, with the exception of certain cases exhaustively listed in the first paragraph of Article 28, none of which corresponds to the facts of the case in the main proceedings, the court before which enforcement is sought cannot review the jurisdiction of the court of the State of origin. This fundamental principle, which is set out in the first phrase of the third paragraph of Article 28 of the Convention, is reinforced by the specific statement, in the second phrase of the same paragraph, that 'the test of public policy referred to in point 1 of Article 27 may not be applied to the rules relating to jurisdiction'.

32   It follows that the public policy of the State in which enforcement is sought cannot be raised as a bar to recognition or enforcement of a judgment given in another Contracting State solely on the ground that the court of origin failed to comply with the rules of the Convention which relate to jurisdiction.

33   Having regard to the generality of the wording of the third paragraph of Article 28 of the Convention, that statement of the law must be regarded as being, in principle, applicable even where the court of the State of origin wrongly founded its jurisdiction, in regard to a defendant domiciled in the territory of the State in which enforcement is sought, on a rule which has recourse to a criterion of nationality.

I - 1967

APP 1801

34    The answer to the first question must therefore be that the court of the State in which enforcement is sought cannot, with respect to a defendant domiciled in that State, take account, for the purposes of the public-policy clause in Article 27, point 1, of the Convention, of the fact, without more, that the court of the State of origin based its jurisdiction on the nationality of the victim of an offence.

### The second question

35    By this question, the national court is essentially asking whether, in relation to the public-policy clause in Article 27, point 1, of the Convention, the court of the State in which enforcement is sought can, with respect to a defendant domiciled in its territory and charged with an intentional offence, take into account the fact that the court of the State of origin refused to allow that defendant to have his defence presented unless he appeared in person.

36    By disallowing any review of a foreign judgment as to its substance, Article 29 and the third paragraph of Article 34 of the Convention prohibit the court of the State in which enforcement is sought from refusing to recognise or enforce that judgment solely on the ground that there is a discrepancy between the legal rule applied by the court of the State of origin and that which would have been applied by the court of the State in which enforcement is sought had it been seised of the dispute. Similarly, the court of the State in which enforcement is sought cannot review the accuracy of the findings of law or fact made by the court of the State of origin.

37    Recourse to the public-policy clause in Article 27, point 1, of the Convention can be envisaged only where recognition or enforcement of the judgment delivered in another Contracting State would be at variance to an unacceptable degree with the legal order of the State in which enforcement is sought inasmuch as it infringes a fundamental principle. In order for the prohibition of any review of the foreign judgment as to its substance to be observed, the infringement would have to constitute a manifest breach of a rule of law regarded as essential in the

I - 1968

legal order of the State in which enforcement is sought or of a right recognised as being fundamental within that legal order.

38   With regard to the right to be defended, to which the question submitted to the Court refers, this occupies a prominent position in the organisation and conduct of a fair trial and is one of the fundamental rights deriving from the constitutional traditions common to the Member States.

39   More specifically still, the European Court of Human Rights has on several occasions ruled in cases relating to criminal proceedings that, although not absolute, the right of every person charged with an offence to be effectively defended by a lawyer, if need be one appointed by the court, is one of the fundamental elements in a fair trial and an accused person does not forfeit entitlement to such a right simply because he is not present at the hearing (see the following judgments of the European Court of Human Rights: judgment of 23 November 1993 in *Poitrimol* v *France*, Series A No 277-A; judgment of 22 September 1994 in *Pelladoah* v *Netherlands*, Series A No 297-B; judgment of 21 January 1999 in *Van Geyseghem* v *Belgium*, not yet reported).

40   It follows from that case-law that a national court of a Contracting State is entitled to hold that a refusal to hear the defence of an accused person who is not present at the hearing constitutes a manifest breach of a fundamental right.

41   The national court is, however, unsure as to whether the court of the State in which enforcement is sought can take account, in relation to Article 27, point 1, of the Convention, of a breach of this nature having regard to the wording of Article II of the Protocol. That provision, which involves extending the scope of the Convention to the criminal field because of the consequences which a judgment of a criminal court may entail in civil and commercial matters (Case

I - 1969

APP 1803

157/80 *Rinkau* [1981] ECR 1391, paragraph 6), recognises the right to be defended without appearing in person before the criminal courts of a Contracting State for persons who are not nationals of that State and who are domiciled in another Contracting State only in so far as they are being prosecuted for an offence committed unintentionally. This restriction has been construed as meaning that the Convention clearly seeks to deny the right to be defended without appearing in person to persons who are being prosecuted for offences which are sufficiently serious to justify this (*Rinkau*, cited above, paragraph 12).

42    However, it follows from a line of case-law developed by the Court on the basis of the principles referred to in paragraphs 25 and 26 of the present judgment that observance of the right to a fair hearing is, in all proceedings initiated against a person which are liable to culminate in a measure adversely affecting that person, a fundamental principle of Community law which must be guaranteed even in the absence of any rules governing the proceedings in question (see, *inter alia*, Case C-135/92 *Fiskano v Commission* [1994] ECR I-2885, paragraph 39, and Case C-32/95 P *Commission v Lisrestal and Others* [1996] ECR I-5373, paragraph 21).

43    The Court has also held that, even though the Convention is intended to secure the simplification of formalities governing the reciprocal recognition and enforcement of judgments of courts or tribunals, it is not permissible to achieve that aim by undermining the right to a fair hearing (Case 49/84 *Debaecker and Plouvier v Bouwman* [1985] ECR 1779, paragraph 10).

44    It follows from the foregoing developments in the case-law that recourse to the public-policy clause must be regarded as being possible in exceptional cases where the guarantees laid down in the legislation of the State of origin and in the Convention itself have been insufficient to protect the defendant from a manifest breach of his right to defend himself before the court of origin, as recognised by the ECHR. Consequently, Article II of the Protocol cannot be construed as

I - 1970

KROMBACH V BAMBERSKI

precluding the court of the State in which enforcement is sought from being entitled to take account, in relation to public policy, as referred to in Article 27, point 1, of the Convention, of the fact that, in an action for damages based on an offence, the court of the State of origin refused to hear the defence of the accused person, who was being prosecuted for an intentional offence, solely on the ground that that person was not present at the hearing.

45  The answer to the second question must therefore be that the court of the State in which enforcement is sought can, with respect to a defendant domiciled in that State and prosecuted for an intentional offence, take account, in relation to the public-policy clause in Article 27, point 1, of the Convention, of the fact that the court of the State of origin refused to allow that person to have his defence presented unless he appeared in person.

## The third question

46  In light of the reply to the second question, it is unnecessary to answer the third question.

## Costs

47  The costs incurred by the German and French Governments and by the Commission, which have submitted observations to the Court, are not

I - 1971

APP 1805

App. 2486

recoverable. Since these proceedings are, for the parties to the main proceedings, a step in the proceedings pending before the national court, the decision on costs is a matter for that court.

On those grounds,

THE COURT,

in answer to the questions referred to it by the Bundesgerichtshof by order of 4 December 1997, hereby rules:

Article 27, point 1, of the Convention of 27 September 1968 on Jurisdiction and the Enforcement of Judgments in Civil and Commercial Matters, as amended by the Convention of 9 October 1978 on the Accession of the Kingdom of Denmark, Ireland and the United Kingdom of Great Britain and Northern Ireland and by the Convention of 25 October 1982 on the Accession of the Hellenic Republic, must be interpreted as follows:

(1) The court of the State in which enforcement is sought cannot, with respect to a defendant domiciled in that State, take account, for the purposes of the

I - 1972

public-policy clause in Article 27, point 1, of that Convention, of the fact, without more, that the court of the State of origin based its jurisdiction on the nationality of the victim of an offence.


(2) The court of the State in which enforcement is sought can, with respect to a defendant domiciled in that State and prosecuted for an intentional offence, take account, in relation to the public-policy clause in Article 27, point 1, of that Convention, of the fact that the court of the State of origin refused to allow that person to have his defence presented unless he appeared in person.


|                       |                       |                       |
|-----------------------|-----------------------|-----------------------|
| Rodríguez Iglesias    | Moitinho de Almeida   |                       |
| Edward                | Sevón                 | Schintgen             |
| Kapteyn               | Gulmann               | Puissochet            |
| Hirsch                | Jann                  | Ragnemalm             |


Delivered in open court in Luxembourg on 28 March 2000.


R. Grass                                              G.C. Rodríguez Iglesias

Registrar                                                        President


I - 1973

APP 1807

App. 2488

# Exhibit 10

## German Capital Markets Model Case Act
## English Translation

**APP 1808**

App. 2489

Service provided by the Federal Ministry of Justice and Consumer Protection
in cooperation with juris GmbH – www.juris.de

Übersetzung durch Jane Yager für das Bundesministerium der Justiz und für Verbraucherschutz.

Translation provided by Jane Yager for the Federal Ministry of Justice and Consumer Protection.

Stand: Die Übersetzung berücksichtigt die Änderung(en) des Gesetzes durch Artikel 3 des Gesetzes vom 4.7.2013 (BGBl. I S. 1981)

Version information: The translation includes the amendment(s) to the Act by Article 3 of the Act of 4 July 2013 (Federal Law Gazette I p. 1981)

© 2014 juris GmbH, Saarbrücken

# Act on Model Case Proceedings in Disputes under Capital Markets Law

# (Capital Markets Model Case Act – KapMuG)

Capital Markets Model Case Act of 19 October 2012 (Federal Law Gazette I, p. 2182), last amended by Article 3 of the Act of 4 July 2013 (Federal Law Gazette I p. 1981)

## Part 1
### Application for Establishment of a Model Case; Reference Procedures

### Section 1
### Scope

(1) This Act applies to civil disputes in which:

1. A claim for compensation of damages due to false, misleading or omitted public capital markets information,

2. A claim for compensation of damages for the use of false or misleading public capital markets information or for failure to offer clarification about the false or misleading nature of public capital markets information, or

3. A claim to fulfilment of contract, which is based on an offer under the Securities Acquisition and Takeover Act,

is asserted.

(2) Public capital markets information means information directed at a large number of investors regarding facts, circumstances and statistical as well as other company data which relate to an issuer of securities or an offerer of other investments. These shall include, in particular, information contained in

1. Prospectuses under the Securities Prospectus Act and fact sheets under the Securities Trading Act,

2. Sales prospectuses, capital investment fact sheets, and key investor information under the Sales Prospectus Act, the Capital Investment Act, the version of the Investment Act in force until 21 July 2013, and the Investment Code,

3. Communication of insider information within the meaning of Section 15 of the Securities Trading Act,

4. Presentations, overviews, lectures and information in the main collection on the state of the company, including its relationships with associated enterprises within the meaning of Section 400 (1) no. 1 of the Stock Corporation Act,

5. Annual financial statements, annual reports, group financial statements, group annual reports and interim reports of the issuer, and in

APP 1809

App. 2490