# EXHIBIT "10"

MEMORANDUM

BY AIR MESSENGER TO MIAMI

June 17, 1988

To: R. Allen Stanford (YOUR EYES ONLY)

From: Sidney K. Adler

Re: Need for A-B License for Treasury Dept. and under U.S. Federal case law.

Enclosed is a photocopy of a letter I just received from the Treasury Dept. and of my reply to Margaret Sampson. The reply to Margaret Sampson clearly explains the situation, I think. She herself said we ought to have been notified in June/86 instead of June/88 of the situation. The Government's decision is based on the definition under Section 123.2 of the applicable International Banking Law: "The term 'foreign bank' includes, without limitation, foreign commercial banks, foreign merchant banks and other foreign institutions that engage in banking activities usual in connection with the business of banking in the countries where such foreign institutions are organized or operating. The term 'foreign bank' does not include central banks of foreign countries which are not engaged in a commercial banking business in the United States." Any rational reading of this provision would certainly not exclude us from registry. It was obvious that Tony Nunes was as taken aback by the letter from Treasury as I was. The phrase "includes, without limitation" simply means what it says -- that a list follows which is by way of example, not definitive. Our argument is further bolstered by the fact that the provision goes on to define what is not a foreign bank, which exclusion clearly does not apply to us. If the legislator was going to say what is not a foreign bank and therefor not registrable under the law, all he had to was include our category of bank specifically in what is not a registrable foreign bank, simple enough to do. So, we would probably win in court, but that's not the issue. The Federal Government simply takes the stand that we need not register with it. This, however, undeniably places a heavy cloud over us in everything we do here and definitely with the Banking Department of Texas. Sampson told me she copies the Banking Department of Texas and the Office of the Comptroller of the Currency on everything, including, of course, the enclosed June 12/88 letter.

Upon receipt of the letter I talked to Tony Nunes. His reaction was the same as mine. He later called me back to tell me there are no cases on this point and that he thought it best that I call Sampson, which I then did. Verbally I told her that we are planning to file an application for the A-B License and we are planning to have a "street bank" there. However, my letter, obviously, is more general in its terms. I believe we should keep Sampson closely informed about what we are doing, including

GT03-22-2011ST-0010868

2

sending a copy, stamped as received, of the official application. I enclose a photocopy of my draft of application which I delivered to you on 3/4/88. I know nothing of what has happened in this regard since then.

Also enclosed are copies of a letter of 6/8/88 from Bruce Himmelreich, Tony Nunes' associate, and an undated memo enclosed with that letter. Here is my brief summary and conclusions from this enclosed material.

Although the enclosed material does not mention this, it is imperative that we obtain the A-B License just as soon as possible, in order for us to fit under the doctrine of the Wolf v. Banco Nacional de Mexico case. Under that case, if holders of certificates of deposit in a foreign bank are not fully protected by strict Government regulation of the foreign bank, then such certificates of deposit will be considered securities and subject to all the limitations applicable to dealing in securities. This means that no offer nor sale, etc., can be made within the U.S., meaning not even using the telephone nor the mail, etc., etc., to promote our business from the Houston or Miami office.

All that is needed to resolve the matter, in my considered opinion, is to obtain the A-B License, because then we can maintain to the authorities and anyone else that we are under the strict regulation of a Central Bank authority, that of the East Caribbean Central Bank.

You will note in the enclosed material from Tony Nunes' lawfirm that there was a consultation on a "no-name" basis (Bruce Himmelreich assured me of this) with Denise Crawford, General Counsel of the Texas Securities Board. She announced that regardless of the strong Federal precedent I have mentioned, the attitude of the Board is that even though the foreign bank is thoroughly regulated, the certificates of deposit of a foreign bank are "securities", subject to all the mentioned limitations. I asked Tony if there were any case backing her up and he said no; I asked if there were even any administrative hearing backing her up and he said no; I asked if he knew of even a "slap on the wrist" that any foreign bank had received and he said no. My conclusion: geologists tell us there could be a major earthquake anywhere in the world, including Houston. Nevertheless, in recorded history Houston has never suffered an earthquake and the building codes of the city are not ajusted to major earthquakes. We live in a real world, so we'll just have to run the risk of the earthquake (I personally believe the odds are about same!).

However, I must repeat that the way things stand now, there is no question under established Federal case law, our 30-Day Deposits and their "Investment Certificates" are securities and all the restrictions applying to securities do presently apply to us. The only solution I see to this problem is to expedite as rapidly

3

as possible the A-B License. This will also qualify us to register in Washington and remove any cloud over us that will exist in Austin as a result of our non-registry in Washington.

GT03-22-2011ST-0010870

App. 292