IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RALPH S. JANVEY, et al., | § | |
| | § | |
|    Plaintiffs, | § | |
| v. | § | |
| | § | Civil Action No. 3:12cv4641-N |
| GREENBERG TRAURIG, LLP, | § | |
| HUNTON & WILLIAMS, LLP; and | § | |
| YOLANDA SUAREZ, | § | |
| | § | |
|    Defendants. | § | |

**GREENBERG TRAURIG, LLP'S MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION, OR
IN THE ALTERNATIVE, FOR JUDGMENT ON THE PLEADINGS**

**TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................................. ii
TABLE OF AUTHORITIES ...................................................................................................... iii
A.   INTRODUCTION ............................................................................................................. 1
B.   THIS MOTION IS TIMELY AND RIPE FOR DECISION ...................................................... 3
    1.   Subject Matter Jurisdiction Lacking .................................................................. 3
    2.   The Motion under Rule 12(c) is also Timely and Ripe. ..................................... 4
C.   ARGUMENT .................................................................................................................. 5
    1.   Greenberg's Conduct is the Kind of Conduct Protected by Attorney Immunity ................. 5
    2.   There is no "Crime Exception" to Attorney Immunity ....................................... 9
    3.   Attorney Immunity is not Limited to Litigation ............................................... 10
    4.   Attorney Immunity bars Claims Under the TSA ............................................. 12
CERTIFICATE OF SERVICE ................................................................................................... 14

Doc. # 1523696

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alpert v. Crain, Caton & James, P.C.*,
    178 S.W.3d 398 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) ...................................... 7

*Alpert v. Riley*,
    No. H-04-CV-3774, 2008 WL 304742 (S.D. Tex. Jan. 31, 2008) ................................... 11, 12

*Bitterroot Holdings, LLC v. MTGLQ Investors, L.P.*,
    No. 5:14–CV–862, 2015 WL 363196 (W.D. Tex. Jan. 27, 2015) ........................................... 13

*Bradt v. West*,
    892 S.W.2d 56 (Tex. App.—Houston [1st Dist.] 1994, writ denied) ................................... 2, 6

*Cantey Hanger, LLP v. Byrd*,
    467 S.W.3d 477 (Tex. 2015), *reh'g denied* 58 Tex. Sup. Ct. J. 1648 (Sept. 11,
    2015) ................................................................................................................................ *passim*

*Carty v. State Office of Risk Management*,
    733 F.3d 550 (5th Cir. 2013) .................................................................................................... 3

*Chu v. Hong*,
    249 S.W.3d 441 (Tex. 2008) ....................................................................................... 10, 11, 12

*Cunningham v. Tarski*,
    365 S.W.3d 179 (Tex. App.—Dallas 2012, pet. denied) ................................................. 11, 12

*Hanna v. Niemann*,
    No. 03-98-00708-CV, 1999 WL 394894 (Tex. App.—Austin June 17, 1999,
    pet. denied) ...................................................................................................................... 11, 12

*Hebert Abstract Co. v. Touchstone Props.*,
    914 F.2d 74 (5th Cir. 1990) ...................................................................................................... 4

*Highland Capital Management, LP v. Looper Reed & McGraw, P.C.*,
    No. 05-15-00055-CV, 2016 WL 164528 (Tex. App.—Dallas Jan. 14, 2016,
    pet. filed) ................................................................................................................................ 6, 9

*Hunter v. Bryant*,
    502 U.S. 224 (1991) ................................................................................................................. 4

*Jones v. ALCOA, Inc.*,
    339 F.3d 359 (5th Cir. 2003) .................................................................................................... 5

Doc. # 1523696

*Kansa Reinsurance Co., Ltd. v. Congressional Mortg. Corp. of Tx.*,
   20 F.3d 1362 (5th Cir. 1994) ...................................................................................5

*Keith v. Brown*,
   No. 3:12-CV-2673-N, 2014 WL 798377 (N.D. Tex. Feb. 5, 2014) .........................4

*McCarty v. Hillstone Rest. Grp., Inc.*,
   2015 WL 7076474 (N.D. Tex. Nov. 12, 2015).........................................................5

*Mitchell v. Forsyth*,
   472 U.S. 511 (1985).................................................................................................4

*Morgan v. Plano Independent School Dist.*,
   724 F.3d 579 (5th Cir. 2013) ...................................................................................3

*Reagan Nat. Advert. of Austin, Inc. v. Hazen*,
   No. 03-05-00699-CV, 2008 WL 2938823 (Tex. App.—Austin July 29, 2008,
   no pet.) ..........................................................................................................7, 11, 12

*Rusk State Hosp. v. Black*,
   392 S.W.3d 88 (Tex. 2012)......................................................................................4

*Sacks v. Hall*,
   No. 01-13-00531-CV, 2014 WL 6602460 (Tex. App.—Houston [1st Dist.]
   Nov. 20, 2014, no pet.) ........................................................................................9, 10

*Stone v. Pattis*,
   72 A.3d 1138 (Conn. App. Ct. 2013).......................................................................4

*Troice v. Proskauer Rose, L.L.P.*,
   2016 WL 929476 (5th Cir. Mar. 10, 2016)...................................................... passim

*Voest-Alpine Trading USA Corp. v. Bank of China*,
   142 F.3d 887 (5th Cir. Tex. 1998) ...........................................................................4

*Wesolek v. Layton*,
   914 F. Supp. 2d 853 (S.D. Tex. 2012) ...................................................................13

**Statutes**

FED. R. CIV. P. 2(b)(6)......................................................................................................5

FED. R. CIV. P. 5(b)(2)(D) ..............................................................................................14

FED. R. CIV. P. 12(b)(1)................................................................................................1, 3

FED. R. CIV. P. 12(c)...............................................................................................1, 3, 4, 5

    N<small>O</small>. D<small>IST</small>. T<small>EX</small>. L<small>OC</small>. R. 5.1 ...................................................................................................14

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| RALPH S. JANVEY, et al., § § Plaintiffs, § § v. § § Civil Action No. 3:12cv4641-N § GREENBERG TRAURIG, LLP, § HUNTON & WILLIAMS, LLP; and § YOLANDA SUAREZ, § § Defendants. § | |

---

**GREENBERG TRAURIG, LLP'S MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION, OR
IN THE ALTERNATIVE, FOR JUDGMENT ON THE PLEADINGS**

---

Greenberg Traurig, LLP ("Greenberg") respectfully submits this Motion to Dismiss For Lack of Subject Matter Jurisdiction, or In the Alternative, for Judgment on the Pleadings, under FED. R. CIV. P. 12(b)(1) and 12(c), and in support of the motion shows as follows:

**A.   INTRODUCTION**

Recent law from the Texas Supreme Court and the Fifth Circuit clearly establishes that plaintiffs' claims against Greenberg must be dismissed as a matter of law based on the doctrine of attorney immunity. Greenberg raised the affirmative defense of attorney immunity in its answer. Amended Answer, D.E. 155, at p.63 (Affirmative Defenses No. 4).

Under this new clarifying caselaw, the issue is now ripe for consideration.

In *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477 (Tex. 2015), *reh'g denied* 58 Tex. Sup. Ct. J. 1648 (Sept. 11, 2015), the Texas Supreme Court held that, under Texas law, there is no fraud exception to the doctrine of attorney immunity. Rather, conduct by an attorney that is "part

1

of the discharge of his duties to his client" is protected by the doctrine of attorney immunity, "*regardless of whether it is labeled fraudulent*." *Id*. at 484 (emphasis added).

In *Troice v. Proskauer Rose, L.L.P.*, 2016 WL 929476, at *5 (5th Cir. Mar. 10, 2016), the Fifth Circuit applied *Cantey Hanger* to dismiss plaintiffs' claims resulting from the Stanford Ponzi scheme against the law firm Proskauer Rose, LLP ("Proskauer") under the doctrine of attorney immunity. The court held that Proskauer was immune from suit based on in its representation of Stanford because the "type" of conduct alleged "falls squarely within the scope of [its] representation" and plaintiffs did not allege that the Proskauer attorney's conduct was "entirely foreign to the duties of an attorney." *Id*. at *5.

These decisions recognize and reaffirm that strong policy reasons require and support attorney immunity. As the Fifth Circuit explained in *Troice*, 2016 WL 929476, at *3, attorney immunity "is necessary 'to avoid the inevitable conflict that would arise if an attorney were forced constantly to balance his own potential exposure against his client's best interest'" and to protect the public interest in assuring full and unfettered representation from counsel.[1]

The alleged conduct by Greenberg also falls squarely within the scope of its representation of Stanford, and there is no allegation by plaintiffs that the conduct was "entirely foreign to the duties of an attorney." *Id*. Plaintiffs' own pleading makes this undisputable. For example, the Complaint describes former Greenberg attorney Carlos Loumiet as Stanford's "legal facilitator" and "outside general counsel." (Compl. at ¶¶ 12-13.) Plaintiffs allege that Greenberg "routinely provided U.S. securities law advice and counsel" to Stanford (¶ 80), and that it assisted Stanford "with repeated U.S. Government investigations." (Compl. section

---

[1] *See Bradt v. West*, 892 S.W.2d 56, 71 (Tex. App.—Houston [1st Dist.] 1994, writ denied) (emphasizing the public interest in "loyal, faithful and aggressive representation by the legal profession"), *quoting Maynard v. Cabellero*, 752 S.W.2d 719, 721 (Tex. App.—El Paso 1988, writ denied).

header at page 37.) Plaintiffs further allege that "Loumiet was acting within the course and scope of his respective employments with Greenberg . . . , and in furtherance of said law firms' respective businesses, when he engaged in the wrongful conduct described herein." (¶ 459.)

Thus, accepting plaintiffs' allegations as true, the *type* of conduct alleged falls squarely within the doctrine of attorney immunity. As made clear in *Cantey Hanger* and *Troice*, Plaintiffs' allegations that the *nature* of the alleged conduct was fraudulent or otherwise wrongful are irrelevant to the analysis. Plaintiffs' claims must be dismissed as a matter of law. *Troice*, 2016 WL 929476, at *5 (attorney immunity is "a true immunity from suit" which "protect[s] attorneys against even defending a lawsuit, and because Texas courts describe conduct covered by attorney immunity as not actionable (and attorneys engaging in that conduct as immune from suit).").

### B.   THIS MOTION IS TIMELY AND RIPE FOR DECISION

This suit can and should now be resolved for lack of subject matter jurisdiction under Rule 12(b)(1), or in the alternative, through a judgment on the pleadings under Rule 12(c).

#### 1.   Subject Matter Jurisdiction Lacking

Immunity from suit deprives a court of subject-matter jurisdiction and thus can be raised at any time in an action. As the Fifth Circuit explained in *Morgan v. Plano Independent School Dist.*, immunity from suit is a jurisdictional question because it "depriv[es] the court of the power to act (other than to determine that it has no jurisdiction), and ever to have acted, as a matter of law." 724 F.3d 579, 584 (5th Cir. 2013) (quoting *City of DeSoto v. White*, 288 S.W.3d 389, 393 (Tex. 2009)). Indeed, as the Fifth Circuit further explained in *Carty v. State Office of Risk Management*, 733 F.3d 550, 553 (5th Cir. 2013), "immunity from suit so affects subject-matter jurisdiction that it can in appropriate circumstances [even] be raised for the first time on

appeal." The Texas Supreme Court also so held in *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 94–96 (Tex. 2012), explaining that sovereign immunity, as an immunity from suit, "implicates a court's subject-matter jurisdiction over pending claims" and can therefore could be first raised by interlocutory appeal.[2]

Therefore, a question of possible immunity from suit should be appropriately resolved as soon as possible, in order to absolve the court and the defendant of the burdens of litigation, including discovery. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991):

> [W]e repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation.

*See also Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Keith v. Brown*, No. 3:12-CV-2673-N, 2014 WL 798377, *4 (N.D. Tex. Feb. 5, 2014):

> Immunity questions should be resolved at the earliest possible stage in the litigation because qualified immunity extends to immunity from suit, not merely defense from liability.

Consistent with that directive, a motion to dismiss for lack of subject-matter jurisdiction can and should be decided as a matter of law where the material facts are not in dispute and a judgment on the merits can be rendered based on the substance of the pleadings and judicially-noticed facts. *Voest-Alpine Trading USA Corp. v. Bank of China*, 142 F.3d 887, 891 (5th Cir. Tex. 1998); *Hebert Abstract Co. v. Touchstone Props.*, 914 F.2d 74, 76 (5th Cir. 1990).

### 2. The Motion under Rule 12(c) is also Timely and Ripe.

This motion is also properly raised and resolved as one for judgment on the pleadings. Federal Rule of Civil Procedure 12(c) itself provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Like a

---

[2] Other courts have recognized that attorney immunity is similar in this respect to sovereign immunity and, like that immunity, also jurisdictional. *See Stone v. Pattis*, 72 A.3d 1138, 1150–51 (Conn. App. Ct. 2013) (explaining that because sovereign immunity and attorney immunity serve the similar role of protecting litigants from suit, they should both be treated as questions of subject-matter jurisdiction).

motion for lack of subject matter jurisdiction, "[a] motion brought pursuant to Rule 12(c) 'is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts.'" *McCarty v. Hillstone Rest. Grp., Inc.*, 2015 WL 7076474, at *1 (N.D. Tex. Nov. 12, 2015), *quoting Hebert*, 914 F.2d at 76 (5th Cir. 1990).

The standard on a Rule 12(c) motion is that "[a] court, when ruling on a motion for judgment on the pleadings pursuant to Rule 12(c), applies the same standard as that used for a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted." *McCarty*, 2015 WL 7076474, at *1. "[W]here it is evident from the plaintiff's pleadings that the action is barred," dismissal is appropriate. *Jones v. ALCOA, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003); *Kansa Reinsurance Co., Ltd. v. Congressional Mortg. Corp. of Tx.*, 20 F.3d 1362, 1366 (5th Cir. 1994).

### C. ARGUMENT

#### 1. Greenberg's Conduct is the Kind of Conduct Protected by Attorney Immunity

Texas's attorney-immunity doctrine is a "comprehensive affirmative defense" that protects attorneys from liability to non-clients. *Cantey Hanger*, 467 S.W.3d at 481. As the Texas Supreme Court explained there:

> "[The doctrine] stem[s] from the broad declaration over a century ago that 'attorneys are authorized to practice their profession, *to advise their clients* and interpose any defense or supposed defense, without making themselves liable for damages.'"

*Id.* (emphasis added), *quoting Kruegel v. Murphy*, 126 S.W. 343, 345 (Tex. Civ. App. 1910, writ ref'd). To subject an attorney to possible suit based on the later conduct of his or her client would discourage and restrict attorneys from advising their clients as they deem appropriate.

*Troice*, 2016 WL 929476, at *3. Further, attorney immunity protects the public interest in having attorneys fulfill their "duty of zealously representing [their] clients within the bounds of the law." *Bradt,* 892 S.W.2d at 7.

*Cantey Hanger* is illustrative. There, a law firm was accused of helping its client falsify a bill of sale for an airplane in order to transfer tax liability from its client to her former husband. The challenged conduct took place a year after the final divorce decree was entered and litigation between those parties had ended. The Texas Supreme Court concluded that the conduct was protected by attorney immunity because it fell "within the ambit of client representation" and required "the office, professional training, skill, and authority of an attorney." *Cantey Hanger*, 467 S.W.3d at 482 n.6 (quoting *Dixon Fin. Servs., Ltd. v. Greenberg, Peden, Siegmyer & Oshman, P.C.*, No. 01-06-00696-CV, 2008 WL 746548, at *7 (Tex. App.—Houston [1st Dist.] Mar. 20, 2008, pet. denied)). It was irrelevant that the conduct was alleged to have been wrongful. The court explained that the determining factor as to whether attorney conduct is protected by immunity is the "*kind*" of attorney conduct alleged, not the *nature* of the attorney's conduct, *i.e.*, not whether the conduct was wrongful. *Id.* at 483. "[A]n attorney's conduct may be wrongful but still fall within the scope of client representation." *Id.* at 485.[3] Thus, the Court clarified that "[f]raud is not an exception to attorney immunity." *Id*. at 484.

---

[3] Texas courts have also dismissed, as barred by attorney immunity, other cases involving alleged conduct of attorneys more egregious than that raised here. *See, e.g.:*

*Highland Capital Management, LP v. Looper Reed & McGraw, P.C.*, No. 05-15-00055-CV, 2016 WL 164528, at *6 (Tex. App.—Dallas Jan. 14, 2016, pet. filed) (barring claims against law firm under attorney immunity where the law firm allegedly reviewed, copied, and analyzed information it knew to be stolen and proprietary in furtherance of a scheme to extort plaintiff, lied to plaintiff's counsel regarding the scope of the theft and the stolen materials which it and its client possessed, and lied to the plaintiff and the court about the law firm's involvement in its client's wrongful disclosure of confidential information, because such acts were the type of acts an attorney engages in to discharge his duties to his client);

*Reagan Nat. Advert. of Austin, Inc. v. Hazen*, No. 03-05-00699-CV, 2008 WL 2938823, *8 (Tex. App.—Austin July 29, 2008, no pet.) (barring claims against attorney accused of helping his client

6

In *Troice*, as here, the defendant law firm, Proskauer, was accused of conspiring with Stanford and aiding him to defraud investors. Proskauer's lawyers allegedly suborned perjury, misled SEC officials, and otherwise fraudulently concealed Stanford's wrongdoing from the SEC. *Troice*, 2016 WL 929476, at *1. The Fifth Circuit held that, under *Cantey Hanger*, the firm was protected by the doctrine of attorney immunity because the alleged conduct—including sending a letter to the SEC, communicating with the SEC, and representing Stanford executives during depositions—were "classic examples of an attorney's conduct when representing a client" and not "entirely foreign to the duties of an attorney." *Id.* at *5 (quotation omitted).[4]

Similarly, the alleged acts by Greenberg attorneys here are "classic examples of an attorney's conduct when representing a client" and not "entirely foreign to the duties of an attorney." *Id.* Plaintiffs describe Loumiet as Stanford's "legal facilitator" and "outside general counsel." (Compl. ¶¶ 12-13.) They specifically allege that Greenberg:

- represented Stanford in multiple lawsuits and prospective lawsuits and disputes (Compl. ¶¶ 124, 127, 156, 162, 200-206, 232-240);

- assisted Stanford "with repeated U.S. Government investigations" (Compl. section header, at page 37; ¶¶ 97, 108, 192-198, 199, 214-217), as well as negotiations with government agencies (Compl. ¶¶ 91-94, 98, 134, 172, 174-175, 177, 178, 187, 188, 189-191, 225-228);

---

illegally take down billboards belonging to the plaintiff because the alleged acts were "quintessentially the types that are protected by attorney immunity");
  *Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 408 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (barring claims against attorney for conspiracy to defraud even though the firm allegedly assisted its client in lying about the client's relationship with the plaintiff, filed lawsuits to conceal the client's wrongdoing, helped the client fraudulently report the plaintiff to government authorities and then concealed that, misrepresented the client's assets, and misused confidential information in lawsuits and disclosures to government officials, because the acts were taken and communications made "to facilitate the rendition of legal services" to the client and "fall within the context of" the firm "discharging its duty to represent" the client).

[4] The *Troice* court also rejected plaintiffs' argument that the attorney immunity defense was limited to claims by party opponents, stating: "[a]ttorney immunity is intended to assure attorneys that they will not be 'liable for damages,' full stop, not that they are protected from liability but only from opposing parties." *Id.* at 11.

7

- served as Stanford's legal advocate in various corporate transactions (Compl. ¶¶ 67, 72-73, 106, 142, 186, 207, 241, 242-244);

- "routinely provided U.S. securities law advice and counsel" to Stanford (Compl. ¶ 80), and provided memoranda and advice in response to numerous legal questions posed by Stanford (Compl. ¶¶ 82, 88, 117, 119, 140, 164, 165, 167, 168, 170, 171, 208-210, 211-213);

- assisted Stanford with the preparation of legal documents and contracts (Compl. ¶¶ 54-55, 81, 138, 139); and

- drafted and assisted with proposed legislation for Antigua (Compl. ¶¶ 118, 120, 144-151).

These alleged acts were the kind of acts attorneys regularly perform in representing clients and unquestionably required "the office, professional training, skill, and authority of an attorney," and thus fall within the doctrine of attorney immunity. *Cantey Hanger*, 467 S.W.3d at 482 n.6 (quoting *Dixon Fin. Servs.*, 2008 WL 746548, at *7).

Finally, plaintiffs allege—as they must to establish Greenberg's liability under *respondeat superior*—that "Loumiet was acting within the course and scope of his respective employments with Greenberg and Hunton, and in furtherance of said law firms' respective businesses, when he engaged in the wrongful conduct described herein." (Compl. ¶ 459.) As in *Troice*, plaintiffs make no allegation that Loumiet or other Greenberg attorneys' conduct was "entirely foreign to the duties of an attorney." 2016 WL 929476, at *5.

Accordingly, under *Cantey Hanger* and *Troice*, the claims against Greenberg are barred by attorney immunity irrespective of allegations that Greenberg's conduct was wrongful.

8

## 2. There is no "Crime Exception" to Attorney Immunity

If plaintiffs argue here, as they did in the *Troice* appeal, that there is a "crime exception" to attorney immunity, that argument will fail as a matter of law.[5]  Just as there is no "fraud exception" to attorney immunity, there is no "crime exception."[6]

*Cantey Hanger* cautioned courts against creating exceptions to the immunity, noting that doing so "brings unnecessary confusion and complexity to the analysis."  467 S.W.3d at 483. Rather than invoking or inviting exceptions, the court held

> "[Attorney immunity] does not extend to fraudulent conduct that is *outside the scope of an attorney's legal representation of his client*, just as it does not extend to other wrongful conduct *outside the scope of representation*."

*Id.* at 484 (emphasis added).  The court barred the claim even though the defendant-attorney was accused of "evad[ing] tax liability," *id.* at 480, which is a criminal act, based on the *kind* of conduct alleged, *not* its *nature*.

Similarly, in *Highland*, 2016 WL 164528, at *6, the court recently held that a defendant–law firm was protected by attorney immunity even though the plaintiff described the law firm's conduct as "criminal, tortious, and malicious . . . ."  *See also Sacks v. Hall*, No. 01-13-00531-CV, 2014 WL 6602460, at *14 (Tex. App.—Houston [1st Dist.] Nov. 20, 2014, no pet.) (claims against attorneys for violating federal law imposing criminal penalties for the wrongful disclosure of medical records were barred by immunity, since "the focus is on whether the

---

[5] *Troice* did not reach this issue because had been waived by plaintiffs by not raising it at the District Court.  2016 WL 929476, at *6.

[6] Of course, an act of fraud can rise to the level of a crime.

9

Doc. # 1523696

offending conduct occurred in the context of the attorney's discharge of his duties to his client in an adversarial proceeding; the focus was not on whether the conduct was 'criminal' in nature").[7]

Pre–*Cantey Hanger* decisions which may be read as applying an exception to attorney immunity for criminal conduct are no longer good law and do not survive *Cantey Hanger*. Rather, as explained above, *Cantey Hanger* confirmed that the focus must be on the *kind* of conduct alleged, not whether its *nature* was alleged to be fraudulent or criminal. *Id*. Under that test, the claims here are undeniably barred under the doctrine of attorney immunity.

### 3. Attorney Immunity is not Limited to Litigation

There also is and should be no exception for conduct occurring outside litigation.[8]

The strong public policies leading to the attorney immunity doctrine noted above equally apply to *all* forms of legal representation, i.e. litigation or otherwise. Thus, the Texas Supreme Court previously signaled that immunity should protect attorneys in transactional settings. In *Chu v. Hong*, 249 S.W.3d 441 (Tex. 2008), one Gyu, before divorcing his wife Hong, sold community property (a donut shop) and wired the cash to his parents outside the country. *Id.* at 443. Hong later sued Gyu for defrauding her of her share of the proceeds of the shop sale. She also sued William Chu, the attorney who represented the purchaser of the shop, i.e. in a transactional setting. *Id.* The Texas Supreme Court dismissed the claim, explaining:

> We are especially reticent to open the door to such claims here against an opposing party's attorney. As an attorney, Chu had a fiduciary duty to further the best interests of his clients, the buyers; imposing a second duty to the sellers would inevitably conflict with the first. An attorney who personally steals goods or tells lies

---

[7] Greenberg denies that the conduct alleged against it was criminal. But, assuming *arguendo*, that it is, the conduct is nevertheless immune as these cases hold and show.

[8] The *Cantey Hanger* majority refused to limit its ruling to litigation, choosing not to reach the question. But it took note of established Texas authority applying attorney immunity in non-litigation contexts. 467 S.W.3d at 482 n.6 ("The majority of Texas cases addressing attorney immunity arise in the litigation context. But that is not universally the case."). This issue was not reached in *Troice* because it was waived. 2016 WL 929476, at *6.

> on a client's behalf may be liable for conversion or fraud in some cases. But there are no such allegations here; the only claim is that Chu should have refused to draw up the bill of sale (although his client asked him to) because he knew one spouse was selling the shop without the other spouse's consent—even though neither spouse was his client. We need not approve of Chu's ethics to hold that *Schlueter* requires Hong to seek restitution from her own husband before seeking it from someone else's lawyer.

*Id.* at 446 (footnotes omitted).[9]

Consistent with such reasoning, prior attorney immunity cases in Texas applied the doctrine to legal services provided by every kind of lawyer—not just trial lawyers, holding that attorney immunity applies outside litigation. As the Austin Court of Appeals explained in *Reagan*, 2008 WL 2938823, at *8:

> "[W]hile it is true that many of the cases addressing the attorney-immunity doctrine arise in the context of pending litigation, neither the case law, nor the doctrine's underlying policy rationales, are limited to that setting."

*Accord Cunningham v. Tarski*, 365 S.W.3d 179, 182 & 190-92 (Tex. App.—Dallas 2012, pet. denied) (applying attorney immunity to affirm summary judgment for a corporation's lawyer who allegedly sent a fraudulent memorandum to a minority shareholder, misrepresenting aspects of the corporate structure affecting the shareholder's rights, since that was not the "type of fraudulent conduct that is foreign to the duties of an attorney); *Alpert v. Riley*, No. H-04-CV-3774, 2008 WL 304742, at *17 (S.D. Tex. Jan. 31, 2008) ("Texas cases do not limit an attorney's protection against liability to actions taken in the course of representing a client in litigation and the basis for the decisions applies to the provision of legal services outside the litigation context."); *Hanna v. Niemann*, No. 03-98-00708-CV, 1999 WL 394894, at *3 (Tex. App.—Austin June 17, 1999, pet. denied) (applying attorney immunity to protect a lawyer who, prior to

---

[9] The *Chu* Court also held that, under Texas caselaw dealing with divorce, third parties (like Chu) cannot be liable in tort when community property is taken by one of the spouses. *Id.* at 445.

any litigation, filed a public notice of her client's title dispute over condo units, thereby clouding a new purchaser's title and explaining that the "privilege relates to her representation of a client, regardless of whether the conduct is in the context of pending litigation").

As the *Hanna* Court explained:

> An attorney's duty to represent a client zealously begins as soon as 'the client has requested the lawyer to render legal services and the lawyer has agreed to do so.' Tex. Disciplinary R. Prof. Conduct preamble ¶ 12 (State Bar Rules art. X, § 9). An attorney is called upon to represent her client in many roles besides that of advocate in litigation; for example, an attorney may act as legal counselor, advisor, negotiator, or intermediary. *See id.* ¶ 2.

1999 WL 394894, at *3; *accord Alpert*, 2008 WL 304742, at *17–18:

> The fact that the Lawyer Defendants were not representing Riley in his litigation against [plaintiffs] when the acts at issue occurred does not defeat the application of the Texas 'qualified immunity' rule. … The facts alleged by the plaintiffs are that the Lawyer Defendants acted as legal representatives for Riley in negotiating and implementing a binding legal agreement with the IRS. The alleged unlawful actions were taken on Riley's behalf in matters connected with negotiating the agreement.

The pre-*Cantey Hanger* cases suggesting an exception to attorney immunity for conduct occurring outside the context of litigation do not offer sound policy reasons for such a limitation and are unpersuasive in light of the contrary Texas authority, including the Supreme Court's reasoning in *Chu* and the appellate court decisions like *Reagan*, *Hanna*, and *Cunningham*.

### 4. Attorney Immunity bars Claims Under the TSA

There is no basis for plaintiffs to argue, if they do here as they did by letter brief in the *Troice* appeal, that attorney immunity does not apply to claims under the Texas Securities Act.[10] Defendants are not aware of any case holding that attorney immunity does not apply to claims under the TSA, and the Court should not seek to create such a distinction.

---

[10] This argument was not reached in *Troice* because it was waived. 2016 WL 929476, at *6 n.3.

The attorney immunity doctrine is, as noted, a jurisdictional rule, not merely a defense. Thus, the Fifth Circuit concluded in *Troice* that attorney immunity is "properly characterized as a true immunity from suit, not as a defense to liability." It thus bars claims even before a question of defenses arises and apart from issues of defenses, because, as *Troice* explained, protecting counsel from even having to defend "is necessary 'to avoid the inevitable conflict that would arise if an attorney were forced constantly to balance his own potential exposure against his client's best interest.'" 2016 WL 929476, at *3.

That should end this issue. But, in addition, the proffered distinction would also misconstrue and rewrite the TSA. The defenses contained in the TSA itself (that the plaintiff knew of the fraud, or that the defendant could not have learned of it) are not *exclusive* defenses. *See. e.g.*, *Wesolek v. Layton*, 914 F. Supp. 2d 853, 864 (S.D. Tex. 2012) (dismissing TSA claims as "barred by the doctrine of *res judicata*" even though not a defense explicitly in the TSA).[11] If the Legislature wanted to so limit the TSA, it could have done so. Respectfully, the Court should not engraft such a limitation onto the statute to, in effect, overrule the settled judicial precedent and strong public policy in favor of attorney immunity.

Defendant Greenberg respectfully requests that the Court grant its motion to dismiss on attorney immunity and dismiss the Investor Plaintiffs' claims against Greenberg. Greenberg requests such further and additional relief to which it may be entitled at law and in equity.

---

[11] Attorney immunity has also been applied in Texas to a claim under another statutory scheme—the Texas Debt Collection Practices Act. *See Bitterroot Holdings, LLC v. MTGLQ Investors, L.P.*, No. 5:14–CV–862, 2015 WL 363196, at *6 (W.D. Tex. Jan. 27, 2015).

Respectfully submitted,

By: /s/ Jim E. Cowles

**JIM E. COWLES**
Texas Bar No. 04931000
jcowles@cowlesthompson.com
**SIM ISRAELOFF**
Texas Bar No. 10435380
sisraeloff@cowlesthompson.com
**R. MICHAEL NORTHRUP**
Texas Bar No. 15103250
mnorthrup@cowlesthompson.com
**COWLES & THOMPSON, P.C.**
901 Main Street, Suite 3900
Dallas, TX 75202
(214) 672-2000 (Tel)
(214) 672-2301 (Fax)

**ATTORNEYS FOR DEFENDANT
GREENBERG TRAURIG, LLP**

### CERTIFICATE OF SERVICE

The undersigned certifies that on the 8th day of April, 2016, a true and correct copy of the foregoing document was delivered via electronic means pursuant to FED. R. CIV. P. 5(b)(2)(D) and Local Rule 5.1, to all counsel of record.

/s/ Sim Israeloff
**SIM ISRAELOFF**