## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| RALPH S. JANVEY, in his capacity as court-appointed receiver for the Stanford receivership estate; The OFFICIAL STANFORD INVESTORS COMMITTEE; PAM REED; SAMUEL TROICE; and MICHOACAN TRUST; individually and on behalf of a class of all others similarly situated, | § § § § § § § § § | |
| Plaintiffs. | § § | CIVIL ACTION NO. 3:12-cv-04641-N |
| vs. | § § | |
| GREENBERG TRAURIG, LLP; HUNTON & WILLIAMS, LLP; and YOLANDA SUAREZ, | § § § § | |
| Defendants. | § | |

---

**HUNTON & WILLIAMS LLP'S MOTION FOR JUDGMENT ON THE PLEADINGS ON CLAIMS BY NON-CLIENTS AND SUPPORTING MEMORANDUM OF LAW**

---

Jeffrey D. Colman
David Jiménez-Ekman
Andrew W. Vail
April A. Otterberg
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654-3456
jcolman@jenner.com
(312) 923-2940 (Telephone)
(312) 840-7340 (Facsimile)

*Admitted* Pro Hac Vice

Richard A. Sayles
Shawn Long
SAYLES WERBNER
4400 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270
dsayles@swtriallaw.com
(214) 939-8701 (Telephone)
(214) 939-8787 (Facsimile)

*Counsel for Hunton & Williams LLP*

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... ii

INTRODUCTION ........................................................................................................ 1

FACTUAL BACKGROUND ........................................................................................ 2

STANDARD OF REVIEW .......................................................................................... 5

ARGUMENT .............................................................................................................. 6

I.      The Texas Attorney Immunity Doctrine Bars All Claims By Non-Clients Against
        Attorneys Based On Attorney Conduct In Representing A Client. ................................... 6

II.     The Texas Attorney Immunity Doctrine Bars Class Plaintiffs' Claims Because
        Hunton's Alleged Conduct Occurred As Part Of Its Provision Of Legal Services To
        Mr. Stanford Or Certain Stanford Entities. ......................................................................... 8

        A.      Class Plaintiffs' Claims Against Hunton Arise From Hunton's Alleged
                Provision Of Legal Services To Mr. Stanford Or The Stanford Entities. ............... 9

        B.      Class Plaintiffs Concede Their Claims Arise From Hunton's Business As A
                Law Firm That Provides Legal Services. ............................................................. 11

III.    The Attorney Immunity Doctrine Bars All Of The OSIC's Claims, And Portions Of
        The Receiver's Claims, Because They Arise From The Same Conduct As Class
        Plaintiffs' Claims And Are Asserted By Or On Behalf Of Non-Clients. ......................... 13

        A.      The Attorney Immunity Doctrine Bars All Of The OSIC's Claims. .................... 13

        B.      The Attorney Immunity Doctrine Bars Portions Of The Receiver's Claims. ....... 14

IV.     No "Exceptions" To The Attorney Immunity Doctrine Exist Or Apply. ......................... 15

        A.      The Attorney Immunity Doctrine Is Not Limited To Litigation Conduct. ........... 16

        B.      There Is No "Crime Exception" To The Attorney Immunity Doctrine. ............... 19

        C.      The Attorney Immunity Doctrine Applies To Class Plaintiffs' TSA Claims. ....... 21

V.      Additionally, Or In The Alternative, This Court Lacks Subject-Matter Jurisdiction
        Over Plaintiffs' Non-Client Claims. ................................................................................. 22

CONCLUSION ......................................................................................................... 23

## TABLE OF AUTHORITIES

**Cases**

*Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) ("*Alpert I*") ........................................................................... passim

*Alpert v. Riley*, No. H-04-CV-3774, 2008 WL 304742 (S.D. Tex. Jan 31, 2008) ("*Alpert II*") ................................................................................................. 5, 17, 18

*Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945 (Tex. 1998) ........................................... 13

*Bitterroot Holdings, LLC v. MTGLQ Investors, L.P.*, No. 5:14-cv-862-DAE, 2015 WL 363196 (W.D. Tex. Jan. 27, 2015) .................................................................. 22

*Bonner v. Alford*, No. 3:10-CV-2556, 2014 WL 285139 (N.D. Tex. Jan. 27, 2014) (Godbey, J.) ..................................................................................................................... 5

*Britton v. Seale*, 81 F.3d 602 (5th Cir. 1996) ................................................................................ 14

*Buck v. Blum*, 130 S.W.3d 285 (Tex. App.—Houston [14th Dist.] 2004, no pet.) ....................... 13

*Campbell v. Mortg. Elec. Registration Sys., Inc.*, No. 03-11-00429-CV, 2012 WL 1839357 (Tex. App.—Austin, May 18, 2012, pet. denied) ............................................................ 17

*Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477 (Tex. 2015) ................................................... passim

*Chapman Children's Trust v. Porter & Hedges, LLP*, 32 S.W.3d 429 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) ..................................................................................... 6, 9

*Chauvin v. State Farm Fire & Cas. Co.*, 495 F.3d 232 (5th Cir. 2007) .......................................... 5

*City of Garland v. Booth*, 971 S.W.2d 631 (Tex. App.—Dallas 1998, pet. denied) ................... 14

*Dimitric v. Tex. Workforce Comm'n*, No. G-07-247, 2009 WL 674391 (S.D. Tex. Mar. 13, 2009) ................................................................................... 7, 8, 9, 10

*FinServ Cas. Corp. v. Settlement Funding LLC*, 724 F. Supp. 2d 662 (S.D. Tex. 2010) ............. 18

*Hermann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552 (5th Cir. 2002) .............................. 18

*Highland Capital Mgmt., LP v. Looper Reed & McGraw P.C.*, No. 05-15-00055-CV, 2016 WL 164528 (Tex. App.—Dallas Jan. 14, 2016, pet. denied) ................. 6, 10, 11, 19

*Iqbal v. Bank of Am., N.A.*, 559 F. App'x 363 (5th Cir. 2014) .................................................... 17

*Janvey v. Democratic Senatorial Campaign Comm., Inc.*, 712 F.3d 185 (5th Cir. 2013) ........... 15

*Jones v. ALCOA, Inc.*, 339 F.3d 359 (5th Cir. 2003) ..................................................................... 5

*Jurek v. Kivell*, No. 01-10-00040-CV, 2011 WL 1587375 (Tex. App.—Houston [1st Dist.] Apr. 21, 2011, no pet.) ......................................................................................................... 8

*Kansa Reinsurance Co., Ltd. v. Congressional Mortg. Corp. of Tex.*, 20 F.3d 1362
(5th Cir. 1994) ................................................................................................. 5

*Lee v. Wells Fargo Bank, N.A.*, No. 3:13-CV-1041, 2013 WL 6734790
(N.D. Tex. Dec. 23, 2013) (Godbey, J.) ........................................................... 5

*Mitchell v. Chapman*, 10 S.W.3d 810 (Tex. App.—Dallas 2000, pet. denied) .......................... 22

*Morgan v. Plano Indep. Sch. Dist.*, 724 F.3d 579 (5th Cir. 2013) ................................. 22

*Ortega v. Young Again Prods., Inc.*, No. H-12-0001, 2012 WL 1709714
(S.D. Tex. May 15, 2012), *aff'd*, 548 F. App'x 108 (5th Cir. 2013) ................. 18

*Reagan Nat'l Advertising of Austin, Inc. v. Hazen*, No. 03-05-00699-CV, 2008 WL 2938823
(Tex. App.—Austin July 29, 2008, no pet.) .................................... 11, 16, 17, 19

*Sacks v. Hall*, No. 01-13-00531-CV, 2014 WL 6602460 (Tex. App.—Houston [1st Dist.]
Nov. 20, 2014, no pet.) ................................................................................... 20

*Spencer v. Hughes Watters Askanase, LLP*, No. 5:15-cv-00233, 2015 WL 3651594
(W.D. Tex. June 11, 2015) ......................................................................... 11, 17

*Taco Bell Corp. v. Cracken*, 939 F. Supp. 528 (N.D. Tex. 1996) ................................. 9

*Trinity Settlement Servs., LLC v. Tex. State Sec. Bd.*, 417 S.W.3d 494 (Tex. App.—Austin
2013, pet. denied) ......................................................................................... 21

*Troice v. Proskauer Rose, LLP*, 816 F.3d 341 (5th Cir. 2016) ............................ passim

*Vinson & Elkins v. Moran*, 946 S.W.2d 381 (Tex. App.—Houston [14th Dist.] 1997,
writ dismissed by agt.) ................................................................................. 14

*Williamson v. Wells Fargo Bank, N.A.*, No. 6:16-CV-200-MHS-JDL, 2016 WL 3265699
(E.D. Tex. Apr. 29, 2016) ............................................................................. 18

*Wyles v. Cenlar FSB*, No. 7-15-cv-155-DAE, 2016 WL 1600245 (W.D. Tex. Apr. 20, 2016) ... 21

**Rules**

FED. R. CIV. P. 12(b)(1) ................................................................................... 22

FED. R. CIV. P. 12(c) ........................................................................... 1, 5, 22

FED. R. CIV. P. 12(h)(3) ................................................................................... 22

**Other Authorities**

TEX. PRAC., TEX. LAWYER & JUD. ETHICS § 4.10 (2016 ed.) ...................................... 14

## INTRODUCTION

Under Texas law,[1] an attorney is immune from liability to non-clients for actions taken in connection with representing a client, under any theory of recovery. *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 484 (Tex. 2015); *Troice v. Proskauer Rose, LLP*, 816 F.3d 341, 348 (5th Cir. 2016). In this litigation, Plaintiffs seek to hold the law firm Hunton & Williams LLP ("Hunton") liable for its alleged conduct in representing Robert Allen Stanford or certain of the entities he formerly owned or controlled. But Hunton never had an attorney-client relationship with any member of the putative class ("Class Plaintiffs") or the Official Stanford Investors Committee ("OSIC"). The Receiver also is a non-client of Hunton to the extent his claims are based on Hunton's legal services for Robert Allen Stanford personally, or he asserts claims on behalf of Stanford entities that Hunton never represented. Thus, Texas's attorney immunity doctrine forecloses these non-client claims as a matter of law, and, as to these non-client claims, the Court should enter judgment on the pleadings under Federal Rule of Civil Procedure 12(c).

This Court previously considered attorney immunity in the context of Hunton's prior motion to dismiss Class Plaintiffs' claims.[2] After full briefing, this Court denied Hunton's motion, explaining that it interpreted Texas case law as establishing an exception to attorney immunity when a plaintiff alleges that an attorney's conduct representing a client was fraudulent. (2/4/15 Order at 5-6 [ECF 123].)

But two recent decisions from the Texas Supreme Court and the Fifth Circuit, both of which issued after this Court's ruling in this case, make clear that a plaintiff cannot avoid

---

[1] Plaintiffs have repeatedly argued that Texas law governs. (*E.g.*, Putative Class Br. ISO Opposed Mot. for Class Certification at 65-67 [ECF 176]; Putative Class Reply in Support of Mot. for Class Cert. at 18-31 [ECF 177]; Receiver/OSIC Joint Resp. to Defs.' Mots. to Dismiss at 4 [ECF 63].) Hunton addresses Texas law in this motion, but reserves the right to show that a different jurisdiction's law applies to some or all aspects of Plaintiffs' claims, if the claims survive this motion.

[2] Hunton's Mot. to Dismiss at 6-8 [ECF 90]; Hunton's Reply in Supp. of its Mot. to Dismiss at 2-7 [ECF 104]; *see* Putative Class Resp. to Defs.' Mot. to Dismiss at 8-14 [ECF 99].

attorney immunity by asserting an attorney's actions were fraudulent. (*See* Part I, below.)  In *Cantey Hanger*, the Texas Supreme Court rejected a "fraudulent conduct" exception to attorney immunity, holding instead that the doctrine bars *all* claims asserted by non-clients based on attorney conduct in providing legal services to a client.  467 S.W.3d at 484.  In *Troice*, the Fifth Circuit applied *Cantey Hanger* to dismiss with prejudice claims brought by the three putative class representatives in a Stanford-related case against two law firms and their former partner. 816 F.3d at 348.  There, the Fifth Circuit similarly rejected the plaintiffs' argument that their allegations of fraudulent or wrongful attorney conduct overcame attorney immunity.  *Id*.

Below, Hunton sets forth the relevant factual background and the standard of review under Rule 12(c), and then demonstrates that *Cantey Hanger* and *Troice* apply with equal force to the many non-client claims asserted against it in this case.  (*See* Parts II and III, below.)  Hunton also shows that Plaintiffs cannot save their claims by manufacturing so-called "exceptions" to immunity, such as for non-litigation attorney conduct, allegedly criminal attorney conduct, or claims under the Texas Securities Act ("TSA").  (*See* Part IV, below.)  Rather, *Troice* makes clear that, for non-client claims, the attorney immunity doctrine is intended to "assure attorneys that they will not be liable for damages, full stop."  816 F.3d at 349.  These "exceptions" simply do not exist, and the Court should dismiss Plaintiffs' non-client claims with prejudice.

## FACTUAL BACKGROUND

As the Court is well aware, Plaintiffs' claims in this case arise from a multi-billion dollar Ponzi scheme[3] perpetrated by Allen Stanford through the complex web of entities he formerly owned and controlled.  (Compl. ¶¶ 10-11 [ECF 1].)  Plaintiffs allege Mr. Stanford's Ponzi

---

[3] Hunton accepts Plaintiffs' factual allegations as true for purposes of this motion only, and uses the Complaint's terminology, such as "Ponzi scheme," for ease of reference.  However, as explained more fully in Hunton's Answer, which is available to the Court on this motion, the Complaint mischaracterizes many events and documents, and Hunton vigorously disputes many of the Complaint's allegations.  (*See* Hunton Answer [ECF 128].)

scheme was fueled primarily by the sale of CDs issued by Stanford International Bank, Ltd. ("SIBL") (*id.* ¶ 25), and that he used the Stanford entities "to sell [his] bogus CDs and thereby pump money into" his own pockets for his own benefit (*id.* ¶ 10).  Plaintiffs allege that Stanford financial advisors persuaded investors to purchase SIBL CDs based on misrepresentations and omissions made "verbally and via promotional materials" about Mr. Stanford, the Stanford entities, and the characteristics of the SIBL CDs.  (*Id.* ¶¶ 46-47, 429-31.)  However, Plaintiffs do ***not*** allege that Hunton attorneys ever had any contact with Stanford investors about Stanford, ever had involvement in any sale of SIBL CDs to anyone, or ever prepared or advised on SIBL marketing or disclosure materials.  Stanford investors are not, never were, and are not alleged to have been clients of Hunton.  And Plaintiffs already have conceded that Hunton and its former partner, Carlos Loumiet, ***did not know*** that Allen Stanford was running a Ponzi scheme when they provided Stanford-related legal services.  (*See* Receiver/OSIC Resp. to Defs.' Mots. to Dismiss at 4 [ECF 63]; Putative Class Resp. to Defs.' Mot. to Dismiss at 2 [ECF 99].)

Rather, Plaintiffs target Hunton simply because of the legal services that the law firm, primarily through Mr. Loumiet (*e.g.*, *id.* ¶¶ 12-16), purportedly provided to Mr. Stanford himself or to certain Stanford entities between 2001 and 2009 (*id.* ¶¶ 245-46, 455).  Plaintiffs premise their claims on Mr. Loumiet's supposed role as "outside general counsel" to Stanford entities (*id.* ¶ 13), but their allegations fall far short of supporting that kind of expansive role on his part.[4] Plaintiffs also have never alleged that Hunton and Mr. Loumiet made a mistake in the legal services they provided.   Instead, Plaintiffs seek to hold Hunton liable for the ***effects*** of Hunton's legitimate legal services—how Allen Stanford supposedly mis-used those legal services to

---

[4] In but one example of the peripheral nature of Hunton's alleged legal services, Plaintiffs do not (nor can they) allege that either Hunton or Mr. Loumiet were aware of, let alone defended Stanford against, the SEC investigation that eventually exposed the Stanford fraud.  Indeed, Plaintiffs acknowledge that a different law firm represented Stanford in that key regulatory investigation.  (*See generally* Compl., *Janvey v. Proskauer Rose LLP*, No. 3:13-cv-0477 (N.D. Tex. Jan. 31, 2013) [ECF 1].)

perpetrate his fraud, totally unbeknownst to Hunton or Mr. Loumiet. Plaintiffs identify the following legal services in support of their claims against Hunton:

- Representing Stanford entities or Mr. Stanford in litigation, or in evaluating whether to pursue litigation, including by filing court documents, interviewing witnesses, communicating with third parties, and conducting legal research and investigating relevant facts (*id.* ¶¶ 258-61, 265-67, 271, 273, 275-76, 327-28);

- Representing certain Stanford entities in corporate transactions, including by documenting or advising on venture capital and real estate investments, identifying similar potential investment opportunities for Stanford entities, and offering advice regarding the corporate structure of new potential entities (*id.* ¶¶ 15, 246, 252-54, 292, 307, 316-17, 341-42, 345-46, 348-51, 354-67, 379, 393) (and Plaintiffs do not allege, nor can they, that Hunton acted in a business, rather than legal, capacity with respect to these transactions);

- Responding to inquiries from government regulators, including responding to a subpoena, communicating with regulatory authorities, conducting legal research, writing memos analyzing legal issues, and other related conduct (*id.* ¶¶ 307, 370-77, 380-88);

- Corresponding with regulators or government officials on matters related to Stanford's business operations, such as Stanford's application for a banking license or efforts to open trust offices in various locations (*id.* ¶¶ 308-12, 314-15, 329, 332-33, 365, 367-69);

- Negotiating with Mexican authorities for the release of a detained Stanford employee, with the assistance of local Mexican counsel (*id.* ¶ 321);

- Representing Mr. Stanford in personal matters, such as personal tax matters, home purchases, and traffic tickets, and advocating for Mr. Stanford on legislative issues (*id.* ¶¶ 286-87, 300-01, 336-40, 342);

- Serving as counsel to a Stanford advisory board (*id.* ¶¶ 302, 304);

- Attending meetings related to certain Stanford entities at the request of Stanford employees (*id.* ¶¶ 303, 347, 353);

- Corresponding with third parties on behalf of Mr. Stanford (*id.* ¶¶ 252, 266, 286, 308-12, 314, 393, 395); and

- Reviewing and commenting on news articles regarding Allen Stanford and/or the Stanford entities (*id.* ¶¶ 249-51, 255-56, 324).

Relying on their allegations about these legal services, Class Plaintiffs assert claims against Hunton for (1) aiding and abetting or conspiracy to commit violations of the TSA (*id.*

¶¶ 441-51), (2) aiding and abetting a breach of fiduciary duty (*id.* ¶¶ 452-54), (3) aiding and abetting a fraudulent scheme (*id.* ¶ 455), and (4) civil conspiracy (*id.* ¶¶ 456-58).  The OSIC and the Receiver assert claims for (1) aiding and abetting breaches of fiduciary duty (*id.* ¶¶ 408-10), (2) fraudulent transfer/unjust enrichment (*id.* ¶¶ 414-25), and (3) negligent retention/supervision (*id.* ¶¶ 428).  The Receiver also sues Hunton for professional negligence.  (*Id.* ¶ 407).[5]

## STANDARD OF REVIEW

Under Rule 12(c), "a party may move for judgment on the pleadings" "[a]fter the pleadings are closed—but early enough not to delay trial."  FED. R. CIV. P. 12(c).  The same standards governing a motion to dismiss under Rule 12(b)(6) also apply to a Rule 12(c) motion. *Chauvin v. State Farm Fire & Cas. Co.*, 495 F.3d 232, 237 (5th Cir. 2007); *Alpert v. Riley*, No. H-04-CV-3774, 2008 WL 304742, at *11 (S.D. Tex. Jan 31, 2008) ("*Alpert II*").  Thus, the Court should "accept[ ] all well-pleaded facts as true and view[ ] them in the light most favorable to the plaintiff," but "conclusory allegations and assertions will not suffice."  *Bonner v. Alford*, No. 3:10-CV-2556, 2014 WL 285139, at *2 (N.D. Tex. Jan. 27, 2014) (Godbey, J.).

In considering Hunton's motion, this Court "may rely on the complaint," other pleadings, and "matters of which a court may take judicial notice" without converting the motion into one for summary judgment.[6] *Lee v. Wells Fargo Bank, N.A.*, No. 3:13-CV-1041, 2013 WL 6734790, at *1 (N.D. Tex. Dec. 23, 2013) (Godbey, J.).  Dismissal is proper under Rule 12(c) when the pleadings show the action is barred as a matter of law.  *Jones v. ALCOA, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003); *Kansa Reinsurance Co., Ltd. v. Congressional Mortg. Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir. 1994).

---

[5] *See* Receiver/OSIC Resp. to Defs.' Mots. to Dismiss at 9 n.9 [ECF 64] ("The Receiver has brought the professional negligence/malpractice claim in his own name and has not assigned the claim . . . .").

[6] In an abundance of caution, Hunton sought leave to file this motion without prejudice to its ability, in the future, to file a motion for summary judgment.  [ECF 195.]  On June 15, 2016, the Court entered an order granting that relief.  [ECF 202.]

**ARGUMENT**

**I.     The Texas Attorney Immunity Doctrine Bars All Claims By Non-Clients Against Attorneys Based On Attorney Conduct In Representing A Client.**

The Texas Supreme Court in *Cantey Hanger* held that attorney conduct "is not actionable if it is part of the discharge of the lawyer's duties in representing his or her client." 467 S.W.3d at 481. "Conversely, attorneys are not protected from liability to non-clients for their actions when they do not qualify as the *kind* of conduct in which an attorney engages when discharging his duties to his client." *Id.* at 482 (emphasis added). "'[I]t is the *kind* of conduct that is controlling, and not whether that conduct is meritorious or sanctionable.'" *Id.* at 482 (quoting *Chapman Children's Trust v. Porter & Hedges, LLP*, 32 S.W.3d 429, 442 (Tex. App.—Houston [14th Dist.] 2000, pet. denied)). Thus, "[f]raud is not an exception to attorney immunity; rather, the defense does not extend to fraudulent conduct that is outside the scope of an attorney's legal representation of his client." *Id.* at 484. Put differently, when the challenged conduct is the kind in which an attorney engages when discharging duties to a client, the attorney is immune from suit by non-clients based on that conduct. *Id.* at 485.[7]

Applying these principles, the Texas Supreme Court in *Cantey Hanger* held that an attorney's allegedly fraudulent (and potentially criminal) conduct of conspiring with a client to falsify documents and evade taxes was not actionable because the conduct occurred during the course of the attorney's representation of a client in a divorce proceeding. *Id.* at 480, 486. The Court explained, "[m]erely labeling an attorney's conduct fraudulent does not and should not remove it from the scope of client representation," *id.* at 483, because "an attorney's conduct may

---

[7] *Accord Highland Capital Mgmt., LP v. Looper Reed & McGraw P.C.*, No. 05-15-00055-CV, 2016 WL 164528, at *3 (Tex. App.—Dallas Jan. 14, 2016, pet. denied) ("If an attorney proves that his conduct is part of the discharge of his duties to his client, immunity applies.") (quoting *Cantey Hanger*, 467 S.W.3d at 484); *Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 406 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) ("*Alpert I*") ("The immunity focuses on the type of conduct, not whether the conduct was meritorious . . . ").

be wrongful but still fall within the scope of client representation," *id.* at 485.  Thus, the Texas Supreme Court concluded the law firm defendant was immune from liability because "[m]eritorious or not, the *type* of conduct alleged [fell] squarely within the scope of [the law firm's] representation of [its client]."  *Id.*

This immunity from liability extends to non-client claims premised on "*any theory of recovery*, for actions taken in connection with representing a client."  *Dimitric v. Tex. Workforce Comm'n*, No. G-07-247, 2009 WL 674391, at *9 (S.D. Tex. Mar. 13, 2009) (emphasis added). Accordingly, in *Troice*, the Fifth Circuit relied on attorney immunity to dismiss, with prejudice, claims analogous to those asserted against Hunton here.  816 F.3d at 349-50.  The claims in *Troice* rested on allegations that attorneys representing Stanford employees and entities engaged in "illegal or fraudulent" acts meant to "thwart the SEC's investigation of Stanford's scheme." *Id.* at 344, 349.  The investor plaintiffs did not allege those acts occurred outside the scope of the attorneys' provision of legal services to its Stanford clients.  *Id.* at 348-49.  Applying *Cantey Hanger*, the Fifth Circuit held that the conduct at issue "involve[d] the provision of legal services," and thus was "the *type* of conduct [that] [fell] squarely within the scope of [law firms'] representation of [their] clients."  *Id.* at 349.  The court also held that it was of "no matter" that the plaintiffs claimed some of the attorney conduct "was allegedly wrongful" or carried out "in a fraudulent manner," because "*Cantey Hanger* makes clear that the fraud exception [to attorney immunity] does not exist."  *Id.* at 348.  The Fifth Circuit rejected the investor plaintiffs' argument that "attorneys are entitled to immunity only against party opponents," holding that the attorney immunity doctrine broadly bars claims asserted by, or on behalf of, non-clients.  *Id.* at 349.

*Cantey Hanger* and *Troice* also reaffirmed the important policy reasons that support applying the attorney immunity doctrine to all non-client claims arising from an attorney's conduct when representing a client.  *First*, the attorney immunity doctrine "is intended to ensure

7

loyal, faithful, and aggressive representation by attorneys employed as advocates," *Cantey Hanger*, 467 S.W.3d at 481, by allowing an attorney to "zealously represent his clients" and "interpose defenses and pursue legal rights that he deems necessary and proper, without being subject to liability or damages," *Alpert I*, 178 S.W.3d at 405; *accord Troice*, 816 F.3d at 346; *Cantey Hanger*, 467 S.W.3d at 483. Exposing attorneys to liability to non-clients for "statements made or actions taken in the course of representing [a] client . . . [would] hamper[] the resolution of disputes . . . and the attainment of justice," by forcing attorneys to "constantly [] balance [their] own potential exposure against [their] client's best interest." *Alpert I*, 178 S.W.3d at 405; *see also Troice*, 816 F.3d at 346.

*Second*, by ensuring that a non-client cannot sue an attorney for conduct within the scope of the attorney's representation of his client, the attorney immunity doctrine strengthens the attorney-client relationship. This is because the non-client "has not retained the attorney, the attorney's services were not rendered to the [non-client], no privity of contract exists between the [non-client] and the attorney, and the attorney's duties are owed only to the client." *Jurek v. Kivell*, No. 01-10-00040-CV, 2011 WL 1587375, at *5 (Tex. App.—Houston [1st Dist.] Apr. 21, 2011, no pet.); *see also Cantey Hanger*, 467 S.W.3d at 481 (observing "a lack of privity precludes attorneys' liability to non-clients for legal malpractice"); *Dimitric*, 2009 WL 674391, at *9 (describing attorney immunity doctrine as derived from a "principle of privity").

## II.    The Texas Attorney Immunity Doctrine Bars Class Plaintiffs' Claims Because Hunton's Alleged Conduct Occurred As Part Of Its Provision Of Legal Services To Mr. Stanford Or Certain Stanford Entities.

Attorney immunity, and the policy principles behind it, apply readily in this case. Class Plaintiffs allege that Hunton lawyers had attorney-client relationships with Mr. Stanford and certain Stanford entities (Compl. ¶¶ 13-14), and their claims against Hunton arise from Hunton's legal services provided as part of effectuating those attorney-client relationships (*id*. ¶¶ 245-46).

Thus, Class Plaintiffs' own allegations demonstrate that attorney immunity bars their claims as a matter of law.  *See Troice*, 816 F.3d at 348-49; *Cantey Hanger*, 467 S.W.3d at 483-85.

> **A.     Class Plaintiffs' Claims Against Hunton Arise From Hunton's Alleged Provision Of Legal Services To Mr. Stanford Or The Stanford Entities.**

Class Plaintiffs' claims against Hunton are based on "the kind of conduct in which an attorney engages when discharging his duties to his client," *Cantey Hanger*, 467 S.W.3d at 482— *i.e.*, alleged conduct "involving the office, professional training, skill, and authority of an attorney," *Dimitric*, 2009 WL 674391, at *9.   The legal services that Hunton purportedly provided to Mr. Stanford or the Stanford entities fall into three general categories.

*First*, Class Plaintiffs base their claims on Hunton's alleged representation of Mr. Stanford or certain Stanford entities in litigation.  (*E.g.*, Compl. ¶¶ 258-61, 265-67, 275-76, 300, 327-28.)  Class Plaintiffs allege this work involved such activities as conducting legal research and writing memoranda related to litigation or potential litigation (*id.* ¶¶ 265, 314-15); evaluating the allegations of lawsuits filed against Mr. Stanford or certain Stanford entities (*id.* ¶¶ 258-61, 327-28); filing a lawsuit on behalf of Mr. Stanford (*id.* ¶ 275); corresponding with opposing parties or their counsel (*id.* ¶¶ 266, 271); and negotiating for the release of a Stanford employee in a criminal matter with the assistance of local counsel (*id.* ¶¶ 320-22).  It is well established that the attorney immunity doctrine applies to this type of litigation-related conduct, regardless of whether the conduct occurred before litigation commenced or after it ended.  *See, e.g.*, *Taco Bell Corp. v. Cracken*, 939 F. Supp. 528, 532-33 (N.D. Tex. 1996) (no liability for misrepresenting residence of a litigation party to obtain venue in a plaintiff-friendly forum); *Cantey Hanger*, 467 S.W.3d at 479-80, 486 (no liability for drafting fraudulent bill of sale in contravention of divorce decree, even though the fraudulent bill of sale was drafted more than one year after the decree was entered); *Chapman Children's Trust*, 32 S.W.3d at 441, 443 (no liability for threatening

legal action, falsely accusing an opposing party of fraud, withholding documents, and attempting to deduct improper amounts from settlement funds).

*Second*, Class Plaintiffs make allegations regarding Hunton's conduct while representing certain Stanford entities in regulatory matters.  That conduct purportedly included corresponding with regulators (Compl. ¶¶ 309-12, 314-15); conducting legal research and authoring memoranda providing legal advice related to regulatory issues (*id.* ¶¶ 332-33 367-69); challenging a regulator's jurisdiction (*id.* ¶¶ 371-77); and responding to a subpoena from a regulator (*id.* ¶¶ 381-85, 87).   All of these alleged acts are "classic examples of an attorney's conduct in representing his client," *Troice*, 816 F.3d at 348, for which Class Plaintiffs cannot hold Hunton liable, *see Cantey Hanger*, 467 S.W.3d at 484 (an attorney is immune from liability if "his alleged wrongful conduct, regardless of whether it is labeled fraudulent, is part of the discharge of his duties to his client"); *Highland Capital Mgmt.*, 2016 WL 164528, at *3 ("If an attorney proves that his conduct is part of the discharge of his duties to his client, immunity applies.").

*Third*, Class Plaintiffs also rest their claims on Hunton's purported conduct representing Mr. Stanford or Stanford entities in transactional matters.  That alleged conduct included drafting the legal documentation associated with a loan (Compl. ¶¶ 252-54), assisting in the legal due diligence and legal documentation of certain venture capital investments (*id.* ¶¶ 345-46); preparing term sheets and contractual documents for real estate transactions (*id.* ¶¶ 351-58); researching the legalities of establishing trust representative offices in various states (*id.* ¶ 367); researching the regulatory impact of potential investments (*id.* ¶¶ 361-63); and advising Mr. Stanford on certain tax matters (*id.* ¶¶ 336, 342).  Legal services of this nature also fall squarely within the scope of the attorney-client relationship because they "involve the office, professional training, skill, and authority of an attorney."  *Dimitric*, 2009 WL 674391, at *9 (attorney immune for providing legal advice related to terminating an employee); *see also Spencer v. Hughes*

*Watters Askanase, LLP*, No. 5:15-cv-00233, 2015 WL 3651594, at *3 (W.D. Tex. June 11, 2015) ("attorney immunity applies to litigation, transactions, and foreclosure work"); *Highland Capital Mgmt.*, 2016 WL 164528, at *6 n.3 (*Cantey Hanger* does not restrict immunity to litigation but instead focuses on attorney conduct); *Reagan Nat'l Advertising of Austin, Inc. v. Hazen*, No. 03-05-00699-CV, 2008 WL 2938823, at *8 (Tex. App.—Austin July 29, 2008, no pet.) (attorney immune for conduct including "drafting an indemnity agreement" and "advocating [for] his clients' interests").

In sum, the face of the Complaint makes clear that the alleged Hunton conduct at issue on Class Plaintiffs' claims was part of Hunton's discharge of its duties in providing legal services to Mr. Stanford or the Stanford entities. *See, e.g.*, *Cantey Hanger*, 467 S.W.3d at 481. That is all the Court need determine to dismiss Class Plaintiffs' claims under the attorney immunity doctrine. *See Troice*, 816 F.3d at 348-49; *Cantey Hanger*, 467 S.W.3d at 483-84.

**B.      Class Plaintiffs Concede Their Claims Arise From Hunton's Business As A Law Firm That Provides Legal Services.**

Class Plaintiffs effectively concede that the attorney immunity doctrine applies, because they expressly allege in the Complaint that Mr. Loumiet was Allen Stanford's "legal facilitator" who was supposedly acting as "outside general counsel" to Stanford entities. (Compl. ¶¶ 12, 13.) Class Plaintiffs further allege that "from 2001 until the time Stanford Financial was placed into receivership . . . [Mr.] Loumiet was an employee of Hunton" who was "acting within the course and scope of his [ ] employment" and in furtherance of Hunton's business. (*Id.* ¶ 459.)[8] Hunton, of course, is a law firm whose business consists of providing legal services to clients. (*See id.* ¶¶ 13, 18.)

---

[8] *See also* Receiver/OSIC Resp. to Defs.' Mot. to Dismiss at 79 ("Indeed, the actions of [Mr.] Loumiet and the other Hunton attorneys working on Stanford matters were indisputably within the scope of their employment.") [ECF 63].

Notably, nowhere in the 464-paragraph Complaint do Class Plaintiffs allege that Mr.

Loumiet (or any other attorney at Hunton) took *any* actions outside the scope of their respective

capacities as attorneys.  To the contrary, Class Plaintiffs (and the Receiver and OSIC) have

repeatedly and clearly acknowledged that their claims are based on alleged actions Hunton

attorneys took while providing legal services to Mr. Stanford or certain Stanford entities.  (*See,*

*e.g.*, Putative Class Resp. to Defs.' Mot. to Dismiss at 10 (stating the "conduct forming the basis

of the Class Plaintiffs' Complaint" are acts that occurred "during [Hunton's] representation of

Stanford, SGC, SIB, STC, and SFIS") [ECF 99]).[9]  Based on Plaintiffs' repeated representations,

this Court previously stated that, "[a]t root, Plaintiffs allege [that Hunton] contributed to the

success and eventual downfall of the Stanford Ponzi scheme *through the provision of deficient*

*legal services*."  (12/17/14 Order at 3 (emphasis added) [ECF 114].)

None of this is surprising, because Class Plaintiffs' claims against Hunton are based

primarily—if not exclusively—on a *respondeat superior* theory of vicarious liability for Mr.

Loumiet's purported conduct.  Class Plaintiffs allege Hunton is responsible for all of Mr.

Loumiet's supposedly "wrongful conduct" described in the Complaint because Mr. Loumiet was

"an employee of Hunton" who was "acting within the course and scope of his respective

---

[9] *Accord* Receiver/OSIC Resp. to Defs.' Mot. to Dismiss at 9 ("Plaintiffs explicitly allege that Defendants represented . . . the Stanford Financial Group as a whole, and all its constituent member companies") [ECF 63]; *id.* at 10 (identifying conduct in the Complaint in which Plaintiffs "specifically allege[ ] that Hunton represented Stanford Financial Group Company" and other "Stanford Entities," including representing various Stanford entities in "litigation," a "money laundering criminal proceeding," "evading increased regulatory scrutiny by the ECCB," "growing its offices in the U.S.," "establishing more trust offices in other states," "in the investigation by Florida regulators," and in "Stanford's Venture Capital fund and Stanford's Caribbean Investment Fund and other Stanford companies involved in purchasing Caribbean real estate . . . ."); *id.* at 15 ("Hunton admittedly served as the 'outside General Counsel' and 'principal outside counsel' to the Stanford group of companies"); *id.* at 65 n.44 ("it is hardly 'extraordinary' to conclude that a law firm providing legal services in direct furtherance of illegal activity would proximately cause damages that flow from such illegal activity").

employment[]" and "in furtherance of [Hunton's] business[]" as a law firm.  (Compl. ¶ 459.)[10]

Vicarious liability must be premised on the acts "of an agent or employee acting within the scope

of his or her agency or employment."  *Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945,

947 (Tex. 1998).  Any suggestion by Class Plaintiffs that Mr. Loumiet's purported conduct went

beyond the scope of his role as an attorney would not only contradict the Complaint (and Class

Plaintiffs' prior representations in this case), but also would negate Class Plaintiffs' *respondeat*

*superior* theory.  *See Buck v. Blum*, 130 S.W.3d 285, 289 (Tex. App.—Houston [14th Dist.]

2004, no pet.) ("A plaintiff may . . . plead herself out of court if she alleges facts that negate her

[*respondeat superior*] cause of action").

## III.   The Attorney Immunity Doctrine Bars All Of The OSIC's Claims, And Portions Of The Receiver's Claims, Because They Arise From The Same Conduct As Class Plaintiffs' Claims And Are Asserted By Or On Behalf Of Non-Clients.

All of the OSIC's claims, and portions of the Receiver's claims, are barred by the

attorney immunity doctrine for the same reasons Class Plaintiffs' claims are barred.

### A.   The Attorney Immunity Doctrine Bars All Of The OSIC's Claims.

There is no dispute that neither the OSIC nor any of its members were ever Hunton's

clients.[11]  The OSIC's claims are based on almost all the same allegations, and arise from the

same purported Hunton conduct, as Class Plaintiffs' claims.  (*See* Compl. ¶¶ 10-16, 23-402.)

Thus, for the same reasons the attorney immunity doctrine bars Class Plaintiffs' claims, the

doctrine also precludes the OSIC's claims.[12]  (*See* Part III, above.)

---

[10] *Accord* Receiver/OSIC Resp. to Defs.' Mot. to Dismiss at 79 ("the actions of Loumiet and the other Hunton attorneys working on Stanford matters were indisputably within the scope of their employment") [ECF 63]; *see also* 12/17/14 Order at 3 ("Hunton's liability is primarily predicated on the conduct of Carlos Loumiet") [ECF 114].

[11] This Court created the OSIC in 2010—well after Hunton's Stanford-related attorney-client work ended. *See* Order ¶ 1 [ECF 1149], *SEC v. SIBL*, No. 3:09-CV-0298-N (N.D. Tex. Aug. 10, 2010).

[12] Hunton also adopts and fully incorporates herein the arguments made by Proskauer Rose LLP in support of its Motion for Judgment on the Pleadings filed in *Janvey v. Proskauer Rose LLP*, No. 3:13-

The OSIC cannot avoid dismissal by purporting to assert claims as the Receiver's assignee.  *First*, *Troice* instructs that attorney immunity is meant to "protect[ ] attorneys from liability to *non-clients*" and "assure attorneys that they will not be liable for damages, full stop." 816 F.3d at 349 (original emphasis); *see also Cantey Hanger*, 467 S.W.3d at 481.  Indeed, the Texas Supreme Court in *Cantey Hanger* expressly cautioned against creating exceptions to the attorney immunity doctrine.  467 S.W.3d at 484.

*Second*, for the same reasons Texas law bars the assignment of claims arising from an attorney's provision of legal services to a client, non-clients should not be able to sidestep attorney immunity by proceeding under a purported assignment of claims from the attorney's client.  The Fifth Circuit and several Texas appellate courts have rejected clients' attempts to assign claims arising from an attorney's legal services, concluding that such assignments would improperly "deter attorneys from zealous advocating for their clients," *City of Garland v. Booth*, 971 S.W.2d 631, 635 (Tex. App.—Dallas 1998, pet. denied), and "unquestionably erode . . . the effective administration of justice," *Vinson & Elkins v. Moran*, 946 S.W.2d 381, 394 (Tex. App.—Houston [14th Dist.] 1997, writ dismissed by agt.).[13]  The same would be true if an assignment of claims allowed a non-client like the OSIC to overcome attorney immunity.  *See, e.g.*, *Troice*, 816 F.3d at 346.

**B.     The Attorney Immunity Doctrine Bars Portions Of The Receiver's Claims.**

The Receiver's claims—which are also based on the same allegations and purported conduct as Class Plaintiffs' and the OSIC's claims (*see* Compl. ¶¶ 10-16, 23-402)—are barred to

---

CV-0477-N (N.D. Tex. May 12, 2016) [ECF 99], and asks the Court to dismiss the OSIC's claims, with prejudice, for the additional reasons set forth in that motion.

[13] *See also Britton v. Seale*, 81 F.3d 602, 605 (5th Cir. 1996) (claims based on an attorney "performing legal services for a client" are "non-assignable"); Tex. Prac., Tex. Lawyer & Jud. Ethics § 4.10 (2016 ed.) (noting that non-assignability of claims growing out of an attorney's representation of a client "has now reached a point of relative stability").

the extent they, too, are non-client claims.  The Receiver, by virtue of his appointment by this Court,[14] stands in the shoes of only the Stanford entities and cannot assert claims arising from Hunton's legal representation of Mr. Stanford.  *See Janvey v. Democratic Senatorial Campaign Comm., Inc.*, 712 F.3d 185, 190 (5th Cir. 2013) ("A federal equity receiver has standing to assert only the claims of the entities in Receivership").  Thus, Hunton is immune from the Receiver's claims to the extent they are based on conduct that Hunton undertook as part of representing Allen Stanford personally.  (*See* Compl. ¶¶ 284 n.31 (representing Allen Stanford in a separation and support case with a romantic partner), 286 (communicating with third parties on Allen Stanford's behalf in personal matters), 287 (serving as manager of company created to purchase Allen Stanford's personal home), 300-01 ("Hunton also represented Allen Stanford in his personal matters"), 336-40 (providing services on certain personal tax matters).)  Similarly, Hunton is immune from any claims the Receiver asserts on behalf of Stanford entities that Hunton did not represent.  (*See* Part III, above.)

## IV.    No "Exceptions" To The Attorney Immunity Doctrine Exist Or Apply.

Hunton expects Plaintiffs to attempt to save their defective claims at least in part by arguing that certain purported "exceptions" to the attorney immunity doctrine preclude dismissal. Specifically, Plaintiffs may argue, as they have done in responding to co-defendant Greenberg Traurig's separate motion to dismiss for lack of subject-matter jurisdiction [ECF 204]: (1) that attorneys are immune only from claims that arise from their conduct while representing a client in litigation; (2) that a so-called "crime exception" exists; or (3) that the immunity doctrine does not apply to Class Plaintiffs' TSA claims.  Texas law does not support any of these arguments.

---

[14] Order Appointing Receiver ¶ 3, *SEC v. SIBL*, No. 3:09-cv-0298-N (N.D. Tex. Feb. 17, 2009) [ECF 10].

### A.      The Attorney Immunity Doctrine Is Not Limited To Litigation Conduct.

There is no basis for restricting the attorney immunity doctrine to an attorney's litigation conduct.  The policy reasons supporting the attorney immunity doctrine—namely the protection of an attorney's ability to zealously represent her client and the privity principles of the attorney-client relationship (*see* Part I, above)—have no less force in the context of an attorney's legal services provided outside of litigation.  Indeed, attorneys representing clients in non-litigation matters are bound by the same ethical principles as litigators, and require the same legal protections to ensure they can zealously represent their clients without being exposed to liability to non-clients.  *See Troice*, 816 F.3d at 346; *Cantey Hanger*, 467 S.W.3d at 483; *Alpert I*, 178 S.W.3d at 405 .

Moreover, although the Texas Supreme Court has not directly considered the issue, the court in *Cantey Hanger* specifically recognized that Texas appellate courts have immunized attorneys from claims by non-clients arising from the attorneys' conduct on behalf of a client in non-litigation matters.  467 S.W.3d at 493 n.6.  In *Cantey Hanger* itself, the attorney conduct at issue occurred over one year after litigation had concluded.  *Id.* at 479.

For example, in *Reagan National Advertising of Austin, Inc. v. Hazen*, an attorney advised his clients about their ability to remove two billboards from their property, and was later sued by a third party who claimed an interest in those billboards.  2008 WL 2938823, at *4.  The Texas Court of Appeals rejected the plaintiff's argument that the attorney was "not protected by attorney immunity merely because his complained-of conduct took place before [the plaintiff] filed its lawsuit."  *Id.* at *8.  Rather, the court explained, "while it is true that many of the cases addressing the attorney-immunity doctrine arise in the context of pending litigation, neither the case law, nor the doctrine's underlying policy rationales, are limited to that setting."  *Id.*  Because the conduct giving rise to the plaintiff's claims (which included a conspiracy claim) occurred within the scope

of the attorney's representation of his client, the court affirmed the lower court's ruling immunizing the attorney from the lawsuit. *Id.* at *1, *8.

Similarly, in *Campbell v. Mortg. Elec. Registration Sys., Inc.*, the Texas Court of Appeals affirmed dismissal of the plaintiffs' claims based on actions taken by attorneys as part of representing a client in a non-judicial foreclosure. No. 03-11-00429-CV, 2012 WL 1839357, at *5-6 (Tex. App.—Austin, May 18, 2012, pet. denied). The court held there was no evidence to contradict the attorneys' affidavit included with their motion to dismiss that they had no "contact or communication with [the plaintiffs] that was not in [the attorneys'] capacity as counsel . . . assisting with the foreclosure proceedings." *Id* at *6.

Texas federal courts—including the Fifth Circuit—have also rejected non-client claims based on attorney conduct occurring outside of litigation. In *Iqbal v. Bank of America, N.A.*, the Fifth Circuit affirmed dismissal of a plaintiff's claims based on attorney conduct that occurred in a non-judicial foreclosure, stating "[t]he [plaintiffs] argue that attorney immunity applies only in the litigation context, *but that stance is not in line with Texas law*." 559 F. App'x 363, 365 (5th Cir. 2014) (emphasis added).[15] Similarly, the federal district court in *Alpert II* dismissed a plaintiffs' claims based an attorney's non-litigation conduct after concluding that "Texas cases do not limit an attorney's protection against liability to actions taken in the course of representing a client in litigation," meaning the attorney immunity doctrine correctly "applies to the provision of legal services outside the litigation context." 2008 WL 304742, at *18.

Several other Texas courts either have expressly recognized that the attorney immunity doctrine applies to non-litigation conduct, *see Spencer*, 2015 WL 3651594, at *3 ("Under Texas law, attorney immunity applies to litigation, transactions, and foreclosure work."), or held

---

[15] The Fifth Circuit in *Troice* did not reach the issue of whether the attorney immunity doctrine is limited to litigation conduct because the court determined the investor plaintiffs had waived the argument. *See Troice*, 816 F.3d at 349.

attorneys immune from non-client claims based on conduct occurring outside of litigation, *see, e.g.*, *Williamson v. Wells Fargo Bank, N.A.*, No. 6:16-CV-200-MHS-JDL, 2016 WL 3265699, at *2-3 (E.D. Tex. Apr. 29, 2016) (attorney allegedly conspired with client to prevent plaintiff from reinstating his mortgage); *Ortega v. Young Again Prods., Inc.*, No. H-12-0001, 2012 WL 1709714, at *4-5 (S.D. Tex. May 15, 2012) (attorneys allegedly made false statements to persuade marshal to seize plaintiff's property), *aff'd*, 548 F. App'x 108 (5th Cir. 2013); *FinServ Cas. Corp. v. Settlement Funding LLC*, 724 F. Supp. 2d 662, 671-76 (S.D. Tex. 2010) (attorneys allegedly conspired with client to use legal process to seize plaintiff's property).

Significantly, as of the date of this motion, Hunton is not aware of *any* decision—not one—in which a Texas federal court, the Texas Supreme Court, or a Texas appellate court has held that the attorney immunity doctrine applies exclusively to litigation-related conduct. Although Texas courts sometimes describe the attorney immunity doctrine as barring claims based on an attorney's conduct in litigation, *see, e.g.*, *Alpert I*, 178 S.W.3d at 405 (describing doctrine as applying to "actions taken in connection with representing a client in litigation"), such descriptions are not holdings that the doctrine is limited to litigation, *see, e.g.*, *Alpert II*, 2008 WL 304742, at *17 (clarifying doctrine applies equally "to the provision of legal services outside of the litigation context"); *cf. Troice*, 816 F.3d at 349 (ruling that the attorney immunity doctrine is not restricted to claims brought by party opponents simply because some Texas courts have discussed the doctrine in that context). In the absence of contrary authority from the Texas Supreme Court, this Court should follow the weight of Texas authority and reject any attempt by Plaintiffs to limit the attorney immunity doctrine to an attorney's litigation conduct. *See, e.g.*, *Hermann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 558 (5th Cir. 2002) ("[W]e defer to intermediate state appellate court decisions unless convinced by other persuasive data that the highest court of the state would decide otherwise.").

**B.      There Is No "Crime Exception" To The Attorney Immunity Doctrine.**

Nor is there any "crime exception" to attorney immunity under Texas law.  In ruling that "[f]raud is not an exception to attorney immunity," the Texas Supreme Court explained that attorney immunity focuses "on the *kind*—not the nature—of the attorney's conduct," *Cantey Hanger*, 467 S.W.3d at 483, so that a plaintiff cannot overcome the attorney immunity doctrine by attacking the merits of an attorney's conduct, *id.* at 485; *Troice*, 816 F.3d at 348; *Reagan Nat'l Advertising*, 2008 WL 2938823, at *8; *Alpert I*, 178 S.W.3d. at 406.  The *Cantey Hanger* court also cautioned against creating exceptions to the attorney immunity doctrine because doing so would "bring unnecessary confusion and complexity" to the doctrine and "significantly undercut the defense."  467 S.W.3d at 483.

Rather, attorney immunity "does not extend to fraudulent conduct . . . or other wrongful conduct" that is "outside the scope of an attorney's legal representation of his client."  *Id.* at 484; *accord Troice*, 816 F.3d at 348-49 (dismissing the investor plaintiffs' claims because the defendants' "alleged conduct was the kind of conduct in which an attorney engages when discharging his duties to his client," even though the plaintiffs described the conduct as "illegal or fraudulent").  The issue is whether the attorney's conduct was part of providing legal services to a client.  *See Troice*, 816 F.3d at 348-49; *Cantey Hanger*, 467 S.W.3d at 483-84.  If it was, the attorney is immune.  *Id.*  The *Cantey Hanger* court implicitly rejected a "crime exception" to immunity because the attorney conduct at issue in that case—"conspiring with and aiding a client to falsify documents and evade tax liability"—*is* potentially criminal conduct.  *See* 467 S.W.3d 477 at 480.  Nevertheless, the Texas Supreme Court held that the attorney immunity doctrine barred the plaintiffs' claims.  *Id.* at 484-85.  That decision is in accord with decisions from lower Texas appellate courts, which have also applied attorney immunity despite allegations that the attorney engaged in criminal conduct.  *See, e.g.*, *Highland Capital Mgmt.*, 2016 WL 164528, at

19

*1 (immunity applied despite allegations that attorney committed a "series of criminal acts"); *Sacks v. Hall*, No. 01-13-00531-CV, 2014 WL 6602460, at *2 (Tex. App.—Houston [1st Dist.] Nov. 20, 2014, no pet.) (attorney immune despite purportedly illegal conduct that "implicated the criminal provisions" of certain federal statutes).

Merely characterizing the attorney's conduct as tortious—or criminal—does not eliminate the immunity. *Cantey Hanger*, 467 S.W.3d at 483. If the label for the conduct is what matters, then *Cantey Hanger*'s rejection of a fraudulent conduct exception to attorney immunity is meaningless, as non-client plaintiffs could circumvent immunity by replacing the word "fraudulent" with "criminal." That is surely not what the Texas Supreme Court intended, and it would impermissibly "significantly undercut the [attorney immunity] defense." *Id.* at 483.

This case proves the harm arising from allowing a litigant to attach a label to an attorney's conduct in an attempt to overcome immunity. For the first time in this litigation—it is nowhere plausibly alleged in their Complaint—and only when faced with Greenberg's motion to dismiss directed to attorney immunity issues, Plaintiffs have argued that Mr. Loumiet's Stanford legal services amounted to a crime. (Putative Class Resp. to Greenberg's Mot. to Dismiss at 9-19 [ECF 204].) Plaintiffs never made that assertion in response to Hunton's prior motion to dismiss raising the attorney immunity doctrine. (*See* Putative Class Resp. to Defs.' Mots. to Dismiss at 8-13 [ECF 99].) To the contrary, they admitted that Hunton and Mr. Loumiet ***did not know*** that Allen Stanford was running an illegal Ponzi scheme when they provided the legal services that are the subject of Plaintiffs' claims. (*See* Receiver/OSIC Resp. to Defs.' Mots. to Dismiss at 4 [ECF 63]; Putative Class Resp. to Defs.' Mot. to Dismiss at 2 [ECF 99].) The truth is that Plaintiffs cannot dispute that no criminal authority ***ever*** accused, investigated, or even contacted any Hunton lawyer—Mr. Loumiet included—in relation to Allen Stanford's crimes. Indeed, at Mr. Stanford's criminal trial, the Government expressly confirmed, on the record and

outside the presence of the jury, that Mr. Loumiet was ***not*** under any Stanford-related investigation.  (Greenberg's Am. Ans. at p. 2 [ECF 155] ("'Loumiet has nothing involved – yeah.  Loumiet is not a target in Stanford.'" (quoting Gregg Costa, lead prosecutor and now a Fifth Circuit judge, *United States v. Stanford*, Feb. 8, 2012).)[16]  Plaintiffs' current assertion that Mr. Loumiet's conduct was somehow criminal—when he admittedly did not know about the Ponzi scheme—should be viewed for what it is: a last-ditch litigation tactic with no basis whatsoever.  The attorney immunity doctrine should protect lawyers from these unfair and meritless tactics.  *See Troice*, 816 F.3d at 349; *Cantey Hanger*, 467 S.W.3d at 483-84.

### C.    The Attorney Immunity Doctrine Applies To Class Plaintiffs' TSA Claims.

Texas law also does not carve out an exception to attorney immunity for claims under the TSA, which are some of the claims that Class Plaintiffs assert here.  Although the Fifth Circuit did not reach this issue in *Troice*, because it concluded the investor plaintiffs there had waived the argument, the *Troice* court held that the attorney immunity doctrine is "a true immunity from suit, not [] a defense to liability."  816 F.3d at 346.  Multiple Texas courts have recognized that immunities bar claims brought pursuant to Texas statutes regardless of what specific applicable defenses those statutes enumerate.  *See, e.g.*, *Trinity Settlement Servs., LLC v. Tex. State Sec. Bd.*, 417 S.W.3d 494, 503 (Tex. App.—Austin 2013, pet. denied) (holding that sovereign immunity bars statutory claims seeking a declaration of rights under the TSA); *Wyles v. Cenlar FSB*, No. 7-15-cv-155-DAE, 2016 WL 1600245, at *5 (W.D. Tex. Apr. 20, 2016) (holding that attorney immunity bars claims asserted under the Texas Debt Collection Practices Act);

---

[16] The Government also repeatedly stated (and proved) that only a handful of individuals, which never included Mr. Loumiet or any other Hunton lawyer, knew about the Ponzi scheme.  (*E.g.*, Greenberg's Am. Ans. at 2 [ECF 155] ("[O]nly Stanford and a handful of people in his inner circle knew about that his outsized lifestyle and its trappings were entirely at the expense of his depositors, and not remotely close to the 'investments' into which depositors believed they had placed their savings based on Stanford's lies." (quoting U.S. Government's Sentencing Memorandum, *United States v. Stanford*, June 6, 2012)).)

*Bitterroot Holdings, LLC v. MTGLQ Investors, L.P.*, No. 5:14-cv-862-DAE, 2015 WL 363196, at *6 (W.D. Tex. Jan. 27, 2015) (same).

Moreover, applying the attorney immunity doctrine to bar Class Plaintiffs' TSA claims is consistent with the doctrine's important purpose of ensuring attorneys are able to provide clients with "loyal, faithful, and aggressive representation," without making themselves liable for damages to non-clients. *Troice*, 816 F.3d at 346 (quoting *Mitchell v. Chapman*, 10 S.W.3d 810, 812 (Tex. App.—Dallas 2000, pet. denied)); *see also Alpert I*, 178 S.W.3d at 405 (attorney immunity is necessary to avoid the inevitable conflict that would arise if an attorney were "forced constantly to balance his own potential exposure against his client's best interest").

## V.   Additionally, Or In The Alternative, This Court Lacks Subject-Matter Jurisdiction Over Plaintiffs' Non-Client Claims.

As set forth above, this Court should dismiss Plaintiffs' non-client claims under Rule 12(c) based on the attorney immunity doctrine. *See* Fed. R. Civ. P. 12(c).  On June 15, 2016, Hunton's co-defendant, Greenberg Traurig LLP, filed a motion asking this Court to dismiss Plaintiffs' claims because applying the attorney immunity doctrine deprives this Court of subject-matter jurisdiction.  (Motion to Dismiss for Lack of Subject Matter Jurisdiction, Or In The Alternative, For Judgment On The Pleadings [ECF 203]); *see* Fed. R. Civ. P. 12(b)(1), 12(h)(3).  In that motion, Greenberg shows that attorney immunity is a "true immunity from suit," *Troice*, 816 F.3d at 346, and that immunities from suit "deprive[] the court of the power to act . . . as a matter of law," *Morgan v. Plano Indep. Sch. Dist.*, 724 F.3d 579, 584 (5th Cir. 2013) (discussing sovereign immunity).  Hunton adopts and incorporates herein Greenberg's arguments from that motion, and asks the Court to dismiss Plaintiffs' claims, with prejudice, for the additional reasons set forth in that motion.

**CONCLUSION**

For the foregoing reasons, the Court should grant Hunton's motion for judgment on the pleadings and dismiss, with prejudice, (1) all of Class Plaintiffs' claims, (2) all of the OSIC's claims, and (3) the Receiver's claims to the extent the claims arise from Hunton's provision of legal services to Robert Allen Stanford personally, or are asserted on behalf of Stanford entities with which Hunton did not have an attorney-client relationship.

Dated:  July 15, 2016

Respectfully submitted,

By:  s/ Jeffrey D. Colman

Richard A. Sayles (Tex. # 17697500)
Shawn Long (Tex. # 24047859)
SAYLES WERBNER
4400 Renaissance Tower
1201 Elm Street
Dallas, TX 75270
dsayles@swtriallaw.com
(214) 939-8701
(214) 939-8787 (Facsimile)

*Counsel for Hunton & Williams LLP*

Jeffrey D. Colman (Ill. # 0491160)
David Jiménez-Ekman (Ill. # 6210519)
Andrew W. Vail (Ill. # 6279951)
April A. Otterberg (Ill. # 6290396)
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654-3456
jcolman@jenner.com
(312) 923-2940
(312) 840-7340 (Facsimile)

*Counsel for Hunton & Williams LLP*
*Admitted* Pro Hac Vice

**CERTIFICATE OF SERVICE**

I hereby certify that on July 15, 2016, I electronically filed the foregoing **Hunton & Williams LLP's Motion for Judgment on the Pleadings on Claims By Non-Clients and Supporting Memorandum of Law** with the clerk of the U.S. District Court, Northern District of Texas, using the electronic case filing (ECF) system of the court.  The ECF system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this notice as service of this document by electronic means.  Copies will be sent to those indicated as non-registered participants by U.S. Mail or facsimile at the addresses of their counsel of record or last known residence.

s/ Jeffrey D. Colman
JEFFREY D. COLMAN