IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RALPH S. JANVEY, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 3:12cv4641-N |
| GREENBERG TRAURIG, LLP, | § | |
| HUNTON & WILLIAMS, LLP; and | § | |
| YOLANDA SUAREZ, | § | |
| | § | |
| Defendants. | § | |

---

**GREENBERG TRAURIG, LLP'S REPLY IN SUPPORT OF ITS
MOTION TO DISMISS**

---

## TABLE OF CONTENTS

I.   SUMMARY ........................................................................................................... 1

II.  GT'S PROCEDURAL BASIS FOR CHALLENGE IS PROPER ............................................ 1

III. ATTORNEY IMMUNITY REQUIRES DISMISSAL OF THE INVESTORS' THIRD-PARTY CLAIMS .......... 2

    A.   Attorney Immunity Protects All Attorneys, Not Just Litigators.................................. 4

    B.   There is no crime exception after *Cantey Hanger*........................................................ 9

    C.   The TSA does not overrule common-law attorney immunity.................................. 10

IV.  CONCLUSION AND PRAYER ................................................................................. 11

CERTIFICATE OF SERVICE ............................................................................................ 12

Doc. # 1528598

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alamo Comm. College Dist. v. Obayashi Corp.*,
  980 S.W.2d 745 (Tex. App.—San Antonio 1998, pet. denied) ...............................................7

*Alpert v. Riley*,
  No. H-04-CV-3774, 2008 WL 304742 (S.D. Tex. Jan. 31, 2008)............................................8

*Barber v. United States*,
  No. 15-60614, 2016 U.S. App. LEXIS 5812 (5th Cir. Mar. 30, 2016) ....................................1

*Boswell v. Ector Cnty. ISD*,
  No. 11-15-00013-CV, 2016 Tex. App. LEXIS 3677 (Tex. App.—Eastland
  Apr. 7, 2016, n.p.h.)..............................................................................................................9

*Cantey Hanger, LLP v. Byrd*,
  467 S.W.3d 477 (Tex. 2015)....................................................................................4, 6, 7, 10

*Carty v. State Office of Risk Mgmt.*,
  733 F.3d 550 (5th Cir. 2013) ................................................................................................1

*Cash Am. Int'l, Inc. v. Bennett*,
  35 S.W.3d 12 (Tex. 2000).....................................................................................................10

*Chu v. Hong*,
  249 S.W.3d 441 (Tex. 2008)...................................................................................................5

*Dillingham v. Putnam*,
  14 S.W. 303 (Tex. 1890).......................................................................................................10

*Energy Serv. Co. of Bowie, Inc. v. Superior Snubbing Servs.*,
  236 S.W.3d 190 (Tex. 2007)..................................................................................................10

*Gaia Envtl., Inc. v. Galbraith*,
  451 S.W.3d 398 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) ...................................9

*Hanna v. Niemann*,
  No. 03-98-00708-CV, 1999 WL 394894 (Tex. App.—Austin June 17, 1999,
  pet. denied)..................................................................................................................4, 5, 8

*Highland Capital Mgmt., LP v. Looper Reed & McGraw, P.C.*,
  No. 05-15-00055-CV, 2016 Tex. App. LEXIS 442 (Tex. App.—Dallas Jan.
  14, 2016, pet. denied)............................................................................................................9

*Hunter v. Bryant*,
   502 U.S. 224 (1991)...............................................................................................2

*IBP, Inc. v. Klumpe*,
   101 S.W.3d 461 (Tex. App.—Amarillo 2001, pet. denied)......................................9

*JJJJ Walker LLC v. Yollick*,
   447 S.W. 3d 453 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) ...............7, 8

*Katrina Canal Breaches Litig. v. U.S.*,
   616 Fed. Appx. 659 (5th Cir. 2015).......................................................................1

*United States ex rel. King v. Univ. of Tex. Health Sci. Ctr.*,
   544 Fed. Appx. 490 (5th Cir. 2013).......................................................................1

*LJH, Ltd. v. Jaffe*,
   No. 4:15-CV-639, 2016 U.S. Dist. LEXIS 89231 (E.D. Tex. July 11, 2016) ..................4, 8

*McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*,
   991 S.W.2d 787 (Tex. 1999)...................................................................................7

*McGee v. CTX Mortg. Co., LLC*,
   No. 3:15-CV-1746, 2015 U.S. Dist. LEXIS 154850 (N.D. Tex. Nov. 16, 2015)..................9

*Morgan v. Plano ISD*,
   724 F.3d 579 (5th Cir. 2013) ..................................................................................1

*Poole v. Houston & T.C. Ry. Co.*,
   58 Tex. 134 (Tex. 1882) .........................................................................................6

*Rawhide Mesa-Partners, Ltd. v. Brown McCarroll, L.L.P.*,
   344 S.W.3d 56 (Tex. App.—Eastland 2011, no pet.) ..............................................9

*Reagan Nat. Advert. of Austin, Inc. v. Hazen*,
   No. 03-05-00699-CV, 2008 WL 2938823 (Tex. App.—Austin July 29, 2008,
   no pet.) ...................................................................................................... *passim*

*Rodriguez v. Christus Spohn Health Sys. Corp.*,
   628 F.3d 731 (5th Cir. 2010) ..................................................................................1

*Sacks v. Hall*,
   No. 01-13-00531-CV, 2014 Tex. App. LEXIS 12570 (Tex. App.—Houston
   [1st Dist.] Nov. 20, 2014, no pet.) .........................................................................9

*Sax v. Votteler*,
   648 S.W.2d 661 (Tex. 1983)..................................................................................10

iv

*Smith v. Bank of Am. Corp.*,
 No. A-13-CV-0193, 2016 U.S. Dist. LEXIS 81 (W.D. Tex. Jan. 4, 2016) ..............................8

*Smith v. Sewell*,
 858 S.W.2d 350 (Tex. 1993)..................................................................................................10

*Estate of Stonecipher v. Estate of Butts*,
 686 S.W.2d 101 (Tex. 1985)....................................................................................................6

*Trinity Settlement Servs., LLC v. Tex. State Sec. Bd.*,
 417 S.W.3d 494 (Tex. App.—Austin 2013, pet. denied)........................................................11

*Troice v. Proskauer Rose, L.L.P.*,
 816 F.3d 341 (5th Cir. 2016) ...............................................................................................2, 3

*Williamson v. Wells Fargo Bank, N.A.*,
 No. 6:16-CV-200, 2016 U.S. Dist. LEXIS 74059 (E.D. Tex. Apr. 29, 2016)..........................8

*Wyles v. Cenlar FSB*,
 No. 7-15-CV-155, 2016 U.S. Dist. LEXIS 52795 (W.D. Tex. Apr. 20, 2016) ..................8, 11

## Constitutions, Statutes, and Rules

FED. R. CIV. P. 5(b)(2)(D) ..........................................................................................................12

FED. R. CIV. P. 12(b)(1)............................................................................................................1, 2

FED. R. CIV. P. 12(c) ....................................................................................................................2

NO. DIST. TEX. LOC. R. 5.1........................................................................................................12

TEX. CONST. art. I, § 13..............................................................................................................10

TEX. REV. CIV. STAT. art. 581-33(L), (M) .................................................................................10

## Other Authorities

Elaine A. Carlson & Roland Garcia, Jr., *Discretionary Review Powers of the
 Texas Supreme Court*, 50 TEX. B.J. 1201 (Dec. 1987) .............................................................7

Doc. # 1528598

Greenberg Traurig, LLP ("GT") respectfully submits this Reply in support of its Motion to Dismiss For Lack of Subject Matter Jurisdiction, or In the Alternative, for Judgment on the Pleadings [D.E. 203], and in further support of the motion shows as follows:

## I.      Summary

Texas immunizes attorneys from suits by third parties based on the attorneys' discharge of their duty to zealously represent their client.  An attorney should not be forced to choose between his duty of loyalty to the client and some indeterminate obligation to a stranger. Immunity cannot be overcome by mere characterizations of the attorney's conduct as "fraudulent," "wrongful," or "criminal," nor can the policies or caselaw supporting immunity be limited to the context of litigation.  GT is immune from suit by the third-party investors for conduct GT engaged in as part of discharging its duties to Stanford and the Stanford entities.

## II.      GT's procedural basis for challenge is proper

Plaintiffs' Response does not address the caselaw cited in GT's motion explaining that state-law immunities from suit deprive the Court of subject-matter jurisdiction.  *Morgan v. Plano ISD*, 724 F.3d 579, 584 (5th Cir. 2013); *Carty v. State Office of Risk Mgmt.*, 733 F.3d 550, 553 (5th Cir. 2013).  Relying solely on caselaw discussing qualified immunity, Plaintiffs ignore these and countless other decisions from the Fifth Circuit addressing immunity from suit in the context of a 12(b)(1) motion.[1]

---

[1] *See, e.g., Barber v. United States*, No. 15-60614, 2016 U.S. App. LEXIS 5812, *2, 7-8 (5th Cir. Mar. 30, 2016) (per curiam) (affirming dismissal Federal Tort Claims Act claims pursuant to governmental immunity from suit raised by Rule 12(b)(1) motion); *Katrina Canal Breaches Litig. v. U.S.,* 616 Fed. Appx. 659, 660, 661 (5th Cir. 2015) (per curiam) (affirming dismissal of claims under Federal Tort Claims Act pursuant to governmental immunity from suit raised by Rule 12(b)(1) motion); *United States ex rel. King v. Univ. of Tex. Health Sci. Ctr.,* 544 Fed. Appx. 490, 499 (5th Cir. 2013) (affirming dismissal of False Claims Act claim under Rule 12(b)(1) based upon Eleventh Amendment immunity from suit); *Rodriguez v. Christus Spohn Health Sys. Corp.*, 628 F.3d 731, 733 (5th Cir. 2010) (analyzing state-law governmental immunity on 12(b)(1) motion).

Plaintiffs argue that GT's immunity cannot be urged in a Rule 12(b)(1) motion but, significantly, have not challenged GT's reliance on Rule 12(c), nor have Plaintiffs suggested that a different standard applies to this Court's consideration of the attorney-immunity question under 12(c). Likewise, they do not dispute that attorney immunity, as an immunity from suit, should be resolved "at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991); *see also Troice v. Proskauer Rose, L.L.P.*, 816 F.3d 341, 346 (5th Cir. 2016) ("[A]ttorney immunity is properly characterized as a true immunity from suit, not as a defense to liability."). Finally, Plaintiffs do not dispute that this question can be resolved on the complaint; they do not contend that further discovery is needed to decide these issues. Thus, even if the Plaintiffs were correct that attorney immunity does not implicate subject-matter jurisdiction, the Court's resolution of this question on the merits should be the same.

### III.      Attorney immunity requires dismissal of the investors' third-party claims

Attorney immunity protects lawyers when they perform "the kind of conduct in which an attorney engages when discharging his duties to his client," *Troice*, 816 F.3d at 348 (quoting *Cantey Hanger*, 467 S.W.3d at 482), or conduct "involving" (not necessarily *requiring*) "'the office, professional training, skill, and authority of an attorney,'" *Reagan Nat. Advert. of Austin, Inc. v. Hazen*, No. 03-05-00699-CV, 2008 WL 2938823, at *8 (Tex. App.—Austin July 29, 2008, no pet.) (quoting *Miller v. Stonehenge/Fasa-Texas, JDC, L.P.*, 993 F. Supp. 461, 464 (N.D. Tex. 1998)). In *Troice* the Fifth Circuit held that attorney immunity applied to allegations that an attorney (1) sent a letter to the SEC arguing that the SEC did not have jurisdiction; (2) communicated with the SEC about its document requests and about Stanford Financial's legitimacy; (3) stated that certain Stanford executives would be more informative deponents than others; and (4) represented a Stanford executive during a deposition. *Troice*, 816 F.3d at 348.

2

The Fifth Circuit described these acts as "classic examples" of attorney conduct in representing his client and held that immunity barred the investor claims. *Id.*

*Troice* compels dismissal of this case as well. Plaintiffs complain of conduct GT performed as part of its duties to its clients and not foreign to the office of an attorney. All of the acts Plaintiffs identify in their Response [D.E. 204, p. 15 of 31] are things Loumiet did *as counsel* and, stripped of Plaintiffs' characterizations, are typical of the kinds of acts attorneys perform.[2] *See Complaint* [D.E. 1] ¶¶ 66-68, 106, 115, 117, 207 (assisting with loans and with purchase of insolvent bank); ¶¶ 74-75 (sending letters to OCC); ¶¶ 91, 93-95, 179-81 (negotiating with regulators in Florida and obtaining letters of support); ¶¶ 98, 134 (making FOIA inquiries); ¶ 132 (sending letter to ambassador to complain of treatment of Stanford); ¶¶ 143-53 (assisting and advising Antiguan government officials with proposed legislation); ¶ 164 (advising Stanford regarding Foreign Corrupt Practices Act); ¶¶ 165-85 (assisting with establishment of representative trust offices and advising Stanford of legal parameters of operation); ¶¶ 188, 194 (writing letters to regulators). Just as the circuit court found in *Troice*, the conduct Plaintiffs allege is precisely the kind of conduct an attorney engages in when discharging duties to the client; accordingly, GT is immune from suit by these third-party investor plaintiffs.

Even if the Complaint alleged actions by Loumiet that were outside of the scope of legal representation, which is denied, GT is immune because Plaintiffs assert that "Loumiet was acting within the course and scope of his respective employments with Greenberg and Hunton, and in furtherance of said law firms' respective businesses" [D.E. 1, ¶ 459]. In a case with similar allegations, the court declined to dismiss claims against an individual lawyer based on

---

[2] Many of the paragraphs Plaintiffs cite to do not purport to be "acts" taken by GT, but rather are recitals of events that Plaintiffs assert show GT had knowledge of.

allegations that he acted as an owner of one of the parties in the disputed transaction.  But the law firm was dismissed on immunity because, if its actions "[were] involved in the transaction at all, its actions were purely those of legal representation, which must be protected…"  *LJH, Ltd. v. Jaffe*, No. 4:15-CV-639, 2016 U.S. Dist. LEXIS 89231, *21-22 (E.D. Tex. July 11, 2016).

## A.     Attorney Immunity Protects All Attorneys, Not Just Litigators.

Neither the policies behind the attorney-immunity doctrine nor the vast majority of Texas cases interpreting it suggest that the attorney immunity doctrine is limited to the litigation context.  "[W]hile it is true that many of the cases addressing the attorney-immunity doctrine arise in the context of pending litigation, neither the case law, nor the doctrine's underlying policy rationales, are limited to that setting." *Reagan*, 2008 WL 2938823, at *8.  The attorney-immunity doctrine is based on the fundamental principle that Texas attorneys have a duty to zealously represent their clients, and this duty applies just as much to transactional attorneys as it does to litigators. *Hanna v. Niemann*, No. 03-98-00708-CV, 1999 WL 394894, at *3 (Tex. App.—Austin June 17, 1999, pet. denied) (citing Texas Rules of Professional Conduct).  In *Cantey Hanger*, the Texas Supreme Court recognized that the attorney-client relationship requires that attorneys be given latitude to pursue their clients' interests without being forced to balance their own potential exposure to third parties. *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 479 (Tex. 2015).  Thus, the court held that a law firm was immune if "its alleged conduct was within the scope of its legal representation [of the client]," regardless of whether the conduct was "fraudulent" or "wrongful." *Id.* at 484–85.

Plaintiffs suggest instead that attorneys are only protected for zealously representing their clients in litigation, and not in their roles as "legal counselor, advisor, negotiator, or intermediary," or the many other functions calling for the training and office of an attorney.

*Hanna*, 1999 WL 394894, at \*3.  Yet Plaintiffs fail to explain why this limitation is consistent with the justifications underlying the doctrine as outlined by the Texas Supreme Court; instead they rely primarily on a *dissent* from the Texas Supreme Court and cite the Texas Supreme Court's denial of a petition for review as authority for this limitation.

Plaintiffs' assertion that neither *Cantey Hanger* nor *Troice* "held that attorney immunity extends beyond conduct occurring in litigation," misses the point: *Cantey Hanger* didn't need to address a dichotomy between litigation or non-litigation conduct because that dichotomy has nothing to do with the test the *Cantey Hanger* majority adopted.  But in fact the Texas Supreme Court has already indicated that attorney immunity should apply outside the context of litigation: in *Chu v. Hong*, the court explained in dicta that it was "especially reticent to open the door to [third-party] claims here against an opposing party's attorney" in the context of purely transactional work.  249 S.W.3d 441, 446 (Tex. 2008).  The attorney in *Chu* was sued for representing the purchaser in a business sale, even though the attorney knew that the other party was selling the business to defraud his wife.  *Id.* at 443.  Plaintiffs candidly acknowledge the court's reasoning: "the buyer's attorney had a fiduciary duty to further the best interests of his client, the buyer, and imposing on him a second duty to the sellers 'would inevitably conflict with the first.'"  *Response at 8* (quoting *Chu*, 249 S.W.3d at 446).  Immunity, in other words, serves the valuable function of allowing an attorney to zealously represent clients even outside the context of litigation, shielding lawyers from having to weigh the primary duty to their clients against secondary duties to non-clients.[3]

---

[3] Plaintiffs suggest that *Chu* stands for the idea that attorneys are not "immune to suit for fraudulent acts undertaken in the representation of a client," *Response at 8*, but this "fraud exception" is precisely the argument the Texas Supreme Court rejected in *Cantey Hanger*.  Nothing in *Chu* suggests that a fraud exception is more applicable in transactional work; after all, *Chu* described the need to guard against conflicting duties *in the context of a transaction*.

5

Plaintiffs suggest that pre-*Cantey* decisions by the Texas Supreme Court limited the attorney-immunity doctrine to the litigation context, but these decisions stand for nothing of the sort. The first decision cited, *Estate of Stonecipher v. Estate of Butts*, 686 S.W.2d 101 (Tex. 1985), did not even involve conduct by an attorney, which is why the decision never mentions the attorney-immunity doctrine.[4]

Plaintiffs' next citation, *Poole v. Houston & T.C. Ry. Co.*, 58 Tex. 134 (Tex. 1882), involved an attorney who helped his clients conceal assets by: (1) having the clients fraudulently assign him a bill of lading; (2) presenting the bill and taking possession of the assets himself; and (3) personally changing the label on the assets so that they could be shipped under a different name. *Id.* at 137. Taking possession of goods and changing shipping labels are examples of conduct that do not "involv[e] 'the office, professional training, skill, and authority of an attorney,'" *Reagan*, 2008 WL 2938823, at *8 (quoting *Miller*, 993 F. Supp. at 464), and the Texas Supreme Court accordingly held that this conduct was "entirely foreign to the duties of an attorney." *Poole*, 58 Tex. at 137. This same distinction—an attorney is not immune for *personally* engaging in wrongful conduct not involving the office or training of a lawyer—was acknowledged in *Cantey*, where the Court explained that an attorney would not be immune for personally participating in a fraudulent business scheme or assaulting an opposing party. *Cantey Hanger*, 467 S.W.3d at 482. By contrast, *Cantey* held that an attorney providing legal representation, even with knowledge that the representation would facilitate a fraudulent scheme, was immune from liability to non-clients. *Id.* at 482–83.

---

[4] Plaintiffs state that in this case "an attorney … received title to the client's property before the judgment and then transferred title back to the client after the judgment creditor had ceased trying to collect," *Response at 6*, but the decision reveals that this conduct was actually carried out by a "banker," not a lawyer. *Stonecipher*, 686 S.W.2d at 102.

6

The third case, *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787 (Tex. 1999), involved a unique and narrow cause of action "for negligent misrepresentation where 'an independent duty to the nonclient [arises] based on the [attorney's] manifest awareness of the nonclient's reliance on the misrepresentation and the [attorney's] intention that the nonclient so rely.'"   *Cantey Hanger*, 467 S.W.3d at 483 n.7 (quoting *McCamish*, 991 S.W.2d at 792).   Class Plaintiffs have not pleaded this cause of action here, and their motion does not contend otherwise.   Moreover, *McCamish* carefully circumscribed this cause of action, noting that "imposition of a conflicting duty to a nonclient whose interests are adverse to the client," even outside the context of litigation, could interfere with the attorney's primary duty to represent clients with "undivided loyalty." *McCamish*, 991 S.W.2d at 793–94.

Finally, the Plaintiffs cite *JJJJ Walker LLC v. Yollick*, 447 S.W. 3d 453 (Tex. App.—Houston [14th Dist.] 2014, pet. denied), a case which not only relied on the now-overruled "fraud exception," but actually cited the very decision reversed in *Cantey Hanger*.  *Id.* at 471. Plaintiffs suggest that this Court should rely on *JJJJ Walker* anyway because the Texas Supreme Court declined to review and reverse that decision, a theory with no support in Texas law: because review is discretionary, no import can be attributed to the Texas Supreme Court's denial of a petition for review.  *Alamo Comm. College Dist. v. Obayashi Corp.*, 980 S.W.2d 745, 749 (Tex. App.—San Antonio 1998, pet. denied) (denial of review "does not necessarily reflect the court's approval or even its consideration of the merits of the case."); Elaine A. Carlson & Roland Garcia, Jr., *Discretionary Review Powers of the Texas Supreme Court*, 50 TEX. B.J. 1201, 1202 (Dec. 1987).  Moreover, the *JJJJ Walker* Court suggested that because the attorney's wrongful conduct consisted of signing a contract as the agent of a Bank, it did not involve the office or training of an attorney, and thus the attorney "can be held liable for his conduct, just as

any other agent or corporate representative would be."  447 S.W. 3d at 470 ("He is not held to a lower standard than any other agent simply because he also happens to be the principal's attorney.").

While Plaintiffs struggle to extrapolate a principle from these inapposite cases limiting attorney immunity to litigation, they fail to address the federal and state cases cited in GT's motion *expressly stating* that the doctrine is not so limited.  *See, e.g.*, *Reagan*, 2008 WL 2938823, at *8 ("[W]hile it is true that many of the cases addressing the attorney-immunity doctrine arise in the context of pending litigation, neither the case law, nor the doctrine's underlying policy rationales, are limited to that setting."); *Hanna*, 1999 WL 394894, at *3 ("[A]n attorney's qualified privilege relates to her representation of a client, regardless of whether the conduct is in the context of pending litigation."); *Alpert v. Riley*, No. H-04-CV-3774, 2008 WL 304742, at *17 (S.D. Tex. Jan. 31, 2008) ("Texas cases do not limit an attorney's protection against liability to actions taken in the course of representing a client in litigation and the basis for the decisions applies to the provision of legal services outside the litigation context.").  Nor do Plaintiffs attempt to grapple with the significant body of caselaw applying the doctrine outside the litigation context, especially after *Cantey Hanger*.  *See, e.g., LJH, Ltd.,* 2016 U.S. Dist. LEXIS 89231, *1-2 (law firm immune for transactional work involving purchase of oil fracking equipment and real estate); *Williamson v. Wells Fargo Bank, N.A.,* No. 6:16-CV-200, 2016 U.S. Dist. LEXIS 74059, *6-8 (E.D. Tex. Apr. 29, 2016) (law firm immune for assisting client with non-judicial foreclosure); *Wyles v. Cenlar FSB,* No. 7-15-CV-155, 2016 U.S. Dist. LEXIS 52795, *10-11 (W.D. Tex. Apr. 20, 2016) (law firm immune from suit for conduct relating to foreclosure sale); *Smith v. Bank of Am. Corp.,* No. A-13-CV-0193, 2016 U.S. Dist. LEXIS 81, *3-4, 5 (W.D. Tex. Jan. 4, 2016) (attorneys immune for assisting clients with filing of

8

allegedly fraudulent lien documents); *McGee v. CTX Mortg. Co., LLC,* No. 3:15-CV-1746, 2015 U.S. Dist. LEXIS 154850, *4-5 (N.D. Tex. Nov. 16, 2015) (law firm immune for assisting client to institute non-judicial foreclosure proceedings); *Boswell v. Ector Cnty. ISD*, No. 11-15-00013-CV, 2016 Tex. App. LEXIS 3677, *10 (Tex. App.—Eastland Apr. 7, 2016, n.p.h.) (school district's attorneys immune for conduct relating to plaintiff's alleged wrongful termination).

**B.     There is no crime exception after *Cantey Hanger*.**

Plaintiffs incorrectly assert that there is "[no] indication the [*Cantey Hanger*] plaintiff ever invoked the crime exception" or that the attorney's conduct "rose to the level of criminal activity" DE 204, at 17 (resp. p.10).  Plaintiffs' effort to *recast* the conduct described in their complaint as also potentially criminal conduct has been rejected by Texas courts. *See Highland Capital Mgmt., LP v. Looper Reed & McGraw, P.C.,* No. 05-15-00055-CV, 2016 Tex. App. LEXIS 442, *15 (Tex. App.—Dallas Jan. 14, 2016, pet. denied) (rejecting Highland's characterization of conduct as "criminal" as a means to overcome immunity).[5]  Plaintiffs are

---

[5]  The cases Plaintiffs cite (at 9-10) focus on whether the attorney's conduct was within the scope of representation and do not provide any basis for a "crime exception" to attorney immunity following *Cantey Hanger*.  For example, under the "unusual facts" presented in *IBP*, the court held that attorney immunity did not cover IBP's claims against an attorney arising out of an IBP employee's alleged misappropriation of confidential documents from IBP because IBP made particularized allegations about the attorney's complicity in the illegal misappropriation that fell outside the scope of the attorney's representation of the client.  *See IBP, Inc. v. Klumpe*, 101 S.W.3d 461, 476 (Tex. App.—Amarillo 2001, pet. denied).  The *IBP* decision confirms that whether attorney immunity (or, in that case, the litigation privilege) applies, "the focus is on whether the offending conduct occurred in the context of the attorney's discharge of his duties to his client in an adversarial proceeding; the focus was not on whether the conduct was 'criminal' in nature."  *Sacks v. Hall,* No. 01-13-00531-CV, 2014 Tex. App. LEXIS 12570, *35 (Tex. App.—Houston [1st Dist.] Nov. 20, 2014, no pet.).

In *Gaia*, the court affirmed the dismissal of claims against an attorney on immunity grounds, concluding that the attorney's alleged conduct took place in the course of client representation.  *Gaia Envtl., Inc. v. Galbraith*, 451 S.W.3d 398, 403-08 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *see also Rawhide Mesa-Partners, Ltd. v. Brown McCarroll, L.L.P.*, 344 S.W.3d 56, 60-62 (Tex. App.—Eastland 2011, no pet.) (addressing the fraud, rather than crime, exception and holding that the claims asserted against the attorneys were properly dismissed on attorney immunity grounds); *Reagan Nat'l Advertising*, 2008 WL 2938823 at *9-10 (affirming summary judgment based on attorney immunity and rejecting plaintiff's arguments to apply an exception based on fraud or crime).

wrong.   The *Cantey Hanger* opinion makes clear that attorney immunity applies to *any* "wrongful" conduct regardless of how it is labeled.   The opinion and briefs in *Cantey Hanger* establish that the court considered and rejected any exception for alleged crime.

Cantey Hanger "moved for summary judgment, arguing that it was immune from liability to a non-client for conduct within the scope of representation of its client in the divorce proceedings."   467 S.W.3d at 479.   Plaintiffs asserted that Cantey Hanger conspired with its client to falsify documents and evade tax liability, which plaintiffs characterized as "wrongful." *Id.* at 480.   Throughout their Texas Supreme Court briefing, the plaintiffs elaborated, characterizing Cantey Hanger's conduct as "fraudulent and illegal," and a criminal evasion of State and Federal taxes. *Respondents' Brief on the Merits* at 8, 10, 17, 25-26, 26, 27, 34-35, 35, 43, *Cantey Hanger, LLP v. Byrd,* 467 S.W.3d 477 (Tex. 2015) (No. 13-0861).

## C.   The TSA does not overrule common-law attorney immunity.

Statutes such as the TSA are not to be extended beyond the plain language of the statute to negate rights the legislature has not expressly addressed.   *Cash Am. Int'l, Inc. v. Bennett*, 35 S.W.3d 12, 16 (Tex. 2000); *Smith v. Sewell*, 858 S.W.2d 350, 354 (Tex. 1993).   Plaintiffs point to no language in the TSA that forecloses application of attorney immunity to a TSA claim. Further, before the Court may construe the TSA to bar the defense of attorney immunity, the Court must ensure that the legislature intended to do so.   *Energy Serv. Co. of Bowie, Inc. v. Superior Snubbing Servs.*, 236 S.W.3d 190, 194 (Tex. 2007).   Plaintiffs point to no legislative history showing an intent to foreclose the defense of attorney immunity.[6]   By contrast, the legislature expressly foreclosed the common-law affirmative defense of waiver.   *See* Tex. Rev.

---

[6] From a state constitutional standpoint, the legislature cannot abrogate a common-law right without a proper supporting legislative basis. *See* Tex. Const. art. I, § 13 (open courts); *Sax v. Votteler*, 648 S.W.2d 661, 665-66 (Tex. 1983); *Dillingham v. Putnam*, 14 S.W. 303, 304 (Tex. 1890) (open courts guarantee applies to defendants and plaintiffs alike).

Doc. # 1528598

Civ. Stat. art. 581-33(L), (M).  Clearly, the legislature knew how to foreclose common-law defenses and it knew how to limit defenses in the TSA if and when it wished to.

Plaintiffs cite no Texas authority holding that TSA forecloses the attorney immunity defense.  Instead, Texas courts have held that immunities can bar claims under the TSA and other statutes despite the enumeration of specific defenses under those statutes.  *See, e.g., Trinity Settlement Servs., LLC v. Tex. State Sec. Bd.*, 417 S.W.3d 494, 503 (Tex. App.—Austin 2013, pet. denied) (sovereign immunity bars statutory claims seeking a declaration of rights under the TSA); *Wyles v. Cenlar FSB*, No. 7-15-cv-155-DAE, 2016 WL 1600245, at *5 (W.D. Tex. Apr. 20, 2016) (attorney immunity bars claims asserted under the Texas Debt Collection Practices Act).  In short, there is no basis for holding that the TSA bars the attorney immunity defense.

## IV.    Conclusion and Prayer

GT is immune from suit by the third-party investors because the conduct complained of was undisputedly performed in the course and scope of discharging duties to its clients.  The investor-plaintiffs may have claims against Stanford but cannot sue GT.  Accordingly, the Court should grant GT's motion to dismiss for lack of subject matter jurisdiction, or alternatively, grant the motion to dismiss on the pleadings.

Doc. # 1528598

Respectfully submitted,

By: /s/ Jim E. Cowles

**JIM E. COWLES**
Texas Bar No. 04931000
jcowles@cowlesthompson.com
**SIM ISRAELOFF**
Texas Bar No. 10435380
sisraeloff@cowlesthompson.com
**R. MICHAEL NORTHRUP**
Texas Bar No. 15103250
mnorthrup@cowlesthompson.com
**COWLES & THOMPSON, P.C.**
901 Main Street, Suite 3900
Dallas, TX 75202
(214) 672-2000 (Tel)
(214) 672-2301 (Fax)

**ATTORNEYS FOR DEFENDANT
GREENBERG TRAURIG, LLP**

### CERTIFICATE OF SERVICE

The undersigned certifies that on the 20th day of July, 2016, a true and correct copy of the foregoing document was delivered via electronic means pursuant to FED. R. CIV. P. 5(b)(2)(D) and Local Rule 5.1, to all counsel of record.

/s/ Sim Israeloff_____
**SIM ISRAELOFF**

12