## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| RALPH S. JANVEY, in his capacity as court-appointed receiver for the Stanford receivership estate; The OFFICIAL STANFORD INVESTORS COMMITTEE; PAM REED; SAMUEL TROICE; and MICHOACAN TRUST; individually and on behalf of a class of all others similarly situated, | § § § § § § § § § | |
| Plaintiffs. | § § | CIVIL ACTION NO. 3:12-cv-04641-N |
| vs. | § § | |
| GREENBERG TRAURIG, LLP; HUNTON & WILLIAMS, LLP;  and YOLANDA SUAREZ, | § § § § | |
| Defendants. | § | |

---

## HUNTON & WILLIAMS LLP'S REPLY IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS ON CLAIMS BY NON-CLIENTS

---

Jeffrey D. Colman
David Jiménez-Ekman
Andrew W. Vail
April A. Otterberg
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654-3456
jcolman@jenner.com
(312) 923-2940 (Telephone)
(312) 840-7340 (Facsimile)

*Admitted* Pro Hac Vice

Richard A. Sayles
Shawn Long
SAYLES WERBNER
4400 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270
dsayles@swtriallaw.com
(214) 939-8701 (Telephone)
(214) 939-8787 (Facsimile)

*Counsel for Hunton & Williams LLP*

## ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................................ ii

INTRODUCTION ......................................................................................................................... 1

ARGUMENT ................................................................................................................................. 2

I.     Plaintiffs Do Not Dispute That The Texas Attorney Immunity Doctrine Bars Claims
       Against Attorneys Asserted By Non-Clients. ..................................................................... 2

II.    Plaintiffs Fail To Show That Any Exceptions To Texas's Attorney Immunity
       Doctrine Exist Or Apply Here. .......................................................................................... 2

       A.     Texas Law And Policy Do Not Support Plaintiffs' "Non-Litigation Conduct"
              Exception To Attorney Immunity. ......................................................................... 2

       B.     Plaintiffs Cannot Overcome Immunity By Attempting To Relabel Hunton's
              Alleged Conduct As "Criminal." ........................................................................... 5

       C.     Plaintiffs Fail To Demonstrate Their TSA Claims Are Somehow Exempt
              From Attorney Immunity. ....................................................................................... 8

III.   Plaintiffs Do Not Overcome The Application Of The Attorney Immunity Doctrine
       To The OSIC's Claims And Portions Of The Receiver's Claims. ..................................... 9

       A.     Attorney Immunity Bars The OSIC's Claims. ........................................................ 9

       B.     Attorney Immunity Bars Portions Of The Receiver's Claims. ............................... 9

IV.    Attorney Immunity Deprives This Court Of Subject-Matter Jurisdiction. ....................... 10

CONCLUSION ............................................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477 (Tex. 2015)................................................... passim

*Essex Crane Rental Corp. v. Carter*, 371 S.W.3d 366 (Tex. App.—Houston [1st Dist.]
   2012, pet. denied)..........................................................................................................3

*Gaia Envt'l, Inc. v. Galbraith*, 451 S.W.3d 398 (Tex. App.—Houston [14th Dist.] 2014,
   no pet.) ...........................................................................................................................7

*Hanna v. Niemann*, No. 03-98-00708-CV, 1999 WL 394894 (Tex. App.—Austin
   June 17, 1999, pet. denied) ...........................................................................................5

*Highland Cap. Mgmt., LP v. Looper Reed & McGraw, P.C.*, No. 05-15-00055-CV,
   2016 WL 164528 (Tex. App.—Dallas Jan. 14, 2016, pet. denied) ...........................6

*Horton v. M & T Bank*, 2013 WL 6172145 (N.D. Tex. Nov. 22, 2013)...........................5

*IBP, Inc. v. Klumpe*, 101 S.W.3d 461 (Tex. App.—Amarillo 2001, pet. denied) .........7

*JJJJ Walker v. Yollick*, 447 S.W.3d 453, 469-70 (Tex. App.—Houston [14th Dist.] 2014,
   pet. denied)....................................................................................................................3

*Lassberg v. Bank of Am. N.A.*, 2016 WL 4446074 (5th Cir. Aug. 23, 2016) .................3

*Likover v. Sunflower Terrance II, Ltd.*, 696, S.W.2d 468, 472 (Tex. App.-Houston
   [1st Dist.] 1985, no writ).............................................................................................4

*McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787
   (Tex. 1999)....................................................................................................................4

*McGee v. CTX Mortg. Co., LLC*, No. 3:15-CV-1746, 2015 U.S. Dist. LEXIS 154850
   (N.D. Tex. Nov. 16, 2015) ...........................................................................................3

*Poole v. H. & T.C.R. Co.*, 58 Tex. 134 (1882).........................................................4, 7

*Querner v. Rindfuss*, 966 S.W.2d 661 (Tex. App.—San Antonio 1998, pet. denied)............ 3-4, 7

*Rawhide Mesa-Partners, Ltd. v. Brown McCarroll, LLP*, 344 S.W.3d 56
   (Tex. App.—Eastland 2011, no pet.) ...........................................................................7

*Reagan Nat'l Advertising of Austin, Inc. v. Hazen*, No. 03-05-00699, 2008 WL 2938823
   (Tex. App.—Austin 2008, no pet.) ...............................................................................7

*Sacks v. Hall*, 2014 WL 6602460 (Tex. App.—Houston [1st Dist.] Nov. 20, 2014,
 no pet.) ........................................................................................................................6, 7

*Santiago v. Mackie Wolf Zientz & Mann, P.C.*, No. 05-13-00620-CV,
 2014 Tex. App. LEXIS 9165 (Tex. App.—Dallas 2014, pet. denied).....................................4

*Stonecipher v. Estate of Butts*, 686 S.W.2d 101 (Tex. 1985) ..........................................................4

*Toles v. Toles*, 113 S.W.3d 899 (Tex. App.—Dallas 2003, no pet.)...........................................4, 7

*Troice v. Proskauer Rose, LLP*, 816 F.3d 341 (5th Cir. 2016)................................................1, 7, 8

**STATUTES**

TEX. REV. CIV. STAT. art. 581-33M .............................................................................................8

**OTHER AUTHORITIES**

*Preamble: A Lawyer's Responsibilities*, TEX. DISCIP. R. OF PROF'L CONDUCT .............................5

## INTRODUCTION

In its opening brief, Hunton & Williams LLP ("Hunton") demonstrated that this Court should dismiss all claims asserted by Class Plaintiffs and the OSIC, and portions of the claims asserted by the Receiver, because those claims are barred by Texas's attorney immunity doctrine. (Mot. 6-21 [ECF 207].)  In response, Plaintiffs do not contest that attorney immunity bars claims asserted by non-clients based on an attorney's conduct within the scope of representing a client. (*See* Pls.' Resp. 1-2 [ECF 214].)  Instead, as Hunton anticipated in its opening brief, Plaintiffs ask this Court to create "exceptions" to the attorney immunity doctrine as a last-ditch attempt to save their claims.  (*See id.* 3-21.)

None of Plaintiffs' supposed "exceptions" exist under Texas law or policy.  *First*, attorney immunity is not limited to litigation-related conduct, nor should it be, given Texas's policy of encouraging all lawyers to zealously represent their clients.  (Part II.A, below.)  *Second*, Plaintiffs cannot save their claims by inventing a "criminal conduct" exception and using their response brief to try to amend their Complaint to plead into that non-existent exception.  (Part II.B, below.)  *Third*, Plaintiffs' attempt to carve out their claims under the Texas Securities Act ("TSA") also fails because, among other things, the Fifth Circuit in *Troice v. Proskauer Rose, LLP*, 816 F.3d 341 (5th Cir. 2016), held that Texas's attorney immunity doctrine is a true immunity from suit, making immunity a common-law right preserved under the TSA.  (Part II.C, below.)

Plaintiffs also fail to overcome Hunton's showing that attorney immunity bars (1) all of the OSIC's claims, and (2) the Receiver's claims to the extent they are asserted on behalf of Stanford entities that Hunton did not represent, or are based on Hunton's legal services rendered to Allen Stanford, personally.  (Part III, below.)  For all of these reasons, the Court should grant Hunton's motion and dismiss Plaintiffs' non-client claims, with prejudice.

## ARGUMENT

**I.   Plaintiffs Do Not Dispute That The Texas Attorney Immunity Doctrine Bars Claims Against Attorneys Asserted By Non-Clients.**

Hunton demonstrated (Mot. 6-8), and Plaintiffs do not dispute (*see* Resp. 1-2), that Texas's attorney immunity doctrine applies broadly to bar claims by non-clients that are based on conduct that an attorney takes within the scope of representing a client.   Nor do Plaintiffs respond to Hunton's showing about the implications of their *respondeat superior* theory of liability (Mot. 11-13), which restricts Plaintiffs' claims to activities Hunton lawyers performed in furtherance of Hunton's business of providing legal services as a law firm.   (*Id.*)   Plaintiffs' claims thus directly implicate exactly the type of attorney conduct representing a client that falls within the heart of Texas's attorney immunity doctrine.   *See Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481-482 (Tex. 2015).

**II.   Plaintiffs Fail To Show That Any Exceptions To Texas's Attorney Immunity Doctrine Exist Or Apply Here.**

Plaintiffs seek to save their claims by manufacturing three "exceptions" to the attorney immunity doctrine (*see* Resp. 3-21), none of which are viable under Texas law or applicable here.

**A.   Texas Law And Policy Do Not Support Plaintiffs' "Non-Litigation Conduct" Exception To Attorney Immunity.**

Plaintiffs spend much of their brief arguing that attorney immunity is limited to attorney conduct that occurs in litigation.   (Resp. 3-8.)   But Texas caselaw does not support that kind of broad limitation.   (*See* Mot. 16-19 (discussing cases).)   In *Cantey Hanger*, the Texas Supreme Court instructed courts to determine whether immunity applies by examining whether the alleged wrongful attorney conduct occurred within the "scope of client representation."   467 S.W.3d at 483.   Although the court in *Cantey Hanger* found it unnecessary to consider whether the immunity

applies outside the litigation context (*id.* at 482 n.6), its analysis and Texas precedent demonstrate that the immunity doctrine applies here, whether the conduct occurred in litigation or not.

Plaintiffs' attempt to restrict immunity involves doing what the court expressly rejected in *Cantey Hanger* (*see* Resp. 3-5)—using artificial labels to decide what attorney conduct is immune from suit, 467 S.W.3d at 483. *Cantey Hanger* is clear that "[m]erely labeling an attorney's conduct 'fraudulent' does not and should not remove it from the scope of client representation or render it 'foreign to the duties of an attorney.'" *Id.* The same is true about Plaintiffs' proposed "litigation" limitation, which would "significantly undercut the [attorney immunity] defense," and expose a subset of lawyers—non-litigators—to liability to non-clients merely for "discharging [their] duties to [their] client[s]." *See id.* Texas law does not support such a result. Rather, Texas courts— before and after *Cantey Hanger*—regularly immunize attorney conduct occurring outside of litigation. (Mot. 16-19 (citing cases)); *see also Lassberg v. Bank of Am. N.A.*, No. 15-40196, 2016 WL 4446074, at *3 & n.12 (5th Cir. Aug. 23, 2016); *McGee v. CTX Mortg. Co., LLC*, No. 3:15-CV-1746, 2015 U.S. Dist. LEXIS 154850, at *4-5 (N.D. Tex. Nov. 16, 2015).

The cases Plaintiffs cite in their response brief do not support Plaintiffs' position that attorneys are liable for "fraudulent conduct occurring outside of litigation." (*See* Resp. 4.) For example, in *JJJJ Walker v. Yollick* (cited Resp. 4, 5 n.4), the court declined to apply immunity because it held that the attorney in question undertook allegedly wrongful conduct as an "agent" for his client, rather than "rel[ying] on his professional knowledge and training as an attorney . . . in the course of representing his client." 447 S.W.3d 453, 469-70 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). The court in *Essex Crane Rental Corp. v. Carter* held that immunity did not apply because it determined the plaintiffs' claims were *not* based on "lawful actions within the scope of [the attorney defendants'] professional duty to represent [their clients]." 371 S.W.3d 366, 382 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) (cited Resp. 4-5). *Querner v. Rindfuss*,

3

966 S.W.2d 661, 666 (Tex. App.—San Antonio 1998, pet. denied) (cited Resp. 5) relies on a

"fraudulent conduct" exception to immunity, and thus is no longer good law after *Cantey Hanger*.

    *Cantey Hanger* also expressly *rejected* the kind of immunity analysis undertaken in several

of the cases Plaintiffs cite.  *See* 467 S.W.3d at 483.  Plaintiffs cite multiple times to *Poole v. H. &*

*T.C.R. Co.*, 58 Tex. 134, 137-38 (1882) (Resp. 4, 5, 7) for the proposition that attorneys are not

immune for conduct undertaken outside of litigation.  But *Poole* is of questionable authority after

*Cantey Hanger*—something recognized by the *Cantey Hanger* dissenting justices, whose opinion

Plaintiffs repeatedly cite despite its lack of precedential value (Resp. 2, 3, 5).  *Cantey Hanger*, 467

S.W.3d at 491 n.6 (Green, J., dissenting).[1]

    The cases Plaintiffs cite to argue that immunity does not apply when an attorney participates

in a client's "fraudulent business scheme" (Resp. 4-5, 6) also do not support Plaintiffs' non-

litigation exception to immunity or show that Plaintiffs have overcome immunity in this case.  In

those cases, the "participation" that eliminates attorney immunity occurs only when the attorney

engages in direct and knowing actions that *never* could be legitimate legal services.  *See, e.g.*,

*Santiago*, 2014 Tex. App. LEXIS 9165, at *5 (cited Resp. 4) (attorney participated in the actual

fraud by knowingly producing and presenting a counterfeit note).[2]  Here, however, Hunton's

supposed attorney "participation" in the claimed Stanford fraud consisted solely of legal services

that Hunton allegedly provided.  (*See* Resp. 6-7.)  Plaintiffs seek to hold Hunton liable for how

---

[1] Two other cases Plaintiffs cite, *Likover v. Sunflower Terrance II, Ltd.*, 696, S.W.2d 468, 472 (Tex. App.-Houston [1st Dist.] 1985, no writ) and *Santiago v. Mackie Wolf Zientz & Mann, P.C.*, No. 05-13-00620-CV, 2014 Tex. App. LEXIS 9165, at *6 (Tex. App.—Dallas 2014, pet. denied) (both cited Resp. 4), rely on *Poole* or the analysis in *Toles v. Toles*, 113 S.W.3d 899 (Tex. App.—Dallas 2003, no pet.) that was rejected in *Cantey Hanger*.

[2] Two other cases also are inapposite.  *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests* stands for the unremarkable proposition that an attorney may be liable to a third party in limited instances where the attorney owes a duty to that third party.  991 S.W.2d 787, 792 (Tex. 1999).  *Stonecipher v. Estate of Butts* does not involve an attorney in any capacity.  686 S.W.2d 101 (Tex. 1985).  (*See* Resp. 3-5.)

Stanford purportedly misused those legal services, and have admitted that Hunton did not know of the alleged Ponzi scheme. (*See* Mot. 3.) Plaintiffs totally fail to explain how Hunton's alleged legal work is *not* "the kind of conduct in which an attorney engages when discharging his duties to his client," *see Cantey Hanger*, 467 S.W.3d at 483, and that failure dooms their claims.

Plaintiffs' request to exclude non-litigation conduct also contradicts the policy rationale, reaffirmed in *Cantey Hanger*, *id.* at 481-82, underlying the attorney immunity doctrine. The Texas Rules of Professional Conduct recognize that all attorneys—not just litigators—must "zealously pursue clients' interests within the bounds of the law," and that this obligation applies "*[i]n all professional functions.*" *Preamble: A Lawyer's Responsibilities*, TEX. DISCIP. R. OF PROF'L CONDUCT (emphasis added). The immunity doctrine enables lawyers—whatever their area of practice—to fulfill their duties to zealously represent their clients by removing the threat of the vast majority of civil suits from non-clients. *Cantey Hanger*, 467 S.W.3d at 481; *see also Hanna v. Niemann*, No. 03-98-00708-CV, 1999 WL 394894, at *3 (Tex. App.—Austin June 17, 1999, pet. denied) (not designated for publication).

### B.      Plaintiffs Cannot Overcome Immunity By Attempting To Relabel Hunton's Alleged Conduct As "Criminal."

Plaintiffs' proposed "criminal conduct" exception to immunity also does not exist or apply here. (*See* Resp. 8-10.) First and foremost, Plaintiffs seek to use their response brief to amend their Complaint and now assert—for the first time in nearly four years of litigation—that the conduct of former Hunton partner Carlos Loumiet violated a litany of criminal statutes. (*Id.* at 10-17.) Plaintiffs' approach is improper—they cannot amend their Complaint by adding new arguments and purported "facts" in a response brief to a dispositive motion. *See, e.g.*, *Horton v. M & T Bank*, No. 4:13-CV-525-A, 2013 WL 6172145, at *7 (N.D. Tex. Nov. 22, 2013). Equally important, Plaintiffs' new assertions of criminal conduct are simply false. Plaintiffs do not contend—and they

cannot honestly do so—that Hunton, or any of its lawyers, were *ever* investigated, let alone charged, in connection with the Stanford fraud.  (Mot. 20.)   Indeed, the lead AUSA prosecuting Allen Stanford confirmed on the record that "Loumiet has nothing involved – yeah. Loumiet is not a target in Stanford." (Mot. 21 (quoting Gregg Costa, lead prosecutor and now a Fifth Circuit judge, *United States v. Stanford*, Feb. 8, 2012).)   The Court should view Plaintiffs' accusations for what they are—a desperate attempt to avoid dismissal of their defective claims.

Further, Plaintiffs' so-called "crime exception" is nothing more than a restatement of the "fraudulent conduct exception" that was rejected in *Cantey Hanger*.  (*See* Mot. 19-21.)  Hunton demonstrated  in its opening brief that Texas appellate courts have applied attorney immunity even when the plaintiff alleges an attorney committed a crime, as exemplified in cases like *Cantey Hanger* itself, and in *Sacks v. Hall*, No. 01-13-00531-CV, 2014 WL 6602460 (Tex. App.—Houston [1st Dist.] Nov. 20, 2014, no pet.) and *Highland Capital Management, LP v. Looper Reed & McGraw, P.C.*, No. 05-15-00055-CV, 2016 WL 164528 (Tex. App.—Dallas Jan. 14, 2016, pet. denied).  (Mot. 19-20 (citing cases).)

In response, Plaintiffs incorrectly assert that *Cantey Hanger* did not concern potentially criminal attorney conduct (Resp. 8), even though the plaintiffs in that case accused the attorney of aiding a client to falsify documents and evade tax liability, 467 S.W.3d at 480.  Plaintiffs also incorrectly assert (Resp. 9) that *Highland* does not apply—even though the plaintiffs in that case characterized the attorney's actions as involving a "series of criminal acts"—because that court held the attorney's alleged actions were "the kinds of actions that are part of the discharge of an attorney's duties."  2016 WL 164528, at *1, *6.  But that is exactly Hunton's point:  a plaintiff cannot avoid immunity merely by casting attorney conduct as "criminal."  Finally, the *Sacks* court recognized that although some other courts declined to apply immunity where a plaintiff alleged the attorney acted criminally, those cases did not create a "crime exception" to immunity because

they did not turn on "whether the conduct was 'criminal' in nature."  2014 WL 6602460, at *14.

Nor do the other cases that Plaintiffs cite support the existence of any "crime exception" to attorney immunity.  (*See* Resp. 8.)  In all four of the cases Plaintiffs cite—all of which were decided before *Cantey Hanger*—the only authority to suggest a "crime" exception is the same authority those courts relied on for the existence of the "fraudulent conduct" exception that the court rejected in *Cantey Hanger*.  *See IBP, Inc. v. Klumpe*, 101 S.W.3d 461, 475 (Tex. App.—Amarillo 2001, pet. denied) (citing *Poole* and *Querner*, respectively questioned and abrogated by *Cantey Hanger*); *Rawhide Mesa-Partners, Ltd. v. Brown McCarroll, LLP*, 344 S.W.3d 56, 60 (Tex. App.—Eastland 2011, no pet.) (relying on *Toles*, abrogated by *Cantey Hanger*); *Reagan Nat'l Advertising of Austin, Inc. v. Hazen*, No. 03-05-00699, 2008 WL 2938823, at *3 (Tex. App.—Austin 2008, no pet.) (acknowledging only that the fraudulent conduct exception "would apply to criminal conduct as well"); *Gaia Envt'l, Inc. v. Galbraith*, 451 S.W.3d 398, 404 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (relying solely on *Klumpe*, *Rawhide*, and *Reagan*).

Ultimately, Plaintiffs' tactics in this case show that this Court should reject the so-called "crime exception" for the very same reasons the *Cantey Hanger* court rejected a "fraudulent conduct" exception.  Such an exception would only encourage plaintiffs to lob unjustified and meritless accusations against attorneys, as Plaintiffs have here.  Plaintiffs never argued a "crime exception" to immunity in defending against Hunton's prior motion to dismiss.  (*See* Putative Class Resp. to Mot. to Dismiss at 8-13 [ECF 99].)  Only now, after *Cantey Hanger* and *Troice*, do Plaintiffs shift theories and attempt to relabel Hunton's alleged conduct as "criminal," despite the undisputed fact that no governmental body has *ever* accused Hunton or any of its current or former partners of committing *any* crime connected to Allen Stanford.

**C.      Plaintiffs Fail To Demonstrate Their TSA Claims Are Somehow Exempt From Attorney Immunity.**

The Court also should reject Plaintiffs' effort to create a "TSA exception" to immunity. (Resp. 18-21.)  Plaintiffs do not—because they cannot—cite any case in which a court carved out TSA claims where an attorney was otherwise immune from a non-client suit.  (*See* Mot. 21-22.) Rather, Plaintiffs assert only that (1) the TSA does not permit common-law defenses and (2) the policy of investor protection justifies abrogating attorney immunity for TSA claims.  (Resp. 18-21.)  Plaintiffs' arguments lack merit for three reasons.

*First*, "attorney immunity is properly characterized as a true immunity from suit, not as a defense to liability," *Troice*, 816 F.3d at 346, so its application does not depend on Plaintiffs' theory of liability.   Plaintiffs' cited cases concern affirmative defenses, not immunities.  (Resp. 18-19.)  As Hunton demonstrated in its opening brief, immunities bar claims brought under Texas statutes regardless of what specific defenses those statutes enumerate.  (Mot. 21 (citing cases).)

*Second*, the TSA expressly states that "[t]he rights and remedies provided by this Act are in addition to any other rights . . . or remedies that may exist at law or in equity."  TEX. REV. CIV. STAT. art. 581-33M.  This Court held that statutory provision allows Plaintiffs to assert a claim for conspiracy to violate the TSA, even though the TSA itself does not create a cause of action for "conspiracy."  (*See* Order on Mot. to Dismiss. at 17 [ECF 123].)  Under that rationale, the TSA preserves the common-law rights of defendants like Hunton, *see* TEX. REV. CIV. STAT. art. 581-33.M, including the right to assert attorney immunity, *see Cantey Hanger*, 467 S.W.3d at 481.

*Third*, by focusing on the "investor protection" policy rationale that they claim underpins the TSA (Resp. 18-21), Plaintiffs ignore the important policy justifications for the attorney immunity doctrine.  Texas courts have long recognized that "[a]n attorney is given latitude to pursue legal rights that he deems necessary and proper precisely to avoid the inevitable conflict

8

that would arise if he were forced constantly to balance his own potential exposure against his client's best interest." *Cantey Hanger*, 467 S.W.3d at 483.  That latitude is necessary when lawyers advise on security law matters just as much as it is when a lawyer appears on a client's behalf in litigation.  A contrary rule would discourage lawyers from even accepting clients needing legal advice about matters implicating the securities laws.

### III.   Plaintiffs Do Not Overcome The Application Of The Attorney Immunity Doctrine To The OSIC's Claims And Portions Of The Receiver's Claims.

#### A.   Attorney Immunity Bars The OSIC's Claims.

As Hunton demonstrated, the OSIC cannot assert claims against Hunton because the OSIC was never Hunton's client, and the OSIC cannot sidestep attorney immunity by purporting to act as the Receiver's assignee.  (Mot. 13.)  Plaintiffs do not refute Hunton's arguments on that core issue.  Instead, Plaintiffs suggest that Hunton seeks dismissal of only the OSIC's "legal malpractice claims."  (Resp. 23 n.7.)  But the OSIC previously acknowledged that the legal malpractice claim belongs to the Receiver alone (Receiver/OSIC Resp. to Mot. to Dismiss [ECF 63] at 9 n.9), and Hunton's point is that the OSIC cannot assert *any* claim against Hunton because it is a non-client.

Plaintiffs also incorrectly argue that Hunton conceded the OSIC's ability to bring claims as an assignee.  (Resp. 24.)  However, the briefing that contained that supposed concession concerned the threshold question of standing, *not* whether the Receiver could assign claims to the OSIC under applicable law.  (*See* Reply ISO Mot. to Dismiss at 30 [ECF 75].)

#### B.   Attorney Immunity Bars Portions Of The Receiver's Claims.

Hunton also demonstrated that attorney immunity bars the Receiver's claims to the extent those claims are based on legal services provided to Allen Stanford personally, or are asserted on behalf of Stanford entities that Hunton never represented.  (Mot. 14-15.)  Plaintiffs respond that: (1) the Receiver can assert claims on behalf of Mr. Stanford; and (2) Hunton's arguments raise

factual issues that cannot be determined now.  (Resp. 22-23.)  Neither argument is correct.

*First*, Plaintiffs' assertion that the Receiver sues on behalf of Allen Stanford (Resp. 22) ignores the Complaint, in which the Receiver expressly seeks to recover damages purportedly experienced *by one or more Stanford entities*, not Mr. Stanford himself.  (*E.g.*, Compl. ¶ 407); *see also* Receiver/OSIC Resp. to Mot. to Dismiss [ECF 63] at 56 ("[T]he Receiver's tort claims are based on harm suffered directly by the Stanford Entities . . . .")).  Moreover, the Receiver has previously gone to great pains to distinguish the Stanford Entities from Allen Stanford in an effort to avoid the *in pari delicto* bar.  (*See* Resp. to Mot. to Dismiss [ECF 63] at 75-76 (distinguishing Stanford entities from Mr. Stanford for purposes of standing, imputation, and *in pari delicto*).)

*Second*, even if a factual issue exists regarding the identity of Hunton's client, this Court can, and should, issue an order now barring the Receiver's claims *to the extent* they are shown (1) to be premised on legal services that Hunton provided to Mr. Stanford personally, or (2) to be asserted on behalf of Stanford entities with which Hunton never had an attorney-client relationship.

## IV.     Attorney Immunity Deprives This Court Of Subject-Matter Jurisdiction.

Hunton incorporated in its opening brief Greenberg Traurig's argument that attorney immunity deprives this Court of subject-matter jurisdiction over Plaintiffs' claims. (Mot. 22.)  In response, Plaintiffs incorporated their response to Greenberg's argument.  (Resp. 25.)  Hunton now incorporates Greenberg's reply herein.  (Greenberg's Reply ISO Mot. to Dismiss [ECF 213].)

**CONCLUSION**

For the foregoing reasons and those set forth in Hunton's opening brief, this Court should dismiss, with prejudice, (1) all of Class Plaintiffs' claims, (2) all of the OSIC's claims, and (3) the Receiver's claims to the extent the claims arise from Hunton's provision of legal services to Robert Allen Stanford personally, or are asserted on behalf of Stanford entities with which Hunton did not have an attorney-client relationship.

10

Date:  September 2, 2016                          Respectfully submitted,

                                                 By:  s/ Jeffrey D. Colman
Richard A. Sayles (Tex. # 17697500)                  Jeffrey D. Colman (Ill. # 0491160)
Shawn Long (Tex. # 24047859)                         David Jiménez-Ekman (Ill. # 6210519)
SAYLES WERBNER                                        Andrew W. Vail (Ill. #6279951)
4400 Renaissance Tower                               April A. Otterberg (Ill. # 6290396)
1201 Elm Street                                      JENNER & BLOCK LLP
Dallas, Texas 75270                                  353 N. Clark Street
dsayles@swtriallaw.com                               Chicago, IL 60654-3456
(214) 939-8701                                       jcolman@jenner.com
(214) 939-8787 (Facsimile)                           (312) 923-2940
                                                     (312) 840-7340 (Facsimile)

*Counsel for Hunton & Williams LLP*
                                                 *Counsel for Hunton & Williams LLP*
                                                 *Admitted* Pro Hac Vice


### CERTIFICATE OF SERVICE

I hereby certify that on September 2, 2016, I electronically filed a copy of the foregoing **Hunton & Williams LLP's Reply In Support of Its Motion for Judgment on the Pleadings on Claims by Non-Clients** with the clerk of the U.S. District Court, Northern District of Texas, using the electronic case filing (ECF) system of the court.  The ECF system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this notice as service of this document by electronic means.


                                 s/ Jeffrey D. Colman
                                 JEFFREY D. COLMAN