# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br><div align="center">Plaintiff,</div><br>v.<br><br>STANFORD INTERNATIONAL BANK, LTD,<br>*et al.*,<br><div align="center">Defendants.</div> | Civil Action No. 3:09-cv-00298-N |
| RALPH S. JANVEY, in his capacity as Court-appointed receiver for the Stanford Receivership Estate; the OFFICIAL STANFORD INVESTORS COMMITTEE; PAM REED; SAMUEL TROICE; and MICHOACAN TRUST; individually and on behalf of a class of all others similarly situated,<br><div align="center">Plaintiffs,</div><br>v.<br><br>GREENBERG TRAURIG, LLP; HUNTON & WILLIAMS, LLP; AND YOLANDA SUAREZ,<br><div align="center">Defendants.</div> | Civil Action No. 3:12-cv-04641-N |

**APPENDIX TO EXPEDITED REQUEST FOR ENTRY OF SCHEDULING ORDER AND MOTION TO APPROVE PROPOSED SETTLEMENT WITH HUNTON & WILLIAMS LLP, TO ENTER THE BAR ORDER, TO ENTER THE FINAL JUDGMENT AND BAR ORDER, AND FOR PLAINTIFFS' ATTORNEYS' FEES**

Ralph S. Janvey, in his capacity as the Court-appointed Receiver for the Stanford Receivership Estate, the Official Stanford Investors Committee, and Pam Reed, Samuel Troice, and Michoacan Trust, individually and on behalf of a putative class of Stanford investors (collectively, the "Plaintiffs") file this appendix (the "Appendix") in support of the Expedited Request for Entry of Scheduling Order and Motion to Approve Proposed Settlement with Hunton & Williams LLP, to Enter the Bar Order, to Enter the Final Judgment and Bar Order, and for Plaintiffs' Attorneys' Fees.

| Exhibit | Description |
|---------|-------------|
| **APPENDIX MATERIALS** | |
| 1. | Settlement Agreement |
| 2. | Declaration of Edward C. Snyder |
| 3. | Declaration of Peter D. Morgenstern |
| 4. | Declaration of Doug J. Buncher |
| 5. | Declaration of Edward F. Valdespino |
| 6. | Declaration of Scott D. Powers |
| 7. | Declaration of John J. Little |
| 8. | Proposed Order |

Dated:  August 16, 2017

**CASTILLO SNYDER, P.C.**

By: ___/s/ Edward C. Snyder_____
    Edward C. Snyder
    esnyder@casnlaw.com
    Jesse R. Castillo
    jcastillo@casnlaw.com
    700 N. St. Mary's Street, Suite 405
    San Antonio, Texas  78205
    (210) 630-4200
    (210) 630-4210 (Facsimile)

**NELIGAN, LLP**

By: ___/s/ Douglas J. Buncher_____
    Douglas J. Buncher
    dbuncher@neliganlaw.com
    Republic Center
    325 N. St. Paul, Suite 3600
    Dallas, Texas  75201
    (214) 840-5320
    (214) 840-5301 (Facsimile)

**BUTZEL LONG, P.C.**

By: /s/ Peter D. Morgenstern_____
    Peter D. Morgenstern (*pro hac vice*)
    morgenstern@butzel.com
    Joshua E. Abraham (*pro hac vice*)
    abraham@butzel.com
    477 Madison Avenue, Suite 1230
    New York, New York 10022
    (212) 818-1110
    (212) 898-0123 (Facsimile)

**STRASBURGER & PRICE, LLP**

By: /s/ Judith R. Blakeway___
    Judith R. Blakeway
    judith.blakeway@strasburger.com
    Merritt Clements
    merritt.clements@strasburger.com
    2301 Broadway
    San Antonio, Texas  78215
    Telephone: (210) 250-6000
    Facsimile: (210) 250-6100

**COUNSEL FOR THE PLAINTIFFS**

## CERTIFICATE OF SERVICE

On August 16, 2017, I electronically submitted the foregoing document with the clerk of the court of the U.S. District Court, Northern District of Texas, using the electronic case filing system of the Court. All parties who have appeared in this proceeding will be served via ECF. Investors and other interested parties will be served and given notice of the hearing on this Motion as approved by the Court.

/s/ Peter D. Morgenstern_____
Peter D. Morgenstern

**APPENDIX TO MOTION TO APPROVE SETTLEMENT WITH HUNTON & WILLIAMS LLP**     3

# Exhibit 1

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "<u>Agreement</u>") is made and entered into by and between (i) Ralph S. Janvey, solely in his capacity as the court-appointed receiver for the Stanford Receivership Estate (the "<u>Receiver</u>"); (ii) the Official Stanford Investors Committee (the "<u>Committee</u>"); (iii) Pam Reed, Samuel Troice, and Michoacan Trust, individually and on behalf of a putative class of Stanford investors (collectively, the "<u>Investor Plaintiffs</u>") (the Receiver, the Committee, and the Investor Plaintiffs are collectively referred to as the "<u>Plaintiffs</u>"); and (iv) Hunton & Williams LLP ("<u>Hunton</u>") (Plaintiffs, on the one hand, and Hunton, on the other hand, are referred to in this Agreement individually as a "<u>Party</u>" and together as the "<u>Parties</u>");

**WHEREAS**, on February 16, 2009, the U.S. Securities and Exchange Commission (the "<u>SEC</u>") filed *SEC v. Stanford International Bank, Ltd.*, Civil Action No. 3:09-cv-00298-N (N.D. Tex.) (the "<u>SEC Action</u>"), alleging that Robert Allen Stanford, James M. Davis, Laura Pendergest-Holt, Stanford International Bank, Ltd. ("<u>SIB</u>"), Stanford Group Company, Stanford Capital Management, LLC, and Stanford Financial Group (the "<u>Defendants</u>") had engaged in a fraudulent scheme affecting tens of thousands of customers from over one hundred countries;

**WHEREAS**, in an order dated February 16, 2009, in the SEC Action (ECF No. 10), the United States District Court for the Northern District of Texas (the "<u>Court</u>") assumed exclusive jurisdiction and took possession of the assets, and other tangible and intangible monies and property, as further set forth in that order, of the Defendants and all entities they own or control (the "<u>Receivership Assets</u>"), and the books and records, client lists, account statements, financial and accounting documents, computers, computer hard drives, computer disks, internet exchange servers, telephones, personal digital devices and other informational resources of or in possession

1

of the Defendants, or issued by Defendants and in possession of any agent or employee of the Defendants (the "Receivership Records");

**WHEREAS**, in that same order (ECF No. 10), Ralph S. Janvey was appointed Receiver for the Receivership Assets and the Receivership Records (collectively, the "Receivership Estate") with the full power of an equity receiver under common law as well as such powers as are enumerated in that order, as amended by an order in that same matter, dated March 12, 2009 (ECF No. 157), and as further amended by an order entered in that same matter, dated July 19, 2010 (ECF No. 1130);

**WHEREAS**, Ralph S. Janvey has served as Receiver continuously since his appointment and continues to so serve;

**WHEREAS**, John J. Little was appointed to serve as examiner (the "Examiner") by an order entered in the SEC Action, dated April 20, 2009 (ECF No. 322), to assist the Court in considering the interests of the worldwide investors in any financial products, accounts, vehicles or ventures sponsored, promoted or sold by any defendants in the SEC Action;

**WHEREAS**, John J. Little has served as Examiner continuously since his appointment and continues to so serve;

**WHEREAS**, the Committee was created pursuant to an order entered in the SEC Action, dated August 10, 2010 (ECF No. 1149) (the "Committee Order"), to represent the customers of SIB, who, as of February 16, 2009, had funds on deposit at SIB, and/or were holding certificates of deposit ("CDs") issued by SIB (the "Stanford Investors");

**WHEREAS**, by the Committee Order, the Examiner was named as the initial Chairperson of the Committee;

**WHEREAS**, the Examiner has served as Chairperson of the Committee continuously since his appointment and continues to so serve;

**WHEREAS**, on November 15, 2012, the Receiver, the Committee, Samuel Troice, Michoacan Trust, and Sandra Dorrell filed their Original Complaint – Class Action (the "Complaint") captioned *Janvey et al. v. Greenberg Traurig, LLP, et al.*, Case No. 3:12-cv-04641-N (N.D. Tex.) (the "Litigation") naming Hunton as one of several defendants;

**WHEREAS**, the Complaint asserts claims against Hunton for negligence, aiding and abetting breaches of fiduciary duties, breaches of fiduciary duties, fraudulent transfer/unjust enrichment, aiding and abetting fraudulent transfers, negligent retention, aiding and abetting violations of the Texas Securities Act ("TSA"), aiding and abetting a fraudulent scheme, and civil conspiracy;

**WHEREAS**, by Orders in the Litigation dated December 17, 2014 (ECF No. 114), and February 4, 2015 (ECF No. 123), the Court granted in part and denied in part Hunton's motions to dismiss the Complaint, dismissing with prejudice (i) the Receiver's and Committee's claims for aiding and abetting fraudulent transfers; (ii) the Investor Plaintiffs' TSA claims for aiding and abetting and civil conspiracy for the sale of unregistered securities and the sale of securities by an unregistered dealer arising from sales taking place prior to February 1, 2008; (iii) the Investor Plaintiffs' TSA claims for aiding and abetting and civil conspiracy for the sale of securities through untruth or omission arising from sales taking place prior to February 1, 2006; dismissing without prejudice the Receiver and Committee's claims for breach of fiduciary duty; and declining to dismiss the Plaintiffs' other claims against Hunton;

3

**WHEREAS**, by Order in the Litigation dated September 11, 2015 (ECF No. 146), the Court permitted the substitution of Pam Reed for Sandra Dorrell as a named plaintiff and putative class representative in the Litigation;

**WHEREAS**, Hunton expressly denies any and all allegations of wrongdoing, fault, liability, or damages whatsoever and is entering into this Agreement solely to avoid the burden, very substantial expense, and risks of litigation;

**WHEREAS**, Plaintiffs have conducted an investigation into the facts and the law relating to the Litigation and after considering the results of that investigation and the benefits of this Settlement, as well as the burden, expense, and risks of litigation, have concluded that a settlement with Hunton under the terms set forth below is fair, reasonable, adequate, and in the best interests of the Plaintiffs, the Interested Parties, and all Persons affected by the Stanford Entities, and have agreed to enter into the Settlement and this Agreement, and to use their best efforts to effectuate the Settlement and this Agreement;

**WHEREAS**, the Parties desire to fully, finally, and forever compromise and effect a global settlement and discharge of all claims, disputes, and issues between them;

**WHEREAS**, the Parties have engaged in extensive, good-faith, and arm's-length negotiations, including participation in mediation by representatives of the Parties over a considerable period of time, including participation in two separate formal mediations, the first in 2012 with McGowan Dispute Resolution in Houston, Texas, and the second in 2016 with Phillips ADR in New York, NY, and in further discussions following the conclusion of the aforementioned mediations, leading to this Agreement;

**WHEREAS**, absent approval of this Settlement, the Litigation will likely take many more years and cost the Parties millions of dollars to litigate to final judgment and through appeals, and the outcome of all such litigation would have been uncertain;

**WHEREAS**, the Examiner, both in his capacity as Chairperson of the Committee and in his capacity as the Court-appointed Examiner, participated in the negotiation of the Settlement;

**WHEREAS**, the Committee has approved this Agreement and the terms of the Settlement, as evidenced by the signature hereon of the Examiner in his capacity as Chairperson of the Committee;

**WHEREAS**, the Examiner, in his capacity as Examiner, has reviewed this Agreement and the terms of the Settlement and, as evidenced by his signature hereon, has approved this Agreement and the terms of the Settlement and will recommend that this Agreement, and the terms of the Settlement be approved by the Court and implemented;[1] and

**WHEREAS**, the Receiver has reviewed and approved this Agreement and the terms of the Settlement, as evidenced by his signature hereon;

**NOW, THEREFORE,** in consideration of the agreements, covenants, and releases set forth herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

## I.    <u>Agreement Date</u>

1.    This Agreement shall take effect once (a) all Parties have signed the Agreement and (b) Carlos Loumiet ("Loumiet") and all Plaintiffs have signed **Exhibit E**, and as of the date of the last signature to the Agreement and Exhibit E (the "<u>Agreement Date</u>").

---

[1] The Examiner has also executed this Agreement to confirm his obligation to post Notice on his website, as required herein, but is not otherwise individually a party to the Settlement or the Litigation.

## II.   Terms Used in this Agreement

The following terms, as used in this Agreement, the Bar Order (defined in Paragraph 20), and the Judgment and Bar Order (defined in Paragraph 20), have the following meanings:

2.      "Attorneys' Fees" means those fees awarded by the Court to Plaintiffs' counsel from the Settlement Amount pursuant to the terms of the applicable engagement agreements.

3.      "Hunton Released Parties" means Hunton, and all of its predecessor firms and, of each of the foregoing, all of their respective past and present subsidiaries, parents, predecessors, affiliates, related entities and divisions, and all of their respective past, present, and future successors, and all of their respective current and former partners, members, counsel, principals, participating principals, associates, managing or other agents, management personnel, officers, directors, shareholders, administrators, servants, employees, staff, consultants, advisors, attorneys, accountants, lenders, insurers and reinsurers, representatives, successors and assigns, known or unknown, in their representative capacity or individual capacity. "Hunton Released Parties" shall include Loumiet in his individual capacity relating to alleged conduct or knowledge while employed by or affiliated with Hunton or Greenberg Traurig LLP ("Greenberg"). Notwithstanding the foregoing, "Hunton Released Parties" shall not include any Person, other than Hunton or Loumiet, against whom, as of the Agreement Date, any of the Plaintiffs is asserting a claim or cause of action in any judicial proceeding, and also shall not include any Person who becomes employed by, related to, or affiliated with Hunton after the Agreement Date and whose liability, if any, arises solely out of or derives solely from their actions or omissions before becoming employed by, related to, or affiliated with Hunton.   For the avoidance of doubt, "Hunton Released Parties" does not include Greenberg or Yolanda Suarez ("Suarez"), and it is the Parties' intent that the Settlement shall have no impact whatsoever on the claims asserted by Plaintiffs against Greenberg and Suarez in the Litigation.

6

4.      "Claim" means a Person's potential or asserted right to receive funds from the Receivership Estate or the funds and assets subject to the authority of the Joint Liquidators (defined below).

5.      "Claimant" means any Person who has submitted a Claim to the Receiver or to the Joint Liquidators (defined below).  Where a Claim has been transferred to a third party and such transfer has been acknowledged by the Receiver or the Joint Liquidators, the transferee is a Claimant, and the transferor is not a Claimant unless the transferor has retained a Claim that has not been transferred.  Where the Receiver or the Joint Liquidators have disallowed a Claim and the disallowance has become Final, then the submission of the disallowed Claim does not make the Person who submitted it a Claimant.

6.      "Confidential Information" means the communications and discussions in connection with the negotiations and mediations that led to the Settlement and this Agreement as well as the Term Sheet executed by the Parties prior to this Agreement.  Confidential Information also includes the existence and terms of the Settlement and this Agreement, but only until the filing of this Agreement and related documents with the Court.

7.      "Distribution Plan" means the plan hereafter approved by the Court for the distribution of the Settlement Amount (net of any attorneys' fees or costs that are awarded by the Court) to Stanford Investors who have had their Claims allowed by the Receiver ("Allowed Claims").

8.      "Final" means unmodified after the conclusion of, or expiration of any right of any Person to pursue, any and all possible forms and levels of appeal, reconsideration, or review, judicial or otherwise, including by a court or Forum of last resort, wherever located, whether automatic or discretionary, whether by appeal or otherwise. The Bar Order and Judgment and

7

Bar Order shall include findings under Federal Rule of Civil Procedure 54(b) and will become Final as set forth in this paragraph as though such orders were entered as judgments at the end of a case, and the continuing pendency of the SEC Action and the Litigation shall not be construed as preventing such Bar Order and Judgment and Bar Order from becoming Final.

9.      "Forum" means any court, adjudicative body, tribunal, or jurisdiction, whether its nature is federal, foreign, state, administrative, regulatory, arbitral, local, or otherwise.

10.      "Hearing" means a formal proceeding in open court before the United States District Judge having jurisdiction over the SEC Action and the Litigation.

11.      "Interested Parties" means the Receiver; the Receivership Estate; the Committee; the members of the Committee; the Plaintiffs; the Stanford Investors; the Claimants; the Examiner; or any Person or Persons alleged by the Receiver, the Committee, or other Person or entity on behalf of the Receivership Estate to be liable to the Receivership Estate, whether or not a formal proceeding has been initiated.

12.      "Joint Liquidators" means Marcus A. Wide and Hugh Dickson, in their capacities as the joint liquidators appointed by the Eastern Caribbean Supreme Court in Antigua and Barbuda to take control of and manage the affairs and assets of SIB or any of their successors or predecessors.

13.      "Notice" means a communication, in substantially the form attached hereto as **Exhibit A,** describing (a) the material terms of the Settlement; (b) the material terms of this Agreement; (c) the rights and obligations of the Interested Parties with regard to the Settlement and this Agreement; (d) the deadline for the filing of objections to the Settlement, the Agreement, the Bar Order, and the Judgment and Bar Order; and (e) the date, time, and location

of the Hearing to consider final approval of the Settlement, this Agreement, the Bar Order, and the Judgment and Bar Order.

14.     "Person" means any individual, entity, governmental authority, agency or quasi-governmental person or entity, worldwide, of any type, including, without limitation, any individual, partnership, corporation, limited liability company, estate, trust, committee, fiduciary, association, proprietorship, organization, or business, regardless of location, residence, or nationality.

15.     "Plaintiffs Released Parties" means the Investor Plaintiffs, the Receiver, the Examiner, the Committee, and each of their counsel.  Plaintiffs Released Parties also includes each of the foregoing persons' respective past, present, and future directors, officers, legal and equitable owners, shareholders, members, managers, principals, employees, associates, representatives, distributees, agents, attorneys, trustees, general and limited partners, lenders, insurers and reinsurers, direct and indirect parents, subsidiaries, affiliates, related entities, divisions, partnerships, corporations, executors, administrators, heirs, beneficiaries, assigns, predecessors, predecessors in interest, successors, and successors in interest.

16.     "Releasor" means any Person granting a release of any Settled Claim.

17.     "Settled Claim" means any action, cause of action, suit, liability, claim, right of action, right of levy or attachment, or demand whatsoever, whether or not currently asserted, known, suspected, existing, or discoverable, and whether based on federal law, state law, foreign law, common law, or otherwise, and whether based on contract, tort, statute, law, equity or otherwise, that a Releasor ever had, now has, or hereafter can, shall, or may have, directly, representatively, derivatively, or in any other capacity, for, upon, arising from, relating to, or by reason of any matter, cause, or thing whatsoever, that, in full or in part, concerns, relates to,

9

arises out of, or is in any manner connected with (i) the Stanford Entities; (ii) any CD, depository account, or investment of any type with any one or more of the Stanford Entities; (iii) Hunton's relationship with any one or more of the Stanford Entities and/or any of their personnel; (iv) Hunton's provision of services to or for the benefit of or on behalf of the Stanford Entities; or (v) any matter that was asserted in, could have been asserted in, or relates to the subject matter of the SEC Action, the Litigation, or any proceeding concerning the Stanford Entities pending or commenced in any Forum. "Settled Claims" specifically includes, without limitation, all claims each Releasor does not know or suspect to exist in his, her, or its favor at the time of release, which, if known by that Person, might have affected their decisions with respect to this Agreement and the Settlement ("Unknown Claims"). Each Releasor expressly waives, releases, and relinquishes any and all provisions, rights, and benefits conferred by any law or principle, in the United States or elsewhere, which governs or limits the release of unknown or unsuspected claims, including, without limitation, California Civil Code § 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Each Releasor acknowledges that he, she, or it may hereafter discover facts different from, or in addition to, those which such Releasor now knows or believes to be true with respect to the Settled Claims, but nonetheless agrees that this Agreement, including the releases granted herein, will remain binding and effective in all respects notwithstanding such discovery. Unknown Claims include contingent and non-contingent claims, whether or not concealed or hidden, without regard to the subsequent discovery or existence of different or additional facts. These provisions concerning unknown and unsuspected claims and the inclusion of Unknown Claims in

10

the definition of Settled Claims were separately bargained for and are an essential element of this Agreement and the Settlement.

18.     "<u>Settlement</u>" means the agreed resolution of the Settled Claims in the manner set forth in this Agreement.

19.     "<u>Settlement Amount</u>" means Thirty-Four Million Dollars ($34,000,000.00) in United States currency.

20.     "<u>Settlement Effective Date</u>" means the date on which the last of all of the following have occurred:

     a.     entry in the SEC Action of a bar order including findings under Federal Rule of Civil Procedure 54(b) and in substantially the form attached hereto as **Exhibit B** (the "<u>Bar Order</u>");

     b.     entry in the Litigation of a judgment and bar order in substantially the form attached hereto as **Exhibit C** (the "<u>Judgment and Bar Order</u>"); and

     c.     the Bar Order and the Judgment and Bar Order have both become Final.

21.     "<u>Stanford Entities</u>" means Robert Allen Stanford; James M. Davis; Laura Pendergest-Holt; Gilbert Lopez; Mark Kuhrt; SIB; Stanford Group Company; Stanford Capital Management, LLC; Stanford Financial Group; the Stanford Financial Bldg Inc.; the entities listed in **Exhibit D** to this Agreement; and any entity of any type that was owned, controlled by, or affiliated with Robert Allen Stanford, James M. Davis, Laura Pendergest-Holt, Gilbert Lopez, Mark Kuhrt, SIB, Stanford Group Company, Stanford Capital Management, LLC, Stanford Financial Group, or the Stanford Financial Bldg Inc., on or before February 16, 2009.

11

22.     "Taxes" means any and all taxes, whether federal, state, local, or other taxes related to the Settlement or the Settlement Amount, and costs incurred in connection with such taxation including, without limitation, the fees and expenses of tax attorneys and accountants.

III.    **Delivery of Settlement Amount**

23.     Dismissal of Litigation: The Litigation shall be fully and finally resolved and concluded and considered dismissed as to Hunton by the Judgment and Bar Order being entered in the Litigation and becoming Final.

24.     Delivery of Settlement Amount: Within thirty (30) days after the Settlement Effective Date, Hunton shall deliver or cause to be delivered the Settlement Amount to the Receiver by wire transfer in accordance with wire transfer instructions provided by the Receiver for purposes of receiving the payment.

IV.     **Use and Management of Settlement Amount**

25.     Management and Distribution of Settlement Amount: If and when the Settlement Amount is delivered to the Receiver pursuant to the terms of this Agreement, the Receiver shall receive and take custody of the Settlement Amount and shall maintain, manage, and distribute the Settlement Amount in accordance with the Distribution Plan and under the supervision and direction and with the approval of the Court. The Receiver shall be responsible for all Taxes, fees, and expenses that may be due with respect to the Settlement Amount or the management, use, administration, or distribution of the Settlement Amount.

26.     No Liability:  Hunton and the Hunton Released Parties shall have no liability, obligation, or responsibility whatsoever with respect to the investment, management, use, administration, or distribution of the Settlement Amount or any portion thereof, including, but not limited to, the costs and expenses of such investment, management, use, administration, or distribution of the Settlement Amount, and any Taxes arising therefrom or relating thereto.

12

Nothing in this Paragraph 26 shall alter Hunton's obligations to deliver the Settlement Amount to the Receiver pursuant to the terms of this Agreement.

**V.**   **Motion for Scheduling Order, Bar Order, and Judgment and Bar Order and Form and Procedure for Notice**

27.   Motion: On a date mutually acceptable to the Parties that is not more than ninety (90) days from the Agreement Date, unless otherwise agreed by the Parties in writing, via e-mail or otherwise, Plaintiffs shall submit to the Court a motion requesting entry of an order substantially in the form attached hereto as **Exhibit F** (the "Scheduling Order") (a) preliminarily approving the Settlement; (b) approving the content and plan for publication and dissemination of Notice; (c)  setting the date by which any objection to the Settlement or this Agreement must be filed; and (d) scheduling a Hearing to consider final approval of the Settlement and entry of the orders required by Paragraph 20 of this Agreement. With respect to the content and plan for publication and dissemination of Notice, Plaintiffs will propose that Notice in substantially the form attached hereto as **Exhibit A,** be sent via electronic mail, first-class mail or international delivery service to all Interested Parties; sent via electronic service to all counsel of record for any Person who is, at the time of Notice, a party in any case included in *In re Stanford Entities Securities Litigation,* MDL No. 2099 (N.D. Tex.) (the "MDL"), the SEC Action, or the Litigation who are deemed to have consented to electronic service through the Court's CM/ECF System under Local Rule CV-5.1(d); sent via facsimile transmission and/or first class mail to any other counsel of record for any other Person who is, at the time of service, a party in any case included in the MDL, the SEC Action, or the Litigation; and posted on the websites of the Receiver and the Examiner along with complete copies of this Agreement and all filings with the Court relating to the Settlement, this Agreement, and approval of the Settlement.  Plaintiffs will further propose that Notice in substantially the form attached hereto as **Exhibit G** be published

once in the national edition of *The Wall Street Journal* and once in the international edition of *The New York Times*. In advance of filing the motion papers to accomplish the foregoing, Plaintiffs shall provide Hunton with a reasonable opportunity to review and comment on such motion papers.

28. Notice Preparation and Dissemination: The Receiver shall be responsible for the preparation and dissemination of the Notice pursuant to this Agreement and as directed by the Court. In the absence of intentional refusal by the Receiver to prepare and disseminate Notice pursuant to this Agreement or a court order, no Interested Party or any other Person shall have any recourse against the Receiver with respect to any claims that may arise from or relate to the Notice process. In the case of intentional refusal by the Receiver to prepare and disseminate Notice pursuant to this Agreement or a court order, Hunton shall not have any claim against the Receiver other than the ability to seek specific performance. The Parties do not intend to give any other Person any right or recourse against the Receiver in connection with the Notice process.

29. No Recourse Against Hunton: No Interested Party or any other Person shall have any recourse against Hunton or the Hunton Released Parties with respect to any claims that may arise from or relate to the Notice process.

30. Motion Contents: In the motion papers referenced in Paragraph 27 above, Plaintiffs shall request that the Court, *inter alia*:

      a. approve the Settlement and its terms as set out in this Agreement;

      b. enter an order finding that this Agreement and the releases set forth herein are final and binding on the Parties;

14

c. enter in the SEC Action a Bar Order in the form attached hereto as **Exhibit B**; and

d. enter in the Litigation a Judgment and Bar Order in the form attached hereto as **Exhibit C**.

31. Parties to Advocate: The Parties shall take all reasonable steps to advocate for and encourage the Court to approve the terms of this Agreement.

32. No Challenge: No Party shall challenge the approval of the Settlement, and no Party will encourage or assist any Interested Party in challenging the Settlement.

## VI.   **Rescission if the Settlement is Not Finally Approved or the Bar Order and Judgment and Bar Order are Not Entered**

33. Right to Withdraw: The Parties represent and acknowledge that the following were necessary to the Parties' agreement to this Settlement, are each an essential term of the Settlement and this Agreement, and that the Settlement would not have been reached in the absence of these terms: (a) Court approval of the Settlement and the terms of this Agreement without amendment or revision; (b) entry by the Court of the Bar Order in the SEC Action in substantially the form attached hereto as **Exhibit B**; (c) entry by the Court of the Judgment and Bar Order in the Litigation in substantially the form attached hereto as **Exhibit C**; and (d) all such approvals and orders becoming Final, pursuant to Paragraphs 8 and 20 of this Agreement. If the Court refuses to provide the approvals described in (a); if the Court refuses to enter the bar orders described in (b) or (c) without material modification; or if the final result of any appeal from the approvals and orders described in (a), (b), or (c) is that any of the approvals or orders are not affirmed, in their entirety and without material modification or limitation, then any Party has the right to withdraw its agreement to the Settlement and to this Agreement by providing to all other Parties written notice of such withdrawal, within fourteen (14) days of the order or

15

judicial determination giving rise to the right to withdraw. For purposes of this Section VI, the Party making the election to withdraw has the sole and absolute discretion to determine whether a modification or limitation to the approvals or bar orders described in (a), (b) or (c) is material. In addition, Hunton, in its sole and absolute discretion, may, but is not required to, withdraw from this Agreement if either of the following occurs: (x) between May 22, 2017 and the date on which the Plaintiffs file the motion for approval of the Settlement referenced in Paragraph 27, one or more suits involving Stanford Investor claims amounting to $100 million or more in alleged compensatory and/or punitive damages are filed against Hunton; or (y) between May 22, 2017 and the Settlement Effective Date, the United States District Court for the Northern District of Texas, the United States Court of Appeals for the Fifth Circuit, or the United States Supreme Court issues a ruling that a bar order, judgment and bar order, and/or release used in other litigation related to the Stanford Entities that is similar to the Bar Order and Judgment and Bar Order and releases contemplated between the Parties (such as the Bar Order and releases in the matter styled *Janvey et al. v. Willis of Colorado*, Case No. 3:13-cv-00398-N (N.D. Tex)) are invalid or unenforceable to bar claims of Stanford Investors or those who are putative class members against Hunton. Such withdrawal must be by written notice to all Parties within ten (10) days of the occurrence of the event giving rise to the right to withdraw. If Hunton elects to exercise its right to withdraw from this Settlement Agreement pursuant to (y) after the Judgment and Bar Order is entered in the Litigation but before the Judgment and Bar Order becomes Final, then the Parties agree to jointly file a motion to vacate the Judgment and Bar Order and to reinstate the Litigation, and further agree that any and all applicable statutes of limitation will have been tolled through the date written notice is given, as required by this Section VI, and for thirty (30) days thereafter. In the event that any Party withdraws its agreement to the Settlement

or this Agreement as allowed in this paragraph, this Agreement will be null and void and of no further effect whatsoever, shall not be admissible in any ongoing or future proceedings for any purpose whatsoever (except for the provisions of this paragraph 33, which shall survive), and shall not be the subject or basis for any claims by any Party against any other Party. If any Party withdraws from this Agreement pursuant to the terms of this paragraph, then each Party shall be returned to such Party's respective position immediately prior to such Party's execution of the Agreement.

34.    The Parties do not have the right to withdraw from, or otherwise terminate, the Agreement for any reason other than the reasons identified in Paragraph 33. The following paragraphs of this Agreement shall survive termination of the Agreement:  33, 34, 45 and 46.

## VII.    Distribution Plan

35.    Duties: The Receiver, with the approval and guidance of the Court, shall be solely responsible for preparing, filing a motion seeking approval of, and implementing the Distribution Plan including, without limitation, receiving, managing and disbursing the Settlement Amount. The Receiver owes no duties to Hunton or the Hunton Released Parties in connection with the distribution of the Settlement Amount or the Distribution Plan, and if the Receiver complies with all orders issued by the Court relating to the Distribution Plan neither Hunton nor the Hunton Released Parties may assert any claim or cause of action against the Receiver in connection with the distribution of the Settlement Amount or the Distribution Plan. In no event will the Receiver or the Receivership Estate be liable for damages or the payment or re-payment of funds of any kind as a result of any deficiency associated with the distribution of the Settlement Amount or the Distribution Plan.

36.    Distribution by Check: The Receiver must include the following statement, without alteration (except that additional releasees may be included if the Receiver includes in

17

the distribution check funds from settlements with such other releasees), on the reverse of all

checks sent to Claimants pursuant to the Distribution Plan, above where the endorser will sign:

> BY ENDORSING THIS CHECK, I RELEASE ALL CLAIMS, KNOWN OR NOT, AGAINST (I) HUNTON & WILLIAMS LLP, ITS PARTNERS, AND EMPLOYEES (WHETHER CURRENT OR PAST) AND (II) CARLOS LOUMIET, ARISING FROM OR RELATING TO STANFORD INTERNATIONAL BANK, LTD. OR ANY OF ITS RELATED ENTITIES AND ACCEPT THIS PAYMENT IN FULL SATISFACTION THEREOF. I AM NOT HEREBY RELEASING ANY CLAIMS THAT I HAVE OR MAY HAVE AGAINST GREENBERG TRAURIG, LLP ("GREENBERG"). THIS RELEASE DOES NOT AFFECT ANY SUCH CLAIMS, EVEN INCLUDING CLAIMS AGAINST GREENBERG THAT ARE BASED ON THE CONDUCT OF CARLOS LOUMIET.

   37.    No Responsibility: Hunton and the Hunton Released Parties shall have no

responsibility, obligation, or liability whatsoever with respect to the terms, interpretation, or

implementation of the Distribution Plan; the administration of the Settlement; the management,

investment, or distribution of the Settlement Amount or any other funds paid or received in

connection with the Settlement; the payment or withholding of Taxes that may be due or owing

by the Receiver or any recipient of funds from the Settlement Amount; the determination,

administration, calculation, review, or challenge of claims to the Settlement Amount, any portion

of the Settlement Amount, or any other funds paid or received in connection with the Settlement

or this Agreement; or any losses, attorneys' fees, expenses, vendor payments, expert payments,

or other costs incurred in connection with any of the foregoing matters. As of the Settlement

Effective Date, the Plaintiffs, the Plaintiffs Released Parties, the Interested Parties, and all other

individuals, persons or entities Plaintiffs represent or on whose behalf Plaintiffs have been

empowered to act by any court fully, finally, and forever release, relinquish, and discharge

Hunton and the Hunton Released Parties from any and all such responsibility, obligation, and

liability.

**VIII.   Releases, Covenant Not to Sue, and Permanent Injunction**

38.   Release of Hunton Released Parties: As of the Settlement Effective Date, each of the Plaintiffs, including, without limitation, the Receiver on behalf of the Receivership Estate (including the Stanford Entities but not including the natural persons listed in Paragraph 21 of this Agreement), fully, finally, and forever release, relinquish, and discharge, with prejudice, all Settled Claims against Hunton and the Hunton Released Parties.

39.   Release of Plaintiffs Released Parties: As of the Settlement Effective Date, Hunton fully, finally, and forever releases, relinquishes, and discharges, with prejudice, all Settled Claims against Plaintiffs Released Parties.

40.   No Release of Obligations Under Agreement: Notwithstanding anything to the contrary in this Agreement, the releases and covenants contained in this Agreement do not release the Parties' rights and obligations under this Agreement or the Settlement, nor do they bar the Parties from enforcing or effectuating this Agreement or the Settlement.

41.   Covenant Not to Sue: Effective as of the Agreement Date, Plaintiffs covenant not to, directly or indirectly, or through a third party, institute, reinstitute, initiate, commence, maintain, continue, file, encourage, solicit, support, participate in, collaborate in, or otherwise prosecute against any of the Hunton Released Parties any action, lawsuit, cause of action, claim, investigation, demand, complaint, or proceeding, whether individually, derivatively, on behalf of a class, as a member of a class, or in any other capacity whatsoever, concerning or relating to the Settled Claims, whether in a court or any other Forum.  Effective as of the Agreement Date, Hunton covenants not to, directly or indirectly, or through a third party, institute, reinstitute, initiate, commence, maintain, continue, file, encourage, solicit, support, participate in, collaborate in, or otherwise prosecute against any of the Plaintiffs Released Parties any action, lawsuit, cause of action, claim, investigation, demand, complaint, or proceeding, whether

19

individually, derivatively, on behalf of a class, as a member of a class, or in any other capacity whatsoever, concerning or relating to the Settled Claims, whether in a court or any other Forum. Notwithstanding the foregoing, however, the Parties retain the right to sue for alleged breaches of this Agreement.

42.     No Effect on Greenberg or Suarez Claims:  The releases and covenants not to sue set forth in this Agreement do not include, and shall have no effect upon, any claims or causes of action Plaintiffs have against Greenberg or Suarez, including, but not limited to, claims or causes of action based on the conduct or knowledge of Loumiet while employed by or affiliated with Greenberg.  The releases and the covenants not to sue set forth in this Agreement do not limit in any way the evidence that Plaintiffs may offer against the remaining defendants in the Litigation, Greenberg and Suarez.

## IX.     **Representations and Warranties**

43.     No Assignment, Encumbrance, or Transfer: The Plaintiffs, other than the Receiver, represent and warrant that they are the owners of the Settled Claims that they are releasing under this Agreement and that they have not, in whole or in part, assigned, encumbered, sold, pledged as security, or in any manner transferred or compromised any of the Settled Claims that they are releasing under this Agreement.  The Receiver represents and warrants that he is the owner of the Settled Claims that he is releasing under this Agreement and that, other than assigning those Settled Claims against Hunton that the Receiver transferred to the Committee, he has not, in whole or in part, assigned, encumbered, sold, pledged as security, or in any manner transferred or compromised any of the Settled Claims that he is releasing under this Agreement.  Hunton represents that it is the owner of the Settled Claims that it is releasing under this Agreement and that it has not, in whole or in part, assigned, encumbered, sold, pledged as

20

security, or in any manner transferred or compromised any of the Settled Claims that it is releasing under this Agreement.

44.     Authority: Each person executing this Agreement or any related documents represents and warrants that he or she has the full authority to execute the documents on behalf of the entity each represents and that each has the authority to take appropriate action required or permitted to be taken pursuant to this Agreement to effectuate its terms. The Committee represents and warrants that the Committee has approved this Agreement in accordance with the by-laws of the Committee.

## X.    No Admission of Fault or Wrongdoing

45.     The Settlement, this Agreement, and the negotiation and mediation thereof shall in no way constitute, be construed as, or be evidence of an admission or concession of any violation of any statute or law; of any fault, liability, or wrongdoing; or of any infirmity in the claims or defenses of the Parties with regard to any of the complaints, claims, allegations, or defenses asserted or that could have been asserted in the Litigation or any other proceeding relating to any Settled Claim, or any other proceeding in any Forum. The Settlement and this Agreement are a resolution of disputed claims in order to avoid the risk and very substantial expense of protracted litigation. The Settlement, this Agreement, and evidence thereof shall not be used, directly or indirectly, in any way, in the Litigation, the SEC Action, or in any other proceeding, other than to enforce the terms of the Settlement and this Agreement.

## XI.    Confidentiality

46.     Confidentiality: Except as necessary to obtain Court approval of this Agreement, to provide the Notices as required by this Agreement, or to enforce the terms of the Settlement and this Agreement, the Parties will keep confidential and shall not publish, communicate, or otherwise disclose, directly or indirectly, in any manner whatsoever, Confidential Information to

any Person except that (i) a Party may disclose Confidential Information to a person or entity to whom disclosure is required pursuant to law or regulation, but only after providing prompt notice to the other Parties; (ii) Hunton shall be permitted to disclose to its partners, Carlos Loumiet, and current and potential insurers, on a confidential or attorney-client basis, the Settlement, the Agreement, its terms, the amount of the Settlement, and information about the Settlement negotiations; and (iii) a Party may disclose Confidential Information to a person or entity if the Party has obtained prior written consent from all other Parties. Notwithstanding anything else in this Agreement or otherwise, such consent may be transmitted by e-mail.

## XII.   Non-Disparagement

47.     In connection with the Settlement and this Agreement, Plaintiffs shall not make, disseminate, or publish any statement outside of Court, including a statement in the press, that would denigrate or embarrass Hunton, or that is otherwise negative or derogatory towards Hunton. Nothing in this paragraph shall prevent Plaintiffs from making any statement in Court regarding Hunton, nor shall this paragraph prevent Plaintiffs from taking any step they believe, in their sole and absolute discretion, is necessary to pursue their claims against Greenberg and Suarez. Nothing in this paragraph shall prevent the Receiver from reporting his activities to the Court, the Examiner, or the SEC, or from responding as necessary to inquiries from the Court or other governmental authorities, or from carrying out any of his duties under any order addressing the scope of the Receiver's duties, including but not limited to the Second Amended Receivership Order [SEC Action, ECF No. 1130] or other order addressing the scope of the Receiver's duties.

48.     In connection with the Settlement and this Agreement, Hunton shall not make, disseminate, or publish any statement outside of Court, including a statement in the press, which would denigrate or embarrass Plaintiffs. Nothing in this paragraph shall prevent Hunton from

22

making any statement in Court regarding Plaintiffs, nor shall this paragraph prevent Hunton from taking any step it believes, in its sole and absolute discretion, is necessary to enforce the Settlement or this Agreement, or to address Plaintiffs' claims against Greenberg, or in response to any request by Plaintiffs or any other person for discovery from Hunton in any other litigation related to the Stanford Entities.

49.     Nothing in this Agreement shall restrict (i) Plaintiffs from making statements, in Court or otherwise, concerning Loumiet, so long as those statements are unconnected to Hunton, or (ii) Loumiet from making statements, in Court or otherwise, concerning Plaintiffs.

50.     A statement by any Party concerning the general merit or general lack of merit to the allegations against Hunton set forth in Plaintiffs' complaint shall not be considered a violation of this Section XII.

XIII.   **Miscellaneous**

51.     Final and Complete Resolution: The Parties intend this Agreement and the Settlement to be and constitute a final, complete, and worldwide resolution of all matters and disputes between (1) the Plaintiffs Released Parties, and the Interested Parties, on the one hand, and (2) the Hunton Released Parties on the other hand, and this Agreement, including its exhibits, shall be interpreted to effectuate this purpose.

52.     Binding Agreement: As of the Agreement Date, this Agreement shall be binding upon and shall inure to the benefit of the Parties and their respective heirs, executors, administrators, successors, and assigns. No Party may assign any of its rights or obligations under this Agreement without the express written consent of the other Parties.

53.     Incorporation of Recitals: The Recitals contained in this Agreement are essential terms of this Agreement and are incorporated herein for all purposes.

54.     Disclaimer of Reliance: The Parties represent and acknowledge that in negotiating and entering into the Settlement and this Agreement they have not relied on, and have not been induced by, any representation, warranty, statement, estimate, communication, or information, of any nature whatsoever, whether written or oral, by, on behalf of, or concerning any Party, any agent of any Party, or otherwise, except as expressly set forth in this Agreement. To the contrary, each of the Parties affirmatively represents and acknowledges that the Party is relying solely on the express terms contained within this Agreement. The Parties have each consulted with legal counsel and advisors, have considered the advantages and disadvantages of entering into the Settlement and this Agreement, and have relied solely on their own judgment and the advice of their respective legal counsel in negotiating and entering into the Settlement and this Agreement.

55.     Third-Party Beneficiaries: This Agreement is not intended to and does not create rights enforceable by any Person other than the Parties (or their respective heirs, executors, administrators, successors, and assigns, as provided in Paragraph 52 of this Agreement), except that if this Agreement provides that a Person is released or should not be sued as a consequence of a covenant not to sue, then such Person may enforce the release or covenant not to sue as it relates to said Person.

56.     Negotiation, Drafting, and Construction: The Parties agree and acknowledge that they each have reviewed and cooperated in the preparation of this Agreement, that no Party should or shall be deemed the drafter of this Agreement or any provision hereof, and that any rule, presumption, or burden of proof that would construe this Agreement, any ambiguity, or any other matter, against the drafter shall not apply and is waived. The Parties are entering into this Agreement freely, after good-faith, arm's-length negotiation, with the advice of counsel, and in the absence of coercion, duress, and undue influence. The titles and headings in this Agreement

24

are for convenience only, are not part of this Agreement, and shall not bear on the meaning of this Agreement. The words "include," "includes," or "including" shall be deemed to be followed by the words "without limitation." The words "and" and "or" shall be interpreted broadly to have the most inclusive meaning, regardless of any conjunctive or disjunctive tense. Words in the masculine, feminine, or neuter gender shall include any gender. The singular shall include the plural and vice versa. "Any" shall be understood to include and encompass "all," and "all" shall be understood to include and encompass "any."

57.     Cooperation: The Parties agree to execute any additional documents reasonably necessary to finalize and carry out the terms of this Agreement. In the event a third party or any Person other than a Party at any time challenges any term of this Agreement or the Settlement, including the Bar Order and the Judgment and Bar Order, the Parties agree to cooperate with each other, including using reasonable efforts to make documents or personnel available as needed to defend any such challenge. Further, the Parties shall reasonably cooperate to defend and enforce each of the orders required under Paragraph 20 of this Agreement.

58.     Notice: Any notices, documents, or correspondence of any nature required to be sent pursuant to this Agreement shall be transmitted by both e-mail and overnight delivery to the following recipients, and will be deemed transmitted upon receipt by the overnight delivery service.

       If to Hunton:

       Hunton & Williams LLP
       Attn: General Counsel
       Robert M. Rolfe
       Riverfront Plaza, East Tower
       951 East Byrd Street
       Richmond, VA 23219
       Telephone: (804) 788-8466
       Facsimile: (804) 343-4568
       Email: rrolfe@hunton.com

and

Jeffrey D. Colman
Jenner & Block LLP
353 N. Clark Street
Chicago, IL 60654-3456
Telephone: (312) 923-2940
Facsimile: (312) 840-7340
E-mail: jcolman@jenner.com

April A. Otterberg
Jenner & Block LLP
353 N. Clark Street
Chicago, IL 60654-3456
Telephone: (312) 840-8646
Facsimile: (312) 840-8746
E-mail: aotterberg@jenner.com

and

Richard A. Sayles
Sayles/Werbner
4400 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270
Telephone: (214) 939-8701
Facsimile: (214) 939-8787
Email: dsayles@swtriallaw.com


If to Plaintiffs:

Edward C. Snyder
Castillo Snyder, PC
One Riverwalk Place
700 N. St. Mary's, Suite 405
San Antonio, Texas 78205
Telephone: 210-630-4200
Fax: 210-630-4210
E-mail: esnyder@casnlaw.com

and

Douglas J. Buncher
Neligan Foley LLP
325 N. St. Paul, Suite 3600

26

Dallas, Texas 75201
Telephone: 214-840-5320
Fax: 214-840-5301
E-mail: dbuncher@neliganlaw.com

and

Peter D. Morgenstern
Butzel Long, P.C.
477 Madison Avenue, Suite 1230
New York, New York 10022
Telephone: 212.818.1110
Fax: 212.898.0123
E-mail: morgenstern@butzel.com

and

John J. Little
Little Pedersen Fankhauser LLP
901 Main Street, Suite 4110
Dallas, Texas 75202
Telephone:  214.573.2307
Fax: 214.573.2323
E-mail: jlittle@lpf-law.com

and

Ralph S. Janvey
2100 Ross Ave
Suite 2600
Dallas, TX 75201
E-mail: rjanvey@kjllp.com

and

Kevin Sadler
Baker Botts
1001 Page Mill Road
Building One, Suite 200
Palo Alto, California 94304-1007
E-mail: kevin.sadler@bakerbotts.com

Each Party shall provide notice of any change to the service information set forth above to all

other Parties by the means set forth in this paragraph.

59.     Choice of Law: This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Texas, without regard to the choice-of-law principles of Texas or any other jurisdiction.

60.     Mandatory, Exclusive Forum Selection Clause: Any dispute, controversy, or claim arising out of or related to the Settlement or this Agreement, including breach, interpretation, effect, or validity of this Agreement, whether arising in contract, tort, or otherwise, shall be brought exclusively in the United States District Court for the Northern District of Texas.  With respect to any such action, the Parties irrevocably stipulate and consent to personal and subject matter jurisdiction and venue in such court, and waive any argument that such court is inconvenient, improper, or otherwise an inappropriate forum.

61.     United States Currency: All dollar amounts in this Agreement are expressed in United States dollars.

62.     Timing: If any deadline imposed by this Agreement falls on a non-business day, then the deadline is extended until the next business day.

63.     Waiver: The waiver by a Party of any breach of this Agreement by another Party shall not be deemed a waiver of any other prior or subsequent breach of this Agreement.

64.     Exhibits: The exhibits annexed to this Agreement are incorporated by reference as though fully set forth in this Agreement.

65.     Integration and Modification: This Agreement sets forth the entire understanding and agreement of the Parties with respect to the subject matter of this Agreement and supersedes all prior agreements, understandings, negotiations, and communications, whether oral or written, with respect to such subject matter, including the Term Sheet signed by the Parties prior to this Agreement. Neither this Agreement, nor any provision or term of this Agreement, may be

28

amended, modified, revoked, supplemented, waived, or otherwise changed except by a writing signed by all of the Parties.

66. Counterparts and Signatures: This Agreement may be executed in one or more counterparts, each of which for all purposes shall be deemed an original but all of which taken together shall constitute one and the same instrument. A signature delivered by fax or other electronic means shall be deemed to be, and shall have the same binding effect as, a handwritten, original signature.

IN WITNESS HEREOF, the Parties have executed this Agreement signifying their agreement to the foregoing terms.

Ralph S. Janvey, in his capacity as the Receiver for the Stanford Receivership Estate

Ralph S Janvey _____     Date: 8/7/17

John J. Little, in his capacity as Examiner

_____     Date: _____

Official Stanford Investors Committee

_____     Date: _____

By: John J. Little, Chairperson

_____     Date: _____

Samuel Troice
by Edward C. Snyder, attorney-in-fact

29

amended, modified, revoked, supplemented, waived, or otherwise changed except by a writing signed by all of the Parties.

66.     Counterparts and Signatures: This Agreement may be executed in one or more counterparts, each of which for all purposes shall be deemed an original but all of which taken together shall constitute one and the same instrument. A signature delivered by fax or other electronic means shall be deemed to be, and shall have the same binding effect as, a handwritten, original signature.

IN WITNESS HEREOF, the Parties have executed this Agreement signifying their agreement to the foregoing terms.

Ralph S. Janvey, in his capacity as the
Receiver for the Stanford Receivership
Estate

_____          Date: _____

John J. Little, in his capacity as Examiner

_____          Date: August 2, 2017

Official Stanford Investors Committee

_____          Date: August 2, 2017
By:   John J. Little, Chairperson

_____          Date: _____
Samuel Troice
by Edward C. Snyder, attorney-in-fact

29

amended, modified, revoked, supplemented, waived, or otherwise changed except by a writing signed by all of the Parties.

66.    Counterparts and Signatures: This Agreement may be executed in one or more counterparts, each of which for all purposes shall be deemed an original but all of which taken together shall constitute one and the same instrument.  A signature delivered by fax or other electronic means shall be deemed to be, and shall have the same binding effect as, a handwritten, original signature.

IN WITNESS HEREOF, the Parties have executed this Agreement signifying their agreement to the foregoing terms.

Ralph S. Janvey, in his capacity as the
Receiver for the Stanford Receivership
Estate

_____    Date: _____

John J. Little, in his capacity as Examiner

_____    Date: _____

Official Stanford Investors Committee

_____    Date: _____
By:   John J. Little, Chairperson

_____    Date: 8/2/17
Samuel Troice
by Edward C. Snyder, attorney-in-fact

29

Pam Reed
by Edward C. Snyder, attorney-in-fact

Date: 8/2/17

Michoacan Trust
by Edward C. Snyder, attorney-in-fact

Date: 8/2/17


Hunton & Williams LLP

_____

By:
Title:

Date:_____

30

Date: _____

_____

Pam Reed
by Edward C. Snyder, attorney-in-fact


Date: _____

_____

Michoacan Trust
by Edward C. Snyder, attorney-in-fact


Hunton & Williams LLP

_____

Date: 8/3/17

By: Robert M. Rolfe
Title: Partner and General Counsel

30

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | |
| v. | Civil Action No. 3:09-cv-00298-N |
| STANFORD INTERNATIONAL BANK, LTD, *et al.*, | |
| Defendants. | |
| | |
| RALPH S. JANVEY, in his capacity as Court-appointed receiver for the Stanford Receivership Estate; the OFFICIAL STANFORD INVESTORS COMMITTEE; PAM REED; SAMUEL TROICE; and MICHOACAN TRUST; individually and on behalf of a class of all others similarly situated, | |
| Plaintiffs, | Civil Action No. 3:12-cv-04641-N |
| v. | |
| GREENBERG TRAURIG, LLP; HUNTON & WILLIAMS, LLP; AND YOLANDA SUAREZ, | |
| Defendants. | |

## NOTICE OF SETTLEMENT AND BAR ORDER PROCEEDINGS

PLEASE TAKE NOTICE that Ralph S. Janvey, in his capacity as the Court-appointed Receiver for the Stanford Receivership Estate (the "Receiver"), the Official Stanford Investors Committee (the "Committee"), and Pam Reed, Samuel Troice, and Michoacan Trust, individually and on behalf of a putative class of Stanford investors (collectively, the "Investor

**EXHIBIT A**

Plaintiffs," and with the Receiver and the Committee, the "Plaintiffs"), have reached an agreement (the "Settlement Agreement") to settle all claims asserted or that could have been asserted against Hunton & Williams LLP ("Hunton") in *Janvey v. Greenberg Traurig LLP et al.*, No. 3:12-cv-04641-N (N.D. Tex.) (the "Litigation").

PLEASE TAKE FURTHER NOTICE that the Plaintiffs have filed an Expedited Request for Entry of Scheduling Order and Motion to Approve Proposed Settlement with Hunton & Williams LLP, to Approve the Proposed Notice of Settlement with Hunton & Williams LLP, to Enter the Bar Order, to Enter the Rule 54(b) Final Judgment and Bar Order, and for Plaintiffs' Attorneys' Fees (the "Motion"), filed in *SEC v. Stanford Int'l Bank, Ltd.*, No. 3:09-cv-0298-N (N.D. Tex.) (the "SEC Action").   Copies of the Settlement Agreement, the Motion, and other supporting papers may be obtained from the Court's docket in the SEC Action [ECF No. ____], and are also available on the websites of the Receiver (http://www.stanfordfinancialreceivership.com) and the Examiner (www.lpf-law.com/examiner-stanford-financial-group/).  Copies of these documents may also be requested by email, by sending the request to Ivonne Soler at soler@butzel.com; or by telephone, by calling (313) 225-7048.  All capitalized terms not defined in this Notice of Settlement and Bar Order Proceedings are defined in the Settlement Agreement, attached as Exhibit 1 of the Appendix to the Motion.

PLEASE TAKE FURTHER NOTICE that the Motion requests that the Court approve the Settlement and enter a bar order permanently enjoining, among others, Interested Parties,[1]

---

[1]  "Interested Parties" means the Receiver; the Receivership Estate, the Committee, the members of the Committee; the Plaintiffs; the Stanford Investors; the Claimants; the Examiner; or any Person or Persons alleged by the Receiver, the Committee, or other Person or entity on behalf of the Receivership Estate to be liable to the Receivership Estate, whether or not a formal proceeding has been initiated.

2

**EXHIBIT A**

including Stanford Investors,[2] and Claimants,[3] from pursuing Settled Claims,[4] including claims you may possess, against Hunton.

PLEASE TAKE FURTHER NOTICE that the settlement amount is thirty-four million U.S. dollars ($34,000,000.00) (the "Settlement Amount"). The Settlement Amount, less any fees and costs awarded by the Court to the attorneys for Plaintiffs and expenses paid by the Receiver (the "Net Settlement Amount"), will be deposited with and distributed by the Receiver pursuant to a Distribution Plan hereafter to be approved by the Court in the SEC Action (*see* subparagraph e below).

**This matter may affect your rights and you may wish to consult an attorney.**

The material terms of the Settlement Agreement are as follows:

a) Hunton will pay $34 million, which will be deposited with the Receiver as required pursuant to the Settlement Agreement;

b) Plaintiffs will fully release the Hunton Released Parties[5] from Settled Claims, *e.g.*, claims arising from or relating to Robert Allen Stanford, the Stanford

---

[2] "Stanford Investors" means customers of Stanford International Bank, Ltd., who, as of February 16, 2009, had funds on deposit at Stanford International Bank, Ltd., and/or were holding certificates of deposit issued by Stanford International Bank, Ltd.

[3] "Claimants" means any Persons who have submitted a Claim to the Receiver or to the Joint Liquidators.

[4] "Settled Claims" generally means any action, cause of action, suit, liability, claim, right of action, right of levy or attachment, or demand whatsoever, whether or not currently asserted, known, suspected, existing, or discoverable, and whether based on federal law, state law, foreign law, common law, or otherwise, and whether based on contract, tort, statute, law, equity or otherwise, that a Releasor ever had, now has, or hereafter can, shall, or may have, directly, representatively, derivatively, or in any other capacity, for, upon, arising from, relating to, or by reason of any matter, cause, or thing whatsoever, that, in full or in part, concerns, relates to, arises out of, or is in any manner connected with (i) the Stanford Entities; (ii) any CD, depository account, or investment of any type with any one or more of the Stanford Entities; (iii) Hunton's relationship with any one or more of the Stanford Entities and/or any of their personnel; (iv) Hunton's provision of services to or for the benefit of or on behalf of the Stanford Entities; or (v) any matter that was asserted in, could have been asserted in, or relates to the subject matter of the SEC Action, the Litigation, or any proceeding concerning the Stanford Entities pending or commenced in any Forum. "Settled Claims" specifically includes, without limitation, all claims each Releasor does not know or suspect to exist in his, her, or its favor at the time of release, which, if known by that Person, might have affected their decisions with respect to the Settlement Agreement and the Settlement. *See* Paragraph 17 of the Settlement Agreement for a complete definition of Settled Claim. [ECF No. ___.]

Entities,[6] or any conduct by the Hunton Released Parties relating to Robert Allen Stanford or the Stanford Entities, with prejudice;

c) The Settlement Agreement requires entry of a Rule 54(b) Final Judgment and Bar Order in the Litigation, and entry of a Final Bar Order in the SEC Action, each of which permanently enjoins, among others, Interested Parties, including all Stanford Investors and Claimants, from bringing, encouraging, assisting, continuing, or prosecuting, against Hunton or any of the Hunton Released Parties, the Litigation, or any action, lawsuit, cause of action, claim, investigation, demand, complaint, or proceeding of any nature, including, without limitation, contribution or indemnity claims, arising from or relating to a Settled Claim;

d) The Receiver will disseminate notice of the Settlement Agreement (i.e. this Notice) to Interested Parties, through one or more of the following:  mail,

---

[5]  "Hunton Released Parties" means Hunton, and all of its predecessor firms and, of each of the foregoing, all of their respective past and present subsidiaries, parents, successors and predecessors, affiliates, related entities and divisions, and all of their respective current and former partners, members, counsel, principals, participating principals, associates, managing or other agents, management personnel, officers, directors, shareholders, administrators, servants, employees, staff, consultants, advisors, attorneys, accountants, lenders, insurers and reinsurers, representatives, successors and assigns, known or unknown, in their representative capacity or individual capacity. "Hunton Released Parties" shall include Carlos Loumiet in his individual capacity relating to alleged conduct or knowledge while employed by or affiliated with Hunton or Greenberg Traurig LLP ("Greenberg").  Notwithstanding the foregoing, "Hunton Released Parties" shall not include any Person, other than Hunton or Loumiet, against whom, as of the Agreement Date, any of the Plaintiffs is asserting a claim or cause of action in any judicial proceeding, and also shall not include any Person who becomes employed by, related to, or affiliated with Hunton after the Agreement Date and whose liability, if any, arises solely out of or derives solely from their actions or omissions before becoming employed by, related to, or affiliated with Hunton.  For the avoidance of doubt, "Hunton Released Parties" does not include Greenberg or Yolanda Suarez ("Suarez"), and it is the Parties' intent that the Settlement shall have no impact whatsoever on the claims asserted by Plaintiffs against Greenberg and Suarez in the Litigation.

[6]  "Stanford Entities" means Robert Allen Stanford; James M. Davis; Laura Pendergest-Holt; Gilbert Lopez; Mark Kuhrt; SIB; Stanford Group Company; Stanford Capital Management, LLC; Stanford Financial Group; the Stanford Financial Bldg Inc.; the entities listed in Exhibit D to the Settlement Agreement [ECF No.    ]; and any entity of any type that was owned, controlled by, or affiliated with Robert Allen Stanford, James M. Davis, Laura Pendergest-Holt, Gilbert Lopez, Mark Kuhrt, SIB, Stanford Group Company, Stanford Capital Management, LLC, Stanford Financial Group, or the Stanford Financial Bldg Inc., on or before February 16, 2009.

EXHIBIT A

email, international delivery, CM/ECF notification, facsimile transmission, and/or publication on the websites maintained by the Examiner (www.lpf-law.com/examiner-stanford-financial-group/) and the Receiver (http://www.stanfordfinancialreceivership.com);

e) The Receiver will develop and submit to the Court for approval a plan for distributing the Net Settlement Amount (the "Distribution Plan");

f) Under the Distribution Plan, once approved, the Net Settlement Amount will be distributed by the Receiver, under the supervision of the Court, to Stanford Investors who have submitted Claims that have been allowed by the Receiver;

g) Persons who accept funds from the Settlement Amount will, upon accepting the funds, fully release the Hunton Released Parties from any and all Settled Claims; and

h) The Litigation will be dismissed with prejudice as to Hunton, with each party bearing its own costs and attorneys' fees.

Attorneys for the Plaintiffs seek a fee award based upon 25% of the Settlement Amount, pursuant to 25% contingency fee agreements with the Plaintiffs. Twenty-five percent of the net recovery from the Settlement is to be calculated but shall not exceed $8,500,000.00.

The final hearing on the Motion is set for [_____] (the "Final Approval Hearing"). Any objection to the Settlement Agreement or its terms, the Motion, the Rule 54(b) Final Judgment and Bar Order, the Final Bar Order, or the request for approval of the Plaintiffs' attorneys' fees must be filed, in writing, with the Court in the SEC Action no later than [insert date of 21st day before Final Approval Hearing]. Any objections not filed by this date will be deemed waived and will not be considered by the Court. Those wishing to appear and to orally

5

**EXHIBIT A**

present their written objections at the Final Approval Hearing must include a request to so appear

within their written objections.

**EXHIBIT A**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:09-CV-0298-N |
| STANFORD INTERNATIONAL BANK, LTD., *et al.*, | § § § | |
| Defendants. | § § | |

**FINAL BAR ORDER**

Before the Court is the Expedited Request for Entry of Scheduling Order and Motion to

Approve Proposed Settlement with Hunton & Williams LLP, to Approve the Proposed Notice of

Settlement with Hunton & Williams LLP, to Enter the Bar Order, to Enter the Rule 54(b) Final

Judgment and Bar Order, and for Plaintiffs' Attorneys' Fees (the "Motion") of Ralph S. Janvey,

in his capacity as the Court-appointed Receiver for the Stanford Receivership Estate (the

"Receiver"), the Court-appointed Official Stanford Investors Committee (the "Committee"), Pam

Reed, Samuel Troice, and Michoacan Trust individually and on behalf of a putative class of

Stanford investors (collectively, the "Investor Plaintiffs"), the plaintiffs in *Janvey et al. v.*

*Greenberg Traurig, LLP et al.*, Civil Action No. 3:12-cv-04641-N (N.D. Tex.) (the "Litigation")

(collectively, the Receiver, the Committee and the Investor Plaintiffs are referred to as the

"Plaintiffs"). [ECF No. ____.]  The Motion concerns a proposed settlement (the "Settlement")

among and between the Plaintiffs and Hunton & Williams LLP ("Hunton"), one of the

defendants in the Litigation.  Plaintiffs and Hunton are referred to together as the "Parties."  John

**EXHIBIT B**

J. Little, the Court-appointed Examiner (the "Examiner") signed the Settlement Agreement[1] as chair of the Committee and as Examiner solely to evidence his support and approval of the Settlement and to confirm his obligation to post the Notice on his website, but is not otherwise individually a party to the Settlement or the Litigation.

Following notice and a hearing, and having considered the filings and heard the arguments of counsel, the Court hereby GRANTS the Motion.

## I. INTRODUCTION

The Litigation and this case both arise from a series of events leading to the collapse of Stanford International Bank, Ltd. ("SIBL"). On February 16, 2009, this Court appointed Ralph S. Janvey to be the Receiver for SIBL and related parties (the "Stanford Entities"). [ECF No. 10]. After years of diligent investigation, the Plaintiffs believe that they have identified claims against a number of third parties, including Hunton, that Plaintiffs allege enabled the Stanford Ponzi scheme. In the Litigation, the Plaintiffs assert claims against Hunton, and other defendants in that action, for negligence, aiding and abetting breaches of fiduciary duties, breaches of fiduciary duties, fraudulent transfer/unjust enrichment, aiding and abetting fraudulent transfers, negligent retention, aiding and abetting violations of the Texas Securities Act, aiding and abetting a fraudulent scheme, and civil conspiracy.[2] Hunton denies that it is liable for any of those claims and asserts numerous defenses to each of those claims.

---

[1] The "Settlement Agreement" refers to the Settlement Agreement that is attached as Exhibit 1 of the Appendix to the Motion [ECF No. __].

[2] By Orders in the Litigation dated December 17, 2014 [ECF No. 114] and February 4, 2015 [ECF No. 123], the Court granted in part and denied in part Hunton's motions to dismiss the Complaint, dismissing with prejudice (i) the Receiver and Committee's claims for aiding and abetting fraudulent transfers; (ii) the Investor Plaintiffs' TSA claims for aiding and abetting and civil conspiracy for the sale of unregistered securities and the sale of securities by an unregistered dealer arising from sales taking place prior to February 1, 2008; (iii) the Investor Plaintiffs' TSA claims for aiding and abetting and civil conspiracy for the sale of securities through untruth or omission arising from

**EXHIBIT B**

Multiparty settlement negotiations occurred in late 2012, in October 2016, and again in early 2017. In these negotiations, potential victims of the Stanford Ponzi scheme were well-represented. The Investor Plaintiffs, the Committee—which the Court appointed to "represent[] in this case and related matters" the "customers of SIBL who, as of February 16, 2009, had funds on deposit at SIBL and/or were holding certificates of deposit issued by SIBL (the 'Stanford Investors')" [ECF No. 1149]—the Receiver, and the Examiner—who the Court appointed to advocate on behalf of "investors in any financial products, accounts, vehicles or ventures sponsored, promoted or sold by any Defendant in this action" [ECF No. 322]—all participated in these extensive, arm's-length negotiations. In May 2017, the Parties reached agreement resulting in the Settlement. For several weeks thereafter, the Parties continued efforts to negotiate and document the terms of the Settlement Agreement. The Parties executed the Settlement Agreement on _____, 2017.

Under the terms of the Settlement, Hunton will pay $34 million (the "Settlement Amount") to the Receivership Estate, which (less attorneys' fees and expenses) will be distributed to Stanford Investors. In return, Hunton seeks total peace with respect to all claims that have been, or could have been, asserted against Hunton or any other of the Hunton Released Parties, arising out of the events leading to these proceedings. Accordingly, the Settlement is conditioned on the Court's approval and entry of this Final Bar Order enjoining Interested Parties from asserting or prosecuting claims against Hunton or any other of the Hunton Released Parties.

On ____ __, 2017, the Plaintiffs filed the Motion. [ECF No. ____]. The Court thereafter entered a Scheduling Order on____ __, 2017 [ECF No. ____], which, *inter alia*, authorized the

---

sales taking place prior to February 1, 2006; dismissing without prejudice the Receiver and Committee's claims for breach of fiduciary duty, and declining to dismiss the Plaintiffs' other claims against Hunton.

**Final Bar Order**                                        3

**EXHIBIT B**

Receiver to provide notice of the Settlement, established a briefing schedule on the Motion, and set the date for a hearing. On _____, the Court held the scheduled hearing.  For the reasons set forth herein, the Court finds that the terms of the Settlement Agreement are adequate, fair, reasonable, and equitable, and that the Settlement should be and is hereby **APPROVED**. The Court further finds that entry of this Final Bar Order is appropriate and necessary.

## II. ORDER

It is hereby **ORDERED, ADJUDGED, AND DECREED** as follows:

1.      Terms used in this Final Bar Order that are defined in the Settlement Agreement, unless expressly otherwise defined herein, have the same meaning as in the Settlement Agreement (which is deemed incorporated herein by reference).

2.      The Court has "broad powers and wide discretion to determine the appropriate relief in [this] equity receivership," including the authority to enter the Final Bar Order.  *SEC v. Kaleta*, 530 F. App'x 360, 362 (5th Cir. 2013) (internal quotations omitted).  Moreover, the Court has jurisdiction over the subject matter of this action, and the Plaintiffs are proper parties to seek entry of this Final Bar Order.

3.      The Court finds that the methodology, form, content, and dissemination of the Notice: (i) were implemented in accordance with the requirements of the Scheduling Order; (ii) constituted the best practicable notice; (iii) were reasonably calculated, under the circumstances, to apprise all Interested Parties of the Settlement, the releases therein, and the injunctions provided for in this Final Bar Order and in the Rule 54(b) Final Judgment and Bar Order to be entered in the Litigation; (iv) were reasonably calculated, under the circumstances, to apprise all Interested Parties of the right to object to the Settlement, this Final Bar Order, and the Rule 54(b) Final Judgment and Bar Order to be entered in the Litigation, and to appear at the

**FINAL BAR ORDER**                                      4

Final Approval Hearing; (v) were reasonable and constituted due, adequate, and sufficient notice; (vi) met all applicable requirements of law, including, without limitation, the Federal Rules of Civil Procedure, the United States Constitution (including Due Process), and the Rules of the Court; and (vii) provided to all Persons a full and fair opportunity to be heard on these matters.

4.      The Court finds that the Settlement, including, without limitation, the Settlement Amount, was reached following an extensive investigation of the facts and resulted from vigorous, good faith, arm's-length, mediated negotiations involving experienced and competent counsel. The Court further finds that (i) significant issues exist as to the merits and value of the claims asserted against Hunton by Plaintiffs and by others whose potential claims are foreclosed by this Final Bar Order; (ii) such claims contain complex and novel issues of law and fact that would require a substantial amount of time and expense to litigate, with uncertainty regarding whether such claims would be successful; (iii) a significant risk exists that future litigation costs would dissipate Receivership Assets and that Plaintiffs and other persons who have submitted claims to the Receiver ("Claimants") may not ultimately prevail on their claims; (iv) Plaintiffs and Claimants who have filed Claims with the Receiver will receive partial satisfaction of their claims from the Settlement Amount being paid pursuant to the Settlement; and (v) Hunton would not have agreed to the terms of the Settlement in the absence of this Final Bar Order and assurance of "total peace" with respect to all claims that have been, or could be, asserted arising from its relationship with the Stanford Entities. *See SEC v. Kaleta*, No. 4:09-3674, 2012 WL 401069, at *4 (S.D. Tex. Feb. 7, 2012), *aff'd*, 530 F. App'x 360 (5th Cir. 2013) (approving these factors for consideration in evaluating whether a settlement and bar order are sufficient, fair, and necessary).  The injunction against such claims as set forth herein is therefore a necessary and appropriate order ancillary to the relief obtained for victims of the Stanford Ponzi scheme

**EXHIBIT B**

pursuant to the Settlement.  *See Kaleta*, 530 F. App'x at 362 (affirming a bar order and injunction against investor claims as "ancillary relief" to a settlement in an SEC receivership proceeding).  After careful consideration of the record and applicable law, the Court concludes that the Settlement is the best option for maximizing the net amount recoverable from Hunton for the Receivership Estate, Plaintiffs, and the Claimants.

5.      Pursuant to the Settlement Agreement and upon motion by the Receiver, this Court will approve a Distribution Plan that will fairly and reasonably distribute the net proceeds of the Settlement to Stanford Investors who have Claims approved by the Receiver.  The Court finds that the Receiver's claims process and the Distribution Plan contemplated in the Settlement Agreement have been designed to ensure that all Stanford Investors have received an opportunity to pursue their Claims through the Receiver's claims process previously approved by the Court [ECF No. 1584].

6.      The Court further finds that the Parties and their counsel have at all times complied with the requirements of Rule 11 of the Federal Rules of Civil Procedure.

7.      Accordingly, the Court finds that the Settlement is, in all respects, fair, reasonable, and adequate, and in the best interests of all Persons claiming an interest in, having authority over, or asserting a claim against Hunton, the Stanford Entities, or the Receivership Estate, including but not limited to the Plaintiffs and the Interested Parties. The Court also finds that this Final Bar Order is a necessary component to achieve the Settlement. The Settlement, the terms of which are set forth in the Settlement Agreement, is hereby fully and finally approved. The Parties are directed to implement and consummate the Settlement in accordance with the terms and provisions of the Settlement Agreement and this Final Bar Order.

**EXHIBIT B**

8.      Pursuant to the provisions of 38 of the Settlement Agreement, as of the Settlement Effective Date, Hunton and the rest of the Hunton Released Parties shall be completely released, acquitted, and forever discharged from any action, cause of action, suit, liability, claim, right of action, or demand whatsoever, whether or not currently asserted, known, suspected, existing, or discoverable, and whether based on federal law, state law, foreign law, common law, or otherwise, and whether based on contract, tort, statute, law, equity or otherwise, that the Investor Plaintiffs; the Receiver; the Receivership Estate; the Committee; the Claimants; and the Persons, entities and interests represented by those Parties ever had, now has, or hereafter can, shall, or may have, directly, representatively, derivatively, or in any other capacity, for, upon, arising from, relating to, or by reason of any matter, cause, or thing whatsoever, that, in full or in part, concerns, relates to, arises out of, or is in any manner connected with (i) the Stanford Entities; (ii) any certificate of deposit, depository account, or investment of any type with any one or more of the Stanford Entities; (iii) Hunton's relationship with any one or more of the Stanford Entities and/or any of their personnel; (iv) Hunton's provision of services to or for the benefit of or on behalf of the Stanford Entities; or (v) any matter that was asserted in, could have been asserted in, or relates to the subject matter of this action, the Litigation, or any proceeding concerning the Stanford Entities pending or commenced in any Forum.

9.      Pursuant to the provisions of Paragraph 39 of the Settlement Agreement, as of the Settlement Effective Date, the Plaintiffs Released Parties shall be completely released, acquitted, and forever discharged from all Settled Claims by Hunton.

10.      Notwithstanding anything to the contrary in this Final Bar Order, the foregoing releases do not release the Parties' rights and obligations under the Settlement or the Settlement Agreement or bar the Parties from enforcing or effectuating the terms of the Settlement or the

**EXHIBIT B**

Settlement Agreement.  Additionally, the foregoing releases do not release any claims or causes of action that Plaintiffs have or may have against Greenberg Traurig, LLP ("Greenberg"), or Yolanda Suarez ("Suarez"), including but not limited to any claims or causes of action based on the conduct of Carlos Loumiet while employed by or affiliated with Greenberg.  Further, the foregoing releases do not bar or release any claims, including but not limited to the Settled Claims, that Hunton or Carlos Loumiet may have against any Hunton Released Party, including but not limited to Hunton's insurers, reinsurers, employees, and agents.

11.     The Court hereby permanently bars, restrains, and enjoins the Plaintiffs, the Claimants, the Interested Parties, and all other Persons or entities anywhere in the world, whether acting in concert with the foregoing or claiming by, through, or under the foregoing, or otherwise, all and individually, from directly, indirectly, or through a third party, instituting, reinstituting, intervening in, initiating, commencing, maintaining, continuing, filing, encouraging, soliciting, supporting, participating in, collaborating in, or otherwise prosecuting, against Hunton or any of the Hunton Released Parties, the Litigation, or any action, lawsuit, cause of action, claim, investigation, demand, levy, complaint, or proceeding of any nature in any Forum, including, without limitation, any court of first instance or any appellate court, whether individually, derivatively, on behalf of a class, as a member of a class, or in any other capacity whatsoever, that in any way relates to, is based upon, arises from, or is connected with the Stanford Entities; this case; the subject matter of this case; the Litigation; or any Settled Claim.   The foregoing specifically includes any claim, however denominated, seeking contribution, indemnity, damages, or other remedy where the alleged injury to such Person, entity, or Interested Party, or the claim asserted by such Person, entity, or Interested Party, is based upon such Person's, entity's, or Interested Party's liability to any Plaintiff, Claimant, or

**EXHIBIT B**

Interested Party arising out of, relating to, or based in whole or in part upon money owed, demanded, requested, offered, paid, agreed to be paid, or required to be paid to any Plaintiff, Claimant, Interested Party, or other Person or entity, whether pursuant to a demand, judgment, claim, agreement, settlement or otherwise.  Notwithstanding the foregoing, there shall be no bar of any claims, including but not limited to the Settled Claims, that Hunton or Carlos Loumiet may have against any Hunton Released Party, including but not limited to Hunton's insurers, reinsurers, employees and agents.  Additionally, the foregoing shall not affect the Plaintiffs' claims against Greenberg or Suarez, including but not limited to any claims or causes of action based on the conduct of Carlos Loumiet while employed by or affiliated with Greenberg. Further, the Parties retain the right to sue for alleged breaches of the Settlement Agreement.

12.     The releases and the covenants not to sue set forth in the Settlement Agreement, and the releases, bars, injunctions, and restraints set forth in this Final Bar Order, do not limit in any way the evidence that Plaintiffs may offer against the remaining defendants in the Litigation.

13.     Nothing in this Final Bar Order shall impair or affect or be construed to impair or affect in any way whatsoever, any right of any Person, entity, or Interested Party to: (a) claim a credit or offset, however determined or quantified, if and to the extent provided by any applicable statute, code, or rule of law, against any judgment amount, based upon the Settlement or payment of the Settlement Amount; (b) designate a "responsible third party" or "settling person" under Chapter 33 of the Texas Civil Practice and Remedies Code; or (c) take discovery under applicable rules in litigation; provided for the avoidance of doubt that nothing in this paragraph shall be interpreted to permit or authorize any action or claim seeking to impose any liability of any kind (including but not limited to liability for contribution, indemnification or otherwise) upon Hunton or any other Hunton Released Party.

FINAL BAR ORDER                                   9

**EXHIBIT B**

14.     Hunton and the rest of the Hunton Released Parties have no responsibility, obligation, or liability whatsoever with respect to the content of the Notice; the notice process; the Distribution Plan; the implementation of the Distribution Plan; the administration of the Settlement; the management, investment, distribution, allocation, or other administration or oversight of the Settlement Amount, any other funds paid or received in connection with the Settlement, or any portion thereof; the payment or withholding of Taxes; the determination, administration, calculation, review, or challenge of claims to the Settlement Amount, any portion of the Settlement Amount, or any other funds paid or received in connection with the Settlement or the Settlement Agreement; or any losses, attorneys' fees, expenses, vendor payments, expert payments, or other costs incurred in connection with any of the foregoing matters.  No appeal, challenge, decision, or other matter concerning any subject set forth in this paragraph shall operate to terminate or cancel the Settlement, the Settlement Agreement, or this Final Bar Order.

15.     Nothing in this Final Bar Order or the Settlement Agreement and no aspect of the Settlement or negotiation or mediation thereof is or shall be construed to be an admission or concession of any violation of any statute or law, of any fault, liability, or wrongdoing, or of any infirmity in the claims or defenses of the Parties with regard to any of the complaints, claims, allegations, or defenses in the Litigation, or any other proceeding.

16.     Hunton is hereby ordered to deliver or cause to be delivered the Settlement Amount ($34 million) as described in Paragraph 24 of the Settlement Agreement.  Further, the Parties are ordered to act in conformity with all other provisions of the Settlement Agreement.

17.     Without in any way affecting the finality of this Final Bar Order, the Court retains continuing and exclusive jurisdiction over the Parties for purposes of, among other things, the administration, interpretation, consummation, and enforcement of the Settlement, the Settlement

**EXHIBIT B**

Agreement, the Scheduling Order, and this Final Bar Order, including, without limitation, the injunctions, bar orders, and releases herein, and to enter orders concerning implementation of the Settlement, the Settlement Agreement, the Distribution Plan, and any payment of attorneys' fees and expenses to Plaintiffs' counsel.

18.     The Court expressly finds and determines, pursuant to Federal Rule of Civil Procedure 54(b), that there is no just reason for any delay in the entry of this Final Bar Order, which is both final and appealable, and immediate entry by the Clerk of the Court is expressly directed.

19.     This Final Bar Order shall be served by counsel for the Plaintiffs, via email, first class mail or international delivery service, on any person or entity that filed an objection to approval of the Settlement, the Settlement Agreement, or this Final Bar Order.

Signed on _____

_____
DAVID C. GODBEY
UNITED STATES DISTRICT JUDGE

**EXHIBIT B**

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

RALPH S. JANVEY, in his capacity as Court-appointed receiver for the Stanford Receivership Estate; the OFFICIAL STANFORD INVESTORS COMMITTEE; PAM REED; SAMUEL TROICE; and MICHOACAN TRUST; individually and on behalf of a class of all others similarly situated,

v.

GREENBERG TRAURIG, LLP; HUNTON & WILLIAMS, LLP; AND YOLANDA SUAREZ,

Civil Action No. 3:12-cv-04641-N

## RULE 54(b) FINAL JUDGMENT AND BAR ORDER

Before the Court is the Expedited Request for Entry of Scheduling Order and Motion to Approve Proposed Settlement with Hunton & Williams LLP, to Approve the Proposed Notice of Settlement with Hunton & Williams LLP, to Enter the Bar Order, to Enter the Rule 54(b) Final Judgment and Bar Order, and for Plaintiffs' Attorneys' Fees (the "Motion") of Plaintiffs Ralph S. Janvey, in his capacity as the Court-appointed Receiver for the Stanford Receivership Estate (the "Receiver") in *SEC v. Stanford International Bank, Ltd.*, Civil Action No. 3:09-CV-0928-N (the "SEC Action"), the Court-appointed Official Stanford Investors Committee (the "Committee"), and Pam Reed, Samuel Troice, and Michoacan Trust individually and on behalf of a putative class of Stanford investors (collectively, the "Investor Plaintiffs") (collectively, the Receiver, the Committee and the Investor Plaintiffs are referred to as the "Plaintiffs"). [ECF No. ____.] The

**EXHIBIT C**

Motion concerns a proposed settlement (the "Settlement") among and between the Plaintiffs and Hunton & Williams LLP ("Hunton"), one of the defendants in this action. Plaintiffs and Hunton are referred to together as the "Parties." John J. Little, the Court-appointed Examiner (the "Examiner") signed the Settlement Agreement[1] as chair of the Committee and as Examiner solely to evidence his support and approval of the Settlement and to confirm his obligation to post the Notice on his website, but is not otherwise individually a party to the Settlement or this action.

Following notice and a hearing, and having considered the filings and heard the arguments of counsel, the Court hereby GRANTS the Motion.

## I.   INTRODUCTION

The SEC Action and this case both arise from a series of events leading to the collapse of Stanford International Bank, Ltd. ("SIBL"). On February 16, 2009, this Court appointed Ralph S. Janvey to be the Receiver for SIBL and related parties (the "Stanford Entities"). [SEC Action, ECF No. 10]. After years of diligent investigation, the Plaintiffs believe that they have identified claims against a number of third parties, including Hunton, that Plaintiffs allege enabled the Stanford Ponzi scheme. In this action, the Plaintiffs assert claims against Hunton, and other defendants, for negligence, aiding and abetting breaches of fiduciary duties, breaches of fiduciary duties, fraudulent transfer/unjust enrichment, aiding and abetting fraudulent transfers, negligent retention, aiding and abetting violations of the Texas Securities Act ("TSA"), aiding

---

[1] The "Settlement Agreement" refers to the Settlement Agreement that is attached as Exhibit 1 of the Appendix to the Motion [ECF No. __].

**EXHIBIT C**

and abetting a fraudulent scheme, and civil conspiracy.[2]  Hunton denies that it is liable for any of those claims and asserts numerous defenses to each of those claims.

Multiparty settlement negotiations occurred in late 2012, in October 2016, and again in early 2017.  In these negotiations, potential victims of the Stanford Ponzi scheme were well-represented.  The Investor Plaintiffs, the Committee—which the Court appointed to "represent[] in this case and related matters" the "customers of SIBL who, as of February 16, 2009, had funds on deposit at SIBL and/or were holding certificates of deposit issued by SIBL (the 'Stanford Investors')" [SEC Action, ECF No. 1149]—the Receiver, and the Examiner—who the Court appointed to advocate on behalf of "investors in any financial products, accounts, vehicles or ventures sponsored, promoted or sold by any Defendant in this action" [SEC Action, ECF No. 322]—all participated in these extensive, arm's-length negotiations.  In May 2017, the Parties reached agreement resulting in the Settlement.  For several weeks thereafter, the Parties continued efforts to negotiate and document the terms of the Settlement Agreement. The Parties executed the Settlement Agreement on _____, 2017.

Under the terms of the Settlement, Hunton will pay $34 million (the "Settlement Amount") to the Receivership Estate, which (less attorneys' fees and expenses) will be distributed to Stanford Investors.  In return, Hunton seeks total peace with respect to all claims that have been, or could have been, asserted against Hunton or any other of the Hunton Released Parties, arising out of the events leading to these proceedings. Accordingly, the Settlement is

---

[2] By Orders dated December 17, 2014 [ECF No. 114] and February 4, 2015 [ECF No. 123], the Court granted in part and denied in part Hunton's motions to dismiss the Complaint, dismissing with prejudice (i) the Receiver and Committee's claims for aiding and abetting fraudulent transfers; (ii) the Investor Plaintiffs' TSA claims for aiding and abetting and civil conspiracy for the sale of unregistered securities and the sale of securities by an unregistered dealer arising from sales taking place prior to February 1, 2008; (iii) the Investor Plaintiffs' TSA claims for aiding and abetting and civil conspiracy for the sale of securities through untruth or omission arising from sales taking place prior to February 1, 2006; dismissing without prejudice the Receiver and Committee's claims for breach of fiduciary duty, and declining to dismiss the Plaintiffs' other claims against Hunton.

EXHIBIT C

conditioned on the Court's approval and entry of this Final Judgment and Bar Order enjoining Interested Parties from asserting or prosecuting claims against Hunton or any other of the Hunton Released Parties.

On ____ __, 2017, the Plaintiffs filed the Motion. [ECF No. ____]. The Court thereafter entered a Scheduling Order on____ __, 2017 [ECF No. ____], which, *inter alia*, authorized the Receiver to provide notice of the Settlement, established a briefing schedule on the Motion, and set the date for a hearing. On _____, the Court held the scheduled hearing.  For the reasons set forth herein, the Court finds that the terms of the Settlement Agreement are adequate, fair, reasonable, and equitable, and that the Settlement should be and is hereby **APPROVED**. The Court further finds that entry of this Final Judgment and Bar Order is appropriate and necessary.

**II.     ORDER**

It is hereby **ORDERED, ADJUDGED, AND DECREED** as follows:

1.     Terms used in this Final Judgment and Bar Order that are defined in the Settlement Agreement, unless expressly otherwise defined herein, have the same meaning as in the Settlement Agreement (which is deemed incorporated herein by reference).

2.     The Court has "broad powers and wide discretion to determine the appropriate relief in [this] equity receivership," including the authority to enter the Final Judgment and Bar Order.  *SEC* v. *Kaleta*, 530 F. App'x 360, 362 (5th Cir. 2013) (internal quotations omitted). Moreover, the Court has jurisdiction over the subject matter of this action, and the Plaintiffs are proper parties to seek entry of this Final Judgment and Bar Order.

3.     The Court finds that the methodology, form, content and dissemination of the Notice: (i) were implemented in accordance with the requirements of the Scheduling Order;

**EXHIBIT C**

(ii) constituted the best practicable notice; (iii) were reasonably calculated, under the circumstances, to apprise all Interested Parties of the Settlement, the releases therein, and the injunctions provided for in this Final Judgment and Bar Order and in the Final Bar Order to be entered in the SEC Action; (iv) were reasonably calculated, under the circumstances, to apprise all Interested Parties of the right to object to the Settlement, this Final Judgment and Bar Order, and the Final Bar Order to be entered in the SEC Action, and to appear at the Final Approval Hearing; (v) were reasonable and constituted due, adequate, and sufficient notice; (vi) met all applicable requirements of law, including, without limitation, the Federal Rules of Civil Procedure, the United States Constitution (including Due Process), and the Rules of the Court; and (vii) provided to all Persons a full and fair opportunity to be heard on these matters.

4.     The Court finds that the Settlement, including, without limitation, the Settlement Amount, was reached following an extensive investigation of the facts and resulted from vigorous, good-faith, arm's-length, mediated negotiations involving experienced and competent counsel.  The Court further finds that (i) significant issues exist as to the merits and value of the claims asserted against Hunton by Plaintiffs and by others whose potential claims are foreclosed by this Final Judgment and Bar Order; (ii) such claims contain complex and novel issues of law and fact that would require a substantial amount of time and expense to litigate, with uncertainty regarding whether such claims would be successful; (iii) a significant risk exists that future litigation costs would dissipate Receivership Assets and that Plaintiffs and other persons who have submitted claims to the Receiver ("Claimants") may not ultimately prevail on their claims; (iv) Plaintiffs and Claimants who have filed Claims with the Receiver will receive partial satisfaction of their claims from the Settlement Amount being paid pursuant to the Settlement; and (v) Hunton would not have agreed to the terms of the Settlement in the absence of this Final

**EXHIBIT C**

Judgment and Bar Order unless it was assured of "total peace" with respect to all claims that have been, or could be, asserted arising from its relationship with the Stanford Entities. *See SEC v. Kaleta*, No. 4:09-3674, 2012 WL 401069, at *4 (S.D. Tex. Feb. 7, 2012), *aff'd*, 530 F. App'x 360 (5th Cir. 2013) (approving these factors for consideration in evaluating whether a settlement and bar order are sufficient, fair, and necessary). The injunction against such claims as set forth herein is therefore a necessary and appropriate order ancillary to the relief obtained for victims of the Stanford Ponzi scheme pursuant to the Settlement. *See Kaleta*, 530 F. App'x at 362 (affirming a bar order and injunction against investor claims as "ancillary relief" to a settlement in an SEC receivership proceeding). After careful consideration of the record and applicable law, the Court concludes that the Settlement is the best option for maximizing the net amount recovered from Hunton for the Receivership Estate, Plaintiffs, and the Claimants.

5.      Pursuant to the Settlement Agreement and upon motion by the Receiver in the SEC Action, this Court will approve a Distribution Plan that will fairly and reasonably distribute the net proceeds of the Settlement to Stanford Investors who have Claims approved by the Receiver. The Court finds that the Receiver's claims process and the Distribution Plan contemplated in the Settlement Agreement have been designed to ensure that all Stanford Investors have received an opportunity to pursue their Claims through the Receiver's claims process previously approved by the Court [SEC Action, ECF No. 1584].

6.      The Court further finds that the Parties and their counsel have at all times complied with the requirements of Rule 11 of the Federal Rules of Civil Procedure.

7.      Accordingly, the Court finds that the Settlement is, in all respects, fair, reasonable, and adequate, and in the best interests of all Persons claiming an interest in, having authority over, or asserting a claim against Hunton, the Stanford Entities, or the Receivership

**EXHIBIT C**

Estate, including but not limited to the Plaintiffs and the Interested Parties.  The Court also finds that this Final Judgment and Bar Order is a necessary component to achieve the Settlement. The Settlement, the terms of which are set forth in the Settlement Agreement, is hereby fully and finally approved.  The Parties are directed to implement and consummate the Settlement in accordance with the terms and provisions of the Settlement Agreement and this Final Judgment and Bar Order.

8.      Pursuant to the provisions of Paragraph 38 of the Settlement Agreement, as of the Settlement Effective Date, Hunton and the rest of the Hunton Released Parties shall be completely released, acquitted, and forever discharged from any action, cause of action, suit, liability, claim, right of action, or demand whatsoever, whether or not currently asserted, known, suspected, existing, or discoverable, and whether based on federal law, state law, foreign law, common law, or otherwise, and whether based on contract, tort, statute, law, equity or otherwise, that the Investor Plaintiffs; the Receiver; the Receivership Estate; the Committee; the Claimants; and the Persons, entities and interests represented by those Parties ever had, now has, or hereafter can, shall, or may have, directly, representatively, derivatively, or in any other capacity, for, upon, arising from, relating to, or by reason of any matter, cause, or thing whatsoever, that, in full or in part, concerns, relates to, arises out of, or is in any manner connected with (i) the Stanford Entities; (ii) any certificate of deposit, depository account, or investment of any type with any one or more of the Stanford Entities; (iii) Hunton's relationship with any one or more of the Stanford Entities; (iv) Hunton's provision of services to or for the benefit of or on behalf of the Stanford Entities; or (v) any matter that was asserted in, could have been asserted in, or relates to the subject matter of this action, the SEC Action, or any proceeding concerning the Stanford Entities pending or commenced in any Forum.

**EXHIBIT C**

9.     Pursuant to the provisions of Paragraph 39 of the Settlement Agreement, as of the Settlement Effective Date, the Plaintiffs Released Parties shall be completely released, acquitted, and forever discharged from all Settled Claims by Hunton.

10.    Notwithstanding anything to the contrary in this Final Judgment and Bar Order, the foregoing releases do not release the Parties' rights and obligations under the Settlement or the Settlement Agreement or bar the Parties from enforcing or effectuating the terms of the Settlement or the Settlement Agreement.  Additionally, the foregoing releases do not release any claims or causes of action that Plaintiffs have or may have against Greenberg Traurig, LLP ("Greenberg"), or Yolanda Suarez ("Suarez"), including but not limited to any claims or causes of action based on the conduct of Carlos Loumiet while employed by or affiliated with Greenberg.  Further, the foregoing releases do not bar or release any claims, including but not limited to the Settled Claims, that Hunton or Carlos Loumiet may have against any Hunton Released Party, including but not limited to Hunton's insurers, reinsurers, employees, and agents.

11.    The Court hereby permanently bars, restrains, and enjoins the Receiver, the Committee, the Investor Plaintiffs, the Claimants, the Interested Parties, and all other Persons or entities anywhere in the world, whether acting in concert with the foregoing or claiming by, through, or under the foregoing, or otherwise, all and individually, from directly, indirectly, or through a third party, instituting, reinstituting, intervening in, initiating, commencing, maintaining, continuing, filing, encouraging, soliciting, supporting, participating in, collaborating in, or otherwise prosecuting, against Hunton or any of the Hunton Released Parties, this action, or any action, lawsuit, cause of action, claim, investigation, demand, levy, complaint, or proceeding of any nature in any Forum, including, without limitation, any court of first

8

**EXHIBIT C**

instance or any appellate court, whether individually, derivatively, on behalf of a class, as a member of a class, or in any other capacity whatsoever, that in any way relates to, is based upon, arises from, or is connected with the Stanford Entities; this case; the SEC Action; the subject matter of this case or the SEC Action; or any Settled Claim.  The foregoing specifically includes any claim, however denominated, seeking contribution, indemnity, damages, or other remedy where the alleged injury to such Person, entity, or Interested Party, or the claim asserted by such Person, entity, or Interested Party, is based upon such Person's, entity's, or Interested Party's liability to any Plaintiff, Claimant, or Interested Party arising out of, relating to, or based in whole or in part upon money owed, demanded, requested, offered, paid, agreed to be paid, or required to be paid to any Plaintiff, Claimant, Interested Party, or other Person or entity, whether pursuant to a demand, judgment, claim, agreement, settlement or otherwise.  Notwithstanding the foregoing, there shall be no bar of any claims, including but not limited to the Settled Claims, that Hunton or Carlos Loumiet may have against any Hunton Released Party, including but not limited to Hunton's insurers, reinsurers, employees and agents.  Additionally, the foregoing shall not affect the Plaintiffs' claims against Greenberg or Suarez, including but not limited to any claims or causes of action based on the conduct of Carlos Loumiet while employed by or affiliated with Greenberg.  Further, the Parties retain the right to sue for alleged breaches of the Settlement Agreement.

12.     The releases and the covenants not to sue set forth in the Settlement Agreement, and the releases, bars, injunctions, and restraints set forth in this Final Judgment and Bar Order, do not limit in any way the evidence that Plaintiffs may offer against the remaining defendants in this action.

**EXHIBIT C**

13.    Nothing in this Final Judgment and Bar Order shall impair or affect or be construed to impair or affect in any way whatsoever, any right of any Person, entity, or Interested Party to: (a) claim a credit or offset, however determined or quantified, if and to the extent provided by any applicable statute, code, or rule of law, against any judgment amount, based upon the Settlement or payment of the Settlement Amount; (b) designate a "responsible third party" or "settling person" under Chapter 33 of the Texas Civil Practice and Remedies Code; or (c) take discovery under applicable rules in litigation; provided for the avoidance of doubt that nothing in this paragraph shall be interpreted to permit or authorize any action or claim seeking to impose any liability of any kind (including but not limited to liability for contribution, indemnification or otherwise) upon Hunton or any other Hunton Released Party.

14.    Hunton and the rest of the Hunton Released Parties have no responsibility, obligation, or liability whatsoever with respect to the content of the Notice; the notice process; the Distribution Plan; the implementation of the Distribution Plan; the administration of the Settlement; the management, investment, distribution, allocation, or other administration or oversight of the Settlement Amount, any other funds paid or received in connection with the Settlement, or any portion thereof; the payment or withholding of Taxes; the determination, administration, calculation, review, or challenge of claims to the Settlement Amount, any portion of the Settlement Amount, or any other funds paid or received in connection with the Settlement or the Settlement Agreement; or any losses, attorneys' fees, expenses, vendor payments, expert payments, or other costs incurred in connection with any of the foregoing matters.  No appeal, challenge, decision, or other matter concerning any subject set forth in this paragraph shall operate to terminate or cancel the Settlement, the Settlement Agreement, or this Final Judgment and Bar Order.

**EXHIBIT C**

15.     Nothing in this Final Judgment and Bar Order or the Settlement Agreement and no aspect of the Settlement or negotiation or mediation thereof is or shall be construed to be an admission or concession of any violation of any statute or law, of any fault, liability, or wrongdoing, or of any infirmity in the claims or defenses of the Parties with regard to any of the complaints, claims, allegations, or defenses in this action, or any other proceeding.

16.     Hunton is hereby ordered to deliver or cause to be delivered the Settlement Amount ($34 million) as described in Paragraph 24 of the Settlement Agreement.  Further, the Parties are ordered to act in conformity with all other provisions of the Settlement Agreement.

17.     Without in any way affecting the finality of this Final Judgment and Bar Order, the Court retains continuing and exclusive jurisdiction over the Parties for purposes of, among other  things, the administration, interpretation, consummation, and enforcement of the Settlement, the Settlement Agreement, the Scheduling Order, and this Final Judgment and Bar Order, including, without limitation, the injunctions, bar orders, and releases herein, and to enter orders concerning implementation of the Settlement, the Settlement Agreement, the Distribution Plan, and any payment of attorneys' fees and expenses to Plaintiffs' counsel.

18.     The Court expressly finds and determines, pursuant to Federal Rule of Civil Procedure 54(b), that there is no just reason for any delay in the entry of this Final Judgment and Bar Order as to Hunton, which is both final and appealable as to Hunton, and immediate entry of final judgment as to Hunton by the Clerk of the Court is expressly directed.

19.     This Final Judgment and Bar Order shall be served by counsel for the Plaintiffs, via email, first class mail or international delivery service, on any person or entity that filed an objection to approval of the Settlement, the Settlement Agreement, or this Final Judgment and Bar Order.

**EXHIBIT C**

20.     All relief as to Hunton not expressly granted herein, other than Plaintiffs' request for approval of Plaintiffs' attorneys' fees, which will be addressed by a separate order, is denied. This is a final Rule 54(b) judgment.  The Clerk of the Court is directed to enter Judgment as to Hunton in conformity herewith.


Signed on _____


_____
DAVID C. GODBEY
UNITED STATES DISTRICT JUDGE

**EXHIBIT C**

## Receivership Entities

| | |
|---|---|
| 16NE Huntington, LLC | International Fixed Income Stanford Fund, Ltd. |
| 20/20 Ltd. | The Island Club, LLC |
| Antigua Athletic Club Limited | The Islands Club, Ltd. |
| The Antigua Sun Limited | JS Development, LLC |
| Apartment Household, Inc. | Maiden Island Holdings Ltd. |
| Asian Village Antigua Limited | Miller Golf Company, L.L.C. |
| Bank of Antigua Limited | Parque Cristal Ltd. |
| Boardwalk Revitalization, LLC | Pelican Island Properties Limited |
| Buckingham Investments A.V.V. | Pershore Investments S.A. |
| Caribbean Aircraft Leasing (BVI) Limited | Polygon Commodities A.V.V. |
| Caribbean Airlines Services Limited | Porpoise Industries Limited |
| Caribbean Airlines Services, Inc. | Productos y Servicios Stanford, C.A. |
| Caribbean Star Airlines Holdings Limited | R. Allen Stanford, LLC |
| Caribbean Star Airlines Limited | Robust Eagle Limited |
| Caribbean Sun Airlines Holdings, Inc. | Sea Eagle Limited |
| Casuarina 20 LLC | Sea Hare Limited |
| Christiansted Downtown Holdings, LLC | SFG Majestic Holdings, LLC |
| Crayford Limited | SG Ltd. |
| Cuckfield Investments Limited | SGV Asesores C.A. |
| Datcom Resources, Inc. | SGV Ltd. |
| Devinhouse, Ltd. | Stanford 20*20, LLC |
| Deygart Holdings Limited | Stanford 20/20 Inc. |
| Foreign Corporate Holdings Limited | Stanford Acquisition Corporation |

**EXHIBIT D**

| | |
|---|---|
| Guardian International Investment Services No. One, Inc. | Stanford Aerospace Limited |
| Guardian International Investment Services No. Three, Inc. | Stanford Agency, Ltd. [Louisiana][i] |
| Guardian International Investment Services No. Two, Inc. | Stanford Agency, Inc. [Texas] |
| Guardian One, Ltd. | Stanford Agresiva S.A. de C.V. |
| Guardian Three, Ltd. | Stanford Aircraft, LLC |
| Guardian Two, Ltd. | Stanford American Samoa Holding Limited |
| Guiana Island Holdings Limited | Stanford Aviation 5555, LLC |
| Harbor Key Corp. | Stanford Aviation II, LLC |
| Harbor Key Corp. II | Stanford Aviation III, LLC |
| Idea Advertising Group, Inc. | Stanford Aviation Limited |
| Stanford Bank Holdings Limited | Stanford Aviation LLC |
| Stanford Bank, S.A. Banco Comercial | Stanford Bank (Panama), S.A.[ii] |
| Stanford Capital Management, LLC | Stanford Galleria Buildings Management, LLC |
| Stanford Caribbean Investments, LLC | Stanford Gallows Bay Holdings, LLC |
| Stanford Caribbean Regional Management Holdings, LLC | Stanford Global Advisory, LLC |
| Stanford Caribbean, LLC | Stanford Group (Antigua) Limited |
| Stanford Casa de Valores, S.A. | Stanford Group (Suisse) AG |
| Stanford Cobertura, S.A. de C.V. | Stanford Group Aruba, N.V. |
| Stanford Coins & Bullion, Inc. | Stanford Group Bolivia |
| The Stanford Condominium Owners' Association, Inc. | Stanford Group Casa de Valores, S.A. |
| Stanford Corporate Holdings International, Inc. | Stanford Group Company |
| Stanford Corporate Services (BVI) Limited | Stanford Group Company Limited |

2

**EXHIBIT D**

| | |
|---|---|
| Stanford Corporate Services (Venezuela), C.A. | Stanford Group Holdings, Inc. |
| Stanford Corporate Services, Inc. | Stanford Group Mexico, S.A. de C.V. |
| Stanford Corporate Ventures (BVI) Limited | Stanford Group Peru, S.A., Sociedad Agente de Bolsa |
| Stanford Corporate Ventures, LLC | Stanford Group Venezuela Asesores de Inversion, C.A. |
| Stanford Crecimiento Balanceado, S.A. de C.V. | Stanford Group Venezuela, C.A. |
| Stanford Crecimiento, S.A. de C.V. | Stanford Holdings Venezuela, C.A. |
| Stanford Development Company (Grenada) Ltd. | Stanford International Bank Holdings Limited |
| Stanford Development Company Limited | Stanford International Bank Limited |
| Stanford Development Corporation | Stanford International Holdings (Panama) S.A. |
| Stanford Eagle, LLC | Stanford International Management Ltd. |
| Stanford Family Office, LLC | Stanford International Resort Holdings, LLC |
| The Stanford Financial Group Building, Inc. | Stanford Investment Advisory Services, Inc. |
| Stanford Financial Group Company | Stanford Leasing Company, Inc. |
| Stanford Financial Group Global Management, LLC | Stanford Management Holdings, Ltd. |
| Stanford Financial Group (Holdings) Limited | Stanford Real Estate Acquisition, LLC |
| Stanford Financial Group Limited | Stanford S.A. Comisionista de Bolsa |
| Stanford Financial Group Ltd. | Stanford Services Ecuador, S.A. |
| Stanford Financial Partners Advisors, LLC | Stanford South Shore Holdings, LLC |
| Stanford Financial Partners Holdings, LLC | Stanford Sports & Entertainment Holdings, LLC |
| Stanford Financial Partners Securities, LLC | Stanford St. Croix Marina Operations, LLC |
| Stanford Financial Partners, Inc. | Stanford St. Croix Resort Holdings, LLC |

**EXHIBIT D**

Stanford Fondos, S.A. de C.V.

The Stanford Galleria Buildings, LP

Stanford Trust Holdings Limited

Stanford Venture Capital Holdings, Inc.

The Sticky Wicket Limited

Sun Printing & Publishing Limited

Sun Printing Limited

Stanford Puerto Rico, Inc

Stanford Latin America LLC

Stanford Casa de Valores Panama

Stanford Group Venezuela a/k/a Stanford
Group Venezuela C.A.

Stanford Bank Venezuela

Stanford Trust Company Limited d/b/a
Stanford Fiduciary Investment Services

Stanford Advisory Board

Two Islands One Club (Antigua) Ltd.

Stanford Caribbean Investment Partners, LP

Stanford Caribbean Advisors

Stanford Group Panama a/k/a Stanford Bank
Panama

Stanford St. Croix Security, LLC

Stanford Trust Company

Stanford Trust Company Administradora de
Fondos y Fideicomisos S.A.

Stanford Trust Company Limited

Torre Oeste Ltd.

Torre Senza Nome Venezuela, C.A.

Trail Partners, LLC

Two Islands One Club (Grenada) Ltd.

Two Islands One Club Holdings Ltd.

Stanford Financial Group Services, LLC

Stanford Group Columbia a/k/a Stanford Bolsa
Y Banca

Guardian International Bank Ltd.

Guardian Trust Company

Guardian Development Corporation

Guardian International Investment Services

Casuarina Holdings, Inc.

Stanford Caribbean Investment Fund

Stanford Caribbean Investment Fund I, LP

---

[i] Locations in brackets are included to differentiate between legal entities with the same name but different locations or other identifying information.

[ii] Locations in parentheses are included in the legal name of an entity or other identifying information.

**EXHIBIT D**

## RELEASE – EXHIBIT E TO HUNTON SETTLEMENT AGREEMENT

THIS RELEASE (the "Release") is made and entered into by and between (i) Carlos Loumiet ("Loumiet"), and (ii) Ralph S. Janvey, solely in his capacity as the court-appointed receiver for the Stanford Receivership Estate (the "Receiver"), (iii) the Official Stanford Investors Committee (the "Committee"), and (iv) Pam Reed, Samuel Troice, and Michoacán Trust, individually and on behalf of a putative class of Stanford investors (collectively, the "Investor Plaintiffs") (the Receiver, the Committee, and the Investor Plaintiffs are collectively referred to as the "Plaintiffs") (Plaintiffs and Loumiet are referred to in this Release individually as a "Releasing Party" and together as the "Releasing Parties").

This Release is Exhibit E to a Settlement Agreement, entered into concurrently herewith between Hunton & Williams LLP ("Hunton") and Plaintiffs, that resolves claims and causes of action by Plaintiffs against Hunton, including those asserted against Hunton in *Janvey et al. v. Greenberg Traurig, LLP, et al.*, Case No. 3:12-cv-04641-N (N.D. Tex.) (the "Litigation"). This Settlement Agreement shall be referred to herein as the "Hunton Settlement Agreement." The signing parties to the Hunton Settlement Agreement are referred to herein as the "Hunton Settling Parties."

NOW, THEREFORE, in consideration of the agreements, covenants, and releases set forth herein and in the Hunton Settlement Agreement, and other good and valuable consideration, the receipt and sufficiency of which are hereby expressly acknowledged, the Releasing Parties agree as follows:

1.    Release Date:  This Release shall take effect as of the "Agreement Date," as that term is defined in the Hunton Settlement Agreement (the "Release Date").

1

2.     Terms Used in this Release:  All capitalized terms not defined herein shall have the meaning ascribed to them in the Hunton Settlement Agreement.

3.     Relationship to Hunton Settlement Agreement.     The Releasing Parties acknowledge that (a) Loumiet is not a party to the Litigation or the Hunton Settlement Agreement, but (b) under the terms of the Hunton Settlement Agreement, Settled Claims against Loumiet are released, and a covenant not to sue Loumiet for Settled Claims is provided.  The Releasing Parties enter into this Release to set forth certain additional terms and provisions specific to Loumiet.  The Releasing Parties intend the terms and provisions of this Release to be consistent with, and not to contradict, the terms and provisions of the Hunton Settlement Agreement.  Terms and provisions of the Hunton Settlement Agreement shall apply to this Release to the extent necessary to effectuate the releases and covenants not to sue set forth in Paragraphs 4 through 6 herein.

4.     Release of Loumiet:  As of the Settlement Effective Date, each of the Plaintiffs, including, without limitation, the Receiver on behalf of the Receivership Estate (including the Stanford Entities but not including the natural persons listed in Paragraph 21 of the Hunton Settlement Agreement), fully, finally, and forever releases, relinquishes, and discharges, with prejudice, all Settled Claims against Loumiet.  For the avoidance of doubt, the Settled Claims against Loumiet that are released pursuant to this Paragraph 4 (as well as pursuant to Paragraph 38 of the Hunton Settlement Agreement), and as to which a covenant not to sue is provided in Paragraph 6 herein (as well as in Paragraph 41 of the Hunton Settlement Agreement), include Settled Claims against Loumiet that arise from or relate in any way to Loumiet's alleged conduct or knowledge while employed at or affiliated with Greenberg Traurig LLP ("Greenberg").

5.     Release of Plaintiffs Released Parties:  As of the Settlement Effective Date, Loumiet fully, finally, and forever releases, relinquishes, and discharges, with prejudice, all

2

Settled Claims he has against the Plaintiffs Released Parties (as that term is defined in the Hunton Settlement Agreement), which Settled Claims include Settled Claims against the Plaintiffs Released Parties that arise from or relate in any way to the time period during which Loumiet was employed at or affiliated with Greenberg.

6.   <u>Mutual Covenants Not to Sue</u>: Effective as of the Release Date, Plaintiffs covenant not to, directly or indirectly, or through a third party, institute, reinstitute, initiate, commence, maintain, continue, file, encourage, solicit, support, participate in, collaborate in, or otherwise prosecute against Loumiet any action, lawsuit, cause of action, claim, investigation, demand, complaint, or proceeding, whether individually, derivatively, on behalf of a class, as a member of a class, or in any other capacity whatsoever, concerning or relating to the Settled Claims, whether in a court or any other Forum.  Effective as of the Release Date, Loumiet covenants not to, directly or indirectly, or through a third party, institute, reinstitute, initiate, commence, maintain, continue, file, encourage, solicit, support, participate in, collaborate in, or otherwise prosecute against any of the Plaintiffs Released Parties any action, lawsuit, cause of action, claim, investigation, demand, complaint, or proceeding, whether individually, derivatively, on behalf of a class, as a member of a class, or in any other capacity whatsoever, concerning or relating to the Settled Claims, whether in a court or any other Forum. Notwithstanding the foregoing, however, the Releasing Parties retain the right to sue for alleged breaches of this Release.

7.   <u>No Release of Obligations Under Release</u>: Notwithstanding anything to the contrary in this Release, the releases and covenants contained in this Release do not release the Releasing Parties' rights and obligations under this Release nor bar the Releasing Parties from enforcing or effectuating this Release.

<div align="center">3</div>

8.   <u>No Effect on Greenberg or Suarez Claims</u>:  The releases and covenants not to sue set forth in this Release do not include, and shall have no effect upon, any claims or causes of action Plaintiffs have against Greenberg or Yolanda Suarez ("<u>Suarez</u>"), including but not limited to claims or causes of action against Greenberg or Suarez based on the conduct or knowledge of Loumiet while employed at or affiliated with Greenberg.  The releases and the covenants not to sue set forth in this Release do not limit in any way the evidence that Plaintiffs may offer against Greenberg and Suarez, as the remaining defendants in the Litigation.

9.   <u>The Litigation</u>:  As a condition precedent to this Release and the releases and covenants that apply to Loumiet in the Hunton Settlement Agreement, Loumiet agrees that as to the ongoing Litigation against Greenberg and Suarez, he (a) shall respond to Plaintiffs' discovery requests or requests for deposition testimony issued in the Litigation as if he were a party to the Litigation (*i.e.*, without the need for a subpoena), and (b) make himself available to testify at any evidentiary hearing in the Litigation, or testify at trial in the Litigation, as if he were a party to the Litigation (*i.e.*, without the need for a subpoena).  However, Loumiet's availability for any hearing or trial in the Litigation shall only be for the purpose of providing testimony, and Loumiet will not be required to be present for any other purpose or at any other time, or in connection with any proceeding other than the Litigation.  Loumiet also retains the right to object to such requests for written discovery, oral deposition, and hearing or trial attendance on any grounds that would be available to him if he were a party to the Litigation.

10.   <u>Termination of Tolling Agreement</u>:  Upon Hunton's payment of the Settlement Amount to Plaintiffs pursuant to the Hunton Settlement Agreement, the tolling agreement between Loumiet and Plaintiffs, with an effective date of October 15, 2012, shall be terminated without further notice to any Releasing Party.

4

11.   Termination of this Release:  The Releasing Parties represent, acknowledge, and agree that this Release shall be deemed rescinded, withdrawn, and terminated without further notice to any Releasing Party should the Hunton Settlement Agreement be withdrawn or terminated pursuant to Section VI of the Hunton Settlement Agreement.  The Releasing Parties further agree that this Release may not be rescinded, withdrawn, or terminated for any other reason.

12.   Events Upon Termination:  If this Release is terminated pursuant to Paragraph 11, then this Release will be null and void and of no further effect whatsoever, shall not be admissible in any ongoing or future proceedings for any purpose whatsoever (except for the provisions of this Paragraph 12, which shall survive), and shall not be the subject or basis for any claims by any Releasing Party against any other Releasing Party.  Further, if this Release is terminated pursuant to Paragraph 11, then each Releasing Party shall be returned to such Releasing Party's respective position immediately prior to such Releasing Party's execution of the Release. Paragraphs 12 and 15 of this Release shall survive termination of the Release.

13.   No Assignment, Encumbrance, or Transfer:  Plaintiffs, other than the Receiver, represent and warrant that they are the owners of the Settled Claims that they are releasing under this Release and that, other than as provided in the Hunton Settlement Agreement, they have not, in whole or in part, assigned, encumbered, sold, pledged as security, or in any manner transferred or compromised any of the Settled Claims they are releasing in this Release.  The Receiver represents and warrants that he is the owner of the Settled Claims he is releasing under this Release, and that other than assigning those Settled Claims against Loumiet that the Receiver transferred to the Committee, and other than as provided in the Hunton Settlement Agreement, he has not, in whole or in part, assigned, encumbered, sold, pledged as security, or in any manner transferred or compromised any of the Settled Claims he is releasing under this Release.

5

Loumiet represents that he is the owner of the Settled Claims that he is releasing under this Release and that he has not, in whole or in part, assigned, encumbered, sold, pledged as security, or in any manner transferred or compromised any of the Settled Claims he is releasing under this Release.

14.    Authority: Each person executing this Release represents and warrants that he or she has the full authority to execute the documents on behalf of the entity or individuals(s) each represents and that each has the authority to take appropriate action required or permitted to be taken pursuant to this Release to effectuate its terms. The Committee represents and warrants that the Committee has approved this Release in accordance with the by-laws of the Committee.

15.    No Admission of Fault or Wrongdoing: This Release and the negotiation thereof shall in no way constitute, be construed as, or be evidence of an admission or concession of any violation of any statute or law; of any fault, liability, or wrongdoing; or of any infirmity in the claims or defenses of the Releasing Parties with regard to any of the complaints, claims, allegations, or defenses asserted or that could have been asserted in the Litigation or any other proceeding relating to any Settled Claim, or any other proceeding in any Forum. This Release and evidence thereof shall not be used, directly or indirectly, in any way, in the Litigation or in any other proceeding, other than to enforce the terms of the Hunton Settlement Agreement and/or this Release.

16.    Counterparts and Signatures: This Release may be executed in one or more counterparts, each of which for all purposes shall be deemed an original but all of which taken together shall constitute one and the same instrument. A signature delivered by fax or other electronic means shall be deemed to be, and shall have the same binding effect as, a handwritten, original signature.

6

IN WITNESS HEREOF, the Parties have executed this Release signifying their agreement to the foregoing terms.

Ralph Janvey, in his capacity as the Receiver for the Stanford Receivership Estate

_____     Date: _____

Official Stanford Investors Committee

_____     Date: _____
By:   John J. Little, Chairperson

_____     Date: _____
Samuel Troice
by Edward C. Snyder, attorney-in-fact

_____     Date: _____
Pam Reed
by Edward C. Snyder, attorney-in-fact

_____     Date: _____
Michoacán Trust
by Edward C. Snyder, attorney-in-fact

_____     Date: August 9, 2017
Carlos Loumiet

7

IN WITNESS HEREOF, the Parties have executed this Release signifying their agreement to the foregoing terms.

Ralph Janvey, in his capacity as the Receiver for the Stanford Receivership Estate

Date: 8/16/17

Official Stanford Investors Committee

By: John J. Little, Chairperson

Date: 8/15/2017

Date: 8/15/2017

Samuel Troice
by Edward C. Snyder, attorney-in-fact

Date: 8/15/2017

Pam Reed
by Edward C. Snyder, attorney-in-fact

Date: 8/15/2017

Michoacán Trust
by Edward C. Snyder, attorney-in-fact

Date:_____

Carlos Loumiet

7

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | |
| v. | Civil Action No. 3:09-cv-00298-N |
| STANFORD INTERNATIONAL BANK, LTD, *et al.*, | |
| Defendants. | |
| | |
| RALPH S. JANVEY, in his capacity as Court-appointed receiver for the Stanford Receivership Estate; the OFFICIAL STANFORD INVESTORS COMMITTEE; PAM REED; SAMUEL TROICE; and MICHOACAN TRUST; individually and on behalf of a class of all others similarly situated, | |
| Plaintiffs, | Civil Action No. 3:12-cv-04641-N |
| v. | |
| GREENBERG TRAURIG, LLP; HUNTON & WILLIAMS, LLP; AND YOLANDA SUAREZ, | |
| Defendants. | |

## SCHEDULING ORDER

This matter is before the Court on the Expedited Request for Entry of Scheduling Order and Motion to Approve Proposed Settlement with Hunton & Williams LLP, to Approve the Proposed Notice of Settlement with Hunton & Williams LLP, to Enter the Bar Order, to Enter the Rule 54(b) Final Judgment and Bar Order, and for Plaintiffs' Attorneys' Fees (the "Motion")

**EXHIBIT F**

of Ralph S. Janvey (the "Receiver"), as Receiver for the Receivership Estate in *SEC v. Stanford International Bank, Ltd.*, No. 3:09-CV-0298-N (N.D. Tex.) (the "SEC Action"), the Official Stanford Investors Committee (the "Committee"), as a party to the SEC Action and, along with the Receiver, as a plaintiff in *Janvey v. Greenberg Traurig LLP et al.*, No. 3:12-cv-04641-N (N.D. Tex.) (the "Litigation"), and Pam Reed, Samuel Troice, and Michoacan Trust, individually and, on behalf of a putative class of Stanford investors, as plaintiffs in the Litigation (the "Investors Plaintiffs," and collectively with the Receiver and the Committee, the "Plaintiffs"). The Motion concerns a proposed settlement (the "Settlement") among and between, on the one hand, the Plaintiffs and the Court-appointed Examiner, John J. Little (the "Examiner");[1] and, on the other hand, Hunton & Williams LLP ("Hunton"), as a defendant in the Litigation. Capitalized terms not otherwise defined in this order shall have the meaning assigned to them in the settlement agreement attached to the Motion (the "Settlement Agreement").

In the Motion, the Plaintiffs seek the Court's approval of the terms of the Settlement, including entry of a bar order in the SEC Action (the "Bar Order") and a final judgment and bar order in the Litigation (the "Judgment and Bar Order"). After reviewing the terms of the Settlement and considering the arguments presented in the Motion, the Court preliminarily approves the Settlement as adequate, fair, reasonable, and equitable. Accordingly, the Court enters this scheduling order to: (i) provide for notice of the terms of the Settlement, including the proposed Bar Order in the SEC Action and the proposed Judgment and Bar Order in the Litigation; (ii) set the deadline for filing objections to the Settlement, the Bar Order, the Judgment and Bar Order, or Plaintiffs' request for approval of Plaintiffs' attorneys' fees; (iii) set

---

[1] The Examiner executed the Settlement Agreement to indicate his approval of the terms of the Settlement and to confirm his obligation to post Notice on his website, as required herein, but is not otherwise individually a party to the Settlement Agreement, the SEC Action, or the Litigation.

**EXHIBIT F**

the deadline for responding to any objection so filed; and (iv) set the date of the final approval

hearing regarding the Settlement, the Bar Order in the SEC Action, the Judgment and Bar Order

in the Litigation, and Plaintiffs' request for approval of Plaintiffs' attorneys' fees (the "Final

Approval Hearing"), as follows:

1.      Preliminary Findings on Potential Approval of the Settlement:  Based upon the

Court's review of the terms of the Settlement Agreement, the arguments presented in the Motion,

and the Motion's accompanying appendices and exhibits, the Court preliminarily finds that the

Settlement is fair, reasonable, and equitable; has no obvious deficiencies; and is the product of

serious, informed, good-faith, and arm's-length negotiations.  The Court, however, reserves a

final ruling with respect to the terms of the Settlement until after the Final Approval Hearing

referenced below in Paragraph 2.

2.      Final Approval Hearing:  The Final Approval Hearing will be held before the

Honorable David C. Godbey of the United States District Court for the Northern District of

Texas, United States Courthouse, 1100 Commerce Street, Dallas, Texas 75242, in Courtroom

1505, at __:__ _.m. on _____, which is a date at least ninety (90) calendar days after entry

of this Scheduling Order.  The purposes of the Final Approval Hearing will be to:  (i) determine

whether the terms of the Settlement should be approved by the Court; (ii) determine whether the

Bar Order attached as Exhibit B to the Settlement Agreement should be entered by the Court in

the SEC Action; (iii) determine whether the Judgment and Bar Order attached as Exhibit C to the

Settlement Agreement should be entered by the Court in the Litigation; (iv) rule upon any

objections to the Settlement, Bar Order, or the Judgment and Bar Order; (v) rule upon Plaintiffs'

request for approval of Plaintiffs' attorneys' fees; and (vi) rule upon such other matters as the

Court may deem appropriate.

**EXHIBIT F**

3.     Notice:  The Court approves the form of Notice attached as Exhibit A to the Settlement Agreement and finds that the methodology, distribution, and dissemination of Notice described in the Motion:  (i) constitute the best practicable notice; (ii) are reasonably calculated, under the circumstances, to apprise all Interested Parties of the Settlement, the releases therein, and the injunctions provided for in the Bar Order and Judgment and Bar Order; (iii) are reasonably calculated, under the circumstances, to apprise all Interested Parties of the right to object to the Settlement, the Bar Order, or the Judgment and Bar Order, and to appear at the Final Approval Hearing; (iv) constitute due, adequate, and sufficient notice; (v) meet all requirements of applicable law, including the Federal Rules of Civil Procedure, the United States Constitution (including Due Process), and the Rules of the Court; and (vi) will provide to all Persons a full and fair opportunity to be heard on these matters.  The Court further approves the form of the publication Notice attached as Exhibit G to the Settlement Agreement.  Therefore:

a.     The Receiver is hereby directed, no later than twenty-one (21) calendar days after entry of this Scheduling Order, to cause the Notice in substantially the same form attached as Exhibit A to the Settlement Agreement to be sent via electronic mail, first class mail, or international delivery service to all Interested Parties; to be sent via electronic service to all counsel of record for any Person who is, at the time of Notice, a party in any case included in *In re Stanford Entities Securities Litigation*, MDL No. 2099 (N.D. Tex.) (the "MDL"), the SEC Action, or the Litigation, who are deemed to have consented to electronic service through the Court's CM/ECF System under Local Rule CV-5.1(d); and to be sent via facsimile transmission and/or first class mail to any other counsel of record for any other Person who is, at the time of service, a party in any case included in the MDL, the SEC Action, or the Litigation.

**EXHIBIT F**

b.       The Receiver is hereby directed, no later than twenty-one (21) calendar days after entry of this Scheduling Order, to cause the notice in substantially the same form attached as Exhibit G to the Settlement Agreement to be published once in the national edition of *The Wall Street Journal* and once in the international edition of *The New York Times*.

c.       The Receiver is hereby directed, no later than ten (10) calendar days after entry of this Scheduling Order, to cause the Settlement Agreement, the Motion, this Scheduling Order, the Notice, and all exhibits and appendices attached to these documents, to be posted on the Receiver's website (http://stanfordfinancialreceivership.com).  The Examiner is hereby directed, no later than ten (10) calendar days after entry of this Scheduling Order, to cause the Settlement Agreement, the Motion, this Scheduling Order, the Notice, and all exhibits and appendices attached to these documents, to be posted on the Examiner's website (http://lpf-law.com/examiner-stanford-financial-group).

d.       The Receiver is hereby directed promptly to provide the Settlement Agreement, the Motion, this Scheduling Order, the Notice, and all exhibits and appendices attached to these documents, to any Person who requests such documents via email to Ivonne Soler, Esq., an attorney at Butzel Long, P.C., at soler@butzel.com, or via telephone by calling (313) 225-7048.  The Receiver may provide such materials in the form and manner that the Receiver deems most appropriate under the circumstances of the request.

e.       No less than ten (10) days before the Final Approval Hearing, the Receiver shall cause to be filed with the Clerk of this Court written evidence of compliance with subparts (a) through (d) of this Paragraph, which may be in the form of an affidavit or declaration.

**EXHIBIT F**

4.      Objections and Appearances at the Final Approval Hearing:  Any Person who wishes to object to the terms of the Settlement, the Bar Order, the Judgment and Bar Order, or Plaintiffs' request for approval of Plaintiffs' attorneys' fees, or who wishes to appear at the Final Approval Hearing, must do so by filing an objection, in writing, with the Court in the SEC Action (3:09-CV-0298-N), by ECF or by mailing the objection to the Clerk of the United States District Court for the Northern District of Texas, 1100 Commerce Street, Dallas, Texas 75242, no later than [insert date of 21st day before Final Approval Hearing], 2016.  All objections filed with the Court must:

a.      contain the name, address, telephone number, and (if applicable) an email address of the Person filing the objection;

b.      contain the name, address, telephone number, and email address of any attorney representing the Person filing the objection;

c.      be signed by the Person filing the objection, or his or her attorney;

d.      state, in detail, the basis for any objection;

e.      attach any document the Court should consider in ruling on the Settlement, the Bar Order, the Judgment and Bar Order, or Plaintiffs' request for approval of Plaintiffs' attorneys' fees; and

f.      if the Person filing the objection wishes to appear at the Final Approval Hearing, make a request to do so.

No Person will be permitted to appear at the Final Approval Hearing without filing a written objection and request to appear at the Final Approval Hearing as set forth in subparts (a) through (f) of this Paragraph.  Copies of any objections filed must be served by ECF, or by email or first class mail, upon each of the following:

6

**EXHIBIT F**

Jeffrey D. Colman
Jenner & Block LLP
353 N. Clark Street
Chicago, IL 60654-3456
Telephone: (312) 923-2940
Facsimile:  (312) 840-7340
E-mail: jcolman@jenner.com

April A. Otterberg
Jenner & Block LLP
353 N. Clark Street
Chicago, IL 60654-3456
Telephone: (312) 840-8646
Facsimile: (312) 840-8746
E-mail: aotterberg@jenner.com

and

Richard A. Sayles
Sayles/Werbner
4400 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270
Telephone:  (214) 939-8701
Facsimile:  (214) 939-8787
Email:  dsayles@swtriallaw.com

and

Edward C. Snyder
Castillo Snyder, PC
One Riverwalk Place
700 N. St. Mary's, Suite 405
San Antonio, Texas 78205
Telephone: 210-630-4200
Fax: 210-630-4210
E-mail: esnyder@casnlaw.com

and

Douglas J. Buncher
Neligan Foley LLP
325 N. St. Paul, Suite 3600
Dallas, Texas 75201
Telephone: 214-840-5320

**EXHIBIT F**

Fax: 214-840-5301
E-mail: dbuncher@neliganlaw.com

and

Peter D. Morgenstern
Butzel Long, P.C.
477 Madison Avenue, Suite 1230
New York, New York  10022
Telephone: 212.818.1110
Fax: 212.898.0123
E-mail: morgenstern@butzel.com

and

John J. Little
Little Pedersen Fankhauser LLP
901 Main Street, Suite 4110
Dallas, Texas 75202
Telephone:  214.573.2307
Fax: 214.573.2323
E-mail: jlittle@lpf-law.com

and

Ralph Janvey
2100 Ross Ave
Suite 2600
Dallas, TX 75201
E-mail: rjanvey@kjllp.com

and

Kevin Sadler
Baker Botts
1001 Page Mill Road
Building One, Suite 200
Palo Alto, California 94304-1007
E-mail: kevin.sadler@bakerbotts.com

Any Person filing an objection shall be deemed to have submitted to the jurisdiction of

this Court for all purposes of that objection, the Settlement, the Bar Order, and the Judgment and

Bar Order.  Potential objectors who do not present opposition by the time and in the manner set

8

**EXHIBIT F**

forth above shall be deemed to have waived the right to object (including any right to appeal) and to appear at the Final Approval Hearing and shall be forever barred from raising such objections in this action or any other action or proceeding.  Persons do not need to appear at the Final Approval Hearing or take any other action to indicate their approval.

     5.    <u>Responses to Objections</u>:  Any Party to the Settlement may respond to an objection filed pursuant to Paragraph 4 by filing a response in the SEC Action no later than [insert date of 7th day before the Final Approval Hearing].  To the extent any Person filing an objection cannot be served by action of the Court's CM/ECF system, a response must be served to the email and/or mailing address provided by that Person.

     6.    <u>Adjustments Concerning Hearing and Deadlines</u>:  The date, time, and place for the Final Approval Hearing, and the deadlines and date requirements in this Scheduling Order, shall be subject to adjournment or change by this Court without further notice other than that which may be posted by means of ECF in the MDL, the SEC Action, and the Litigation.

     7.    <u>Retention of Jurisdiction</u>:  The Court shall retain jurisdiction to consider all further applications arising out of or connected with the proposed Settlement.

     8.    <u>Entry of Injunction</u>:  If the Settlement is approved by the Court, the Court will enter the Bar Order in the SEC Action and the Judgment and Bar Order in the Litigation.  If entered, each order will permanently enjoin, among others, Interested Parties, including Stanford Investors and Claimants, from bringing, encouraging, assisting, continuing, or prosecuting, against Hunton or any of the Hunton Released Parties, the Litigation, or any other action, lawsuit, cause of action, claim, investigation, demand, complaint, or proceeding of any nature, including, without limitation, contribution or indemnity claims, arising from or relating to a Settled Claim.

<div align="center">9</div>

<div align="right">**EXHIBIT F**</div>

9.      <u>Stay of Proceedings</u>:  The Litigation is hereby stayed as to Hunton only, except to the extent necessary to give effect to the Settlement.

10.      <u>Use of Order</u>:  Under no circumstances shall this Scheduling Order be construed, deemed, or used as an admission, concession, or declaration by or against Hunton of any fault, wrongdoing, breach or liability.  Nor shall the Order be construed, deemed, or used as an admission, concession, or declaration by or against Plaintiffs that their claims lack merit or that the relief requested is inappropriate, improper, or unavailable, or as a waiver by any party of any defenses or claims he or she may have.  Neither this Scheduling Order, nor the proposed Settlement Agreement, or any other settlement document, shall be filed, offered, received in evidence, or otherwise used in these or any other actions or proceedings or in any arbitration, except to give effect to or enforce the Settlement or the terms of this Scheduling Order.

11.      <u>Entry of This Order</u>:  This Scheduling Order shall be entered separately on the dockets both in the SEC Action and in the Litigation.

**IT IS SO ORDERED.**

Signed on _____, 2017

_____
DAVID C. GODBEY
UNITED STATES DISTRICT JUDGE

**EXHIBIT F**

## Publication Notice

To be published once in the national edition of *The Wall Street Journal* and once in the

international edition of *The New York Times*:

PLEASE TAKE NOTICE that the Court-appointed Receiver for Stanford International Bank, Ltd. ("SIB") and related entities ("Stanford Entities"), and certain Plaintiffs, have reached an agreement to settle all claims asserted or that could have been asserted against Hunton & Williams LLP relating to or in any way concerning SIB (the "Settlement Agreement"). As part of the Settlement Agreement, the Receiver and Plaintiffs have requested orders that permanently enjoin, among others, all Interested Parties, including Stanford Investors (i.e., customers of SIB, who, as of February 16, 2009, had funds on deposit at SIB and/or were holding certificates of deposit issued by SIB), from bringing any legal proceeding or cause of action arising from or relating to the Stanford Entities against Hunton & Williams, LLP or the Hunton Released Parties.

Complete copies of the Settlement Agreement, the proposed bar orders, and settlement documents are available on the Receiver's website http://www.stanfordfinancialreceivership.com. All capitalized terms not defined in this Notice are defined in the Settlement Agreement.

Interested Parties may file written objections with the United States District Court for the Northern District of Texas on or before [insert date of 21st day before Final Approval Hearing].

**EXHIBIT G**

Exhibit 2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:09-CV-0298-N |
| STANFORD INTERNATIONAL BANK, LTD., *et al.*, | § § § | |
| Defendants. | § § | |
| | § § | |
| RALPH S. JANVEY, *et al.*, | § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:13-cv-00477 |
| PROSKAUER ROSE, LLP, LLP, *et al.*, | § § § | |
| Defendants. | § | |

**DECLARATION OF EDWARD C. SNYDER**
**IN SUPPORT OF RECEIVER AND OSIC'S MOTION FOR ORDER APPROVING**
**PROPOSED SETTLEMENT WITH HUNTON & WILLIAMS LLP, TO ENTER THE**
**BAR ORDER, TO ENTER THE FINAL JUDGMENT AND BAR ORDER, AND TO**
**APPROVE APPLICATION FOR ATTORNEYS' FEES AND EXPENSES**

Pursuant to 28 U.S.C. § 1746, I, Edward C. Snyder, hereby declare under penalty of perjury that I have personal knowledge of the following facts:

## I.  <u>OVERVIEW</u>

I am submitting this Declaration in support of the Receiver and the Official Stanford Investors Committee ("<u>OSIC</u>") (collectively, the "<u>Plaintiffs</u>") Expedited Request for Entry of Scheduling Order and Motion to Approve Proposed Settlement with Hunton & Williams LLP, to Approve the Proposed Notice of Settlement with Hunton & Williams LLP, to Enter the Final

Judgment and Bar Order, and for Plaintiffs' Attorneys' Fees and Expenses (the "Motion").[1]

## A.      Hunton & Williams LLP

1.      The settlement for which approval is sought in the Motion settles all claims against Hunton & Williams LLP ("Hunton") in exchange for payment of **$34 million** by Hunton to the Receiver for ultimate distribution to the Stanford investor victims.

2.      My law firm along with co-counsel Butzel Long ("Butzel"), Strasburger & Price, LLP ("Strasburger"), and Neligan Foley LLP ("Neligan") (together with my firm Castillo Snyder P.C., "Plaintiffs' Counsel"), have been litigating claims against Hunton on behalf of a putative class of Stanford investors, the Receiver and OSIC since November 2012.  My firm was retained by OSIC in late 2010 to investigate and then to pursue claims against Hunton.

## B.      Curriculum Vitae

3.      I am a named shareholder of the law firm Castillo Snyder P.C., based in San Antonio, Texas, and have been practicing law for twenty one (21) years.  I presently serve as co-lead counsel for OSIC and the putative class of Stanford investors with respect to claims against Hunton.  I have actively participated in all material aspects regarding the Hunton matter.

4.      I received my law degree from the University of Texas School of Law in 1994 and my law license also in 1994.  After law school, I served as Legal Advisor to the former Chairman of the U.S. International Trade Commission in Washington, D.C.  Since entering private practice in 1996, I have been involved principally in commercial litigation and trial work, and have handled major cases for both corporate and individual clients, as both plaintiff's and defendant's counsel.  I am admitted to practice in the Western, Eastern, Northern and Southern federal districts of the State of Texas as well as the Fifth and Ninth Circuit courts of appeal and the United States Supreme Court.

---

[1] Capitalized Terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

5.      Castillo Snyder is a commercial litigation "boutique" firm based in San Antonio. My partner Jesse Castillo (who is a 30+ year trial lawyer and previously was a partner at Cox & Smith) and I concentrate our practice on complex commercial litigation, including everything from contract, corporate and partnership disputes, securities litigation, real estate litigation, oil and gas litigation and other commercial and business cases. We have tried dozens of complex commercial matters to verdict and judgment, including commercial cases tried in U.S. courts under foreign laws.

6.      Since the 1990s, my partner and I have been involved on the plaintiffs' side in numerous class action lawsuits involving allegations of fraud and securities fraud and aider and abettor liability. In the late 1990s, while an associate and, later, a partner at San Antonio-based law firm Martin, Drought & Torres, I (along with my current partner Jesse Castillo and other lawyers from that firm) served as lead or co-lead or second chair class counsel in roughly a dozen or more state-wide and nationwide class actions against life insurance companies based on allegations of fraud in the marketing and sale of "vanishing premium" life insurance products. In that capacity we litigated class action cases and certified various class actions, typically for settlement purposes although some were litigated to class certification hearings, and also handled class action administrative issues including class claims administration via settlement distribution procedures with class action administration agents we employed. Some of the defendant life insurance companies we brought (and resolved) class action litigation against include: Metlife, CrownLife, First Life Assurance, Manufacturers Life, Equitable Life, Sun Life, College Life, Jackson National Life, Great American Life, and John Hancock.

7.      One of my specialized practice areas over the last 18 years has been in the area of pursuing third parties such as banks, accounting firms, law firms and others accused of aiding

and abetting complex international (typically offshore) securities fraud schemes. From 1998 through 2006 I served as lead class counsel for Mexican investors who had been defrauded by a Dallas-based Investment Adviser firm named Sharp Capital Inc. ("Sharp") that operated what amounted to an illegal offshore "fund" in the Bahamas but that was run from Dallas. The SEC intervened and filed suit against Sharp and appointed Ralph Janvey as the receiver for Sharp. Sharp lost over $50 million of Mexican investor funds. Through various lawsuits we brought under the Texas Securities Act ("TSA"), we were able to eventually recover millions of dollars for the Sharp investors. See *Melo v. Gardere Wynne*, 2007 WL 92388 (N.D. Tex. 2007). I also represented Ralph Janvey, as receiver for Sharp, in litigation arising from the Sharp case, which was also settled. See *Janvey v. Thompson & Knight*, 2004 WL 51323 (N.D. Tex. 2004).

8.      Beginning in late 1999, my prior law firm and I also served as lead and/or co-lead class counsel (along with the Diamond McCarthy law firm) for the Class of primarily Mexican investors of the InverWorld group of companies, which was an investment group based in San Antonio that operated what amounted to an offshore fund in the Cayman Islands. We filed class action lawsuits against several Defendants, including a French bank, New York law firm Curtis Mallet-Prevost, and accounting firm Deloitte & Touche. See *Nocando Mem Holdings v. Credit Comercial de France*, 2004 WL 2603739 (W.D. Tex. 2004); *Gutierrez v. the Cayman Islands Firm of Deloitte & Touche*, 100 S.W.3d 261 (Tex. App. – San Antonio 2002). Those class cases proceeded in tandem with estate litigation filed by the bankruptcy trustee for InverWorld, who was principally represented by the Neligan firm. All of those class cases were premised on TSA aider and abettor claims and all of them eventually settled, each for eight figure sums.

9.      In 2003 I was retained by a group of Mexican investors who had been defrauded in yet another $400 million offshore investment fraud committed by a Houston-based investment

firm called InterAmericas that, like Stanford, ran an offshore bank (in Curacao, Netherlands Antilles) through which primarily Mexican investors invested. While not a class action, myself and my former law firm filed litigation under the TSA aider and abettor provisions against Deloitte & Touche and a few other Defendants, resulting in seven figure settlements. See *Deloitte & Touche Netherlands Antilles and Aruba v. Ulrich,* 172 S.W.3d 255 (Tex. App. – Beaumont 2005).

10. Besides the Stanford cases, I have recently been involved in two other SEC Ponzi scheme cases. I served as a Special Litigation Counsel to an SEC Receiver in the Central District of California in a Ponzi scheme case styled *Securities and Exchange Commission v. Westmoore Management LLC et al,* Case No. 08:10-CV-00849-AG-MLG. In that capacity I represented the Receiver with respect to all litigation activities. I also represented several foreign investors in an alleged Ponzi scheme case in McAllen, Texas styled *Securities & Exchange Commission v. Marco A. Ramirez, Bebe Ramirez, USA Now, LLC., USA Now Energy Capital Group, LLC., and Now. Co. Loan Services, LLC;* In the United States District Court for the Southern District of Texas – McAllen Division; Case No. 7:13-cv-00531.

11. Based on my experience in SEC receivership and offshore fraud cases generally, as well as my experience in the Stanford cases, I am often invited to speak at seminars on securities litigation issues (including liability under the TSA) by the Texas State Bar.

**C.     Involvement with the Stanford Cases Since 2009**

12. I and my law firm have been heavily involved with the Stanford cases since February 2009.

13. As soon as Stanford collapsed in February 2009, I was retained by hundreds of investors from Mexico. I immediately began investigating claims against various third party

potential defendants connected with the collapse of Stanford.

14.    After the OSIC was created, I was asked to be a member of said Committee and continue to serve on said Committee today, without compensation.  My service on OSIC has consumed hundreds if not thousands of hours of my time over the last few years including time spent communicating with other OSIC members on weekends and late at night.

15.    My investigations and efforts eventually led myself and the other Plaintiffs' Counsel to file multiple class action lawsuits on behalf of Stanford investors, as well as companion litigation on behalf of OSIC, including the following cases:   *Troice v. Willis of Colorado et al*, Case No. 3:09-cv-01274; *Janvey v. Willis of Colorado, Inc.*, Case No. 3:13-cv-03980; *Troice v. Proskauer Rose et a*l., Case No. 3:09-cv-01600; *Janvey v. Proskauer Rose, LLP*, Case No. 3:13-cv-477; *Janvey v. Greenberg Traurig, LLP*, Case No. 3:12-cv-04641; *Philip Wilkinson, et al v. BDO USA, LLP, et al,* Case No. 3:11-cv-1115; *The Official Stanford Investors Committee v. BDO USA, LLP, et al,* Case No. 3:12-cv-01447; *Turk v. Pershing, LLC*, Case No. 3:09-cv-02199; *Wilkinson, et al. v. Breazeale, Sachse, & Wilson, LLP*, Case No. 3:11-cv-00329; and *Janvey v. Adams & Reese, LLP, et al*., Case No. 3:12-cv-00495 (the "Stanford Cases").

16.    I am either lead counsel or co-lead counsel with the other Plaintiffs' Counsel in all of the Stanford Cases and I have been actively involved in every facet of the cases, including the investigation of the facts and legal theories that form the bases for the suits, responding to motions to dismiss and litigating class certification.  I served as co-lead counsel in the successful appeals of the dismissal of the related *Troice* class action cases under SLUSA to the Fifth Circuit and the U.S. Supreme Court ("SLUSA Appeal").

17.    In my view, my and my law firm's involvement in all of the related Stanford Cases has proven invaluable to the successful resolution of the claims against Hunton.  Given the

inherent overlap of factual and legal issues in third party litigation arising from the Stanford fraud, much of the work performed by Plaintiffs' Counsel in related Stanford litigation since 2009 laid the groundwork for the successful resolution of the claims against Hunton here.

## II.      THE CLAIMS AGAINST HUNTON AND SETTLEMENT

### A.      The Claims Against Hunton and Procedural History of the Litigation

18.      Plaintiffs' Counsel have been investigating and zealously prosecuting claims against Hunton since late 2010.  The claims we filed against Hunton in November 2012 include the following:

| Category | Claim |
|---|---|
| Receiver/OSIC Claims | Negligence |
| | Aiding and Abetting Breach of Fiduciary Duty |
| | Negligent Retention / Negligent Supervision |
| Investor Class Claims | Aiding and Abetting Violations of the TSA |
| | Aiding and Abetting / Participating in Breach of Fiduciary Duty |
| | Aiding and Abetting / Participating in a Fraudulent Scheme |
| | Civil Conspiracy |

### 1.      The Litigation

19.      On November 15, 2012, and as the result of a thorough investigation lasting roughly 18 months, counsel for the Plaintiffs filed their very detailed 165 page Original Complaint against Hunton and co-Defendants Greenberg Traurig LLP ("Greenberg") and Yolanda Suarez ("Suarez") on behalf of the Receiver ("Receiver"), the Official Stanford Investors Committee ("OSIC") and Sandra Dorrell, Samuel Troice and Michoacan Trust (the "Investor Plaintiffs"), individually and on behalf of a putative class of Stanford investors, in the case styled *Janvey, et al v. Greenberg Hunton, LLP et al.*, Civil Action No. 3:12-cv-04641 (the "Litigation") [ECF No. 1].  The Complaint asserts claims against Hunton for negligence, aiding and abetting breaches of fiduciary duties, breaches of fiduciary duties, fraudulent transfer/unjust enrichment, aiding and abetting fraudulent transfers, negligent retention, aiding and abetting

violations of the Texas Securities Act ("TSA"), aiding and abetting a fraudulent scheme, and civil conspiracy

20.     The Defendants subsequently filed separate motions to dismiss the claims asserted by the Receiver/Committee and the claims asserted by the Investor Plaintiffs [ECF Nos. 27, 49, 56, 90].[2]

21.     By Orders dated December 17, 2014 [ECF No. 114] and February 4, 2015 [ECF No. 123], the Court granted in part and denied in part Hunton's motions to dismiss the Complaint, dismissing with prejudice (i) the Receiver and Committee's claims for aiding and abetting fraudulent transfer; (ii) the Investor Plaintiffs' TSA claims for aiding and abetting and civil conspiracy for the sale of unregistered securities and the sale of securities by an unregistered dealer arising from sales taking place prior to February 1, 2008; (iii) the Investor Plaintiffs' TSA claims for aiding and abetting and civil conspiracy for the sale of securities through untruth or omission arising from sales taking place prior to February 1, 2006; dismissing without prejudice the Receiver and Committee's claims for breach of fiduciary duty, and declining to dismiss the Plaintiffs' other claims against Hunton.

22.     The Defendants then filed a motion to certify the Court's December 17, 2014 Order for interlocutory appeal [ECF No. 118].  The Court denied this motion on February 10, 2015 [ECF No. 125].

23.     The Defendants also filed motions to join the Antiguan Joint Liquidators as required parties [ECF Nos. 30, 51, 55].  These motions were denied on December 2, 2014 [ECF No. 113].

24.     On August 11, 2015, 2014 this Court issued its Order denying our request for entry of a scheduling order to permit merits discovery scheduling Order [ECF No. 141].  On the

---

[2]     Hunton filed two of the motions to dismiss [Hunton Action, ECF Nos. 49, 90].

same day the Court issued its Class Action Scheduling Order. [ECF No. 142]. The parties thereafter engaged in roughly six months of extensive class certification discovery and fact and expert witness depositions. The parties filed all of their class certification evidence and voluminous briefing with this Court on April 20, 2015. [ECF Nos. 174-184].

25.     More recently, the Defendants have filed motions to dismiss the claims asserted by the Investor Plaintiffs based on the applicability of the attorney immunity doctrine [ECF No. 193, 195]. These motions, and the motion for class certification, are fully briefed and *sub judice*.

**B.     Mediation**

26.     Mediation was held with Hunton on two occasions. The first mediation was held prior to the filing of the Complaint in 2012, with McGowen Dispute Resolution, and lasted two days. The parties were unable to reach resolution at that time. Following the Court's decisions on Hunton's motions to dismiss, and the parties' submission of class certification briefing and evidence in the Hunton Action, the parties convened a second mediation with the Hon. Layn R. Phillips in New York in October 2016. Despite a full day mediation, the parties were once again unable to reach a resolution. However, negotiations continued and, in May 2017, the Parties reached agreement resulting in the Hunton Settlement. The parties executed the Hunton Settlement Agreement in August, 2017.

**C.     Plaintiffs' Counsel Have Sufficient Basis to Evaluate and Recommend this Settlement**

27.     Plaintiffs' Counsel have spent substantial time and energy since 2009 investigating Stanford's business operations and relationships with third parties, including Hunton, which involved the review of hundreds of thousands if not millions of pages of documents (including spending literally weeks at the Receiver's document warehouse in Houston), interviews of dozens of witnesses across the globe, coordination of efforts with the

Receiver, Examiner, SEC and Department of Justice, and researching case law to establish viable theories of liability and damages and then defending those theories through dispositive motion practice before this Court in over a dozen separate lawsuits, including the SLUSA Appeal of the Investor Litigation all the way to the U.S. Supreme Court.  All of that work paved the way for the proposed settlement with Hunton, and, in my view, the proposed Settlement could not have been achieved without the substantial amount of time and effort expended by Plaintiffs' Counsel and their tireless efforts in the Stanford Cases over all.

28.     Plaintiffs' Counsel collectively have spent roughly 7 years and thousands of hours investigating and zealously pursuing claims against Hunton on behalf of the Stanford Receivership Estate and the Stanford investors prior to reaching the mediated settlement in May 2017.  Prior to filing the Litigation against Hunton in November 2012, I spent roughly 18 months investigating claims against Hunton (and co-Defendant Greenberg).   As part of the investigation of claims against Hunton for the Receiver and OSIC, I reviewed voluminous documents, including thousands of pages of documents detailing Hunton's relationship with and services provided to Stanford.  The documents reviewed included documents from the Receivership as well as documents obtained from Hunton and other law firms.  We also interviewed dozens of witnesses.  We researched relevant case law to develop claims against Hunton, including claims under the TSA and other common law claims belonging to the Stanford investors, as well as claims that could be asserted by the Receiver and OSIC, to determine how the facts surrounding Hunton's conduct supported such claims.   The investigation of claims further required formulation of viable damage models and causation theories for both the Receivership Estate claims and the investor claims, and myself and Plaintiffs' Counsel spent considerable time researching and working up damage models for these cases.

29.     Plaintiffs' Counsel could not have successfully prosecuted and resolved the claims asserted against Hunton without having spent thousands of additional hours investigating and understanding the background and history of the complex web of Stanford companies, the operations, financial transactions, interrelationship and dealings between and among the various Stanford entities, and the facts relating to the Ponzi scheme and how it was perpetrated through the various Stanford entities.  Without a comprehensive investigation and understanding of this background, it would not have been possible to formulate viable claims against Hunton and prosecute them successfully to conclusion.

30.     Finally, Plaintiffs' Counsel have diligently and aggressively prosecuted the Litigation for close to 5 years, including through class certification. Plaintiffs' Counsel briefed and largely prevailed on Defendants' Motions to Dismiss, and engaged in extensive class certification discovery and voluminous briefing of class certification issues that included numerous complex and novel issues regarding foreign law.  Plaintiffs' Counsel are uniquely qualified to evaluate the merits of the claims against Hunton and the value of this settlement, and have acquired knowledge and expertise regarding Hunton's involvement with Stanford sufficient to provide a sound basis for their recommendation of approval of the instant settlement.

**D.      The Settlement is Fair and Reasonable and Should be Approved**

31.     It is my opinion based upon years of experience prosecuting and settling complex investor class actions under the TSA, as well as complex receivership Ponzi scheme litigation, that the Hunton Settlement is fair and reasonable and in the best interests of the Stanford Receivership Estate and the Stanford investors and should be approved by the Court.

32.     More importantly, I believe that the Hunton Settlement represents the best result that could be achieved given all of the circumstances.  Indeed, and as evidenced by the Fifth

Circuit's application of the Attorney Immunity doctrine to dismiss the related class action lawsuit against Proskauer Rose,[3] these are by no means "easy" cases.  As a consequence, the result obtained is simply outstanding.  In light of all of the factors outlined in the Motion, the Hunton Settlement represents an extremely good result for the Stanford receivership estate and its investors.  Therefore, I believe the Hunton Settlement is in the best interests of the Stanford receivership estate and its investors and should be approved.

### III.   ATTORNEYS' FEES

**A.   The Contingency Fee Agreement**

33.     Plaintiffs' Counsel have been jointly handling all of the Stanford Cases referenced above, including the claims against Hunton, pursuant to twenty-five percent (25%) contingency fee agreements with the Receiver, OSIC (in cases in which OSIC is a named Plaintiff) and the Investor Plaintiffs (in investor class action lawsuits).  With specific reference to the Hunton case, Plaintiffs' Counsel were collectively retained by the Investor Plaintiffs pursuant to contingency fee contracts that provide for a fee equivalent to 25% of any net recovery from Hunton.  Similarly, Neligan was retained by the Receiver pursuant to a contingency fee contract that provides for a fee equivalent to 25% of any net recovery from Hunton, and my firm, Butzel and Strasburger were retained by OSIC to pursue claims against Hunton based on a 25% contingent fee.

34.     As stated in the Motion, the Movants seek Court approval to pay Plaintiffs' Counsel a fee equal to an aggregate of twenty-five percent (25%) of the Net Recovery (*i.e.*, the settlement amount less allowable expense disbursements) in the Hunton Settlement.  This is the fee agreed to be paid to Plaintiffs' Counsel by the Receiver, OSIC and the Investor Plaintiffs, and this is the amount of the fee for which approval is sought in the Motion.

---

[3]      *Troice v. Proskauer Rose LLP*, ___ F.3d ___, No. 15-10500, 2016 WL 929476 (5th Cir. 2016).

**B.      The 25% Contingency Fee is Fair and Reasonable**

35.      It is my opinion that the fee requested in the Motion is reasonable in comparison to the total net amount to be recovered for the benefit of the Stanford investors.  The twenty-five percent (25%) contingency fee was heavily negotiated between the Receiver, OSIC and Plaintiffs' Counsel, and is substantially below the typical market rate contingency fee percentage of 33% to 40% that most law firms would demand to handle cases of this complexity and magnitude.  In certain instances, OSIC interviewed other potential counsel who refused to handle the lawsuits without a higher percentage fee.  The claims against Hunton and the other third-party lawsuits are extraordinarily large and complex, involving voluminous records and electronic data and requiring many years of investigation, discovery and dispositive motions to get to trial.

36.      Moreover, as described above, myself and the other Plaintiffs' Counsel spent roughly 18 months investigating claims and preparing the 165 page detailed Complaint against Hunton.  Since filing the Litigation against Hunton in November, 2012, the case has been hard fought and has gone on for almost 5 years, including through class certification.   As a result, Plaintiffs' Counsel have collectively invested thousands of hours of time worth in excess of $3 million during the almost 7 year period we have been working on the Hunton matter, without compensation.  Plaintiffs' Counsel has, for many years now, borne significant risk of loss throughout this process after years of work for no compensation.  A twenty-five percent (25%) contingency fee is reasonable given the time and effort that was actually expended, the complexity of the matter and the risks involved.

**C.      Time and Effort of Plaintiffs' Counsel**

37.      Since February 2009, myself and my law firm have dedicated thousands of hours of

time to the prosecution of Stanford Cases on a contingent fee basis. This includes time spent investigating and understanding the background and history of the complex web of Stanford companies, the operations, financial transactions, interrelationship and dealings between and among the various Stanford entities and the defendants we have sued, the facts relating to the Ponzi scheme and how it was perpetrated through the various Stanford entities, and the involvement of the third-party defendants in the foregoing cases with Stanford. Without a comprehensive investigation and understanding of this background, it would not have been possible to formulate viable claims against the third-party defendants and prosecute them successfully.

38. Even a cursory review of the Court's docket in all of these cases reveals the immense amount of work that Plaintiffs' Counsel have put into the prosecution of all of these lawsuits since 2009. However, the docket and pleadings only reveal the work that is filed with the Court. As discussed further herein, and as the Court is aware, the prosecution of lawsuits of this magnitude and complexity has required a tremendous amount of time and effort to investigate the facts, research the relevant legal issues, coordinate and strategize with counsel and clients regarding the handling of the cases, conduct discovery, prepare the briefs and motions, attempt to negotiate settlements, and prepare cases for summary judgment and/or trial. Plaintiffs' Counsel have collectively spent thousands of hours since 2009 in their investigation and prosecution of Stanford-related claims, including the claims against Hunton.

39. Over the last 8½ years, myself and other attorneys and paralegals from my law firm have spent thousands of hours in largely uncompensated time worth millions of dollars investigating and prosecuting the Stanford Cases, including the Hunton matter. On average, well in excess of 70% of my practice over the last 8 ½ years (and more typically 80-100% of my time on

any given week) has been dedicated to these Stanford cases.  I personally have worked many late nights and virtually every weekend for the last 8 ½ years on Stanford cases or Stanford-related matters without compensation.  Basically my law practice over the last 8 ½ years has been dedicated almost exclusively to the Stanford Cases, to the exclusion of other clients and work.

40.     The total amount of attorney and paralegal time invested in the Stanford Cases by myself and other attorneys and paralegals at my Firm totals close to $8 million at our hourly billing rates applicable to complex cases like these, all of which time has been uncompensated to date.

41.     With specific reference to the Hunton matter, I recorded my own as well other attorneys and paralegals from my firm's time for work on the Hunton case separately from other Stanford cases.  Given the length of time involved working on the Hunton investigation (since late 2010) and the Litigation (since November 2012 when it was filed), through today's date my firm has invested close to $1.8 million worth of time on the Hunton matter alone.  Specifically, as of September 21, 2010, my firm has spent over **3,000 hours** of attorney and paralegal time worth approximately **$1,790,897.50** at our applicable hourly rates for complex cases of this nature consisting of time that was dedicated directly to the Hunton case.

42.     I obviously anticipate investing additional time dedicated to the finalization of the instant Settlement, including finalizing the motion for approval documents, monitoring and responding to any objections where applicable, and attending and arguing at the approval hearing.  Therefore I believe that my law firm's total time dedicated to the Hunton matter will eventually exceed **$1.8 million**.

43.     The proposed settlement is the result of many years of effort and thousands of hours of work by the Receiver, OSIC, Investor Plaintiffs and Plaintiffs' Counsel as described herein.  But for the efforts of these parties, and the efforts of myself and my law firm described

herein, there would be no Hunton Settlement, which will net the Receivership estate and the Stanford investors approximately **$25.4 million** (should the Court approve the attorneys' fee request) they would not have otherwise had.

44.    In light of the tremendous time and effort myself and my law firm and the other Plaintiffs' Counsel have put into the overall effort to recover monies for the Stanford Receivership Estate and the investors, all of which was necessary to the successful prosecution and resolution of the Hunton matter, it is my opinion that the twenty-five percent (25%) fee to be paid to counsel for OSIC and the Investor Plaintiffs for the settlement of the Hunton matter is very reasonable.   Myself and my laws firm and the other Plaintiffs' Counsel have worked tirelessly for over six years to attempt to recover money for the benefit of Stanford's investors.

Dated: August__, 2017

Edward C. Snyder

Exhibit 3

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                    Plaintiff,<br><br>v.<br><br>STANFORD INTERNATIONAL BANK, LTD, *et al.*,<br><br>                    Defendants. | Civil Action No. 3:09-cv-00298-N |
| RALPH S. JANVEY, in his capacity as Court-appointed receiver for the Stanford Receivership Estate; the OFFICIAL STANFORD INVESTORS COMMITTEE; PAM REED; SAMUEL TROICE; and MICHOACAN TRUST; individually and on behalf of a class of all others similarly situated,<br><br>                    Plaintiffs,<br><br>v.<br><br>GREENBERG TRAURIG, LLP; HUNTON & WILLIAMS, LLP; AND YOLANDA SUAREZ,<br><br>                    Defendants. | Civil Action No. 3:12-cv-04641-N |

## DECLARATION OF PETER D. MORGENSTERN, ESQ. IN SUPPORT OF REQUEST FOR AWARD OF ATTORNEYS FEES AND COSTS

I, Peter D. Morgenstern, hereby declare under penalty of perjury the following:

## A.   Curriculum Vitae

1.      My name is Peter D. Morgenstern.   I am an attorney and have been duly admitted to practice law in the state of New York since 1983.   I am also admitted to practice before the United States District Courts for the Southern and Eastern Districts of New York.   By Order dated May 26, 2009, I was admitted *pro hac vice* to practice before this Court in connection with litigation related to the Stanford receivership cases.   I am a shareholder in the law firm of Butzel Long, professional corporation ("BL"), a Michigan-based firm with branch offices in New York and Washington, D.C.   I am a resident partner in BL's New York office.   BL has a broad nationwide legal practice, including groups of attorneys who practice in the areas of corporate law, litigation and like me, in the areas of complex commercial litigation, bankruptcy and insolvency law.   For over thirty years, my practice has been concentrated exclusively in the areas of commercial litigation and insolvency-related matters.   I was previously a partner at a large full-service international law firm, and headed the bankruptcy and insolvency practice at one of its regional offices.   After relocating to New York several years ago, I became a name partner in a mid-size litigation boutique, founded my own law firm, and then joined BL in 2011 as a shareholder.

2.      I have extensive experience representing creditors and other stakeholders in litigation relating to or arising from significant insolvencies (including bankruptcy cases, state court liquidation proceedings and out of court restructurings), major frauds, and Ponzi schemes. I have participated as the lead attorney and as part of teams of attorneys who successfully prosecuted actions against third parties who were alleged to have been involved in, or profited from such frauds and Ponzi schemes.   For instance, I was the lead attorney who represented the

2

court-appointed equity committee in the chapter 11 case of Adelphia Communications, Inc. (a massive fraud); the class action plaintiffs in In re Bennett Funding, Inc. (a massive Ponzi scheme); a large investor group in the case of Tyco, Inc. (major fraud case); special counsel to the court-appointed equity committee of Calpine, Inc. (chapter 11 case); lead counsel for investor group in Askin Capital Management (chapter 11 case – successful litigation against major broker-dealers); the Official Court-Appointed Retiree Committee of Outboard Marine, Inc. (chapter 11 case); and I am currently representing major creditors in connection with the pending insolvency proceedings arising from the massive Madoff fraud, among many other notable representations during my career.  A detailed description of BL's practice, and my biography, background and experience, are set forth on BL's website, at www.butzel.com.

**B.  The Hunton Lawsuit**

3.  I am submitting this Declaration in support of the Motion to Approve Proposed Settlement with Hunton & Williams, LLP, to Enter Bar Order, to Enter Final Judgment and Bar Order, and for Plaintiffs' Attorneys' Fees and Expenses (the "Motion").  The settlement for which approval is sought in the Motion settles all Stanford-related claims asserted against defendant Hunton & Williams, LLP ("Hunton") in Civil Action No. 3:12-cv-04641-N, for the aggregate amount of thirty-four million dollars ($34,000,000).

4.  My firm, along with the law firm of Castillo Snyder P.C. ("Castillo Snyder"), has acted as lead counsel for the class plaintiffs and The Official Stanford Investors Committee ("OSIC") in this litigation, and I respectfully refer the Court to the accompanying declaration of Edward C. Snyder, Esq. of Castillo Snyder for the detailed facts and circumstances relating to this litigation and the proposed settlement.

3

5.      In addition to representing a group of hundreds of individual clients in Stanford-related cases, whose claims aggregate in excess of $400 million, I also serve as a member of the OSIC appointed by this Court by Order dated August 10, 2010 (the "Committee Order"). I was instrumental in the establishment of the OSIC to represent the interests of the thousands of Stanford victims in these cases, with the goal of empowering the real stakeholders in these cases with a meaningful voice and role in taking legal action to maximize their ultimate recoveries from the horrible Stanford fraud. The Committee Order enabled Stanford victims, through the OSIC, to prosecute actions against third parties who are alleged to have participated in, or profited from, the Stanford Ponzi scheme, in cooperation with the Receiver, or separately when appropriate. Other than fraudulent transfer actions brought solely by the OSIC on behalf of the Receivership Estate and creditors, the lawsuits brought by the OSIC, including the instant case, have been prosecuted by the OSIC in conjunction with putative class action cases also brought for the benefit of Stanford victims, mostly on parallel legal theories.

6.      Since the appointment of the OSIC, BL has worked closely with our co-counsel, the Examiner, and the Receiver and their professionals to share information, strategize, and collaboratively take appropriate actions, including prosecuting lawsuits against third parties, all with the goal of maximizing recoveries to Stanford victims. BL acts as lead counsel on certain of the Stanford-related cases, or as co-counsel. The coordination and collaboration of counsel is necessary and desirable to further the interests of Stanford victims, and has been the hallmark of the prosecution of this and other actions on behalf of investors and the Receivership estates. While various plaintiffs' counsel have assumed different levels of responsibility in each of the dozens of Stanford-related litigations, the sharing of information, and the overlap of facts and the

4

law developed by counsel in jointly pursuing Stanford-related causes of action have been highly useful to the successful prosecution or settlement of this case and other pending litigations.

## C.     Stanford-Related Litigation

7.     As noted above, since the commencement of the Stanford Receivership in early 2009, BL has participated as counsel in prosecuting dozens of Stanford cases, including fraudulent transfer action, and cases against various third parties, including financial institutions, law firms, auditors, and even foreign governments who are alleged to have participated in and profited from the Stanford fraud.  I have personally devoted the majority of my professional life to representing the interests of Stanford victims during the course of the last eight years, as has my colleague Joshua Abraham, counsel to BL.

8.     In addition to the Hunton case, BL has actively participated in, or has monitored, all Stanford-related litigations since the inception of the Receivership.  Through my membership on the OSIC, counsel to the OSIC, and as putative class counsel in various Stanford cases since 2009, I have also devoted significant time to work on Stanford-related matters other than just litigation against third parties, including participating in the establishment of the Receivership claims protocol, participating in legal actions involving the Antiguan Joint Liquidators, meetings of the OSIC, communicating with Stanford victims, monitoring related criminal proceedings and communications with various government representatives and entities, all with the goal of maximizing recoveries for Stanford victims.

9.     BL and my predecessor firms began their investigation of potential third-party claims which might be asserted on behalf of the Stanford victims immediately upon our retention in early 2009.  Based on information discovered during this joint investigation along with its

5

various co-counsel, BL and my predecessor firms initiated several class action lawsuits on behalf of the investor plaintiffs.

10.     BL is acting and has acted as lead counsel or co-counsel to the investor plaintiffs and the OSIC in numerous Stanford-related litigations against third-party professionals and service providers, including banks, law firms, and other financial institutions, and has prosecuted many of the fraudulent transfer cases brought by the OSIC and the Receiver. These cases include the instant case and as follows:

- *Rotstain, et al. v. Trustmark National Bank, et al.*, Case No. 3:09-cv-2384-N
- *Turk, et al. v. Pershing LLC*, Case No. 3:09-cv-02199-N
- *Frank, et al. v. Antigua and Barbuda*, Case No. 3:09-cv-02165-N-BL
- *Querouze, et al. v. Bank of Antigua, et al.*, Case No. 3:10-cv-0304-N
- *Janvey et al. v. Susan Stanford*, Case No. 3:10-cv-02322-N
- *Janvey, et al. v. Ben Barnes Group, et al.*, Case No. 3:10-cv-00527-N-BL
- *Janvey, et al. v. Fernandez, et al.*, Case No. 3:10-cv-1002-N
- *OSIC et al., v. Breazeale Sachse & Wilson LLP* et al. Case No. 3:11-cv-392-N
- *Janvey, et al. v. David Wayne Toms, et al.*, Case No. 3:11-cv-00018-N-BL
- *OSIC v. Cort &Cort et al.*, Case No. 3:11-cv-00298-N-BL
- *Janvey, et al. v. Romero*, Case No. 3:11-cv-0297-N
- *OSIC v. ALSAC et al.*, Case No. 3:11-cv-00303-N-BL
- *Janvey, et al. v. Texas A&M University*, Case No. 3:11-cv-01895-N
- *Janvey, et al. v. Blackman*, Case No. 3:11-cv-00302-N
- *Janvey, et al. v. Brown,* Case No. 3:11-cv-00301-N
- *OSIC v. BDO USA, LLP, et al.*, Case No. 3:12-cv-01447-N

- *OSIC v. Antigua and Barbuda*, Case No. 3:13-cv-00760-N

- *OSIC v. Bank of Antigua, et al.,* Case No. 3:13-cv-00762-N

**D.     Time and Effort of Plaintiffs' Counsel**

11.     This Court is aware, simply from legal filings alone, of the extraordinary amount of time and effort that has been devoted to these incredibly complex Stanford-related cases by BL, its co-counsel and counsel to other parties seeking recoveries for Stanford creditors, including the Receiver and the Examiner. The Court's docket in the dozens of Stanford cases, however, provides just an incomplete snapshot of these efforts. These complex cases, which involve billions of dollars in potential claims for defrauded Stanford investors, have required a tremendous amount of attorney and other professional time and effort to investigate the facts, research the relevant legal issues, coordinate and strategize with counsel and clients regarding the handling of the cases, conduct discovery, prepare briefs and motions, attempt to negotiate settlements, and prepare cases for summary judgment and/or trial. Plaintiffs' counsel have jointly spent thousands of hours since 2009 in their investigation and prosecution of the Stanford-related lawsuits referenced above, including the lawsuit against Hunton. It is noteworthy that BL and the other plaintiffs' attorneys in these massive Stanford litigations have to date received compensation which represents only a fraction of their time charges calculated at normal hourly rates while these cases have been actively litigated before this Court, the Fifth Circuit Court of Appeals, and even to the Supreme Court of the United States. In determining the appropriate fee award in these cases, BL respectfully submits that the Court should consider the contingent nature of these cases and the enormous risk undertaken by counsel.

7

## ATTORNEYS' FEES

### A.   The Contingency Fee Agreement

12.    Counsel have been jointly handling the Stanford-related lawsuits referenced above, including the lawsuit against Hunton, pursuant to an agreement with the OSIC (in cases in which the OSIC is a named-Plaintiff) which provides for a contingency fee award of twenty-five percent of the net recovery, and pursuant to individual retainer agreements with BL's clients which provide for the payment of fees **only from recoveries** of no less than twenty-five percent in those cases that are pursued as class actions.

13.    As stated in the Motion, the Movants now seek Court approval of an aggregate award of fees equal to twenty-five percent (25%) of the Net Recovery (*i.e.*, the settlement amount less allowable disbursements).

14.    I respectfully submit that the fee requested in the Motion is reasonable in comparison to the total net amount to be recovered for the benefit of the Stanford investors from this settlement. The twenty-five percent (25%) contingency fee was negotiated at arm's length between the OSIC, the Examiner, and Plaintiffs' Counsel, and is substantially below the typical market rate contingency fee percentage of 33% to 40% that most law firms require to handle cases of similar complexity and magnitude. In addition, a twenty-five percent (25%) contingency fee for plaintiffs' counsel has previously been approved as reasonable by this Court. *See* Case No. 3:09-cv-00298-N [Doc. 1267] p. 2 ("The Court finds that the fee arrangement set forth in the Agreement is reasonable."); *see also id.* [Doc. 1208] p. 3 (providing a "contingency fee" of twenty-five percent (25%) of any Net Recovery in actions prosecuted by OSIC's designated professionals).

**B.      Plaintiffs' Counsel's Efforts**

15.      BL has devoted a tremendous amount of time and incurred significant expenses in preparing and prosecuting the Stanford-related lawsuits in which it serves as counsel or co-counsel, all on a purely contingency basis. BL has devoted thousands of hours of professional time worth millions of dollars to Stanford-related matters since the inception of many of these cases all the way back to 2009. Of this amount, BL attorneys spent approximately 1,203.80 hours on the Hunton case (with a lodestar value of approximately $709,323.00). As stated above, I respectfully submit that the proposed settlement at issue here and fee request should be analyzed not only as being the result of the specific efforts of counsel in the Hunton case, but also as resulting from many years of effort, and thousands of hours of work by the OSIC, the Plaintiffs, and Plaintiffs' Counsel which is not specific to, but I believe helped bring about, the Hunton settlement. But for the general efforts of these parties in all Stanford-related actions, and the efforts of BL described herein, there would be no settlement with Hunton.

16.      I respectfully submit that an award of attorneys' fees equal to twenty-five percent (25%) of the net recovery from the Hunton settlement, as requested, is reasonable and appropriate considering the significant time, effort, and resources which BL and the other firms retained by the OSIC have invested in investigating the Stanford fraud, prosecuting and resolving this claim, and prosecuting the other Stanford-related litigations.

Dated:   August 4, 2017

Peter D. Morgenstern

9

Exhibit 4

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | §<br>§<br>§ | |
| Plaintiff, | §<br>§ | |
| v. | §<br>§ | Civil Action No. 3:09-CV-0298-N |
| STANFORD INTERNATIONAL BANK, LTD., *et al.*, | §<br>§<br>§ | |
| Defendants. | §<br>§ | |
| | §<br>§ | |
| RALPH S. JANVEY, *et al.*, | §<br>§ | |
| Plaintiffs, | §<br>§ | |
| v. | §<br>§ | Civil Action No. 3:12-cv-04641-N |
| GREENBERG TRAURIG, LLP, *et al.*, | §<br>§<br>§ | |
| Defendants. | § | |

## DECLARATION OF DOUGLAS J. BUNCHER

Pursuant to 28 U.S.C. § 1746, I, Douglas J. Buncher, hereby declare under penalty of perjury that I have personal knowledge of the following facts, and they are true and correct.

**A.    Purpose of Declaration**

1.    I am submitting this Declaration in support of the Receiver and Official Stanford Investors Committee's (the "Committee") (collectively, the "Plaintiffs") Expedited Request for Entry of Scheduling Order, and Motion to Approve Proposed Settlement with Hunton &

Williams, LLP ("Hunton") to Enter the Bar Order, to Enter the Final Judgment and Bar Order, and for Plaintiffs' Attorneys' Fees and Expenses (the "Motion").[1]

**B.      Curriculum Vitae**

2.      My name is Douglas J. Buncher.  I am an attorney admitted to practice law in the State of Texas since 1989.  I am also admitted to practice before the United States District Courts for the Northern, Southern, Western and Eastern Districts of Texas, and am a member of the Bar Association of the United States Court of Appeals for the Fifth Circuit.  I am a partner in Neligan LLP ("Neligan"), a Dallas law firm which concentrates its practice in complex bankruptcy, insolvency and receivership proceedings and related litigation.  I have concentrated my practice in complex, commercial litigation since my career began in 1989, and since joining Neligan in 2000 have concentrated my practice in handling complex receivership and bankruptcy litigation.

3.      Neligan has handled numerous complex bankruptcy and receivership cases, and litigation associated with those cases, since the firm was formed in 1995.  Neligan and I have handled many receivership and bankruptcy-related lawsuits seeking to recover hundreds of millions, and in some cases, billions of dollars in damages from third parties for the benefit of bankruptcy and receivership estates, as well as the investors and creditors of those estates.  A detailed description of Neligan, its areas of practice, case studies, and representative engagements, as well as my personal biography, background and experience, are set forth on Neligan's website, www.neliganlaw.com.

4.      As an example of Neligan's prior experience in complex bankruptcy and receivership proceedings, in 1999 Neligan was retained as counsel to the SEC receiver, joint official liquidators and Chapter 11 bankruptcy trustee in the InverWorld insolvency proceeding,

---

[1] Capitalized Terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

a cross-border SEC receivership and bankruptcy case pending in United States Bankruptcy Judge Leif Clark's court in San Antonio, Texas, with a simultaneous Cayman liquidation proceeding in the Cayman Islands. InverWorld, Inc., one of the InverWorld companies, was a San Antonio-based SEC registered investment adviser and broker-dealer that took in over $300 million of primarily Latin American investors' funds on the promise of liquid, low risk investments and above-market rate returns, much like Stanford on a smaller scale. Neligan was the lead counsel for the SEC receiver in the InverWorld case, serving in essentially the same role as Baker Botts in the Stanford case. In the InverWorld case, Neligan also coordinated and participated in the prosecution of several multi-hundred million dollar lawsuits brought by the receiver/trustee and investors, individually and as class representatives, against third parties who were alleged to have aided and abetted the InverWorld Ponzi scheme, including the auditor Deloitte & Touche, law firm Curtis Mallet, and French, Bahama and Swiss financial institutions affiliated with Credit Commercial de France. All of that litigation was successfully resolved, resulting in significant recoveries to the InverWorld estate and investors.

5.     Neligan also served as counsel to an ad hoc committee of bondholders, the litigation trustee, and a group of individual bondholders in litigation arising out of the Global Crossing bankruptcy in 2001 involving hundreds of millions of dollars in alleged damages. At the time, Global Crossing, a company that was laying fiber optic cable around the world in anticipation of the expanding usage of the internet, was one of the largest bankruptcies in U.S. history.

**B.    Neligan Role in Stanford-Related Litigation**

6.      Shortly after the Stanford Receivership was commenced in early 2009, Neligan was approached by Edward Snyder of Castillo Snyder P.C. ("Castillo Snyder") and Edward Valdespino of Strasburger & Price, LLP ("Strasburger") to serve as co-counsel to their clients who had invested hundreds of millions of dollars into Stanford International Bank, Ltd. CDs ("SIBL CDs").   Due to Neligan's prior experience in major bankruptcy and receivership proceedings and third-party litigation associated with those proceedings, Neligan was hired to assist counsel at Castillo Snyder and Strasburger with the investigation and prosecution of litigation against third parties and to assist with the Stanford Receivership and potential bankruptcy issues.

7.      Neligan has monitored and participated in the main Stanford Receivership proceeding since that time.  On July 29, 2009, the Stanford Multidistrict Litigation matter, MDL No. 2099, was initiated (the "Stanford MDL Proceeding").  Neligan has also monitored and participated in the Stanford MDL Proceeding since its inception.

8.      In 2009, Castillo Snyder, Strasburger, and Neligan jointly initiated class action lawsuits in this Court on behalf of certain Stanford investors, individually and on behalf of a class of similarly situated investors, styled *Troice v. Willis of Colorado, Inc.*, Case No. 3:09-cv-01274, and *Troice v. Proskauer Rose, LLP*, Case No. 3:09-cv-01600.

9.      Since that time, in addition to the aforementioned *Proskauer* and *Willis* investor cases, Neligan, along with Castillo Snyder, Strasburger and Butzel Long, have investigated, filed and prosecuted virtually all of the other major Stanford-related litigation against third-parties on behalf of the Committee and Stanford investor plaintiffs, who have sued individually and on behalf of putative classes of Stanford investors, including the following lawsuits in this Court:

4

(a)  *Official Stanford Investors Committee, et al. v. Breazeale, Sachse, & Wilson, LLP, et al.*, Case No. 3:11-cv-00329;

(b)  *Janvey, et al. v. Adams & Reese, LLP, et al.*, Case No. 3:12-cv-00495;

(c)  *Janvey, et al. v. Greenberg Traurig, LLP, et al.*, Case No. 3:12-cv-04641;

(d)  *Janvey, et al. v. Proskauer Rose, LLP, et al.*, Case No. 3:13-cv-477; and

(e)  *Janvey, et al. v. Willis of Colorado, Inc., et al.*, Case No. 3:13-cv-03980.[2]

In addition to representing the Committee and Investor Plaintiffs in the cases listed above, Neligan has also been engaged to represent the Receiver in those cases in which the Receiver is a named Plaintiff. Neligan was also lead counsel for the Plaintiffs in the two BDO lawsuits, which were successfully resolved: *Philip Wilkinson, et al v. BDO USA, LLP, et al*, Case No. 3:11-cv-1115; *The Official Stanford Investors Committee v. BDO USA, LLP, et al*, Case No. 3:12-cv-01447. Thus, Neligan has been actively involved in the major Stanford-related litigation against third parties since 2009.

10.    Neligan has also jointly handled many of the fraudulent transfer cases brought by the Committee and the Receiver pursuant to an agreement approved by the Court's order dated February 25, 2011 [Docket No. 1267]. Neligan served as lead counsel in the following fraudulent transfer cases:[3]

(a)  *Ralph S. Janvey and Official Stanford Investors Committee v. Yolanda Suarez*, Civil Action No. 10-cv-2581, now consolidated with the *Greenberg* lawsuit, Civil Action No. 3:12-cv-4641;

---

[2] Peter Morgenstern of Butzel Long is co-counsel for the Investor Plaintiffs and Committee in all these cases except the cases against Willis of Colorado, Inc. and Proskauer Rose, LLP. Strasburger was not involved in the cases against Adams & Reese, LLP and Breazeale, Sachse & Wilson LLP.

[3] Castillo Snyder, Strasburger, and Butzel Long serve as co-counsel in these cases and lead counsel in other Stanford-related fraudulent transfer cases. In turn, Neligan serves as co-counsel in the cases in which Castillo Snyder, Strasburger, or Butzel Long serve as lead counsel.

(b)     *Ralph S. Janvey and Official Stanford Investors Committee v. IMG Worldwide, Inc.*, Civil Action No. 11-0117; consolidated with *Ralph S. Janvey and Official Stanford Investors Committee v. International Players Championship, Inc.*, Civil Action No. 11-0293;

(c)     *Ralph S. Janvey and Official Stanford Investors Committee v. Miami Heat Limited Partnership and Basketball Properties, Ltd.*, Civil Action No. 11-0158;

(d)     *Ralph S. Janvey and Official Stanford Investors Committee v. PGA Tour, Inc.*, Civil Action No. 11-0226;

(e)     *Ralph S. Janvey and Official Stanford Investors Committee v. The Golf Channel, Inc.*, Civil Action No. 11-0294, currently on appeal at the Fifth Circuit;

(f)     *Ralph S. Janvey and Official Stanford Investors Committee v. ATP Tour, Inc.*, Civil Action No. 11-0295; and

(g)     *Ralph S. Janvey and Official Stanford Investors Committee v. Rocketball, Ltd. and Hoops, L.P.*, Civil Action No. 11-770.

## C.     Neligan Role in Litigation Against Hunton

11.     Neligan has been involved with the investigation, prosecution and settlement of the claims asserted against Hunton since 2009, long before the Hunton Action was filed. Although the Hunton Action was filed in 2012, the investigation of the claims began long before that. The parties also attempted to resolve the claims at mediation before the Hunton Action was filed, and Neligan spent significant time investigating the claims and preparing for and attending that mediation before the Hunton Action was filed.

12.     On or about June 21, 2012, Neligan was retained by the Receiver to investigate, file and prosecute claims against Hunton on behalf of the Receiver. On or about November 12, 2012, Neligan was also retained by the Committee in the Hunton Action. Neligan has been actively involved in all aspects of the investigation, prosecution and settlement of the Hunton Action since it was filed in 2012.

6

13.     The settlement for which approval is sought in the Motion settles all claims against Hunton in exchange for payment of $34 million by Hunton to the Receiver for ultimate distribution to the Stanford investor victims.

14.     Neligan's assistance in the investigation of claims against Hunton included many hours assisting with document review at the warehouse in Houston, Texas, where the Stanford business records are maintained, review of the Hunton legal files and review of the critical documents that formed the basis of the claims asserted against Hunton in the Complaint. Neligan actively participated in the preparation of the Complaint and all aspects of the prosecution of the Hunton Action since it was filed.

15.     Neligan participated in both a pre-suit and a post-suit mediation with Hunton, as well as subsequent negotiations after both mediations failed to result in a settlement, and Neligan's time and effort played an integral role in achieving the settlement of the claims against Hunton that is the subject of the Motion. Neligan also participated in the negotiation and drafting of the settlement documents and the Motion for Approval.

**D.      Reasonableness of Settlement**

16.     It is my opinion based upon years of experience prosecuting, trying and settling complex receivership and bankruptcy litigation, my involvement in the Stanford Receivership settlements with BDO, Kroll, Chadbourne and certain Defendants in the Adams & Reese litigation, and my assessment of the relative merits of the claims and defenses in the Hunton Action that the settlement with Hunton is fair and reasonable and in the best interests of the Stanford Receivership Estate and the Stanford investors and should be approved by the Court. Similarly, it is my opinion that the bar orders sought by the settlement are the only effective means of resolving this case and giving Hunton the protection it needs to end the litigation.

7

Without the bar orders sought in the Motion, there would be no settlement with Hunton, as Hunton would continue to face potential claims related to Stanford.

      **E.**    **Time and Effort of Neligan Related to Hunton and Other Stanford Litigation**

      17.    The Motion seeks approval and payment of the agreed upon twenty-five percent (25%) contingency fee to Plaintiffs' Counsel. Neligan has invested $414,010.50 of professional time through August 2, 2017 in the Hunton Action. The hours incurred by Neligan broken down by professional are as follows:

| Professional | Hourly Rate | Hours | Total |
|---|---|---|---|
| Douglas Buncher | $625 | 490.70 | $306,687.50 |
| Nicholas Foley | $650 | 3.50 | $2,275.00 |
| Patrick Neligan | $675 | 33.60 | $22,680.00 |
| Douglas Dunn | $350 | 46.90 | $16,415.00 |
| John Gaither | $300 | 209.70 | $62,910.00 |
| Ruth Clark | $150 | 16.30 | $2,445.00 |
| Kathy Gradick | $115 | 5.20 | $598.00 |
|  |  | **Total** | $414,010.50 |

      18.    Neligan will continue to incur additional time in connection with obtaining court approval of the settlement.

      19.    In addition to the time invested by Neligan in the Hunton Action, since 2009, Neligan has put in an immense amount of time and effort into the Stanford Receivership generally and into litigation against third parties to attempt to recover money for the benefit of the Stanford investors. Neligan has devoted thousands of hours and millions of dollars of time

investigating and prosecuting the Stanford litigation referenced above and monitoring the Stanford Receivership generally since its inception. It is not possible to properly handle any of the major Stanford lawsuits against third parties, including the Hunton Action, without monitoring and staying abreast of all the related cases. It is also not possible to properly handle any of the major Stanford lawsuits against third parties, including the Hunton Action, without coordinating efforts with the Receiver's counsel at Baker Botts LLP, as well as other counsel to the Committee. Neligan and the other Plaintiffs' Counsel have done an immense amount of work investigating and analyzing the Stanford Ponzi scheme and the potential claims that could be brought against third party aiders and abettors of Stanford since the commencement of this Receivership case, all of which allowed Plaintiffs' Counsel to formulate, prosecute and successfully and efficiently settle the claims against Hunton. But for the diligent efforts of Plaintiffs' Counsel since the commencement of this Receivership Action, the settlement with Hunton would never have been achieved.

### F.    Reasonableness of Attorneys' Fees

20.    In light of the tremendous time and effort Neligan and the other Plaintiffs' Counsel have put into the effort to recover monies for the Stanford Receivership Estate and the investors, including but not limited to the time related to the claims against Hunton, the Court's prior approval of the 25% contingency fee arrangement between the Committee and the Receiver related to the prosecution of the fraudulent transfer claims, the Court's approval of the 25% contingency fees in connection with the BDO, Kroll, Chadbourne and Adams & Reese settlements, as well as applicable case law in the Fifth Circuit concerning the range of reasonable contingency fees for litigation of this nature, it is my opinion that the twenty-five percent (25%)

fee to be paid to Plaintiffs' Counsel for the settlement with Hunton is reasonable and should be approved.

Dated:  August 7, 2017.

Douglas J. Buncher

10

Exhibit 5

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RALPH S. JANVEY, in his capacity as Court-appointed receiver for the Stanford Receivership Estate; the OFFICIAL STANFORD INVESTORS COMMITTEE; PAM REED; SAMUEL TROICE; and MICHOACAN TRUST; individually and on behalf of a class of all others similarly situated,<br><br>                  Plaintiffs,<br><br>v.<br><br>GREENBERG TRAURIG, LLP; HUNTON & WILLIAMS, LLP; AND YOLANDA SUAREZ,<br><br>                  Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 3:12-cv-04641-N |

---

## DECLARATION OF EDWARD F. VALDESPINO IN SUPPORT OF RECEIVER, OSIC AND INVESTOR PLAINTIFFS' REQUEST FOR PLAINTIFFS' ATTORNEYS' FEES FOR THE HUNTON AND WILLIAMS, LLP LAWSUIT

---

Pursuant to 28 U.S.C. § 1746, I, Edward F. Valdespino, hereby declare under penalty of perjury that I have personal knowledge of the following facts:

### BACKGROUND

1.    I submit this Declaration in support of the Receiver, Official Stanford Investors Committee ("OSIC") and Investor Class Plaintiffs' (the "Investor Plaintiffs") (collectively, the "Plaintiffs") Request for Plaintiffs' Attorneys' Fees for the Hunton and Williams, LLP ("Hunton") lawsuit.

2.    The request for Plaintiffs' Attorney's Fees is sought for the prosecution of the

lawsuit asserted against Defendants in Civil Action No. 3:12-cv-04641-N on behalf of the Official Stanford Investors Committee, Ralph Janvey and a putative class of Stanford Investor victims.

3.      I am a former partner in the Commercial Litigation section of Strasburger & Price, LLP.  I served and my former law firm continues to serve as Plaintiff's co-counsel in the lawsuit and are responsible for the prosecution of the lawsuit.  I actively participated in all material aspects of the above-referenced lawsuit from the investigative stage to the current status.

### CURRICULUM VITAE

4.      I was admitted to practice law in the State of Texas in 1987.  I am also admitted to practice before the United States District Courts for the Northern, Southern and Western districts of Texas and the United States Court of Appeals for the Fifth Circuit.  Throughout my career, I have handled complex commercial litigation for both corporate and individual clients, acting as both defendants' and plaintiffs' counsel

5.      Strasburger & Price LLP ("Strasburger") was founded in 1939 and currently has approximately 220 attorneys with offices in Austin, Dallas, Frisco, Houston and San Antonio, Texas.  Strasburger also maintains offices in New York, Washington, D.C. and Mexico City.

6.      Strasburger is a full service firm with attorneys in multiple practice areas providing relevant and meaningful expertise to prosecute the lawsuit.  Strasburger has served as lead counsel in countless lawsuits concerning various areas of the law, including:

  a.      securities litigation;

  b.      fiduciary litigation;

  c.      class action litigation;

  d.      attorney malpractice; and

     e.     accounting malpractice.

7.     Strasburger attorneys also have handled numerous complex bankruptcy and receivership cases and litigation associated with those cases, representing creditors, receivers and trustees.

8.     Strasburger also maintains a strong appellate group that has been actively involved in the Greenberg lawsuit and all other Stanford lawsuits.

9.     To date, the following Strasburger attorneys have provided substantive assistance for the prosecution of the Greenberg lawsuit:

     a.     Robert O'Boyle;

     b.     Michael Jung;

     c.     Judith Blakeway;

     d.     Edward Valdespino (former partner);

     e.     David Cibrian (former partner);

     f.     Andy Kerr;

     g.     Lee Polson;

     h.     Deborah Innocenti (former partner), and

     i.     Margaret Hagelman.

A detailed description of Strasburger, its areas of practice as well as the personal background and experience of the above referenced attorneys are set forth on Strasburger's website, www.Strasburger.com.

### STRASBURGER'S WORK ON THE STANFORD CASES

10.     After the collapse of Stanford, Strasburger was retained by approximately 2300 Stanford victims who lost approximately $570,000,000.  We then began investigating potential claims against third party defendants.

11.     After the Official Stanford Investor's Committee ("OSIC") was formed, I was asked to become a member and served on that committee until January of 2016, without compensation.  Judith Blakeway, a Strasburger partner, continues to serve on the OSIC, without compensation.

12.     Through cooperation with other counsel and counsel for the Receiver, multiple class action lawsuits were filed on behalf of Stanford investors, as well as litigation filed on behalf of OSIC, including the instant case as well as the following cases:  *Janvey v. Willis of Colorado, Inc.,* Case No. 3:13-cv-03980; *Janvey v. Proskauer Rose, LLP,* Case No. 3:13-cv-477; and *Turk v. Pershing, LLC,* Case No. 3:09-cv-02199.  Strasburger is co-counsel in all of the afore-mentioned cases.

13.     In addition, Strasburger was also engaged as lead counsel to represent the OSIC in the following fraudulent transfer cases along with co-counsel:

a.     *The Official Stanford Investor's Committee v. American Lebanese Syrian Associated Charities, Inc., et al;* Civil Action No. 3:11-cv-00303-N-BG;

b.     *Janvey v. InsideOut Sports & Entertainment,* Civil Action No. 3:11-cv-00760-N-BG;

c.     *Janvey v. Interim Executive Management, Inc.,* Civil Action No. 3:10-cv-00829-N-BG;

d.     *Janvey v. Merge Healthcare, Inc.;* Civil Action No. 3:10-cv-01465-N-BG;

e.     *Janvey v. Tonarelli;* Civil Action No. 3:10-cv-01955-N-BG;

  f.  *Janvey v. Vingerhoedt, et al;* Civil Action No. 3:11-cv-00291-N-BG; and

  g.  *Janvey v. Tolentino*; Civil Action No. 3:10-cv-2290-N-BG.

  14.  I and Strasburger have spent thousands of hours investigating and prosecuting Stanford litigation on a contingent fee basis. We began this process by meeting and interviewing clients and former employees of Stanford in both the United States and in Mexico. We also reviewed documents that we obtained from these individuals, from the internet and from other public sources. We also met with independent witnesses and gleaned information from the public filings of the SEC and Receiver. Through this process, we gained knowledge of the complex structure of Stanford entities, their operations, financial transactions and the relationships between them and the defendants that we have sued. Through this investigation we gained an understanding of how the Ponzi scheme was perpetrated and how Strasburger clients were victimized through the participation of the third party defendants. It was only through this extensive and comprehensive investigation that we could identify and develop the claims against the third party defendants.

  15.  Well in excess of 50% of my practice over the last 7 years has been dedicated to these Stanford cases. As a direct consequence, I have been required to turn down billable work that I otherwise would have been able to accept.

  16.  Strasburger has participated as co-counsel in every facet of the cases, including the investigation of the facts and legal theories that form the bases for the lawsuits and preparing responses to motions to dismiss. I also served as co-lead counsel in the successful appeal of the dismissal of the Troice Class Action cases under SLUSA to the Fifth Circuit and the U.S. Supreme Court ("SLUSA Appeal"). Strasburger appellate partners, Michael Jung and Judith Blakeway were heavily involved in preparing and presenting the briefs to the Fifth Circuit and to

The Supreme Court of the United States.  In addition, Mike Jung successfully argued the case before the Fifth Circuit.

17.     Throughout this process, I have coordinated my activities with the Receiver and his counsel, the Examiner, other members of the OSIC, the SEC and the Department of Justice. On numerous occasions I have also traveled to Washington, D.C. to discuss and coordinate activities with the SEC and DOJ.  I have also met with members of the U.S. Senate and US. Congress and their staff.  I have interviewed numerous witnesses and reviewed thousands of documents, including spending weeks at the Receiver's document warehouse in Houston.  I traveled to Antigua to search for additional documents with counsel for the Receiver.  I have also reviewed the databases maintained by the Receiver, and the trial transcripts of the Stanford criminal trial as well as the exhibits used at trial.

18.     In my opinion, my involvement and the involvement of Strasburger in all of the related Stanford Cases has proven invaluable to the successful prosecution of the lawsuit.  In addition, it is also my opinion that the proposed settlement could not have been accomplished without the substantial amount of time and effort expended by all Plaintiffs' Counsel and their tireless efforts in the Stanford Cases.

## STRASBURGER'S WORK ON THE HUNTON LAWSUIT

19.     Based upon our comprehensive investigation of the myriad Stanford entities, their relationship with Hunton and Hunton's role in the Ponzi scheme, we participated in formulating the causes of action and damage claims and the filing and litigation of lawsuits that resulted in this settlement.

   a.     **The Investor and OSIC Lawsuit**

20.     Plaintiffs filed their initial complaint on behalf of the Official Stanford Investor's

Committee, Ralph Janvey and the Stanford investor victims as a putative class on November 15, 2012. (Dkt. 1). Among other claims, Plaintiffs asserted causes of action against Defendants for negligence, aiding and abetting violations of the TSA, aiding and abetting breaches of fiduciary duty, breach of fiduciary duty, fraudulent transfers, aiding and abetting fraudulent transfers, participation in a fraudulent scheme, and conspiracy.

21.     Defendants moved to dismiss the complaint because, among other things, the claims were precluded by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"). The Court stayed the case while Plaintiffs appealed the SLUSA ruling in the Troice lawsuits. The United States Court of Appeals for the Fifth Circuit reversed the district court's order of dismissal, and the U.S. Supreme Court affirmed the Court of Appeals' decision. *See Roland v. Green,* 675 F.2d 503, 506-07 (5th Cir. 2012), *aff'd sub nom.*, *Chadbourne & Park, LLP v. Troice,* 134 S.Ct. 1058 (2014).

22.     On December 17, 2014, the district court granted in part and denied in part Defendants' motion to dismiss. (Dkt. 114). The district court dismissed Plaintiffs' claims for aiding and abetting fraudulent transfers. The district court also dismissed, without prejudice, claims for breach of fiduciary duty. The district court declined to dismiss other claims.

23.     Hunton answered the complaint on March 2, 2015. (Dkt. 128).

24.     Plaintiffs filed their Opposed Motion for Class Certification, for Designation of Class Representatives and Class Counsel, and Brief in Support Thereof, on February 26, 2016. (Dkt. 175, 176). Defendants responded on February 26, 2016. (Dkt. 179-85). The class certification motion is currently pending decision by the district court.

25.     Strasburger has been and continues to be actively involved in the lawsuit. Strasburger appellate lawyers took the lead in briefing the SLUSA issues that directly impacted

the lawsuit and Michael Jung successfully argued the case at the Fifth Circuit Court of Appeals. Strasburger also acted as co-lead counsel for the U.S. Supreme Court briefing and handled the filings for the Plaintiffs at the Supreme Court.

26.     In addition, Strasburger was also involved in briefing responses to the motions to dismiss, and the motions to certify the class.  I was also actively involved with the preparation and presentation of class representative depositions and also attended the class expert depositions in New York City.

27.     Strasburger attorneys continue to actively participate in the case.

28.     The parties mediated the case in August 2012, but the mediation was unsuccessful.  I prepared for and participated in the mediation.

## REQUEST FOR APPROVAL OF ATTORNEYS' FEES

29.     Plaintiffs' Counsel have been jointly handling all of the Stanford Cases referenced above, including the lawsuit, pursuant to twenty-five percent (25%) contingency fee agreements with OSIC (in cases in which OSIC is a named Plaintiff) and the Investor Plaintiffs (in investor class action lawsuits).  The Movants seek Court approval to pay Plaintiffs' Counsel a fee equal to an aggregate of twenty-five percent (25%) of the Net Recovery in the lawsuit.

30.     I respectfully submit the fee requested is reasonable in comparison to the total net amount to the amount of legal work Strasburger has performed, without compensation, for the benefit of the Stanford investors.  The twenty-five percent (25%) contingency fee was heavily negotiated between OSIC and Plaintiffs' Counsel, and is substantially below the typical market rate contingency fee percentage of 33% to 40% that most law firms would demand to handle cases of this complexity and magnitude.  In certain instances, OSIC interviewed other potential counsel who refused to handle the lawsuits without a higher percentage fee.  The lawsuit and the

other third-party lawsuits are extraordinarily large and complex, involving voluminous records and electronic data and requiring many years of investigation, discovery and dispositive motions to get to trial.

31.     Moreover the lawsuit and the companion Stanford Cases, many of which were filed over 7 years ago, involve significant financial outlay and risk by Plaintiffs' Counsel. The investor class actions were dismissed following the Court's SLUSA ruling, and are only now proceeding toward class discovery and motions to certify. Plaintiffs' Counsel therefore has, for many years now, borne significant risk of loss through dispositive motions or at trial after years of work for no compensation, and an almost certain appeal following any victory at trial. A twenty-five percent (25%) contingency fee is reasonable given the time and effort required to litigate these case, their complexity and the risks involved.

32.     I and Strasburger have dedicated thousands of hours to the prosecution of Stanford litigation on a contingent fee basis. This includes time spent investigating and understanding the background and history of the complex web of Stanford companies, the operations, financial transactions, interrelationship and dealings between and among the various Stanford entities and the defendants we have sued, the facts relating to the Ponzi scheme and how it was perpetrated through the various Stanford entities, and the involvement of the third-party defendants in the foregoing cases with Stanford. Without a comprehensive investigation and understanding of this background and the requisite legal skill, it would not have been possible to formulate viable claims against the third-party defendants and prosecute them successfully.

33.     A review of the Court's docket in all of these cases reveals only a portion of the immense amount of work that Plaintiffs' Counsel have put into the prosecution of all of these

lawsuits. The docket and pleadings reveal only the work that is filed with the Court. As the Court is aware, the prosecution of lawsuits of this magnitude, complexity and novelty has required a tremendous amount of time and effort to investigate the facts, research the relevant legal issues, coordinate and strategize with counsel and clients regarding the handling of the cases, conduct discovery, prepare the briefs and motions, negotiate settlements, and prepare cases for summary judgment and trial. Plaintiffs' Counsel have collectively spent thousands of hours in their investigation and prosecution of the lawsuits referenced above, including this lawsuit. Because of the amount of time dedicated to those cases, Plaintiff's counsel was precluded from performing other legal work.

34.     Over the last 7 years, myself and other attorneys and paralegals from Strasburger have spent thousands of hours in uncompensated time worth millions of dollars investigating and prosecuting the Stanford Cases, including this lawsuit. Well in excess of 50% of my practice over the last 7 years has been dedicated to these Stanford cases. I personally have worked many late nights and weekends for the last 7 years on Stanford cases or Stanford-related matters with virtually no compensation.

35.     I have personally tracked the time spent by my firm working on Stanford litigation, which is recorded on a daily basis through detailed time records and identified the time attributable to this litigation. Based upon my professional judgment and experience with cases of similar novelty, complexity and importance, I believe that the hours expended and fees incurred are reasonable and necessary for the effective resolution of this case.

36.     As of April 18, 2016, Strasburger spent 214 hours of attorney and paralegal time worth $121,335 at our applicable hourly rates for complex cases of this nature that I feel is rightfully and equitably attributable to this lawsuit. I am familiar with the legal practice in the

Northern District of Texas and have knowledge of the usual and customary rates charged for legal services required in this and similar cases. I am also familiar with the type and amount of legal services reasonably necessary and the nature of the work required to prosecute this type of matter.

37.     The proposed settlement is the direct result of many years of effort and thousands of hours of work by the Receiver, OSIC, Investor Plaintiffs and Plaintiffs' Counsel as described herein. But for the efforts of these parties, and the efforts of myself and my law firm described herein, there would be no settlement.

38.     In light of the tremendous time and expense I and Strasburger and the other Plaintiffs' Counsel have put into the overall effort to recover monies for the Stanford Receivership Estate and the investors, all of which was necessary to the successful prosecution and resolution of the Greenberg case, I respectfully submit that the twenty-five percent (25%) fee to be paid to counsel for OSIC and the Investor Plaintiffs for the settlement of the lawsuit is reasonable. I and Strasburger and the other Plaintiffs' Counsel have worked tirelessly for years to attempt to recover money for the benefit of Stanford's investors for virtually no compensation.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 19th, 2017.

EDWARD F. VALDESPINO

# Exhibit 6

## DECLARATION OF SCOTT D. POWERS

Pursuant to 28 U.S.C. § 1746, I, Scott D. Powers, hereby declare under penalty of perjury that I have personal knowledge of the following facts:

1.     My name is Scott D. Powers.   I am over the age of eighteen (18) and am competent to make this Declaration.

2.     I am admitted to practice law in the State of Texas, and am admitted to practice before various federal courts, including the U.S. Courts of Appeal for the Fifth Circuit and the U.S. District Court for the Northern District of Texas.  I have been licensed to practice law since 2000, and I am a partner in the law firm of Baker Botts LLP ("Baker Botts").

3.     Baker Botts has served as lead counsel to Ralph S. Janvey, in his capacity as the Court-appointed Receiver in the Stanford Financial Group SEC receivership proceedings, since said proceedings were initiated in 2009 in the case styled *SEC v. Stanford International Bank, Ltd., et al.*, Civil Action No. 3:09-CV-0298-N.  In its role as lead counsel, Baker Botts has reviewed litigation-related expenses incurred by, and paid to, the Receiver, counsel for the Receiver, and counsel for the Official Stanford Investors Committee, including expenses related to lawsuits such as *Janvey et al. v. Greenberg Traurig, LLP, et al.*, Case No. 3:12-cv-04641-N (N.D. Tex.) (the "Greenberg/Hunton Litigation").

4.     I have reviewed records of the Receivership related to the litigation expenses incurred by the Receiver, counsel for the Receiver, and counsel for the Official Stanford Investors Committee in the Greenberg/Hunton Litigation.  The following table summarizes expenses that have been paid by the Receiver in connection with the Greenberg/Hunton Litigation:

|  | Amount | Notes |
|---|---|---|
|  | $5,700.00 | McGowan Dispute Resolution (August 2012 mediation) |
|  | $21,500.00 | Payment to Phillips ADR for Oct. 2016 mediation (Invoice 12494) |
|  | $4,687.50 | Payment to Phillips ADR for mediation follow up work (Invoice 12981) |
|  | $5,175.00 | Payment to Phillips ADR for mediation follow up work (Invoice 13087) |
|  | $1,125.00 | Payment to Phillips ADR for mediation follow up work (Invoice 13246) |
|  | $750.00 | Payment to Phillips ADR for mediation follow up work (Invoice 13380) |
|  | $896.76 | Receiver expenses for Aug. 2012 mediation |
|  | $1,796.99 | Examiner expenses for Oct. 2016 mediation |
|  | $2,947.46 | Castillo Snyder expenses on May 2013 invoice |
|  | $4,052.74 | Castillo Snyder expenses on December 2014 invoice |
|  | $1,961.26 | Castillo Snyder expenses on September 2016 invoice |
|  | $228.92 | Castillo Snyder expenses on November 2016 invoice |
|  | $617.03 | Castillo Snyder expenses on January 2017 invoice |
|  | $6.00 | Neligan Foley expenses on September 2015 invoice |
|  | $88.94 | Neligan Foley expenses on January 2016 invoice |
|  | $3,436.33 | Neligan Foley expenses on December 2016 invoice |
| **Total** | **$54,969.93** |  |

5.      In addition to the foregoing expenses, the Receiver has submitted a request to the

Court for approval to pay an additional $2,551.18 to counsel for the Official Stanford Investors

Committee (Castillo Snyder) for expenses incurred in the Greenberg/Hunton Litigation.


Executed on August 14, 2017.

_____

Scott D. Powers

Exhibit 7

## <u>DECLARATION OF EXAMINER JOHN J. LITTLE</u>

Pursuant to 28 U.S.C. § 1746, I, John J. Little, hereby declare under penalty of perjury that I have personal knowledge of the following facts:

1.     My name is John J. Little.  I am over the age of eighteen (18) and am competent to make this Declaration.

2.     I am admitted to practice law in the State of Texas, and am admitted to practice before various federal courts, including the United States Supreme Court, the U.S. Courts of Appeal for the Fifth and Eleventh Circuits, the United States Tax Court and the U.S. District Courts for the Northern, Eastern and Southern Districts of Texas.  I have been practicing law in Dallas, Texas since 1983, and have been a partner in the Dallas law firm Little Pedersen Fankhauser, LLP, since 1994.

3.     By Order dated April 20, 2009, I was appointed by Judge David C. Godbey (the "Court") to serve as the Examiner in the Stanford Financial Group receivership proceedings.  *SEC v. Stanford International Bank, Ltd., et al.*, Civil Action No. 3:09-CV-0298-N, ECF No. 322 (the "Examiner Order").  Pursuant to the Examiner Order, I was directed to "convey to the Court such information as the Examiner, in his sole discretion, shall determine would be useful to the Court in considering the interests of the investors in any financial products, accounts, vehicles or ventures sponsored, promoted or sold by

any Defendants[1] in this action (the "Investors")."  I have served as Examiner in the Stanford Financial Receivership proceedings continuously since my appointment.

4.    By Order dated August 10, 2010, the Court created the Official Stanford Investors Committee ("OSIC") to represent Stanford Investors in the Stanford Financial Receivership proceedings and all related matters.  *SEC v. Stanford International Bank, Ltd., et al.*, Civil Action No. 3:09-CV-0298-N, ECF No. 1149 (the "OSIC Order").  The OSIC Order defined "Stanford Investors" as "the customers of SIBL who, as of February 16, 2009, had funds on deposit at SIBL and/or were holding certificates of deposit issued by SIBL."  OSIC Order at 2.  The OSIC Order conferred upon the OSIC "rights and responsibilities similar to those of a committee appointed to serve in a bankruptcy case."  The OSIC Order appointed me, as Examiner, to serve as a member of the OSIC and as its initial Chair.  I have served as the Chair of the OSIC since its formation and continue to so serve.

5.    The OSIC Order specifically authorized the OSIC to pursue claims on a contingency fee basis against (a) Stanford's pre-receivership professionals, and (b) the officers, directors and employees of any Stanford entity.[2]  OSIC Order at 8.

---

[1]     The Defendants include Stanford International Bank, Ltd., Stanford Group Company, Stanford Capital Management, LLC, Robert Allen Stanford, James M. Davis, Laura Pendergest-Holt, Stanford Financial Group, The Stanford Financial Group Bldg. Inc.  The Receivership encompasses Defendants and all entities they own or control.

[2]     This authority was limited in that the OSIC could not pursue claims that were duplicative of claims already being prosecuted by the Receiver.  OSIC Order at 8.

### A.     The OSIC Retains Counsel

6.      In my capacity as Chair of the OSIC, I negotiated and executed an engagement agreement dated November 12, 2012, pursuant to which the OSIC retained Castillo Snyder, P.C. ("CS"), Neligan Foley, LLP ("NF"), Butzel Long, PC ("BL") and Strasburger & Price, LLP ("SP") to represent the OSIC in connection with the prosecution of claims against Greenberg Traurig, LLP ("Greenberg"), Hunton & Williams, LLP ("Hunton") and Yolanda Suarez (the "Hunton Claims").  The November 12, 2012 engagement agreement contemplated that the four law firms would be compensated for their services through a contingent fee of twenty-five percent (25%) of the Net Recovery realized in respect of the Hunton Claims.

7.      In my capacity as Chair of the OSIC, I negotiated and executed a Revised Fee Agreement with CS, NF, BL and SP with respect to the Hunton Claims dated as of April 10, 2014.  The April 10, 2014 Revised Fee Agreement provided that the four law firms would be compensated for their services through a contingent fee of twenty-five percent (25%) of the Net Recovery realized in respect of the Hunton Claims.  The Revised Fee Agreement defined Net Recovery as the "Recovery[3] in connection with the Proskauer Claims, after deducting allowable expenses and disbursements."  In connection with the execution of the April 10, 2014 Revised Fee Agreement, the four law firms

---

[3]     "Recovery" was defined as "anything of value directly or indirectly received by the Stanford Receivership Estate as a result of the Proskauer Claims, including but not limited to the proceeds of any settlement or other disposition, a direct monetary payment or award, restitution awarded through any criminal proceeding, a fine assessed by the United States or other local or state Government, or forfeiture of any of the Proskauer Defendants' assets, regardless of whether such Recovery received by the Stanford Receivership Estate arguably results from the claims asserted by the Receiver or the Committee against the Proskauer Defendants."

entered into an agreement that addressed how those firms would divide the work to be done in prosecuting the Hunton Claims and any fees paid with respect to the Hunton Claims.

## B.    Related Litigation Against Law Firms

8.    On August 27, 2009, Samuel Troice, Horacio Mendez, Annalisa Mendez and Punga Punga Financial, Ltd., each an individual Stanford Investor (as putative representatives of a class of similarly situated plaintiffs)(the "Troice Plaintiffs"), filed an action against the law firm Proskauer Rose, LLP ("Proskauer") and one of its partners, Thomas Sjoblom.  Civil Action No. 3:09-CV-1600-N in the Northern District of Texas, Dallas Division (the "Proskauer Action").   The action was filed by CS.   A second amended complaint was filed in the Proskauer Action on October 9, 2009, that added an additional law firm, Chadbourne Parke, LLP ("Chadbourne") and P. Mauricio Alvarado ("Alvarado") as Defendants.   The second amended complaint was filed by CS, NF and SP.

9.    The Proskauer Action defendants (Chadbourne, Proskauer, Sjoblom, Alvarado) filed motions to dismiss the Proskauer Action in December 2009.  [Proskauer Action, ECF Nos. 31, 36, 44].   On October 21, 2011, this Court granted the various motions to dismiss, finding that the Securities Litigation Uniform Standards Act of 1998 ("SLUSA") precluded the action.  [Proskauer Action, ECF No. 96].  The Troice Plaintiffs appealed that decision to the Fifth Circuit.  On March 19, 2012, the Fifth Circuit issued its opinion reversing this Court's order of dismissal.  *Roland v. Green*, 675 F.3d 503 (5th Cir. 2012).  The Proskauer Action defendants then petitioned for certiorari to the United

States Supreme Court, which granted the petition. On February 26, 2014, the Supreme Court issued its opinion affirming the Fifth Circuit and concluding that SLUSA did not preclude the state law-based class action lawsuits brought against the defendants in the Proskauer Action. *Chadbourne & Parke, LLP v. Troice*, 134 S. Ct. 1058 (2014).

### C.    The Hunton Action

10.    The Receiver, the OSIC and an individual Stanford Investor negotiated and entered into a tolling agreement with Hunton in February 2011.

11.    On November 15, 2012, the Receiver, the OSIC and three individual Stanford Investors (Sandra Dorrell, Samuel Troice and Michoacan Trust), on behalf of a putative class of Stanford Investors, filed their Original Complaint against Greenberg, Hunton, and Yolanda Suarez ("Suarez") in Civil Action No. 3:12-cv-4641-N (the "Hunton Action"). [Hunton Action, ECF No. 1].

12.    Hunton filed a motion for a partial stay of the Hunton Action, [Hunton Action, ECF. No. 23], which this Court granted by its Order dated February 22, 2013. [Hunton Action, ECF No. 34.] That Order stayed the class claims asserted in the Hunton Action until at least 30 days after the United States Supreme Court issued its decision in the Proskauer Action. *Chadbourne & Parke, LLP v. Troice*, 134 S. Ct. 1058 (2014).

13.    Greenberg filed a motion for dismissal of certain claims and its original answer on February 21, 2013. [Hunton Action, ECF No. 27]. Greenberg also filed a motion to require the joinder of the Antiguan Joint Liquidators as parties to the Hunton

Action.  [Hunton Action, ECF No. 30].[4]  Hunton filed a motion to dismiss the claims asserted by the Receiver and the OSIC on April 15, 2013.  [Hunton Action, ECF No. 49]. Hunton also filed a motion to require the joinder of the Antiguan Joint Liquidators as parties to the Hunton Action.  [Hunton Action, ECF No. 51].  Those motions were fully briefed by the parties.

14.     On April 18, 2014, Hunton filed a second motion to dismiss addressing the claims asserted by the putative class of Stanford Investors.  [Hunton Action, ECF No. 90].  That motion was also fully briefed.

15.     The Court entered an Order denying the motions to join the Antiguan Joint Liquidators on December 2, 2014.  [Hunton Action, ECF No. 113].

16.     On December 17, 2014, the Court entered an Order addressing the motions to dismiss the claims asserted by the Receiver and the OSIC.  The Court dismissed the claims for aiding and abetting fraudulent transfers and for breach of fiduciary duty;[5] the motions to dismiss were in all other respects denied.  [Hunton Action, ECF No. 114]. Both Greenberg and Hunton sought to have the Court's Order certified for interlocutory appeal.  [Hunton Action, ECF No. 118].  The Court denied those requests.  [ECF No. 125].

---

[4]     Greenberg ultimately withdrew its motion to join the Antiguan Joint Liquidators. [Hunton Action, ECF No. 95].
[5]     The Court gave the Receiver and the OSIC an opportunity to replead the breach of fiduciary duty claims.

17.     On February 4, 2015, the Court entered its Order largely denying the motions to dismiss the claims asserted by the putative class of Stanford Investors pursuant to the Texas Securities Act.  [Hunton Action, ECF No. 123].[6]

18.     Hunton filed its Answer on March 2, 2013.  [Hunton Action, ECF No. 128].

19.     On June 2, 2015, the Plaintiffs in the Hunton Action filed a motion to defer class certification proceedings and for the entry of a discovery and scheduling order with respect to the claims asserted by the Receiver and the OSIC.  [Hunton Action, ECF No. 131].  That motion was fully briefed by the parties.

20.     On August 11, 2015, the Court entered an Order denying the Plaintiff's motion to defer class certification and for a discovery and scheduling order.  [Hunton Action, ECF No. 141].  On August 21, 2015, the Court entered a Class Certification Scheduling Order.  [Hunton Action, ECF No. 142].  Plaintiffs' motion for class certification and the materials supporting that motion were filed on February 26, 2016, as were the responses of Hunton and Greenberg opposing class certification.  [Hunton Action, ECF Nos. 175-184].  The motion for class certification is fully briefed and remains pending before the Court.

21.     On June 15, 2016, Greenberg filed a motion to dismiss for lack of subject matter jurisdiction.  [Hunton Action, ECF No. 203].  On July 15, 2016, Hunton filed a motion for judgment on the pleadings.  [Hunton Action, ECF No. 207].  Both motions rely upon the attorney immunity doctrine as articulated by the Texas Supreme Court in

---

[6]     The Court dismissed certain class claims as time barred.

*Cantey Hanger LLP v. Byrd*, 467 S.W. 3d 477 (Tex. 2015). Both motions have been fully briefed and remain pending before the Court.

22.     On March 31, 2017, the plaintiffs in the Hunton Action filed a motion seeking the entry of a scheduling order with respect to the claims asserted by the Receiver and the OSIC. [Hunton Action, ECF No. 225]. That motion was opposed by Greenberg and Hunton and has been fully briefed. It remains pending before the Court.

### D.     Examiner Involvement in Actions

23.     In my capacity as the OSIC Chair, I have worked closely with the Receiver, his counsel, OSIC's counsel, and putative class counsel to coordinate the prosecution of claims against third parties for the benefit of the Receivership Estate and Stanford Investors, including the claims asserted in the Hunton Action.

24.     In that regard, I have been involved, as Chair of OSIC, in the OSIC's prosecution of the Hunton Claims in the Hunton Action.

25.     OSIC's counsel at CS, NF, BL and SP have spent several years and thousands of hours investigating and pursuing the claims asserted in the Hunton Action. The materials reviewed by OSIC's counsel included, among other materials, thousands of pages of SEC and other investigation materials, thousands of pages of deposition and trial testimony from the prosecution of Allen Stanford and others, thousands of emails of Stanford and Hunton personnel, and hundreds of boxes of materials, including Hunton materials and files, that the Receiver secured from Stanford's various offices and law firms.

26.     Two mediation sessions were held with Hunton to address the Proskauer Claims.  The first was held in Houston on August 8 and 9, 2012, facilitated by the Hon. Gary V. McGowan.   The Examiner did not attend that mediation session but communicated throughout it with the Receiver and with OSIC's counsel.  The second mediation session was held in New York City in October 2016, facilitated by the Hon. Layn R. Phillips.  As OSIC's Chair, I participated in that second mediation session.  In addition to myself, the plaintiffs in the Hunton Action were represented by a number of class representative plaintiffs, including Samuel Troice, and by attorneys from NF (Pat Neligan and Doug Buncher), CS (Ed Snyder), and BL (Peter Morgenstern).

27.     Despite a full day mediation, the parties were unable to reach a resolution. Negotiations continued between and among the parties following the second mediation session.   In May 2017, Hunton, the Receiver, the OSIC and the investor plaintiffs executed a term sheet outlining the terms of a settlement with Hunton.  In August 2017, those same parties executed a definitive Settlement Agreement (the "Hunton Settlement Agreement"), for which approval is now sought.

28.     In my capacity as Chair of the OSIC, I was involved in the negotiations that followed the second mediation session and in the negotiations that led to the drafting and execution of the Hunton Settlement Agreement.  The Hunton Settlement Agreement calls for Hunton to pay $34 million to settle the Hunton Claims asserted against Hunton in the Hunton Action.

### E.   Examiner's Opinion Concerning the Hunton Settlement and The Payment of Attorneys' Fees

29.     It is my opinion that the settlement the Receiver, the OSIC and the putative class plaintiffs reached with Hunton is fair and reasonable, in the best interests of the Stanford Receivership estate and the Stanford Investors, and should be approved by the Court.  My opinion is based upon my involvement in the investigation and prosecution of the claims asserted in the Hunton Action, the risks, uncertainty and the length of time it would take to get to trial in the Hunton Action, the uncertainty concerning the pending motion for class certification, and the Fifth Circuit's *Troice* decision.   *Troice v. Proskauer Rose LLP*, ___ F.3d ___, No. 15-10500, 2016 WL 929476 (5th Cir. Mar. 10, 2016).

30.     The Receiver and the OSIC have agreed in principal with putative class counsel and the named Plaintiffs in the Hunton Action that any proceeds recovered from the Hunton Action will be distributed through the Receiver's existing (and already approved and operating) mechanism for identifying and approving claims and making distributions.  Using the Receiver's existing process will be far more efficient, and likely result in larger distributions to Stanford Investors, than the alternative of creating one or more parallel claim and distribution process(es) for class actions.

31.     As noted above, the OSIC entered into a Revised Fee Agreement with CS, NF, BL and SP that provided for the payment of a contingent fee of twenty-five percent (25%) of the Net Recovery realized in respect of the Hunton Claims.

32.     The Court has previously approved a contingent fee arrangement between OSIC and its counsel that provides for the payment of a 25% contingent fee on net recoveries from certain lawsuits prosecuted by OSIC.[7]  Civil Action No. 3:09-CV-0298-N, Doc. No. 1267.

33.     The Revised Fee Agreement entered between OSIC and its counsel here (NF, CS, BL and SP) was modeled after the contingency fee agreement already approved by the Court in the primary receivership proceeding.  Civil Action No. 3:09-CV-0298-N, Doc. No. 1267.

34.     For the same reasons the Court previously found the twenty-five percent (25%) contingency fee agreement between the OSIC and its counsel to be reasonable, *see id.*, p. 2, the Court should find the twenty-five percent (25%) contingency fee applicable to the settlement with Hunton to be reasonable and approve it for payment.

35.     It is my opinion that the attorneys' fee requested is reasonable in comparison to the total net amount to be recovered for the benefit of the Stanford Investors.   The twenty-five percent (25%) contingency fee was heavily negotiated between OSIC and its Counsel, and is substantially below the typical market rate contingency fee percentage of 33% to 40% that most law firms would demand to handle cases of this complexity and magnitude.

36.     I respectfully submit that an award of attorneys' fees equal to twenty-five percent (25%) of the Net Recovery from the settlement with Hunton is reasonable and

---

[7]     The referenced Order addressed the OSIC's prosecution of certain fraudulent transfer and unjust enrichment actions.

appropriate considering the significant time, effort, and resources which OSIC's counsel have invested in investigating the Stanford fraud, prosecuting and resolving the Hunton Claims with respect to Hunton, and prosecuting the other Stanford-related litigation.

Executed on August 7, 2017.

_____
John J. Little

Exhibit 8

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                              Plaintiff,<br><br>v.<br><br>STANFORD INTERNATIONAL BANK, LTD, *et al.*,<br><br>                              Defendants. | Civil Action No. 3:09-cv-00298-N |
| RALPH S. JANVEY, in his capacity as Court-appointed receiver for the Stanford Receivership Estate; the OFFICIAL STANFORD INVESTORS COMMITTEE; PAM REED; SAMUEL TROICE; and MICHOACAN TRUST; individually and on behalf of a class of all others similarly situated,<br><br>                              Plaintiffs,<br><br>v.<br><br>GREENBERG TRAURIG, LLP; HUNTON & WILLIAMS, LLP; AND YOLANDA SUAREZ,<br><br>                              Defendants. | Civil Action No. 3:12-cv-04641-N |

**[PROPOSED] ORDER APPROVING ATTORNEYS' FEES**

## [PROPOSED] ORDER APPROVING ATTORNEYS' FEES

Before the Court is the Expedited Request for Entry of Scheduling Order and Motion for Order Approving Proposed Settlement with Hunton & Williams LLP ("Hunton"), to Enter the Bar Order, to Enter the Final Judgment and Bar Order, and for Plaintiffs' Attorneys' Fees (the "Motion") of the Receiver and the Official Stanford Investors Committee (the "Committee"). *See SEC v. Stanford Int'l Bank, Ltd.*, No. 3:09-cv-0298-N (N.D. Tex.) (the "SEC Action") ECF No. _____; and *Janvey v. Greenberg Traurig, LLP*, No. 3:12-cv-04641-N (N.D. Tex.) (the "Litigation") ECF No.____.[1]   This Order addresses the request for approval of Plaintiffs' attorneys' fees contained within the Motion.  All relief requested in the Motion other than the request for approval of attorneys' fees was addressed in the Court's Final Judgment and Bar Order entered in the Receiver Litigation on_____.

Having considered the Motion, the Declarations submitted in support of the Motion, the arguments and the applicable legal authorities, the Court finds that the Plaintiffs' request for approval of attorneys' fees contained within the Motion should be granted.  The Court finds that the 25% contingency fee agreements between Plaintiffs and Plaintiffs' counsel is reasonable and consistent with the percentage charged and approved by courts in other cases of this magnitude and complexity.  The Stanford Receivership and the Litigation are extraordinarily complex and time-consuming and have involved a great deal of risk and capital investment by Plaintiffs' counsel as evidenced by the Declarations of Plaintiffs' counsel submitted in support of the request for approval of their fees.   Both the Motion and the Declarations provide ample evidentiary support for the award of the Plaintiffs' attorneys' fees set forth in this Order.

Trial courts can determine attorneys' fee awards in common fund cases such as this one

---

[1]    Capitalized terms not defined herein shall have the meaning set forth in the Motion.

using different methods.  The common-fund doctrine applies when "a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."  *In re Harmon*, No. 10-33789, 2011 WL 1457236, at *7 (Bankr. S.D. Tex. Apr. 14, 2011) (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)).

One method for analyzing an appropriate award for Plaintiffs' attorneys' fees is the percentage method, under which the court awards fees based on a percentage of the common fund.  *Union Asset Management Holding A.G. v. Dell, Inc.,* 669 F.3d 632, 642-43 (5th Cir. 2012).  The Fifth Circuit is "amenable to [the percentage method's] use, so long as the *Johnson* framework is utilized to ensure that the fee award is reasonable."  *Id*. at 643 (citing *Johnson v. Georgia Hwy. Express, Inc*, 488 F.2d 714 (5th Cir. 1974)).  The *Johnson* factors include: (1) time and labor required; (2) novelty and difficulty of the issues; (3) required skill; (4) whether other employment is precluded; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations; (8) the amount involved and the results obtained; (9) the attorneys' experience, reputation and ability; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  *See Johnson*, 488 F.2d at 717-19.

Thus, when considering fee awards in class action cases "district courts in [the Fifth] Circuit regularly use the percentage method blended with a *Johnson* reasonableness check."  *Id*. (internal citations omitted); *see Schwartz v. TXU Corp.*, No. 3:02-CV-2243-K (lead case), 2005 WL 3148350, at *25 (N.D. Tex. Nov. 8, 2005) (collecting cases).  While the Fifth Circuit has also permitted analysis of fee awards under the lodestar method, both the Fifth Circuit and district courts in the Northern District have recognized that the percentage method is the

preferred method of many courts. *Dell*, 669 F.3d at 643; *Schwartz*, 2005 WL 3148350, at *25. In *Schwartz*, the court observed that the percentage method is "vastly superior to the lodestar method for a variety of reasons, including the incentive for counsel to 'run up the bill' and the heavy burden that calculation under the lodestar method places upon the court." 2005 WL 3148350, at *25. The court also observed that, because it is calculated based on the number of attorney-hours spent on the case, the lodestar method deters early settlement of disputes. *Id.* Thus, there is a "strong consensus in favor of awarding attorneys' fees in common fund cases as a percentage of the recovery." *Id.* at *26.

While the Hunton Settlement is not a class action settlement, because the settlement is structured as a settlement with the Receiver and the Committee, and as a bar order precluding other litigation against Hunton arising from Stanford, this Court has analyzed the award of attorneys' fees to Plaintiffs' counsel under both the common fund and the *Johnson* approach. Whether analyzed under the common fund approach, the *Johnson* framework, or both, the 25% fee sought by Plaintiffs' counsel pursuant to their fee agreements is reasonable and is hereby approved by the Court.

Having reviewed the Declarations of Plaintiffs' counsel reflecting the investment of thousands of hours and millions of dollars of attorney time by Plaintiffs' counsel in the Stanford Receivership as a whole and in the litigation against Hunton specifically, the Court finds that the proposed 25% fee for Plaintiffs' counsel is a reasonable percentage of the common fund (*i.e.* the $35 million settlement). "The vast majority of Texas federal courts and courts in this District have awarded fees of 25%-33% in securities class actions." *Schwartz*, 2005 WL 3148350, at *31 (collecting cases). "Indeed, courts throughout this Circuit regularly award fees of 25% and more often 30% or more of the total recovery under the percentage-of-the recovery method." *Id.*

The Court further finds that the fee is reasonable based upon the Court's analysis of the *Johnson* factors.

A review of the *Johnson* factors that are discussed at length in the Motion and supported by Plaintiffs' counsel's Declarations also demonstrates that the proposed 25% fee is reasonable and should be approved.  With respect to the time and labor required, Plaintiffs' counsel invested a tremendous amount of time and labor in this case as reflected in the Snyder, Morgenstern, Buncher, and Valdespino Declarations filed in support of the Motion.  Castillo Snyder, P.C. has close to $8 million invested in the Stanford cases overall since 2009, and over 3,000 hours of time worth $1,790,897.50 invested specifically in the Litigation.  Butzel Long, P.C. also has thousands of hours and millions of dollars of time invested in pursuing claims against third parties related to the Stanford Receivership, and 1,203.80 hours of attorney and paralegal time worth $709,323.00 attributable to the Litigation.  Neligan LLP has 805.9 hours and $414,010.50 million worth of attorney and paralegal time invested in the Litigation.  Strasburger & Price, LLP has over 214 hours of attorney and paralegal time worth $121,335.00 invested specifically in the Litigation.

The issues presented in the Litigation were novel, difficult and complex.  Several of the complex legal and factual issues are outlined in the Motion.  Given the complexity of the factual and legal issues presented in this case, the preparation, prosecution, and settlement of this case required significant skill and effort on the part of Plaintiffs' counsel.  Although participation in the the Litigation did not necessarily preclude Plaintiffs' counsel from accepting other employment, the Declarations reveal that the sheer amount of time and resources involved in investigating, preparing, and prosecuting the Litigation, as reflected by the hours invested by Plaintiffs' counsel, significantly reduced Plaintiffs' counsel's ability to devote time and effort to

other matters.

The 25% fee requested is also substantially below the typical market rate contingency fee percentage of 33% to 40% that most law firms would demand to handle cases of this complexity and magnitude.  *See Schwartz*, 2005 WL 3148350, at *31 (collecting cases and noting that 30% is standard fee in complex securities cases).  "Attorney fees awarded under the percentage method are often between 25% and 30% of the fund."  *Klein*, 705 F. Supp. 2d at 675 (citing Manual for Complex Litig. (Fourth) § 14.121 (2010)); *see, e.g., SEC v. Temme*, No. 4:11-cv-00655-ALM, at *4-5 (E.D. Tex. November 21, 2012), ECF No. 162 (25% contingent fee for a $1,335,000 receivership settlement); *Billitteri v. Sec. Am., Inc.*, No. 3:09-cv-01568-F (lead case), 2011 WL 3585983, *4-9 (N.D. Tex. 2011) (25% fee for a $80 million settlement); *Klein*, 705 F. Supp. 2d at 675-81 (30% fee for a $110 million settlement).

At the time of the Hunton Settlement, Plaintiffs were not subject to significant time limitations in the Litigation, as the Litigation has been essentially stayed while the parties awaited this Court's ruling on class certification.  However, and given the breadth and scope of activity in the Litigation over the last 5 years, including heavy briefing and motion practice, including class certification discovery and briefing, Plaintiffs' counsel has been consistently under deadlines and time pressure.  Had an investor class been certified, the Litigation would have remained pending before the Court and would likely have taken years to resolve.  Furthermore, given the magnitude and complexity of the cases, even if a trial in the Litigation was set a year in the future, Plaintiffs' counsel would have been under significant time pressure to complete all the investigation and discovery to prepare the case for final hearing within a year.

The $34 million to be paid by Hunton represents a substantial settlement and value to the Receivership Estate.  Thus, the amount involved and results obtained also support approval of

the requested fee.  The Declarations of Plaintiffs' counsel further reflect that Plaintiffs' counsel have represented numerous receivers, bankruptcy trustees, and other parties in complex litigation matters related to equity receiverships and bankruptcy proceedings similar to the Stanford receivership proceeding.  Plaintiffs' counsel have been actively engaged in the Stanford proceeding since its inception.  Thus, the attorneys' experience, reputation and ability also support the fee award.  Given the complexity of the issues in the Litigation, the Hunton Settlement, as well as other settlements achieved by Plaintiffs' counsel in the Stanford Receivership that have also been approved by this Court, are indicative of Plaintiffs' counsel's abilities to obtain favorable results in these proceedings.

The nature and length of Plaintiffs' counsel's professional relationship with the client also supports the fee award. Plaintiffs' Counsel have represented the Receiver, the Committee, and investor plaintiffs in numerous actions pending before the Court in connection with the Stanford Receivership since 2009, all on the same 25% contingency fee arrangement.

Finally, awards in similar cases, with which this Court is familiar, as well as those discussed in the *Schwarz* opinion, all support the fee award.  A 25% contingency fee has also previously been approved as reasonable by this Court in its order approving the Receiver's agreement with the Committee regarding the joint prosecution of fraudulent transfer and other claims by the Receiver and the Committee (the "OSIC-Receiver Agreement").  *See* SEC Action ECF No. 1267, p. 2 ("The Court finds that the fee arrangement set forth in the Agreement is reasonable."); *see also* OSIC-Receiver Agreement SEC Action ECF No. 1208, Ex. A, p. 3 (providing a "contingency fee" of 25% of any Net Recovery in actions prosecuted by the Committee's designated professionals).  This Court has also approved a 25% contingency fee arrangement in the BDO, Adams & Reese, and Chadbourne cases.  *See Official Stanford Inv'rs*

*Comm. v. BDO USA, LLP*, No. 3:12-cv-01447-N-BG (N.D. Tex. Sep. 23, 2015), ECF No. 80; Order Approving Attorneys' Fees in *Ralph S. Janvey v. Adams & Reese, LLP*, Civil Action No. 3:12-CV-00495-B [SEC Action, ECF. No. 2231]; Order Approving Attorneys' Fees, SEC Action, ECF No. 2366 (approving 25% contingency fee on a $35 million settlement with Chadbourne & Parke LLP).

ORDERED to pay Plaintiffs' counsel attorneys' fees in the amount of [$8,485,619.72] upon receipt of the Settlement Amount in accordance with the terms of the Hunton Settlement Agreement.

For these reasons, the Court finds the 25% contingency fee requested in connection with the Hunton Settlement is well within the range of reasonableness for cases of the magnitude and complexity of the Receiver Litigation and the Investor Litigation, and the Court hereby approves the award of Plaintiffs' attorneys' fees in the amount of [$8,485,619.72] as requested in the Motion.  The Receiver is, therefore,

ORDERED to pay Plaintiffs' counsel attorneys' fees in the amount of [$8,485,619.72] upon receipt of the Settlement Amount in accordance with the terms of the Hunton Settlement Agreement.


SIGNED on _____


_____
DAVID C. GODBEY
UNITED STATES DISTRICT JUDGE


**[PROPOSED] ORDER APPROVING ATTORNEYS' FEES**