IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, *et al.*, § § § | | |
| Plaintiffs, § § | | |
| v. § § | Civil Action No. 3:09-CV-00298-N | |
| STANFORD INTERNATIONAL BANK LTD., *et al.*, § § § § | | |
| Defendants. § | | |
| | | |
| RALPH S. JANVEY, *et al.*, § § | | |
| Plaintiffs, § § § | | |
| v. § § | Civil Action No. 3:12-CV-04641-N | |
| GREENBERG TRAURIG, *et al.*, § § § | | |
| Defendants. § | | |

# ORDER

This Order addresses the objections to the settlement between Defendant Hunton & Williams LLP ("Hunton") and Plaintiffs Ralph S. Janvey (the "Receiver"); the Official Stanford Investors Committee ("OSIC"); and, individually and on behalf of a putative class of Stanford investors, Pam Reed, Samuel Troice, and Michoacan Trust (collectively, the "Investor Plaintiffs"). *See, e.g.,* [2581]; [2594]; [2595]; [2599]; [2600]; [2601]; [2603];

[2611]; [2614]; [2615]; [2616]; [2617]; [2619]; [2620]; [2628]; [2630].[1] [2] The Court overrules the objections and, by separate documents, approves the settlement, approves the associated attorneys' fees, and enters the bar order.

## I. THE HUNTON LITIGATION AND SETTLEMENT

This Order arises from the long-running litigation between the Receiver, OSIC, the Investor Plaintiffs, and Hunton. This litigation stems from Hunton's representation of the entities R. Allen Stanford used to carry out his far-reaching Ponzi scheme. The facts of Stanford's scheme are well established, *see, e.g.*, *Janvey v. Democratic Senatorial Campaign Comm.*, 712 F.3d 185, 188–89 (5th Cir. 2013), and the Court does not recount them in great depth here. Essentially, Stanford's scheme entailed the sale of fraudulent certificates of deposit ("CDs") by Stanford International Bank, Ltd. ("SIBL"), an offshore bank located in Antigua. Although Stanford represented to investors that the CD proceeds were invested only in low-risk, high-return funds, in reality they were funneled into speculative private equity investments and used to fund Stanford's extravagant lifestyle.

Relying on a respondeat superior theory of liability based largely on the conduct of former Hunton partner Carlos Loumiet, Plaintiffs brought this suit against Hunton. Through Loumiet, Hunton allegedly conspired with Stanford and aided his fraud through its legal representation of his entities. In particular, Plaintiffs allege that, as part of the conspiracy,

---

[1] Unless otherwise indicated, all docket entry references are to the docket sheet in *SEC v. Stanford International Bank, Ltd.*, No. 09-CV-00298-N (N.D. Tex.)

[2] The Court does not consider Greenberg Traurig, LLP's objection, *see* [2613], given the parties' resolution of that objection, *see* [2631].

Hunton helped the Stanford entities evade litigation, avoid regulation, escape taxes, and invest stolen money, among other things.

After Stanford's scheme came to light, the Securities and Exchange Commission ("SEC") brought a securities fraud action against SIBL. As part of that action, the Court appointed the Receiver to take control of the various entities Stanford used to carry out his scheme. Among other duties, the Court charged the Receiver with recovering assets and distributing them to Stanford's victims. To do so, the Receiver sued various individuals and entities for losses the Stanford entities suffered as a result of those individuals and entities' conduct. The Court also appointed OSIC to represent the interests of Stanford investors and to bring claims on their behalf as assigned by the Receiver. The Receiver and OSIC sued Hunton for negligence; aiding, abetting, or participating in breaches of fiduciary duties; breaches of fiduciary duties; fraudulent transfer; aiding, abetting, or participating in fraudulent transfers; and negligent retention and supervision of personnel. The Investor Plaintiffs additionally sued Hunton for aiding and abetting violations of the Texas Securities Act; aiding, abetting, or participating in breaches of fiduciary duties; aiding, abetting, and participating in a fraudulent scheme; and civil conspiracy.

The settlement for which the Receiver, OSIC, the Investor Plaintiffs, and Hunton seek approval would provide a global resolution to all claims arising from Hunton's relationships with Stanford. In exchange for a $34 million payment from Hunton – money that would be distributed through the Receiver's claims distribution process – the Receiver, OSIC, and the Investor Plaintiffs would release all of their claims against Hunton. Additionally, the

Receiver also agreed to seek a bar order permanently enjoining any other pending or future claims against Hunton arising from its relationship with Stanford. If the Court does not enter the bar order, the settlement allows Hunton to terminate the agreement. The Court-appointed Examiner supports the settlement and the SEC does not object. However, Stanford, several individual investors, and a few entities who are defendants in other Stanford-related actions have filed objections.

## II. THE COURT OVERRULES THE OBJECTIONS TO THE HUNTON SETTLEMENT

First, Stanford objects to the Hunton settlement on the grounds that (1) the attorneys' fees under the settlement are excessive, (2) Plaintiffs are unlikely to succeed on the merits of their claims against Hunton, and (3) the settlement should be stayed until the Court rules on his pending motion to dismiss the SEC's civil litigation. Regarding Stanford's first objection, the Court explains by separate document why the attorneys' fees awarded under this settlement are reasonable. Stanford's second objection belies the relief he seeks: if Plaintiffs' claims against Hunton are indeed unlikely to succeed, then Hunton's payment of $34 million for distribution to aggrieved investors is a considerable victory for Plaintiffs and thus supports the Court's approval of the settlement. Finally, Stanford's third objection is irrelevant, as it does not go to the settlement itself but instead the Court's management of this litigation. The Court thus overrules Stanford's objections.

Next, several individual investors object to the Hunton settlement on the grounds that (1) the settlement recovers too little money for investors compared to fees for attorneys and (2) the Receiver's claims process is too slow and has not yet distributed enough money to

investors. Though the Court empathizes with these investors for the impact Stanford's fraud has had on their lives, these objections are unavailing. Contrary to the investors' insinuations, Hunton's $34 million payment makes this settlement one of the larger Stanford litigation settlements to date. Especially in light of the Court's recent rulings on the scope of Texas' attorney immunity doctrine, *see, e.g.,* [251] *in* 12-CV-04641-N, this settlement amount is substantial. And the attorneys' fees awarded under this settlement are reasonable, as explained more fully by separate document. Finally, despite the investors' beliefs to the contrary, the Receiver is indeed expeditiously litigating cases and seeking settlements to recover and distribute as much money as quickly as possible to aggrieved investors. The Court accordingly overrules the individual investors' objections.

Lastly, HSBC Bank plc ("HSBC"), Toronto-Dominion Bank ("TD Bank"), and Pershing LLC ("Pershing" and collectively, the "Professional Defendants"), each of whom are defendants in other Stanford-related actions, object to the Hunton settlement on the ground that the bar order may extinguish their statutory right of contribution against Hunton under the Texas Securities Act without providing the Professional Defendants any assurance that they can receive a reduction in liability for Hunton's proportionate fault under Chapter 33 of the Texas Civil Practice and Remedies Code.[3] But the settlement squarely addresses and resolves the Professional Defendants' concerns, explicitly preserving the rights of parties

---

[3] TD Bank and Pershing clarify that they join HSBC's objection only for the limited purpose of stating their position that the Hunton settlement does not impact their abilities to designate responsible third parties in the Stanford-related actions pending against them. However, nothing in the settlement limits the Professional Defendants' rights to name Hunton as a responsible third party under Chapter 33.

in other Stanford-related actions to seek a settlement credit in connection to the Hunton settlement pursuant to Chapter 33, in the event Chapter 33 is deemed applicable. Hence, to the extent the Professional Defendants' objections are meant to urge denial of the Hunton settlement, the Court overrules them.

### CONCLUSION

For the reasons set forth above, the Court denies the objections and, by separate documents, approves the settlement, approves the associated attorneys' fees, and enters the bar order.

Signed March 26, 2018.

_____
David C. Godbey
United States District Judge