# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>          Plaintiff,<br><br>v.<br><br>STANFORD INTERNATIONAL BANK, LTD, *et al.*,<br><br>          Defendants. | Civil Action No. 3:09-cv-00298-N |
| RALPH S. JANVEY, in his capacity as Court-appointed receiver for the Stanford Receivership Estate; the OFFICIAL STANFORD INVESTORS COMMITTEE; PAM REED; SAMUEL TROICE; and MICHOACAN TRUST; individually and on behalf of a class of all others similarly situated,<br><br>          Plaintiffs,<br><br>v.<br><br>GREENBERG TRAURIG, LLP; HUNTON & WILLIAMS, LLP; AND YOLANDA SUAREZ,<br><br>          Defendants. | Civil Action No. 3:12-cv-04641-N |

## **ORDER APPROVING ATTORNEYS' FEES**

Before the Court is the Expedited Request for Entry of Scheduling Order and Motion for Order Approving Proposed Settlement with Hunton & Williams LLP ("Hunton"), to Enter the Bar Order, to Enter the Final Judgment and Bar Order, and for Plaintiffs' Attorneys' Fees (the "Motion") of the Receiver and the Official Stanford Investors Committee (the "Committee"). *See SEC v. Stanford Int'l Bank, Ltd.*, No. 3:09-cv-0298-N (N.D. Tex.) (the "SEC Action") ECF No. 2561; and *Janvey v. Greenberg Traurig, LLP*, No. 3:12-cv-04641-N (N.D. Tex.) (the "Litigation") ECF No. 232.[1] This Order addresses the request for approval of Plaintiffs' attorneys' fees contained within the Motion. All relief requested in the Motion other than the request for approval of attorneys' fees was addressed in the Court's Final Judgment and Bar Order entered on the same date.

Having considered the Motion, the Declarations submitted in support of the Motion, the arguments and the applicable legal authorities, the Court finds that the Plaintiffs' request for approval of attorneys' fees contained within the Motion should be granted. The Court finds that the 25% contingency fee agreements between Plaintiffs and Plaintiffs' counsel is reasonable and consistent with the percentage charged and approved by courts in other cases of this magnitude and complexity. The Stanford Receivership and the Litigation are extraordinarily complex and time-consuming and have involved a great deal of risk and capital investment by Plaintiffs' counsel as evidenced by the Declarations of Plaintiffs' counsel submitted in support of the request for approval of their fees. Both the Motion and the Declarations provide ample evidentiary support for the award of the Plaintiffs' attorneys' fees set forth in this Order.

Trial courts can determine attorneys' fee awards in common fund cases such as this one

---

[1] Capitalized terms not defined herein shall have the meaning set forth in the Motion.

2

using different methods. The common-fund doctrine applies when "a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *In re Harmon*, No. 10-33789, 2011 WL 1457236, at *7 (Bankr. S.D. Tex. Apr. 14, 2011) (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)).

One method for analyzing an appropriate award for Plaintiffs' attorneys' fees is the percentage method, under which the court awards fees based on a percentage of the common fund. *Union Asset Management Holding A.G. v. Dell, Inc.,* 669 F.3d 632, 642-43 (5th Cir. 2012). The Fifth Circuit is "amenable to [the percentage method's] use, so long as the *Johnson* framework is utilized to ensure that the fee award is reasonable." *Id.* at 643 (citing *Johnson v. Georgia Hwy. Express, Inc*, 488 F.2d 714 (5th Cir. 1974)). The *Johnson* factors include: (1) time and labor required; (2) novelty and difficulty of the issues; (3) required skill; (4) whether other employment is precluded; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations; (8) the amount involved and the results obtained; (9) the attorneys' experience, reputation and ability; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Johnson*, 488 F.2d at 717-19.

Thus, when considering fee awards in class action cases "district courts in [the Fifth] Circuit regularly use the percentage method blended with a *Johnson* reasonableness check." *Id.* (internal citations omitted); *see Schwartz v. TXU Corp.*, No. 3:02-CV-2243-K (lead case), 2005 WL 3148350, at *25 (N.D. Tex. Nov. 8, 2005) (collecting cases). While the Fifth Circuit has also permitted analysis of fee awards under the lodestar method, both the Fifth Circuit and district courts in the Northern District have recognized that the percentage method is the preferred method of many courts. *Dell*, 669 F.3d at 643; *Schwartz*, 2005 WL 3148350, at *25. In *Schwartz*, the

court observed that the percentage method is "vastly superior to the lodestar method for a variety of reasons, including the incentive for counsel to 'run up the bill' and the heavy burden that calculation under the lodestar method places upon the court." 2005 WL 3148350, at *25. The court also observed that, because it is calculated based on the number of attorney-hours spent on the case, the lodestar method deters early settlement of disputes. *Id*. Thus, there is a "strong consensus in favor of awarding attorneys' fees in common fund cases as a percentage of the recovery." *Id*. at *26.

While the Hunton Settlement is not a class action settlement, because the settlement is structured as a settlement with the Receiver and the Committee, and as a bar order precluding other litigation against Hunton arising from Stanford, this Court has analyzed the award of attorneys' fees to Plaintiffs' counsel under both the common fund and the *Johnson* approach. Whether analyzed under the common fund approach, the *Johnson* framework, or both, the 25% fee sought by Plaintiffs' counsel pursuant to their fee agreements is reasonable and is hereby approved by the Court.

Having reviewed the Declarations of Plaintiffs' counsel reflecting the investment of thousands of hours and millions of dollars of attorney time by Plaintiffs' counsel in the Stanford Receivership as a whole and in the litigation against Hunton specifically, the Court finds that the proposed 25% fee for Plaintiffs' counsel is a reasonable percentage of the common fund (*i.e.* the $34 million settlement). "The vast majority of Texas federal courts and courts in this District have awarded fees of 25%-33% in securities class actions." *Schwartz*, 2005 WL 3148350, at *31 (collecting cases). "Indeed, courts throughout this Circuit regularly award fees of 25% and more often 30% or more of the total recovery under the percentage-of-the recovery method." *Id*. The Court further finds that the fee is reasonable based upon the Court's analysis of the *Johnson*

factors.

A review of the *Johnson* factors that are discussed at length in the Motion and supported by Plaintiffs' counsel's Declarations also demonstrates that the proposed 25% fee is reasonable and should be approved. With respect to the time and labor required, Plaintiffs' counsel invested a tremendous amount of time and labor in this case as reflected in the Snyder, Morgenstern, Buncher, and Valdespino Declarations filed in support of the Motion. Castillo Snyder, P.C. has close to $8 million invested in the Stanford cases overall since 2009, and over 3,000 hours of time worth $1,790,897.50 invested specifically in the Litigation. Butzel Long, P.C. also has thousands of hours and millions of dollars of time invested in pursuing claims against third parties related to the Stanford Receivership, and 1,203.80 hours of attorney and paralegal time worth $709,323.00 attributable to the Litigation. Neligan LLP has 805.9 hours and $414,010.50 worth of attorney and paralegal time invested in the Litigation. Strasburger & Price, LLP has over 214 hours of attorney and paralegal time worth $121,335.00 invested specifically in the Litigation.

The issues presented in the Litigation were novel, difficult and complex. Several of the complex legal and factual issues are outlined in the Motion. Given the complexity of the factual and legal issues presented in this case, the preparation, prosecution, and settlement of this case required significant skill and effort on the part of Plaintiffs' counsel. Although participation in the Litigation did not necessarily preclude Plaintiffs' counsel from accepting other employment, the Declarations reveal that the sheer amount of time and resources involved in investigating, preparing, and prosecuting the Litigation, as reflected by the hours invested by Plaintiffs' counsel, significantly reduced Plaintiffs' counsel's ability to devote time and effort to other matters.

The 25% fee requested is also substantially below the typical market rate contingency fee percentage of 33% to 40% that most law firms would demand to handle cases of this complexity

and magnitude. *See Schwartz*, 2005 WL 3148350, at *31 (collecting cases and noting that 30% is standard fee in complex securities cases). "Attorney fees awarded under the percentage method are often between 25% and 30% of the fund." *Klein*, 705 F. Supp. 2d at 675 (citing Manual for Complex Litig. (Fourth) § 14.121 (2010)); *see, e.g., SEC v. Temme*, No. 4:11-cv-00655-ALM, at *4-5 (E.D. Tex. November 21, 2012), ECF No. 162 (25% contingent fee for a $1,335,000 receivership settlement); *Billitteri v. Sec. Am., Inc.*, No. 3:09-cv-01568-F (lead case), 2011 WL 3585983, *4-9 (N.D. Tex. 2011) (25% fee for a $80 million settlement); *Klein*, 705 F. Supp. 2d at 675-81 (30% fee for a $110 million settlement).

At the time of the Hunton Settlement, Plaintiffs were not subject to significant time limitations in the Litigation, as the Litigation has been essentially stayed while the parties awaited this Court's ruling on class certification. However, and given the breadth and scope of activity in the Litigation over the last 5 years, including heavy briefing and motion practice, including class certification discovery and briefing, Plaintiffs' counsel has been consistently under deadlines and time pressure. Had an investor class been certified, the Litigation would have remained pending before the Court and would likely have taken years to resolve. Furthermore, given the magnitude and complexity of the cases, even if a trial in the Litigation was set a year in the future, Plaintiffs' counsel would have been under significant time pressure to complete all the investigation and discovery to prepare the case for final hearing within a year.

The $34 million to be paid by Hunton represents a substantial settlement and value to the Receivership Estate. Thus, the amount involved and results obtained also support approval of the requested fee. The Declarations of Plaintiffs' counsel further reflect that Plaintiffs' counsel have represented numerous receivers, bankruptcy trustees, and other parties in complex litigation matters related to equity receiverships and bankruptcy proceedings similar to the Stanford

receivership proceeding. Plaintiffs' counsel have been actively engaged in the Stanford proceeding since its inception. Thus, the attorneys' experience, reputation and ability also support the fee award. Given the complexity of the issues in the Litigation, the Hunton Settlement, as well as other settlements achieved by Plaintiffs' counsel in the Stanford Receivership that have also been approved by this Court, are indicative of Plaintiffs' counsel's abilities to obtain favorable results in these proceedings.

The nature and length of Plaintiffs' counsel's professional relationship with the client also supports the fee award. Plaintiffs' Counsel have represented the Receiver, the Committee, and investor plaintiffs in numerous actions pending before the Court in connection with the Stanford Receivership since 2009, all on the same 25% contingency fee arrangement.

Finally, awards in similar cases, with which this Court is familiar, as well as those discussed in the *Schwarz* opinion, all support the fee award. A 25% contingency fee has also previously been approved as reasonable by this Court in its order approving the Receiver's agreement with the Committee regarding the joint prosecution of fraudulent transfer and other claims by the Receiver and the Committee (the "OSIC-Receiver Agreement"). *See* SEC Action ECF No. 1267, p. 2 ("The Court finds that the fee arrangement set forth in the Agreement is reasonable."); *see also* OSIC-Receiver Agreement SEC Action ECF No. 1208, Ex. A, p. 3 (providing a "contingency fee" of 25% of any Net Recovery in actions prosecuted by the Committee's designated professionals). This Court has also approved a 25% contingency fee arrangement in the BDO, Adams & Reese, and Chadbourne cases. *See Official Stanford Inv'rs Comm. v. BDO USA, LLP*, No. 3:12-cv-01447-N-BG (N.D. Tex. Sep. 23, 2015), ECF No. 80; Order Approving Attorneys' Fees in *Ralph S. Janvey v. Adams & Reese, LLP*, Civil Action No. 3:12-CV-00495-B [SEC Action, ECF. No. 2231]; Order Approving Attorneys' Fees, SEC Action,

ECF No. 2366 (approving 25% contingency fee on a $35 million settlement with Chadbourne & Parke LLP).

For these reasons, the Court finds the 25% contingency fee requested in connection with the Hunton Settlement is well within the range of reasonableness for cases of the magnitude and complexity of the Receiver Litigation and the Investor Litigation. The Court therefore hereby approves the award of Plaintiffs' attorneys' fees in the amount of $8,482,217.15 as requested in the Motion. The Court also hereby authorizes the Receiver to reimburse the Receivership Estate from the settlement proceeds the total sum of $71,314.36 for expenses advanced by the Receiver in the Hunton & Williams matter to date.

The Receiver is, therefore:

ORDERED to pay Plaintiffs' counsel attorneys' fees in the amount of $8,482,171.41 upon receipt of the Settlement Amount in accordance with the terms of the Hunton Settlement Agreement.

Signed March 26, 2018.

                                                       David C. Godbey
                                        United States District Judge