UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| RALPH S. JANVEY, in his capacity as Court-appointed receiver for the Stanford Receivership Estate; PAM REED; SAMUEL TROICE; and MICHOACAN TRUST; individually and on behalf of a class of all others similarly situated,<br>     Plaintiffs,<br><br>v.<br><br>GREENBERG TRAURIG, LLP; HUNTON & WILLIAMS, LLP; AND YOLANDA SUAREZ,<br>     Defendants. | §§§§§§§§§§§§§§ CIVIL ACTION NO. 3:12-cv-04641-N |

## RECEIVER'S RESPONSE TO GREENBERG TRAURIG'S MOTION TO COMPEL BETTER RESPONSES TO INTERROGATORIES 1, 2, 3, AND 4 AND TO COMPEL DISCLOSURE OF DOCUMENTS REQUIRED UNDER RULE 26

**TABLE OF CONTENTS**

I.  INTRODUCTION ...................................................................................................................1

II. ARGUMENT ..........................................................................................................................3

    A.  Greenberg's contention interrogatories are overly broad and burdensome. ............3

        1.  The Receiver's responses are sufficient......................................................5

        2.  If further discovery is ordered, the Court should postpone answers to the interrogatories until after the completion of depositions. ................11

    B.  The Receiver has provided sufficient detail as to alleged damages.......................12

    C.  The Receiver's identification of trial exhibits is work product not discoverable until 45 days before trial per the court's scheduling order. ..............13

III. CONCLUSION....................................................................................................................15

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Arnstadt v. United States Brass Corp.*,
   919 S.W.2d 644 (Tex. 1996)...................................................................................................12

*B. Braun Med. Inc. v. Abbott Labs.*,
   155 F.R.D. 525 (E.D. Pa. 1994)...............................................................................................11

*Fischer & Porter Co. v. Tolson*,
   143 F.R.D. 93 (E.D. Pa. 1992).................................................................................................11

*Hiskett v. Wal-Mart Stores, Inc.*,
   180 F.R.D. 403 (D. Kan. 1998)..................................................................................................4

*IBP, Inc. v. Mercantile Bank of Topeka*,
   179 F.R.D. 316 (D. Kan. 1998)..................................................................................................4

*In re Convergent Tech. Sec. Litig.*,
   108 F.R.D. 328 (N.D. Cal. 1985).................................................................................3, 4, 5, 11

*In re Int'l Sys. And Controls Corp.*,
   693 F.2d 1235, 1240 (5th Cir. 1982) .......................................................................................13

*Lakes of Rosehill Homeowners Ass'n v. Jones*,
   552 S.W.3d 414 (Tex. App.—Houston [14th Dist.] 2018)......................................................12

*Landers v. East Texas Salt Water Disposal Co.*,
   151 Tex. 251, 248 S.W.2d 731 (1952)....................................................................................12

*Lawrence v. First Kansas Bank & Trust*,
   169 F.R.D. 657 (D. Kan. 1996)..................................................................................................4

*Lucero v. Valdez*,
   240 F.R.D. 591 (D. New Mexico 2007) ...................................................................................4

*McCarthy v. Paine Webber Group*,
   168 F.R.D. 448 (D. Conn. 1996)..............................................................................................11

*Moses v. Halstead*,
   236 F.R.D. 667 (D. Kan. 2006)..................................................................................................4

*Nguyen v. Excel Corp.*,
   197 F.3d 200 (5th Cir. 1999) ...................................................................................................13

*Roberts v. Heim*,
   130 F.R.D. 424 (N.D. Cal. 1989)...............................................................................................3

4814-3639-9746.1/40936/0102/121118

*SEC v. Cuban*,
 2013 U.S. Dist. LEXIS 3716 (N.D. Tex. 2013) ..................................................................13

*Storie v. United States*,
 793 F. Supp. 221 (E.D. Mo. 1992) .....................................................................................11

**RULES**

FED. R. CIV. P. 26(b)(3)(A)(ii) ............................................................................................13

FED. R. CIV. P. 26(b)(3)(B) .................................................................................................13

FED. R. CIV. P. 33(a)(2) .........................................................................................................3

FED. R. CIV. P. 33(c) ...........................................................................................................11

# I. INTRODUCTION

Greenberg served contention interrogatories asking the Receiver to provide information about its claim that Greenberg aided and abetted breaches of fiduciary duty, such as who breached the duty, to whom the duty was owed, what Greenberg Traurig did to participate and what specific damages were caused by each breach. Greenberg also sought similar information about the Receiver's negligence claim.

The Receiver objected to the interrogatories as overly broad and burdensome but answered with the information which he had, indicating that his responses would be supplemented as discovery progressed. He also filed a 167-page complaint detailing his claims in great detail, including who breached what duty, what Greenberg did to participate, when, and how. As for damages, the Receiver identified a $5.9 billion SEC judgment against SIBL and SGC that he contends forms the basis for the entities' increased liability damages and indicated that his response would be supplemented by expert testimony when expert disclosures are due in March 2019.

Greenberg contends that the Receiver's responses are inadequate and seeks to compel. Greenberg alleges that the "Receiver cannot now candidly say that he does not know what conduct of Stanford wrongdoers constituted the breaches Greenberg supposedly participated in." (Motion at 1). But the Receiver has said no such thing. As the Appendix amply illustrates, attached to the Receiver's responses is a six page exhibit listing 64 instances of Stanford's illicit activities and Greenberg's knowledge of and assistance with those illicit activities. Greenberg App. 29-34.

Greenberg argues that "[t]o the extent that some interrogatories seek a specification of *what* Greenberg supposedly did to knowingly participate in that wrongdoing, Rule 33 requires

that the Receiver must say unequivocally what he knows and contends *at the time*, subject to possible supplementation later." That is precisely what the Receiver has done.

Greenberg complains that "Greenberg needs to know what it is accused of so it can meaningfully defend itself." To read Greenberg's motion one would think that the Receiver filed a "bare bones" pleading and refused to answer discovery so that it is a mystery what Greenberg did wrong. As even a cursory perusal of the Complaint and the Receiver's discovery responses illustrates, Greenberg has been provided chapter and verse about its misdeeds. Further, much of the evidence about Greenberg's alleged misbehavior is within Greenberg's custody and control. Greenberg's real complaint is not that the Receiver has failed to provide substantive responses to discovery; rather Greenberg is complaining that the Receiver's responses include language indicating that his answers are not definitive and that the Receiver may supplement when he discovers additional facts through the discovery process. But a party has no obligation in discovery responses to marshal every fact it will rely on to support its case at trial.

Greenberg asserts three areas of purported noncompliance.

*First*, Greenberg complains of the Receiver's Response to Interrogatories 1 and 2 stating "The Receiver must, under Rule 11, have someone and something in mind in alleging what he did; and Greenberg is entitled to know who and what that was." (Motion at 3). Indeed, the Receiver did have someone and something in mind and he told Greenberg in his responses who and what that was. In response to interrogatories 1 and 2 as to fiduciary duty, the Receiver identified: what duty was breached (No. 1), who breached the duty (2a), to whom the duty was owed (2b), how Greenberg participated (2c), how Greenberg's participation was knowing (2d), who at Greenberg participated (2e), when (2f) and specific damages caused by each breach. The

2

Receiver named names, gave specific instances of conduct (64 separate entries on Ex. A to the Receiver's Interrogatory Responses), and provided dates.

*Second*, the Receiver did not refuse to provide a damages number. The Receiver identified a specific damage number and the source of that number—the $5.9 billion judgment the SEC obtained against SIBL and SGC which increased liabilities to the estates of those entities. He has told Greenberg what he knows at this time. A further breakdown, if any, awaits expert reports which he will produce on March 1, 2019 as ordered in the scheduling order.

*Third*, Greenberg says the Receiver must identify and produce documents he relied on to file the complaint. The Receiver has already done that. See Snyder declaration at App. 5. But now Greenberg wants an advance copy of the Receiver's actual Trial Exhibits, which the Receiver's counsel prepared at the outset of discovery in the case as part of their general trial strategy. The vast majority of the documents underlying the Receiver's Trial Exhibits come from Greenberg's own files, and the remainder of the documents have already been produced to Greenberg – just not with Plaintiff's Trial Exhibit stickers. *Id.* But Greenberg is not entitled to an advance preview of the Receiver's actual Trial Exhibits that his counsel prepared for use at trial and with out of state videotaped witness depositions —which is protected work product— until 45 days before trial as set forth in the Court's Scheduling Order. App. 9.

The Receiver has complied with his discovery obligations; the motion should be denied.

## II. ARGUMENT

**A. Greenberg's contention interrogatories are overly broad and burdensome.**

Federal Rule of Civil Procedure 33(a)(2) provides:

> *Scope*. An interrogatory may relate to any matter that may be inquired into under Rule 26(b). An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact, but the court may order that the interrogatory need not be answered until

3

> designated discovery is complete, or until a pretrial conference or some other time.

FED. R. CIV. P. 33(a)(2).

Courts have criticized the use of contention interrogatories, especially if they are broadly drafted and served early on in the discovery process. *See Roberts v. Heim*, 130 F.R.D. 424, 427-28 (N.D. Cal. 1989); *In re Convergent Tech. Sec. Litig.*, 108 F.R.D. 328, 333-39 (N.D. Cal. 1985). Contention interrogatories that systematically track all of the allegations in an opposing party's pleadings, and that ask for "each and every fact" and application of law to fact that supports the party's allegations, are an abuse of the discovery process because they are overly broad and unduly burdensome. *See IBP, Inc. v. Mercantile Bank of Topeka*, 179 F.R.D. 316, 321 (D. Kan. 1998); *In re Convergent*, 108 F.R.D. at 338; *Moses v. Halstead*, 236 F.R.D. 667, 674 (D. Kan. 2006) ("[T]his Court has made it clear that such 'contention interrogatories' are overly broad and unduly burdensome on their face if they seek 'all facts' supporting a claim or defense, such that the answering party is required to provide a narrative account of its case."). Contention interrogatories should not require a party to provide the equivalent of a narrative account of its case, including every evidentiary fact, details of testimony of supporting witnesses, and the contents of supporting documents. *See Lucero v. Valdez*, 240 F.R.D. 591, 593 (D. New Mexico 2007); *Hiskett v. Wal-Mart Stores, Inc.*, 180 F.R.D. 403, 404 (D. Kan. 1998); *Lawrence v. First Kansas Bank & Trust*, 169 F.R.D. 657, 663 (D. Kan. 1996).

As several courts have noted, to require a party to marshal every fact to support its contentions is disproportionate:

> To require specifically "each and every" fact and application of law to fact, however, would too often require a laborious, time-consuming analysis, search, and description of incidental, secondary, and perhaps irrelevant and trivial details. The burden to answer then outweighs the benefit to be gained. Other discovery

4

> procedures, such as depositions and production of documents, better address whatever need there be for that kind of secondary detail.

*IBP, Inc. v. Mercantile Bank*, 179 F.R.D. 316, 321 (D. Kan. 1998).

This is especially so when—as here—detailed pleadings are sufficient to put the defendant on notice of facts supporting the plaintiff's claims and the defendant has full access to information about its own behavior since it is that behavior that gives rise to plaintiff's claims:

> [T]here is substantial reason to believe that the *early* knee jerk filing of sets of contention interrogatories that systematically track all the allegations in an opposing party's pleadings is a serious form of discovery abuse. Such comprehensive sets of contention interrogatories can be almost mindlessly generated, can be used to impose great burdens on opponents, and can generate a great deal of counterproductive friction between parties and counsel. Moreover, at least in cases where defendants presumably have access to most of the evidence about their own behavior, it is not at all clear that forcing plaintiffs to answer these kinds of questions, early in the pretrial period, is sufficiently likely to be productive to justify the burden that responding can entail.

*In re Convergent Tech. Sec. Litig.*, 108 F.R.D. 328, 337 (N.D. Cal. 1985).

Interrogatories 1 through 4 are overly broad and burdensome if—as Greenberg urges—they require marshaling of all the evidence in the case.

**1.     The Receiver's responses are sufficient.**

    **a.     Breaches of Fiduciary Duty.**

In response to Interrogatory No. 1 (identify breaches of fiduciary duty) the Receiver did not fail to specify breaches of fiduciary duty. He expressly identified the following breaches:

- causing the Stanford entities to violate securities and other laws and engage in fraud;

- causing the sale of unregistered securities from the United States;

- approving fraudulent marketing materials for SIBL;

5

- evading proper U.S. regulation of his entities' activities while fraudulently creating and fostering a false image that the Stanford entities were based in the U.S. and compliant with U.S. laws;

- corrupting and co-opting the Antiguan government, in violation of the Foreign Corrupt Practices Act ("FCPA"), to evade and avoid regulation of his illegal securities sales activities without disclosing the lack of regulation to investors.;

- assisting Allen Stanford to cause the Stanford entities to violate laws;

- concealing and obfuscating the illegality and/or fraudulent nature of SIBL's conduct by evading and obstructing regulatory investigations by U.S. regulators, including the SEC, the NASD/FINRA, the OCC, Federal Reserve, Treasury Department, and state regulators;

- causing SIBL, Stanford Group Company ("SGC"), Stanford Trust Company ("STC"), and Stanford Fiduciary Investor Services ("SFIS") to market and sell the SIBL CDs in and from the U.S. in violation of U.S. laws, including the Investment Company Act and the Investment Advisers Act, and in violation of said entities' duties and obligations owed to their customers as a U.S. licensed broker dealer, investment adviser and/or trust company;

- causing SIBL, SGC, STC and SFIS to market and sell SIBL CDs to customers through fraud;

- promoting and continuing to allow SGC, STC and SFIS financial advisers to recommend to their clients to invest in the SIBL CDs, and not directing said entities to cease all sales of SIBL CDS until said officers and directors could ensure that said sales of unregistered securities were fully compliant with U.S. laws;

- the failure to direct that SGC, STC and SFIS disclose to investors that SIBL CDs were unregistered securities that were being offered in violation of U.S. laws, and that Allen Stanford had corrupted and co-opted the Antiguan Government in violation of the FCPA in order to evade regulation of his activities;

- failure to demand the SIBL marketing materials disclose the above facts;

- efforts to conceal and obfuscate the illegality or fraudulent nature of Stanford's conduct by evading and obstructing regulatory investigations by U.S. regulators, including the SEC, the NASD/FINRA, the OCC, the Federal Reserve and state regulators;

- Stanford's conduct that formed the basis of his criminal conviction and judgment;

- enabling the violations of securities laws set forth in the SEC's Judgment against SIBL and SGC [*See* N.D. Tex. Case No. 3:09-cv-00298-N, Doc. 1858;

- causing SIBL and other Stanford entities to violate U.S. laws, including but not limited to the Investment Company Act and the FCPA;

- by using SIBL and other Stanford entities to commit securities fraud;

- by misappropriating SIBL funds for purposes of funding or investing in other Stanford-owned entities and/or ventures, including loans to the Antiguan Government and bribes to Antiguan Government officials in violation of the FCPA, without disclosure of same to investors and regulators;

- failure to make reasonable use of the confidence placed in him by SIBL and other Stanford entities;

- failure to use the degree of care that a person of ordinary prudence would exercise under the same or similar circumstances in his capacity as an officer and director of SIBL and other Stanford entities;

- failure to act with the utmost good faith and scrupulous honesty towards SIBL and other Stanford entities;

- knowingly participating in illegal activity by and through SIBL and other Stanford entities;

- failing to use his uncorrupted business judgment for the sole benefit of IBL and other Stanford entities;

- all allegations in the Complaint with respect to the misconduct of the Stanford officers and directors;

- the factual basis in Allen Stanford's conviction and James Davis' plea agreement.

Greenberg App. 37-41.

**b.    Persons who breached duties.**

In response to Interrogatory 2a, the Receiver responded:

>Allen Stanford, Yolanda Suarez, Oreste Tonarelli, Juan Rodriguez Tolentino, Jim Davis, James Stanford, Kenneth Allen, and every other Director and Officer of SIBL, IBL, GIIS, Stanford Financial Group Company, SFIS, STC and SGC that served in said capacities over the years as identified in said entities' corporate records. All of said Directors and Officers breached their fiduciary duties owed to the Stanford entities by enabling, assisting, or failing to prevent the conduct that led directly to the SEC's Judgment against SIBL and SGC. *See* N.D. Tex. Case No. 3:09-cv-00298-N [Doc. 1858]. This Response will be supplemented as discovery progresses.

Greenberg App. 42.

**c.     To whom the fiduciary duties were owed.**

In response to Interrogatory 2b, the Receiver responded:

>SIBL, GIBL, GIIS, Stanford Financial Group Company, SGC, STC, and SFIS. This Response will be supplemented as discovery progresses. Greenberg App. 42.

**d.     How Greenberg participated in the breach.**

In response to Interrogatory 2c, the Receiver responded:

>Greenberg participated in the breaches by assisting and enabling Allen Stanford (1) to establish and implement the U.S.-based sales and marketing vehicles (such as SGC, STC, and SFIS – and before that GIIS) he utilized to market and sell his unregistered and fraudulent securities from the U.S.; (2) to evade proper U.S. regulation of his and his entities' illegal securities sales activities; (3) to corrupt and co-opt and in effect "take over" the Antiguan Government so as to enable Stanford to mask and continue to grow his illegal securities sales activities completely unfettered by regulation; and (4) to attack and silence Stanford's opponents or anyone that investigated Stanford or attempted to expose Stanford's illegal conduct, including journalists, former employees, and even U.S. Government officials.
>
>For additional responses, see Exhibit "A".
>
>This Response will be supplemented as discovery progresses.

Greenberg App. 42-43.

8

### e. How Greenberg's participation was knowing.

In response to Interrogatory 2d, the Receiver responded:

> Plaintiffs respond that various Greenberg attorneys knew that (1) Stanford was selling unregistered securities in, through and from the United States, in violation of U.S. laws; (2) Stanford was not a commercial bank and therefore was not exempt from the Investment Company Act and was violating said Act through the sale of the SIBL CDs; (3) Stanford wanted to avoid any regulation of his activities despite directing the sales and marketing of his unregistered securities from the U.S.; (4) Antigua was well known in offshore banking circles as having one of the most corrupt governments in the Caribbean and fostering a haven for illegal activities; (5) Stanford moved to Antigua before his banking licenses could be revoked by the Montserrat Government which was cleaning up its own corrupt and illegal offshore banking industry; (6) Stanford bribed and/or gave money to various Antiguan Government officials – including the Prime Minister Lester Bird – in violation of the FCPA, and had liens on the entire tax base of the Antiguan Government through the loans to said Government that Greenberg helped engineer and was using Antigua as a safe haven to mask and evade regulation of his illegal securities sales activities; (7) Stanford was able to use his control of the Antiguan Government to appoint himself (and Greenberg lawyers and other Stanford agents) to oversee the Antiguan banking sector and re-write Antiguan banking laws in order to insulate and protect SIBL from U.S. regulatory scrutiny and interference and continue to mask his illicit conduct; (8) Stanford's loans to the Antiguan Government violated Antiguan law and were likely funded by SIBL and were not disclosed to SIBL investors; (9) various U.S. Government agencies and officials consistently raised alarms about Stanford's perceived violations of laws and illicit conduct over the years; (10) the Government of Montserrat revoked SIBL's prior banking license in that country for, *inter alia*, SIBL's violations of accounting standards and unsafe banking practices.
>
> For additional responses, see attached Exhibit "A".

Greenberg App. 43-44.

    **f.**    **Each person at Greenberg who participated.**

In response to Interrogatory 2f, the Receiver responded:

> Carlos Loumiet, Mark Schnapp and Patrick O'Brien.  This Response will be supplemented as discovery progresses.

Greenberg App. 44.

    **g.**    **When Greenberg's participation occurred.**

In response to Interrogatory 2f, the Receiver responded:

> Generally between 1988 and 2001. For more specific dates, please see Plaintiffs' Complaint and attached Exhibit A.  This Response will be supplemented as discovery progresses.

Greenberg App. 44.

    **h.**    **Damages caused by the breach.**

In response to Interrogatory 2g, the Receiver responded:

> The damages the Receiver will seek at trial against Greenberg will be all or a portion of the amount of the SEC's Judgment against SIBL and SGC. *See* N.D. Tex. Case No. 3:09-cv-00298-N [Doc. 1858].  The Court entered the Judgment finding SIBL and SGC liable for violations of multiple securities laws, including the Investment Company Act, and ordering damages against the entities, jointly and severally, of $5.9 billion along with an additional $861,189,969.06 in prejudgment interest.  This award represents increased liabilities to the estates of SIBL and SGC as a result of Stanford's primary liability.  The exact amount of damages, and which Stanford entity suffered those damages, is being analyzed and calculated by expert witnesses.  This response will be supplemented at the time of expert disclosures.

Greenberg App. 44.

The Receiver's answers to interrogatories regarding negligence are similarly specific.

Greenberg has failed to show that there is good reason to believe that additional answers to the above contention interrogatories will contribute meaningfully to clarify the issues in the case, materially advance the goals of the Federal Rules of Civil Procedure, narrow the scope of the dispute, set up early settlement discussions, or expose a substantial basis for a motion under

10

Rule 11 or Rule 56. Because Greenberg has not offered the kinds of showings required, because this is *not* a situation in which it is clear that there is no substance to Receiver's claims, and because Greenberg has access to much of the evidence about its own misbehavior, the Court should require no further answers. The motion to compel should be denied.

### 2. If further discovery is ordered, the Court should postpone answers to the interrogatories until after the completion of depositions.

Courts have discretion in determining when contention interrogatories must be answered, and there is considerable support for deferring answers to contention interrogatories until after a substantial amount of discovery has been completed. *See* FED. R. CIV. P. 33(c); *McCarthy v. Paine Webber Group*, 168 F.R.D. 448, 450 (D. Conn. 1996). Indeed, there is considerable support for deferring contention interrogatories until the end of the discovery period. *B. Braun Med. Inc. v. Abbott Labs.*, 155 F.R.D. 525, 527 (E.D. Pa. 1994); *In re Convergent*, 108 F.R.D. at 336. The party serving contention interrogatories bears the burden of proving how an earlier response assists the goals of discovery. *Fischer & Porter Co. v. Tolson*, 143 F.R.D. 93, 96 (E.D. Pa. 1992).

Greenberg has not met that burden. It has not shown that early answers "will contribute meaningfully to clarifying the issues in the case, narrowing the scope of the dispute, or setting up early settlement discussions, or that such answers are likely to expose a substantial basis for a motion under Rule 11 or Rule 56." *Fischer*, 143 F.R.D. at 96; *In re Convergent*, 108 F.R.D. at 339.

Further, if the Receiver is forced to respond, it may have to articulate theories of his case not yet fully developed. *Storie v. United States*, 793 F. Supp. 221 (E.D. Mo. 1992). Accordingly, and in the alternative, Greenberg's motion to compel should be denied without

11

prejudice to reasserting it after a substantial amount of discovery has been completed, including depositions and designations of expert witnesses.

**B.    The Receiver has provided sufficient detail as to alleged damages.**

The Receiver provided a baseline damage number based on the SEC Judgment against SIBL and SGC and indicated that his response on damages would be supplemented by his damages expert witness when said witness is designated per the Scheduling Order.  Greenberg is not satisfied with that response and complains that the Receiver must indicate now in response to Interrogatories which specific act by Greenberg caused which specific damages to the Stanford entities.  But where—as here—many acts of misconduct contribute to a single indivisible injury, it is not possible to segregate damages by each act of malfeasance.  By its nature a Ponzi or securities fraud scheme like the one orchestrated by Allen Stanford involves many transactions and requires the participation of several tortfeasors—indeed Greenberg has recently moved to designate multiple parties as responsible for Stanford's fraud under Chapter 33.  See ECF 294.

Under Texas law, where the tortious acts of two or more wrongdoers join to produce an indivisible injury (an injury that by its nature cannot be apportioned among them) all defendants are jointly and severally liable for the entire injury.  *Landers v. East Texas Salt Water Disposal Co.*, 151 Tex. 251, 248 S.W.2d 731, 734 (1952); *Arnstadt v. United States Brass Corp.*, 919 S.W.2d 644, 653 (Tex. 1996); *Lakes of Rosehill Homeowners Ass'n v. Jones*, 552 S.W.3d 414, 422 (Tex. App.—Houston [14th Dist.] 2018) ("where the tortious acts of two or more wrongdoers join to produce an injury that by its nature cannot be apportioned with reasonable certainty among them, all defendants will be held jointly and severally liable for the entire injury").  Here one of the Receiver's principal claims is that Greenberg participated in Stanford's breaches of fiduciary duty owed to the entities like SIBL and SGC, and said claim establishes joint and several liability.  See, e.g., *Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 138 Tex. 565,

12

160 S.W.2d 509, 514 (1942) ("It is settled law of this State that where a third party knowingly participates in the breach of duty of a fiduciary, such third party becomes a joint tort-feasor with the fiduciary and is liable as such."). So there is no need for the Receiver to allocate damages among participants or theories of liability. The Receiver has done all he needs to do by providing a substantive response to the damage question.

**C.     The Receiver's identification of Trial Exhibits is work product not discoverable until 45 days before trial per the Court's Scheduling Order.**

Greenberg seeks an order to compel the Receiver to produce its Trial Exhibits long before the time set forth in the Court's scheduling order. As part of its trial plan for this case, the Receiver's counsel spent months at the inception of discovery in this case reviewing and identifying and marking as "Plaintiff's Trial Exhibits" the documents that counsel believed would be used at trial. One of the principal reasons the Receiver's counsel pre-marked its Trial Exhibits early in the discovery process is due to the large number of witnesses who reside outside of Texas (several of whom are not under the control of either party) and whose testimony will be (and has to date been) taken by videotaped deposition that will be played to the jury at trial, in order to maintain consistency between the exhibits used in those out-of-state videotaped depositions and the exhibits ultimately admitted into evidence and presented to the jury. These out-of-state depositions are for all purposes trial testimony depositions, and therefore the Receiver's counsel is using the Receiver's Trial Exhibits in said depositions.

The Receiver should not be punished by requiring early disclosure of all of his Trial Exhibits just because his counsel pre-selects and marks Trial Exhibits early in the discovery process as part of its trial strategy. Counsel's selection of exhibits for trial involves trial strategy and counsel's mental impressions and opinions about which documents are most relevant for use

13

at trial, and therefore advanced production of the Receiver's Trial Exhibits would disclose the Receiver's trial strategy and violate protected work product.

The Federal Rules of Civil Procedure permit discovery of "ordinary work product" if a party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means. FED. R. CIV. P. 26(b)(3)(A)(ii). But "opinion work product"—such as what Trial Exhibits the Receiver's counsel intends to use at trial —is afforded a high degree of protection: in ordering discovery of such materials, the court "must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." FED. R. CIV. P. 26(b)(3)(B).

The Fifth Circuit has recognized that opinion work product is virtually undiscoverable. *In re Int'l Sys. and Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1240 (5th Cir. 1982) ("some courts have provided almost absolute protection for such materials"); *Nguyen v. Excel Corp.*, 197 F.3d 200, 211 (5th Cir. 1999) ("Discovery was hardly intended to enable a learned profession to perform its functions . . . on wits borrowed from the adversary"); *see also SEC v. Cuban*, 2013 U.S. Dist. LEXIS 3716 *12 (N.D. Tex. 2013) ("Opinion work product provides 'almost absolute protection' for 'the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representatives concerning the litigation'").

Moreover, the Receiver has already produced to Greenberg every document referenced in the Complaint, the vast majority of which came from Greenberg's own files. See Snyder Declaration App. 5. The Receiver also has produced every document included in his Trial Exhibits (just lacking the Plaintiff's Trial Exhibit labels) that came from a source other than Greenberg or Hunton & Williams (Greenberg already possesses all documents from Hunton &

14

Williams).[1]  *Thus Greenberg already has **every document** in the Receiver's Trial Exhibits;* Greenberg just doesn't have, and shouldn't have, the Receiver's actual marked Plaintiff's Trial Exhibits.  See Snyder Declaration App. 5.  While every trial lawyer would love to get his hands on the Exhibits an opposing party intends to use in the depositions of the trial lawyer's witnesses—which is what Greenberg is essentially asking this Court to order—the discovery rules do not require or condone such advanced disclosure.

The Receiver has met his discovery obligations.  There is already a Scheduling Order in place which dictates the timing of disclosure of Trial Exhibits and that is 45 days before trial.  Accordingly, Greenberg's motion to compel production of the Receiver's Trial Exhibits should be denied.

### III.  CONCLUSION

The motion to compel the Receiver to provide additional responses to Greenberg's interrogatories and to produce his exhibit list should be denied.

Respectfully Submitted,

**NELIGAN LLP**
By: */s/ Douglas J. Buncher*
Douglas J. Buncher
dbuncher@neliganlaw.com
Republic Center
325 N. St. Paul, Suite 3600
Dallas, Texas 75201
Telephone: (214) 840-5320
Facsimile: (214) 840-5301

**CASTILLO SNYDER**
By: */s/ Edward C. Snyder*
Edward C. Snyder
esnyder@casnlaw.com
Jesse R. Castillo
jcastillo@casnlaw.com
700 N. St. Mary's, Suite 405
San Antonio, Texas 78205
Telephone: (210) 630-4200
Facsimile: (210) 630-4210

**CLARK HILL STRASBURGER**
By: */s/ Judith R. Blakeway*
Judith R. Blakeway
judith.blakeway@clarkhillstrasburger.com
2301 Broadway
San Antonio, Texas 78215

---

[1] Over 88% of the Receiver's Trial Exhibits came from Greenberg's own files or from the files of Hunton & Williams.  See Snyder Declaration App. 3.

        Telephone: (210) 250-6004
        Facsimile: (210) 258-2706

        By: */s/ David N. Kitner*
        David N. Kitner
        david.kitner@clarkhillstrasburger.com
        901 Main Street, Suite 4400
        Dallas, Texas 75202
        Telephone: (214) 651-4300
        Facsimile: (214) 651-4330

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

    I hereby certify that on the 11th day of December, 2018, the foregoing Motion was served on all counsel of record via the Court's ECF system.

        */s/ Judith R. Blakeway*
        Judith R. Blakeway