IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RALPH S. JANVEY, in his capacity as Court-appointed receiver for the Stanford Receivership Estate, et al., | § § § § | |
| *Plaintiff,* | § § | |
| v. | § § | CIV. ACTION NO. 3:12-cv-04641-N |
| GREENBERG TRAURIG, LLP *and* GREENBERG TRAURIG, PA, | § § § | |
| *Defendants.* | § § | |

## GREENBERG TRAURIG'S MOTION TO EXCLUDE IMPROPER EXPERT TESTIMONY

**FOGLER, BRAR, FORD, O'NEIL & GRAY LLP**
Murray Fogler
mfogler@fbfog.com
Michelle E. Gray
mgray@fbfog.com
Robin O'Neil
roneil@fbfog.com
909 Fannin Suite 1640
Houston, Texas 77010
Telephone: (713) 481-1010
Facsimile: (713) 574-3224

**BOIES SCHILLER FLEXNER LLP**
Stuart H. Singer
ssinger@bsfllp.com
Sashi C. Bach
sbach@bsfllp.com
Pascual A. Oliu
poliu@bsfllp.com
401 East Las Olas Boulevard, Suite 1200
Fort Lauderdale, Florida 33301
Telephone: (954) 356-0011
Facsimile: (954) 356-0022

**COWLES & THOMPSON, P.C.**
Jim E. Cowles
jcowles@cowlesthompson.com
Sim Israeloff
sisraeloff@cowlesthompson.com
Charles A. Green
cgreen@cowlesthompson.com
901 Main Street, Suite 3900
Dallas, Texas 75202
Telephone: (214) 672-2000
Facsimile: (214) 672-2347

*Counsel for Defendants Greenberg Traurig, LLP and Greenberg Traurig, PA*

## <u>TABLE OF CONTENTS</u>

Table of Authorities ......................................................................................................... iii

I.   The Receiver's Experts' Opinions on the Intent, Motive, State of Mind, Actual Knowledge
     or Subjective Awareness of Any Witness are Improper and Should be Excluded. ............... 1

     A.  Lemke's improper opinions on intent, motive, state of mind, actual knowledge,
         subjective awareness and beliefs should be excluded. ...................................................... 4

     B.  Spindler's improper opinions on intent, motive, state of mind, actual knowledge,
         subjective awareness and beliefs should be excluded. ...................................................... 9

     C.  Koehler's improper opinions on intent, motive, state of mind, actual knowledge,
         subjective awareness and beliefs should be excluded. .................................................... 11

     D.  Herring's improper opinions on intent, motive, state of mind, actual knowledge,
         subjective awareness and beliefs should be excluded. .................................................... 14

II.  The Receiver Impermissibly Uses Experts to Summarize Evidence. ................................. 17

III. The Receiver's Experts Offer Ultimate Legal Conclusions Which are Inadmissible. ....... 20

IV.  Because Herring's Opinions Consist Only of the Three Types of Improper Expert
     Testimony Discussed Above, They Should be Excluded Altogether. ................................. 25

## TABLE OF AUTHORITIES

**Cases**

*AstraZeneca LP v. Tap Pharm. Prods., Inc.*
   444 F. Supp. 2d 278 (D. Del. 2006) ........................................................... 4

*Bianco v. Globus Med., Inc.*
   30 F.Supp.3d 565 (E.D. Tex. 2014) ......................................................... 20

*Boeing Co. v. Shipman*
   411 F.2d 365 (5th Cir. 1969) .................................................................... 8

*Charalambopoulos v. Grammer*,
   2017 WL 930819 (N.D. Tex. Mar. 8, 2017) .............................................. 9

*CMI-Trading, Inc. v. Quantum Air, Inc.*
   98 F.3d 887 (6th Cir. 1996) ....................................................................... 4

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*
   509 U.S. 579 (1993) .................................................................................. 2

*Estate of Davis v. City of N. Richland Hills*
   2007 WL 628090 (N.D. Tex. Feb. 28, 2007) ................................... 3, 12, 13

*First United Financial Corp. v. U.S. Fidelity & Guar. Co.*
   96 F.3d 135 (5th Cir. 1996) ....................................................................... 6

*Fisher v. Halliburton*,
   2009 WL 5216949 (S.D. Tex. Dec. 21, 2009) ........................................ 3, 7

*Fleming v. Kinney ex rel. Shelton*
   395 S.W.3d 917 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) .................................. 24

*Floyd v. Hefner*
   556 F.Supp.2d 617 (S.D. Tex. 2008) ....................................................... 17

*Greenberg Traurig of N.Y., P.C. v. Moody*
   161 S.W.3d 56 (Tex. App.—Houston [14th Dist.] 2004, no pet.) ............................................ 24

*Halcomb v. Washington Metro. Area Transit Auth.*
   526 F. Supp. 2d 24 (D.D.C. 2007) ............................................................ 4

*Highland Capital Management, L.P. v. Schneider*
   379 F.Supp.2d 461 (S.D.N.Y. 2005) ......................................................... 19

*Holmes Grp., Inc. v. RPS Prods., Inc.*
   2010 WL 7867756 (D. Mass. June 25, 2010) ........................................ 7, 10

*In re Air Crash Disaster at New Orleans*,
   795 F.2d 1230 (5th Cir. 1986) ............................................................. 3, 10

*In re Enron Corp. Securities, Derivative & ERISA Litigation*
   235 F.Supp.2d 549 (S.D. Tex. 2002) ....................................................... 24

*In re Rezulin Prods. Liab. Litig.*
309 F. Supp. 2d 531 (S.D.N.Y. 2004) ........................................................................ 4

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices & Prods. Liab. Litig.*
978 F. Supp. 2d 1053 (C.D. Cal. 2013) ..................................................................... 6

*In the Matter of M&M Wireline & Offshore Servs., LLC*
2016 WL 4681196 (E.D. La. 2016) ........................................................................... 9

*Joe v. Two Thirty Nine Joint Venture*
145 S.W.3d 150 (Tex. 2004) ................................................................................... 24

*Marlin v. Moody Nat'l Bank, N.A.*
248 Fed. Appx. 534 (5th Cir. 2007) ..................................................... 2, 3, 10, 13

*Orthoflex, Inc. v. Thermotek, Inc.*
986 F.Supp.2d 776 (N.D. Tex. 2013) ...................................................................... 19

*Owen v. Kerr-McGee Corp.*
698 F.2d 236 (5th Cir. 1983) ................................................................................. 21

*Peters v. Five Star Marine Serv.*
898 F.2d 448 (5th Cir. 1990) ................................................................................. 22

*Ray v. Iuka Special Municipal Separate School District*
51 F.3d 1246 (5th Cir. 1995) ................................................................................... 8

*Retractable Tech. Inc. v. Abbot Lab., Inc.*
2010 WL 11531436 (E.D. Tex. 2010) ................................................................... 3, 6

*Robroy Indus.-Texas, LLC v. Thomas & Betts Corp.*
2017 WL 1319553 (E.D. Tex. Apr. 10, 2017). ....................................................... 19

*Rolls-Royce Corp. v. Heros, Inc.*
2010 WL 184313 (N.D. Tex. 2010) ........................................................................ 11

*S.E.C. v. Daifotis*
2012 WL 2051193 (N.D. Cal. June 7, 2012) .......................................................... 20

*S.E.C. v. Johnson*
525 F. Supp. 2d 70 (D.D.C. 2007) ....................................................................... 4, 8

*Salas v. Carpenter*
980 F.2d 299 (5th Cir.1992) ................................................................................ 2, 3

*Schatz v. Rosenberg*
943 F.2d 485 (4th Cir. 1991) ................................................................................. 24

*SEC v. Leslie*,
2010 U.S. Dist. LEXIS 76826 (N.D. Cal. Jul. 29, 2010) .................................... 7, 10

*SEC v. Life Partners*
2013 WL 12076933 (W.D. Tex. 2013) ...................................................................... 3

*Skidmore v. Precision Printing & Packaging, Inc.*
  188 F.3d 606 (5th Cir. 1999) ........................................................................... 8

*SLSJ, LLC v. Kleban*
  277 F.Supp.3d 258 (D. Conn. 2017) ............................................................... 22

*Snap-Drape, Inc. v. Comm'r of Internal Revenue*
  98 F.3d 194 (5th Cir. 1996) ........................................................................... 21

*Thompson v. State Farm Fire & Casualty Co.*
  34 F.3d 932 (10th Cir. 1994) ........................................................................... 4

*Town of Westport v. Monsanto Company*
  103 Fed. R. Evid. Serv. 52 (D. Mass. 2017) .................................................... 6

*U.S. v. Mejia*
  545 F.3d 179 (2d Cir. 2008) ........................................................................... 18

*U.S. v. Perkins*
  470 F.3d 150 (4th Cir. 2006) ......................................................................... 22

*U.S. v. Thanh Quoc Hoang*
  891 F.Supp.2d 1355 (M.D. Ga. 2012) ...................................................... 22, 23

*U.S. v. Wertis*
  505 F.2d 683 (5th Cir. 1974) ........................................................................... 8

*United States ex rel. Ruscher v. Omnicare, Inc.*
  2015 WL 5178074 (S.D. Tex. Sept. 3, 2015) .................................................. 3

*United States v. Barile*
  286 F.3d 749 (4th Cir. 2002) ......................................................................... 22

*United States v. Oti*
  872 F.3d 678 (5th Cir. 2017) ......................................................................... 21

**Rules**

Fed. R. Evid. 403 .............................................................................. *passim*

Fed. R. Evid. 702 ................................................................... 2, 9, 11, 16

Fed. R. Evid. 703 .............................................................................. 19

Fed. R. Evid. 704 .............................................................................. 21

v

Pursuant to Rules 702 and 403 of the Federal Rules of Evidence, Greenberg Traurig, LLP and Greenberg Traurig, PA (collectively, "Greenberg") move to exclude the opinions of the Receiver's experts Thomas P. Lemke ("Lemke"), James Spindler ("Spindler"), Mike Koehler ("Koehler"), and Karyl Van Tassel ("Van Tassel") to the extent those opinions

(1) bear on a witness' state of mind, actual knowledge, subjective awareness and belief;

(2) invade the province of the jury by doing no more than summarizing the facts; and

(3) tell the jury what legal conclusions to reach.

Because the opinions of Charles Herring, Jr. ("Herring") consist of only these three categories of improper expert testimony and nothing more, Greenberg moves to exclude his testimony altogether.

## I.   THE RECEIVER'S EXPERTS' OPINIONS ON THE INTENT, MOTIVE, STATE OF MIND, ACTUAL KNOWLEDGE OR SUBJECTIVE AWARENESS OF ANY WITNESS ARE IMPROPER AND SHOULD BE EXCLUDED.

The Receiver alleges that Allen Stanford and other individual officers and directors (the "Stanford Fiduciaries") breached their fiduciary duties to the Stanford Entities by operating those entities in furtherance of a Ponzi scheme, and that Greenberg aided, abetted and "knowingly participated" in those breaches.[1]  In support of his allegations, the Receiver proffers "expert" statements in the form of opinions through which he seeks to tell the jury that Greenberg *knew* Allen Stanford and his cohorts were engaged in illegal activity, that Greenberg *intentionally* rendered erroneous legal advice to the Stanford entities that "set the stage" for Stanford to sell SIBL CDs for the next ten years, and that Greenberg's *motivation* for doing so was that it *knew*

---

[1] App. at 020 (¶ 2.g) ("The breaches of fiduciary duty by Allen Stanford and Suarez, in which Greenberg participated, set the stage for, and enabled Stanford to grow and expand the sales of SIBL CDs from December 30, 1998 until the SEC shut down the Stanford entities in February 2009.").

Stanford could not continue the fraudulent scheme if it was properly advised on the requirements of U.S. law.

Expert opinions on intent, motive, state of mind, actual knowledge, subjective awareness and beliefs are neither "helpful nor admissible" and invade the province of the jury. *Marlin v. Moody Nat'l Bank, N.A.*, 248 Fed. Appx. 534, 541 (5th Cir. 2007) (citing *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir.1992)). Thus, the Court should exclude the Receiver's proposed expert testimony as to those subjects. *See* FED. R. EVID. 702, 403. With respect to issues of Greenberg's knowledge and awareness, the Court should limit expert testimony to what a reasonable professional in Greenberg's position "should have known," and the Court should allow such testimony only to the extent that the witness qualifies as an expert in the relevant area of substantive law. For the Court's convenience, summaries of the improper opinions of each witness are attached at pages 038 to 045 of the Appendix.[2]

The primary consideration under Federal Rule of Civil Procedure 702 is whether the expert testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-93 (1993) (quoting FED. R. EVID. 702).[3] As the Fifth Circuit explained in *Moody Bank*, "an expert's credentials do not place

---

[2] The attached summaries set forth a representative, not exhaustive, list of improper opinions as to intent, motive, state of mind, knowledge, awareness or beliefs. Greenberg reserves the right to object at trial to other opinions on any basis.

[3] Rule 702 provides in full:
"A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
(a) the expert's scientific, technical, or other specialized knowledge **will help the trier of fact to understand the evidence or to determine a fact in issue**;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case."
FED. R. EVID. 702 (emphasis added).

him in a better position than the jury to draw conclusions about a defendant's state of mind." *Moody Nat'l Bank, N.A.*, 248 Fed. Appx. at 541 (citing *Salas*, 980 F.2d at 305). Consequently, "a trial court may strike expert testimony that evaluates a party's state of mind, as that evaluation is within the province of the jury." *Fisher v. Halliburton*, 2009 WL 5216949, at *2 (S.D. Tex. Dec. 21, 2009) (citing *Marlin*, 248 Fed. Appx. at 541)); *see also In re Air Crash Disaster at New Orleans*, 795 F.2d 1230, 1233 (5th Cir. 1986) ("[T]he trial judge ought to insist that a proffered expert bring to the jury more than the lawyers can offer in argument.").

Adhering to Fifth Circuit precedent, federal district courts from the Northern, Southern, Eastern and Western Districts of Texas have applied this well-established rule to exclude expert testimony as to intent, motive, state of mind, knowledge and belief. *See Estate of Davis v. City of N. Richland Hills*, 2007 WL 628090, at *3 (N.D. Tex. Feb. 28, 2007) ("[E]xpert opinion regarding Hill's state of mind and Hill's action based on his state of mind crosses the line from assisting the jury in understanding the evidence and determining a fact in issue to evading the province of the jury."); *United States ex rel. Ruscher v. Omnicare, Inc.*, 2015 WL 5178074, at *6, *11 (S.D. Tex. Sept. 3, 2015) (excluding expert testimony "about ... intent, motive, or state of mind, as that is typically held to be within the province of the jury"); *SEC v. Life Partners*, 2013 WL 12076933, at *3 (W.D. Tex. 2013) ("Johnson may not opine on what motivated Defendants to make the decisions that are the subject of this case" and "may not testify that [the company] did or did not fraudulently misrepresent its financial condition to investors."); *Retractable Tech. Inc. v. Abbot Lab., Inc.*, 2010 WL 11531436, at *4–*7 (E.D. Tex. 2010) (excluding an expert's testimony as it related to a party's knowledge, intent, or belief).

Decisions from other circuits are equally uniform in holding that expert testimony regarding intent, motive, state of mind, actual knowledge, subjective awareness or belief invades

the province of the jury and should be excluded under Federal Rule of Evidence 702. *See, e.g., CMI-Trading, Inc. v. Quantum Air, Inc.*, 98 F.3d 887, 890 (6th Cir. 1996) ("The intent of the parties is an issue within the competence of the jury and expert opinion testimony will not assist the jury, within the meaning of Federal Rule of Evidence 702, in determining the factual issue of intent."); *Thompson v. State Farm Fire & Casualty Co.*, 34 F.3d 932, 941 (10th Cir. 1994) ("[When] expert testimony is offered on an issue that a jury is capable of assessing for itself, it is plainly within the trial court's discretion to rule that testimony inadmissible because it would not even marginally 'assist the trier of fact.'"); *S.E.C. v. Johnson*, 525 F. Supp. 2d 70, 78 (D.D.C. 2007) ("Determinations of individuals' intent is a quintessential jury question."); *Halcomb v. Washington Metro. Area Transit Auth.*, 526 F. Supp. 2d 24, 29-30 (D.D.C. 2007) (excluding expert testimony "concerning the . . . state of mind of any party or witness"); *AstraZeneca LP v. Tap Pharm. Prods., Inc.*, 444 F. Supp. 2d 278, 293 (D. Del. 2006) (excluding expert testimony concerning "intent, motive, or state of mind, *or evidence by which such state of mind may be inferred"*) (emphasis added); *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 546 (S.D.N.Y. 2004) (excluding expert testimony concerning the "real motive" behind certain business transactions).

> **A.**    **Lemke's improper opinions on intent, motive, state of mind, actual knowledge, subjective awareness and beliefs should be excluded.**

Thomas Lemke is the Receiver's expert on the Investment Company Act ("ICA" or "the 1940 Act"). The opening sections of Lemke's report catalog what, in his opinion, are "obvious substantive failings" in Greenberg's legal advice to Stanford pertaining to the ICA, specifically a November 1998 memorandum that Greenberg prepared summarizing certain exemptions to the 1940 Act. App. at 060-67. In Part V, Lemke then shifts focus from identifying errors to speculating as to reasons for the errors. He begins his quest to divine Greenberg's "intent" and "true purpose" with this observation:

> The multiple and obvious substantive failings in Greenberg's review of 1940 Act exemptions for Stanford raise a fundamental question about the ***Greenberg's intent*** in the 1998 Memo.  In addition, the unique structure of the Memo itself raises questions about ***Greenberg's true purpose***.

App. at 067 (emphasis added).  Lemke then purports to answer this "fundamental question" for the jury, opining as to Greenberg's actual knowledge, intent, motivation, state of mind and "true purpose."  App. at 067-73 ("[T]he record strongly suggests that the 1998 Memo was not intended as legal advice but rather was a client 'accommodation' intended to support and further Stanford's continued illicit sales of the unregistered investment company securities.").

While such opinions are never appropriate, they are especially inappropriate here, where the expert's narrative is riddled with presumptions and outright speculation in order to manufacture what Lemke calls "curious" and "perplexing" circumstances.  App. at 068-69.  Lemke's omniscient narrative culminates in his conclusion:  Greenberg's "advice in the 1998 Memo was incorrect and materially misleading and ***could not possibly have been designed to be true legal advice to its client***."  App. at 071 (emphasis added).

In deposition, Lemke did not deny that he is opining on motive and intent; to the contrary, he testified that "[i]f you're talking about their motive, I think I do have an advantage over a juror."  App. at 123 (21:4-11).  This advantage, he believes, extends to discerning the intent of both Yolanda Suarez, who requested the November 1998 Memo, and Greenberg lawyers who wrote it:

> Q. The bottom line is, you believe looking in hindsight 20 years later, you can tell the Jury not only what Yolanda Suarez was intending in 1998, but also what the Greenberg lawyers were intending?
>
> A. Based on the overall circumstances here, yes, I think it's pretty clear what was going on.

App. at 140 (94:1-6).

While it may be appropriate for a qualified legal malpractice expert to opine as to what information an attorney should have gathered before rendering legal advice, the question whether

Greenberg *actually* "knew" that Stanford did not qualify for any exemptions under the 1940 Act when it advised otherwise is exclusively within the province of the jury. *See Town of Westport v. Monsanto Company,* 103 Fed. R. Evid. Serv. 52, at *3 (D. Mass. 2017) (distinguishing between "what was known industry-wide" and what specifically was in the mind of the defendant to exclude expert testimony that defendant sold PCB products "knowing that volatilization of PCBs would result in PCB contamination in indoor air…"); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices & Prods. Liab. Litig.*, 978 F. Supp. 2d 1053, 1087 (C.D. Cal. 2013) (explaining that "[Defendant's] knowledge (or lack thereof) is not a proper subject for expert testimony, and it must be established (if at all) by other evidence").

No Greenberg lawyer or any other fact witness testifies that Greenberg "knew" that Stanford did not qualify for any exemption under the 1940 Act. In this context, Lemke's assertion of what "Greenberg knew" is nothing more than a belief about a belief—i.e., his own belief that Greenberg believed its own legal advice was wrong. While Lemke purports to draw on his expertise on the 1940 Act, App. at 140 (91:7-15), he is in reality opining that Greenberg's actions were dishonest. An expert "opinion of dishonesty goes beyond the scope of expertise." *First United Financial Corp. v. U.S. Fidelity & Guar. Co.*, 96 F.3d 135, 136 (5th Cir. 1996) ("[The experts] looked at boxes of documents and the relationships between O'Dom and the notorious Herman Beebe and concluded that O'Dom was dishonest. Their conclusion will not substitute for evidence of dishonesty. By their knowledge of banking practices they may only assist and not replace the fact finder."); *see also Retractable Tech,* 2010 WL 11531436, at *4–*7 (excluding an expert's testimony as it related to a party's knowledge, intent, or belief.).

Thus, Greenberg seeks to exclude Lemke's opinions on Greenberg's state of mind, actual knowledge and subjective awareness.  In particular, and without limitation, Lemke's opinion that the 1998 memorandum was written for an illicit purpose, as set forth below, ought to be excluded:

> In 1998, Greenberg provided Stanford with written *'advice'* in the Memo that it was exempt from 1940 Act registration even though *Greenberg knew* or should have known that Stanford could not qualify for any exemptions from registration.

App. at 049, 060 (Greenberg "purports to provide 'advice'") (emphasis added).

Further, Lemke states that his review of the "curious" and "perplexing" circumstances surrounding the 1998 Memorandum "*suggests that it was not in fact intended to provide legal advice but rather was intended to support and further Stanford's ongoing violations of the 1940 Act.*"  App. at 050 (emphasis added).  Lemke's interpretation of what the Memorandum "suggests" as to Greenberg's intent is inadmissible.  *Halliburton*, 2009 WL 5216949 at *3 (excluding testimony from plaintiff's expert that the "*evidence strongly suggests* that KBR management wanted to maximize its performance under the contract in order to maximize its profits" because it includes improper "evaluations of the mental state of the defendants' employees") (emphasis added); *see also Holmes Grp., Inc. v. RPS Prods., Inc.*, 2010 WL 7867756, at *5 (D. Mass. June 25, 2010) (noting that "[a]n expert witness may not testify as to another person's intent ... [n]o level of experience or expertise will make an expert witness a mind-reader").

Lemke also attempts to explain *why* Greenberg would intentionally render erroneous advice.  He presumes to tell the jury that "*Stanford and Greenberg knew that Stanford [could not] continue its fraudulent scheme* if it had to register and operate under the 1940 Act regulatory regime," and therefore Greenberg intentionally committed legal malpractice.  App. at 073. Testimony as to Greenberg's motive is inadmissible.  *SEC v. Leslie*, No. C 07-3444, 2010 U.S. Dist. LEXIS 76826, at *26-27 (N.D. Cal. Jul. 29, 2010) (holding that the determination of whether

the defendants' conduct or intent was "fraudulent" or "misleading" is "within the sole province of

the jury."); *Johnson*, 525 F. Supp. 2d at 78-79 ("intent of [defendant] employees in recording

revenue and preparing documents clearly is a question for the jury, rather than for an expert"; the

expert's "opinions in this respect undertake to tell the jury what result to reach").  Lemke's opinion

in this regard contradicts the Receiver's own position, which concedes "there is no allegation by

the Receiver in this case that Greenberg knew Stanford was engaged in a Ponzi scheme."[4]

   Finally, by Lemke's own admission, his testimony on motive and intent is based on, and

necessarily incorporates, his assessment of the credibility of a key witness, former General Counsel

Yolanda Suarez, who testified that she was not "shopping" for a comfort memo when she asked

Greenberg for a written memorandum on the 1940 Act.  Lemke admits that he "disbelieves" her

testimony based on his assessment of the context and his review of her words on a printed

transcript.  App. at 130-131 (52:24–55:13).  "Credibility determinations, of course, fall within the

jury's province."  *Skidmore v. Precision Printing & Packaging, Inc.*, 188 F.3d 606, 618 (5th Cir.

1999) (citing *Ray v. Iuka Special Municipal Separate School District*, 51 F.3d 1246, 1251 (5th Cir.

1995); *Boeing Co. v. Shipman*, 411 F.2d 365, 377 (5th Cir. 1969) (en banc)); *see also U.S. v.

Wertis*, 505 F.2d 683, 685 (5th Cir. 1974) (expert testimony as to whether a fact witness would

"be reliable as a witness in distinguishing the truth from non-truth . . . is beyond the competence

of any witness . . . [and] amounts to no more than an inquiry whether the witness is to be believed

by the jury or not.")  "It is clearly established that expert testimony may not usurp the jury's

authority to make credibility determinations."  *Charalambopoulos v. Grammer*, No. 14-2424, 2017

---

[4] *See* App. at 170 (RFA No. 51).  The Receiver confirmed this admission in his deposition.
App. at 271 (161:14-22).  *See also*, Docket No. 63, Receiver's Opposition to Motion to Dismiss,
at 19 ("Plaintiffs have not pled that any of the Defendants knew that Stanford was running a Ponzi
scheme.").

WL 930819, at *17 (N.D. Tex. Mar. 8, 2017) (collecting cases); *see also In the Matter of M&M Wireline & Offshore Servs., LLC*, 2016 WL 4681196, at *8 (E.D. La. 2016) ("The Fifth Circuit and several lower courts have made clear that expert testimony may not usurp the factfinder's inherent authority to make credibility determinations.").

For these reasons, Lemke's testimony regarding the actual knowledge, motives, intent, state of mind or credibility of Greenberg or any witness are improper and prejudicial to Greenberg, and should be excluded.  *See* FED. R. EVID. 702, 403.

**B.      Spindler's improper opinions on intent, motive, state of mind, actual knowledge, subjective awareness and beliefs should be excluded.**

The Receiver proffers the expert testimony of James Spindler on various securities law issues.  Unlike Lemke, Spindler acknowledged in deposition that it is improper for an expert to opine on Greenberg's intent, motive, state of mind, actual knowledge, subjective awareness and beliefs.  App. at 320 (67:13–68:13).  Nonetheless, he does it repeatedly.

In July 1998, at the request of Suarez, Greenberg's Loumiet reviewed a draft private placement memorandum (PPM) intended for possible future use in offering Stanford CDs to US investors in the United States.  Spindler opines that Greenberg "was aware" that "the offering materials used to sell SIBL CDs were materially misleading." App. at 479.

The Receiver separately alleges that Greenberg's advice enabled Allen Stanford to establish and implement trust representative offices ("TROs") in the United States.  App. at  029-30.  These TROs allegedly served as U.S.-based sales and marketing vehicles for the SIBL CDs in violation of U.S. securities laws, as well as U.S. federal and state banking laws.  App. at  029-30.  The Receiver alleges that the primary purpose of these TROs was not to provide a local "convenience" to customers of foreign banks, which would have been lawful, but to generate new CD sales for SIBL as unauthorized broker-dealers or investment advisors.  App. at  029-30.

Through Spindler, the Receiver plans to offer expert testimony that Greenberg knew "full well" that the establishment of representative offices was merely a "pretext" for an "illegal operation," App. at 335 (126:23-127:11), and that Greenberg never advised Stanford to register the TROs as broker-dealers or investment advisors "likely because Greenberg knew that Stanford was 'resistant' or adverse to any registration." App. at 016 (¶ 2) (citing Spindler Declaration).

Spindler's most sweeping statements are clearly inadmissible. For example, his testimony that Greenberg's advice was a "pretext" for an illegal operation and "at best misleading" invades the province of the jury. *See Leslie*, 2010 U.S. Dist. LEXIS 76826, at *26-27 (holding that the determination of whether the defendants' conduct or intent was "fraudulent" or "misleading" is "within the sole province of the jury."). Equally improper is his broad pronouncement that "[i]n the course of Greenberg's representation, ***Greenberg became aware that Stanford was systematically violating U.S. law***, including violations of the Securities Act, the Securities Exchange Act, the Investment Companies Act, various state securities laws, the Foreign Corrupt Practices Act, and federal and state banking regulation." App. at 455 (emphasis added); *see Holmes Grp.*, 2010 WL 7867756, at *5 ("No level of experience or expertise will make an expert witness a mind-reader").

Spindler's remaining opinions fly in the face of the Fifth Circuit's admonition that "the trial judge ought to insist that a proffered expert bring to the jury more than the lawyers can offer in argument." *In re Air Crash Disaster,* 795 F.2d at 1233. In short, on the issue of Greenberg's *actual knowledge* and *subjective awareness*, Spindler is acting not as an expert offering an opinion; he is acting as a trial lawyer presenting a closing argument. *Marlin*, 248 Fed. Appx. at 541 ("[A]n expert's credentials do not place him in a better position than the jury to draw conclusions about a defendant's state of mind."). Spindler's "expertise" amounts to nothing more than an evaluation

10

and summary of the circumstantial evidence, followed by his own inference from the circumstantial evidence as to Greenberg's actual knowledge and subjective awareness. The fact that "actual knowledge" may be proven to a jury by circumstantial evidence does not mean that jurors need an expert to tell them what inference to draw from the circumstantial evidence. To the contrary, "if an expert in stating an opinion is going to do what is essentially nothing more than what a lay jury normally does (i.e., evaluate circumstantial evidence), he must have a reliable basis for stating an expert opinion." *Rolls-Royce Corp. v. Heros, Inc.*, 2010 WL 184313 at *10 (N.D. Tex. 2010). Here, as in *Rolls Royce,* Spindler's "reasoning or methodology amounts to nothing more than reliance on circumstantial evidence." *Id.* Thus, even if the proffered opinions were not clearly inadmissible testimony on Greenberg's actual knowledge and state of mind, exclusion would be warranted. *See* FED. R. EVID. 702, 403.

### C.   Koehler's improper opinions on intent, motive, state of mind, actual knowledge, subjective awareness and beliefs should be excluded.

The Receiver has identified Mike Koehler as an expert on the Foreign Corrupt Practices Act ("FCPA"). Koehler has opined that Greenberg attorneys

> (i) were aware of various underlying facts and circumstances which constituted prima facie violations of the FCPA's anti-bribery provisions by Stanford and/or officers, directors or agents of Stanford entities; or alternatively; (ii) should have been aware, if acting as reasonably prudent attorneys, that Stanford and/or officers, directors or agents of Stanford entities were engaged in prima facie violations of the FCPA's anti-bribery provisions as enforced by the U.S. government.

App. at 485 (¶ 12). Specifically, Koehler opines that Greenberg provided deficient FCPA advice in a 1998 memo, and that Greenberg aided and abetted Stanford in engaging in a number of specific transactions that constituted "prima facie" violations of the FCPA. App. at 486-488 (¶ 13).

With respect to the memo, Koehler opines that "prudent FCPA counsel should have conducted a much broader investigation of potential FCPA issues surrounding the relationship

between Stanford/Stanford entities and various high-ranking Antiguan officials." App. at 562 (¶ 11). Rather than advising Stanford that his loans, gifts, and political donations to the Antiguan government and government officials were illegal under the Foreign Corrupt Practices Act, Koehler opines that "Greenberg *provided cover* in a memorandum *erroneously stating* that such activities were legal so long as not involving an explicit quid pro quo." *See* App. at 017 (¶ 4) (emphasis added); *see also* App. at 588 (¶¶ 116-119). In other words, like Lemke and his opinion as to Greenberg's "sham" legal advice under the 1940 Act, Koehler contends that Greenberg *intentionally* committed legal malpractice to further Allen Stanford's Ponzi scheme. Koehler should not be permitted tell the jury what Greenberg's intentions were at any point. That is for the jury to decide. *See Estate of Davis v. City of N. Richland Hills*, 2007 WL 628090, at *3 (N.D. Tex. Feb. 28, 2007) (explaining expert testimony on the defendant's state of mind crossed the line from assisting the jury in understanding the evidence to evading the province of the jury).

Koehler also contends that Greenberg was aware of and assisted Stanford with a series of "prima facie" FCPA violations. Those transactions include acquiring the Bank of Antigua; leasing a government official's home; forgiving loans made to Antiguan government officials; and paying the medical expenses of the prime minister of Antigua when he suffered a minor heart attack. App. at 502-540 (¶¶ 47-179). In each instance, Koehler concludes Greenberg was aware these transactions constituted violations of the FCPA. *See, e.g.,* App. at 507 (¶ 65) ("In short, *Greenberg was: (i) aware* of the underlying facts and circumstances of the Bank of Antigua transaction *which constituted a prima facie violation of the FCPA's anti-bribery provisions by Stanford* and/or officers, directors or agents of Stanford entities . . ." ) (emphasis added); App. at 508 (¶ 70) ("Documents located in Greenberg files indicate that *Greenberg attorneys were aware* of the circumstances of the Hurst lease *which constituted a prima facie violation of the FCPA's anti-*

*bribery provisions by Stanford* and/or officers, directors or agents of Stanford entities.") (emphasis added).

Because an FCPA violation requires the primary violator to act with intent to influence the recipient of the bribe,[5] each of Koehler's opinions that Greenberg was aware of FCPA violations necessarily purports to tell the jury not just what *Greenberg* knew and intended at various times, but also what *Stanford* knew and intended. *See* App. at 627 (129:3-130:7). There is no question that Allen Stanford was found to have possessed a criminal *mens rea* with respect to crimes unrelated to the FCPA over a decade after the events described in Koehler's report. But it was, appropriately, *the jury* that decided Allen Stanford's state of mind during his criminal trial (not a paid expert). Moreover, the fact of Stanford's later criminal conviction highlights the special danger of permitting Koehler (or any expert) to testify about Stanford's or Greenberg's intentions or state of mind in this case. The jurors will be tasked with evaluating the conduct and knowledge of certain Greenberg lawyers under circumstances they were presented with decades ago, long before Stanford's fraud was revealed. For Koehler to tell the jury that Stanford possessed criminal intentions unrelated to those for which he was ultimately convicted at the time of these transactions, and that Greenberg had actual knowledge of his intentions, will be confusing for the jury and prejudicial to Greenberg. *See* FED. R. EVID. 403. It is for the jury to decide what Allen Stanford and/or any Greenberg lawyer knew and intended at any given point. *See Moody*, 248 Fed. Appx. at 541; *Estate of Davis,* 2007 WL 628090, at *3.

---

[5] Greenberg submits Koehler's opinions are founded on a mistaken interpretation of the "corrupt intent" requirement of an FCPA violation that is inconsistent with binding Fifth Circuit precedent. Thus, Greenberg has separately moved to exclude Koehler's opinions in their entirety. But even under Koehler's reading of the statute, his opinion that Greenberg "was aware" of "prima facie" violations is doubly problematic because it necessarily includes an opinion on both Greenberg's actual knowledge and Stanford's state of mind.

Because Koehler's opinions that Greenberg was aware of FCPA violations improperly usurp the role of the jury, are likely to confuse and mislead, and are prejudicial to Greenberg, they should be excluded.

> **D.    Herring's improper opinions on intent, motive, state of mind, actual knowledge, subjective awareness and beliefs should be excluded.**

Herring goes farther than any other of the Receiver's witnesses, contending that Greenberg had actual knowledge that Stanford was committing a fraud, and that every bit of legal advice Greenberg gave any Stanford entity "assisted" the fraud.  *See* App. at 709 (¶ 19).  Alternatively, he contends that Stanford should have known of the fraud, and was negligent by continuing to provide legal advice.  App. at 709 (¶ 20).

Herring admits that he has no expertise in the area of securities law, the Investment Act of 1940, federal and state banking laws, or the FCPA.  App. at 736-737 (7:19-20; 8:23–9:20; 10:15–11:3).  He purports to fill these admitted gaps in his substantive expertise by assuming the truth of the Receiver's allegations.  App. at 692 (¶ 8) ("Except as otherwise noted, I have generally assumed the accuracy of the facts as stated in Plaintiffs' Original Complaint.").

Next, Herring references and summarizes selected evidence, including testimony from and documents created by lawyers who are experts in their specialized fields.  Critically, all of the circumstantial evidence referenced in Herring's report relates to the substantive areas of law in which Herring admits to holding no expertise.  *See, e.g.,* App. at 714-724  (¶ 28) (discussing permitted activities of trust representative offices); (¶¶ 31-35) (discussing acquisition of trust company); (¶¶ 38-44) (discussing Antiguan banking regulation); (¶¶ 45-49) (discussing the Investment Company Act of 1940).

Herring then combines his assumptions about the truth of the Receiver's allegations with his reading of circumstantial evidence to form his opinions (and to tell the jurors what inferences

they should draw) as to Greenberg's intent, motive, state of mind, actual knowledge, subjective

awareness and beliefs:

> Despite those concerning facts and the many red flags that spanned over a decade of its representation, Greenberg lawyers have asserted that they were not aware or suspicious of the ongoing massive fraud that Allen Stanford orchestrated and that ultimately victimized tens of thousands of investors to the tune of billions of dollars in the second largest Ponzi scheme in American history.  In my opinion, Greenberg's assertions are neither credible nor defensible.  Greenberg's knowledge and assistance of Allen Stanford's fraud was extensive and shocking.

App. at 709 (¶ 19).

Not surprisingly, Herring's approach produces facially invalid conclusions.  His testimony

about Greenberg's knowledge, intent, and state of mind is no more helpful than reading the

complaint to the jury.  In some places, his testimony about knowledge is based *solely* on allegations

in the complaint.  *See, e.g.,* App. at 714 (¶ 28) ("Here, ***based on the Plaintiffs' allegations,***

***Greenberg (through Loumiet) knew*** that Allen Stanford wanted to establish illegal and unlicensed

representative U.S. marketing and sales offices to sell the SIBL CDs; those offices included GIIS

and Stanford Trust Company Ltd., d/b/a Stanford Fiduciary Investor Services (SFIS)").

Elsewhere, he describes Greenberg's conduct as "intentional or negligent." *See, e.g.*, App. 710 (¶

22) ("In some instances, Greenberg supervising partners apparently engaged in ***intentional*** or

negligent compartmentalization."); App. at 712 (¶ 25) ("The evidence that I reviewed also

repeatedly reflected Greenberg's ***intentional*** or negligent ***failure*** to properly or adequately

supervise the numerous Greenberg lawyers who worked on various Stanford Financial matters.").

In other places, he fails to disclose the extent to which his opinion is rooted in the assumed truth

of the Receiver's allegations, which will only serve to confuse the jury.  In his deposition, he went

so far as to say that certain Greenberg lawyers should have been indicted.  App. at  775-776

(164:14-166:19).  Not only does this testimony improperly opine on what Greenberg knew and

intended, it is not relevant, will mislead the jury, and is wildly prejudicial. *See* FED. R. EVID. 702, 403.

In addition to his improper testimony as to Greenberg's state of mind, motives, and intentions, he opines as to the state of mind of the entire government of Antigua, stating that "the evidence that I reviewed supports the conclusion that Antigua was willing to 'make whatever changes [Greenberg] wanted' with regards to draft legislation" proposed by the Antigua Planning Committee. App. at 721 (n.68 (bracketed insertion Herring's)). He opines as to the state of mind of the Stanford Entities as if they were somehow distinct from Allen Stanford, stating that "I understand that ***Stanford Financial did in fact rely upon*** and use the conclusions stated in the November 10, 1990 document and did not register its sale of SIBL CDs under the Investment Company Act, thereby allowing Stanford Financial to continue to avoid regulation under that Act until its collapse in 2009." App. at 724 (¶ 49) (emphasis added).

In his deposition, Herring agreed that it is the jury's province to ultimately determine which witness to believe. App. at 739 (20:17-20). However, where testimony or documents conflict with his own opinions as to Greenberg's intent, motive, state of mind, knowledge, awareness and beliefs, Herring proposes to tell the jury to reject that evidence as "neither credible nor defensible." App. at 709 (¶ 19). Specifically, Herring rejected testimony from the following witnesses as not credible: Greenberg attorneys Loumiet, O'Brien, and Schnapp (App. at 741 (27:12–28:23)); and former Stanford General Counsel Yolanda Suarez (App. at 743-744 (36:11–37:15)).

Finally, to the extent he proffers the opinion that Greenberg "should have known" about the fraud and its failure to know is negligence, App. at 709 (¶ 20), Herring is not qualified to offer that opinion. Unlike Lemke and Spindler, Herring admits that he lacks any specialized knowledge

16

of securities law, banking regulation, or the FCPA, or the practice of lawyers in those areas. App. at 736-737 (7:19-20; 8:23-9:20; 10:15-11:3). He therefore lacks the expertise necessary to opine on what a reasonable securities, banking, or FCPA lawyer should have known under the circumstances. *See Floyd v. Hefner*, 556 F.Supp.2d 617, 648-49 (S.D. Tex. 2008) (finding professor of corporate law and finance not qualified to offer expert opinions regarding an area of law outside his specialty).

For all of these reasons, Herring's testimony on the actual knowledge, intentions, or state of mind of any Greenberg lawyer, the island of Antigua, or any other witness or third-party should be excluded, as well as what any Greenberg lawyer should have known as it pertains to banking, securities, or the FCPA. His opinions should also be excluded to the extent they invade the province of the jury by weighing the credibility of certain witnesses.

## II.     THE RECEIVER IMPERMISSIBLY USES EXPERTS TO SUMMARIZE EVIDENCE.

At least two of the Receiver's experts—Karyl Van Tassel and Charles Herring—seek to synthesize the Receiver's version of the case by reciting a litany of "facts" in the form of an expert opinion. The Van Tassel Report, in fact, consists largely of her compilation of alleged facts; of the 72 pages in the report, 41 of them (well over 50% of the entire report) lay out her side of the story, with references to dozens of hand-picked documents. App. at 839-880. The Herring Report, too, contains several pages of "facts" (at pp. 17-21) that he seeks to sponsor in support of his testimony. App. at 705-709. This proposed testimony is inadmissible.

An expert may, of course, rely upon facts in formulating his or her opinions, but that is not what Van Tassel or Herring do. Van Tassel is a forensic accountant offering her opinion on damages, while Herring, an ethics expert, offers opinions on Greenberg's compliance or not with

applicable ethical standards.   Both go far beyond their areas of expertise in gathering and presenting "facts" for their reports.

Rather than focusing on accounting for alleged harm to the Stanford entities, Van Tassel wants to be a chronicler of Greenberg's conduct as lawyers.   She is not a lawyer and has expressly disclaimed any intent to offer opinions on legal matters.   App. at 899-900 (7:17-9:1).   Yet, she veers away from providing opinions within her area of expertise and displaces the jury by combining the evidence into a one-sided picture of the Receiver's case.   App. at 839-880.   Herring, for his part, can also offer no expertise to help the jury understand the documents or witness testimony.   He simply makes a series of inferences about ostensible "red flags" from 1988-1999 that, in his view, put Greenberg on notice of Allen Stanford's fraudulent conduct.   App. at 704-709.   Courts have consistently excluded this type of expert testimony.

In *U.S. v. Mejia*, for example, the prosecution in a gang-related murder trial called an investigating officer to testify about gang culture and hierarchy.   545 F.3d 179, 186 (2d Cir. 2008). But the officer went too far.   He testified about the factual basis for the Government's entire case, which prompted the court to comment:

> [I]t is a little too convenient that the Government has found an individual who is expert on precisely the facts that the Government must prove to secure a guilty verdict—even more so when that expert happens to be one of the Government's own investigators….[W]hen those officer experts come to court and simply disgorge their factual knowledge to the jury, the experts are no longer aiding the jury in its factfinding; they are instructing the jury on the existence of facts needed to satisfy the elements of the charged offense.

*Id.* at 191.   The conviction was reversed for the error in admitting the expert's testimony.   *Id.* at 196, 202.

Likewise, in *Highland Capital Management, L.P. v. Schneider*, the plaintiff hired a former Assistant United States Attorney to opine on the defendant's alleged violations of securities laws.

379 F.Supp.2d 461, 465-66 (S.D.N.Y. 2005).  The court concluded that the AUSA was simply rehashing otherwise admissible evidence about which he had no personal knowledge and outside his area of expertise.  *Id*. at 469-70.  Because the "facts" section of the expert's report contained a narrative of the case and addressed lay matters which a jury was capable of understanding without the expert's help, it was ruled inadmissible.  *Id*. ("While an expert must of course rely on facts or data in formulating an expert opinion, *see* Fed. R. Evid. 703, an expert cannot be presented to the jury solely for the purpose of constructing a factual narrative based upon record evidence.").[6]

One final example presents an attempt to use a damages expert to present a summary of the entire case as "background," much as Van Tassel does in her report.  In *Robroy Indus.-Texas, LLC v. Thomas & Betts Corp*., the trial court excluded the expert's factual summary.  2017 WL 1319553 at *3-4 (E.D. Tex. Apr. 10, 2017).  She was not serving as an expert, but instead merely "passing along information provided by others and laying out the defendant's theory of the case."  *Id.* at 3.  The court quoted this Court for the proposition that it is impermissible for an expert to be called just to present a party's position in the guise of expert opinions.  *Id.* (quoting *Orthoflex, Inc. v. Thermotek, Inc*., 986 F.Supp.2d 776, 798 (N.D. Tex. 2013)).

The prejudicial impact of the Receiver's attempt to use his experts as a substitute for actual evidence is exacerbated in this case because much of what Van Tassel and Herring rely on as "facts" would otherwise be inadmissible.  Although experts may rely on hearsay to form their opinions, *see* FED. R. EVID. 703, their testimony may not serve as a vehicle by which to introduce otherwise inadmissible evidence.  *Bianco v. Globus Med., Inc*., 30 F.Supp.3d 565, 570 (E.D. Tex.

---

[6] *See also, SAS Institute, Inc. v. World Programming, Ltd*., 125 F.Supp.3d 579, 587 (E.D.N.C. 2015) ("Rule 702 does not grant an expert an unlimited license to testify in a manner that simply summarizes otherwise admissible evidence without some connection to the expert's proffered expertise.").

2014).  Here, Van Tassel and Herring both go beyond relying on testimony and documents from the parties.  They want to smuggle into the case items such as stray newspaper articles, third-party letters, testimony from other cases, and other evidence that could not otherwise be presented to the jury.  *See, e.g.*, App. at 706-707; App. at 853, 855, 875, 879-880 (¶¶ 55 and n.62-63, 59, 101 and n.148, 111).

The main reason to exclude an expert's general summary of the facts is that it is unnecessary.  It is the jury's role to hear the testimony and the admissible documentary evidence at trial to decide what happened.  The jury requires no help in evaluating the testimony of witnesses or interpreting documents.  "An expert may not vouch for one side's fact scenario and purport to tell the jury what actually occurred.  The jury is entitled to hear testimony from individuals who have first-hand knowledge of the events that occurred."  *S.E.C. v. Daifotis*, 2012 WL 2051193 at *4 (N.D. Cal. June 7, 2012).  Because Van Tassel and Herring both cross the line, their fact summaries must be excluded.

## III.   THE RECEIVER'S EXPERTS OFFER ULTIMATE LEGAL CONCLUSIONS WHICH ARE INADMISSIBLE.

The Receiver's experts want to tell the jury what results to reach:

- Herring states Greenberg breached fiduciary duties and ethical obligations, and committed professional negligence.  App. at 711-715 (¶¶ 24, 27, 29), 719 (¶ 37).

- Koehler says "Greenberg attorneys had knowledge of, participated in and/or aided and abetted violations of the FCPA by Stanford and/or officers, directors or agents of Stanford entities, or at minimum were negligent."  App. at 488 (¶ 13.G), 507 (¶ 65).

- Lemke offers: "Greenberg facilitated Stanford's violations of the 1940 Act, which aided and abetted Stanford in selling its certificates of deposit and led to the $5.9 billion SEC judgment." App. at 050 (¶ E).

- Spindler testifies in deposition that Yolanda Suarez breached her fiduciary duty to the Stanford entities, App. at 353 (200:3-21), and, in answer to the Receiver's counsel's questioning, that Greenberg's advice regarding the marketing of the CDs through the Miami office was negligent. App. at 370 (268:6-13).

Each of these opinions goes too far. "[A]n expert witness is not permitted to offer conclusions of law." *United States v. Oti*, 872 F.3d 678, 691 (5th Cir. 2017), cert. den. sub. nom. *Iwuoha v. United States*, 138 S.Ct. 1988 (2018); *Snap-Drape, Inc. v. Comm'r of Internal Revenue*, 98 F.3d 194, 198 (5th Cir. 1996) ("We have repeatedly held that this rule does not allow an expert to render conclusions of law.").

While Federal Rule of Evidence 704 states "an opinion is not objectionable just because it embraces an ultimate issue," courts have remained vigilant about ensuring that experts do not usurp the trial judge's role in explaining the law to the jury. FED. R. EVID. 704. For that reason, the Fifth Circuit has held opinions must be excluded when couched in terms of the legal issue to be decided. In *Owen v. Kerr-McGee Corp.*, for example, an objection was sustained to the question: "after hearing all of the evidence … do you have any opinion as to the cause of the accident of July 8th, 1978?" 698 F.2d 236, 239-40 (5th Cir. 1983). The Fifth Circuit upheld the ruling, explaining that the expert would be offering his opinion as to the legal, not a factual, cause of the accident. *Id.*

The Receiver's experts take this one step further. They intend to offer opinions based on the legal causes of action asserted by the Receiver, namely negligence and aiding and abetting. Instead of limiting their opinions to the ultimate fact issues, which might be helpful to a jury, they

provide unhelpful testimony about legal conclusions.  *See U.S. v. Perkins*, 470 F.3d 150, 157-58 (4th Cir. 2006) ("[T]he best way to determine whether expert testimony is unhelpful because it merely states legal conclusions, is to determine whether the terms used by the witness have a separate, distinct and specialized meaning in the law….") (quoting *United States v. Barile*, 286 F.3d 749, 759-60 (4th Cir. 2002)).

To illustrate this point, consider the recent decision in *SLSJ, LLC v. Kleban*, 277 F.Supp.3d 258 (D. Conn. 2017).  There, the trial court dealt with a motion to exclude a corporate governance expert in a breach of fiduciary duty case.  The court explained that the expert could explain what a CEO does and what a fiduciary duty is, but the expert could not opine on whether the specific CEO's conduct breached his fiduciary duty.  *Id.* at 269.  To do so, the expert would be stating ultimate legal conclusions which was not permitted under the rules.  *Id.* at 269-70.

Similarly, in this case, the Receiver's experts may set out their views on the standard of care for lawyers dealing with specific substantive issues like the Investment Company Act (Lemke), the FCPA (Koehler), or securities laws (Spindler).  They may not, however, make the leap of telling the jury that, in their view, Greenberg's conduct constituted professional negligence.

Opining about the aiding and abetting claim creates even more problems.  What special knowledge or expertise is required to determine if a person or entity "assisted" another?  An expert's testimony must be helpful to the jury by offering conclusions beyond the ken of ordinary laymen.  *Peters v. Five Star Marine Serv.*, 898 F.2d 448, 450 (5th Cir. 1990) (upholding trial court's exclusion of expert testimony because "the jury could adeptly assess [the] situation using only their common experience and knowledge"); *U.S. v. Thanh Quoc Hoang*, 891 F.Supp.2d 1355, 1358-59 (M.D. Ga. 2012).  None of the Receiver's experts are better equipped than the jury to determine if Greenberg assisted the Stanford entities in their fraudulent activities.

The *Thanh Quoc Hoang* case involved a criminal charge of bank fraud. 891 F.Supp.2d at 1357. The defendant opened credit card accounts, used the credit cards to buy goods, then wrote bad checks to "pay" the credit card companies. *Id.* at 1359. The defendant designated a forensic accountant to offer opinions about his financial records, but the trial court viewed the expert skeptically. "What is there about this scheme that a jury can't understand?" said the court. *Id.* "The jury will know what a bank is, what a checking account is, what a credit card is, what goods and services are, and what it means to write and mail a worthless check to pay an honest debt." *Id.* The court excluded most of the expert's opinions as unhelpful. *Id.* at 1359-60.

The Receiver's experts have not explained what particular experience they may have to assist the jury in understanding the evidence or why expert testimony is necessary to prove whether Greenberg knowingly participated in Stanford's fraud. Herring's legal conclusions are especially problematic because they are based on what he describes as various violations of the ethical rules governing lawyers. In his report, Herring cites several rules from the Florida and Model Rules of Professional Conduct, opines that Greenberg failed to meet them, and then concludes that by so doing, Greenberg committed malpractice and aided in Stanford's fraud. *See* App. at 711-715 (¶¶ 24, 27, 29), 719 (¶ 37). For example, Herring cites the Florida and Model rules that impose a duty on a lawyer who knows that an organization's employee is violating a law in a manner that might be imputed to the organization to "proceed as is reasonably necessary in the best interest of the organization." App. at 714 (¶ 27). Then Herring opines that Greenberg had the requisite knowledge and did not proceed in the best interest of the organization, and concludes that "[b]y that conduct, Greenberg breached fiduciary duties of loyalty and full disclosure, committed professional negligence, and violated [the Florida and Model Rules]." App. at 715 (¶ 28).

23

This type of reasoning is almost universally rejected by courts: "With few exceptions, the courts agree that the violation of an ethics rule alone does not create a cause of action, constitute legal malpractice *per se* or necessarily create a duty."  2 Legal Malpractice § 19:7 at 1208; s*ee also, Schatz v. Rosenberg*, 943 F.2d 485, 492 (4th Cir. 1991); *In re Enron Corp. Securities, Derivative & ERISA Litigation*, 235 F.Supp.2d 549, 598 (S.D. Tex. 2002) ("Ethical rules of conduct such as disciplinary rules do not create corresponding legal duties nor constitute standards for imposition of civil liability on lawyers.").

The Texas Supreme Court has squarely adopted this view, *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 158 n.2 (Tex. 2004), and expert testimony purporting to equate a violation of the ethical rules with civil liability is routinely excluded.  *See, e.g, Fleming v. Kinney ex rel. Shelton*, 395 S.W.3d 917, 931 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) ("Hardwick's testimony crossed the border of inadmissibility when she undertook to 1) explain to the jury the application of specific Texas Disciplinary Rules of Professional Conduct, along with the asserted 'interaction' between these rules and fiduciary duty standards; 2) opine that Fleming violated at least half a dozen specific disciplinary rules, identified by number; and then 3) tell the jury that violating the enumerated rules 'necessarily' established a breach of the fiduciary duty Fleming owed to his clients."); *Greenberg Traurig of N.Y., P.C. v. Moody,* 161 S.W.3d 56, 93-94 (Tex. App.—Houston [14th Dist.] 2004, no pet.)  ("[I]t was error for the trial court to permit former Justice Wallace to testify that the standard of care for attorneys is based on the Texas disciplinary rules when no such liability can be based on any violation of those rules.").

Thus, Herring cannot offer legal conclusions that a breach of an ethical rule amounts to negligence, a breach of fiduciary duty, or aiding and abetting a breach of fiduciary duty, and none

of the Receiver's experts should be permitted to testify about the ultimate legal conclusions on the Receiver's causes of action.

## IV.   BECAUSE HERRING'S OPINIONS CONSIST ONLY OF THE THREE TYPES OF IMPROPER EXPERT TESTIMONY DISCUSSED ABOVE, THEY SHOULD BE EXCLUDED ALTOGETHER.

Herring is unique among the Receiver's experts in that he has *no* special expertise and offers *no* opinion or explanation that could properly assist the jury in evaluating the facts of this case.  Herring, in his report and deposition, does no more than 1) summarize the Receiver's version of the facts, 2) opine as to Greenberg's actual knowledge, intent, and motivations, 3) recite the ethical rules governing lawyers, and 4) conclude that because allegedly Greenberg violated those rules, it committed negligence and assisted Stanford officers in breaching their fiduciary duties to the entities.  Because all of his opinions amount to improper expert testimony, he should not be permitted to testify at all.

Dated:  July 22, 2019

Respectfully submitted,

**FOGLER, BRAR, FORD, O'NEIL & GRAY LLP**

By:_  /s/ Murray Fogler_____
        Murray Fogler
mfogler@fbfog.com
Michelle E. Gray
mgray@fbfog.com
Robin O'Neil
roneil@fbfog.com
909 Fannin, Suite 1640
Houston, Texas  77010
Telephone: (713) 481-1010
Facsimile: (713) 574-3224

**BOIES SCHILLER FLEXNER LLP**

Stuart H. Singer

ssinger@bsfllp.com
Sashi C. Bach
sbach@bsfllp.com
Pascual A. Oliu
poliu@bsfllp.com
401 East Las Olas Boulevard, Suite 1200
Fort Lauderdale, Florida  33301
Telephone: (954) 356-0011
Facsimile: (954) 356-0022

**COWLES & THOMPSON, P.C.**
Jim E. Cowles
jcowles@cowlesthompson.com
Sim Israeloff
sisraeloff@cowlesthompson.com
Charles A. Green
cgreen@cowlesthompson.com
901 Main Street, Suite 3900
Dallas, Texas 75202
Telephone: (214) 672-2000
Facsimile: (214) 672-2347

*Counsel for Defendants Greenberg Traurig, LLP, et al.*

26

## <u>CERTIFICATE OF SERVICE</u>

       I certify that this pleading was served on all counsel of record in accordance with the rules of procedure.

By: <u>*/s/ Murray Fogler*            </u>
          Murray Fogler