UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RALPH S. JANVEY, in his capacity as | § | |
| Court-appointed receiver for the Stanford | § | |
| Receivership Estate; SANDRA | § | |
| DORRELL; SAMUEL TROICE; and | § | |
| MICHOACAN TRUST; individually and | § | |
| on behalf of a class of all others similarly | § | |
| situated, | § | CIVIL ACTION NO. 3:12-cv-04641-N |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| GREENBERG TRAURIG, LLP; | § | |
| GREENBERG TRAURIG, PA; and | § | |
| YOLANDA SUAREZ, | § | |
| Defendants. | § | |

---

### THE RECEIVER'S MOTION TO EXCLUDE TESTIMONY
### OF MARTIN WEINSTEIN AND BRIEF IN SUPPORT

---

**NELIGAN LLP**

By: */s/ Douglas J. Buncher*
Douglas J. Buncher
dbuncher@neliganlaw.com
Republic Center
325 N. St. Paul, Suite 3600
Dallas, Texas 75201
Telephone:   (214) 840-5320
Facsimile:   (214) 840-5301

**CASTILLO SNYDER, P.C.**

By: */s/ Edward C. Snyder*
Edward C. Snyder
esnyder@casnlaw.com
Jesse R. Castillo
jcastillo@casnlaw.com
700 N. St. Mary's, Suite 1560
San Antonio, Texas 78205
Telephone:   (210) 630-4200
Facsimile:   (210) 630-4210

**CLARK HILL STRASBURGER**

By: */s/ Judith R. Blakeway*
Judith R. Blakeway
judith.blakeway@clark hillstrasburger.com
2301 Broadway
San Antonio, Texas 78215
Telephone:   (210) 250-6004
Facsimile:   (210) 258-2706

**CLARK HILL STRASBURGER**

By: */s/ David N. Kitner*
David N. Kitner
david.kitner@clarkhillstrasburger
901 Main Street, Suite 6000
Dallas, Texas 75202
Telephone:   (214) 651-4300
Facsimile:   (214) 651-4330

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF CONTENTS.................................................................................................ii

TABLE OF AUTHORITIES .........................................................................................iii

I.      INTRODUCTION .................................................................................................1

II.     MR. WEINSTEIN'S PROFFERED TESTIMONY ..............................................2

    **A.**     Testimony that there is sufficient evidence of corrupt intent. ...................2

    **B.**     Testimony that Greenberg's advice did not aid and abet an FCPA anti-bribery violation.......................................................................................5

    **C.**     Testimony that payments made to promote general goodwill are not made "corruptly." ...............................................................................5

III.    ARGUMENT .........................................................................................................6

    **A.**     Mr. Weinstein's testimony that there is insufficient circumstantial evidence of corrupt intent is not helpful. ...............................................6

    **B.**     Mr. Weinstein's testimony that Greenberg did not aid and abet FCPA violations is unreliable. .............................................................7

    **C.**     Mr. Weinstein's testimony that payments made to promote general goodwill are not made "corruptly" and that there must be an explicit *quid pro quo* is an unprecedented extension of federal illicit gratuity law......................8

IV.     CONCLUSION....................................................................................................10

4811-3067-6636.1/D0624/B08864/071019

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*EEOC v. U-Haul Co.*,
   No. A-04-3788, 2005 U.S. Dist. LEXIS 29979 (S.D. Tex. 2005) ............................................6

*Floyd v. Hefner*,
   556 F.Supp.2d 617 (S.D. Tex. 2008) ......................................................................................8

*Holmes Grp., Inc. v. RPS Products, Inc.*,
   No. 03-40146-FDS, 2010 U.S. Dist. LEXIS 102727, 2010 WL 7867756
   (D. Mass. June 25, 2010) ......................................................................................................7

*Kinzbach Tool Co. v. Corbett-Wallace Corp.*,
   160 S.W.2d 509 (Tex. 1942) ..................................................................................................8

*Klaczak v. Consol. Med. Transp. Inc.*,
   No. 96 C 6502, 2005 U.S. Dist. LEXIS 13607 (N.D. Ill. 2005) ................................................7

*Lofton v. McNeil Consumer & Specialty Pharms.*,
   No. 3:05-cv-1531-L, 2008 U.S. Dist. LEXIS 94391 (N.D. Tex. 2008) ....................................6

*Meadows v. Hartford Life Ins. Co.*,
   492 F.3d 634 (5th Cir. 2007) ..................................................................................................8

*Nye & Nissen v. United States*,
   336 U.S. 613 (1949) ..............................................................................................................5

*Retractable Technologies, Inc. v. Abbot Lab, Inc.*,
   No. 5:05-cv-157, 2010 WL 1153 (E.D. Tex. 2010) ................................................................7

*Rosemond v. United States*,
   572 U.S. 65 (2014) ................................................................................................................5

*SEC v. Apuzzo*,
   689 F.3d 204 (2d Cir. 2012) ..................................................................................................5

*SEC v. DiBella*,
   587 F.3d 553 (2d Cir. 2009) ..................................................................................................5

*United States ex rel. Dyer v. Raytheon Corp.*,
   No. 08-10340-DPW, 2013 WL 5348571, AT *13 (D. Mass. Sept. 23, 2013) .........................7

*United States v. Abbey*,
   560 F.3d 513 (6th Cir. 2009) ................................................................................................9

4811-3067-6636.1/D0624/B08864/071019

*United States v. Ganim*,
510 F.3d 134 (2nd Cir. 2007), *cert. denied*, 552 U.S. 1313 (2008)..........................................9

*United States v. Kay*,
359 F.3d 738 (5th Cir. 2004), 2002 WL 32507953 ..............................................................6, 5

*United States v. Kemp*,
500 F.3d 257(3rd Cir. 2007), *cert. denied*, 552 U.S. 1223 (2008)...........................................8

*United States v. Kincaid-Chauncey*,
556 F.3d 923 (9th Cir. 2009) ...................................................................................................9

*United States v. Peoni*,
100 F.2d 401 (2d Cir. 1938)......................................................................................................5

*United States v. Staten*,
581 F.2d 878 (D.C. Cir. 1978) ..................................................................................................5

*United States v. Sun-Diamond Growers*,
526 U.S. 398 (1999).............................................................................................................8, 6

*United States v. Whitfield*,
590 F.3d 325 (5th Cir. 2009) *cert. denied sub. nom. Minor v. United States*, 562 U.S.
833 (2010) ................................................................................................................................8

## RULES

Fed. R. Evid. 702.........................................................................................................................6

The Receiver asks the Court to exclude the testimony of Martin Weinstein, Greenberg's Foreign Corrupt Practices Act expert.

## I.     INTRODUCTION

Plaintiff Ralph S. Janvey as Receiver of the Stanford Receivership Estate sued Greenberg for participating in breaches of fiduciary duty by Stanford officers and directors—Allen Stanford and Yolanda Suarez—and for malpractice.  The Receiver alleged that Robert Allen Stanford and Yolanda Suarez caused Stanford International Bank, Ltd. ("SIBL") to violate the Investment Company Act of 1940 (the "ICA"); Stanford Group Company ("SGC") to violate the Securities Act of 1933, and the Investment Advisors' Act, and SIBL and SGC to violate the Securities Exchange Act of 1934 and SEC Rule 10b-5.  Allen Stanford and Yolanda Suarez caused the Stanford entities to violate the Foreign Corrupt Practices Act (FCPA), make loans illegal under Antiguan law, and violate the Investment Company Act, in breach of their fiduciary duties to the Stanford entities, including SIBL and SGC.  The Receiver alleged that Greenberg knowingly participated in each of these breaches of fiduciary duty and committed malpractice.

Defendant Greenberg identified Martin Weinstein to testify that:

- Greenberg, through its representation of Stanford and the Stanford entities, did not prolong Stanford's Ponzi scheme.

- Greenberg provided competent FCPA advice in a January 23, 1998 memo from Greenberg attorney Gary Weinfeld.

- The transactions discussed by Koehler in his report do not constitute FCPA anti-bribery violations, and thus Greenberg could not and should not have been aware of any "prima facie" FCPA violations.

- Greenberg's FCPA advice was competent, and the firm conducted a competent FCPA investigation.

Weinstein Rept. at ¶¶ 9-13.

The Court should exclude Mr. Weinstein's testimony for three reasons.

1

*First*, it is not helpful to the jury.  The jury can evaluate as well as Mr. Weinstein can the circumstantial evidence bearing on why Stanford made political contributions, gave gifts, and forgave loans to Antiguan government officials to determine whether he acted with corrupt intent.  Thus, his testimony that there is insufficient circumstantial evidence of corrupt intent does not assist and invades the province of the jury.

*Second*, his testimony with regard to aiding and abetting is unreliable because it is improperly based on laws that are irrelevant to this case.  He bases his conclusion that Greenberg did not aid and abet FCPA violations on aiding and abetting statutes for criminal and securities violations.  But because the Receiver is suing Greenberg under Texas common law for knowing participation in Allen Stanford and Yolanda Suarez's breaches of their fiduciary duties as officers and directors of SIB and SGC, those statutes are irrelevant.

*Third*, Mr. Weinstein's testimony that payments to promote general goodwill are not made "corruptly" is an unprecedented extension of the law under the federal gratuity statute to the FCPA.

## II.    MR. WEINSTEIN'S PROFFERED TESTIMONY

**A.    Testimony that there is insufficient evidence of corrupt intent.**

As evidenced from the following excerpts from his report and deposition testimony, Mr. Weinstein intends to testify that payments, gifts and loans that were forgiven to Antiguan government officials were made without corrupt intent:

80.   Based on the evidence in the record, the record does not support concluding that these transactions violated the anti-bribery provisions of the FCPA.  Specifically, the evidence is insufficient to conclude for any of the transactions identified that the payments or things of value were offered or given with a corrupt intent.

96.   Thus, the record does not reflect any corrupt intent in making the purchase, and thus does not demonstrate the purchase violated the anti-bribery provisions of the FCPA.

2

108.   Thus, there is nothing in the record to indicate that this lease was intended to be part of a corrupt *quid pro quo* with Hurst.  In other words, there is nothing in the record that demonstrates what Stanford sought to gain and what government decision he sought to influence.

144.   Thus, the case involved a clear intended *quid pro quo*.  The evidence in this case does not establish the intent of a corrupt *quid pro quo*.

157.   Thus, the evidence simply does not support inferring any intent to pay for the medical costs in order to take over the financing, design, and development of the hospital project.   Rather, the evidence suggests that DSI's proposal was abandoned because it was of poor quality.

220.   However, from O'Brien and Greenberg's perspective, the government's decision was not one of corruption but based on a desire to have qualified, experienced individuals on the board.

226.   Based on this factual record, there is no evidence of a corrupt *quid pro quo* related to the creation of the OFSPC or the IFSA.   The individuals appointed were experienced professionals.   The Greenberg individuals involved worked diligently to improve the financial regulatory structure and achieved real results.   Such actions are not indicative of an attempt to corrupt government officials, and hence there is no evidence of an FCPA anti-bribery violation.

267.   The evidence in the record does not demonstrate that the transactions Greenberg assisted Stanford or the Stanford entities with violated the FCPA, nor does the evidence in the record show that Greenberg had the intent to violate or aid and abet a violation of the FCPA.  There is nothing improper with a lawyer assisting a client in engaging in lawful transactions with government entities or officials.  Thus, Greenberg's lawful and competent FCPA advice and investigations did not prolong the Ponzi schemes.

Weinstein Rept. at ¶ 80, 96, 108, 144, 157, 220, 226, and 267.

Q.   And the reason that you say that there is no violation of the Foreign Corrupt Practices Act is because you have not seen evidence of corrupt intent?

A.   There is no corrupt – there is no – there is insufficient evidence of corrupt intent.

Q.   Insufficient evidence or no evidence?

A.   Well, as I said before, I think we've said this, is that Antigua, in and of itself, is a country that – that's a factor. So I don't want to say – in almost – I don't want to say that there's –that there's –Antigua, in itself, is a factor.

4811-3067-6636.1/D0624/B08864/071019

What I'm looking at is whether or not there's any indication of anything being given to the political party in exchange for some – and there was no evidence of that.

Q.     There was no evidence of anything given to a political party?

A.     In exchange for something, some specific action, on the other side.  There was no – there might have been the quid.  There was no pro quo.  Right?  So, clearly –

Q.     The pro quo is what Allen Stanford would receive; right?

A.     What he – what he intended to receive, not what he did receive.  It's important to note, the question is when he gave the contribution to the political party, did he do so with the intention of having a government official misuse their official position to give him something that would help him obtain or retain business or gain an improper advantage over a competitor.

Q.     And you saw no evidence of that in any of the information that you reviewed?

A.     I did not see any indication that he gave the contributions to the political party in exchange for a misuse of a government official – position.  Sorry.

Weinstein Dep. 211:10-212:23.

Q.     Is it still your opinion that there was no corrupt intent on Robert Allen Stanford's part?

MS. BACH:  Objection.  Are you going to specify a time frame there?

Q.     At any time?

A.     So – so, I can't answer the "any time."  I can say with regards to the transactions that I looked at, there was no corrupt intent in connection with those transactions.

Weinstein Dep. 307:22-308:5.

B.      **Testimony that Greenberg's advice did not aid and abet an FCPA anti-bribery
        violation.**

Mr. Weinstein intends to offer testimony that Greenberg did not aid or abet criminal or

securities violations:

239.    Both civil and criminal aiding and abetting have similar requirements.

240.    As the FCPA is a federal statute, the relevant aiding and abetting criminal statute
        is 8 U.S.C. § 2.  In order to be guilty of aiding and abetting a federal crime, such
        as an FCPA anti-bribery violation, "a defendant must not just 'in some sort
        associate himself with the venture,' but also 'participate in it as in something that
        he wishes to bring about' and 'seek by his action to make it succeed.'"  *Rosemond
        v. United States*, 572 U.S. 65, 76 (2014) (quoting *Nye & Nissen v. United States*,
        336 U.S. 613, 619 (1949)).

241.    "In order for a defendant to be liable as an aider and abettor in a civil enforcement
        action, the SEC must prove: '(1) the existence of a securities law violation by the
        primary (as opposed to the aiding and abetting) party; (2) knowledge of this
        violation on the part of the aider and abettor; and (3) substantial assistance by the
        aider and abettor in the achievement of the primary violation.'"  *SEC v. Apuzzo*,
        689 F.3d 204, 206 (2d Cir. 2012) (quoting *SEC v. DiBella*, 587 F.3d 553, 566 (2d
        Cir. 2009)).

242.    In order to prove the aider and abettor provided "substantial assistance," the SEC
        must prove "that the defendant 'in some sort associate[d] himself with the
        venture, that he participate[d] in it as in something that he wishe[d] to bring about,
        [and] that he [sought] by his action to make it succeed.'"  *Id.* (quoting *United
        States v. Peoni*, 100 F.2d 401, 402 (2d Cir. 1938)).

243.    Neither civil nor criminal aiding and abetting apply here.  First, as described
        above, there were no FCPA anti-bribery violations to aid and abet.  *United States
        v. Staten*, 581 F.2d 878, 887 (D.C. Cir. 1978) ("To be sure, there must be a guilty
        principal before there can be an aider and abettor. . . .").  Moreover, at no point
        does the evidence in the record establish that Greenberg had the *mens rea*
        required for proving someone aided and abetted an FCPA violation.

Weinstein Rept. at ¶¶ 239-43.

C.      **Testimony that payments made to promote general goodwill are not made
        "corruptly."**

265.    As explained above, a transaction only violates the anti-bribery provisions of the
        FCPA if it is motivated by a corrupt intent.  Corrupt intent is present only if a *quid
        pro quo* motivated  the transfer or promise to transfer a thing of value to the
        foreign official.  *Kay*, 359 F.3d at 743 (an FCPA bribery violation requires a
        "*quid pro quo*").

5

266.  Transfers or payments made to promote general goodwill do not meet the definition of "corruptly" for the domestic bribery statute, and therefore, given Congressional intent, they would not meet the definition of "corruptly" as used in the FCPA.  *See Sun-Diamond Growers*, 526 U.S. at 404-05.  The DOJ has itself acknowledged that non-specific desires to "influenc[e] legislation and regulations" are not violations of the FCPA.  Brief for Plaintiff-Appellant, *United States v. Kay*, 359 F.3d 738 (5th Cir. 2004), (No. 02-20588), 2002 WL 32507953, at *14-15.

Weinstein Rept. at ¶¶ 265-66.

## III.    ARGUMENT

### A.    Mr. Weinstein's testimony that there is insufficient circumstantial evidence of corrupt intent is not helpful.

Mr. Weinstein's testimony about Allen Stanford's intent, state of mind or motives is not necessary or helpful to the jury.  FED. R. EVID. 702 (expert testimony admissible only if it "will assist the trier of fact to understand the evidence or to determine a fact in issue").  Testimony on topics that the jury is fully capable of determining for itself is not helpful to clearly understanding the witness's testimony and therefore is inadmissible under Rule 702.  "Expert testimony assists the trier-of-fact when the expert's knowledge and experience on a relevant issue are beyond that of the average juror and the testimony helps the trier-of-fact understand the evidence or determine a fact issue.  When the jury is equally competent to form an opinion about the ultimate fact issues or the expert's testimony is within the common knowledge of the jury, the trial court should exclude the expert's testimony."  *EEOC v. U-Haul Co.*, No. A-04-3788, 2005 U.S. Dist. LEXIS 29979 *2 (S.D. Tex. 2005); *Lofton v. McNeil Consumer & Specialty Pharms.*, No. 3:05-cv-1531-L, 2008 U.S. Dist. LEXIS 94391 *18 (N.D. Tex. 2008) (excluding testimony about defendants' motive, state of mind, and asserted knowledge).

Mr. Weinstein's "corrupt intent" testimony is improper because it describes matters that the jury is capable of understanding and deciding without expert help.  The jury can draw

inferences just as competently as Mr. Weinstein about why Stanford made political contributions, forgave loans, and made gifts.

Moreover, any opinion Mr. Weinstein offers about Allen Stanford's motives is pure speculation lacking any grounding in science, technical or other specialized knowledge. *Retractable Technologies, Inc. v. Abbot Lab, Inc.*, No. 5:05-cv-157, 2010 WL 1153, 1436 (E.D. Tex. 2010). An expert cannot look into the hearts and minds of the people who made the payments. *United States ex rel. Dyer v. Raytheon Corp.*, No. 08-10340-DPW, 2013 WL 5348571, at *13 (D. Mass. Sept. 23, 2013) (excluding testimony that defendant "knowingly misrepresented results" because no expert is qualified to testify as to another's state of mind); *Holmes Grp., Inc. v. RPS Products, Inc.*, No. 03-40146-FDS, 2010 U.S. Dist. LEXIS 102727, 2010 WL 7867756, at *5 (D. Mass. June 25, 2010) ("[a]n expert witness may not testify as to another person's intent . . . [n]o level of experience or expertise will make an expert witness a mind-reader."); *Klaczak v. Consol. Med. Transp. Inc.*, No. 96 C 6502, 2005 U.S. Dist. LEXIS 13607, at *31 (N.D. Ill. 2005) (proffered expert assertions about another's subjective intent or knowledge are not helpful to the jury, which is equally if not much better suited to make these assessments than the parties' competing paid experts). The question of intent is a classic jury question and not one for experts. For the foregoing reasons, Mr. Weinstein's testimony that there is insufficient evidence of corrupt intent should be excluded.

**B.      Mr. Weinstein's testimony that Greenberg did not aid and abet FCPA violations is unreliable.**

Mr. Weinstein intends to testify that Greenberg did not aid or abet an FCPA bribery violation. He bases his opinion on the federal aiding and abetting statute, 18 USC § 2, and aiding and abetting under the securities laws. But the Receiver is not suing Greenberg under either of those laws. The Receiver is suing Greenberg under Texas common law for aiding and

abetting officers and directors to breach their fiduciary duties to their companies.  To establish that Greenberg knowingly participated in a breach of fiduciary duty the Receiver must prove: (1) that Greenberg knew of the fiduciary relationship, and (2) that Greenberg was aware that it was participating in the breach of fiduciary duties.  *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 639 (5th Cir. 2007); *Floyd v. Hefner*, 556 F.Supp.2d 617, 654 (S.D. Tex. 2008); *Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509, 512-14 (Tex. 1942).

Therefore, the laws relied on by Mr. Weinstein are not applicable to Greenberg's conduct.  Because Mr. Weinstein's opinion is improperly based on inapplicable law, it is unreliable.  And because it is based on inapplicable law, it is not relevant to any issue in the case, and, thus, cannot provide any assistance to the jury.  Therefore, it should be excluded.

**C.      Mr. Weinstein's testimony that payments made to promote general goodwill are not made "corruptly" and that there must be an explicit *quid pro quo* is an unprecedented extension of federal illicit gratuity law.**

Mr. Weinstein states that "transfers or payments made to promote general goodwill do not meet the definition of 'corruptly' for the domestic bribery statute, and therefore, given Congressional intent, they would not meet the definition of 'corruptly' as used in the FCPA," citing *United States v. Sun-Diamond Growers*, 526 U.S. 398 (1999).  Weinstein Rpt. At ¶ 266.

No FCPA case has ever so held.  And subsequent cases applying *Sun-Diamond Growers* in the context of deprivation of honest services have rejected its extension, holding that no explicit *quid pro quo* of an exchange for a specific act is required.  *United States v. Whitfield*, 590 F.3d 325, 353 (5th Cir. 2009) *cert. denied sub. nom. Minor v. United States*, 562 U.S. 833 (2010) stating ("the overwhelming weight of authority from this court and our sister circuits supports the conclusion that the law does not require" that "the implicit *quid pro quo* concern a specific official act"); *United States v. Kemp*, 500 F.3d 257, 282(3rd Cir. 2007), *cert. denied*, 552 U.S. 1223 (2008) (observing that "[t]he key to whether a gift constitutes a bribe is whether the

8

parties intended for the benefit to be made in exchange for some official action; the government

need not prove that each gift was provided with the intent to prompt a specific official action.");

*United States v. Kincaid-Chauncey*, 556 F.3d 923, 943 (9th Cir. 2009) (noting that while bribery

requires "a link between the item of value received and an understanding that the public official

receiving it is to perform official acts on behalf of the payor when called upon," the implicit *quid*

*pro quo* need not concern a specific official act.); *United States v. Ganim*, 510 F.3d 134, 144-50

(2nd Cir. 2007), *cert. denied*, 552 U.S. 1313 (2008) (rejecting the contention that "the benefits

received must be directly linked to a particular act at the time of agreement."); *United States v.*

*Abbey*, 560 F.3d 513, 519 (6th Cir. 2009) (holding that, in order to prove extortion, the

Government "did not need to assert a direct link between [the official's] receipt of property and

an explicit promise to perform a specific, identifiable act of improper influence when the gift was

given.")

 As the Second Circuit explained in *Ganim*, concerning extortion there is no need to

demonstrate a direct link between the payments and a particular official act:

> Thus, now, as before *Sun-Diamond*, so long as the jury finds that
> an official accepted gifts in exchange for a promise to perform
> official acts for the giver, it need not find that the specific act to be
> performed was identified at the time of the promise, nor need it
> link each specific benefit to a single official act.  To require
> otherwise could subvert the ends of justice in cases—such as the
> one before us—involving ongoing schemes.  In our view, a scheme
> involving payments at regular intervals in exchange for specific
> officials acts as the opportunities to commit those acts arise does
> not dilute the requisite criminal intent or make the scheme any less
> "extortionate.''  Indeed, a reading of the statute that excluded such
> schemes would legalize some of the most pervasive and
> entrenched corruption, and cannot be what Congress intended.

*Id.* at 147.

 Given the extensive evidence of things of value given to Antiguan government officials

by Stanford while Stanford was seeking—and receiving—numerous concessions from those

same officials, it is for the jury to decide whether the gifts were made with corrupt intent. Mr. Weinstein's testimony adds nothing of value to that determination. For this additional reason, his testimony about the lack of any *quid pro quo* should be excluded.

## IV.    CONCLUSION

For these reasons, the Receiver asks the Court to set this motion for a hearing and, after the hearing, to exclude the testimony of Martin Weinstein.

4811-3067-6636.1/D0624/B08864/071019

Respectfully submitted,

**NELIGAN LLP**

By: */s/ Douglas J. Buncher*
Douglas J. Buncher
dbuncher@neliganlaw.com
Republic Center
325 N. St. Paul, Suite 3600
Dallas, Texas 75201
Telephone:   (214) 840-5320
Facsimile:   (214) 840-5301

**CASTILLO SNYDER, P.C.**

By: */s/ Edward C. Snyder*
Edward C. Snyder
esnyder@casnlaw.com
Jesse R. Castillo
jcastillo@casnlaw.com
700 N. St. Mary's, Suite 1560
San Antonio, Texas 78205
Telephone:   (210) 630-4200
Facsimile:   (210) 630-4210

**ATTORNEYS FOR PLAINTIFFS**

**CLARK HILL STRASBURGER**

By: */s/ Judith R. Blakeway*
Judith R. Blakeway
judith.blakeway@clark hillstrasburger.com
2301 Broadway
San Antonio, Texas 78215
Telephone:   (210) 250-6004
Facsimile:   (210) 258-2706

**CLARK HILL STRASBURGER**

By: */s/ David N. Kitner*
David N. Kitner
david.kitner@clarkhillstrasburger
901 Main Street, Suite 6000
Dallas, Texas 75202
Telephone:   (214) 651-4300
Facsimile:   (214) 651-4330

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of July, 2019 I electronically filed the foregoing document with the Clerk of the Court, using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Judith R. Blakeway
Judith R. Blakeway

11

4811-3067-6636.1/D0624/B08864/071019