IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RALPH S. JANVEY, in his capacity as | § | |
| Court-appointed receiver for the Stanford | § | |
| Receivership Estate, et al., | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | CIV. ACTION NO. 3:12-cv-04641-N |
| | § | |
| GREENBERG TRAURIG, LLP *and* | § | |
| GREENBERG TRAURIG, PA, | § | |
| | § | |
| *Defendants.* | § | |

**GREENBERG TRAURIG'S MOTION TO EXCLUDE TESTIMONY
OF RECEIVER'S EXPERT MIKE KOEHLER BECAUSE HE
RELIES ON AN INCORRECT ASSUMPTION OF LAW**

**FOGLER, BRAR, FORD,
O'NEIL & GRAY LLP**
Murray Fogler
mfogler@fbfog.com
Michelle E. Gray
mgray@fbfog.com
Robin O'Neil
roneil@fbfog.com
909 Fannin Suite 1640
Houston, Texas  77010
Telephone:  (713) 481-1010
Facsimile:  (713) 574-3224

**BOIES SCHILLER FLEXNER LLP**
Stuart H. Singer
ssinger@bsfllp.com
Sashi C. Bach
sbach@bsfllp.com
Pascual A. Oliu
poliu@bsfllp.com
401 East Las Olas Boulevard, Suite 1200
Fort Lauderdale, Florida 33301
Telephone: (954) 356-0011
Facsimile:  (954) 356-0022

**COWLES & THOMPSON, P.C.**
Jim E. Cowles
jcowles@cowlesthompson.com
Sim Israeloff
sisraeloff@cowlesthompson.com
Charles A. Green
cgreen@cowlesthompson.com
901 Main Street, Suite 3900
Dallas, Texas  75202
Telephone: (214) 672-2000
Facsimile:  (214) 672-2347

*Counsel for Defendants Greenberg Traurig, LLP and Greenberg Traurig, PA*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................... iii

BACKGROUND .......................................................................................................................... 1

LEGAL STANDARD.................................................................................................................... 2

ARGUMENT ............................................................................................................................... 5

   I. Koehler's Opinions Are Based on Incorrect Assumptions of Law That Are Contrary to
      Fifth Circuit Precedent. ...................................................................................................... 5

     A. The FCPA's anti-bribery provision requires a "quid pro quo." ....................................... 6

     B. Koehler's analysis is irrelevant, unreliable, and unhelpful because it presumes
        that no "quid pro quo" is required to constitute an FCPA violation. .............................. 7

CONCLUSION............................................................................................................................ 12

CERTIFICATE OF SERVICE .................................................................................................... 14

# TABLE OF AUTHORITIES

## Cases

*Aubrey v. Barlin*
   2015 WL 6002260 (W.D. Tex. Oct. 14, 2015) ............................................................ 4

*Baskim Holdings, Inc. v. Two M, Inc.*
   2018 WL 4880758 (D. Nev. June 8, 2018) ................................................................. 4

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*
   509 U.S. 579 (1993) ................................................................................................. 3

*Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.*
   2015 WL 640875 (S.D.N.Y. Feb. 16, 2015) .............................................................. 4

*GSM Wireless, Inc.*
   2013 WL 4017123 (Bankr. C.D. Cal. Apr. 5, 2013) .................................................. 4

*Imperial Trading Co., Inc. v. Travelers Prop. Cas. Co. of Am.*
   654 F. Supp. 2d 518 (E.D. La. 2009) ........................................................................ 4

*Knight v. Kirby Inland Marine Inc.*
   482 F.3d 347 (5th Cir. 2007) .................................................................................... 3

*Kumho Tire Co. v. Carmichael*
   526 U.S. 137 (1999) ................................................................................................. 4

*Medicines Co. v. Mylan Inc.*
   2014 WL 1227214 (N.D. Ill. Mar. 25, 2014) ............................................................ 4

*Orthoflex, Inc. v. ThermoTek, Inc.*
   986 F. Supp. 2d 776 (N.D. Tex. 2013) ...................................................................... 3

*Pipitone v. Biomatrix, Inc.*
   288 F.3d 239 (5th Cir. 2002) .................................................................................... 3

*United States v. Gallion*
   257 F.R.D. 141 (E.D. Ky. 2009) ............................................................................... 4

*United States v. Jennings*
   160 F.3d 1006 (4th Cir. 1998) ................................................................................ 11

*United States v. Kay*
   359 F.3d 738 (5th Cir. 2004) ............................................................................ *passim*

*United States v. Wofford*
   560 F.3d 341(5th Cir. 2009) ............................................................................... 4, 12

## Rules

FED. R. CIV. P. 403 .......................................................................................................... 4

FED. R. EVID. 702 ....................................................................................................... 3, 4

Greenberg moves to exclude the testimony of Mike Koehler ("Koehler"), the Receiver's Foreign Corrupt Practices Act ("FCPA") expert, because his opinions are based on a legally incorrect assumption regarding the requirements of the FCPA, and will thus mislead and confuse the jury and unfairly prejudice Greenberg.

Koehler opines that Greenberg aided and abetted Stanford's FCPA violations in Antigua by failing to counsel him that giving things of value to Antiguan officials constituted "prima facie" violations of the FCPA.  However, Koehler relies on the legally incorrect assumption that the FCPA does not require a "quid pro quo" and that the elements of an FCPA violation can be established without consideration of whether a particular bribe to a foreign official was given with the corrupt intent to procure something in return.  Koehler rejects controlling Fifth Circuit precedent.  In *United States v. Kay*, the Fifth Circuit specifically noted that an FCPA violation requires such a "quid pro quo."  359 F.3d 738, 743 (5th Cir. 2004).[1]  Because Koehler's analysis is based on fundamentally flawed legal assumptions and his opinions are incorrect as a matter of law, this Court should exclude his testimony in full as irrelevant, unreliable, or otherwise unhelpful to the jury.[2]

## BACKGROUND

The Receiver has tendered Professor Mike Koehler as his Foreign Corrupt Practices Act ("FCPA") expert.  Koehler has opined that during the 1990-2001 time period (the "Relevant Time

---

[1] As explained below, although *Kay* was issued after the Relevant Time Period, it did not reach a novel construction of the FCPA, but simply described the intent element of the statute, which was the same in 1998 as it was in 2004.

[2] Greenberg is contemporaneously filing its Motion to Exclude Improper Expert Testimony, which seeks to prevent all the Receiver's experts—including Koehler—from testifying about Greenberg's alleged actual knowledge, motivations, or intent; from simply narrating the facts; and from opining about ultimate legal conclusions.  This additional motion presents an independent reason to exclude Koehler's testimony altogether.

Period"), "Greenberg attorneys: (i) were aware of various underlying facts and circumstances which constituted prima facie violations of the FCPA's anti-bribery provisions by Stanford and/or officers, directors or agents of Stanford entities; or alternatively; (ii) should have been aware, if acting as reasonably prudent attorneys, that Stanford and/or officers, directors or agents of Stanford entities were engaged in prima facie violations of the FCPA's anti-bribery provisions as enforced by the U.S. government."  App. at 008 (¶ 12).  Mr. Koehler's 58-page report and 33-page rebuttal report describe Koehler's views of the law concerning the FCPA and opine that Greenberg deficiently advised Stanford concerning the FCPA even as Stanford, usually without Greenberg's knowledge and usually without requesting any legal advice on the transactions at issue, violated the FCPA by providing things of value to the Antiguan government and Antiguan government officials.

Although Greenberg is not moving to exclude Koehler as unqualified to opine regarding the FCPA, his lack of experience in FCPA practice and enforcement may explain the unreliable and untenable legal assumptions underlying his opinions.  After graduating from the University of Wisconsin Law School, Koehler practiced law in the litigation group of Foley & Lardner in Milwaukee from 2000 to 2009.  App. at 066-67.  At Foley, he was an associate, followed by a short stint as a "special counsel." App. at 122 (17:18-18:18).  During his time in private practice, Koehler worked on about ten different FCPA matters, including only two enforcement actions, and was never the lead on any matter.  App. at 122, 145 (17:18-18:18, 110:13-111:6).  Koehler left private practice in 2009, and now teaches at Southern Illinois University School of Law and runs a blog.  App. at 067.

## **LEGAL STANDARD**

The primary consideration under Rule 702 is whether the expert testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue."  *Daubert v. Merrell Dow*

*Pharmaceuticals, Inc.*, 509 U.S. 579, 592-93 (1993) (quoting FED. R. EVID. 702). "The court may admit proffered expert testimony only if the proponent, who bears the burden of proof, demonstrates that (1) the expert is qualified, (2) the evidence is relevant to the suit, and (3) the evidence is reliable." *Orthoflex, Inc. v. ThermoTek, Inc.*, 986 F. Supp. 2d 776, 782 (N.D. Tex. 2013) (quotation omitted).

"To be relevant, expert testimony [must] assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.* (quoting *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002)) (internal quotation marks omitted)). "Relevance depends upon 'whether [that] reasoning or methodology properly can be applied to the facts in issue.'" *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007) (quoting *Daubert*, 509 U.S. at 593).

"Reliability is determined by assessing 'whether the reasoning or methodology underlying the testimony is scientifically valid.'" *Id.* The Supreme Court has set forth an "illustrative, but not an exhaustive, list of factors" to evaluate reliability, including "whether the expert's theory or technique: (1) can be or has been tested; (2) has been subjected to peer review and publication; (3) has a known or potential rate of error or standards controlling its operation; and (4) is generally accepted in the relevant scientific community." *Pipitone*, 288 F.3d at 244. Further, this analysis is a " 'flexible' one," and "[t]he district court's responsibility is 'to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Id.* (quotations omitted). "[B]ecause the Daubert factors are not always easily applied to non-scientific testimony, courts have 'considerable leeway in deciding ... whether particular [non-scientific] expert testimony is reliable.'" *Aubrey v. Barlin*, 2015 WL 6002260, at

*11 (W.D. Tex. Oct. 14, 2015) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150–52 (1999)).

It is the court's prerogative to exclude testimony that is incorrect as a matter of law. The Fifth Circuit has held that expert testimony that was "legally incorrect" under binding precedent was "properly excluded." *United States v. Wofford*, 560 F.3d 341, 350 (5th Cir. 2009) (excluding ERISA expert to extent he planned to testify, contrary to binding law, that a plan was not ERISA-qualified).[3]

In any event, it is inconceivable that testimony that describes the law incorrectly, or that is rooted in such an incorrect view of the law, could "help the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702. Further, such legally incorrect testimony would cause "unfair prejudice" and would "mislead the jury," and should be excluded. FED. R. CIV. P. 403.

---

[3] *See also Imperial Trading Co., Inc. v. Travelers Prop. Cas. Co. of Am.*, 654 F. Supp. 2d 518, 522 (E.D. La. 2009) (excluding expert testimony where "several of [the] opinions are legally incorrect"); *Baskim Holdings, Inc. v. Two M, Inc.*, 2018 WL 4880758, at *1 (D. Nev. June 8, 2018) ("Because Dr. Carroll's report is incorrect as a matter of law, it is neither relevant nor reliable. … It will not help the jury understand the evidence or determine any fact in issue. … Thus, Dr. Carroll's report and his testimony will be excluded at trial."); *United States v. Gallion*, 257 F.R.D. 141, 149, 151 (E.D. Ky. 2009) (excluding expert testimony where "several of the opinions contained in Robbins' Expert Report and in his former testimony are incorrect statements of law" and noting that "incorrect statements of the law . . . are inadmissible"); *In re GSM Wireless, Inc.*, 2013 WL 4017123, at *21 (Bankr. C.D. Cal. Apr. 5, 2013) (excluding reliance on approach specifically rejected by binding authority as "not very helpful to the court"); *Medicines Co. v. Mylan Inc.*, 2014 WL 1227214, at *5 (N.D. Ill. Mar. 25, 2014) ("Because Mr. Flammia applies the wrong legal standard regarding commercial success … his methodology fails to comply with the law on commercial success. Accordingly, the Court strikes his opinions on commercial success because they are legally flawed and will not be helpful to the trier of fact."); *Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.*, 2015 WL 640875, at *3 (S.D.N.Y. Feb. 16, 2015) (excluding expert where "Defendants' interpretation of [the statute] is incorrect as a matter of law, and conclusions drawn therefrom cannot 'help the trier of fact ... to determine a fact in issue'").

## ARGUMENT

This Court should exclude Koehler's testimony as irrelevant, unreliable, or otherwise unhelpful to the jury because it is based on a legal framework that is contrary to binding law in this Circuit.

## I.   KOEHLER'S OPINIONS ARE BASED ON INCORRECT ASSUMPTIONS OF LAW THAT ARE CONTRARY TO FIFTH CIRCUIT PRECEDENT.

Koehler opines that Greenberg provided deficient FCPA advice in a 1998 memo and that Greenberg aided and abetted Stanford in engaging in a number of specific transactions that constituted "prima facie" violations of the FCPA.  App. at 009-11 (¶ 13).  Koehler criticizes the 1998 memo, which concluded that "Contributions by Stanford to or on behalf of the [Antiguan political] Party do not violate the FCPA if not made pursuant to a quid pro quo arrangement or if expressly permitted by the written laws of Antigua," App. at 221, as containing numerous legal deficiencies.  App. at 054-58 (¶¶ 155-156).  Koehler also identifies a number of "specific transactions" that Greenberg Traurig knew or should have known of, either before or after the fact, in which Stanford provided "things of value" to the Antiguan Government or to Antiguan government officials.  *See, e.g.,* App. at 010, 025-63 (¶ 13.D & Section IV).  These transactions include, for example, acquiring the Bank of Antigua; leasing a government official's home; forgiving loans made to Antiguan government officials; and paying the medical expenses of the prime minister of Antigua when he suffered a minor heart attack.

What Koehler does ***not*** do in analyzing whether Greenberg's advice was deficient or whether Greenberg should have identified that Stanford's actions constituted "prima facie" FCPA violations (because he claims he is not required to do so) is attempt to tie any of the alleged transactions in which Stanford provided "things of value" to the foreign officials to anything that Stanford received, or intended to receive, in return for these things of value.  In other words,

Koehler has identified the "quid," but has refused to identify the "quo," in each of these transactions.

Koehler's opinions should be excluded in full because the key assumption underlying Koehler's position that Greenberg's advice was deficient and that Greenberg failed to identify "prima facie" FCPA violations—namely, that the FCPA does not require a quid pro quo—is *wrong*. The FCPA in fact does require a quid pro quo, and the Fifth Circuit has explicitly acknowledged that the FCPA requires a "quid pro quo." *United States v. Kay*, 359 F.3d 738, 743 (5th Cir. 2004).

### A.      The FCPA's anti-bribery provision requires a "quid pro quo."

The Foreign Corrupt Practices Act, 15 U.S.C. §§ 78dd-1, 78dd-2, contains an "anti-bribery" provision that makes it illegal to bribe foreign officials; that is, to give something of value to a foreign official with the intent of receiving something of value in return. More specifically,

> The FCPA prohibits payments to foreign officials for purposes of: (i) influencing any act or decision of such foreign official in his official capacity, (ii) inducing such foreign official to do or omit to do any act in violation of the lawful duty of such official, or (iii) securing any improper advantage ... in order to assist [the company making the payment] in obtaining or retaining business for or with, or directing business to, any person.

*Kay*, 359 F.3d at 743 (quoting 15 U.S.C. § 78dd-1(a)(1)). As the Court went on to describe these provisions:

> None contend that the FCPA criminalizes every payment to a foreign official: It criminalizes only those payments that are intended to (1) influence a foreign official to act or make a decision in his official capacity, or (2) induce such an official to perform or refrain from performing some act in violation of his duty, or (3) secure some wrongful advantage to the payor. And even then, the FCPA criminalizes these kinds of payments only *if the result they are intended to produce—their quid pro quo*—will assist (or is intended to assist) the payor in efforts to get or keep some business for or with "any person."

*Id.* Indeed, the court repeatedly described the FCPA's anti-bribery provision as requiring a "quid pro quo," including noting the "*quid pro quo requirement*" of the FCPA, *id.* at 744 (emphasis

added), and also describing the "quid pro quo" requirement as, at various points, "the intent element of an FCPA crime that requires the defendant to intend for the foreign official's anticipated conduct in consideration of a bribe … to produce an anticipated result," *id.* at 740; "seeking to induce a foreign official to act in consideration of a bribe," *id.* at 744; "*the linkage* between the payment of bribes and the … benefit obtained," *id.* at 759 (emphasis added); and "the aim of the bribe being to produce some conduct by a foreign official, the results of which (quid pro quo) will assist in obtaining or retaining foreign business for some person …," *id.* And, in describing the "elements of a violation of the FCPA," the court noted among them "the sought-after unlawful actions taken or not taken by the foreign official in consideration of the bribes." *Id.* at 760.

In sum, as the *Kay* decision makes clear, the FCPA's intent element requires a "quid pro quo" in order to be actionable. The "intent element of an FCPA crime … requires the defendant to intend for the foreign official's anticipated conduct in consideration of a bribe … to produce ***an anticipated result;***" there must be a "***linkage*** between the payment of bribes and the … benefit obtained." *Id.* at 740, 759 (emphasis added). Indeed, the court described the "core of criminality" in the FCPA as "bribery of a foreign official ***to induce him to perform an official duty*** in a corrupt manner." *Id.* at 761 (emphasis added).

**B.    Koehler's analysis is irrelevant, unreliable, and unhelpful because it presumes that no "quid pro quo" is required to constitute an FCPA violation.**

Koehler's analysis is fundamentally flawed and thus cannot be relevant, reliable, or helpful to a jury because Koehler, in conducting his analysis, rejected the idea that an FCPA violation requires an intended quid pro quo. *See, e.g.*, App. at 086 (¶ 16) (rejecting notion that "Corrupt intent is present only if a quid pro quo motivated the transfer or promise to transfer a thing of value to the Foreign Official," noting that "the words 'quid pro quo' do not appear in the FCPA statute nor do they appear in the FCPA Guidance," and rejecting *Kay* and other authority supporting the

notion of a quid pro quo in the FCPA as incorrect or irrelevant).  Koehler's analysis thus incorrectly ignores the FCPA's requirement there must be a "linkage between the payment of bribes and the … benefit obtained," and fails to consider that "the intent element of an FCPA crime … requires the defendant to intend for the foreign official's anticipated conduct in consideration of a bribe … to produce an anticipated result."  *Kay*, 359 F.3d at 759.

Koehler, in identifying a number of specific transactions in which Stanford allegedly committed "prima facie" violations of the FCPA, makes no attempt at all to "link[]" any of the identified transactions to any desired act or omission by any government official, or identify the "sought-after unlawful actions taken or not taken by the foreign official in consideration of [each of] the bribes" he identifies, or to show that Greenberg should have known that Stanford had the corrupt intent "for the foreign official's anticipated conduct in consideration of a bribe . . . to produce an anticipated result."  *See* App. at 025-63 (Section IV; *Kay*, 359 F.3d at 740, 759, 760). Rather, Koehler's testimony is based on his legally incorrect belief that no such intent is required: "the notion that a person only can violate the [FCPA's] anti-bribery provision is if they know the payment will be treated as a bribe, that's just wholly false."  *See* App. at 142 (100:20-23).  In fact, without the showing of an intended quid pro quo, there cannot be a "prima facie" FCPA violation that Greenberg could have known about, much less one that Greenberg could have aided and abetted or been negligent in failing to advise against.

When Greenberg's FCPA expert pointed out this glaring legal error in Koehler's analysis, Koehler, in rebuttal, repeatedly stated that the reason he has not identified what Stanford intended to receive in return for the things he gave Antiguan officials is because that is legally irrelevant under the FCPA.  As he stated several times in his rebuttal report,

> [T]he term "quid pro quo" is not even found in the FCPA statute or FCPA Guidance and … "corrupt intent does not need to be proven directly" and … "the corrupt link

> between [things of value offered or promised to foreign officials] and the discretionary government action(s) desired can be established by circumstantial evidence" … In this case, there is abundant circumstantial evidence that the numerous things of value offered or provided by Stanford/Stanford entities to high-ranking Antiguan officials were to influence discretionary government actions regarding the airport, the hospital project, leases, sale of land, changes to the laws and regulations of Antigua, and failures to enforce Antiguan laws and regulations against Stanford International Bank Limited.

App. at 103 (¶ 81).  Koehler thus does not purport to "link[]"any of the transactions he identifies to any sought-after discretionary government action.[4] *Kay*, 359 F.3d at 759.  Instead, he suggests that due to an amorphous, unspecified body of "circumstantial evidence," Greenberg should have recognized each of the things of value that Stanford provided as being meant to "corruptly influence" an amorphous number of non-specifically identified discretionary governmental decisions.[5]  But that analysis falls short of what the law requires: rather, "the intent element of an FCPA crime … requires the defendant to intend for the foreign official's anticipated conduct in consideration of a bribe … to produce an anticipated result." *Id.* at 740.  Koehler has made no attempt to show, in any of the transactions he identified, that Greenberg should have known that Stanford intended for any foreign official's anticipated conduct in consideration of a bribe to produce any anticipated result.  Indeed, when asked at his deposition whether he had linked a certain bribe to some sought-after decision, Koehler explained that he had not and would not do so:

> [Q:] What was the desired act or omission by an official for which a thing of value was provided in connection with the Hurst lease?

---

[4] Further, Koehler has wholly failed to identify any "failure[] to enforce Antiguan laws and regulations against Stanford" during the Relevant Time Period.  *See* App. at 103 (¶ 81).

[5] Although Koehler has identified a handful of documents indicating that Stanford was seeking some discretionary actions during 1995 and 1996, *see* App. at 044, 049-50 (¶¶ 120, 137, 139), he has not purported to show that any of the things of value Stanford allegedly gave to foreign officials were intended to influence any of these decisions or others, or that Greenberg should have known as much.

9

A. *I don't know.* But then, again, you have a situation where Hurst is the finance secretary in the highly-regulated sector in Antigua. So the Hurst lease is yet another example of something of value clearly going to a foreign official which, given the context, raises additional red flags of problematic conduct.

Q. But you can't --

A. ***The notion that you have to tie something of value to a specific act or omission is not what the law says in this area*** because oftentimes, as [Greenberg's expert] concedes and as courts have found, corrupt intent is established circumstantially including through a chronology of events and other relevant conduct.

Q. So you can't identify a specific desired act or omission by an official for which the thing of value in connection with the Hurst lease was provided?

A. *No*. ***But I don't believe that's legally required.***

App. at 161 (176:3-23) (emphasis added).  Indeed, doubling down on his notion that no quid pro

quo is required, Koehler even went so far as to opine that *Kay* was not good law in the Fifth

Circuit:

> **[Q:] *Do you recognize that [Kay decision] as an authoritative source when it comes to the FCPA, the Fifth Circuit Court of Appeals?***
>
> **A. *Not necessarily.*** I think there's a lot of dispute as to whether this case was correctly decided.
>
> ......
>
> And, I mean, I don't know that this is a 100 percent thorough and accurate citation to the statutory language. So if you're asking me, do I agree with that statement as if this is all the FCPA anti-bribery provisions can potentially capture? No, I don't necessarily agree with those two sentences you just cited [from *Kay*] because it's not necessarily taken directly from the statutory language.
>
> ......
>
> Q. You accept that the definitive interpretation of the FCPA comes from the federal courts of this country?
>
> A. I mean, not necessarily. I mean, I know we're talking about an appellate court decision here, and -- but your question was federal court. I don't view a trial court decision as the definitive interpretation of any law.
>
> Q. How about the Fifth Circuit?
>
> A. I don't view the Fifth Circuit's just one appellate court's decision as being the definitive interpretation of an issue throughout the country, no.
>
> ***Q. Well, how about within the Fifth Circuit? After all this case is in Texas within the Fifth Circuit.***
>
> ***A. Well, when the decision includes words that aren't even found in the statute, there's a problem with that.***

App. at 139-140 (86:9-13, 88:3-11, 88:23-89:15) (emphasis added).

To be sure, *Kay* was issued in 2004, after the time period analyzed in Koehler's report.  But *Kay* was not reaching a disputed holding that the FCPA required a quid pro quo; rather, it was (accurately) describing the "intent" element of the statute, which was the same in the 1990s as it was in 2004.[6]  Koehler thus cannot opine—contrary to the statute itself, as described in *Kay*—that the FCPA's intent element, before or after *Kay*, did not require an intended quid pro quo.[7]  Nor may he opine that Greenberg should have known that Stanford was engaging in "prima facie"

---

[6] The idea that the FCPA requires a "quid pro quo" is not a novel assertion.  In addition to the fact that the plain meaning of "quid pro quo" accurately describes the elements of the statute, Commentators during the Relevant Time Period had used "quid pro quo" to describe the intent element in the same way as *Kay*.  *E.g.,* H. Lowell Brown, *The Foreign Corrupt Practices Act Redux: The Anti-Bribery Provisions of the Foreign Corrupt Practices Act*, 12 Int'l Tax & Bus. Law. 260, 268 (1994) ("Because a violation of the FCPA requires an intent to provide something of value in order to procure favorable governmental action, the provision of a benefit to a foreign official theoretically cannot transgress the FCPA without a quid pro quo."); Gary P. Naftalis et al., The Foreign Corrupt Practices Act, 11 No. 8 White-Collar Crime Rep. 1, 4 (1997) ("But in order to establish a corrupt motive, prosecutors must do more than merely show that the defendant entertained some vague or general hope of favorable treatment. They must prove that the defendant had a particular expectation in mind, a specific quid pro quo.").  And even before 1990, multiple circuits, including the Fifth, had used the term "quid pro quo" to describe the intent element of an analogous bribery statute.  *See United States v. Jennings*, 160 F.3d 1006, 1013 (4th Cir. 1998) (collecting authority).

[7] Koehler has approvingly cited use of the term "quid pro quo" to describe the FCPA's intent element in his own writings.  *E.g.,* Mike Koehler, *Strategies for Minimizing Risk Under the Foreign Corrupt Practices Act and Related Laws*, 2018, p. 110 ("As FCPA practitioners have noted: 'Perhaps most interesting about [certain] recent cases is that the government's charging papers in some cases seem to lack any direct evidence that the benefits provided were provided ***as a quid pro quo to obtain a specific favorable decision*** from the official.'") (emphasis added); Mike Koehler, *Foreign Corrupt Practices Act Statistics, Theories, Policies, and Beyond*, 65 Clev. St. L. Rev. 157, 175 (2017) ("FCPA practitioners at Steptoe & Johnson rightly noted: the factual basis of the charges was that the company recognized the risk that improper ***quid pro quo*** arrangements *could* develop in connection with the hospitality program") (emphasis added); Mike Koehler, A Malady in Search of A Cure-the Increase in FCPA Enforcement Actions Against Health-Care Companies, 38 U. Mem. L. Rev. 261, 282 (2008) (noting that "The SEC alleged that the payment was made to the director as a ***quid pro quo*** for the director giving the company favorable consideration") (emphasis added).

FCPA violations when his analysis fails to consider that the statute itself, as described in *Kay*, requires that there be an intended quid pro quo in order to establish a violation.

Every one of Koehler's opinions—his critique of Greenberg's memorandum explaining the quid pro quo requirement of an FCPA violation and his position that Greenberg lawyers "were aware" or "should have been aware" of "various underlying facts and circumstances which constituted prima facie violations of the FCPA's anti bribery provisions"—assumes and is founded on the fundamentally flawed premise that no "quid pro quo" requirement exists.  App. at 009-11 (¶ 13).  Thus, because all of Koehler's testimony is grounded on the "legally incorrect" notion that the FCPA does not require a quid pro quo, and that binding Fifth Circuit precedent stating as much is not good law, his testimony cannot be relevant, reliable, or helpful to the trier of fact, and this Court should exclude it.  *Wofford*, 560 F.3d at 350.  This Court should not allow this purported expert to substitute his view of the FCPA for what the Court of Appeals for the Fifth Circuit has held.

## CONCLUSION

For the foregoing reasons, the Court should exclude Koehler's testimony in full.

Respectfully submitted,

**FOGLER, BRAR, FORD, O'NEIL & GRAY LLP**

By: */s/ Murray Fogler*
Murray Fogler
mfogler@fbfog.com
Michelle E. Gray
mgray@fbfog.com
Robin O'Neil
roneil@fbfog.com
909 Fannin, Suite 1640
Houston, Texas  77010
Telephone: (713) 481-1010
Facsimile: (713) 574-3224

**BOIES SCHILLER FLEXNER LLP**
Stuart H. Singer
ssinger@bsfllp.com
Sashi C. Bach
sbach@bsfllp.com
Pascual A. Oliu
poliu@bsfllp.com
401 East Las Olas Boulevard, Suite 1200
Fort Lauderdale, Florida  33301
Telephone: (954) 356-0011
Facsimile: (954) 356-0022

**COWLES & THOMPSON, P.C.**
Jim E. Cowles
jcowles@cowlesthompson.com
Sim Israeloff
sisraeloff@cowlesthompson.com
Charles A. Green
cgreen@cowlesthompson.com
901 Main Street, Suite 3900
Dallas, Texas 75202
Telephone: (214) 672-2000
Facsimile: (214) 672-2347

*Counsel for Defendants Greenberg*
*Traurig, LLP, and Greenberg Traurig, PA*

## CERTIFICATE OF SERVICE

I certify that this pleading was served on all counsel of record in accordance with the rules of procedure.

By: /s/ *Murray Fogler*
Murray Fogler