## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | |
| v. | Civil Action No. 3:09-cv-00298-N |
| STANFORD INTERNATIONAL BANK, LTD, *et al.*, | |
| Defendants. | |
| | |
| RALPH S. JANVEY, in his capacity as Court-appointed receiver for the Stanford Receivership Estate; the OFFICIAL STANFORD INVESTORS COMMITTEE; PAM REED; SAMUEL TROICE; and MICHOACAN TRUST; individually and on behalf of a class of all others similarly situated, | |
| Plaintiffs, | Civil Action No. 3:12-cv-04641-N |
| v. | |
| GREENBERG TRAURIG, LLP; AND GREENBERG TRAURIG, P.A., | |
| Defendants. | |

1

**EXPEDITED REQUEST FOR ENTRY OF SCHEDULING ORDER[1]
AND MOTION TO APPROVE PROPOSED SETTLEMENT WITH
GREENBERG, TO ENTER THE BAR ORDER,
TO ENTER THE FINAL JUDGMENT AND BAR ORDER,
AND FOR PLAINTIFFS' ATTORNEYS' FEES AND EXPENSES**

COME NOW Ralph S. Janvey, in his capacity as the Court-appointed Receiver for the

Stanford Receivership Estate (the "Receiver"), and the Official Stanford Investors Committee

(the "Committee") (the Receiver and the Committee, collectively, the "Plaintiffs") and move the

Court to approve the settlement (the "Greenberg Settlement") among and between Plaintiffs and

Defendants Greenberg Traurig, P.A. and Greenberg Traurig, LLP (individually and collectively,

"Greenberg").

Plaintiffs further request, as more fully set out below, that the Court enter the Scheduling

Order, approve the Notices, and enter the Bar Order and the Judgment and Bar Order attached to

and incorporated by reference into the Greenberg Settlement Agreement, attached as **Exhibit 1**

to the Appendix in Support of this Motion.[2]

Plaintiffs jointly request this Court to find that the Greenberg Settlement is fair, equitable,

and in the interests of the Receivership Estate and all its Claimants, and to approve the

Greenberg Settlement. Plaintiffs further request that the Court approve payment of Plaintiffs'

attorneys' fees in accordance with the contingency fee agreements between Plaintiffs' Counsel

and the Plaintiffs. In support thereof, Plaintiffs respectfully state the following:

---

[1]    Movants request that the Court promptly enter the Scheduling Order, without waiting the twenty-one (21) days contemplated by Local Rule 7.1(e) for interested parties to respond to this Motion, because such Scheduling Order merely approves the notice and objection procedure and sets a final hearing, and does not constitute a final approval of the Settlement Agreement.

[2]    Capitalized terms not otherwise defined herein shall have the meaning set forth in the Greenberg Settlement Agreement. To the extent of any conflict between this Motion and the terms of the Greenberg Settlement Agreement, the Greenberg Settlement Agreement shall control.

# I. **INTRODUCTION**

1.      As part of their lengthy and thorough investigation of the Stanford Ponzi scheme, and after many years of investigating and pursuing claims against third parties, including Greenberg, Plaintiffs have reached a settlement with Greenberg, one of the law firms that provided legal representation to Stanford for many years.  Under the agreement, once approved and effective, Greenberg has agreed to pay **$65 million** to the Receiver for distribution to customers of Stanford International Bank, Ltd. ("SIBL"), who, as of February 16, 2009, had funds on deposit at SIBL and/or were holding certificates of deposit issued by SIBL ("Stanford Investors") and who have submitted claims that have been allowed by the Receiver.

2.      In return, Greenberg seeks a global release of all Settled Claims[3] against Greenberg and the Greenberg Released Parties, and has requested that the Court enter the Bar Order in substantially the form attached to the Greenberg Settlement Agreement in Civil Action No. 3:09-cv-00298-N (the "SEC Action") and enter the Judgment and Bar Order in substantially the form attached to the Greenberg Settlement Agreement in Civil Action No. 3:12-cv-04641-N, *Janvey v. Greenberg Traurig, LLP, et al.* (the "Greenberg Action").  These bar orders are similar to the bar orders previously approved and entered by the Court in connection with the

---

[3]      "Settled Claim" means any action, cause of action, suit, liability, claim, right of action, right of levy or attachment, or demand whatsoever, whether or not currently asserted, known, suspected, existing, or discoverable, and whether based on federal law, state law, foreign law, common law, or otherwise, and whether based on contract, tort, statute, law, equity or otherwise, that a Releasor ever had, now has, or hereafter can, shall, or may have, directly, representatively, derivatively, or in any other capacity, for, upon, arising from, relating to, or by reason of any matter, cause, or thing whatsoever, that, in full or in part, concerns, relates to, arises out of, or is in any manner connected with (i) the Stanford Entities; (ii) any CD, depository account, or investment of any type with any one or more of the Stanford Entities; (iii) Greenberg's relationship with any one or more of the Stanford Entities and/or any of their personnel; (iv) Greenberg's provision of services to or for the benefit of or on behalf of the Stanford Entities; or (v) any matter that was asserted in, could have been asserted in, or relates to the subject matter of the SEC Action, the Litigation, or any proceeding concerning the Stanford Entities pending or commenced in any Forum.  "Settled Claims" specifically includes, without limitation, all claims each Releasor does not know or suspect to exist in his, her, or its favor at the time of release, which, if known by that Person, might have affected their decisions with respect to this Agreement and the Settlement ("Unknown Claims").  *See* Paragraph 17 of the Greenberg Settlement Agreement for a complete definition of Settled Claim.

settlements with BDO, Kroll, Proskauer, Chadbourne, Hunton and Willis, and would permanently bar, restrain, and enjoin the Receiver, the Plaintiffs, the Investor Plaintiffs (as hereinafter defined), the Claimants, the Interested Parties, and all other Persons or entities anywhere in the world, whether acting in concert with the foregoing or claiming by, through, or under the foregoing, or otherwise, all and individually, from directly, indirectly, or through a third party, instituting, reinstituting, intervening in, initiating, commencing, maintaining, continuing, filing, encouraging, soliciting, supporting, participating in, collaborating in, or otherwise prosecuting, against Greenberg or any of the Greenberg Released Parties, the Greenberg Action, or any action, lawsuit, cause of action, claim, investigation, demand, complaint, or proceeding of any nature, including, without limitation, in any Forum, including, without limitation, any court of first instance or any appellate court, whether individually, derivatively, on behalf of a class, as a member of a class, or in any other capacity whatsoever, that in any way relates to, is based upon, arises from, or is connected with the Stanford Entities; this case; the subject matter of this case; the Greenberg Action; or any Settled Claim. The foregoing also specifically includes any claim, however denominated, seeking contribution, indemnity, damages, or other remedy where the alleged injury to such Person, entity, or Interested Party, or the claim asserted by such Person, entity, or Interested Party, is based upon such Person's, entity's, or Interested Party's liability to any Plaintiff, Claimant, or Interested Party arising out of, relating to, or based in whole or in part upon money owed, demanded, requested, offered, paid, agreed to be paid, or required to be paid to any Plaintiff, Claimant, Interested Party, or other Person or entity, whether pursuant to a demand, judgment, claim, agreement, settlement or otherwise.

 3. Plaintiffs request the Court to approve the Greenberg Settlement and enter the Bar

Order in the SEC Action and the Judgment and Bar Order in the Greenberg Action.

4.      Plaintiffs further request that the Court approve payment of attorneys' fees to counsel for the Receiver and the Committee ("Plaintiffs' Counsel"), whose efforts were necessary to achieve the Greenberg Settlement, in an amount consistent with their contractual twenty-five percent (25%) contingency fee agreements with the Receiver and the Committee.

## II. BACKGROUND

### A.    Authority of the Receiver and the Committee

5.      On February 16, 2009, the Securities & Exchange Commission ("SEC") filed the SEC Action, and the Court appointed Ralph S. Janvey as Receiver "to immediately take and have complete and exclusive control, possession, and custody of the Receivership Estate and to any assets traceable to assets owned by the Receivership Estate."   *See* Order Appointing Receiver ¶ 4 (SEC Action, ECF No. 10).

6.       The Second Amended Order Appointing Receiver, entered on July 19, 2010, is the current order setting forth the Receiver's rights and duties (the "Second Order").   (SEC Action, ECF No. 1130).  The Receiver's primary duty is to marshal and preserve the assets of the Receivership Estate, and minimize expenses, "in furtherance of maximum and timely disbursement thereof to claimants."  Second Order ¶ 5.

7.      The Receiver is not only authorized but required to pursue outstanding liabilities and claims for the Estate. *Id.* ¶¶ 3, 5(b)-(c).  The Court vested the Receiver with "the full power of an equity receiver under common law as well as such powers as are enumerated" by the Court. *Id.* ¶ 2.  The Receiver can assert claims against third parties and "recover judgment with respect to persons or entities who received assets or records traceable to the Receivership Estate." *SEC v. Stanford Int'l Bank, Ltd.*, 776 F. Supp. 2d 323, 326 (N.D. Tex. 2011).  The Court has directed

the Receiver to institute, prosecute, defend, and compromise actions that the Receiver deems necessary and advisable to carry out his mandate.  Second Order ¶ 5(i).

8.      On April 20, 2009, the Court also appointed John J. Little as Examiner, to advocate on behalf of "investors in any financial products, accounts, vehicles or ventures sponsored, promoted or sold by any Defendant in this action."  (SEC Action, ECF No. 322). Although he is not a party to the Greenberg Action, the Examiner signed the Greenberg Settlement Agreement as chair of the Committee, and as Examiner solely to evidence his support and approval of the Greenberg Settlement and the obligation to post Notice of the Greenberg Settlement on his website.

9.      On August 10, 2010, this Court entered its order (the "Committee Order") creating the Committee and appointing the Committee to "represent[] in [the SEC Action] and related matters" the Stanford Investors.  (SEC Action, ECF No. 1149).  The Committee Order confers upon the Committee the right to investigate and pursue claims on behalf of the Stanford Investors and for the Receivership Estate (by assignment from the Receiver).  *Id.* ¶ 8(d).

### B.      *The Investigation of Claims Against Greenberg*

10.      Plaintiffs' counsel have spent over 8 years and thousands of hours investigating and pursuing claims against Greenberg on behalf of the Stanford Receivership Estate and Stanford Investors.  As part of their investigation of the claims against Greenberg, Plaintiffs' Counsel have reviewed voluminous documents, emails, and depositions and trial testimony obtained in multiple collateral lawsuits and the criminal prosecution of Allen Stanford, James Davis, Laura Pendergest-Holt, and other former Stanford insiders.  The materials reviewed by Plaintiffs' Counsel included, among other materials, thousands of pages of SEC and other investigative materials, thousands of pages of deposition and trial testimony, thousands of emails

of Stanford and Greenberg personnel, and hundreds of boxes of documents, including Greenberg documents that the Receiver secured from Stanford's various offices and law firms and from Greenberg itself.

11.     Plaintiff's Counsel also engaged in protracted motion practice and 20 months of discovery, including producing and reviewing hundreds of thousands of documents and taking and defending depositions of 17 fact witnesses and 14 expert witnesses. Plaintiffs' counsel also prosecuted two appeals of the Investor Plaintiffs' claims to the Fifth Circuit Court of Appeals including an appeal of the dismissal of said claims pursuant to the attorney immunity doctrine. It was only after  all fact and expert discovery was completed in this case and Plaintiffs' counsel had filed its response to Greenberg's comprehensive motion for summary judgment, supported by an over 3,300-page appendix, and the case had been prepared for trial that Greenberg settled with the Plaintiffs 60 days prior to trial.

12.     Investigation and prosecution of the Receivership Estate and Stanford Investor claims against Greenberg also necessarily required thousands of hours investigating and understanding the background and history of the complex web of Stanford companies, the financial transactions, interrelationships and dealings between and among the various Stanford entities, and the complex facts relating to the Ponzi scheme and how it was perpetrated through the various Stanford entities. Without a comprehensive investigation and understanding of this background, it would not have been possible to formulate or litigate viable claims against Greenberg. But for the diligent efforts of the Receiver, the Committee, and their counsel since the commencement of this receivership proceeding, the $65 million Greenberg Settlement would never have been achieved for the Receivership Estate and the Stanford Investors.

13.     In summary, Plaintiffs and their counsel have conducted a thorough analysis of,

and heavily litigated on multiple fronts, a series of claims against Greenberg considering:

>    a.   claims available under both state and federal law;
>
>    b.   the viability of those claims considering the facts underlying Greenberg's role as counsel for Stanford and this Court's previous rulings; and
>
>    c.   the success of similar claims in other Ponzi scheme cases, both in the Fifth Circuit and elsewhere.

## C.   *The Greenberg Action*

14.   As this Court is aware, the Greenberg Action has been heavily litigated over the last 7 years.

15.   On November 15, 2012, and following a year-long, thorough investigation involving the review of tens of thousands of documents, Plaintiffs' Counsel filed their very detailed 165-page Original Complaint (Greenberg Action, ECF No. 1).[4]   The Complaint asserted claims against Greenberg for negligence, aiding and abetting breaches of fiduciary duties, breaches of fiduciary duties, fraudulent transfer/unjust enrichment, aiding and abetting fraudulent transfers, negligent retention, aiding and abetting violations of the Texas Securities Act ("TSA"), aiding and abetting a fraudulent scheme, and civil conspiracy.

16.   The Defendants subsequently filed separate motions to dismiss the claims asserted by the Receiver/Committee and the claims asserted by the Investor Plaintiffs. (Greenberg Action, ECF Nos. 27, 49, 56, 90).[5]

17.   By Orders dated December 17, 2014 (Greenberg Action, ECF No. 114) and

---

[4]   In addition to Plaintiffs, claims were also originally brought by Samuel Troice, Michoacan Trust, Sandra Dorrell, and Pam Reed, who was substituted for Sandra Dorell, on behalf of themselves and a putative class. (Samuel Troice, Michoacan Trust, Sandra Dorrell, and Pam Reed, and the putative class they sought to represent, are referred to collectively herein as the "Investor Plaintiffs.")

[5]   Greenberg filed one of these motions to dismiss (Greenberg Action, ECF Nos. 27), and a later motion to dismiss for lack of subject matter jurisdiction, or in the alternative, for judgment on the pleadings (Greenberg Action, ECF 203).

February 4, 2015 (Greenberg Action, ECF No. 123), the Court granted in part and denied in part Greenberg's motions to dismiss the Complaint, dismissing with prejudice (i) the Receiver and Committee's claims for aiding and abetting fraudulent transfer; (ii) the Investor Plaintiffs' TSA claims for aiding and abetting and civil conspiracy for the sale of unregistered securities and the sale of securities by an unregistered dealer arising from sales taking place prior to February 1, 2008; and (iii) the Investor Plaintiffs' TSA claims for aiding and abetting and civil conspiracy for the sale of securities through untruth or omission arising from sales taking place prior to February 1, 2006; dismissing without prejudice the Receiver and Committee's claims for breach of fiduciary duty; and declining to dismiss the Plaintiffs' other claims against Greenberg.

18.     On August 11, 2015, the Court issued its Class Certification Scheduling Order (Greenberg Action, ECF No. 142). The parties thereafter engaged in six months of class certification discovery and briefing. The parties filed all of their class certification evidence and briefing with this Court on February 26, 2016. (Greenberg Action, ECF Nos. 174-184).

19.     On December 5, 2017 (ECF 251), the Court granted Greenberg's Motion for Judgment on the Pleadings (ECF 203) as to the claims by the Investor Plaintiffs, dismissing the Investor Plaintiffs' claims based on the attorney immunity doctrine and obviating the necessity of a ruling on class certification. *Official Stanford Investors Comm. v. Greenberg Traurig LLP*, 2017 WL 6761765 (N.D. Tex. 2017). The Investor Plaintiffs promptly appealed that ruling to the Fifth Circuit.

20.     On October 12, 2018, the Receiver and the Investor Plaintiffs filed their Amended Complaint, and on November 19, 2018, the Receiver and the Investor Plaintiffs filed their Second Amended Complaint (the "Second Amended Complaint") against Greenberg. The Second Amended Complaint asserts "Receiver Claims" against Greenberg for Aiding, Abetting,

or Participation in Breaches of Fiduciary Duties, Breaches of Fiduciary Duties, Fraudulent Transfer/Unjust Enrichment, and Negligent Retention/Negligent Supervision; and  "Investor Class Causes of Action" against Greenberg for Aiding and Abetting Violations of the Texas Securities Act, Participation in/Aiding and Abetting Breach of Fiduciary Duty, Aiding and Abetting/Participation in a Fraudulent Scheme, Civil Conspiracy, and Respondeat Superior, and seeks actual and punitive damages.  The Second Amended Complaint omits the Committee from the list of parties, and brings no claims on behalf of the Committee.

21.     On April 17, 2019, the Fifth Circuit affirmed the Order dated December 5, 2017 (ECF 251) in which the Court granted Greenberg's Motion for Judgment on the Pleadings (ECF 203) as to the claims by the Investor Plaintiffs based on the attorney immunity defense, and the dismissal of the claims of the Investor Plaintiffs and affirmance by the Fifth Circuit are final and not subject to reopening or further proceedings.  *Troice v. Greenberg Traurig LLP*, 921 F. 3d 501 (5th Cir. 2019).

22.     On December 4, 2018, Greenberg filed a Motion for Judgment on the Pleadings with Brief in Support (ECF 292 & 293), and the Receiver opposed the motion (ECF 297).

23.     On July 22, 2019, Greenberg filed a Motion for Summary Judgment with Brief and Appendix in Support (ECF 340, 341 & 342), and the Receiver filed its Response in opposition to the motion (ECF 345, 346 & 353).  Said motion has not yet been decided.   The parties reached a settlement in principal two days after the Receiver filed his Response to Greenberg's summary judgment motion and 60 days prior to trial.

### D.     Mediation

24.     Mediation was held with Greenberg on three occasions.  The Parties participated in a mediation in 2012 with McGowan Dispute Resolution in Houston, Texas prior to the filing

of the Original Complaint.  Another mediation was held in May 2018 with Phillips ADR in Corona del Mar, California, and an additional mediation was held in April 2019 with Judge Alice Oliver-Parrot in Dallas, Texas.  The parties were unable to reach resolution at these mediations. However, negotiations continued and, in August 2019, the Parties reached agreement resulting in the Greenberg Settlement.

25.     Without the tireless effort of the Receiver, the Committee, and their counsel in investigating and prosecuting these claims as part of the overall effort to recover money from third parties for the benefit of Stanford Investors, the settlement could never have been achieved, and the Greenberg Action would have lasted for years with an uncertain outcome and at great expense to the Parties.

26.     Since the settlement was reached, the Parties have spent considerable time and effort drafting, revising, and negotiating the form and terms of the Greenberg Settlement Agreement, the Bar Order, the Judgment and Bar Order, the Notice, and the Scheduling Order, for which the Plaintiffs now seek approval.

### E.     Plaintiffs' and Examiner's Support of Settlement

27.     Plaintiffs are confident that the investigation of Greenberg's activities related to Stanford performed by their counsel and the litigation of the Investor and Receivership Estate claims have been thorough.  Plaintiffs are confident that they have sufficient information to enter into and endorse the Greenberg Settlement.  Plaintiffs are also confident that the Greenberg Settlement is fair and reasonable taking into consideration not only the merits of the claims, but also the risks, uncertainties, and expenses associated with litigation.  Therefore, Plaintiffs believe that the Greenberg Settlement is in the best interests of the Stanford Receivership Estate and the Stanford Investors and should be approved by the Court.  The Chairman of the Committee, who

participated in the settlement negotiations and mediations, is also the Court-appointed Examiner, and he supports this Motion in both capacities.

28.     All Stanford Investors have been given notice of the Receivership and the claims process, and the vast majority of them have filed claims and are participating in the Receivership distribution process.  The Greenberg Settlement therefore "permits [Stanford Investors] to pursue their claims by 'participating in the claims process for the Receiver's ultimate plan of distribution for the Receivership Estate.'"  *SEC v. Kaleta*, 530 F. App'x 360, 362 (5th Cir. 2013). The Greenberg Settlement, the Bar Order, and the Judgment and Bar Order protect both the Greenberg Released Parties and the Stanford Investors.

### F.     *The Greenberg Settlement*

29.     The proposed Greenberg Settlement is the result of many years and thousands of hours of work by the Receiver and the Committee, and the undersigned counsel, and was negotiated and entered into as a result of arm's-length negotiation.

30.     The essential terms of the Greenberg Settlement Agreement, attached as **Exhibit 1** to the Appendix, are that:

    a) Greenberg will pay $65 million, which will be deposited with the Receiver as required pursuant to the Settlement Agreement;

    b) Plaintiffs, including, without limitation, the Receiver on behalf of the Receivership Estate (including the Stanford Entities), will fully release the Greenberg Released Parties from the Settled Claims, e.g., claims arising from or relating to Allen Stanford, the Stanford Entities, or any conduct by the Greenberg Released Parties relating to Allen Stanford or the Stanford Entities, with prejudice;

    c) The Greenberg Settlement requires entry of a Judgment and Bar Order in the Greenberg Action and entry of a Bar Order in the SEC Action, each of which, to the extent consistent with the Court's authority, permanently enjoins, among others, Interested Parties, including all Investor Plaintiffs, Stanford Investors and Claimants, from bringing, encouraging, assisting, continuing, or prosecuting, against Greenberg or any of the Greenberg Released Parties, the Greenberg

Action, or any action, lawsuit, cause of action, claim, investigation, demand, complaint, or proceeding of any nature arising from or relating to a Settled Claim;

d)  The Receiver will disseminate notice of the Greenberg Settlement to Interested Parties, through one or more of the following as set forth in the Greenberg Settlement Agreement, ¶¶ 26-27: mail, email, international delivery, CM/ECF notification, facsimile transmission, and/or publication on the Examiner (www.lpf-law.com/examiner-stanford-financial-group/) and Receiver (http://www.stanford financialreceivership.com) web sites;

e)  The Receiver will develop and submit to the Court for approval a plan for distributing the Net Settlement Amount ("Distribution Plan");

f)  Under the Distribution Plan, once approved, the Net Settlement Amount will be distributed by the Receiver, under the supervision of the Court, to Stanford Investors who have submitted claims that have been allowed by the Receiver;

g)  Persons who accept funds from the Greenberg Settlement Amount will, upon accepting the funds, fully release the Greenberg Released Parties from any and all Settled Claims; and

h)  The Greenberg Action will be dismissed with prejudice as to Greenberg, with each party bearing its own costs and attorneys' fees, by entry of the Judgment and Bar Order in that action.

Copies of the Greenberg Settlement Agreement, this Motion, and other supporting papers may be obtained from the Court's docket, and will also be available on the websites of the Receiver (http://www.stanfordfinancialreceivership.com) and the Examiner (www.lpf-law.com/examiner-stanford-financial-group/).  Copies of these documents may also be requested by email, by sending the request to Nadia N. Ramon at legalassistant@casnlaw.com; or by telephone, by calling (210) 630-4200.

31.    For the reasons described herein, the Greenberg Settlement is fair, equitable, reasonable, and in the interests of the Receivership Estate and all those who would claim substantive rights to distribution of its assets.  Plaintiffs urge the Court to approve it.

### III.    REQUEST FOR APPROVAL OF THE GREENBERG SETTLEMENT

*A.    Legal Standards*

32.    "'[T]he district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership.'" *Kaleta*, 530 F. App'x at 362  (quoting *SEC v. Safety Fin. Serv.*, 674 F.2d 368, 372-73 (5th Cir. 1982));*see also Zacarias v. Stanford Int'l Bank, Ltd.*, 931 F.3d  382, 393-94 (5th Cir. 2019).  "These powers include the court's 'inherent equitable authority to issue a variety of "ancillary relief" measures in actions brought by the SEC to enforce the federal securities laws.'" *Kaleta* at 362 (quoting *SEC v. Wencke*, 622 F.2d 1363, 1369 (9th Cir. 1980)); *Zacarias, 931 F.3d at 394-95.*  "Such 'ancillary relief' includes injunctions to stay proceedings by non-parties to the receivership." *Kaleta* at 362  (citing *Wencke* and *SEC v. Stanford Int'l Bank Ltd.*, 424 F. App'x 338, 340 (5th Cir. 2011)).  "[N]o federal rules prescribe a particular standard for approving settlements in the context of an equity receivership; instead, a district court has wide discretion to determine what relief is appropriate." *SEC v. Kaleta*, No. CIV.A. 4:09-3674, 2012 WL 401069, at *4 (S.D. Tex. Feb. 7, 2012) (quoting *Gordon v. Dadante*, 336 F. App'x 540, 549 (6th Cir. 2009), *aff'd*, 530 F. App'x 360 (5th Cir. 2013).  Congress enacted a "loose scheme" for federal equity receivers "on purpose" and "wished to expand the reach and power of federal equity receivers, especially in the context of consolidation." *Janvey v. Alguire*, No. 3:09-cv-00724, slip op. at 31, 34 (N.D. Tex. July 30, 2014).

33.    Moreover, "courts have consistently held that Congress intended for federal equity receivers to be utilized in situations involving federal securities laws, like the present receivership," and in such cases for the court to act as a court in equity for the benefit of defrauded investors. *See id.* at 35 (internal quotation marks omitted); *see also* 15 U.S.C. § 80a-

41(d). "Now . . . the corporations created and initially controlled by [Stanford] are controlled by a receiver whose only object is to maximize the value of the corporations for the benefit of their investors and any creditors." *Janvey v. Alguire*, slip op. at 44 (quoting *Democratic Senatorial Campaign Comm.*, 712 F.3d 185, 191 (5th Cir. 2013) (quoting *Scholes v. Lehmann*, 56 F.3d 750, 755 (7th Cir. 1995)).

34.     The Receivership Order in the SEC Action closely reflects and furthers all of the above objectives, directing the Receiver to prosecute, defend, and compromise actions in order to maximize timely distributions to claimants.  Second Order ¶ 5; *see supra* ¶¶ 2-3.

35.     The ability to compromise claims is critical to this Receivership.  Courts have long emphasized that public policy favors settlement.  *See, e.g.*, *Lydondell Chem. Co. v. Occidental Chem. Corp.*, 608 F.3d 284, 297 n.43 (5th Cir. 2010).  That is especially true here, where the victims of Stanford's Ponzi scheme await recovery, further costs would come directly out of the Receivership Estate, and the Greenberg Settlement would allow the Receiver to make a significant distribution.

36.     Consistent with all of the foregoing purposes, this Court has the authority to enter a bar order prohibiting litigation against settling third parties in receivership cases. *See Zacarias v. Stanford Int'l Bank, Ltd.*, 931 F.3d 382, 387 (5th Cir. 2019); *see also Kaleta*, 530 F. App'x. at 362-63 (approving bar order). Bar orders have been used in this and in other receivership cases to achieve these purposes. *See, e.g.*, *Zacarias*, 931 F.3d at 387; *SEC v. DeYoung*, 850 F.3d 1172, 1180-81 (10th Cir. 2017); *Gordon*, 336 F. App'x at 549; *SEC v. Parish*, No. 2:07-cv-00919, 2010 WL 8347143, at *4-7 (D.S.C. Feb. 10, 2010), *modified*, 2010 WL 8347144 (D.S.C. Apr. 8, 2010); *SEC v. Enterprise Trust Co.*, No. 1:08-cv-01260, slip op. at 2 (N.D. Ill. Jan. 29, 2009); *Harmelin v. Man Fin. Inc.*, Nos. 06-1944, 05-2973, 2007 WL 4571021, at *4-5 (E.D. Pa. Dec.

28, 2007); *CFTC v. Equity Fin. Grp.*, No. 04-1512, 2007 WL 2139399, at *2 (D.N.J. July 23, 2007).

37.     The Bar Order and the Judgment and Bar Order will "prevent duplicative and piecemeal litigation that would only dissipate the limited assets of the Receivership Estate and thus reduce the amounts ultimately distributed by the Receiver to the claimants" and "protect the [settling parties] from re-litigation of potentially duplicative liabilities." *SEC v. Temme*, No. 4:11-cv-655, 2014 WL 1493399, at *2 (E.D. Tex. Apr. 16, 2014) (following *Kaleta* and approving bar order).

38.     In fact, the Fifth Circuit in *Kaleta* stated that a district court was within its discretion to enter a bar order, such as the ones requested here, if (i) the bar order is "necessary . . . for securing" the settlement payment; (ii) the settlement agreement "expressly permits" those affected by the bar order "to pursue their claims by 'participating in the claims process for the Receiver's ultimate plan of distribution for the Receivership Estate"; and (iii) the scope of the bar order is appropriately tailored to achieve these objectives. *See Kaleta*, 530 F. App'x at 362-63. The Greenberg Settlement satisfies each of these requirements.

39.     This Court and other district courts in this Circuit have also looked to factors such as: (1) the value of the proposed settlement; (2) the value and merits of the receiver's potential claims; (3) the risk that litigation would dissipate the receivership assets; (4) the complexity and costs of future litigation; (5) the implications of any satisfaction of an award on other claimants; (6) the value and merits of any foreclosed parties' potential claims; and (7) other equities incident to the situation. *Kaleta*, 2012 WL 401069, at *4 (citations omitted).[6]

---

[6]     The Greenberg Action is not a class action nor is it a case under Title 11 of the United States Code. Though they are not binding here, both class action and Title 11 cases define tests for approving the aggregate settlements

40.     In *Kaleta*, the court approved a receivership settlement and entered a bar order prohibiting litigation, including claims of investors, against the settling parties.  *Id.* at *4.  The Fifth Circuit's opinion noted that, like the Greenberg Settlement here, "the settlement expressly permits Appellants and other investors to pursue their claims by 'participat[ing] in the claims process for the Receiver's ultimate plan of distribution for the Receivership Estate.'"  *Id.* at 362.

41.     Most recently, in *Zacarias v. Stanford Int'l Bank, Ltd.*, 931 F.3d 382, 387 (5th Cir. 2019), the Fifth Circuit confirmed approval of a settlement that was conditioned on bar orders enjoining related Stanford Ponzi-scheme suits filed against the defendants in that litigation and entry of the bar orders.  The court held that the bar orders enjoining investors' third-party claims "fall well within the broad jurisdiction of the district court to protect the receivership res," and that the court may bar proceedings that "would undermine the receivership's operation."  *Id*. at 389-99.

B.      ***The Greenberg Settlement Satisfies the Factors for Settlement Approval***

        *(1)     Value of the Proposed Settlement*

42.     The $65 million payment in the Greenberg Settlement is substantial, putting the Greenberg Settlement among the larger Stanford litigation settlements to date.  "A proposed settlement need not obtain the largest conceivable recovery . . . to be worthy of approval; it must simply be fair and adequate considering all the relevant circumstances."  *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 649 (N.D. Tex. 2010).  In the absence of evidence otherwise, a district

---

that may be tailored for a receivership case such as the Greenberg Action.  *See, e.g., Newby v. Enron Corp.*, 394 F.3d 296, 301 (5th Cir. 2004) (class action); *In re Moore*, 608 F.3d 253, 263 (5th Cir. 2010) (Title 11 bankruptcy). Broadly speaking, before approving a global settlement the Court must determine that the settlement (i) is reached after arm's-length negotiations; (ii) provides relief commensurate with the risks and expenses of litigating the claim to judgment; and (iii) represents the considered opinions of the parties and their counsel, and has the support of persons appointed to represent those who ultimately benefit from the settlement.  For the same reasons that the Greenberg Settlement satisfies the factors set forth in the decision of the district court in *Kaleta*, and as set forth herein, the Greenberg Settlement easily satisfies the tests set out in *Newby* or *Moore*.

court may conclude that a proposed settlement amount is sufficient. *Kaleta*, 2012 WL 401069, at *4. Moreover, no federal rules prescribe a particular standard for approving settlements in the context of an equity receivership; instead, a district court has wide discretion to determine what relief is appropriate. *Gordon*, 336 F. App'x at 549. The value of the Greenberg Settlement to the Receivership Estate and Stanford's victims is significant, and the Court has in recent years approved settlements for similar or lesser amounts with other law firms that also provided legal services to the Stanford Entities. *See Janvey v. Hunton & Williams LLP*, Case No. 3:12-cv-04641-L ("Hunton & Williams Action"[7]) (ECF 265) (Bar Order in connection with $34 million settlement with Hunton & Williams LLP); SEC action (ECF 2819) (Bar Order in connection with $63 million settlement with Proskauer Rose) *Janvey v. Proskauer Rose LLP*, Case No. 3:13-cv-00477-N-BQ (ECF No. 127) (Bar Order in connection with $35 million settlement with Chadbourne & Parke, LLP).

### *(2)  Value and Merits of the Receiver and Stanford Investors' Potential Claims*

43.    Plaintiffs of course believe that the claims filed against Greenberg in the Greenberg Action are meritorious and would be successful. However, they are not without substantial risk and uncertainty. Indeed, half of the original case – the Investor Plaintiffs' putative class portion - was dismissed pursuant to the attorney immunity doctrine. Moreover, the ability to collect the maximum value of a judgment from Greenberg is also not without risk and uncertainty. Greenberg vigorously disputes the validity of the remaining Receiver claims asserted in the Greenberg Action. Among others, the following issues are hotly contested and promise years of uncertain litigation:

---

[7]     The claims against Hunton & Williams LLP and Greenberg were brought in the same suit. When addressing the Hunton & Williams claims and settlement, this suit is referred to as the "Hunton & Williams Action."

a. Whether Texas recognizes a claim for aiding and abetting or knowing participation in breaches of fiduciary duty, in light of the Fifth Circuit's holding in *In re Depuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 781 (5th Cir. 2018);[8]

b. whether, if such a claim exists, Greenberg had sufficient knowledge to meet the standards for the Plaintiffs' claims for aiding and abetting or knowing participation in breaches of fiduciary duty;

c. whether the Receiver could satisfy the applicable causation requirement for the claim for aiding and abetting or knowing participation in breaches of fiduciary duty (if such a claim exists) or the claim for negligence;

d. whether the Receiver has valid, supportable damage models;

e. whether, even after a successful judgment in the Greenberg Action, Plaintiffs would be able to collect any more from Greenberg than the Greenberg Settlement already offers.

44.    For these and other reasons, but for the Greenberg Settlement the Greenberg Action would be vigorously defended by Greenberg, its prosecution would be expensive and protracted, and the ultimate outcome of such litigation would be uncertain.  In light of these issues, Plaintiffs believe that the Greenberg Settlement reflects a fair and reasonable compromise between the parties.

### *(3)    The Risk that Litigation Would Dissipate Receivership Assets*

45.    Plaintiffs believe that litigation against Greenberg would most likely go on for

---

[8]    In raising this and other issues herein, Plaintiffs do not concede that these issues would be finally determined adversely to Plaintiffs.

years, with no guarantee of a recovery.  While Plaintiffs' Counsel have entered into contingent

fee arrangements with Plaintiffs to prosecute the claims, the Receiver and the Examiner are paid

by the hour and are involved in overseeing the litigation and coordinating strategy with the

overall Stanford Receivership case and other litigation.  The Greenberg Settlement avoids further

expense associated with the prosecution of the Greenberg Action and continued monitoring and

oversight of the case by the Receiver and the Committee Chairman/Examiner.

46.    Furthermore, as part of their fee agreement with their counsel, the Committee and

Receiver have agreed that the Receiver would fund or reimburse all expenses associated with the

Committee's litigation against Greenberg, including, *inter alia*, expert fees and out-of-pocket

litigation expenses (depositions, court reporters, videographers, travel, copy expenses, etc.).

Because the case against Greenberg involves claims of professional malpractice, expert witness

testimony as to Greenberg is necessary, and expert witness fees have been and would continue to

be a significant expense going forward if the Greenberg Action were not settled.   Expert

testimony at trial would be needed to prove the details of the scheme, as well as to provide

opinions concerning legal malpractice, causation and damages.    Absent the Greenberg

Settlement, additional expert witness fees as to Greenberg's alleged liability and damages could

easily have run into the hundreds of thousands of dollars, with added costs for working with

expert witnesses and examining expert witnesses at trial.  Other out-of-pocket litigation costs

could have been substantial going into trial, including trial graphics, mock trial and jury

consultant expenses, cost of reproduction of documents and trial exhibits, and attendance of

experts at trial.   Thus, total additional out-of-pocket costs to prosecute the claims against

Greenberg would have almost certainly been at least several hundred thousand dollars due to the

complex nature of the claims, the need for expert testimony, and the voluminous nature of the records involved.

### *(4)      The Complexity and Costs of Future Litigation*

47.     The prosecution of the Greenberg Action would undoubtedly be challenging and expensive, as discussed above.  As the Court is aware, the facts and legal analysis of Stanford's scheme are extraordinarily complex.  There is no question that the Greenberg Action, involving claims of legal malpractice, among others, billions of dollars in claimed damages, and an international scheme operated through a complex web of interrelated international companies that spanned nearly 20 years, is extraordinarily complex, and would cause the Receivership Estate to incur substantial expense to litigate to final judgment.  As stated above, additional litigation expenses incurred to try the case could have easily reached several hundred thousand dollars.

### *(5)      The Implications of Greenberg's Settlement Payment on Other Claimants*

48.     As the Fifth Circuit stressed in *Kaleta*, "investors [can] pursue their claims by 'participating in the claims process for the Receiver[ship].'"  530 F. App'x at 362; *See also Zacarias*, 931 F.3d at 398.  The Receiver is not collecting Greenberg's settlement payment for Allen Stanford or for Mr. Janvey, but for the Stanford Investors.  Thus, the relief Plaintiffs request will further "[t]he primary purpose of the equitable receivership [which] is the marshaling of the estate's assets for the benefit of all the aggrieved investors and other creditors of the receivership entities."  *Parish*, 2010 WL 8347143, at *6 (approving settlement and bar order).

### *(6)      The Value and Merits of Any Foreclosed Parties' Potential Claims*

49.     Plaintiffs are conscious of the fact that the Bar Order and Judgment and Bar Order

they are requesting will preclude Stanford Investors and others from asserting claims against Greenberg in connection with its involvement with the Stanford enterprise. Apart from the Investor Plaintiffs who originally filed this action, no other Stanford investors have asserted any claims against Greenberg in the eight (8) years since the Receivership was created. Most importantly, such claims by investors would be barred by the attorney immunity doctrine under *Troice v. Greenberg Traurig, L.L.P.*, 921 F.3d 501 (5th Cir. 2019). Moreover, the Receiver is the only party that has been recognized as having standing to pursue such legal malpractice claims in this Court.

50. Given that all Stanford Investors have been put on notice of the Receivership and have been given opportunities to file claims in the Receivership, and that the vast majority of the Stanford Investors have filed claims and are already participating in the distribution process and will receive a distribution from the Greenberg Settlement, the Stanford Investors' rights are not being unduly prejudiced by the Greenberg Settlement. They have all had the opportunity to participate through the pre-existing receivership claims process.

51. Plaintiffs believe that the Bar Order and Judgment and Bar Order should be approved because they are in the collective best interest of *all* Stanford Investors. The Bar Order and Judgment and Bar Order should not be rejected based upon the possibility that some individual investor(s) or counsel might otherwise wish to pursue individual claims against Greenberg now or in the future, particularly since the Fifth Circuit has held that the investor claims against Greenberg are barred under the doctrine of attorney immunity. *Troice v. Greenberg Traurig, L.L.P.*, 921 F.3d 501 (5th Cir. 2019); *see also Harmelin v. Man Fin. Inc.*, Nos. 06-1944, 05-2973, 2007 WL 4571021, at *4 (E.D. Pa. Dec. 28, 2007) (approving bar order which would not "in any realistic sense, preclude any investors rights, but [would] give the

settling parties the assurance of peace and [eliminate] any future claim that might be filed out of spite or for some other vindictive or improper reason").

52.    For all these reasons, "it is highly unlikely that any such investor could obtain a more favorable settlement than that proposed in the Settlement Agreement, nor one that could benefit *as many* aggrieved investors as stand to be benefited under the Settlement Agreement." *Parish*, 2010 WL 8347143, at *6 (approving settlement and bar order) (emphasis added).

53.    The proposed Greenberg Settlement represents the best opportunity to provide funds quickly to Stanford's victims and to distribute those funds in an orderly fashion, without consumption of additional expenses or a race to the courthouse by various counsel.  Against this backdrop, the Court should approve the Greenberg Settlement and enter the Bar Order and Judgment and Bar Order.

### *(7)    Other Equities Attendant to the Situation*

54.    The entry of the Bar Order and the Judgment and Bar Order is a material term under the Greenberg Settlement Agreement.  Greenberg "would not otherwise secure 'peace' from other litigation if any investors were able to institute their own suit against [Greenberg], potentially in other, including foreign, jurisdictions."  *Harmelin*, 2007 WL 4571021, at *4 (approving settlement and bar order).

55.    Greenberg has made clear that in consideration of paying $65 million, it must achieve "peace" through the Greenberg Settlement to the maximum extent possible consistent with the Court's authority, wholly and finally, with respect to all Stanford-related claims. Greenberg has stated that it would not enter into the Greenberg Settlement without securing such relief, particularly given what it believes are its strong factual and legal defenses.

56.    The Receiver and the Committee were appointed to protect the interests of *all* of

the defrauded investors and other creditors of the Receivership Estate, and to act in a manner that will maximize the eventual distribution to Estate claimants. The proposed Bar Order and Judgment and Bar Order will help maximize the eventual distribution to Receivership Estate claimants of Greenberg's $65 million payment and provide Greenberg the resolution of Stanford-related litigation. Plaintiffs believe that the entry of the Bar Order and Judgment and Bar Order are fully justified by the Settlement Amount being paid by Greenberg. The Court has already enjoined and barred all claims against the settling defendants and related parties pursuant to the settlement with Hunton in this case (Hunton & Williams Action, ECF 265), as well as settlements in the BDO lawsuit (Case No. 3:12-cv-01447-N-BG), the Adams & Reese lawsuit (Case No. 3:12-cv-0495-N), the Chadbourne and Proskauer lawsuit (Case No. 3:13-cv-00477-N-BQ), and the Willis lawsuit (Case No. 3:13-cv-3980), and pursuant to the settlement with Kroll (SEC Action, ECF No. 2363). Movants ask the Court to similarly enjoin and bar all claims and potential claims against the Greenberg Released Parties in order to effectuate the Greenberg Settlement.

57. Plaintiffs and their counsel spent considerable time and effort to reach a settlement that is fair and equitable to the Receivership Estate and the defrauded Stanford Investors. Plaintiffs firmly believe that they could prevail in their causes of action against Greenberg, though Greenberg vigorously denies any wrongdoing or liability, and has indicated that it believes it would successfully defend any claims against it. Greenberg also has the resources, including insurance policies that are being depleted by defense costs, to defend itself and to litigate the issues through a final trial court judgment, and appeal if necessary, which means the litigation would take years to be resolved without a settlement.

58.     Plaintiffs believe that the terms of the Greenberg Settlement Agreement offer the highest net benefit to the Receivership Estate, in terms of maximizing Receivership assets and minimizing the expense to obtain them.

59.     The overall context of the MDL and Stanford Receivership also is relevant to the equities of the situation.  The Stanford Ponzi scheme collapsed over ten  years ago.  The parties – on both sides – are confronted by uncertainty, risk, and delay.  In this circumstance, the example of settlement is to be encouraged.

60.     It additionally bears on the equities that Stanford's victims, including a vast number of retirees, are aging.  For many of Stanford's victims, recovery delayed is recovery denied.  If possible, the time that Stanford's victims have waited to date should not be extended further.

61.     The equities of the Greenberg Settlement, including its Bar Order and Judgment and Bar Order, are also enhanced by the participation and endorsement of the various parties specially constituted to pursue recovery for Stanford's victims.  The Receiver, the Examiner, and the Committee have cooperated and joined together in the Greenberg Settlement.   In this complex international fraud, this level of coordination and quality of resolution are eminently desirable.   The roles and obligations of each of the foregoing parties enhance the equities attending this outstanding conclusion to many years of litigation.  The result of this coordination will be the most orderly distribution to Stanford's victims that possibly can be achieved.

62.     The Court is well within its discretion to approve the Greenberg Settlement and enter the Bar Order and Final Judgment and Bar Order.  Recently, in *Zacarias*, 931 F.3d at 387, the Fifth Circuit upheld this Court's approval of the Willis settlement that was conditioned upon entry of  similar  bar orders enjoining  other  investor lawsuits  filed  against  the settling

defendants in the Willis case. The court held that the bar orders enjoining investors' third-party claims "fall well within the broad jurisdiction of the district court to protect the receivership res," and that the court may bar proceedings that "would undermine the receivership's operation." *Id*. at 389-99.

63.     Similarly, in *SEC v. DeYoung*, 850 F.3d 1172, 1183 (10th Cir. 2017), the Tenth Circuit upheld the district court's entry of a bar order in an SEC receivership settlement similar to the bar order in the Greenberg Settlement, holding that "the district court found that the settlement offered the highest potential recovery for the Receivership Estate and the IRA Account Owners, and that the Claims Bar Order was necessary to that settlement."(citing the district court's opinion in *Kaleta*, this Court's bar order in the BDO lawsuit and several other district court cases approving entry of bar orders similar to the bar order requested in connection with the Greenberg Settlement).

64.     In *Kaleta*, the SEC filed suit against the defendants for violating federal securities laws and defrauding investors. 2012 WL 401069, at *1. The trial court appointed a receiver with similar rights and duties to the Stanford Receiver, including the duty "to preserve the Receivership Estate and minimize expenses in furtherance of maximum and timely disbursements to claimants." *Id*. The *Kaleta* receiver settled with third parties and agreed to a bar order precluding claims against them related to the receivership. The trial court approved the settlement and the bar order, and the Fifth Circuit affirmed. *Kaleta*, 530 F. App'x at 362-63.

65.     In approving the bar order, the district court noted the receiver's "goal of limiting litigation" related to the settling third parties and the Receivership Estate. *Kaleta*, 2012 WL 401069, at *7. "The Bar Order advances that goal by arranging for reasonably prompt collection of the maximum amount of funds possible from the [settling third parties] under the present

litigation and financial circumstances." *Id*.

66.     In another case, a Texas federal district court approved a receivership settlement and entered a bar order preventing litigation against the settling parties.  *SEC v. Temme*, No. 4:11-cv-655, 2014 WL 1493399 (E.D. Tex. Apr. 16, 2014).  The bar order was intended to "prevent duplicative and piecemeal litigation that would only dissipate the limited assets of the Receivership Estate and thus reduce the amounts ultimately distributed by the Receiver to the claimants" and to "protect the [settling third parties] from re-litigation of potentially duplicative liabilities."  *Id.* at *2.[9]

67.     Thus, the Bar Order and Final Judgment and Bar Order requested by the parties in connection with the Greenberg Settlement are well within the Court's discretion and authority for a settlement of this nature and magnitude.

## IV. REQUEST FOR APPROVAL OF ATTORNEYS' FEES AND EXPENSES

### A.     *Terms of Plaintiffs' Counsel's Engagement*

68.     In addition to approving the Greenberg Settlement, Plaintiffs also request that the Court approve an award of attorneys' fees to Plaintiffs' Counsel, consisting of Castillo Snyder, P.C. ("Castillo Snyder"), Clark Hill Strasburger ("Clark Hill"), and Neligan LLP ("Neligan") under the terms of the fee agreement between Plaintiffs' Counsel and the Receiver, the Committee, and the Investor Plaintiffs, as well as reimbursement of expenses incurred in the prosecution of the Greenberg Action. As reflected in the Declaration of Edward C. Snyder, attached as **Exhibit 2** to the Appendix in Support of this Motion, Plaintiffs' Counsel have been

---

[9]     The *Temme* court also approved a similar settlement agreement and bar order preventing litigation against another settling party. *See SEC v. Temme*, No. 4:11–cv–655, (ECF No. 162) (E.D. Tex. Nov. 21, 2012).

handling this action pursuant to 25% contingency fee agreements with the Receiver, the Committee, and the Investor Plaintiffs. *See also* Declarations of Douglas J. Buncher and Judith R. Blakeway attached to the Appendix as **Exhibits 3** and **4,** respectively.

69.     Pursuant to the fee agreements, the Plaintiffs seek Court approval to pay attorneys' fees to Plaintiffs' Counsel equal to an aggregate of 25% of the Net Recovery from the Greenberg Settlement (*i.e.*, the settlement amount less allowable disbursements), and to reimburse Plaintiffs' Counsel as well as the Receiver for expenses they have incurred and carried in the Greenberg Action.   The gross amount of the settlement to be paid by Greenberg is $65,000,000.00.  The expense disbursements for which Plaintiffs seek reimbursement and which are to be deducted from the settlement amount to calculate the Net Recovery from the Greenberg Settlement are **$1,415,056.99**, which are expenses that were incurred in the Greenberg Action and paid by the Receiver directly or reimbursed by the Receiver to Plaintiffs' Counsel pursuant to a fee agreement following court approval of such expenses.  *See* Declaration of Scott D. Powers Decl., Appendix **Exhibit 5,** at ¶ 4.

70.     Thus, the Net Recovery from Greenberg after reimbursement of expenses is **$63,584,943.01**, and 25% of the Net Recovery is **$15,896,235.75**.  This is the fee agreed to be paid to Plaintiffs' Counsel by the Receiver, the Committee, and the Investor Plaintiffs, and this is the amount of the fee for which approval is sought in this Motion.

## B.     *The Proposed Fee is Reasonable as a Percentage of the Overall Recovery*

71.     Trial courts can determine attorneys' fee awards in common fund cases such as this one[10] using different methods.  One is the percentage method, under which a court awards

---

[10]     The common-fund doctrine applies when "a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the

fees based on a percentage of the common fund.  *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 642–43 (5th Cir. 2012).  The Fifth Circuit is "amenable to [the percentage method's] use, so long as the *Johnson* framework is utilized to ensure that the fee award is reasonable."  *Id.* at 643 (citing *Johnson v. Georgia Hwy. Express, Inc*., 488 F.2d 714 (5th Cir. 1974)).[11]  Thus, when considering fee awards in class action cases, "district courts in [the Fifth] Circuit regularly use the percentage method blended with a *Johnson* reasonableness check."  *Id*. (internal citations omitted); *see Schwartz v. TXU Corp.*, No. 3:02–CV–2243–K (lead case), 2005 WL 3148350, at *25 (N.D. Tex. Nov. 8, 2005) (collecting cases).[12]

72.     While the Greenberg Settlement is not a class action settlement, because the settlement is structured as a settlement with the Receiver and the Committee, with the Bar Order and the Judgment and Bar Order, this Motion analyzes the award of attorneys' fees to Plaintiffs' Counsel under the law applicable to class action settlements in an abundance of caution.  In other Stanford litigation settlements, this Court analyzed the pertinent fee requests under both the common fund and *Johnson* approaches.  *Id.* at 3; *see, e.g., Official Stanford Inv'rs Comm. v. BDO USA, LLP*, No. 3:12-cv-01447-N-BG (N.D. Tex. Sep. 23, 2015), ECF No. 80 (approving a

---

fund as a whole." *In re Harmon*, No. 10-33789, 2011 WL 1457236, at *7 (Bankr. S.D. Tex. April 14, 2011) (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)).

[11]     The *Johnson* factors are discussed in Subsection C below.

[12]     While the Fifth Circuit has also permitted analysis of fee awards under the lodestar method, both the Fifth Circuit and other courts in the Northern District of Texas have recognized that the percentage method is the preferred method of many courts.  *Dell*, 669 F.3d at 643; *Schwartz*, 2005 WL 3148350, at *25.  In *Schwartz*, the court observed that the percentage method is "vastly superior to the lodestar method for a variety of reasons, including the incentive for counsel to 'run up the bill' and the heavy burden that calculation under the lodestar method places upon the court." 2005 WL 3148350, at *25.  The court also observed that, because it is calculated based on the number of attorney hours spent on the case, the lodestar method deters early settlement of disputes, such as the settlement in this case.  *Id*.  Thus, there is a "strong consensus in favor of awarding attorneys' fees in common fund cases as a percentage of the recovery."  *Id*. at *26.

25% contingency fee on a $40 million settlement); *see also* SEC Action, ECF No. 2366 (order approving 25% contingency fee on a $35 million settlement with Chadbourne & Parke LLP).

73.     Whether analyzed under the common fund approach, the *Johnson* framework, or both, the 25% fee sought by Plaintiffs' Counsel pursuant to their fee agreements is reasonable and should be approved by the Court.

74.     The proposed 25% amount is a reasonable percentage of the common fund (*i.e.*, the $65 million settlement).  "The vast majority of Texas federal courts and courts in this District have awarded fees of 25%–33% in securities class actions."  *Schwartz*, 2005 WL 3148350, at *31 (collecting cases).  "Indeed, courts throughout this Circuit regularly award fees of 25% and more often 30% or more of the total recovery under the percentage-of-the recovery method." *Id.*[13]  Combined with the *Johnson* analysis set forth below, the proposed fee award is reasonable and appropriate under the common fund doctrine as applied in the Fifth Circuit.

## C.     *The Proposed Fee is Reasonable Under the Johnson Factors*

75.     The *Johnson* factors include: (1) time and labor required; (2) novelty and difficulty of the issues; (3) required skill; (4) whether other employment is precluded; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations; (8) the amount

---

[13]     As set forth in *Schwartz*, courts in the Northern District of Texas have routinely approved such awards.  *See, e.g*, *Southland Secs. Corp. v. INSpire Ins. Solutions, Inc*., No. 4:00–CV–355y (N.D. Tex. Mar. 9, 2005) (Judge Means) (approving fee of 30% in securities class action); *Scheiner v. i2 Techs., Inc.*, Civil Action No. 3:01–CV–418–H (N.D. Tex. Oct. 1, 2004) (Judge Sanders) (approving fee of 25% of $80 million settlement in securities class action); *Hoeck v. Compusa, Inc.*, Civil Action No. 3:98–CV–0998–M (N.D. Tex. Oct. 14, 2003) (Judge Lynn) (awarding 30% fee); *In re Firstplus Fin. Group, Inc. Sec. Litig*., Master File No. 3:98–CV–2551–M (N.D. Tex. Oct. 14, 2003) (Judge Lynn) (awarding 30% fee in securities class action); *Warstadt v. Hastings Entm't, Inc.*, Civil Action No. 2:00–CV–089–J (N.D. Tex. Mar. 10, 2003) (Judge Robinson) (awarding 30% fee in securities class action); *Silver v. UICI*, No. 3:99CV2860–L (N.D. Tex. Mar 3, 2003) (Judge Lindsay) (awarding 30% fee in securities class action); *In re Unistar Fin. Serv. Corp. Sec. Litig*., No. 3:99–CV–1857–D (N.D. Tex. Aug. 17, 2001) (approving 30% fee in a securities class action); *Kisilenko v. STB Sys., Inc*., No. 3:99–CV–2872–M (N.D. Tex. Nov. 3, 2000) (approving 30% fee in a securities class action).

involved and the results obtained; (9) the attorneys' experience, reputation and ability; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Johnson*, 488 F.2d at 717-19.  A review of these factors also reveals that the proposed 25% fee is reasonable and should be approved.

### (1)    Time and Labor Required

76.    As reflected in the Snyder, Blakeway and Buncher Declarations, Plaintiffs' Counsel invested a tremendous amount of time and labor in the Greenberg Action over the last nine years.  Even a cursory review of the Court's docket (there are 360 entries) reveals the immense amount of work that Plaintiffs' Counsel have put into the prosecution of the Greenberg Action since 2012.

77.    Moreover, as the Court is aware, the prosecution of a lawsuit of this magnitude and complexity requires a tremendous amount of time and effort to investigate the facts, research the relevant legal issues, coordinate and strategize with counsel and clients regarding the handling of the cases, conduct discovery, prepare the briefs and motions, attempt to negotiate settlements, and prepare cases for summary judgment and/or trial.  Plaintiffs' Counsel have spent thousands of hours since 2011 (prior to the filing of the case) in their investigation and prosecution of the Greenberg Action.

78.    Plaintiffs' Counsel have spent roughly 8 years and thousands of hours investigating and pursuing claims against Greenberg on behalf of the Stanford Receivership Estate and the Stanford Investors.  Castillo Snyder has invested thousands of hours, worth millions of dollars pursuing and litigating Stanford-related cases since 2009, and has invested over **2,600 hours** of time worth roughly **$1.75 million** at Castillo Snyder's applicable hourly rates specifically in the Greenberg Action, which is time incurred in the case since the settlement

with Hunton was reached in August 2017.  *See* Snyder Decl., at ¶ 42.  Clark Hill Strasburger also has thousands of hours and millions of dollars of time invested in pursuing claims against third parties related to the Stanford Receivership, and **2,162 hours** of attorney and paralegal time worth **$1,428,285** specifically attributable to litigating the claims against Greenberg in the Greenberg Action.  *See* Blakeway Decl., at ¶ 50. Neligan has also invested thousands of hours and millions of dollars pursuing claims against third parties in the Stanford cases as a whole since 2009, and has invested over **2,400 hours** of attorney and paralegal time worth **$1,307,379.00** specifically attributable to litigating the claims against Greenberg in the Greenberg Action.  *See* Buncher Decl., at ¶ 18.

79.     The tremendous amount of work required by Plaintiffs' Counsel to prosecute the Greenberg Action is described in the Snyder, Blakeway and Buncher Declarations, and this Motion.  [*See, e.g.*, Mot. ¶¶ 10-26].

80.     Plaintiffs' Counsels' efforts included, among other things:

- researching, compiling evidence for, and filing the Complaint, Amended Complaint, and Second Amended Complaint;

- reviewing hundreds of thousands of documents and compiling exhibits for depositions and trial;

- contacting and interviewing witnesses in the United States, Mexico, Venezuela, and Antigua;

- obtaining the production of discovery from multiple Defendants;

- reviewing thousands of documents produced by Defendants, the Department of Justice, the SEC, the Receiver, the Joint Liquidators in Antigua and others;

- briefing and defeating motions to dismiss;

- taking the depositions of fact witnesses Yolanda Suarez, Carlos Loumiet, Tony Nunes, Patrick O'Brien, Jane Bates, Rebecca Hamric, Deon Warner, Mark Schnapp, Henry Amadio, Bowman Brown, Burt Bruton, Jennifer Demberg Cohen, Carl Fornaris, Fernando Margarit, Bonnie Moncada, Ronald

Rosengarten, and Greenberg's expert witnesses Charles Stutts, Mark Perlow, Martin Weinstein, Royal Furgeson, David Fuller, Richard Gordon, Stephen Halpert, Roberta Karmel, and Patrick Kelley;

- defending depositions of the Receiver Ralph Janvey, and the Receiver's expert witnesses Karyl Van Tassel, Charles Herring, Thomas Lemke, James Spindler, and Mike Koehler;

- drafting initial disclosures;

- propounding and responding to numerous interrogatories, requests for production and requests for admission;

- drafting protective orders;

- preparing witness files and privilege logs;

- responding to a motion to compel and attending a hearing on the same;

- briefing legal issues such as attorney immunity, *in pari delicto*, participating in breach of fiduciary duty, professional malpractice, damages, causation, indivisible injury, willful ignorance, standing, jurisdiction, joint and several liability, proportionate responsibility, settlement credits, responsible third parties, the Foreign Corrupt Practices Act, the Investment Company Act, and waiver of attorney-client privilege;

- selecting, retaining, and briefing expert witnesses and preparing them for depositions;

- drafting a jury charge, pretrial order, voir dire questions, motions in limine and Daubert motions to exclude or limit expert testimony;

- responding to a motion to designate responsible third parties;

- responding to a motion for summary judgment;

- analyzing all of the contested legal and factual issues posed by the litigation to make accurate demands and evaluations of the settling Defendants' positions;

- preparing mediation submissions;

- engaging in negotiations and three mediations;

- consulting with a jury consultant; and

- twice briefing and arguing in the Fifth Circuit the appeal of dismissal under the attorney immunity doctrine.

- **(2)     Novelty and Difficulty of the Issues**

81.     The factual and legal issues presented in the Greenberg Action were difficult and complex.   Plaintiffs' Counsel's investigation from 2010 through 2012 revealed Greenberg's involvement in representing Stanford's sprawling group of companies and Stanford's control over Caribbean nation of Antigua and persistent evasion of regulatory authorities around the world.

82.     Plaintiffs' Counsel conducted a thorough analysis of the potential claims against Greenberg, considering: claims available under both state and federal law; the viability of those claims considering the facts underlying Greenberg's business dealings with Stanford and this Court's previous rulings; the success of similar claims in other Ponzi scheme cases, both in the Fifth Circuit and elsewhere; as well as defenses raised by Greenberg in their motions to dismiss and mediation position papers.

83.     The Plaintiffs commenced the Greenberg Action by filing their Original Complaint in this Court on November 15, 2012 following over a year of investigation and review of thousands of documents sufficient to build a case against Greenberg.   The case was then confronted by complex and novel issues raised by the defendants via various motions, including the applicability of the attorney immunity doctrine, class certification, the viability of the Receiver's negligence and participation in breach of fiduciary duty claims, and causation and damages theories.

84.     The foregoing summary of the issues faced by Plaintiff's Counsel in their investigation and litigation of the claims against Greenberg illustrates the novelty, difficulty, and complexity of the issues in the Greenberg Action and supports the approval of the proposed fee.

### (3)     Skill Required

85.     Given the complexity of the factual and legal issues presented in the Greenberg Action, the preparation, prosecution, and settlement of that Action required significant skill and effort on the part of Plaintiffs' Counsel.  Plaintiffs' Counsel have represented investor classes as well as receivership and bankruptcy estates on numerous occasions, and have served as counsel for the Receiver, the Committee, and other investor plaintiffs, both individually and as representatives of putative classes of Stanford Investors, in multiple other lawsuits pending before the Court.  Snyder Decl., ¶¶ 5-11; Blakeway Decl., at ¶¶ 4-12; Buncher Decl., at ¶¶ 2-5. Plaintiffs submit that the favorable result in the Greenberg Action is indicative of Plaintiff's Counsel's skill and expertise in matters of this nature.

### (4)     Whether Other Employment is Precluded

86.     Although participation in the Greenberg Action did not necessarily preclude Plaintiffs' Counsel from accepting other employment, the sheer amount of time and resources involved in investigating, preparing, and prosecuting the Greenberg Action, as reflected by the hours invested in the case, significantly reduced Plaintiffs' Counsel's ability to devote time and effort to other matters. Snyder Decl. at ¶¶ 39-43; Blakeway Decl., at ¶¶ 38-40; and Buncher Decl., at ¶¶ 18-21.    Indeed, for most of 2018 and virtually all of 2019, Plaintiffs' Counsel worked almost exclusively on the Greenberg Action. Snyder Decl., at ¶41; Buncher Decl., at ¶ 18.

### (5)   The Customary Fee

87.     The 25% fee requested is substantially below the typical market rate contingency fee percentage of 33% to 40% that most law firms would demand to handle cases of this complexity and magnitude.  *See Schwartz*, 2005 WL 3148350, at *31 (collecting cases and noting that 30% is standard fee in complex securities cases).  "Attorney fees awarded under the percentage method are often between 25% and 30% of the fund."  *Klein*, 705 F. Supp. 2d at 675 (citing *Manual for Complex Litig. (Fourth)* § 14.121 (2010)); *see, e.g.*, *SEC v. Temme*, No.4:11-cv-00655-ALM, at *4–5 (E.D. Tex. November 21, 2012), ECF No. 162 (25% contingent fee for a $1,335,000 receivership settlement); *Billitteri v. Sec. Am., Inc.*, No. 3:09–cv–01568–F (lead case), 2011 WL 3585983, *4–9 (N.D. Tex. 2011) (25% fee for a $80 million settlement); *Klein*, 705 F. Supp. 2d at 675–81 (30% fee for a $110 million settlement).

88.     The Greenberg Action, and the other third-party actions that have been prosecuted for the benefit of the Receivership Estate, are extraordinarily large and complex, involving voluminous records and electronic data and requiring many years of investigation, discovery, and dispositive motions to get to trial.  Indeed, the Greenberg Action was filed 7 years ago.  The Greenberg Action has involved significant financial outlay and risk by Plaintiffs' Counsel, the risk of loss at trial after years of work for no compensation, and an almost certain appeal following any victory at trial.  Plaintiffs' Counsel submit that these factors warrant a contingency fee of more than 25%.  Nonetheless, Plaintiffs' Counsel agreed to handle the Greenberg Action on a 25% contingency fee basis, and that percentage is reasonable given the time and effort required to litigate the Action, its complexity and the risks involved.

### (6)   Whether the Fee is Fixed or Contingent

89.     As set forth above, the fee was contingent upon success against Greenberg.  As a

result, Plaintiffs' counsel bore significant risk in accepting the engagement.

### (7)     Time Limitations

90.     At the time of the Greenberg Settlement, Plaintiffs were subject to significant time limitations in the Greenberg Action, including preparing a massive response to a comprehensive summary judgment motion while also preparing pre-trial materials and preparing for trial.  Indeed, given the breadth and scope of activity in the Greenberg Action over the last 7 years, including almost non-stop heavy briefing and motion practice, and over 30 depositions, Plaintiffs' Counsel has been consistently under deadlines and time pressure.  Had an investor class been certified, the Greenberg Action would have remained pending before the Court and would likely have taken many more years to resolve.

### (8)     The Amount Involved and Results Obtained

91.     As discussed further herein, $65 million represents a substantial settlement and value to the Receivership Estate. This factor also supports approval of the requested fee.

### (9)     The Attorneys' Experience, Reputation, and Ability

92.     As noted above, Plaintiffs' Counsel have represented numerous investor classes, receivers, bankruptcy trustees, and other parties in complex litigation matters related to equity receiverships and bankruptcy proceedings similar to the Stanford receivership proceeding.  *See* ¶ 86 above.  Moreover, Plaintiffs' Counsel have been actively engaged in the Stanford proceeding since its inception.  Given the complexity of the issues in the Greenberg Action, Plaintiffs submit that the Greenberg Settlement is indicative of Plaintiffs' Counsel's ability to obtain a favorable result in such proceedings.

### (10)    The Undesirability of the Case

93.     The Greenberg Action is not *per se* undesirable, although suing other lawyers

does generate some level of stigma within the legal community, which can in certain circumstances result in fewer referrals of new matters.

### (11)    Nature and Length of Professional Relationship with the Client

94.     As the Court is aware, Plaintiffs' Counsel have represented the Receiver, the Committee, and Investor Plaintiffs in numerous actions pending before the Court since 2009. Plaintiffs' Counsel has handled all of these cases on the same 25% contingency fee arrangement that has previously been approved by the Court.  *See* SEC Action, ECF No. 1267, p. 2 ("The Court finds that the fee arrangement set forth in the Agreement is reasonable."); *see also* OSIC-Receiver Agreement, SEC Action, ECF No. 1208, p. 3 (providing a "contingency fee" of twenty-five percent (25%) of any Net Recovery in actions prosecuted by the Committee's designated professionals).  This factor also weighs in favor of approval of the requested fee.

### (12)    Awards in Similar Cases

95.     As noted above, a 25% contingency fee has previously been approved as reasonable by this Court in its order approving the Receiver's agreement with the Committee regarding the joint prosecution of fraudulent transfer and other claims by the Receiver and the Committee (the "OSIC-Receiver Agreement").  *See* SEC Action, ECF No. 1267, p. 2 ("The Court finds that the fee arrangement set forth in the Agreement is reasonable."); *see also* OSIC-Receiver Agreement, SEC Action, ECF No. 1208, Ex. A, p. 3 (providing a "contingency fee" of 25% of any Net Recovery in actions prosecuted by the Committee's designated professionals). The Court's order approving the OSIC-Receiver Agreement also provided that the Committee need not submit a fee application seeking an award of fees consistent with the percentage authorized under the Court's previous order unless required by Rule 23.  *See* SEC Action, ECF No. 1267, p. 2.

96.     The OSIC-Receiver Agreement further provided that the Committee "would prosecute certain fraudulent transfer claims and other actions for the benefit of Stanford investors/creditors in cooperation with Ralph S. Janvey, as receiver."  *See* OSIC-Receiver Agreement, SEC Action, ECF No. 1208, Ex. A, p. 1.  The Agreement further provided that "this proposal will apply to the litigation of all fraudulent transfer and similar claims that may be brought under common law, statute . . . or otherwise . . ." and "unless otherwise agreed, the terms of this agreement will likewise apply to the pursuit of any other claims and causes of action that the Receiver and the Committee determine to jointly pursue."  *Id*. at pp. 1-2.

97.     The contingency fee agreements with Plaintiffs in this case similarly provide for a fee of 25% of the Net Recovery (defined as the total recovery after deducting allowable expenses and disbursements), and were modeled after the OSIC-Receiver Agreement since the parties knew that the Court had already approved a 25% contingency fee agreement.

98.     Further, this Court has approved a 25% contingency fee arrangement in this case for the prior settlement with Hunton & Williams [SEC Action, ECF No. 2702], as well as in the cases against BDO, Adams & Reese, Chadbourne, Proskauer and Willis.  *See* Orders Approving Attorneys' Fees in *Official Stanford Inv'rs Comm. v. BDO USA, LLP*, No. 3:12-cv-01447-N-BG (N.D. Tex. Sep. 23, 2015) [ECF No. 80]; *Ralph S. Janvey v. Adams & Reese, LLP*, Civil Action No. 3:12-CV-00495-B [SEC Action, ECF. No. 2231];*Ralph S. Janvey v. Proskauer Rose, LLP, et al.*, 3:13-cv-00477 [SEC Action, ECF No. 2366] (approving 25% contingency fee on a $35 million settlement with Chadbourne & Parke LLP) and [SEC ECF No. 2820] (approving 25% contingency fee on a $63 million settlement with Proskauer Rose, LLP); and *Ralph S. Janvey v. Willis, et al.* [SEC ECF No. 2567] (approving 25% contingency fee in settlement with BMB Defendants).

99.     As set forth in *Schwartz*, courts in this district have routinely approved 25%, and more often 30%, fee awards in complex securities class actions.  2005 WL 3148350, at \*27 (collecting cases).  Under the circumstances of this case, such an award is appropriate here as well.

**D.     *The Proposed Fee Should Be Approved***

100.     For the same reasons the Court previously found the 25% contingency fee OSIC-Receiver Agreement to be reasonable in the cases referenced above the Court should find the 25% contingency fee applicable to the Greenberg Settlement to be reasonable and approve it for payment.  Here, there is even more reason to find the fee to be reasonable given the vast amount of work and risk undertaken by Plaintiffs' counsel over the last 7 years.  The settlement of the claims against Greenberg has yielded an enormous benefit to the Stanford Receivership Estate and the Stanford Investors and compares favorably to the other settlements of third-party lawsuits in the over ten-year history of the Stanford receivership.  Thus, Plaintiffs submit that an award of attorneys' fees equal to 25% of the net recovery from the Greenberg Settlement, as requested, is reasonable and appropriate and should be approved under applicable Fifth Circuit law, whether using a common fund approach, the *Johnson* factor approach, or a blended approach.

101.     Plaintiffs therefore request that the Court approve the reimbursement, from the Settlement Amount, of expenses advanced by the Receiver and Plaintiffs' Counsel as described herein in the total amount of **$1,415,056.99**, and that the Court approve attorneys' fees in the

total amount of **$15,896,235.75**.[14]  A proposed form of Order Approving Attorneys' Fees is attached as **Exhibit 6** to the Appendix to this Motion.

### E.    *Examiner Support for Fee Award*

102.    John J. Little in his capacity as Court-appointed Examiner also supports the award of Plaintiffs' attorneys' fees, and requests that the Court approve them.  *See* Declaration of Examiner John J. Little, attached as **Exhibit 7** to the Appendix to this Motion.

## V.    CONCLUSION & PRAYER

103.    The Greenberg Settlement represents a substantial and important recovery for the Receivership Estate and the Stanford Investors.  The large amount of the recovery, the time and costs involved in pursuing litigation against Greenberg, and the uncertain prospects for obtaining and then recovering a judgment against Greenberg, all weigh heavily toward approving the Greenberg Settlement, entering the Bar Order, entering the Judgment and Bar Order, and approving the attorneys' fees of Plaintiffs' Counsel.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request this Court:

a.    Enter the proposed Scheduling Order providing for notice and a hearing on this Motion;

b.    Grant this Motion;

c.    Approve the Greenberg Settlement;

d.    Enter the Bar Order in the SEC Action;

e.    Enter the Judgment and Bar Order in the Greenberg Action;

f.    Approve the reimbursement of expenses to the Receiver and Plaintiffs'

---

[14] Expenses will increase slightly from this amount due to costs incurred to give notice of the settlement.

Counsel in the total amount of $1,415,056.99 and payment of attorneys' fees

to Plaintiffs' Counsel in the total amount of $15,896,235.75; and

g.    Grant Plaintiffs all other relief to which they are entitled.

Dated: October 17, 2019.

**CASTILLO SNYDER, P.C.**

By: __*/s/ Edward C. Snyder*_____
   Edward C. Snyder
   esnyder@casnlaw.com
   Jesse R. Castillo
   jcastillo@casnlaw.com
   700 N. St. Mary's Street, Suite 405
   San Antonio, Texas  78205
   (210) 630-4200
   (210) 630-4210 (Facsimile)

**COUNSEL FOR THE PLAINTIFFS**

**NELIGAN, LLP**

By: __*/s/ Douglas J. Buncher*_____
   Douglas J. Buncher
   dbuncher@neliganlaw.com
   Republic Center
   325 N. St. Paul, Suite 3600
   Dallas, Texas  75201
   (214) 840-5320
   (214) 840-5301 (Facsimile)

**CLARK HILL STRASBURGER**

By: *_/s/ Judith R. Blakeway_*___
   Judith R. Blakeway
   judith.blakeway@clarkhillstrasburger.com
   2301 Broadway
   San Antonio, Texas  78215
   Telephone: (210) 250-6000
   Facsimile: (210) 250-6100

## CERTIFICATE OF SERVICE

On October 17, 2019, I electronically submitted the foregoing document with the clerk of the court of the U.S. District Court, Northern District of Texas, using the electronic case filing system of the Court. All parties who have appeared in this proceeding will be served via ECF. Investors and other interested parties will be served and given notice of the hearing on this Motion as approved by the Court.

/s/ Edward C. Snyder_____
Edward C. Snyder