# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff, | § § § | |
| v. | § § | Civil Action No. 3:09-cv-0298-N |
| STANFORD INTERNATIONAL BANK, LTD., et al., | § § § | |
| Defendants. | § § § | |

| | | |
|---|---|---|
| RALPH S. JANVEY, in his capacity as Court-appointed receiver for the Stanford Receivership Estate, the OFFICIAL STANFORD INVESTORS COMMITTEE; and PAM REED, SAMUEL TROICE and MICHOACAN TRUST, individually and on behalf of a class of all others similarly situated, | § § § § § § § § § | Civil Action No. 3:12-cv-04641-N |
| Plaintiffs, | § § | |
| v. | § § | |
| GREENBERG TRAURIG, LLP, and GREENBERG TRAURIG, P.A., | § § § | |
| Defendants. | § § | |

1

**APPENDIX TO EXPEDITED REQUEST FOR ENTRY OF
SCHEDULING[1] ORDER AND MOTION TO APPROVE PROPOSED
SETTLEMENT WITH GREENBERG, TO ENTER THE BAR ORDER,
TO ENTER THE FINAL JUDGMENT AND BAR ORDER,
AND FOR PLAINTIFFS' ATTORNEYS' FEES AND EXPENSES**

Ralph S. Janvey (the "Receiver") and the Official Stanford Investors Committee (the "OSIC"), file this appendix (the "Appendix") in support of the *Expedited Request for Entry of Scheduling Order and Motion to Approve Proposed Settlement with Greenberg, to Enter the Bar Order, to Enter the Final Judgment and Bar Order, and for Plaintiffs' Attorneys' Fees and Expenses* (the "Motion").

---

[1]     Movants request that the Court promptly enter the Scheduling Order, without waiting the twenty one (21) days contemplated by Local Rule 7.1(e) for interested parties to respond to this Motion, because such Scheduling Order merely approves the notice and objection procedure and sets a final hearing, and does not constitute a final approval of the Settlement Agreement.

| Exhibit | Description |
|---------|-------------|
| **APPENDIX MATERIALS** | |
| 1. | Settlement Agreement with Exhibits |
| 2. | Declaration of Edward C. Snyder |
| 3. | Declaration of Doug J. Buncher |
| 4. | Declaration of Judith R. Blakeway |
| 5. | Declaration of Scott Powers |
| 6. | Order Approving Attorneys' Fees |
| 7. | Declaration of John J. Little |

Date:   October 17, 2019.

Respectfully submitted,

**CASTILLO SNYDER, P.C.**

By: */s/ Edward C. Snyder*
   Edward C. Snyder
   esnyder@casnlaw.com
   Jesse R. Castillo
   jcastillo@casnlaw.com
   700 N. St. Mary's Street, Suite 1560
   San Antonio, Texas  78205
   (210) 630-4200
   (210) 630-4210 (Facsimile)

**COUNSEL FOR THE PLAINTIFFS**

**NELIGAN, LLP**

By: */s/ Douglas J. Buncher*
   Douglas J. Buncher
   dbuncher@neliganlaw.com
   Republic Center
   325 N. St. Paul, Suite 3600
   Dallas, Texas  75201
   (214) 840-5320
   (214) 840-5301 (Facsimile)

**CLARK HILL STRASBURGER**

By: */s/ Judith R. Blakeway*
   Judith R. Blakeway
   judith.blakeway@clarkhillstrasburger.com
   2301 Broadway
   San Antonio, Texas  78215
   Telephone: (210) 250-6000
   Facsimile: (210) 250-6100

## CERTIFICATE OF SERVICE

On October 17, 2019, I electronically submitted the foregoing document with the clerk of the court of the U.S. District Court, Northern District of Texas, using the electronic case filing system of the Court. All parties who have appeared in this proceeding will be served via ECF. Investors and other interested parties will be served and given notice of the hearing on this Motion as approved by the Court.

/s/ Edward C. Snyder
Edward C. Snyder

# EXHIBIT 1

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "Agreement") is made and entered into by and between (i) Ralph S. Janvey, solely in his capacity as the court-appointed receiver for the Stanford Receivership Estate (the "Receiver"); (ii) the Official Stanford Investors Committee (the "Committee") (the Receiver and the Committee are collectively referred to as the "Plaintiffs"); and (iii) Greenberg Traurig, P.A. and Greenberg Traurig, LLP (individually and collectively, "Greenberg") (Plaintiffs, on the one hand, and Greenberg, on the other hand, are referred to in this Agreement individually as a "Party" and together as the "Parties");

**WHEREAS**, on February 16, 2009, the U.S. Securities and Exchange Commission (the "SEC") initiated *SEC v. Stanford International Bank, Ltd.*, Civil Action No. 3:09-cv-00298-N (N.D. Tex.) (the "SEC Action"), alleging that Robert Allen Stanford, James M. Davis, Laura Pendergest-Holt, Stanford International Bank, Ltd. ("SIB"), Stanford Group Company, Stanford Capital Management, LLC, and Stanford Financial Group (the "Defendants") had engaged in a fraudulent scheme affecting tens of thousands of customers from over one hundred countries;

**WHEREAS**, in an order dated February 16, 2009, in the SEC Action (ECF No. 10), the United States District Court for the Northern District of Texas (the "Court") assumed exclusive jurisdiction and took possession of the assets, and other tangible and intangible monies and property, as further set forth in that order, of the Defendants and all entities they own or control (the "Receivership Assets"), and the books and records, client lists, account statements, financial and accounting documents, computers, computer hard drives, computer disks, internet exchange servers, telephones, personal digital devices and other informational resources of or in possession of the Defendants, or issued by Defendants and in possession of any agent or employee of the Defendants (the "Receivership Records");

1

**WHEREAS**, in that same order (ECF No. 10), Ralph S. Janvey was appointed Receiver for the Receivership Assets and the Receivership Records (collectively, the "Receivership Estate") with the full power of an equity receiver under common law as well as such powers as are enumerated in that order, as amended by an order in that same matter, dated March 12, 2009 (ECF No. 157), and as further amended by an order entered in that same matter, dated July 19, 2010 (ECF No. 1130);

**WHEREAS**, Ralph S. Janvey has served as Receiver continuously since his appointment and continues to so serve;

**WHEREAS**, John J. Little was appointed to serve as examiner (the "Examiner") by an order entered in the SEC Action, dated April 20, 2009 (ECF No. 322), to assist the Court in considering the interests of the worldwide investors in any financial products, accounts, vehicles or ventures sponsored, promoted or sold by any defendants in the SEC Action;

**WHEREAS**, John J. Little has served as Examiner continuously since his appointment and continues to so serve;

**WHEREAS**, the Committee was created pursuant to an order entered in the SEC Action, dated August 10, 2010 (ECF No. 1149) (the "Committee Order"), to represent the customers of SIB, who, as of February 16, 2009, had funds on deposit at SIB, and/or were holding certificates of deposit ("CDs") issued by SIB (the "Stanford Investors");

**WHEREAS**, by the Committee Order, the Examiner was named as the initial Chairperson of the Committee;

**WHEREAS**, the Examiner has served as Chairperson of the Committee continuously since his appointment and continues to so serve;

**WHEREAS**, on November 15, 2012, the Receiver, the Committee, Samuel Troice, Michoacan Trust, and Sandra Dorrell (Samuel Troice, Michoacan Trust, Sandra Dorrell, and Pam Reed who was later substituted for Sandra Dorell, and the putative class they sought to represent, are referred to collectively herein as the "Investor Plaintiffs") filed their Original Complaint – Class Action (the "Complaint") captioned *Janvey et al. v. Greenberg Traurig, LLP*, *et al.*, Case No. 3:12-cv-04641-N (N.D. Tex.) (the "Litigation") naming Greenberg as one of several defendants;

**WHEREAS**, by Orders in the Litigation dated December 17, 2014 (ECF No. 114), and February 4, 2015 (ECF No. 123), the Court granted in part and denied in part Greenberg's motions to dismiss the Complaint, dismissing with prejudice (i) the Receiver's and Committee's claims for aiding and abetting fraudulent transfers; (ii) the Investor Plaintiffs' TSA claims for aiding and abetting and civil conspiracy for the sale of unregistered securities and the sale of securities by an unregistered dealer arising from sales taking place prior to February 1, 2008; and (iii) the Investor Plaintiffs' TSA claims for aiding and abetting and civil conspiracy for the sale of securities through untruth or omission arising from sales taking place prior to February 1, 2006; dismissing without prejudice the Receiver and Committee's claims for breach of fiduciary duty; and declining to dismiss the Plaintiffs' other claims against Greenberg;

**WHEREAS**, by Order in the Litigation dated September 11, 2015 (ECF No. 146), the Court permitted the substitution of Pam Reed for Sandra Dorrell as a named plaintiff and putative class representative in the Litigation;

**WHEREAS**, by Order in the Litigation dated December 5, 2017 (ECF 251), the Court granted Greenberg's Motion for Judgment on the Pleadings (ECF 203) as to the claims by the Investor Plaintiffs;

3

WHEREAS, on October 12, 2018, the Receiver and the Investor Plaintiffs filed their Amended Complaint, and on November 19, 2018, the Receiver and the Investor Plaintiffs filed their Second Amended Complaint (the "Second Amended Complaint") against Greenberg;

WHEREAS, the Second Amended Complaint asserts "Receiver Claims" for Aiding, Abetting, or Participation in Breaches of Fiduciary Duties, Breaches of Fiduciary Duties, Fraudulent Transfer/Unjust Enrichment, and Negligent Retention/Negligent Supervision; and "Investor Class Causes of Action" for Aiding and Abetting Violations of the Texas Securities Act, Participation in/Aiding and Abetting Breach of Fiduciary Duty, Aiding and Abetting/Participation in a Fraudulent Scheme, Civil Conspiracy, and Respondeat Superior; seeks actual and punitive damages; and omits the Committee from the list of parties, and brings no claims on behalf of the Committee;

WHEREAS, on April 17, 2019, the Fifth Circuit affirmed the Order in the Litigation dated December 5, 2017 (ECF 251) in which the Court granted Greenberg's Motion for Judgment on the Pleadings (ECF 203) as to the claims by the Investor Plaintiffs, and the dismissal of the claims of the Investor Plaintiffs and affirmance are final and not subject to reopening or further proceedings;

WHEREAS, Greenberg filed a Motion for Judgment on the Pleadings with Brief in Support (ECF 292 & 293) and a Motion for Summary Judgment with Brief and Appendix in Support (ECF 340, 341 & 342), the Receiver opposed both motions, and said motions have not been decided;

WHEREAS, Greenberg expressly denies any and all allegations of wrongdoing, fault, liability, or damages whatsoever and is entering into this Agreement solely to avoid the burden, very substantial expense, and risks of litigation;

WHEREAS, Plaintiffs have conducted an investigation into the facts and the law relating to the Litigation and after considering the results of that investigation and the benefits of this Settlement, as well as the burden, expense, and risks of litigation, have concluded that a settlement with Greenberg under the terms set forth below is fair, reasonable, adequate, and in the best interests of the Plaintiffs, the Interested Parties, the Investor Plaintiffs, and all Persons affected by the Stanford Entities, and have agreed to enter into the Settlement and this Agreement, and to use their best efforts to effectuate the Settlement and this Agreement;

WHEREAS, the Parties desire to fully, finally, and forever compromise and effect a global settlement and discharge of all claims, disputes, and issues between them;

WHEREAS, the Parties have engaged in extensive, good-faith, and arm's-length negotiations, including participation in the following mediations by representatives of the Parties: a mediation in 2012 with McGowan Dispute Resolution in Houston, Texas; a mediation in May, 2018 with Phillips ADR in Corona del Mar, California; and a mediation in May, 2019 with Judge Alice Oliver-Parrot in Dallas, Texas; and in further discussions following the conclusion of the aforementioned mediations, leading to this Agreement;

WHEREAS, absent approval of this Settlement, the Litigation will likely take many more years and cost the Parties millions of dollars to litigate to final judgment and through appeals, and the outcome of all such litigation would have been uncertain;

WHEREAS, in *Zacarias v. Stanford Int'l Bank, Ltd.*, 931 F.3d 382, 387 (5th Cir. 2019), the Fifth Circuit confirmed approval of a settlement that was conditioned on bar orders enjoining related Ponzi-scheme suits filed against the defendants in that litigation and entry of the bar orders;

5

WHEREAS, the Examiner, both in his capacity as Chairperson of the Committee and in his capacity as the Court-appointed Examiner, participated in the negotiation of the Settlement;

WHEREAS, the Committee has approved this Agreement and the terms of the Settlement, as evidenced by the signature hereon of the Examiner in his capacity as Chairperson of the Committee;

WHEREAS, the Examiner, in his capacity as Examiner, has reviewed this Agreement and the terms of the Settlement and, as evidenced by his signature hereon, has approved this Agreement and the terms of the Settlement and will recommend that this Agreement, and the terms of the Settlement be approved by the Court and implemented;[1] and

WHEREAS, the Receiver has reviewed and approved this Agreement and the terms of the Settlement, as evidenced by his signature hereon;

NOW, THEREFORE, in consideration of the agreements, covenants, and releases set forth herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

## I.   Agreement Date

1.     This Agreement shall take effect once all Parties have signed the Agreement as of the date of the last signature to the Agreement (the "Agreement Date").

## II.   Terms Used in this Agreement

The following terms, as used in this Agreement, the Bar Order (defined in Paragraph 20), and the Judgment and Bar Order (defined in Paragraph 20), have the following meanings:

---

[1] The Examiner has also executed this Agreement to confirm his obligation to post Notice on his website, as required herein, but is not otherwise individually a party to the Settlement or the Litigation.

2.       "Attorneys' Fees" means those fees awarded by the Court to Plaintiffs' counsel from the Settlement Amount pursuant to the terms of the applicable engagement agreements.

3.       "Greenberg Released Parties" means Greenberg Traurig, LLP, Greenberg Traurig, P.A., and all of their predecessor firms and, of each of the foregoing, all of their respective past and present subsidiaries, parents, predecessors, affiliates, related entities and divisions, and all of their respective past, present, and future successors, and all of their respective current and former partners, members, counsel, principals, participating principals, associates, managing or other agents, management personnel, officers, directors, shareholders, administrators, servants, employees, staff, consultants, advisors, attorneys, accountants, lenders, insurers and reinsurers, representatives, successors and assigns, known or unknown, in their representative capacity or individual capacity.   Notwithstanding the foregoing, "Greenberg Released Parties" shall not include (x) any Person, other than Greenberg, who is a party to one or more of the actions or proceedings listed in Exhibit G (i) against whom, on the Agreement Date, the Receiver or the Committee is asserting claims or causes of action in any such action or proceeding, or (ii) with whom, as of the Agreement Date, the Receiver or the Committee has entered into a settlement agreement relating to any such action or proceeding and final approval of such settlement agreement remains pending; or (y) any Person, other than Greenberg, who is a party to one or more of the actions or proceedings listed in Exhibit H with whom, as of the Agreement Date, the Receiver or the Committee has entered into a settlement agreement relating to any such action or proceeding and final approval of such settlement agreement remains pending, provided, however, that to the extent that any such Persons are insurers or reinsurers of Greenberg, such Persons shall nonetheless be included in the definition of "Greenberg Released Parties" in their capacity, but only in their capacity, as insurers or reinsurers of Greenberg.

4.        "Claim" means a Person's potential or asserted right to receive funds from the Receivership Estate or the funds and assets subject to the authority of the Joint Liquidators (defined below).

5.        "Claimant" means any Person who has submitted a Claim to the Receiver or to the Joint Liquidators (defined below).  Where a Claim has been transferred to a third party and such transfer has been acknowledged by the Receiver or the Joint Liquidators, the transferee is a Claimant, and the transferor is not a Claimant unless the transferor has retained a Claim that has not been transferred.  Where the Receiver or the Joint Liquidators have disallowed a Claim and the disallowance has become Final, then the submission of the disallowed Claim does not make the Person who submitted it a Claimant.

6.        "Confidential Information" means the communications and discussions in connection with the negotiations and mediations that led to the Settlement and this Agreement. Confidential Information also includes the existence and terms of the Settlement and this Agreement, but only until the filing of this Agreement and related documents with the Court.

7.        "Distribution Plan" means the plan hereafter approved by the Court for the distribution of the Settlement Amount (net of any attorneys' fees or costs that are awarded by the Court) to Stanford Investors who have had their Claims allowed by the Receiver ("Allowed Claims").

8.        "Final" means unmodified after the conclusion of, or expiration of any right of any Person to pursue, any and all possible forms and levels of appeal, reconsideration, or review, judicial or otherwise, including by a court or Forum of last resort, wherever located, whether automatic or discretionary, whether by appeal or otherwise. The Bar Order and Judgment and Bar

8

Order shall include findings under Federal Rule of Civil Procedure 54(b) and will become Final as set forth in this paragraph as though such orders were entered as judgments at the end of a case, and the continuing pendency of the SEC Action and the Litigation shall not be construed as preventing such Bar Order and Judgment and Bar Order from becoming Final.

9.      "Forum" means any court, adjudicative body, tribunal, or jurisdiction, whether its nature is federal, foreign, state, administrative, regulatory, arbitral, local, or otherwise.

10.     "Hearing" means a formal proceeding in open court before the United States District Judge having jurisdiction over the SEC Action and the Litigation.

11.     "Interested Parties" means the Receiver; the Receivership Estate; the Committee; the members of the Committee; the Plaintiffs; the Investor Plaintiffs; the Stanford Investors; the Claimants; the Examiner; the Joint Liquidators; or any Person or Persons alleged by the Receiver, the Committee, or other Person or entity on behalf of the Receivership Estate to be liable to the Receivership Estate, whether or not a formal proceeding has been initiated.

12.     "Joint Liquidators" means Hugh Dickson and Mark McDonald, in their capacities as the joint liquidators appointed by the Eastern Caribbean Supreme Court in Antigua and Barbuda to take control of and manage the affairs and assets of SIB or any of their successors or predecessors.

13.     "Notice" means a communication, in substantially the form attached hereto as **Exhibit A**, describing (a) the material terms of the Settlement; (b) the material terms of this Agreement; (c) the rights and obligations of the Interested Parties with regard to the Settlement and this Agreement; (d) the deadline for the filing of objections to the Settlement, the Agreement, the Bar Order, and the Judgment and Bar Order; and (e) the date, time, and location of the Hearing

to consider final approval of the Settlement, this Agreement, the Bar Order, and the Judgment and Bar Order.

14.     "Person" means any individual, entity, governmental authority, agency or quasi-governmental person or entity, worldwide, of any type, including, without limitation, any individual, partnership, corporation, limited liability company, estate, trust, committee, fiduciary, association, proprietorship, organization, or business, regardless of location, residence, or nationality.

15.     "Plaintiffs Released Parties" means the Receiver, the Examiner, the Committee, and each of their counsel.  Plaintiffs Released Parties also includes each of the foregoing persons' respective past, present, and future directors, officers, legal and equitable owners, shareholders, members, managers, principals, employees, associates, representatives, distributees, agents, attorneys, trustees, general and limited partners, lenders, insurers and reinsurers, direct and indirect parents, subsidiaries, affiliates, related entities, divisions, partnerships, corporations, executors, administrators, heirs, beneficiaries, assigns, predecessors, predecessors in interest, successors, and successors in interest.

16.     "Releasor" means any Person granting a release of any Settled Claim.

17.     "Settled Claim" means any action, cause of action, suit, liability, claim, right of action, right of levy or attachment, or demand whatsoever, whether or not currently asserted, known, suspected, existing, or discoverable, and whether based on federal law, state law, foreign law, common law, or otherwise, and whether based on contract, tort, statute, law, equity or otherwise, that a Releasor ever had, now has, or hereafter can, shall, or may have, directly, representatively, derivatively, or in any other capacity, for, upon, arising from, relating to, or by reason of any matter, cause, or thing whatsoever, that, in full or in part, concerns, relates to, arises

10

out of, or is in any manner connected with (i) the Stanford Entities; (ii) any CD, depository account, or investment of any type with any one or more of the Stanford Entities; (iii) Greenberg's relationship with any one or more of the Stanford Entities and/or any of their personnel; (iv) Greenberg's provision of services to or for the benefit of or on behalf of the Stanford Entities; or (v) any matter that was asserted in, could have been asserted in, or relates to the subject matter of the SEC Action, the Litigation, or any proceeding concerning the Stanford Entities pending or commenced in any Forum.  "Settled Claims" specifically includes, without limitation, all claims each Releasor does not know or suspect to exist in his, her, or its favor at the time of release, which, if known by that Person, might have affected their decisions with respect to this Agreement and the Settlement ("Unknown Claims"). Each Releasor expressly waives, releases, and relinquishes any and all provisions, rights, and benefits conferred by any law or principle, in the United States or elsewhere, which governs or limits the release of unknown or unsuspected claims, including, without limitation, California Civil Code § 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Each Releasor acknowledges that he, she, or it may hereafter discover facts different from, or in addition to, those which such Releasor now knows or believes to be true with respect to the Settled Claims, but nonetheless agrees that this Agreement, including the releases granted herein, will remain binding and effective in all respects notwithstanding such discovery. Unknown Claims include contingent and non-contingent claims, whether or not concealed or hidden, without regard to the subsequent discovery or existence of different or additional facts. These provisions concerning unknown and unsuspected claims and the inclusion of Unknown Claims in the

11

definition of Settled Claims were separately bargained for and are an essential element of this Agreement and the Settlement.

18.     "Settlement" means the agreed resolution of the Settled Claims in the manner set forth in this Agreement.

19.     "Settlement Amount" means Sixty-Five Million Dollars ($65,000,000.00) in United States currency.

20.     "Settlement Effective Date" means the date on which the last of all of the following have occurred:

a.     entry in the SEC Action of a bar order including findings under Federal Rule of Civil Procedure 54(b) and in substantially the form attached hereto as **Exhibit B** (the "Bar Order");

b.     entry in the Litigation of a judgment and bar order in substantially the form attached hereto as **Exhibit C** (the "Judgment and Bar Order"); and

c.     the Bar Order and the Judgment and Bar Order have both become Final.

21.     "Stanford Entities" means Robert Allen Stanford; James M. Davis; Laura Pendergest-Holt; Gilbert Lopez; Mark Kuhrt; SIB; Stanford Group Company; Stanford Capital Management, LLC; Stanford Financial Group; the Stanford Financial Bldg Inc.; the entities listed in **Exhibit D** to this Agreement; and any entity of any type that was owned, controlled by, or affiliated with Robert Allen Stanford, James M. Davis, Laura Pendergest-Holt, Gilbert Lopez, Mark Kuhrt, SIB, Stanford Group Company, Stanford Capital Management, LLC, Stanford Financial Group, or the Stanford Financial Bldg Inc., on or before February 16, 2009.

12

22.    "Taxes" means any and all taxes, whether federal, state, local, or other taxes related to the Settlement or the Settlement Amount, and costs incurred in connection with such taxation including, without limitation, the fees and expenses of tax attorneys and accountants.

## III.    Delivery of Settlement Amount

23.    Dismissal of Litigation: The Litigation shall be fully and finally resolved and concluded and considered dismissed as to Greenberg by the Judgment and Bar Order being entered in the Litigation and becoming Final.

24.    Delivery of Settlement Amount: Within thirty (30) days after the Settlement Effective Date, Greenberg shall deliver or cause to be delivered the Settlement Amount to the Receiver by wire transfer in accordance with wire transfer instructions provided by the Receiver for purposes of receiving the payment.

## IV.    Use and Management of Settlement Amount

25.    Management and Distribution of Settlement Amount: If and when the Settlement Amount is delivered to the Receiver pursuant to the terms of this Agreement, the Receiver shall receive and take custody of the Settlement Amount and shall maintain, manage, and distribute the Settlement Amount in accordance with the Distribution Plan and under the supervision and direction and with the approval of the Court. The Receiver shall be responsible for all Taxes, fees, and expenses that may be due with respect to the Settlement Amount or the management, use, administration, or distribution of the Settlement Amount.

26.    No Liability: Greenberg and the Greenberg Released Parties shall have no liability, obligation, or responsibility whatsoever with respect to the investment, management, use, administration, or distribution of the Settlement Amount or any portion thereof, including, but not limited to, the costs and expenses of such investment, management, use, administration, or distribution of the Settlement Amount, and any Taxes arising therefrom or relating thereto.

13

Nothing in this Paragraph 26 shall alter Greenberg's obligations to deliver the Settlement Amount to the Receiver pursuant to the terms of this Agreement.

## V. Motion for Scheduling Order, Bar Order, and Judgment and Bar Order and Form and Procedure for Notice

27.    Motion: On a date mutually acceptable to the Parties that is not more than thirty (30) days from the Agreement Date, unless otherwise agreed by the Parties in writing, via e-mail or otherwise, Plaintiffs shall submit to the Court a motion requesting entry of an order substantially in the form attached hereto as **Exhibit E** (the "Scheduling Order") (a) preliminarily approving the Settlement; (b) approving the content and plan for publication and dissemination of Notice; (c)  setting the date by which any objection to the Settlement or this Agreement must be filed; and (d) scheduling a Hearing to consider final approval of the Settlement and entry of the orders required by Paragraph 20 of this Agreement. With respect to the content and plan for publication and dissemination of Notice, Plaintiffs will propose that Notice in substantially the form attached hereto as **Exhibit A**, be sent via electronic mail, first-class mail or international delivery service to all Interested Parties; sent via electronic service to all counsel of record for any Person who is, at the time of Notice, a party in any case included in *In re Stanford Entities Securities Litigation*, MDL No. 2099 (N.D. Tex.) (the "MDL"), the SEC Action, or the Litigation who are deemed to have consented to electronic service through the Court's CM/ECF System under Local Rule CV-5.1(d); sent via facsimile transmission and/or first class mail to any other counsel of record for any other Person who is, at the time of service, a party in any case included in the MDL, the SEC Action, or the Litigation; and posted on the websites of the Receiver and the Examiner along with complete copies of this Agreement and all filings with the Court relating to the Settlement, this Agreement, and approval of the Settlement.  Plaintiffs will further propose that Notice in substantially the form attached hereto as **Exhibit F** be published once in the national edition of

*The Wall Street Journal* and once in the international edition of *The New York Times*. In advance of filing the motion papers to accomplish the foregoing, Plaintiffs shall provide Greenberg with a reasonable opportunity to review and comment on such motion papers.

28.    <u>Notice Preparation and Dissemination</u>: The Receiver shall be responsible for the preparation and dissemination of the Notice pursuant to this Agreement and as directed by the Court. In the absence of intentional refusal by the Receiver to prepare and disseminate Notice pursuant to this Agreement or a court order, no Interested Party or any other Person shall have any recourse against the Receiver with respect to any claims that may arise from or relate to the Notice process. In the case of intentional refusal by the Receiver to prepare and disseminate Notice pursuant to this Agreement or a court order, Greenberg shall not have any claim against the Receiver other than the ability to seek specific performance. The Parties do not intend to give any other Person any right or recourse against the Receiver in connection with the Notice process.

29.    <u>No Recourse Against Greenberg</u>: No Interested Party or any other Person shall have any recourse against Greenberg or the Greenberg Released Parties with respect to any claims that may arise from or relate to the Notice process.

30.    <u>Motion Contents</u>: In the motion papers referenced in Paragraph 27 above, Plaintiffs shall request that the Court, *inter alia*:

a.    approve the Settlement and its terms as set out in this Agreement;

b.    enter an order finding that this Agreement and the releases set forth herein are final and binding on the Parties;

c.    enter in the SEC Action a Bar Order in the form attached hereto as **Exhibit B**; and

d.      enter in the Litigation a Judgment and Bar Order in the form attached hereto as **Exhibit C**.

31.      <u>Parties to Advocate</u>: The Parties shall take all reasonable steps to advocate for and encourage the Court to approve the terms of this Agreement and to advocate for and encourage the Court to apply the releases and bar orders to as broad a population as is within the Court's authority to do.

32.      <u>No Challenge</u>: No Party shall challenge the approval of the Settlement, and no Party will encourage or assist any Interested Party in challenging the Settlement.

## VI.   <u>Rescission if the Settlement is Not Finally Approved or the Bar Order and Judgment and Bar Order are Not Entered</u>

33.      <u>Right to Withdraw</u>: The Parties represent and acknowledge that the following were necessary to the Parties' agreement to this Settlement, are each an essential term of the Settlement and this Agreement, and that the Settlement would not have been reached in the absence of these terms: (a) Court approval of the Settlement and the terms of this Agreement without amendment or revision; (b) entry by the Court of the Bar Order in the SEC Action in substantially the form attached hereto as **Exhibit B**; (c) entry by the Court of the Judgment and Bar Order in the Litigation in substantially the form attached hereto as **Exhibit C**; and (d) all such approvals and orders becoming Final, pursuant to Paragraphs 8 and 20 of this Agreement.  If the Court refuses to provide the approvals described in (a); if the Court refuses to enter the bar orders described in (b) or (c) without material modification; or if the final result of any appeal from the approvals and orders described in (a), (b), or (c) is that any of the approvals or orders are not affirmed, in their entirety and without material modification or limitation, then any Party has the right to withdraw its agreement to the Settlement and to this Agreement by providing to all other Parties written notice of such withdrawal, within fourteen (14) days of the order or judicial determination giving rise to

the right to withdraw.  The effective date of the withdrawal will be twenty-one (21) days after the notice of same, during which time the Parties agree to work together in good faith to attempt to negotiate an alternative settlement that either does not require court approval or that addresses the circumstances that led to the denial of the approval of this Settlement Agreement or the request for entry of the bar orders.  For purposes of this Section VI, the Party making the election to withdraw has the sole and absolute discretion to determine whether a modification or limitation to the approvals or bar orders described in (a), (b) or (c) is material.  Notwithstanding anything in this Agreement to the contrary, however, the following shall not give Greenberg a right to withdraw: a determination by either 1) the Court after an objection by a non-Party filed in response to the motion or application to approve the settlement, or 2) the United States Court of Appeals for the Fifth Circuit or the United States Supreme Court that the Court lacks authority to cause the release of the claims of, or to enforce the bar orders contained in the Judgment and Bar Order against, a person or entity other than a Party in the Litigation.  Further, the Parties agree that for the purposes of both this paragraph and Paragraph 20, the Bar Order and Judgment and Bar Order ultimately entered by the Court or as modified as a result of any appeal will be considered to be substantially in the form of Exhibits B and C notwithstanding any determination by the Court or the Fifth Circuit or the United States Supreme Court that the Bar Order and Judgment and Bar Order shall not release, or bar the claims of, a person or group of persons who are not Parties to the Litigation.

34.     In the event that any Party withdraws its agreement to the Settlement or this Agreement as allowed in paragraph 33, this Agreement will be null and void and of no further effect whatsoever, shall not be admissible in any ongoing or future proceedings for any purpose whatsoever (except for the provisions of paragraph 33 and this paragraph 34, which shall survive), and shall not be the subject or basis for any claims by any Party against any other Party.  If any

17

Party withdraws from this Agreement pursuant to the terms of paragraph 33, then each Party shall be returned to such Party's respective position immediately prior to such Party's execution of the Agreement.

35.     The Parties do not have the right to withdraw from, or otherwise terminate, the Agreement for any reason other than the reasons identified in Paragraph 33.  The following paragraphs of this Agreement shall survive termination of the Agreement:  33, 34, 35, 46 and 47.

## VII.   **Distribution Plan**

36.     <u>Duties</u>: The Receiver, with the approval and guidance of the Court, shall be solely responsible for preparing, filing a motion seeking approval of, and implementing the Distribution Plan including, without limitation, receiving, managing and disbursing the Settlement Amount. The Receiver owes no duties to Greenberg or the Greenberg Released Parties in connection with the distribution of the Settlement Amount or the Distribution Plan, and if the Receiver complies with all orders issued by the Court relating to the Distribution Plan neither Greenberg nor the Greenberg Released Parties may assert any claim or cause of action against the Receiver in connection with the distribution of the Settlement Amount or the Distribution Plan. In no event will the Receiver or the Receivership Estate be liable for damages or the payment or re-payment of funds of any kind as a result of any deficiency associated with the distribution of the Settlement Amount or the Distribution Plan.

37.     <u>Distribution by Check</u>: The Receiver must include the following statement, without alteration (except that additional releasees may be included if the Receiver includes in the distribution check funds from settlements with such other releasees), on the reverse of all checks sent to Claimants pursuant to the Distribution Plan, above where the endorser will sign:

BY ENDORSING THIS CHECK, I RELEASE ALL CLAIMS, KNOWN OR NOT, AGAINST GREENBERG TRAURIG, P.A. AND GREENBERG TRAURIG, LLP, THEIR PARTNERS, AND

18

EMPLOYEES (WHETHER CURRENT OR PAST), ARISING FROM OR RELATING TO STANFORD INTERNATIONAL BANK, LTD. OR ANY OF ITS RELATED ENTITIES AND ACCEPT THIS PAYMENT IN FULL SATISFACTION THEREOF.

38.   No Responsibility: Greenberg and the Greenberg Released Parties shall have no responsibility, obligation, or liability whatsoever with respect to the terms, interpretation, or implementation of the Distribution Plan; the administration of the Settlement; the management, investment, or distribution of the Settlement Amount or any other funds paid or received in connection with the Settlement; the payment or withholding of Taxes that may be due or owing by the Receiver or any recipient of funds from the Settlement Amount; the determination, administration, calculation, review, or challenge of claims to the Settlement Amount, any portion of the Settlement Amount, or any other funds paid or received in connection with the Settlement or this Agreement; or any losses, attorneys' fees, expenses, vendor payments, expert payments, or other costs incurred in connection with any of the foregoing matters. As of the Settlement Effective Date, the Plaintiffs, the Plaintiffs Released Parties, the Interested Parties, and all other individuals, persons or entities Plaintiffs represent or on whose behalf Plaintiffs have been empowered to act by any court fully, finally, and forever release, relinquish, and discharge Greenberg and the Greenberg Released Parties from any and all such responsibility, obligation, and liability.

**VIII.   Releases, Covenant Not to Sue, and Permanent Injunction**

39.   Release of Greenberg Released Parties: As of the Settlement Effective Date, each of the Plaintiffs, including, without limitation, the Receiver on behalf of the Receivership Estate (including the Stanford Entities but not including the natural persons listed in Paragraph 21 of this Agreement), fully, finally, and forever release, relinquish, and discharge, with prejudice, all Settled Claims against Greenberg and the Greenberg Released Parties.

19

40. <u>Release of Plaintiffs Released Parties</u>: As of the Settlement Effective Date, Greenberg fully, finally, and forever releases, relinquishes, and discharges, with prejudice, all Settled Claims against Plaintiffs Released Parties.

41. <u>No Release of Obligations Under Agreement</u>: Notwithstanding anything to the contrary in this Agreement, the releases and covenants contained in this Agreement do not release the Parties' rights and obligations under this Agreement or the Settlement, nor do they bar the Parties from enforcing or effectuating this Agreement or the Settlement.

42. <u>Covenant Not to Sue</u>: Effective as of the Agreement Date, Plaintiffs covenant not to, directly or indirectly, or through a third party, institute, reinstitute, initiate, commence, maintain, continue, file, encourage, solicit, support, participate in, collaborate in, or otherwise prosecute against any of the Greenberg Released Parties any action, lawsuit, cause of action, claim, investigation, demand, complaint, or proceeding, whether individually, derivatively, on behalf of a class, as a member of a class, or in any other capacity whatsoever, concerning or relating to the Settled Claims, whether in a court or any other Forum.  Effective as of the Agreement Date, Greenberg covenants not to, directly or indirectly, or through a third party, institute, reinstitute, initiate, commence, maintain, continue, file, encourage, solicit, support, participate in, collaborate in, or otherwise prosecute against any of the Plaintiffs Released Parties any action, lawsuit, cause of action, claim, investigation, demand, complaint, or proceeding, whether individually, derivatively, on behalf of a class, as a member of a class, or in any other capacity whatsoever, concerning or relating to the Settled Claims, whether in a court or any other Forum. Notwithstanding the foregoing, however, the Parties retain the right to sue for alleged breaches of this Agreement.

## IX.     Representations and Warranties

43.     No Assignment, Encumbrance, or Transfer: The Plaintiffs, other than the Receiver, represent and warrant that they are the owners of the Settled Claims that they are releasing under this Agreement and that they have not, in whole or in part, assigned, encumbered, sold, pledged as security, or in any manner transferred or compromised any of the Settled Claims that they are releasing under this Agreement.  The Receiver represents and warrants that he is the owner of the Settled Claims that he is releasing under this Agreement and that, other than assigning those Settled Claims against Greenberg that the Receiver transferred to the Committee, he has not, in whole or in part, assigned, encumbered, sold, pledged as security, or in any manner transferred or compromised any of the Settled Claims that he is releasing under this Agreement.  Greenberg represents that it is the owner of the Settled Claims that it is releasing under this Agreement and that it has not, in whole or in part, assigned, encumbered, sold, pledged as security, or in any manner transferred or compromised any of the Settled Claims that it is releasing under this Agreement.

44.     Bar Order. The Parties represent and warrant to each other that, other than the Litigation, they are not presently aware of (a) any undismissed or otherwise extant claim or action against any of the Greenberg Released Parties concerning (i) the Settled Claims or (ii) the wrongdoing of the Stanford Entities that was the subject of the Second Amended Complaint, or (b) any person or entity intending to file such an action.  The Parties further represent and warrant to each other that they are not aware of a current decision of the Fifth Circuit or Supreme Court invalidating the Bar Order.

45.     Authority: Each person executing this Agreement or any related documents represents and warrants that he or she has the full authority to execute the documents on behalf of the entity each represents and that each has the authority to take appropriate action required or

21

permitted to be taken pursuant to this Agreement to effectuate its terms. The Committee represents and warrants that the Committee has approved this Agreement in accordance with the by-laws of the Committee.

## X.  No Admission of Fault or Wrongdoing

46.   The Settlement, this Agreement, and the negotiation and mediation thereof shall in no way constitute, be construed as, or be evidence of an admission or concession of any violation of any statute or law; of any fault, liability, or wrongdoing; or of any infirmity in the claims or defenses of the Parties with regard to any of the complaints, claims, allegations, or defenses asserted or that could have been asserted in the Litigation or any other proceeding relating to any Settled Claim, or any other proceeding in any Forum. The Settlement and this Agreement are a resolution of disputed claims in order to avoid the risk and very substantial expense of protracted litigation. The Settlement, this Agreement, and evidence thereof shall not be used, directly or indirectly, in any way, in the Litigation, the SEC Action, or in any other proceeding, other than to enforce the terms of the Settlement and this Agreement.

## XI.  Confidentiality

47.   Confidentiality: Except as necessary to obtain Court approval of this Agreement, to provide the Notices as required by this Agreement, or to enforce the terms of the Settlement and this Agreement, the Parties and their counsel will keep confidential and shall not publish, communicate, or otherwise disclose, directly or indirectly, in any manner whatsoever, Confidential Information to any Person except that (i) a Party may disclose Confidential Information to a person or entity to whom disclosure is required pursuant to law or regulation, but only after providing prompt notice to the other Parties; (ii) Greenberg shall be permitted to disclose to its own officers, shareholders, employees, affiliates, current and potential insurers, insurance brokers, lawyers, auditors or accountants, on a confidential or attorney-client basis, the Settlement, the Agreement,

22

its terms, the amount of the Settlement, and information about the Settlement negotiations; and (iii) a Party may disclose Confidential Information to a person or entity if the Party has obtained prior written consent from all other Parties.  Notwithstanding anything else in this Agreement or otherwise, such consent may be transmitted by e-mail.

**XII.**   **Non-Disparagement**

48.    In connection with the Settlement and this Agreement, Plaintiffs and their counsel shall not make, disseminate, or publish any statement outside of Court, including a statement in the press, that would denigrate or embarrass Greenberg, or that is otherwise negative or derogatory towards Greenberg.  Nothing in this paragraph shall prevent the Receiver or his counsel from reporting the Receiver's activities to the Court, the Examiner, or the SEC; from responding as necessary to inquiries from the Court or other governmental authorities; or from carrying out any of the Receiver's duties under any order addressing the scope of the Receiver's duties, including but not limited to the Second Amended Receivership Order (SEC Action, ECF No. 1130) or other order addressing the scope of the Receiver's duties.

49.    In connection with the Settlement and this Agreement, Greenberg  and its counsel shall not make, disseminate, or publish any statement outside of Court, including a statement in the press, which would denigrate or embarrass Plaintiffs.  Nothing in this paragraph shall prevent Greenberg from reporting its activities to the Court; from responding as necessary to inquiries from the Court or other governmental authorities; from taking any step it believes, in its sole and absolute discretion, is necessary to enforce the Settlement or this Agreement; from responding to any request by Plaintiffs or any other person for discovery from Greenberg in any other litigation related to the Stanford Entities or any subpoena or request for production; or from discussing the Settled Claims, the Settlement, and this Agreement with its own officers, shareholders, employees, affiliates, current and potential insurers, insurance brokers, lawyers, auditors or accountants.

50.     Except as otherwise provided herein, the Parties shall not make any statement about the Settled Claims or the claims in the Second Amended Complaint  except that Plaintiffs may say "Plaintiffs "believe that the claims against Greenberg were valid," and Greenberg may say "We believe we had no liability on the claims."

## XIII.   **Miscellaneous**

51.     <u>Final and Complete Resolution</u>: The Parties intend this Agreement and the Settlement to be and constitute, to the greatest extent possible, a final, complete, and worldwide resolution of all matters and disputes between (1) the Plaintiffs Released Parties, and the Interested Parties, on the one hand, and (2) the Greenberg Released Parties on the other hand, and this Agreement, including its exhibits, shall be interpreted to effectuate this purpose.

52.     <u>Binding Agreement</u>: As of the Agreement Date, this Agreement shall be binding upon and shall inure to the benefit of the Parties and their respective heirs, executors, administrators, successors, and assigns. No Party may assign any of its rights or obligations under this Agreement without the express written consent of the other Parties.

53.     <u>Incorporation of Recitals</u>: The Recitals (i.e. "whereas" clauses) contained in this Agreement are essential terms of this Agreement and are incorporated herein for all purposes.

54.     <u>Disclaimer of Reliance</u>: The Parties represent and acknowledge that in negotiating and entering into the Settlement and this Agreement they have not relied on, and have not been induced by, any representation, warranty, statement, estimate, communication, or information, of any nature whatsoever, whether written or oral, by, on behalf of, or concerning any Party, any agent of any Party, or otherwise, except as expressly set forth in this Agreement. To the contrary, each of the Parties affirmatively represents and acknowledges that the Party is relying solely on the express terms contained within this Agreement. The Parties have each consulted with legal counsel and advisors, have considered the advantages and disadvantages of entering into the

Settlement and this Agreement, and have relied solely on their own judgment and the advice of their respective legal counsel in negotiating and entering into the Settlement and this Agreement.

55.    Third-Party Beneficiaries: This Agreement is not intended to and does not create rights enforceable by any Person other than the Parties (or their respective heirs, executors, administrators, successors, and assigns, as provided in Paragraph 52 of this Agreement), except that the Greenberg Released Parties and the Plaintiff Released Parties are third-party beneficiaries of and may enforce the release or covenant not to sue as it relates to said Person.

56.    Negotiation, Drafting, and Construction: The Parties agree and acknowledge that they each have reviewed and cooperated in the preparation of this Agreement, that no Party should or shall be deemed the drafter of this Agreement or any provision hereof, and that any rule, presumption, or burden of proof that would construe this Agreement, any ambiguity, or any other matter, against the drafter shall not apply and is waived. The Parties are entering into this Agreement freely, after good-faith, arm's-length negotiation, with the advice of counsel, and in the absence of coercion, duress, and undue influence. The titles and headings in this Agreement are for convenience only, are not part of this Agreement, and shall not bear on the meaning of this Agreement. The words "include," "includes," or "including" shall be deemed to be followed by the words "without limitation." The words "and" and "or" shall be interpreted broadly to have the most inclusive meaning, regardless of any conjunctive or disjunctive tense. Words in the masculine, feminine, or neuter gender shall include any gender. The singular shall include the plural and vice versa. "Any" shall be understood to include and encompass "all," and "all" shall be understood to include and encompass "any."

57.    Cooperation: The Parties agree to execute any additional documents reasonably necessary to finalize and carry out the terms of this Agreement. In the event a third party or any

Person other than a Party at any time challenges any term of this Agreement or the Settlement, including the Bar Order and the Judgment and Bar Order, the Parties agree to cooperate with each other, including using reasonable efforts to make documents or personnel available as needed to defend any such challenge. Further, the Parties shall reasonably cooperate to defend and enforce each of the orders required under Paragraph 20 of this Agreement.

58.   <u>Notice</u>: Any notices, documents, or correspondence of any nature required to be sent pursuant to this Agreement shall be transmitted by both e-mail and overnight delivery to the following recipients, and will be deemed transmitted upon receipt by the overnight delivery service.

<u>If to Greenberg</u>:

Greenberg Traurig LLP
Attn: General Counsel
Martin I. Kaminsky
Met Life Building
200 Park Avenue
New York, NY 10166
Telephone: (212) 801-6892
Facsimile: 212-805-5523
Email: kaminskym@gtlaw.com

and

Stuart H. Singer
Boies Schiller Flexner LLP
401 East Las Olas Blvd.
Suite 1200
Fort Lauderdale, FL 33304
Telephone: (954) 356-0011
Facsimile: (954) 356-0022
E-mail: ssinger@bsfllp.com

and

Murray Fogler
Fogler, Brar, Ford, O'Neil & Gray LLP
909 Fannin, Suite 1640
Houston, Texas 77010

Telephone: (713) 481-1010
Facsimile: (713) 574-3224
E-mail: mfogler@fbfog.com


If to Plaintiffs:

Edward C. Snyder
Castillo Snyder, PC
One Riverwalk Place
700 N. St. Mary's, Suite 405
San Antonio, Texas 78205
Telephone: 210-630-4200
Fax: 210-630-4210
E-mail:  esnyder@casnlaw.com

and

Douglas J. Buncher
Neligan LLP
325 N. St. Paul, Suite 3600
Dallas, Texas 75201
Telephone: 214-840-5320
Fax: 214-840-5301
E-mail: dbuncher@neliganlaw.com

and

Judith R. Blakeway
Clark Hill Strasburger
2301 Broadway
San Antonio, Texas 78215
Telephone:     (210) 250-6004
Facsimile:      (210) 258-2706
E-mail:  judith.blakeway@clark hillstrasburger.com

and

John J. Little
Little Pedersen Fankhauser LLP
901 Main Street, Suite 4110
Dallas, Texas 75202
Telephone:  214.573.2307
Fax: 214.573.2323
E-mail: jlittle@lpf-law.com

and

Ralph S. Janvey
2100 Ross Ave
Suite 2600
Dallas, TX 75201
E-mail: rjanvey@kjllp.com

and

Kevin Sadler
Baker Botts
1001 Page Mill Road
Building One, Suite 200
Palo Alto, California 94304-1007
E-mail: kevin.sadler@bakerbotts.com

Each Party shall provide notice of any change to the service information set forth above to all other Parties by the means set forth in this paragraph.

59.     Choice of Law: This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Texas, without regard to the choice-of-law principles of Texas or any other jurisdiction.

60.     Mandatory, Exclusive Forum Selection Clause: Any dispute, controversy, or claim arising out of or related to the Settlement or this Agreement, including breach, interpretation, effect, or validity of this Agreement, whether arising in contract, tort, or otherwise, shall be brought exclusively in the United States District Court for the Northern District of Texas.  With respect to any such action, the Parties irrevocably stipulate and consent to personal and subject matter jurisdiction and venue in such court, and waive any argument that such court is inconvenient, improper, or otherwise an inappropriate forum.

61.     United States Currency: All dollar amounts in this Agreement are expressed in United States dollars.

62.     Timing: If any deadline imposed by this Agreement falls on a non-business day, then the deadline is extended until the next business day.

28

63.     <u>Waiver</u>: The waiver by a Party of any breach of this Agreement by another Party shall not be deemed a waiver of any other prior or subsequent breach of this Agreement.

64.     <u>Exhibits</u>: The exhibits annexed to this Agreement are incorporated by reference as though fully set forth in this Agreement.

65.     <u>Integration and Modification</u>: This Agreement sets forth the entire understanding and agreement of the Parties with respect to the subject matter of this Agreement and supersedes all prior agreements, understandings, negotiations, and communications, whether oral or written, with respect to such subject matter. Neither this Agreement, nor any provision or term of this Agreement, may be amended, modified, revoked, supplemented, waived, or otherwise changed except by a writing signed by all of the Parties.

66.     <u>Counterparts and Signatures</u>: This Agreement may be executed in one or more counterparts, each of which for all purposes shall be deemed an original but all of which taken together shall constitute one and the same instrument.  A signature delivered by fax or other electronic means shall be deemed to be, and shall have the same binding effect as, a handwritten, original signature.

        IN WITNESS HEREOF, the Parties have executed this Agreement signifying their agreement to the foregoing terms.

Ralph S. Janvey, in his capacity as the
Receiver for the Stanford Receivership
Estate

_____          Date: _10/17/19_

29

John J. Little, in his capacity as Examiner

Date: 10/15/2019

_____

Official Stanford Investors Committee

Date: 10/15/2019

_____

By:  John J. Little, Chairperson

Greenberg Traurig, PA and Greenberg
Traurig, LLP

Date:_____

_____

By: Martin I. Kaminsky
Title:

John J. Little, in his capacity as Examiner

Date: _____

_____

Official Stanford Investors Committee

Date: _____

_____

By:   John J. Little, Chairperson

Greenberg Traurig, PA and Greenberg
Traurig, LLP

_____

By: Martin I. Kaminsky
Title:

Date: Oct 10, 2019

30

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                              Plaintiff,<br><br>v.<br><br>STANFORD INTERNATIONAL BANK, LTD, *et al.*,<br>                              Defendants. | Civil Action No. 3:09-cv-00298-N |
| RALPH S. JANVEY, in his capacity as Court-appointed receiver for the Stanford Receivership Estate; the OFFICIAL STANFORD INVESTORS COMMITTEE; PAM REED; SAMUEL TROICE; and MICHOACAN TRUST; individually and on behalf of a class of all others similarly situated,<br>                              Plaintiffs,<br><br>v.<br><br>GREENBERG TRAURIG, LLP; HUNTON & WILLIAMS, LLP; AND YOLANDA SUAREZ,<br>                              Defendants. | Civil Action No. 3:12-cv-04641-N |

## NOTICE OF SETTLEMENT AND BAR ORDER PROCEEDINGS

PLEASE TAKE NOTICE that Ralph S. Janvey, in his capacity as the Court-appointed Receiver for the Stanford Receivership Estate (the "Receiver") and the Official Stanford Investors Committee (the "Committee") (the Receiver and the Committee, collectively, the "Plaintiffs"), have reached an agreement (the "Settlement Agreement") to settle all claims

**EXHIBIT A**

asserted or that could have been asserted against Greenberg Traurig, P.A. and Greenberg Traurig, LLP (individually and collectively, "Greenberg") in *Janvey v. Greenberg Traurig LLP et al.*, No. 3:12-cv-04641-N (N.D. Tex.) (the "Litigation").

PLEASE TAKE FURTHER NOTICE that the Plaintiffs have filed an Expedited Request for Entry of Scheduling Order and Motion to Approve Proposed Settlement with Greenberg, to Approve the Proposed Notice of Settlement with Greenberg, to Enter the Bar Order, to Enter the Rule 54(b) Final Judgment and Bar Order, and for Plaintiffs' Attorneys' Fees (the "Motion"), filed in *SEC v. Stanford Int'l Bank, Ltd.*, No. 3:09-cv-0298-N (N.D. Tex.) (the "SEC Action"). Copies of the Settlement Agreement, the Motion, and other supporting papers may be obtained from the Court's docket in the SEC Action (ECF No. ____), and are also available on the websites of the Receiver (http://www.stanfordfinancialreceivership.com) and the Examiner (www.lpf-law.com/examiner-stanford-financial-group/). Copies of these documents may also be requested by email, by sending the request to Nadia Ramon at legalassistant@casnlaw.com; or by telephone, by calling (210) 630-4200. All capitalized terms not defined in this Notice of Settlement and Bar Order Proceedings are defined in the Settlement Agreement, attached as Exhibit 1 of the Appendix to the Motion.

PLEASE TAKE FURTHER NOTICE that the Motion requests that the Court approve the Settlement and enter a bar order permanently enjoining, among others, Interested Parties,[1]

---

[1]  "Interested Parties" means the Receiver; the Receivership Estate; the Committee; the members of the Committee; the Plaintiffs; the Investor Plaintiffs; the Stanford Investors; the Claimants; the Examiner; or any Person or Persons alleged by the Receiver, the Committee, or other Person or entity on behalf of the Receivership Estate to be liable to the Receivership Estate, whether or not a formal proceeding has been initiated.

**EXHIBIT A**

including Stanford Investors,[2] Investor Plaintiffs,[3] Claimants,[4] and Joint Liquidators[5] from pursuing Settled Claims,[6] including claims you may possess, against Greenberg.

PLEASE TAKE FURTHER NOTICE that the settlement amount is sixty-five million U.S. dollars ($65,000,000.00) (the "Settlement Amount"). The Settlement Amount, less any fees and costs awarded by the Court to the attorneys for Plaintiffs and expenses paid by the Receiver (the "Net Settlement Amount"), will be deposited with and distributed by the Receiver pursuant to a Distribution Plan hereafter to be approved by the Court in the SEC Action (*see* subparagraph e below).

**This matter may affect your rights and you may wish to consult an attorney.**

The material terms of the Settlement Agreement are as follows:

---

[2]   "Stanford Investors" means customers of Stanford International Bank, Ltd., who, as of February 16, 2009, had funds on deposit at Stanford International Bank, Ltd., and/or were holding certificates of deposit issued by Stanford International Bank, Ltd.

[3]   "Investor Plaintiffs" means Samuel Troice, Michoacan Trust, Sandra Dorrell, Pam Reed, and the putative class they sought to represent.

[4]   "Claimants" means any Persons who have submitted a Claim to the Receiver or to the Joint Liquidators.

[5]   "Joint Liquidators" means Hugh Dickson and Mark McDonald, in their capacities as the joint liquidators appointed by the Eastern Caribbean Supreme Court in Antigua and Barbuda to take control of and manage the affairs and assets of SIB or any of their successors or predecessors.

[6]   "Settled Claim" generally means any action, cause of action, suit, liability, claim, right of action, right of levy or attachment, or demand whatsoever, whether or not currently asserted, known, suspected, existing, or discoverable, and whether based on federal law, state law, foreign law, common law, or otherwise, and whether based on contract, tort, statute, law, equity or otherwise, that a Releasor ever had, now has, or hereafter can, shall, or may have, directly, representatively, derivatively, or in any other capacity, for, upon, arising from, relating to, or by reason of any matter, cause, or thing whatsoever, that, in full or in part, concerns, relates to, arises out of, or is in any manner connected with (i) the Stanford Entities; (ii) any CD, depository account, or investment of any type with any one or more of the Stanford Entities; (iii) Greenberg's relationship with any one or more of the Stanford Entities and/or any of their personnel; (iv) Greenberg's provision of services to or for the benefit of or on behalf of the Stanford Entities; or (v) any matter that was asserted in, could have been asserted in, or relates to the subject matter of the SEC Action, the Litigation, or any proceeding concerning the Stanford Entities pending or commenced in any Forum. "Settled Claims" specifically includes, without limitation, all claims each Releasor does not know or suspect to exist in his, her, or its favor at the time of release, which, if known by that Person, might have affected their decisions with respect to this Agreement and the Settlement ("Unknown Claims"). *See* Paragraph 17 of the Settlement Agreement for a complete definition of Settled Claim. (ECF No. __.)

3

**EXHIBIT A**

a) Greenberg will pay $65 million, which will be deposited with the Receiver as required pursuant to the Settlement Agreement;

b) Plaintiffs will fully release the Greenberg Released Parties[7] from Settled Claims, *e.g.*, claims arising from or relating to Robert Allen Stanford, the Stanford Entities,[8] or any conduct by the Greenberg Released Parties relating to Robert Allen Stanford or the Stanford Entities, with prejudice;

c) The Settlement Agreement seeks entry of a Rule 54(b) Final Judgment and Bar Order in the Litigation, and entry of a Final Bar Order in the SEC Action, each of which permanently enjoins, among others, Interested Parties, including all Stanford Investors, Investor Plaintiffs, and Claimants, from bringing, encouraging, assisting, continuing, or prosecuting, against Greenberg or any of the Greenberg Released Parties, the Litigation, or any action, lawsuit, cause of action, claim, investigation, demand, complaint, or proceeding of any nature, including, without limitation, contribution or indemnity claims, arising from or relating to a Settled Claim;

---

[7] "Greenberg Released Parties" generally means Greenberg Traurig, LLP, Greenberg Traurig, P.A., and all of their predecessor firms and, of each of the foregoing, all of their respective past and present subsidiaries, parents, predecessors, affiliates, related entities and divisions, and all of their respective past, present, and future successors, and all of their respective current and former partners, members, counsel, principals, participating principals, associates, managing or other agents, management personnel, officers, directors, shareholders, administrators, servants, employees, staff, consultants, advisors, attorneys, accountants, lenders, insurers and reinsurers, representatives, successors and assigns, known or unknown, in their representative capacity or individual capacity. *See* Paragraph 3 of the Settlement Agreement for a complete definition of Greenberg Released Parties. (ECF No. __.)

[8] "Stanford Entities" means Robert Allen Stanford; James M. Davis; Laura Pendergest-Holt; Gilbert Lopez; Mark Kuhrt; SIB; Stanford Group Company; Stanford Capital Management, LLC; Stanford Financial Group; the Stanford Financial Bldg Inc.; the entities listed in Exhibit D to the Settlement Agreement (ECF No. __); and any entity of any type that was owned, controlled by, or affiliated with Robert Allen Stanford, James M. Davis, Laura Pendergest-Holt, Gilbert Lopez, Mark Kuhrt, SIB, Stanford Group Company, Stanford Capital Management, LLC, Stanford Financial Group, or the Stanford Financial Bldg Inc., on or before February 16, 2009.

4

**EXHIBIT A**

d) The Receiver will disseminate notice of the Settlement Agreement (i.e. this Notice) to Interested Parties, through one or more of the following: mail, email, international delivery, CM/ECF notification, facsimile transmission, and/or publication on the websites maintained by the Examiner (www.lpf-law.com/examiner-stanford-financial-group/) and the Receiver (http://www.stanfordfinancialreceivership.com);

e) The Receiver will develop and submit to the Court for approval a plan for distributing the Net Settlement Amount (the "Distribution Plan");

f) Under the Distribution Plan, once approved, the Net Settlement Amount will be distributed by the Receiver, under the supervision of the Court, to Stanford Investors who have submitted Claims that have been allowed by the Receiver;

g) Persons who accept funds from the Settlement Amount will, upon accepting the funds, fully release the Greenberg Released Parties from any and all Settled Claims; and

h) The Litigation will be dismissed with prejudice as to Greenberg, with each party bearing its own costs and attorneys' fees.

Attorneys for the Plaintiffs seek a fee award based upon 25% of the Settlement Amount, pursuant to 25% contingency fee agreements with the Plaintiffs. Twenty-Five percent of the net recovery from the Settlement is to be calculated but shall not exceed $15,896,235.75.

The final hearing on the Motion is set for [_____] (the "Final Approval Hearing"). Any objection to the Settlement Agreement or its terms, the Motion, the Rule 54(b) Final Judgment and Bar Order, the Final Bar Order, or the request for approval of the Plaintiffs' attorneys' fees must be filed, in writing, with the Court in the SEC Action no later than [insert

5

**EXHIBIT A**

==date of 21st day before Final Approval Hearing==].  Any objections not filed by this date will be deemed waived and will not be considered by the Court.  Those wishing to appear and to orally present their written objections at the Final Approval Hearing must include a request to so appear within their written objections.

6

**EXHIBIT A**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:09-CV-0298-N |
| STANFORD INTERNATIONAL BANK, LTD., *et al.*, | § § § | |
| Defendants. | § § | |

<u>**FINAL BAR ORDER**</u>

Before the Court is the Expedited Request for Entry of Scheduling Order and Motion to Approve Proposed Settlement with Greenberg, to Approve the Proposed Notice of Settlement with Greenberg, to Enter the Bar Order, to Enter the Rule 54(b) Final Judgment and Bar Order, and for Plaintiffs' Attorneys' Fees (the "Motion") of Ralph S. Janvey, in his capacity as the Court-appointed Receiver for the Stanford Receivership Estate (the "Receiver"), and the Court-appointed Official Stanford Investors Committee (the "Committee"), the plaintiffs in *Janvey et al. v. Greenberg Traurig, LLP et al.*, Civil Action No. 3:12-cv-04641-N (N.D. Tex.) (the "Litigation") (the Receiver and the Committee, collectively, the "Plaintiffs"). (ECF No. ____.) The Motion concerns a proposed settlement (the "Settlement") among and between the Plaintiffs and Greenberg Traurig, P.A. and Greenberg Traurig, LLP (individually and collectively, "Greenberg"), two of the defendants in the Litigation. Plaintiffs and Greenberg are referred to together as the "Parties." John J. Little, the Court-appointed Examiner (the "Examiner") signed

**EXHIBIT B**

the Settlement Agreement[1] as chair of the Committee and as Examiner solely to evidence his support and approval of the Settlement and to confirm his obligation to post the Notice on his website, but is not otherwise individually a party to the Settlement or the Litigation.

Following notice and a hearing, and having considered the filings and heard the arguments of counsel, the Court hereby GRANTS the Motion.

## I. INTRODUCTION

The Litigation and this case both arise from a series of events leading to the collapse of Stanford International Bank, Ltd. ("SIBL"). On February 16, 2009, this Court appointed Ralph S. Janvey to be the Receiver for SIBL and related parties (the "Stanford Entities"). (ECF No. 10). After years of diligent investigation, the Plaintiffs believe that they have identified claims against a number of third parties, including Greenberg, which Plaintiffs allege enabled the Stanford Ponzi scheme. In the Litigation, the Plaintiffs assert claims against Greenberg, and other defendants in that action, for negligence, aiding and abetting breaches of fiduciary duties, breaches of fiduciary duties, fraudulent transfer/unjust enrichment, aiding and abetting fraudulent transfers, negligent retention, aiding and abetting violations of the Texas Securities Act, aiding and abetting a fraudulent scheme, and civil conspiracy.[2] Greenberg denies that it is liable for any of those claims and asserts numerous defenses to each of those claims.

---

[1]   The "Settlement Agreement" refers to the Settlement Agreement that is attached as Exhibit 1 of the Appendix to the Motion (ECF No. __).

[2]   In addition to Plaintiffs, claims were also originally brought by Samuel Troice, Michoacan Trust, Sandra Dorrell, and Pam Reed, who was substituted for Sandra Dorell, on behalf of themselves and a putative class. (Samuel Troice, Michoacan Trust, Sandra Dorrell, and Pam Reed, and the putative class they sought to represent, are referred to collectively herein as the "Investor Plaintiffs.") By Orders in the Litigation dated December 17, 2014 (ECF No. 114), and February 4, 2015 (ECF No. 123), the Court granted in part and denied in part Greenberg's motions to dismiss the Complaint, dismissing with prejudice (i) the Receiver's and Committee's claims for aiding and abetting fraudulent transfers; (ii) the Investor Plaintiffs' TSA claims for

EXHIBIT B

Multiparty settlement negotiations occurred in 2012, and additional settlement negotiations between Greenberg and Plaintiffs occurred in late 2018 and into 2019. In these negotiations, potential victims of the Stanford Ponzi scheme were well-represented. The Committee—which the Court appointed to "represent[] in this case and related matters" the "customers of SIBL who, as of February 16, 2009, had funds on deposit at SIBL and/or were holding certificates of deposit issued by SIBL (the 'Stanford Investors')" (ECF No. 1149)—the Receiver, and the Examiner—who the Court appointed to advocate on behalf of "investors in any financial products, accounts, vehicles or ventures sponsored, promoted or sold by any Defendant in this action" (ECF No. 322)—all participated in these extensive, arm's-length negotiations. In August 2019, the Parties reached agreement resulting in the Settlement. For several weeks thereafter, the Parties continued efforts to negotiate and document the terms of the Settlement Agreement.

Under the terms of the Settlement, Greenberg will pay $65 million (the "Settlement Amount") to the Receivership Estate, which (less attorneys' fees and expenses) will be distributed to Stanford Investors. In return, Greenberg seeks total peace with respect to all claims that have been, or could have been, asserted against Greenberg or any other of the Greenberg Released Parties, arising out of the events leading to these proceedings. Accordingly,

---

aiding and abetting and civil conspiracy for the sale of unregistered securities and the sale of securities by an unregistered dealer arising from sales taking place prior to February 1, 2008; (iii) the Investor Plaintiffs' TSA claims for aiding and abetting and civil conspiracy for the sale of securities through untruth or omission arising from sales taking place prior to February 1, 2006; dismissing without prejudice the Receiver and Committee's claims for breach of fiduciary duty; and declining to dismiss the other claims against Greenberg. By Order in the Litigation dated December 5, 2017 (ECF No. 251), the Court granted Greenberg's Motion for Judgment on the Pleadings (ECF No. 203) as to the claims by the Investor Plaintiffs, and on April 17, 2019, the Fifth Circuit Court of Appeals affirmed this Order; the dismissal of the claims of the Investor Plaintiffs and affirmance are final and not subject to reopening or further proceedings. In addition, in the Second Amended Complaint, dated November 19, 2018, claims on behalf of the Committee were dropped.

**EXHIBIT B**

the Settlement is conditioned on the Court's approval and entry of this Final Bar Order enjoining those Interested Parties over whom the Court has authority to do so from asserting or prosecuting claims against Greenberg or any other of the Greenberg Released Parties.

On October 17, 2019, the Plaintiffs filed the Motion. (ECF No. ____). The Court thereafter entered a Scheduling Order on____ __, 2019 (ECF No. ____), which, *inter alia*, authorized the Receiver to provide notice of the Settlement, established a briefing schedule on the Motion, and set the date for a hearing. On _____, the Court held the scheduled hearing. For the reasons set forth herein, the Court finds that the terms of the Settlement Agreement are adequate, fair, reasonable, and equitable, and that the Settlement should be and is hereby **APPROVED**. The Court further finds that entry of this Final Bar Order is appropriate and necessary.

## II. ORDER

It is hereby **ORDERED, ADJUDGED, AND DECREED** as follows:

1.      Terms used in this Final Bar Order that are defined in the Settlement Agreement, unless expressly otherwise defined herein, have the same meaning as in the Settlement Agreement (which is deemed incorporated herein by reference).

2.      The Court has "broad powers and wide discretion to determine the appropriate relief in [this] equity receivership," including the authority to enter the Final Bar Order. *SEC v. Kaleta*, 530 F. App'x 360, 362 (5th Cir. 2013) (internal quotations omitted). Moreover, the Court has jurisdiction over the subject matter of this action, and the Plaintiffs are proper parties to seek entry of this Final Bar Order.

3.      The Court finds that the methodology, form, content, and dissemination of the Notice: (i) were implemented in accordance with the requirements of the Scheduling Order;

**EXHIBIT B**

(ii) constituted the best practicable notice; (iii) were reasonably calculated, under the circumstances, to apprise all Interested Parties of the Settlement, the releases therein, and the injunctions provided for in this Final Bar Order and in the Rule 54(b) Final Judgment and Bar Order to be entered in the Litigation; (iv) were reasonably calculated, under the circumstances, to apprise all Interested Parties of the right to object to the Settlement, this Final Bar Order, and the Rule 54(b) Final Judgment and Bar Order to be entered in the Litigation, and to appear at the Final Approval Hearing; (v) were reasonable and constituted due, adequate, and sufficient notice; (vi) met all applicable requirements of law, including, without limitation, the Federal Rules of Civil Procedure, the United States Constitution (including Due Process), and the Rules of the Court; and (vii) provided to all Persons a full and fair opportunity to be heard on these matters.

4.      The Court finds that the Settlement, including, without limitation, the Settlement Amount, was reached following an extensive investigation of the facts and resulted from vigorous, good faith, arm's-length, mediated negotiations involving experienced and competent counsel. The Court further finds that (i) significant issues exist as to the merits and value of the claims asserted against Greenberg by Plaintiffs and by others whose potential claims are foreclosed by this Final Bar Order; (ii) such claims contain complex and novel issues of law and fact that would require a substantial amount of time and expense to litigate, with uncertainty regarding whether such claims would be successful; (iii) a significant risk exists that future litigation costs would dissipate Receivership Assets and that Plaintiffs and other persons who have submitted claims to the Receiver ("Claimants") may not ultimately prevail on their claims; (iv) Plaintiffs and Claimants who have filed Claims with the Receiver will receive partial satisfaction of their claims from the Settlement Amount being paid pursuant to the Settlement; and (v) Greenberg would not have agreed to the terms of the Settlement in the absence of this

FINAL BAR ORDER                                    5

EXHIBIT B

Final Bar Order and assurance of "total peace" with respect to all claims that have been, or could be, asserted by persons over whom the Court has authority arising from Greenberg's relationship with the Stanford Entities. *See SEC v. Kaleta*, No. 4:09-3674, 2012 WL 401069, at *4 (S.D. Tex. Feb. 7, 2012), *aff'd*, 530 F. App'x 360 (5th Cir. 2013) (approving these factors for consideration in evaluating whether a settlement and bar order are sufficient, fair, and necessary). The injunction against such claims as set forth herein is therefore a necessary and appropriate order ancillary to the relief obtained for victims of the Stanford Ponzi scheme pursuant to the Settlement. *See Kaleta*, 530 F. App'x at 362 (affirming a bar order and injunction against investor claims as "ancillary relief" to a settlement in an SEC receivership proceeding). After careful consideration of the record and applicable law, the Court concludes that the Settlement is the best option for maximizing the net amount recoverable from Greenberg for the Receivership Estate, Plaintiffs, and the Claimants.

5.      Pursuant to the Settlement Agreement and upon motion by the Receiver, this Court will approve a Distribution Plan that will fairly and reasonably distribute the net proceeds of the Settlement to Stanford Investors who have Claims approved by the Receiver. The Court finds that the Receiver's claims process and the Distribution Plan contemplated in the Settlement Agreement have been designed to ensure that all Stanford Investors have received an opportunity to pursue their Claims through the Receiver's claims process previously approved by the Court (ECF No. 1584).

6.      The Court further finds that the Parties and their counsel have at all times complied with the requirements of Rule 11 of the Federal Rules of Civil Procedure.

7.      Accordingly, the Court finds that the Settlement is, in all respects, fair, reasonable, and adequate, and in the best interests of all Persons claiming an interest in, having

**EXHIBIT B**

authority over, or asserting a claim against Greenberg, the Stanford Entities, or the Receivership Estate, including but not limited to the Plaintiffs, the Investor Plaintiffs, and the Interested Parties. The Court also finds that this Final Bar Order is a necessary component to achieve the Settlement. The Settlement, the terms of which are set forth in the Settlement Agreement, is hereby fully and finally approved. The Parties are directed to implement and consummate the Settlement in accordance with the terms and provisions of the Settlement Agreement and this Final Bar Order.

8.      Pursuant to the provisions of 38 of the Settlement Agreement, as of the Settlement Effective Date, Greenberg and the rest of the Greenberg Released Parties shall be completely released, acquitted, and forever discharged from any action, cause of action, suit, liability, claim, right of action, or demand whatsoever, whether or not currently asserted, known, suspected, existing, or discoverable, and whether based on federal law, state law, foreign law, common law, or otherwise, and whether based on contract, tort, statute, law, equity or otherwise, that the Receiver; the Receivership Estate; the Committee; the Claimants; and the Persons, entities and interests represented by those Parties ever had, now has, or hereafter can, shall, or may have, directly, representatively, derivatively, or in any other capacity, for, upon, arising from, relating to, or by reason of any matter, cause, or thing whatsoever, that, in full or in part, concerns, relates to, arises out of, or is in any manner connected with (i) the Stanford Entities; (ii) any certificate of deposit, depository account, or investment of any type with any one or more of the Stanford Entities; (iii) Greenberg's relationship with any one or more of the Stanford Entities and/or any of their personnel; (iv) Greenberg's provision of services to or for the benefit of or on behalf of the Stanford Entities; or (v) any matter that was asserted in, could have been asserted in, or

**EXHIBIT B**

relates to the subject matter of this action, the Litigation, or any proceeding concerning the Stanford Entities pending or commenced in any Forum.

9.      Pursuant to the provisions of Paragraph 39 of the Settlement Agreement, as of the Settlement Effective Date, the Plaintiffs Released Parties shall be completely released, acquitted, and forever discharged from all Settled Claims by Greenberg.

10.     Notwithstanding anything to the contrary in this Final Bar Order, the foregoing releases do not release the Parties' rights and obligations under the Settlement or the Settlement Agreement or bar the Parties from enforcing or effectuating the terms of the Settlement or the Settlement Agreement.

11.     The Court hereby permanently bars, restrains, and enjoins the Plaintiffs, the Investor Plaintiffs, the Claimants, the Interested Parties, and all other Persons or entities anywhere in the world, whether acting in concert with the foregoing or claiming by, through, or under the foregoing, or otherwise, all and individually, from directly, indirectly, or through a third party, instituting, reinstituting, intervening in, initiating, commencing, maintaining, continuing, filing, encouraging, soliciting, supporting, participating in, collaborating in, or otherwise prosecuting, against Greenberg or any of the Greenberg Released Parties, the Litigation, or any action, lawsuit, cause of action, claim, investigation, demand, levy, complaint, or proceeding of any nature in any Forum, including, without limitation, any court of first instance or any appellate court, whether individually, derivatively, on behalf of a class, as a member of a class, or in any other capacity whatsoever, that in any way relates to, is based upon, arises from, or is connected with the Stanford Entities; this case; the subject matter of this case; the Litigation; or any Settled Claim.  The foregoing specifically includes any claim, however denominated, seeking contribution, indemnity, damages, or other remedy where the alleged

FINAL BAR ORDER                                      8

EXHIBIT B

injury to such Person, entity, or Interested Party, or the claim asserted by such Person, entity, or Interested Party, is based upon such Person's, entity's, or Interested Party's liability to any Plaintiff, Claimant, or Interested Party arising out of, relating to, or based in whole or in part upon money owed, demanded, requested, offered, paid, agreed to be paid, or required to be paid to any Plaintiff, Claimant, Interested Party, or other Person or entity, whether pursuant to a demand, judgment, claim, agreement, settlement or otherwise.  Notwithstanding the foregoing, there shall be no bar of any claims, including but not limited to the Settled Claims, that Greenberg may have against any Greenberg Released Party, including but not limited to Greenberg's insurers, reinsurers, employees and agents.  Further, the Parties retain the right to sue for alleged breaches of the Settlement Agreement.

12.     Nothing in this Final Bar Order shall impair or affect or be construed to impair or affect in any way whatsoever, any right of any Person, entity, or Interested Party to: (a) claim a credit or offset, however determined or quantified, if and to the extent provided by any applicable statute, code, or rule of law, against any judgment amount, based upon the Settlement or payment of the Settlement Amount; (b) designate a "responsible third party" or "settling person" under Chapter 33 of the Texas Civil Practice and Remedies Code; or (c) take discovery under applicable rules in litigation; provided for the avoidance of doubt that nothing in this paragraph shall be interpreted to permit or authorize any action or claim seeking to impose any liability of any kind (including but not limited to liability for contribution, indemnification or otherwise) upon Greenberg or any other Greenberg Released Party.

13.     Greenberg and the rest of the Greenberg Released Parties have no responsibility, obligation, or liability whatsoever with respect to the content of the Notice; the notice process; the Distribution Plan; the implementation of the Distribution Plan; the administration of the

FINAL BAR ORDER                          9

EXHIBIT B

Settlement; the management, investment, distribution, allocation, or other administration or oversight of the Settlement Amount, any other funds paid or received in connection with the Settlement, or any portion thereof; the payment or withholding of Taxes; the determination, administration, calculation, review, or challenge of claims to the Settlement Amount, any portion of the Settlement Amount, or any other funds paid or received in connection with the Settlement or the Settlement Agreement; or any losses, attorneys' fees, expenses, vendor payments, expert payments, or other costs incurred in connection with any of the foregoing matters.  No appeal, challenge, decision, or other matter concerning any subject set forth in this paragraph shall operate to terminate or cancel the Settlement, the Settlement Agreement, or this Final Bar Order.

14.     Nothing in this Final Bar Order or the Settlement Agreement and no aspect of the Settlement or negotiation or mediation thereof is or shall be construed to be an admission or concession of any violation of any statute or law, of any fault, liability, or wrongdoing, or of any infirmity in the claims or defenses of the Parties with regard to any of the complaints, claims, allegations, or defenses in the Litigation, or any other proceeding.

15.     Greenberg is hereby ordered to deliver or cause to be delivered the Settlement Amount ($65 million) as described in Paragraph 24 of the Settlement Agreement.  Further, the Parties are ordered to act in conformity with all other provisions of the Settlement Agreement.

16.     Without in any way affecting the finality of this Final Bar Order, the Court retains continuing and exclusive jurisdiction over the Parties for purposes of, among other things, the administration, interpretation, consummation, and enforcement of the Settlement, the Settlement Agreement, the Scheduling Order, and this Final Bar Order, including, without limitation, the injunctions, bar orders, and releases herein, and to enter orders concerning implementation of the

**EXHIBIT B**

Settlement, the Settlement Agreement, the Distribution Plan, and any payment of attorneys' fees and expenses to Plaintiffs' counsel.

17.     The Court expressly finds and determines, pursuant to Federal Rule of Civil Procedure 54(b), that there is no just reason for any delay in the entry of this Final Bar Order, which is both final and appealable, and immediate entry by the Clerk of the Court is expressly directed.

18.     This Final Bar Order shall be served by counsel for the Plaintiffs, via email, first class mail or international delivery service, on any person or entity that filed an objection to approval of the Settlement, the Settlement Agreement, or this Final Bar Order.

Signed on _____

_____
DAVID C. GODBEY
UNITED STATES DISTRICT JUDGE

**EXHIBIT B**

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

RALPH S. JANVEY, in his capacity as Court-
appointed receiver for the Stanford Receivership
Estate; the OFFICIAL STANFORD
INVESTORS COMMITTEE; PAM REED;
SAMUEL TROICE; and MICHOACAN TRUST;
individually and on behalf of a class of all others
similarly situated,

Civil Action No. 3:12-cv-04641-N

v.

GREENBERG TRAURIG, LLP; HUNTON &
WILLIAMS, LLP; AND YOLANDA SUAREZ,

## RULE 54(b) FINAL JUDGMENT AND BAR ORDER

Before the Court is the Expedited Request for Entry of Scheduling Order and Motion to Approve Proposed Settlement with Greenberg, to Approve the Proposed Notice of Settlement with Greenberg, to Enter the Bar Order, to Enter the Rule 54(b) Final Judgment and Bar Order, and for Plaintiffs' Attorneys' Fees (the "Motion") of Plaintiffs Ralph S. Janvey, in his capacity as the Court-appointed Receiver for the Stanford Receivership Estate (the "Receiver") in *SEC v. Stanford International Bank, Ltd.*, Civil Action No. 3:09-CV-0928-N (the "SEC Action"), and the Court-appointed Official Stanford Investors Committee (the "Committee") (the Receiver and the Committee, collectively, the "Plaintiffs").   (ECF No. ____.)   The Motion concerns a proposed settlement (the "Settlement") among and between the Plaintiffs and Greenberg Traurig, P.A. and Greenberg Traurig, LLP (individually and collectively, "Greenberg"), two of the

**EXHIBIT C**

defendants in this action.  Plaintiffs and Greenberg are referred to together as the "Parties."  John J. Little, the Court-appointed Examiner (the "Examiner") signed the Settlement Agreement[1] as chair of the Committee and as Examiner solely to evidence his support and approval of the Settlement and to confirm his obligation to post the Notice on his website, but is not otherwise individually a party to the Settlement or this action.

Following notice and a hearing, and having considered the filings and heard the arguments of counsel, the Court hereby GRANTS the Motion.

## I.    INTRODUCTION

The SEC Action and this case both arise from a series of events leading to the collapse of Stanford International Bank, Ltd. ("SIBL").  On February 16, 2009, this Court appointed Ralph S. Janvey to be the Receiver for SIBL and related parties (the "Stanford Entities").  (SEC Action, ECF No. 10).  After years of diligent investigation, the Plaintiffs believe that they have identified claims against a number of third parties, including Greenberg, which Plaintiffs allege enabled the Stanford Ponzi scheme.  In this action, the Plaintiffs assert claims against Greenberg and other defendants for negligence, aiding and abetting breaches of fiduciary duties, breaches of fiduciary duties, fraudulent transfer/unjust enrichment, aiding and abetting fraudulent transfers, negligent retention, aiding and abetting violations of the Texas Securities Act ("TSA"), aiding and abetting a fraudulent scheme, and civil conspiracy.[2]  Greenberg denies that it is liable for any of those claims and asserts numerous defenses to each of those claims.

---

[1]  The "Settlement Agreement" refers to the Settlement Agreement that is attached as Exhibit 1 of the Appendix to the Motion (ECF No. __).

[2]  In addition to Plaintiffs, claims were also originally brought by Samuel Troice, Michoacan Trust, Sandra Dorrell, and Pam Reed, who was substituted for Sandra Dorell, on behalf of themselves and a putative class.  (Samuel Troice, Michoacan Trust, Sandra Dorrell, and Pam Reed, and the putative class they sought to represent, are referred to collectively herein as the "Investor Plaintiffs.")  By Orders dated December 17, 2014 (ECF No. 114), and February 4, 2015 (ECF No. 123), the Court granted in part and denied in part Greenberg's motions to dismiss the Complaint, dismissing with prejudice (i) the Receiver's and Committee's claims for aiding and abetting

**EXHIBIT C**

Multiparty settlement negotiations occurred in 2012, and additional settlement negotiations between Greenberg and Plaintiffs occurred in late 2018 and into 2019. In these negotiations, potential victims of the Stanford Ponzi scheme were well-represented. The Committee—which the Court appointed to "represent[] in this case and related matters" the "customers of SIBL who, as of February 16, 2009, had funds on deposit at SIBL and/or were holding certificates of deposit issued by SIBL (the 'Stanford Investors')" (ECF No. 1149)—the Receiver, and the Examiner—who the Court appointed to advocate on behalf of "investors in any financial products, accounts, vehicles or ventures sponsored, promoted or sold by any Defendant in this action" (ECF No. 322)—all participated in these extensive, arm's-length negotiations. In August 2019, the Parties reached agreement resulting in the Settlement. For several weeks thereafter, the Parties continued efforts to negotiate and document the terms of the Settlement Agreement.

Under the terms of the Settlement, Greenberg will pay $65 million (the "Settlement Amount") to the Receivership Estate, which (less attorneys' fees and expenses) will be distributed to Stanford Investors. In return, Greenberg seeks total peace with respect to all claims that have been, or could have been, asserted against Greenberg or any other of the Greenberg Released Parties, arising out of the events leading to these proceedings. Accordingly, the Settlement is conditioned on the Court's approval and entry of this Final Bar Order enjoining

---

fraudulent transfers; (ii) the Investor Plaintiffs' TSA claims for aiding and abetting and civil conspiracy for the sale of unregistered securities and the sale of securities by an unregistered dealer arising from sales taking place prior to February 1, 2008; (iii) the Investor Plaintiffs' TSA claims for aiding and abetting and civil conspiracy for the sale of securities through untruth or omission arising from sales taking place prior to February 1, 2006; dismissing without prejudice the Receiver and Committee's claims for breach of fiduciary duty; and declining to dismiss the Plaintiffs' other claims against Greenberg. By Order dated December 5, 2017 (ECF No. 251), the Court granted Greenberg's Motion for Judgment on the Pleadings (ECF No. 203) as to the claims by the Investor Plaintiffs, and on April 17, 2019, the Fifth Circuit Court of Appeals affirmed this Order; the dismissal of the claims of the Investor Plaintiffs and affirmance are final and not subject to reopening or further proceedings. In addition, in the Second Amended Complaint, dated November 19, 2018, claims on behalf of the Committee were dropped.

**EXHIBIT C**

those Interested Parties over whom the Court has authority to do so from asserting or prosecuting claims against Greenberg or any other of the Greenberg Released Parties.

On October 17, 2019, the Plaintiffs filed the Motion. (ECF No. ____). The Court thereafter entered a Scheduling Order on ____ __, 2019 (ECF No. ____), which, *inter alia*, authorized the Receiver to provide notice of the Settlement, established a briefing schedule on the Motion, and set the date for a hearing. On _____, the Court held the scheduled hearing. For the reasons set forth herein, the Court finds that the terms of the Settlement Agreement are adequate, fair, reasonable, and equitable, and that the Settlement should be and is hereby **APPROVED**. The Court further finds that entry of this Final Judgment and Bar Order is appropriate and necessary.

## II.   ORDER

It is hereby **ORDERED, ADJUDGED, AND DECREED** as follows:

1.      Terms used in this Final Judgment and Bar Order that are defined in the Settlement Agreement, unless expressly otherwise defined herein, have the same meaning as in the Settlement Agreement (which is deemed incorporated herein by reference).

2.      The Court has "broad powers and wide discretion to determine the appropriate relief in [this] equity receivership," including the authority to enter the Final Judgment and Bar Order. *SEC* v. *Kaleta*, 530 F. App'x 360, 362 (5th Cir. 2013) (internal quotations omitted). Moreover, the Court has jurisdiction over the subject matter of this action, and the Plaintiffs are proper parties to seek entry of this Final Judgment and Bar Order.

3.      The Court finds that the methodology, form, content and dissemination of the Notice: (i) were implemented in accordance with the requirements of the Scheduling Order; (ii) constituted the best practicable notice; (iii) were reasonably calculated, under the

4

**EXHIBIT C**

circumstances, to apprise all Interested Parties of the Settlement, the releases therein, and the injunctions provided for in this Final Judgment and Bar Order and in the Final Bar Order to be entered in the SEC Action; (iv) were reasonably calculated, under the circumstances, to apprise all Interested Parties of the right to object to the Settlement, this Final Judgment and Bar Order, and the Final Bar Order to be entered in the SEC Action, and to appear at the Final Approval Hearing; (v) were reasonable and constituted due, adequate, and sufficient notice; (vi) met all applicable requirements of law, including, without limitation, the Federal Rules of Civil Procedure, the United States Constitution (including Due Process), and the Rules of the Court; and (vii) provided to all Persons a full and fair opportunity to be heard on these matters.

4.      The Court finds that the Settlement, including, without limitation, the Settlement Amount, was reached following an extensive investigation of the facts and resulted from vigorous, good-faith, arm's-length, mediated negotiations involving experienced and competent counsel.  The Court further finds that (i) significant issues exist as to the merits and value of the claims asserted against Greenberg by Plaintiffs and by others whose potential claims are foreclosed by this Final Judgment and Bar Order; (ii) such claims contain complex and novel issues of law and fact that would require a substantial amount of time and expense to litigate, with uncertainty regarding whether such claims would be successful; (iii) a significant risk exists that future litigation costs would dissipate Receivership Assets and that Plaintiffs and other persons who have submitted claims to the Receiver ("Claimants") may not ultimately prevail on their claims; (iv) Plaintiffs and Claimants who have filed Claims with the Receiver will receive partial satisfaction of their claims from the Settlement Amount being paid pursuant to the Settlement; and (v) Greenberg would not have agreed to the terms of the Settlement in the absence of this Final Judgment and Bar Order unless it was assured of "total peace" with respect

**EXHIBIT C**

to all claims that have been, or could be, asserted by persons over whom the Court has authority arising from Greenberg's relationship with the Stanford Entities. *See SEC* v. *Kaleta*, No. 4:09-3674, 2012 WL 401069, at *4 (S.D. Tex. Feb. 7, 2012), *aff'd*, 530 F. App'x 360 (5th Cir. 2013) (approving these factors for consideration in evaluating whether a settlement and bar order are sufficient, fair, and necessary). The injunction against such claims as set forth herein is therefore a necessary and appropriate order ancillary to the relief obtained for victims of the Stanford Ponzi scheme pursuant to the Settlement. *See Kaleta*, 530 F. App'x at 362 (affirming a bar order and injunction against investor claims as "ancillary relief" to a settlement in an SEC receivership proceeding). After careful consideration of the record and applicable law, the Court concludes that the Settlement is the best option for maximizing the net amount recovered from Greenberg for the Receivership Estate, Plaintiffs, and the Claimants.

5.      Pursuant to the Settlement Agreement and upon motion by the Receiver in the SEC Action, this Court will approve a Distribution Plan that will fairly and reasonably distribute the net proceeds of the Settlement to Stanford Investors who have Claims approved by the Receiver. The Court finds that the Receiver's claims process and the Distribution Plan contemplated in the Settlement Agreement have been designed to ensure that all Stanford Investors have received an opportunity to pursue their Claims through the Receiver's claims process previously approved by the Court (SEC Action, ECF No. 1584).

6.      The Court further finds that the Parties and their counsel have at all times complied with the requirements of Rule 11 of the Federal Rules of Civil Procedure.

7.      Accordingly, the Court finds that the Settlement is, in all respects, fair, reasonable, and adequate, and in the best interests of all Persons claiming an interest in, having authority over, or asserting a claim against Greenberg, the Stanford Entities, or the Receivership

**EXHIBIT C**

Estate, including but not limited to the Plaintiffs, Investor Plaintiffs, and the Interested Parties. The Court also finds that this Final Judgment and Bar Order is a necessary component to achieve the Settlement. The Settlement, the terms of which are set forth in the Settlement Agreement, is hereby fully and finally approved.  The Parties are directed to implement and consummate the Settlement in accordance with the terms and provisions of the Settlement Agreement and this Final Judgment and Bar Order.

8.     Pursuant to the provisions of Paragraph 38 of the Settlement Agreement, as of the Settlement Effective Date, Greenberg and the rest of the Greenberg Released Parties shall be completely released, acquitted, and forever discharged from any action, cause of action, suit, liability, claim, right of action, or demand whatsoever, whether or not currently asserted, known, suspected, existing, or discoverable, and whether based on federal law, state law, foreign law, common law, or otherwise, and whether based on contract, tort, statute, law, equity or otherwise, that the Receiver; the Receivership Estate; the Committee; the Claimants; and the Persons, entities and interests represented by those Parties ever had, now has, or hereafter can, shall, or may have, directly, representatively, derivatively, or in any other capacity, for, upon, arising from, relating to, or by reason of any matter, cause, or thing whatsoever, that, in full or in part, concerns, relates to, arises out of, or is in any manner connected with (i) the Stanford Entities; (ii) any certificate of deposit, depository account, or investment of any type with any one or more of the Stanford Entities; (iii) Greenberg's relationship with any one or more of the Stanford Entities; (iv) Greenberg's provision of services to or for the benefit of or on behalf of the Stanford Entities; or (v) any matter that was asserted in, could have been asserted in, or relates to the subject matter of this action, the SEC Action, or any proceeding concerning the Stanford Entities pending or commenced in any Forum.

**EXHIBIT C**

9.      Pursuant to the provisions of Paragraph 39 of the Settlement Agreement, as of the Settlement Effective Date, the Plaintiffs Released Parties shall be completely released, acquitted, and forever discharged from all Settled Claims by Greenberg.

10.     Notwithstanding anything to the contrary in this Final Judgment and Bar Order, the foregoing releases do not release the Parties' rights and obligations under the Settlement or the Settlement Agreement or bar the Parties from enforcing or effectuating the terms of the Settlement or the Settlement Agreement.  Further, the foregoing releases do not bar or release any claims, including but not limited to the Settled Claims, that Greenberg may have against any Greenberg Released Party, including but not limited to Greenberg's insurers, reinsurers, employees, and agents.

11.     The Court hereby permanently bars, restrains, and enjoins the Receiver, the Committee, the Investor Plaintiffs, the Claimants, the Interested Parties, and all other Persons or entities anywhere in the world, whether acting in concert with the foregoing or claiming by, through, or under the foregoing, or otherwise, all and individually, from directly, indirectly, or through a third party, instituting, reinstituting, intervening in, initiating, commencing, maintaining, continuing, filing, encouraging, soliciting, supporting, participating in, collaborating in, or otherwise prosecuting, against Greenberg or any of the Greenberg Released Parties, this action, or any action, lawsuit, cause of action, claim, investigation, demand, levy, complaint, or proceeding of any nature in any Forum, including, without limitation, any court of first instance or any appellate court, whether individually, derivatively, on behalf of a class, as a member of a class, or in any other capacity whatsoever, that in any way relates to, is based upon, arises from, or is connected with the Stanford Entities; this case; the SEC Action; the subject matter of this case or the SEC Action; or any Settled Claim.  The foregoing specifically includes

8

**EXHIBIT C**

any claim, however denominated, seeking contribution, indemnity, damages, or other remedy where the alleged injury to such Person, entity, or Interested Party, or the claim asserted by such Person, entity, or Interested Party, is based upon such Person's, entity's, or Interested Party's liability to any Plaintiff, Claimant, or Interested Party arising out of, relating to, or based in whole or in part upon money owed, demanded, requested, offered, paid, agreed to be paid, or required to be paid to any Plaintiff, Claimant, Interested Party, or other Person or entity, whether pursuant to a demand, judgment, claim, agreement, settlement or otherwise.  Notwithstanding the foregoing, there shall be no bar of any claims, including but not limited to the Settled Claims, that Greenberg may have against any Greenberg Released Party, including but not limited to Greenberg's insurers, reinsurers, employees and agents.  Further, the Parties retain the right to sue for alleged breaches of the Settlement Agreement.

12.     The releases and the covenants not to sue set forth in the Settlement Agreement, and the releases, bars, injunctions, and restraints set forth in this Final Judgment and Bar Order, do not limit in any way the evidence that Plaintiffs may offer against the remaining defendants in this action.

13.     Nothing in this Final Judgment and Bar Order shall impair or affect or be construed to impair or affect in any way whatsoever, any right of any Person, entity, or Interested Party to: (a) claim a credit or offset, however determined or quantified, if and to the extent provided by any applicable statute, code, or rule of law, against any judgment amount, based upon the Settlement or payment of the Settlement Amount; (b) designate a "responsible third party" or "settling person" under Chapter 33 of the Texas Civil Practice and Remedies Code; or (c) take discovery under applicable rules in litigation; provided for the avoidance of doubt that nothing in this paragraph shall be interpreted to permit or authorize any action or claim seeking

9

**EXHIBIT C**

to impose any liability of any kind (including but not limited to liability for contribution, indemnification or otherwise) upon Greenberg or any other Greenberg Released Party.

14.     Greenberg and the rest of the Greenberg Released Parties have no responsibility, obligation, or liability whatsoever with respect to the content of the Notice; the notice process; the Distribution Plan; the implementation of the Distribution Plan; the administration of the Settlement; the management, investment, distribution, allocation, or other administration or oversight of the Settlement Amount, any other funds paid or received in connection with the Settlement, or any portion thereof; the payment or withholding of Taxes; the determination, administration, calculation, review, or challenge of claims to the Settlement Amount, any portion of the Settlement Amount, or any other funds paid or received in connection with the Settlement or the Settlement Agreement; or any losses, attorneys' fees, expenses, vendor payments, expert payments, or other costs incurred in connection with any of the foregoing matters.  No appeal, challenge, decision, or other matter concerning any subject set forth in this paragraph shall operate to terminate or cancel the Settlement, the Settlement Agreement, or this Final Judgment and Bar Order.

15.     Nothing in this Final Judgment and Bar Order or the Settlement Agreement and no aspect of the Settlement or negotiation or mediation thereof is or shall be construed to be an admission or concession of any violation of any statute or law, of any fault, liability, or wrongdoing, or of any infirmity in the claims or defenses of the Parties with regard to any of the complaints, claims, allegations, or defenses in this action, or any other proceeding.

16.     Greenberg is hereby ordered to deliver or cause to be delivered the Settlement Amount ($65 million) as described in Paragraph 24 of the Settlement Agreement.  Further, the Parties are ordered to act in conformity with all other provisions of the Settlement Agreement.

**EXHIBIT C**

17.     Without in any way affecting the finality of this Final Judgment and Bar Order, the Court retains continuing and exclusive jurisdiction over the Parties for purposes of, among other  things, the administration, interpretation, consummation, and enforcement of the Settlement, the Settlement Agreement, the Scheduling Order, and this Final Judgment and Bar Order, including, without limitation, the injunctions, bar orders, and releases herein, and to enter orders concerning implementation of the Settlement, the Settlement Agreement, the Distribution Plan, and any payment of attorneys' fees and expenses to Plaintiffs' counsel.

18.     The Court expressly finds and determines, pursuant to Federal Rule of Civil Procedure 54(b), that there is no just reason for any delay in the entry of this Final Judgment and Bar Order as to Greenberg, which is both final and appealable as to Greenberg, and immediate entry of final judgment as to Greenberg by the Clerk of the Court is expressly directed.

19.     This Final Judgment and Bar Order shall be served by counsel for the Plaintiffs, via email, first class mail or international delivery service, on any person or entity that filed an objection to approval of the Settlement, the Settlement Agreement, or this Final Judgment and Bar Order.

20.     All relief as to Greenberg not expressly granted herein, other than Plaintiffs' request for approval of Plaintiffs' attorneys' fees, which will be addressed by a separate order, is denied.  This is a final Rule 54(b) judgment.  The Clerk of the Court is directed to enter Judgment as to Greenberg in conformity herewith.


Signed on _____


                                        _____
                                        DAVID C. GODBEY
                                        UNITED STATES DISTRICT JUDGE

11

**EXHIBIT C**

**Receivership Entities**

| | |
|---|---|
| 16NE Huntington, LLC | International Fixed Income Stanford Fund, Ltd. |
| 20/20 Ltd. | The Island Club, LLC |
| Antigua Athletic Club Limited | The Islands Club, Ltd. |
| The Antigua Sun Limited | JS Development, LLC |
| Apartment Household, Inc. | Maiden Island Holdings Ltd. |
| Asian Village Antigua Limited | Miller Golf Company, L.L.C. |
| Bank of Antigua Limited | Parque Cristal Ltd. |
| Boardwalk Revitalization, LLC | Pelican Island Properties Limited |
| Buckingham Investments A.V.V. | Pershore Investments S.A. |
| Caribbean Aircraft Leasing (BVI) Limited | Polygon Commodities A.V.V. |
| Caribbean Airlines Services Limited | Porpoise Industries Limited |
| Caribbean Airlines Services, Inc. | Productos y Servicios Stanford, C.A. |
| Caribbean Star Airlines Holdings Limited | R. Allen Stanford, LLC |
| Caribbean Star Airlines Limited | Robust Eagle Limited |
| Caribbean Sun Airlines Holdings, Inc. | Sea Eagle Limited |
| Casuarina 20 LLC | Sea Hare Limited |
| Christiansted Downtown Holdings, LLC | SFG Majestic Holdings, LLC |
| Crayford Limited | SG Ltd. |
| Cuckfield Investments Limited | SGV Asesores C.A. |
| Datcom Resources, Inc. | SGV Ltd. |
| Devinhouse, Ltd. | Stanford 20*20, LLC |
| Deygart Holdings Limited | Stanford 20/20 Inc. |
| Foreign Corporate Holdings Limited | Stanford Acquisition Corporation |

**EXHIBIT D**

| | |
|---|---|
| Guardian International Investment Services No. One, Inc. | Stanford Aerospace Limited |
| Guardian International Investment Services No. Three, Inc. | Stanford Agency, Ltd. [Louisiana][i] |
| Guardian International Investment Services No. Two, Inc. | Stanford Agency, Inc. [Texas] |
| Guardian One, Ltd. | Stanford Agresiva S.A. de C.V. |
| Guardian Three, Ltd. | Stanford Aircraft, LLC |
| Guardian Two, Ltd. | Stanford American Samoa Holding Limited |
| Guiana Island Holdings Limited | Stanford Aviation 5555, LLC |
| Harbor Key Corp. | Stanford Aviation II, LLC |
| Harbor Key Corp. II | Stanford Aviation III, LLC |
| Idea Advertising Group, Inc. | Stanford Aviation Limited |
| Stanford Bank Holdings Limited | Stanford Aviation LLC |
| Stanford Bank, S.A. Banco Comercial | Stanford Bank (Panama), S.A.[ii] |
| Stanford Capital Management, LLC | Stanford Galleria Buildings Management, LLC |
| Stanford Caribbean Investments, LLC | Stanford Gallows Bay Holdings, LLC |
| Stanford Caribbean Regional Management Holdings, LLC | Stanford Global Advisory, LLC |
| Stanford Caribbean, LLC | Stanford Group (Antigua) Limited |
| Stanford Casa de Valores, S.A. | Stanford Group (Suisse) AG |
| Stanford Cobertura, S.A. de C.V. | Stanford Group Aruba, N.V. |
| Stanford Coins & Bullion, Inc. | Stanford Group Bolivia |
| The Stanford Condominium Owners' Association, Inc. | Stanford Group Casa de Valores, S.A. |
| Stanford Corporate Holdings International, Inc. | Stanford Group Company |
| Stanford Corporate Services (BVI) Limited | Stanford Group Company Limited |

2

**EXHIBIT D**

| | |
|---|---|
| Stanford Corporate Services (Venezuela), C.A. | Stanford Group Holdings, Inc. |
| Stanford Corporate Services, Inc. | Stanford Group Mexico, S.A. de C.V. |
| Stanford Corporate Ventures (BVI) Limited | Stanford Group Peru, S.A., Sociedad Agente de Bolsa |
| Stanford Corporate Ventures, LLC | Stanford Group Venezuela Asesores de Inversion, C.A. |
| Stanford Crecimiento Balanceado, S.A. de C.V. | Stanford Group Venezuela, C.A. |
| Stanford Crecimiento, S.A. de C.V. | Stanford Holdings Venezuela, C.A. |
| Stanford Development Company (Grenada) Ltd. | Stanford International Bank Holdings Limited |
| Stanford Development Company Limited | Stanford International Bank Limited |
| Stanford Development Corporation | Stanford International Holdings (Panama) S.A. |
| Stanford Eagle, LLC | Stanford International Management Ltd. |
| Stanford Family Office, LLC | Stanford International Resort Holdings, LLC |
| The Stanford Financial Group Building, Inc. | Stanford Investment Advisory Services, Inc. |
| Stanford Financial Group Company | Stanford Leasing Company, Inc. |
| Stanford Financial Group Global Management, LLC | Stanford Management Holdings, Ltd. |
| Stanford Financial Group (Holdings) Limited | Stanford Real Estate Acquisition, LLC |
| Stanford Financial Group Limited | Stanford S.A. Comisionista de Bolsa |
| Stanford Financial Group Ltd. | Stanford Services Ecuador, S.A. |
| Stanford Financial Partners Advisors, LLC | Stanford South Shore Holdings, LLC |
| Stanford Financial Partners Holdings, LLC | Stanford Sports & Entertainment Holdings, LLC |
| Stanford Financial Partners Securities, LLC | Stanford St. Croix Marina Operations, LLC |
| Stanford Financial Partners, Inc. | Stanford St. Croix Resort Holdings, LLC |

**EXHIBIT D**

| | |
|---|---|
| Stanford Fondos, S.A. de C.V. | Stanford St. Croix Security, LLC |
| The Stanford Galleria Buildings, LP | Stanford Trust Company |
| Stanford Trust Holdings Limited | Stanford Trust Company Administradora de Fondos y Fideicomisos S.A. |
| Stanford Venture Capital Holdings, Inc. | Stanford Trust Company Limited |
| The Sticky Wicket Limited | Torre Oeste Ltd. |
| Sun Printing & Publishing Limited | Torre Senza Nome Venezuela, C.A. |
| Sun Printing Limited | Trail Partners, LLC |
| Stanford Puerto Rico, Inc | Two Islands One Club (Grenada) Ltd. |
| | Two Islands One Club Holdings Ltd. |
| Stanford Latin America LLC | |
| Stanford Casa de Valores Panama | Stanford Financial Group Services, LLC |
| Stanford Group Venezuela a/k/a Stanford Group Venezuela C.A. | Stanford Group Columbia a/k/a Stanford Bolsa Y Banca |
| Stanford Bank Venezuela | Guardian International Bank Ltd. |
| Stanford Trust Company Limited d/b/a Stanford Fiduciary Investment Services | Guardian Trust Company |
| Stanford Advisory Board | Guardian Development Corporation |
| Two Islands One Club (Antigua) Ltd. | Guardian International Investment Services |
| Stanford Caribbean Investment Partners, LP | Casuarina Holdings, Inc. |
| Stanford Caribbean Advisors | Stanford Caribbean Investment Fund |
| Stanford Group Panama a/k/a Stanford Bank Panama | Stanford Caribbean Investment Fund I, LP |

---

[i] Locations in brackets are included to differentiate between legal entities with the same name but different locations or other identifying information.

[ii] Locations in parentheses are included in the legal name of an entity or other identifying information.

**EXHIBIT D**

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | |
| v. | Civil Action No. 3:09-cv-00298-N |
| STANFORD INTERNATIONAL BANK, LTD, *et al.*, | |
| Defendants. | |
| RALPH S. JANVEY, in his capacity as Court-appointed receiver for the Stanford Receivership Estate; the OFFICIAL STANFORD INVESTORS COMMITTEE; PAM REED; SAMUEL TROICE; and MICHOACAN TRUST; individually and on behalf of a class of all others similarly situated, | |
| Plaintiffs, | Civil Action No. 3:12-cv-04641-N |
| v. | |
| GREENBERG TRAURIG, LLP; HUNTON & WILLIAMS, LLP; AND YOLANDA SUAREZ, | |
| Defendants. | |

## SCHEDULING ORDER

This matter is before the Court on the Expedited Request for Entry of Scheduling Order and Motion to Approve Proposed Settlement with Greenberg, to Approve the Proposed Notice of Settlement with Greenberg, to Enter the Bar Order, to Enter the Rule 54(b) Final Judgment and Bar Order, and for Plaintiffs' Attorneys' Fees (the "Motion") of Ralph S. Janvey (the

**EXHIBIT E**

"Receiver"), as Receiver for the Receivership Estate in *SEC v. Stanford International Bank, Ltd.*, No. 3:09-CV-0298-N (N.D. Tex.) (the "SEC Action"), the Official Stanford Investors Committee (the "Committee"), as a party to the SEC Action and, along with the Receiver, as a plaintiff in *Janvey v. Greenberg Traurig LLP et al.*, No. 3:12-cv-04641-N (N.D. Tex.) (the "Litigation") (the Receiver and the Committee, collectively, the "Plaintiffs").   The Motion concerns a proposed settlement (the "Settlement") among and between, on the one hand, the Receiver and the Court-appointed Examiner, John J. Little (the "Examiner");[1] and, on the other hand, Greenberg Traurig, P.A., and Greenberg Traurig, LLP (individually and collectively, "Greenberg"), as defendants in the Litigation.   Capitalized terms not otherwise defined in this order shall have the meaning assigned to them in the settlement agreement attached to the Motion (the "Settlement Agreement").

In the Motion, the Plaintiffs seek the Court's approval of the terms of the Settlement, including entry of a bar order in the SEC Action (the "Bar Order") and a final judgment and bar order in the Litigation (the "Judgment and Bar Order").   After reviewing the terms of the Settlement and considering the arguments presented in the Motion, the Court preliminarily approves the Settlement as adequate, fair, reasonable, and equitable.   Accordingly, the Court enters this scheduling order to: (i) provide for notice of the terms of the Settlement, including the proposed Bar Order in the SEC Action and the proposed Judgment and Bar Order in the Litigation; (ii) set the deadline for filing objections to the Settlement, the Bar Order, the Judgment and Bar Order, or Plaintiffs' request for approval of Plaintiffs' attorneys' fees; (iii) set the deadline for responding to any objection so filed; and (iv) set the date of the final approval

---

[1] The Examiner executed the Settlement Agreement to indicate his approval of the terms of the Settlement and to confirm his obligation to post Notice on his website, as required herein, but is not otherwise individually a party to the Settlement Agreement, the SEC Action, or the Litigation.

**EXHIBIT E**

hearing regarding the Settlement, the Bar Order in the SEC Action, the Judgment and Bar Order in the Litigation, and Plaintiffs' request for approval of Plaintiffs' attorneys' fees (the "Final Approval Hearing"), as follows:

1.      Preliminary Findings on Potential Approval of the Settlement:  Based upon the Court's review of the terms of the Settlement Agreement, the arguments presented in the Motion, and the Motion's accompanying appendices and exhibits, the Court preliminarily finds that the Settlement is fair, reasonable, and equitable; has no obvious deficiencies; and is the product of serious, informed, good-faith, and arm's-length negotiations.  The Court, however, reserves a final ruling with respect to the terms of the Settlement until after the Final Approval Hearing referenced below in Paragraph 2.

2.      Final Approval Hearing:  The Final Approval Hearing will be held before the Honorable David C. Godbey of the United States District Court for the Northern District of Texas, United States Courthouse, 1100 Commerce Street, Dallas, Texas 75242, in Courtroom 1505, at __:__ _.m. on _____, which is a date at least ninety (90) calendar days after entry of this Scheduling Order.  The purposes of the Final Approval Hearing will be to:  (i) determine whether the terms of the Settlement should be approved by the Court; (ii) determine whether the Bar Order attached as Exhibit B to the Settlement Agreement should be entered by the Court in the SEC Action; (iii) determine whether the Judgment and Bar Order attached as Exhibit C to the Settlement Agreement should be entered by the Court in the Litigation; (iv) rule upon any objections to the Settlement, Bar Order, or the Judgment and Bar Order; (v) rule upon Plaintiffs' request for approval of Plaintiffs' attorneys' fees; and (vi) rule upon such other matters as the Court may deem appropriate.

3

**EXHIBIT E**

3.      Notice:   The Court approves the form of Notice attached as Exhibit A to the Settlement Agreement and finds that the methodology, distribution, and dissemination of Notice described in the Motion:  (i) constitute the best practicable notice; (ii) are reasonably calculated, under the circumstances, to apprise all Interested Parties of the Settlement, the releases therein, and the injunctions provided for in the Bar Order and Judgment and Bar Order; (iii) are reasonably calculated, under the circumstances, to apprise all Interested Parties of the right to object to the Settlement, the Bar Order, or the Judgment and Bar Order, and to appear at the Final Approval Hearing; (iv) constitute due, adequate, and sufficient notice; (v) meet all requirements of applicable law, including the Federal Rules of Civil Procedure, the United States Constitution (including Due Process), and the Rules of the Court; and (vi) will provide to all Persons a full and fair opportunity to be heard on these matters.  The Court further approves the form of the publication Notice attached as Exhibit F to the Settlement Agreement.  Therefore:

a.      The Receiver is hereby directed, no later than twenty-one (21) calendar days after entry of this Scheduling Order, to cause the Notice in substantially the same form attached as Exhibit A to the Settlement Agreement to be sent via electronic mail, first class mail, or international delivery service to all Interested Parties; to be sent via electronic service to all counsel of record for any Person who is, at the time of Notice, a party in any case included in *In re Stanford Entities Securities Litigation*, MDL No. 2099 (N.D. Tex.) (the "MDL"), the SEC Action, or the Litigation, who are deemed to have consented to electronic service through the Court's CM/ECF System under Local Rule CV-5.1(d); and to be sent via facsimile transmission and/or first class mail to any other counsel of record for any other Person who is, at the time of service, a party in any case included in the MDL, the SEC Action, or the Litigation.

4

**EXHIBIT E**

b.      The Receiver is hereby directed, no later than twenty-one (21) calendar days after entry of this Scheduling Order, to cause the notice in substantially the same form attached as Exhibit F to the Settlement Agreement to be published once in the national edition of *The Wall Street Journal* and once in the international edition of *The New York Times*.

c.      The Receiver is hereby directed, no later than ten (10) calendar days after entry of this Scheduling Order, to cause the Settlement Agreement, the Motion, this Scheduling Order, the Notice, and all exhibits and appendices attached to these documents, to be posted on the Receiver's website (http://stanfordfinancialreceivership.com).    The Examiner is hereby directed, no later than ten (10) calendar days after entry of this Scheduling Order, to cause the Settlement Agreement, the Motion, this Scheduling Order, the Notice, and all exhibits and appendices attached to these documents, to be posted on the Examiner's website (http://lpf-law.com/examiner-stanford-financial-group).

d.      The Receiver is hereby directed promptly to provide the Settlement Agreement, the Motion, this Scheduling Order, the Notice, and all exhibits and appendices attached to these documents, to any Person who requests such documents via email to Nadia Ramon at legalassistant@casnlaw.com, or via telephone by calling (210) 630-4200.   The Receiver may provide such materials in the form and manner that the Receiver deems most appropriate under the circumstances of the request.

e.      No less than ten (10) days before the Final Approval Hearing, the Receiver shall cause to be filed with the Clerk of this Court written evidence of compliance with subparts (a) through (d) of this Paragraph, which may be in the form of an affidavit or declaration.

**EXHIBIT E**

4.      <u>Objections and Appearances at the Final Approval Hearing</u>:  Any Person who wishes to object to the terms of the Settlement, the Bar Order, the Judgment and Bar Order, or Plaintiffs' request for approval of Plaintiffs' attorneys' fees, or who wishes to appear at the Final Approval Hearing, must do so by filing an objection, in writing, with the Court in the SEC Action (3:09-CV-0298-N), by ECF or by mailing the objection to the Clerk of the United States District Court for the Northern District of Texas, 1100 Commerce Street, Dallas, Texas 75242, no later than [insert date of 21st day before Final Approval Hearing] .  All objections filed with the Court must:

a.      contain the name, address, telephone number, and (if applicable) an email address of the Person filing the objection;

b.      contain the name, address, telephone number, and email address of any attorney representing the Person filing the objection;

c.      be signed by the Person filing the objection, or his or her attorney;

d.      state, in detail, the basis for any objection;

e.      attach any document the Court should consider in ruling on the Settlement, the Bar Order, the Judgment and Bar Order, or Plaintiffs' request for approval of Plaintiffs' attorneys' fees; and

f.      if the Person filing the objection wishes to appear at the Final Approval Hearing, make a request to do so.

No Person will be permitted to appear at the Final Approval Hearing without filing a written objection and request to appear at the Final Approval Hearing as set forth in subparts (a) through (f) of this Paragraph.  Copies of any objections filed must be served by ECF, or by email or first class mail, upon each of the following:

6

**EXHIBIT E**

Stuart H. Singer
Boies Schiller Flexner LLP
401 East Las Olas Blvd.
Suite 1200
Fort Lauderdale, FL 33304
Telephone: (954) 356-0011
Facsimile: (954) 356-0022
E-mail: ssinger@bsfllp.com

and

Murray Fogler
Fogler, Brar, Ford, O'Neil & Gray LLP
909 Fannin, Suite 1640
Houston, Texas 77010
Telephone: (713) 481-1010
Facsimile: (713) 574-3224
E-mail: mfogler@fbfog.com

and

Edward C. Snyder
Castillo Snyder, PC
One Riverwalk Place
700 N. St. Mary's, Suite 405
San Antonio, Texas 78205
Telephone: 210-630-4200
Fax: 210-630-4210
E-mail: esnyder@casnlaw.com

and

Douglas J. Buncher
Neligan Foley LLP
325 N. St. Paul, Suite 3600
Dallas, Texas 75201
Telephone: 214-840-5320
Fax: 214-840-5301
E-mail: dbuncher@neliganlaw.com

and

Judith R. Blakeway
Clark Hill Strasburger
2301 Broadway

7

**EXHIBIT E**

San Antonio, Texas 78215
Telephone:     (210) 250-6004
Facsimile:     (210) 258-2706
E-mail:  judith.blakeway@clark hillstrasburger.com


and

John J. Little
Little Pedersen Fankhauser LLP
901 Main Street, Suite 4110
Dallas, Texas 75202
Telephone:  214.573.2307
Fax: 214.573.2323
E-mail: jlittle@lpf-law.com

and

Ralph Janvey
2100 Ross Ave
Suite 2600
Dallas, TX 75201
E-mail: rjanvey@kjllp.com

and

Kevin Sadler
Baker Botts
1001 Page Mill Road
Building One, Suite 200
Palo Alto, California 94304-1007
E-mail: kevin.sadler@bakerbotts.com

Any Person filing an objection shall be deemed to have submitted to the jurisdiction of this Court for all purposes of that objection, the Settlement, the Bar Order, and the Judgment and Bar Order.  Potential objectors who do not present opposition by the time and in the manner set forth above shall be deemed to have waived the right to object (including any right to appeal) and to appear at the Final Approval Hearing and shall be forever barred from raising such

8

**EXHIBIT E**

objections in this action or any other action or proceeding.  Persons do not need to appear at the Final Approval Hearing or take any other action to indicate their approval.

5.      <u>Responses to Objections</u>:  Any Party to the Settlement may respond to an objection filed pursuant to Paragraph 4 by filing a response in the SEC Action no later than [insert date of 7th day before the Final Approval Hearing].  To the extent any Person filing an objection cannot be served by action of the Court's CM/ECF system, a response must be served to the email and/or mailing address provided by that Person.

6.      <u>Adjustments Concerning Hearing and Deadlines</u>:  The date, time, and place for the Final Approval Hearing, and the deadlines and date requirements in this Scheduling Order, shall be subject to adjournment or change by this Court without further notice other than that which may be posted by means of ECF in the MDL, the SEC Action, and the Litigation.

7.      <u>Retention of Jurisdiction</u>:  The Court shall retain jurisdiction to consider all further applications arising out of or connected with the proposed Settlement.

8.      <u>Entry of Injunction</u>:  If the Settlement is approved by the Court, the Court will enter the Bar Order in the SEC Action and the Judgment and Bar Order in the Litigation.  If entered, each order will permanently enjoin, among others, Interested Parties, including Stanford Investors and Claimants, from bringing, encouraging, assisting, continuing, or prosecuting, against Greenberg or any of the Greenberg Released Parties, the Litigation, or any other action, lawsuit, cause of action, claim, investigation, demand, complaint, or proceeding of any nature, including, without limitation, contribution or indemnity claims, arising from or relating to a Settled Claim.

9.      <u>Stay of Proceedings</u>:  The Litigation is hereby stayed as to Greenberg only, except to the extent necessary to give effect to the Settlement.

9

**EXHIBIT E**

10.     Use of Order:  Under no circumstances shall this Scheduling Order be construed, deemed, or used as an admission, concession, or declaration by or against Greenberg of any fault, wrongdoing, breach or liability.  Nor shall the Order be construed, deemed, or used as an admission, concession, or declaration by or against Plaintiffs that their claims lack merit or that the relief requested is inappropriate, improper, or unavailable, or as a waiver by any party of any defenses or claims he or she may have.  Neither this Scheduling Order, nor the proposed Settlement Agreement, or any other settlement document, shall be filed, offered, received in evidence, or otherwise used in these or any other actions or proceedings or in any arbitration, except to give effect to or enforce the Settlement or the terms of this Scheduling Order.

11.     Entry of This Order:  This Scheduling Order shall be entered separately on the dockets both in the SEC Action and in the Litigation.

**IT IS SO ORDERED.**

Signed on _____, 2019

_____
DAVID C. GODBEY
UNITED STATES DISTRICT JUDGE

**EXHIBIT E**

## Publication Notice

To be published once in the national edition of *The Wall Street Journal* and once in the

international edition of *The New York Times*:

> PLEASE TAKE NOTICE that the Court-appointed Receiver for Stanford
> International Bank, Ltd. ("SIB") and related entities ("Stanford Entities"), and
> certain Plaintiffs, have reached an agreement to settle all claims asserted or that
> could have been asserted against Greenberg Traurig, P.A. and Greenberg Traurig,
> LLP relating to or in any way concerning SIB (the "Settlement Agreement").  As
> part of the Settlement Agreement, the Receiver and Plaintiffs have requested
> orders that permanently enjoin, among others, all Interested Parties, including
> Stanford Investors (i.e., customers of SIB, who, as of February 16, 2009, had
> funds on deposit at SIB and/or were holding certificates of deposit issued by SIB),
> from bringing any legal proceeding or cause of action arising from or relating to
> the Stanford Entities against Greenberg Traurig, P.A., Greenberg Traurig, LLP, or
> the Greenberg Released Parties.

> Complete copies of the Settlement Agreement, the proposed bar orders, and
> settlement documents are available on the Receiver's website
> http://www.stanfordfinancialreceivership.com.  All capitalized terms not defined
> in this Notice are defined in the Settlement Agreement.

> Interested Parties may file written objections with the United States District Court
> for the Northern District of Texas on or before [insert date of 21st day before
> Final Approval Hearing].

**EXHIBIT F**

## EXHIBIT G

**CASES AGAINST FORMER OFFICERS/DIRECTORS/EMPLOYEES**

1. *Janvey v. Alguire, et al.*, No. 3:09-cv-0724-N (N.D. Tex.)

2. *Janvey v. Wieselberg, et al.*, No. 3:10-cv-1394 (N.D. Tex.)

3. *Janvey v. Suarez*, No. 3:10-cv-02581-N (N.D. Tex.)

4. *Janvey & OSIC v. Alvarado, et al.*, No. 3:10-cv-2584-N (N.D. Tex.)

5. *Janvey & OSIC v. Giusti*, No. 3:11-cv-292 (N.D. Tex.)

6. *Janvey v. Stanford*, No. 3:11-cv-1199 (N.D. Tex.)

7. *Janvey v. Conzelman and Johnson*, No. 3:11-cv-2788 (N.D. Tex.)

8. *Janvey v. Hamric, et al.*, No. 3:13-cv-775-N (N.D. Tex.)

9. *Janvey v. Comeaux*, No. 3:13-cv-04700-N-BQ (N.D. Tex.)

10. *Janvey v. Hamm*, No. 3:14-cv-03213-N-BQ (N.D. Tex.)

11. *Janvey v. Staley*, No. 3:14-cv-03559-N-BQ (N.D. Tex.)

12. *Janvey v. Amadio et al*, No. 3:14-cv-03560-N-BQ (N.D. Tex.)

13. *Janvey & OSIC v. Bogar, et al.*, No. 3:14-cv-3635-N (N.D. Tex.)

14. *In re: Charles Brickey*, No. 11-26722 (Bankr. W.D. Tenn.)

15. *Janvey v. Hughes*, No. 1:15-ap-90312 (Bankr. M.D. Tenn.)

16. *In re: Charles Hughes*, No. 1:15-bk-02164 (Bankr. M.D. Tenn.)

17. *In re: Michael Ralby*, No. 9:18-bk-11784 (Bankr. S.D. Fla.)

18. *In re: Edward Prieto*, No. 17-24641-PGH (Bankr. S.D. Fla.)

19. *In the Matter of the Estate of Robert Otis Lenoir, Deceased*, Cause No. 18-PR-00353 (Miss. Chancery Court)

**CASES AGAINST STANFORD INVESTORS**

1. *Janvey v. Alguire, et al.*, No. 3:09-cv-0724-N (N.D. Tex.)

2. *Janvey v. Letsos*, No. 3:09-cv-01329-N (N.D. Tex)

3.  *Janvey v. Venger et al,* No. 3:10-cv-00366-N-BQ (N.D. Tex.)

4.  *Janvey v. Rodriguez Posada, et al.,* No. 3:10-cv-00415-N (N.D. Tex.)

5.  *Janvey v. Gilbe Corp., et al., ,* No. 3:10-cv-00478-N-BQ (N.D. Tex.)

6.  *Janvey v. Buck's Bits Service, Inc., et al.,* No. 10-cv-00528-N (N.D. Tex.)

7.  *Janvey v. Johnson*, *et al.,* No. 10-cv-00617-N (N.D. Tex)

8.  *Janvey v. Barr*, *et al.,* No. 10-cv-00725-N (N.D. Tex.)

9.  *Janvey v. Indigo Trust, et al,* No. 3:10-cv-00844-N-BQ (N.D. Tex.)

10.  *Janvey v. Dokken, et al.,* No. 3:10-cv-00931-N (N.D. Tex.)

11.  *Janvey v. Fernandez et al,* No. 3:10-cv-01002-N-BQ (N.D. Tex.)

12.  *Janvey v. GMAG LLC et al,* No. 3:15-cv-00401-N-BQ (N.D. Tex.)

13.  *Janvey v. GMAG LLC et al,* No. 17-11526 (5th Cir.)

14.  *Janvey v. GMAG LLC et al,* No. 19-0452 (Tex.)

15.  *In re: Michael Ross Hicks,* No. 5:16-bk-52344 (Bankr. W.D. Tex.)

16.  *Estate of Michael Ross Hicks, Deceased*, Cause No. 2018PCB0500 (County Court at Law, Comal Co., Tex.)


**FRAUDULENT TRANSFER CASES**

1.  *Janvey v. Barnes et al,* No. 3:10-cv-00527-N-BQ (N.D. Tex.)

2.  *Janvey et al v. The University of Miami,* No. 3:11-cv-00041-N-BQ (N.D. Tex.)


**THIRD PARTY LIABILITY CASES**

1.  *Rotstain v. Trustmark National Bank, et al*., No. 3:09-cv-02384-N (N.D. Tex.)

2.  *Troice v. Willis of Colorado, Inc., et al.*, No. 09-1274-N (N.D. Tex.)

3.  *Official Stanford Investors Committee et al. v. Willis of Colorado, Inc., et al.*, No. 3:13-cv-03980-N (N.D. Tex.)

**EXHIBIT G**

4. *Official Stanford Investors Committee et al v. Willis of Colorado, Inc. et al,* No. 17-11114 (5th Cir.)

5. *Janvey & OSIC v. Breazeale, Sachse, & Wilson, et al.*, No. 3:11-cv-329-N (N.D. Tex.)

6. *Janvey, et al. v. Greenberg Traurig, LLP, et al.*, No. 3:12-cv-4641-N (N.D. Tex.) (as to Yolanda Suarez only, and only with respect to her obligations under her separate settlement agreement; thus, for the avoidance of doubt, Suarez is included within the definition of Greenberg Released Parties, but her obligations under her separate settlement agreement are not released by this Settlement Agreement).

7. *Janvey v. Adams & Reese et al,* No.3:12-cv-00495-N-BQ (N.D. Tex.)

**EXHIBIT G**

## **EXHIBIT H**

1. *Certain Underwriters at Lloyd's of London v. Ralph S. Janvey*, No. 3:09-cv-01736-N-BQ (N.D. Tex.)

2. *SEC v. Stanford International Bank, Ltd., et al.*, No. 17-10663 (5th Cir.)

**EXHIBIT H**

# EXHIBIT 2

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RALPH S. JANVEY, in his capacity as Court-appointed receiver for the Stanford Receivership Estate, | § § § § | |
| Plaintiffs, | § § | |
| vs. | § § | CIV. ACTION NO. 3:12-cv-04641-N |
| GREENBERG TRAURIG, LLP; and GREENBERG TRAURIG, P.A., | § § § | |
| Defendants. | § § | |

DECLARATION OF EDWARD C. SNYDER
IN SUPPORT OF RECEIVER AND OSIC'S MOTION FOR ORDER APPROVING
PROPOSED SETTLEMENT WITH GREENBERG, TO ENTER THE BAR ORDER, TO
ENTER THE FINAL JUDGMENT AND BAR ORDER, AND TO APPROVE
APPLICATION FOR ATTORNEYS' FEES AND EXPENSES

Pursuant to 28 U.S.C. § 1746, I, Edward C. Snyder, hereby declare under penalty of perjury that I have personal knowledge of the following facts:

## I.    OVERVIEW

I am submitting this Declaration in support of the Receiver and the Official Stanford Investors Committee ("OSIC") (collectively, the "Plaintiffs") Expedited Request for Entry of Scheduling Order and Motion to Approve Proposed Settlement with Greenberg, to Enter the Bar Order, to Enter the Final Judgment and Bar Order, and for Plaintiffs' Attorneys' Fees and Expenses (the "Motion").[1]

## A.    Greenberg

1.    The settlement for which approval is sought in the Motion settles all remaining

---

[1] Capitalized Terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

claims against Greenberg Traurig, P.A. and Greenberg Traurig, LLP (individually and collectively, "Greenberg") in exchange for payment of **$65 million** by Greenberg to the Receiver for ultimate distribution to the Stanford investor victims (the "Greenberg Settlement").

2.      My law firm along with co-counsel Clark Hill Strasburger LLP ("Strasburger"), and Neligan Foley LLP ("Neligan") (together with my firm Castillo Snyder P.C., "Plaintiffs' Counsel"), have been litigating claims against Greenberg on behalf of a putative class of Stanford investors, the Receiver and OSIC since November 2012.  My firm was retained by OSIC in late 2010 to investigate and then to pursue claims against Greenberg, and my firm was later retained by the Receiver and Stanford investors Samuel Troice, Michoacan Trust, Sandra Dorrell, and Pam Reed, individually and on behalf of themselves and a putative class of Stanford investor victims (collectively referred to herein as the "Investor Plaintiffs") to pursue and litigate claims against Greenberg.

**B.      Curriculum Vitae**

3.      I am a named shareholder of the law firm Castillo Snyder P.C., based in San Antonio, Texas, and have been practicing law for twenty-five (25) years.  I presently serve as lead counsel for the Receiver with respect to claims against Greenberg, and also served as lead counsel for the Investor Plaintiffs and the putative class in their claims against Greenberg prior to the dismissal of said claims pursuant to the attorney immunity doctrine.[2]  I have actively participated in all material aspects regarding the Greenberg matter.

4.      I received my law degree from the University of Texas School of Law in 1994 and my law license also in 1994.  After law school, I served as Legal Advisor to the former Chairman of the U.S. International Trade Commission in Washington, D.C.  Since entering private practice

---

[2] *Official Stanford Investors Comm. v. Greenberg Traurig LLP*, 2017 WL 6761765 (N.D. Tex. 2017) (aff'd *Troice v. Greenberg Traurig LLP*, 921 F. 3d 501 (5th Cir. 2019).

in 1996, I have been involved principally in commercial litigation and trial work, and have handled major cases for both corporate and individual clients, as both plaintiff's and defendant's counsel. I am admitted to practice in the Western, Eastern, Northern and Southern federal districts of the State of Texas as well as the Fifth and Ninth Circuit courts of appeal and the United States Supreme Court.

5.     Castillo Snyder is a commercial litigation "boutique" firm based in San Antonio. My partner Jesse Castillo (who is a 35 year trial lawyer and previously was a partner at Cox & Smith) and I concentrate our practice on complex commercial litigation, including everything from contract, corporate and partnership disputes, securities litigation, real estate litigation, oil and gas litigation and other commercial and business cases. We have tried dozens of complex commercial matters to verdict and judgment, including commercial cases tried in U.S. courts under foreign laws.

6.     Since the 1990s, my partner and I have been involved on the plaintiffs' side in numerous class action lawsuits involving allegations of fraud and securities fraud and aider and abettor liability. One of my specialized practice areas over the last 20 years has been in the area of pursuing third parties such as banks, accounting firms, law firms and others accused of aiding and abetting complex international (typically offshore) securities fraud schemes. From 1998 through 2006 I served as lead class counsel for Mexican investors who had been defrauded by a Dallas-based Investment Adviser firm named Sharp Capital Inc. ("Sharp") that operated what amounted to an illegal offshore "fund" in the Bahamas but that was run from Dallas. The SEC intervened and filed suit against Sharp and appointed Ralph Janvey as the receiver for Sharp. Sharp lost over $50 million of Mexican investor funds. Through various lawsuits we brought under the Texas Securities Act ("TSA"), we were able to eventually recover millions of dollars

for the Sharp investors. See *Melo v. Gardere Wynne*, 2007 WL 92388 (N.D. Tex. 2007). I also represented Ralph Janvey, as receiver for Sharp, in litigation arising from the Sharp case, which was also settled. See *Janvey v. Thompson & Knight*, 2004 WL 51323 (N.D. Tex. 2004).

7.     Beginning in late 1999, my prior law firm and I also served as lead and/or co-lead class counsel (along with the Diamond McCarthy law firm) for the Class of primarily Mexican investors of the InverWorld group of companies, which was an investment group based in San Antonio that operated what amounted to an offshore fund in the Cayman Islands. We filed class action lawsuits against several Defendants, including a French bank, New York law firm Curtis Mallet-Prevost, and accounting firm Deloitte & Touche. See *Nocando Mem Holdings v. Credit Comercial de France*, 2004 WL 2603739 (W.D. Tex. 2004); *Gutierrez v. the Cayman Islands Firm of Deloitte & Touche*, 100 S.W.3d 261 (Tex. App. – San Antonio 2002). Those class cases proceeded in tandem with estate litigation filed by the bankruptcy trustee for InverWorld, who was principally represented by the Neligan firm. All of those class cases were premised on TSA aider and abettor claims and all of them eventually settled, each for eight figure sums.

8.     In 2003 I was retained by a group of Mexican investors who had been defrauded in yet another $400 million offshore investment fraud committed by a Houston-based investment firm called InterAmericas that, like Stanford, ran an offshore bank (in Curacao, Netherlands Antilles) through which primarily Mexican investors invested. While not a class action, myself and my former law firm filed litigation under the TSA aider and abettor provisions against Deloitte & Touche and a few other Defendants, resulting in seven figure settlements. See *Deloitte & Touche Netherlands Antilles and Aruba v. Ulrich,* 172 S.W.3d 255 (Tex. App. – Beaumont 2005).

9.     Besides the Stanford cases, I have in recent years been involved in two other SEC

Ponzi scheme cases. I served as a Special Litigation Counsel to an SEC Receiver in the Central District of California in a Ponzi scheme case styled *Securities and Exchange Commission v. Westmoore Management LLC et al,* Case No. 08:10-CV-00849-AG-MLG.  In that capacity I represented the Receiver with respect to all litigation activities.  I also represented several foreign investors in an alleged Ponzi scheme case in McAllen, Texas styled *Securities & Exchange Commission v. Marco A. Ramirez, Bebe Ramirez, USA Now, LLC., USA Now Energy Capital Group, LLC., and Now. Co. Loan Services, LLC;* In the United States District Court for the Southern District of Texas – McAllen Division; Case No. 7:13-cv-00531.

10.     I currently also serve as litigation counsel for SEC Receiver Tom Taylor in an accounting malpractice case pending before Judge Fitzwater in the Northern District of Texas, styled *Thomas L. Taylor v. Rothstein Kass et al.,* Civ. Action No. 3:19-cv-01594-D (N.D. Tex.).

11.     Based on my experience in SEC receivership and offshore fraud cases generally, as well as my experience in the Stanford cases, I am often invited to speak at seminars on securities litigation issues (including liability under the TSA) by the Texas State Bar.

## C.     Involvement with the Stanford Cases Since 2009

12.     I and my law firm have been heavily involved with the Stanford cases since February 2009.   As soon as Stanford collapsed in February 2009, I was retained by hundreds of investors from Mexico.  I immediately began investigating claims against various third party potential defendants connected with the collapse of Stanford.

13.     After the OSIC was created, I was asked to be a member of said Committee and continue to serve on OSIC today, without compensation.  My service on OSIC has consumed hundreds if not thousands of hours of my time over the last few years including time spent communicating with other OSIC members on weekends and late at night.

Declaration of Edward C. Snyder

14.     My investigations and efforts eventually led myself and the other Plaintiffs'

Counsel to file multiple class action lawsuits on behalf of Stanford investors, as well as

companion litigation on behalf of OSIC and the Receiver, including the following cases: *Troice*

*v. Willis of Colorado et al*, Case No. 3:09-cv-01274; *Janvey v. Willis of Colorado, Inc.*, Case No.

3:13-cv-03980; *Troice v. Proskauer Rose et a*l., Case No. 3:09-cv-01600; *Janvey v. Proskauer*

*Rose, LLP*, Case No. 3:13-cv-477; *Philip Wilkinson, et al v. BDO USA, LLP, et al*, Case No.

3:11-cv-1115; *The Official Stanford Investors Committee v. BDO USA, LLP, et al*, Case No.

3:12-cv-01447; *Turk v. Pershing, LLC*, Case No. 3:09-cv-02199; *Wilkinson, et al. v. Breazeale,*

*Sachse, & Wilson, LLP*, Case No. 3:11-cv-00329; and *Janvey v. Adams & Reese, LLP, et al.*,

Case No. 3:12-cv-00495 (the "Stanford Cases").

15.     I have served as either lead counsel or co-lead counsel with the other Plaintiffs'

Counsel in all of the Stanford Cases and I have been actively involved in every facet of the cases,

including the investigation of the facts and legal theories that form the bases for the suits,

responding to motions to dismiss and litigating class certification.  I served as co-lead counsel in

the successful appeals of the dismissal of the related *Troice* class action cases under SLUSA to

the Fifth Circuit and the U.S. Supreme Court ("SLUSA Appeal").

17.     In my view, my and my law firm's involvement in all of the related Stanford

Cases has proven invaluable to the successful resolution of the claims against Greenberg.  Given

the inherent overlap of factual and legal issues in third party litigation arising from the Stanford

fraud, much of the work performed by Plaintiffs' Counsel in related Stanford litigation since

2009 laid the groundwork for the successful resolution of the claims against Greenberg here.

## II.    THE CLAIMS AGAINST GREENBERG AND SETTLEMENT

### A.    The Claims Against Greenberg and Procedural History of the Case

18.    Plaintiffs' Counsel have been investigating and zealously prosecuting claims against Greenberg since late 2010.  Following a lengthy investigation of facts that involved the review of tens of thousands of documents, in November 2012 we filed a Complaint against Greenberg asserting the following claims:

| Category | Claim |
|---|---|
| Receiver/OSIC Claims | Negligence |
| | Participation in Breach of Fiduciary Duty |
| | Negligent Retention / Negligent Supervision |
| Investor Class Claims | Aiding and Abetting Violations of the TSA |
| | Aiding and Abetting / Participating in Breach of Fiduciary Duty |
| | Aiding and Abetting / Participating in a Fraudulent Scheme |
| | Civil Conspiracy |

### 1.    The Greenberg Action

19.    On November 15, 2012, and as the result of a thorough investigation lasting roughly 18 months, we filed a very detailed 165 page Original Complaint against Greenberg and co-Defendants Hunton and Williams LLP ("Hunton") and Yolanda Suarez ("Suarez") on behalf of the Receiver, OSIC and the Investor Plaintiffs, individually and on behalf of a putative class of Stanford investors, in the case styled *Janvey, et al v. Greenberg Hunton, LLP et al.*, Civil Action No. 3:12-cv-04641 (the "Greenberg Action") [ECF No. 1].

20.    The Defendants subsequently filed separate motions to dismiss the claims asserted by the Receiver/OSIC and the claims asserted by the Investor Plaintiffs. (Greenberg Action, ECF Nos. 27, 49, 56, 90).[3]

21.    By Orders dated December 17, 2014 (Greenberg Action, ECF No. 114) and

---

[3]    Greenberg filed one of these motions to dismiss (Greenberg Action, ECF Nos. 27), and a later motion to dismiss for lack of subject matter jurisdiction, or in the alternative, for judgment on the pleadings (Greenberg Action, ECF 203).

February 4, 2015 (Greenberg Action, ECF No. 123), the Court granted in part and denied in part Greenberg's motions to dismiss the Complaint, dismissing with prejudice (i) the Receiver and OSIC's claims for aiding and abetting fraudulent transfer; (ii) the Investor Plaintiffs' TSA claims for aiding and abetting and civil conspiracy for the sale of unregistered securities and the sale of securities by an unregistered dealer arising from sales taking place prior to February 1, 2008; (iii) the Investor Plaintiffs' TSA claims for aiding and abetting and civil conspiracy for the sale of securities through untruth or omission arising from sales taking place prior to February 1, 2006; dismissing without prejudice the Receiver and OSIC's claims for breach of fiduciary duty, and declining to dismiss the Plaintiffs' other claims against Greenberg.

22.    On August 11, 2015, the Court issued its Class Certification Scheduling Order (Greenberg Action, ECF No. 142).   The parties thereafter engaged in six months of class certification discovery and briefing.  The parties filed all of their class certification evidence and briefing with this Court on February 26, 2016.  (Greenberg Action, ECF Nos. 174-184).

23.    On December 5, 2017 (ECF 251), the Court granted Greenberg's Motion for Judgment on the Pleadings (ECF 203) as to the claims by the Investor Plaintiffs, dismissing the Investor Plaintiffs' claims based on the attorney immunity doctrine and obviating the necessity of a ruling on class certification. *Official Stanford Investors Comm. v. Greenberg Traurig LLP*, 2017 WL 6761765 (N.D. Tex. 2017).  The Investor Plaintiffs promptly appealed that ruling to the Fifth Circuit.

24.    On October 12, 2018, the Receiver and the Investor Plaintiffs filed their Amended Complaint, and on November 19, 2018, the Receiver and the Investor Plaintiffs filed their Second Amended Complaint (the "Second Amended Complaint") against Greenberg.   The Second Amended Complaint asserts "Receiver Claims" against Greenberg for Aiding, Abetting,

or Participation in Breaches of Fiduciary Duties, Breaches of Fiduciary Duties, Fraudulent

Transfer/Unjust Enrichment, and Negligent Retention/Negligent Supervision; and "Investor

Class Causes of Action" against Greenberg for Aiding and Abetting Violations of the Texas

Securities Act, Participation in/Aiding and Abetting Breach of Fiduciary Duty, Aiding and

Abetting/Participation in a Fraudulent Scheme, Civil Conspiracy, and Respondeat Superior, and

seeks actual and punitive damages. The Second Amended Complaint omits OSIC from the list

of parties and asserts no claims on behalf of OSIC.

25.    On April 17, 2019, the Fifth Circuit affirmed the Order dated December 5, 2017

(ECF 251) in which the Court granted Greenberg's Motion for Judgment on the Pleadings (ECF

203) as to the claims by the Investor Plaintiffs based on the attorney immunity defense, and the

dismissal of the claims of the Investor Plaintiffs and affirmance by the Fifth Circuit are final and

not subject to reopening or further proceedings. *Troice v. Greenberg Traurig LLP*, 921 F. 3d

501 (5th Cir. 2019).

26.    On December 4, 2018, Greenberg filed a Motion for Judgment on the Pleadings

with Brief in Support (ECF 292 & 293), and the Receiver opposed the motion (ECF 297).

27.    On July 22, 2019, the Greenberg filed a Motion for Summary Judgment with

Brief and Appendix in Support (ECF 340, 341 & 342), and the Receiver filed its Response in

opposition to the motion (ECF 345, 346 & 353). Said motion has not yet been decided. The

parties reached a settlement in principal two days after the Receiver filed his Response to

Greenberg's summary judgment motion and 60 days prior to trial.

**B.    Mediation**

28.    Mediation was held with Greenberg on three occasions. The Parties participated

in a mediation in 2012 with McGowan Dispute Resolution in Houston, Texas prior to the filing

of the Original Complaint.  Another mediation was held in May, 2018 with Phillips ADR in Corona del Mar, California, and an additional mediation was held in May, 2019 with Judge Alice Oliver-Parrot in Dallas, TX.  The parties were unable to reach resolution at these mediations.  However, negotiations continued and, in August 2019, the Parties reached agreement resulting in the Greenberg Settlement.  The parties executed the Greenberg Settlement Agreement on October 11, 2019.

**C.    Plaintiffs' Counsel Have Sufficient Basis to Evaluate and Recommend this Settlement**

29.    Plaintiffs' Counsel have spent substantial time and energy since 2009 investigating Stanford's business operations and relationships with third parties, including Greenberg, which involved the review of hundreds of thousands if not millions of pages of documents (including spending literally weeks at the Receiver's document warehouse in Houston), interviews of dozens of witnesses across the globe, coordination of efforts with the Receiver, Examiner, SEC and Department of Justice, and researching case law to establish viable theories of liability and damages and then defending those theories through dispositive motion practice before this Court in over a dozen separate lawsuits, including the SLUSA Appeal of investor claims all the way to the U.S. Supreme Court.  All of that work paved the way for the proposed settlement with Greenberg, and, in my view, the proposed Settlement could not have been achieved without the substantial amount of time and effort expended by Plaintiffs' Counsel and their tireless efforts in the Stanford Cases overall.

30.    Plaintiffs' Counsel collectively have spent roughly 8 years and thousands of hours investigating and zealously litigating claims against Greenberg on behalf of the Stanford Receivership Estate and the Stanford investors prior to reaching the settlement in August 2019 - just 60 days prior to trial.  Prior to filing the Greenberg Action in November 2012, I spent

roughly 18 months investigating claims against Greenberg (and co-Defendant Hunton & Williams).   As part of the investigation of claims against Greenberg for the Receiver and OSIC, I reviewed voluminous documents, including thousands of pages of documents detailing Greenberg's relationship with and services provided to Stanford going all the way back to 1988. The documents reviewed included documents from the Receivership as well as documents obtained from Greenberg and other law firms.   We also interviewed dozens of witnesses.   We researched relevant case law to develop claims against Greenberg, including Receiver claims and investor claims under the TSA and other common law claims belonging to the Stanford investors, to determine how the facts surrounding Greenberg's conduct supported such claims. The investigation of claims further required formulation of viable damage models and causation theories for both the Receivership Estate claims and the investor claims, and myself and Plaintiffs' Counsel spent considerable time researching and working up damage models for these cases.

31.     Plaintiffs' Counsel then aggressively litigated the Greenberg Action for close to 7 years.   Plaintiffs' Counsel briefed and largely prevailed on Defendants' Motions to Dismiss and engaged in extensive class certification discovery and voluminous briefing of class certification issues that included numerous complex and novel issues regarding foreign law.     Plaintiffs' Counsel defended against Greenberg's motion to dismiss the Plaintiff Investors' class claims based on the attorney immunity doctrine, and unsuccessfully appealed the resulting dismissal to the Fifth Circuit.

32.     Plaintiffs' Counsel then zealously litigated the Receiver's claims against Greenberg throughout 2018 and 2019, including taking or defending over 30 depositions and filing a comprehensive response to Greenberg's summary judgment motion, supported by a

3,300-page appendix of evidence that Plaintiffs' Counsel compiled.  Plaintiffs' Counsel were beginning to prepare for trial on the Receiver's claims against Greenberg when the settlement was reached.

35.    Plaintiffs' Counsel are uniquely qualified to evaluate the merits of the claims against Greenberg and the value of this settlement, and have acquired unparalleled knowledge and expertise regarding Greenberg's involvement with Stanford, and the value of the claims against Greenberg, sufficient to provide a sound basis for their recommendation of approval of the instant settlement.

**D.     The Settlement is Fair and Reasonable and Should be Approved**

33.    It is my opinion based upon years of experience litigating and settling complex receivership Ponzi scheme and securities fraud litigation, that the Greenberg Settlement is fair and reasonable and in the best interests of the Stanford Receivership Estate and the Stanford investors and should be approved by the Court.

34.    More importantly, I believe that the Greenberg Settlement represents the best result that could be achieved given all of the circumstances.  Indeed, and as evidenced by the Fifth Circuit's affirmance of the Court's dismissal of the Investor Plaintiffs' claims pursuant to the attorney immunity doctrine, and in view of the challenges that confronted the Receiver's claims at trial and in any subsequent appeal, these are by no means "easy" cases.  As a consequence, the result obtained is simply outstanding.  In light of all of the factors outlined in the Motion, the Greenberg Settlement represents an extremely good result for the Stanford receivership estate and its investors and should be approved.

### III.     ATTORNEYS' FEES

**A.     The Contingency Fee Agreement**

35.     Plaintiffs' Counsel have been jointly handling all of the Stanford Cases referenced above, including the claims against Greenberg, pursuant to twenty-five percent (25%) contingency fee agreements with the Receiver, OSIC (in cases in which OSIC is a named Plaintiff) and the Investor Plaintiffs (in investor class action lawsuits). With specific reference to the Greenberg Action, Plaintiffs' Counsel were collectively retained by the Receiver, OSIC, and the Investor Plaintiffs pursuant to contingency fee contracts that provide for a fee equivalent to 25% of any net recovery from Greenberg.

36.     As stated in the Motion, the Movants seek Court approval to pay Plaintiffs' Counsel a fee equal to an aggregate of twenty-five percent (25%) of the Net Recovery (*i.e.*, the settlement amount less allowable expense disbursements) in the Greenberg Settlement. This is the fee agreed to be paid to Plaintiffs' Counsel by the Receiver and this is the amount of the fee for which approval is sought in the Motion.

**B.     The 25% Contingency Fee is Fair and Reasonable**

37.     It is my opinion that the fee requested in the Motion is reasonable in comparison to the total net amount to be recovered for the benefit of the Stanford investors. The twenty-five percent (25%) contingency fee was heavily negotiated between the Receiver, OSIC and Plaintiffs' Counsel, and is substantially below the typical market rate contingency fee percentage of 33% to 40% that most law firms would demand to handle cases of this complexity and magnitude. In certain instances, OSIC interviewed other potential counsel who refused to handle the lawsuits without a higher percentage fee. The claims against Greenberg and the other third-party lawsuits are extraordinarily large and complex, involving voluminous records and electronic data and requiring many years of investigation, discovery and dispositive motions to get to trial. Indeed, the claims against Greenberg were particularly complex, involving complex

Declaration of Edward C. Snyder

issues of securities and banking law and the Foreign Corrupt Practices Act and an attorney-client relationship between Greenberg and Stanford that dated back to 1988.

38.     Moreover, as described above, myself and the other Plaintiffs' Counsel spent roughly 18 months investigating claims and preparing the 165 page detailed Complaint against Greenberg.  Since filing the lawsuit against Greenberg in November 2012, the case has been hard fought for almost 7 years, including through class certification, over 30 depositions across the country, summary judgment, and was settled just 60 days prior to trial.   As a result, Plaintiffs' Counsel have collectively invested thousands of hours of time worth in excess of **$4.4 million** during the almost 7-year period we have been working on the Greenberg matter, without compensation.   Plaintiffs' Counsel has, for many years now, borne significant risk of loss throughout this process after years of work for no compensation.   A twenty-five percent (25%) contingency fee is reasonable given the time and effort that was actually expended, the complexity of the matter and the risks involved.

**C.      Time and Effort of Plaintiffs' Counsel**

39.     Since February 2009, myself and my law firm have dedicated thousands of hours of time to the prosecution of Stanford Cases on a contingent fee basis.  This includes time spent investigating and understanding the background and history of the complex web of Stanford companies, the operations, financial transactions, interrelationship and dealings between and among the various Stanford entities and the defendants we have sued, the facts relating to the Ponzi scheme and how it was perpetrated through the various Stanford entities, and the involvement of the third-party defendants in the foregoing cases with Stanford.  Without a comprehensive investigation and understanding of this background, it would not have been possible to formulate viable claims against the third-party defendants and prosecute them

successfully.

40.     Even a cursory review of the Court's docket in the Greenberg Action reveals the immense amount of work that Plaintiffs' Counsel have put into the prosecution of the case since 2012.  However, the docket and pleadings only reveal the work that is filed with the Court.  As discussed further herein, and as the Court is aware, the prosecution of lawsuits of this magnitude and complexity has required a tremendous amount of time and effort to investigate the facts, research the relevant legal issues, coordinate and strategize with counsel and clients regarding the handling of the cases, conduct discovery including depositions, prepare the briefs and motions, attempt to negotiate settlements, respond to summary judgment and prepare for trial.  Plaintiffs' Counsel have collectively spent thousands of hours since 2009 in their investigation and prosecution of Stanford-related claims, including the claims against Greenberg.

41.     Over the last 10 years, myself and other attorneys and paralegals from my law firm have spent thousands of hours in largely uncompensated time worth millions of dollars investigating and prosecuting the Stanford Cases, including the Greenberg Action.  On average, well in excess of 70% of my practice over the last 10 years (and more typically 80-100% of my time on any given week) has been dedicated to these Stanford Cases.  I personally have worked many late nights and virtually every weekend for the last 10 years on Stanford cases or Stanford-related matters without compensation.  Indeed, I personally have worked on virtually nothing else but the Greenberg Action over the last two years to the exclusion of other work.

42.     With specific reference to the Greenberg Action, I recorded my own as well other attorneys and paralegals from my firm's time for work on the Greenberg Action separately from other Stanford cases.  For purposes of the Motion, I am only counting time I recorded since the settlement with Hunton was documented in August 2017, despite the fact that a lot of the work I

Declaration of Edward C. Snyder                                                                                    15

performed between 2010 and 2017 investigating claims against Greenberg, preparing and filing the Complaint, responding to motions to dismiss, and engaging in class certification discovery and briefing are equally applicable to the Greenberg Action.  Therefore, the time I submit for purposes of the Motion is representative of actual time my firm spent litigating solely the claims against Greenberg since the time of the Hunton settlement in 2017.   Specifically, from August 2017 through the end of September 2019, my firm has spent over **2,600 hours** of attorney and paralegal time worth approximately **$1.75 million** at our applicable hourly rates for complex cases of this nature, consisting of time that was dedicated directly to prosecution of the claims against Greenberg.

43.     I obviously anticipate investing additional time dedicated to the finalization of the instant Settlement, including finalizing the motion for approval documents, monitoring and responding to any objections where applicable, and attending and arguing at the approval hearing.  Therefore I believe that my law firm's total time dedicated to the Greenberg matter will eventually exceed **$1.8 million**.

44.     The proposed settlement is the result of many years of effort and thousands of hours of work by the Receiver, OSIC, Investor Plaintiffs and Plaintiffs' Counsel as described herein.  But for the efforts of these parties, and the efforts of myself and my law firm described herein, there would be no Greenberg Settlement, which will net the Receivership estate and the Stanford investors approximately **$49 million** (should the Court approve the attorneys' fee request) they would not have otherwise had.

45.     In light of the tremendous time and effort myself and my law firm and the other Plaintiffs' Counsel have put into the overall effort to recover monies for the Stanford Receivership Estate and the investors, all of which was necessary to the successful prosecution

and resolution of the Greenberg matter, it is my opinion that the twenty-five percent (25%) fee to be paid to Plaintiffs' Counsel for the settlement of the Greenberg matter is very reasonable. Myself and my laws firm and the other Plaintiffs' Counsel have worked tirelessly for over ten years to attempt to recover money for the benefit of Stanford's investors.

Dated: October 11, 2019

Edward C. Snyder

# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 3:09-CV-0298-N |
| STANFORD INTERNATIONAL BANK, LTD., *et al.*, | § | |
| | § | |
| | § | |
| Defendants. | § | |
| | § | |
| | § | |
| RALPH S. JANVEY, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:12-cv-04641-N |
| | § | |
| GREENBERG TRAURIG, LLP, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## DECLARATION OF DOUGLAS J. BUNCHER

Pursuant to 28 U.S.C. § 1746, I, Douglas J. Buncher, hereby declare under penalty of perjury that I have personal knowledge of the following facts, and they are true and correct.

**A.    Purpose of Declaration**

1.    I am submitting this Declaration in support of the Receiver and Official Stanford Investors Committee's (the "Committee") (collectively, the "Plaintiffs") Expedited Request for Entry of Scheduling Order, and Motion to Approve Proposed Settlement with Greenberg Traurig, P.A. and Greenberg Traurig, LLP (individually and collectively, "Greenberg") to Enter

the Bar Order, to Enter the Final Judgment and Bar Order, and for Plaintiffs' Attorneys' Fees and Expenses (the "Motion").[1]

**B.      Curriculum Vitae**

2.      My name is Douglas J. Buncher.  I am an attorney admitted to practice law in the State of Texas since 1989.  I am also admitted to practice before the United States District Courts for the Northern, Southern, Western and Eastern Districts of Texas, and am a member of the Bar Association of the United States Court of Appeals for the Fifth Circuit.  I am a partner in Neligan LLP ("Neligan"), a Dallas law firm which concentrates its practice in complex bankruptcy, insolvency and receivership proceedings and related litigation.  I have concentrated my practice in complex, commercial litigation since my career began in 1989, and since joining Neligan in 2000 have concentrated my practice in handling complex receivership and bankruptcy litigation similar to the above-captioned lawsuit against Greenberg (the "Greenberg Action").

3.      Neligan has handled numerous complex bankruptcy and receivership cases, and litigation associated with those cases, since the firm was formed in 1995.  Neligan and I have handled many receivership and bankruptcy-related lawsuits seeking to recover hundreds of millions, and in some cases, billions of dollars in damages from third parties for the benefit of bankruptcy and receivership estates, as well as the investors and creditors of those estates.  A detailed description of Neligan, its areas of practice, case studies, and representative engagements, as well as my personal biography, background and experience, are set forth on Neligan's website, www.neliganlaw.com.

4.      As an example of Neligan's prior experience in complex bankruptcy and receivership proceedings, in 1999 Neligan was retained as counsel to the SEC receiver, joint

---

[1] Capitalized Terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

official liquidators and Chapter 11 bankruptcy trustee in the InverWorld insolvency proceeding, a cross-border SEC receivership and bankruptcy case pending in United States Bankruptcy Court and District Court for the Western District of Texas, San Antonio Division, with a simultaneous Cayman liquidation proceeding in the Cayman Islands. InverWorld, Inc., one of the InverWorld companies, was a San Antonio-based SEC registered investment adviser and broker-dealer that took in over $300 million of primarily Latin American investors' funds on the promise of liquid, low risk investments and above-market rate returns, much like Stanford on a smaller scale. Neligan was the lead counsel for the SEC receiver in the InverWorld case, serving in essentially the same role as Baker Botts in the Stanford case. In the InverWorld case, Neligan also coordinated and participated in the prosecution of several multi-hundred million dollar lawsuits brought by the receiver/trustee and investors, individually and as class representatives, against third parties who were alleged to have aided and abetted the InverWorld Ponzi scheme, including the auditor Deloitte & Touche, law firm Curtis Mallet, and French, Bahamian and Swiss financial institutions affiliated with Credit Commercial de France. All of that litigation was successfully resolved, resulting in significant recoveries to the InverWorld estate and investors.

     5.     Neligan also served as counsel to an ad hoc committee of bondholders, the litigation trustee, and a group of individual bondholders in litigation arising out of the Global Crossing bankruptcy in 2001 involving hundreds of millions of dollars in damages. At the time, Global Crossing, a company that was laying fiber optic cable around the world in anticipation of the expanding usage of the internet, was one of the largest bankruptcies in U.S. history.

**B.    Neligan Role in Stanford-Related Litigation**

6.    Shortly after the Stanford Receivership was commenced in early 2009, Neligan was approached by Edward Snyder of Castillo Snyder P.C. ("Castillo Snyder") and Edward Valdespino of Strasburger & Price, LLP, now known as Clark Hill Strasburger ("Strasburger") to serve as co-counsel to their clients who had invested hundreds of millions of dollars into Stanford International Bank, Ltd. CDs ("SIBL CDs").   Due to Neligan's prior experience in major bankruptcy and receivership proceedings and third-party litigation associated with those proceedings, Neligan was hired to assist counsel at Castillo Snyder and Strasburger with the investigation and prosecution of litigation against third parties and to assist with the Stanford Receivership and potential bankruptcy issues.

7.    Neligan has monitored and participated in the Stanford Receivership proceeding since that time.   On July 29, 2009, the Stanford Multidistrict Litigation matter, MDL No. 2099, was initiated (the "Stanford MDL Proceeding").   Neligan has also monitored and participated in the Stanford MDL Proceeding since its inception.

8.    In 2009, Castillo Snyder, Strasburger, and Neligan jointly initiated class action lawsuits in this Court on behalf of certain Stanford investors, individually and on behalf of a class of similarly situated investors, styled *Troice v. Willis of Colorado, Inc.*, Case No. 3:09-cv-01274, and *Troice v. Proskauer Rose, LLP*, Case No. 3:09-cv-01600.

9.    Since that time, in addition to the aforementioned *Proskauer* and *Willis* investor cases, Neligan, along with Castillo Snyder, Strasburger and Butzel Long, have investigated, filed and prosecuted virtually all of the other major Stanford-related litigation against third-parties on behalf of the Committee and Stanford investor plaintiffs, who have sued individually and on behalf of putative classes of Stanford investors, including the following lawsuits in this Court:

4

        (a)    *Official Stanford Investors Committee, et al. v. Breazeale, Sachse, & Wilson, LLP, et al.*, Case No. 3:11-cv-00329;

        (b)    *Janvey, et al. v. Adams & Reese, LLP, et al.*, Case No. 3:12-cv-00495;

        (c)    *Janvey, et al. v. Greenberg Traurig, LLP, et al.*, Case No. 3:12-cv-04641;

        (d)    *Janvey, et al. v. Proskauer Rose, LLP, et al.*, Case No. 3:13-cv-477; and

        (e)    *Janvey, et al. v. Willis of Colorado, Inc., et al.*, Case No. 3:13-cv-03980.[2]

In addition to representing the Committee and Investor Plaintiffs, Neligan has also been engaged to represent the Receiver in those cases listed above in which the Receiver is a named Plaintiff. Neligan was also lead counsel for the Plaintiffs in the two BDO lawsuits, which were successfully resolved: *Philip Wilkinson, et al v. BDO USA, LLP, et al*, Case No. 3:11-cv-1115; *The Official Stanford Investors Committee v. BDO USA, LLP, et al*, Case No. 3:12-cv-01447. Thus, Neligan has been actively involved in the major Stanford-related litigation against third parties since 2009.

       10.    Neligan has also jointly handled many of the fraudulent transfer cases brought by the Committee and the Receiver pursuant to an agreement approved by the Court's order dated February 25, 2011 [Docket No. 1267]. Neligan served as lead counsel in the following fraudulent transfer cases:[3]

        (a)    *Ralph S. Janvey and Official Stanford Investors Committee v. Yolanda Suarez*, Civil Action No. 10-cv-2581, now consolidated with the *Greenberg* lawsuit, Civil Action No. 3:12-cv-4641;

---

[2] Peter Morgenstern of Butzel Long is co-counsel for the Investor Plaintiffs and Committee in all these cases except the cases against Willis of Colorado, Inc. and Proskauer Rose, LLP. Strasburger was not involved in the cases against Adams & Reese, LLP and Breazeale, Sachse & Wilson LLP.

[3] Castillo Snyder, Strasburger, and Butzel Long served as co-counsel in these cases and lead counsel in other Stanford-related fraudulent transfer cases. In turn, Neligan served as co-counsel in the cases in which Castillo Snyder, Strasburger, or Butzel Long serve as lead counsel.

(b)    *Ralph S. Janvey and Official Stanford Investors Committee v. IMG Worldwide, Inc.*, Civil Action No. 11-0117; consolidated with *Ralph S. Janvey and Official Stanford Investors Committee v. International Players Championship, Inc.*, Civil Action No. 11-0293;

(c)    *Ralph S. Janvey and Official Stanford Investors Committee v. Miami Heat Limited Partnership and Basketball Properties, Ltd.*, Civil Action No. 11-0158;

(d)    *Ralph S. Janvey and Official Stanford Investors Committee v. PGA Tour, Inc.*, Civil Action No. 11-0226;

(e)    *Ralph S. Janvey and Official Stanford Investors Committee v. The Golf Channel, Inc.*, Civil Action No. 11-0294, currently on appeal at the Fifth Circuit;

(f)    *Ralph S. Janvey and Official Stanford Investors Committee v. ATP Tour, Inc.*, Civil Action No. 11-0295; and

(g)    *Ralph S. Janvey and Official Stanford Investors Committee v. Rocketball, Ltd. and Hoops, L.P.*, Civil Action No. 11-770.

## C.    Neligan Role in Litigation Against Greenberg

11.    Neligan has been involved with the investigation, prosecution and settlement of the claims asserted against Greenberg since 2009, long before the Greenberg Action was filed. Although the Greenberg Action was filed in 2012, the investigation of the potential claims against Greenberg began long before that.  In addition to significant time spent on pre-suit investigation, Neligan also spent significant time pre-suit preparing for and participating in a pre-suit mediation with Greenberg.  That mediation and subsequent post-mediation discussions and negotiations were ultimately unsuccessful.

12.    Therefore, on or about June 21, 2012, Neligan was retained by the Receiver to investigate, file and prosecute claims against Greenberg on behalf of the Receiver.  On or about November 12, 2012, Neligan was also retained by the Committee in the Greenberg Action.

Neligan has been actively involved in all aspects of the investigation, discovery, prosecution and settlement of the Greenberg Action since it was filed in 2012.

13.     The settlement for which approval is sought in the Motion settles all claims against Greenberg in exchange for payment of $65 million by Greenberg to the Receiver for ultimate distribution to the Stanford investor victims, an amount nearly twice that paid by co-defendant Hunton & Williams, LLP ("Hunton"). For the same reasons the Court approved the settlement with Hunton and the other Stanford settlements in which Neligan has been involved, the settlement with Greenberg is reasonable, in the best interests of the Stanford Receivership Estate and the Stanford Investors for whose ultimate benefit the Greenberg Action has been prosecuted, and should be approved.

14.     Neligan's assistance in the investigation of claims against Greenberg included hundreds of hours of document review at the warehouse in Houston, Texas, where the Stanford business records are maintained, searches for and review of thousands of potentially relevant documents contained within the electronic databases containing Stanford documents and emails, thousands of documents contained in the legal files and electronic records produced by Greenberg, and review and selection of the critical documents that were ultimately selected by Plaintiffs as potential trial exhibits that formed the basis of the claims asserted against Greenberg in the Complaint. Neligan has actively participated in the investigation of the claims against Greenberg, preparation of the Complaint and all aspects of the discovery and prosecution of the Greenberg Action since it was filed, including both fact and expert discovery which was completed before the case was settled. Neligan also spent hundreds of hours assisting with the research for and preparation of the Brief in Response to Greenberg's comprehensive Motion for Summary Judgment containing an Appendix over 2,300 pages before the case was settled. It

7

was only after Neligan and the other Plaintiffs' counsel had done all of the fact and expert discovery, responded to Greenberg's motion for summary judgment and motions to strike Plaintiffs' expert witnesses, and virtually all of the other work necessary to prepare the case for trial that the Greenberg Action was settled.  As a result, Neligan invested thousands of hours on a purely contingency fee basis before the case was settled.

15.     Neligan had also prepared for and participated in two additional post-suit mediations with Greenberg, both of which failed to produce a settlement, evidencing just how difficult it was to get the case settled.  The case ultimately settled in principle on or about August 22, 2019, the day after the Receiver responded to Greenberg's motion for summary judgment.

16.     Neligan's time and effort played an integral role in achieving the settlement of the claims against Greenberg that is the subject of the Motion. Neligan has also spent additional time drafting, reviewing and revising the settlement documents and the Motion for Approval.

D.      **Reasonableness of Settlement**

17.     It is my opinion based upon years of experience prosecuting, trying and settling complex receivership and bankruptcy litigation, my involvement in the Stanford Receivership settlements with BDO, Kroll, Proskauer, Chadbourne, Willis, Hunton and certain Defendants in the Adams & Reese and Breazeale, Sachse & Wilson lawsuits, my assessment of the relative merits of the claims and defenses in the Greenberg Action, the risks and delay attendant to prosecuting the Greenberg Action through trial and an inevitable appeal, and the reasons set forth in the Motion, that the settlement with Greenberg is fair and reasonable and in the best interests of the Stanford Receivership Estate and the Stanford investors and should be approved by the Court.

8

E.      **Time and Effort of Neligan Related to the Greenberg Action and Other Stanford Litigation**

18.     In addition to approval of the settlement, the Motion seeks approval and payment of the agreed upon twenty-five percent (25%) contingency fee to Plaintiffs' Counsel. Neligan has invested 3,246 hours and $1,736,802.00 of professional time in the Greenberg Action through September 30, 2019.   Over 2,400 hours and $1,307,379.00 of this time was incurred after the settlement with Hunton and is, therefore, related exclusively to the prosecution of the claims against Greenberg.[4]

19.     Over the last two years, I have spent a considerable percentage of my time working on the Greenberg Action.

20.     Neligan will continue to incur additional time in connection with obtaining court approval of the settlement.

21.     In addition to the time invested by Neligan in the Greenberg Action, since 2009 Neligan has invested an immense amount of time and effort into the Stanford Receivership generally and into litigation against third parties to attempt to recover money for the benefit of the Stanford investors.   Neligan has devoted thousands of hours and millions of dollars of time investigating and prosecuting all of the Stanford litigation referenced above and monitoring the Stanford Receivership generally since its inception.  As of September 30, 2019, Neligan has invested over 15,800 hours and nearly $7.7 million of professional time in the Stanford case as a whole.   It is not possible to properly handle any of the major Stanford lawsuits against third parties, including the Greenberg Action, without monitoring and staying abreast of all the related cases and the Stanford receivership generally.  It is also not possible to properly handle any of

---

[4] These figures exclude the entirety of Neligan's time before the settlement with Hunton, even though approximately half of that time would be attributable to the claims against Greenberg.

9

the major Stanford lawsuits against third parties, including the Greenberg Action, without coordinating efforts with the Receiver's counsel at Baker Botts LLP, as well as other counsel to the Committee. Neligan and the other Plaintiffs' Counsel have done an immense amount of work investigating and analyzing the Stanford Ponzi scheme and the potential claims that could be brought against third parties who assisted Stanford since the commencement of this Receivership case, all of which allowed Plaintiffs' Counsel to formulate, prosecute and successfully and efficiently settle the claims against Greenberg. But for the diligent efforts of Plaintiffs' Counsel since the commencement of this Receivership Action, the settlement with Greenberg would never have been achieved.

> **F.    Reasonableness of Attorneys' Fees**

22.    In light of the tremendous time, effort and market value of the hours Neligan and the other Plaintiffs' Counsel have put into the effort to recover monies for the Stanford Receivership Estate and the Stanford investors, including but not limited to the time related to the claims against Greenberg, the Court's prior approval of the 25% contingency fee arrangement between the Committee and the Receiver, the Court's approval of the 25% contingency fees in connection with the prior settlements with third parties BDO, Kroll, Proskauer, Chadbourne, Hunton, Willis and Adams & Reese, as well as applicable case law in the Fifth Circuit concerning the range of reasonable contingency fees for litigation of this nature, it is my opinion that the twenty-five percent (25%) contingency fee to be paid to Plaintiffs' Counsel for the settlement with Greenberg is reasonable and should be approved. I also affirm the analysis of the *Johnson* factors set forth in the Motion, which also support approval of the attorneys' fees requested.

Dated:  October 15, 2019.

Douglas J. Buncher

11

# EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:09-cv-0298-N |
| STANFORD INTERNATIONAL BANK, LTD., et al., | § § § | |
| Defendants. | § § § | |
| | § | |

| | | |
|---|---|---|
| RALPH S. JANVEY, in his capacity as Court-appointed Receiver for the Stanford Receivership Estate; SANDRA DORRELL; SAMUEL TROICE; and MICHOACAN TRUST; individually and on behalf of a class of all others similarly situated, | § § § § § § § | |
| Plaintiffs, | § | CIVIL ACTION NO. 3:12-cv-04641-N |
| v. | § § | |
| GREENBERG TRAURIG, LLP; GREENBERG TRAURIG, PA; and YOLANDA SUAREZ, | § § § § | |
| Defendants. | § § | |

**DECLARATION OF JUDITH R. BLAKEWAY
IN SUPPORT OF RECEIVER'S EXPEDITED REQUEST FOR ENTRY OF
SCHEDULING ORDER AND MOTION TO APPROVE PROPOSED SETTLEMENT
WITH GREENBERG, TO APPROVE THE PROPOSED NOTICE OF SETTLEMENT
WITH GREENBERG, TO ENTER THE BAR ORDER, TO ENTER THE FINAL
JUDGMENT AND BAR ORDER, AND FOR PLAINTIFFS' ATTORNEYS' FEES**

Pursuant to 28 U.S.C. § 1746, I, Judith R. Blakeway, declare under penalty of perjury that

I have personal knowledge of the following facts:

## BACKGROUND

1.     I submit this Declaration in support of the Receiver's, and Official Stanford Investors Committee ("OSIC") and Investor Plaintiffs' (as hereinafter defined) (collectively, the "Plaintiffs") Expedited Request for Entry of Scheduling Order and Motion to Approve Proposed Settlement with GREENBERG, to Enter the Bar Order, to Enter the Final Judgment and Bar Order, and for Plaintiffs' Attorneys' Fees and Expenses (the "Motion").

2.     The settlement for which approval is sought in the Motion settles all claims asserted against GREENBERG in Civil Action Nos. 3:12-cv-04641-N (the "Greenberg Action") for $65 million (the "Greenberg Settlement").

3.     I am a partner in the Litigation Section of Clark Hill Strasburger.  I was formerly a partner in Strasburger & Price, LLP which combined its practice with Clark Hill in April, 2018. I and my law firm serve as Plaintiffs' co-counsel in the Greenberg Action and are responsible for the prosecution of the Greenberg Action.  I actively participated in all material aspects of the Greenberg Action from February 2016.  Prior to my taking over the Stanford litigation docket, the docket was handled by Edward Valdespino.  In addition to Strasburger, other firms that have been involved in the investigation and prosecution of the Greenberg Action include Neligan LLP ("Neligan"), and Castillo Snyder P.C. ("Castillo Snyder") (collectively "Plaintiffs' Counsel").

## CURRICULUM VITAE

4.     I was admitted to practice law in the State of Texas in 1977.  I am also admitted to practice before the United States District Courts for the Northern, Southern, Eastern and Western Districts of Texas, the United States Court of Appeals for the Fifth Circuit, and the United States Supreme Court.  Throughout my career, I have handled complex commercial litigation for both corporate and individual clients, acting as both defendants' and plaintiffs' counsel.

2

5.      Strasburger & Price LLP ("Strasburger") was founded in 1939 and had approximately 200 attorneys with offices in Austin, Dallas, Frisco, Houston and San Antonio, Texas.  Strasburger also maintained offices in New York, Washington, D.C. and Mexico City. Clark Hill has about 450 lawyers.  The combined firm has about 650 lawyers.

6.      I have experience in the following relevant areas of law:

      a.      securities litigation;

      b.      fiduciary litigation; and

      c.      class action litigation.

7.      Strasburger's appellate group, of which I am a member, has been actively involved in the Greenberg Action and other Stanford lawsuits.  A detailed description of the background and experience of attorneys involved in the Greenberg Action is set forth on Clark Hill Strasburger's website, www.clarkhillstrasburger.com.

8.      In February of 2009, shortly after the collapse of Stanford, Strasburger was retained by approximately 2300 Stanford victims who lost approximately $570,000,000.  The firm then began investigating potential claims against third party defendants.

9.      After the Official Stanford Investor's Committee ("OSIC") was formed, Edward Valdespino became a member and served on that committee until January of 2016, without compensation.  After Mr. Valdespino resigned I was elected to serve on the OSIC, without compensation, and continue to serve.

10.      Strasburger (n/k/a Clark Hill Strasburger) has participated as co-counsel in every facet of these cases, including the investigation of the facts and legal theories that form the bases for the lawsuits.  I served as co-counsel in the successful appeal of the dismissal of the Troice Actions under Securities Litigation Uniform Standards Act (SLUSA) to the Fifth Circuit and the

U.S. Supreme Court ("SLUSA Appeal"). My partner, Michael Jung, and I were heavily involved in preparing and presenting the briefs to the Fifth Circuit and to the Supreme Court of the United States. In addition, Michael Jung successfully argued the case before the Fifth Circuit.

11.     Throughout this process, I have coordinated my activities with the Receiver and his counsel, the Examiner, and other members of the OSIC. I have interviewed numerous witnesses and reviewed thousands of documents. I have reviewed the databases maintained by the Receiver, and the trial transcripts of the Stanford criminal trial as well as SEC administrative proceedings.

12.     In my opinion, my involvement and the involvement of other Clark Hill Strasburger lawyers contributed to the successful prosecution and resolution of the Greenberg Action. The Greenberg Settlement could not have been accomplished without the substantial time and effort expended by all Plaintiffs' Counsel and their efforts in all the Stanford-related cases.

A.     **The Greenberg Action**

13.     As this Court is aware, the Greenberg Action has been heavily litigated over the last 7 years.

14.     On November 15, 2012, and as the result of a thorough investigation, counsel for the Plaintiffs filed their very detailed 165 page Original Complaint (Greenberg Action, ECF No. 1). Claims were also originally brought by Samuel Troice, Michoacan Trust, Sandra Dorrell, and Pam Reed, who was substituted for Sandra Dorrell ("Investor Plaintiffs"), on behalf of themselves and a putative class. The Complaint asserts claims against Greenberg for negligence, aiding and abetting breaches of fiduciary duties, breaches of fiduciary duties, fraudulent

4

transfer/unjust enrichment, aiding and abetting fraudulent transfers, negligent retention, aiding and abetting violations of the Texas Securities Act ("TSA"), aiding and abetting a fraudulent scheme, and civil conspiracy.

15.     The Defendants subsequently filed separate motions to dismiss the claims asserted by the Receiver/Committee and the claims asserted by the Investor Plaintiffs. (Greenberg Action, ECF Nos. 27, 49, 56, 90).

16.     On February 21, 2013, Greenberg filed a counterclaim for declaratory relief and a third party complaint against the Antiguan Joint Liquidators. (Greenberg Action, ECF 31).

17.     On February 22, 2013, the Court stayed the putative class claims in the case until after the Supreme Court rendered a decision on the merits in the consolidated cases of *Chadbourne & Parke LLP v. Troice*, No.12-79; *Willis of Colorado, Inc. v. Troice*, No. 12-86; and *Proskauer Rose LLP v. Troice*, No. 12-88. (Greenberg Action, ECF 34).

18.     On June 27, 2013, Plaintiffs responded to the motion to join the Antiguan Joint Liquidators and filed a motion to dismiss counterclaim and third party complaint. (Greenberg Action, ECF No. 60). On May 23, 2014, Greenberg withdrew its motion to join the Antiguan Joint Liquidators and dismissed its counterclaim and third party complaint. (Greenberg Action, ECF Nos. 95, 96).

19.     On June 28, 2013, Plaintiffs filed a response to Greenberg's motion to dismiss the Complaint (Greenberg Action, ECF No. 63) and on August 19, 2013, Greenberg replied. (Greenberg Action, ECF 74).

20.     By Orders dated December 17, 2014 (Greenberg Action, ECF No. 114) and February 4, 2015 (Greenberg Action, ECF No. 123), the Court granted in part and denied in part Greenberg's motions to dismiss the Complaint, dismissing with prejudice (i) the Receiver and

Committee's claims for aiding and abetting fraudulent transfer; (ii) the Investor Plaintiffs' TSA claims for aiding and abetting and civil conspiracy for the sale of unregistered securities and the sale of securities by an unregistered dealer arising from sales taking place prior to February 1, 2008; (iii) the Investor Plaintiffs' TSA claims for aiding and abetting and civil conspiracy for the sale of securities through untruth or omission arising from sales taking place prior to February 1, 2006; dismissing without prejudice the Receiver and Committee's claims for breach of fiduciary duty, and declining to dismiss the Plaintiffs' other claims against Greenberg.

21.     On August 11, 2015, the Court issued its Class Certification Scheduling Order (Greenberg Action, ECF No. 142).   The parties thereafter engaged in six months of class certification discovery and briefing.   The parties filed all of their class certification evidence and briefing with this Court on February 26, 2016.   (Greenberg Action, ECF Nos. 174-184).

22.     On November 17, 2015, Greenberg filed a motion to designate responsible third parties (Greenberg Action, ECF Nos. 152, 153) and on November 19, 2015, Greenberg filed its first amended answer.   (Greenberg Action, ECF 155).   On November 19, 2015 Greenberg filed an amended motion to designate responsible third parties and an amended answer.   (Greenberg Action, ECF Nos. 153, 155).

23.     On April 8, 2016, Greenberg filed a motion to dismiss for lack of subject matter jurisdiction, or in the alternative, for judgment on the pleadings (Greenberg Action, ECF 203) and on May 16, 2016, Plaintiffs responded.   (Greenberg Action, ECF 198).

24.     On December 5, 2017 (ECF 251) the Court granted Greenberg's Motion for Judgment on the Pleadings (ECF 203) as to the claims by the Investor Plaintiffs.   The Court also lifted the stay, permitting the remaining parties to commence merits discovery.   (Greenberg Action, ECF 248).   The parties then commenced 20 months of discovery.

25.     On October 12, 2018, the Receiver and the Investor Plaintiffs filed their Amended Complaint, and on November 19, 2018, the Receiver and the Investor Plaintiffs filed their Second Amended Complaint (the "Second Amended Complaint") against Greenberg.   The Second Amended Complaint asserts "Receiver Claims" against Greenberg for aiding, abetting, or participation in breaches of fiduciary duties, breaches of fiduciary duties, fraudulent transfer/unjust enrichment, and negligent retention/negligent supervision; and "Investor Class causes of action" against Greenberg for aiding and abetting violations of the Texas Securities Act, participation in/aiding and abetting breach of fiduciary duty, aiding and abetting/participation in a fraudulent scheme, civil conspiracy, and respondeat superior, and seeks actual and punitive damages.   The Second Amended Complaint omits the Committee as a party, and brings no claims on behalf of the Committee.   Greenberg answered the Amended Complaint on December 3, 2018 (ECF 290).

26.     On December 7, 2018 Greenberg filed a motion to designate responsible third parties (ECF 294) and the Receiver responded on December 17, 2018 (ECF 297).

27.     On April 17, 2019, the Fifth Circuit affirmed the Order dated December 5, 2017 (ECF 251) in which the Court granted Greenberg's Motion for Judgment on the Pleadings (ECF 203) as to the claims by the Investor Plaintiffs.

28.     On December 4, 2019, Greenberg filed a Motion for Judgment on the Pleadings with Brief in Support (ECF 292 & 293), and the Receiver opposed the motion (ECF 297).

29.     On July 22, 2019, Greenberg filed a motion for summary judgment with brief and appendix in support (ECF 340, 341 & 342), and the Receiver opposed the motion (ECF 345, 346 & 353).   The parties both filed motions to exclude expert testimony (ECF 326-339) and responses (ECF 343-352, 354-59).

4822-1574-5702.1/D0624/B08864/091919

**B.      Mediation**

30.      Mediation was held with Greenberg on at least three occasions.  The parties participated in mediation in 2012 with McGowan Dispute Resolution in Houston, Texas. Another mediation was held in May 2018 with Phillips ADR in Corona del Mar, California, and an additional mediation was held in May 2019 with Judge Alice Oliver-Parrot in Dallas, Texas. The parties were unable to reach resolution at these mediations.  However, negotiations continued and, in August 2019, the Parties reached agreement resulting in the Greenberg Settlement.

**C.      Plaintiffs' Counsel Have Sufficient Basis to Evaluate and Recommend this Settlement**

31.      Plaintiffs' Counsel have spent substantial time and energy since 2009 investigating Stanford's business operations and relationships with third parties, including Greenberg, reviewing hundreds of thousands of pages of documents (including spending literally weeks at the Receiver's document warehouse in Houston), interviewing dozens of witnesses across the globe, coordinating efforts with the Receiver, Examiner, SEC and Department of Justice, and researching case law to establish viable theories of liability and damages and then defending those theories through dispositive motion practice before this Court, including the SLUSA Appeal of the Troice Action all the way to the U.S. Supreme Court.

32.      Plaintiffs' Counsel collectively have spent roughly 10 years and thousands of hours zealously pursuing claims against Greenberg on behalf of the Stanford Receivership Estate and the Stanford Investors prior to reaching settlement.  As part of the investigation of claims against Greenberg for the Receiver and OSIC, Plaintiffs' Counsel reviewed thousands of pages of documents detailing Greenberg's relationship with and services provide to Stanford.  The documents reviewed included documents from the Receivership and documents obtained from

8

Greenberg and other law firms. Plaintiffs' Counsel interviewed dozens of witnesses. Plaintiffs' Counsel researched relevant case law to develop claims against Greenberg, including claims under the Texas Securities Act and other common law claims belonging to the Stanford Investors, as well as claims that could be asserted by the Receiver and OSIC, to determine how the facts surrounding Greenberg's conduct supported such claims. The investigation of claims further required formulation of viable damage models and causation theories for both the Receivership Estate claims and the Investor claims, and Plaintiffs' Counsel spent considerable time researching and working up damage models for these cases.

33.     Plaintiff's Counsel also engaged in protracted motion practice and 20 months of discovery, including producing and reviewing thousands of documents and taking and defending depositions of 20 fact witnesses and 14 expert witnesses. Plaintiffs' counsel also prosecuted two appeals of the Investor claims to the Fifth Circuit Court of Appeals.

## REQUEST FOR APPROVAL OF THE SETTLEMENT

34.     I respectfully submit that, based upon 42 years of experience in prosecuting, defending,  and settling complex commercial litigation, the Greenberg Settlement is fair and reasonable and in the best interests of the Stanford Receivership Estate and the Stanford Investors and should be approved by the Court.

## REQUEST FOR APPROVAL OF ATTORNEYS' FEES

35.     Plaintiffs' Counsel have been jointly handling all of the Stanford-related cases referenced above, including the Greenberg Action, pursuant to twenty-five percent (25%) contingency fee agreements. The Movants seek Court approval to pay Plaintiffs' Counsel a fee equal to an aggregate of twenty-five percent (25%) of the Net Recovery in the Greenberg Action.

36.     I respectfully submit the fee requested in the Motion is reasonable in comparison

to the total net amount to be recovered for the benefit of the Stanford Investors. The twenty-five percent (25%) contingency fee was heavily negotiated between OSIC and Plaintiffs' Counsel, and is substantially below the typical market rate contingency fee percentage of 33% to 40% that most law firms would demand to handle cases of this complexity and magnitude. The Greenberg Action and the other third-party lawsuits are extraordinarily large and complex, involving voluminous records and electronic data and requiring many years of investigation, discovery and dispositive motions to get to trial.

37.     Moreover, the Greenberg Action and the other Stanford-related cases, many of which were filed over 9 years ago, involve significant financial outlay and risk by Plaintiffs' Counsel. Several investor class actions were dismissed following the Court's SLUSA ruling, and were appealed all the way to the United States Supreme Court. The Investor claims in the Greenberg Action were twice dismissed under the attorney-immunity doctrine and twice appealed to the Fifth Circuit. Plaintiffs' Counsel therefore has, for many years now, borne significant risk of loss through dispositive motions or at trial after years of work for no compensation, and an almost certain appeal following any victory at trial. A twenty-five percent (25%) contingency fee is reasonable given the time and effort required to litigate these case, their complexity and the risks involved.

38.     Since February 2009, Clark Hill Strasburger attorneys have dedicated thousands of hours to the prosecution of Stanford litigation on a contingent fee basis. This includes time spent investigating and understanding the background and history of the complex web of Stanford companies, the operations, financial transactions, interrelationship and dealings among the various Stanford entities and the defendants sued, the facts relating to the Ponzi scheme and how it was perpetrated through the various Stanford entities, and the involvement of the third-

10

party defendants in the foregoing cases with Stanford. Without a comprehensive investigation and understanding of this background and the requisite legal skill, it would not have been possible to formulate viable claims against the third-party defendants and prosecute them successfully.

39.     A review of the Court's docket in all of these cases reveals only a portion of the immense amount of work that Plaintiffs' Counsel have put into the prosecution of all of these lawsuits since 2009. As the Court is aware, the prosecution of lawsuits of this magnitude, complexity and novelty has required a tremendous amount of time and effort to investigate the facts, research the relevant legal issues, coordinate and strategize with counsel and clients regarding the handling of the cases, conduct discovery, prepare briefs and motions, negotiate settlements, and prepare cases for summary judgment and trial. Plaintiffs' Counsel have collectively spent thousands of hours since 2009 in their investigation and prosecution of the Greenberg Action. Because of the amount of time dedicated to those cases, Plaintiffs' Counsel were precluded from performing other legal work.

40.     Over the last 10 years, I and other attorneys and paralegals from Clark Hill Strasburger have spent thousands of hours in uncompensated time worth millions of dollars investigating and prosecuting the Stanford-related cases, including the Greenberg Action.

E.     **Time and Effort of Clark Hill Strasburger Related to Greenberg Action**

41.     The Motion seeks approval and payment of the agreed upon twenty-five-percent (25%) contingency fee to Plaintiffs' Counsel. Through my experience as a trial attorney in commercial litigation, I am familiar with the reasonable and necessary work required by attorneys at various experience levels to prosecute cases such as these. I am familiar with the customary and reasonable attorney's fees charged in the federal courts in Texas for cases of this type. Further, I am familiar with the work that has been done on these files. Based on my

11

personal knowledge of the work done in these cases, I have an opinion as to reasonable attorney's fees in this matter. In my opinion a 25% contingency fee is reasonable to prosecute the lawsuits, considering the factors identified in *Johnson v. Georgia Hwy Express, Inc.*, 448 F.2d 714, 717-19 (5th Cir. 1974). Those factors include:

(1)    the time and labor required;

(2)    the novelty and difficulty of the questions involved;

(3)    the skill required to perform the legal service properly;

(4)    the likelihood that acceptance of this particular employment and its time requirements would preclude the lawyers from accepting employment on other matters;

(5)    the fees customarily charged for similar services;

(6)    whether the fee is fixed or contingent;

(7)    time limitations imposed by the client or by the circumstances;

(8)    the amount of money involved and the results obtained;

(9)    the experience, reputation and abilities of the lawyers performing the services in question;

(10)    the "undesirability" of the case;

(11)    the nature and length of the professional relationship; and

(12)    awards in similar cases.

In my opinion, the attorneys' fees and paralegal fees incurred in connection with the referenced tasks performed are consistent with the fees customarily charged in federal court in Texas for similar legal services. The fees incurred are reasonable given the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal services properly. The fees incurred are reasonable given that the time required precluded Plaintiffs' Counsel from accepting other employment. The fees incurred were reasonable given Plaintiffs' Counsel's firms' experience, reputation and ability. The lawyers and

12

paralegals are qualified by training, experience, and reputation to charge the hourly rates charged in connection with the Greenberg Litigation. The fees incurred were reasonable given the amount involved and the results obtained.

42.     In determining reasonable attorney's fees in this case, I considered the $1,428,285 of time actually incurred by my firm. Based on my experience as a trial lawyer handling commercial litigation such as this, it is my opinion that attorney's fees of this magnitude are usual and customary for the handling of cases of this type in federal court in Texas, and the time incurred in prosecuting this case was both reasonable and necessary. Each member of Clark Hill Strasburger's legal team performed the tasks commensurate with his or her skill set and level of experience, and the hours each person expended were necessary and non-duplicative. The hourly rates that would typically have been charged for each member of Clark Hill Strasburger's legal team are similarly reasonable and reflect each person's level of experience. In my opinion, all of the hours spent by the attorneys and paralegals on this matter were reasonable and necessary. In my opinion, the rates that would typically have been charged by the attorneys and paralegals involved in this matter constitute normal, customary and reasonable charges for the services rendered.

43.     In connection with the Greenberg Action, members of the Clark Hill Strasburger legal team reviewed documents, interviewed witnesses, drafted pleadings, handled document production, reviewed transcripts of witnesses' testimony in criminal cases and administrative proceedings, and prepared witness files. They drafted initial disclosures, answered interrogatories, drafted and responded to requests for admission, drafted and responded to requests for production and drafted protective orders. They responded to a motion to compel and attended hearings. They also briefed legal issues such as attorney immunity, *in pari delicto*,

13

aiding and abetting and participating in breach of fiduciary duties, malpractice, damages and causation, indivisible injury, willful ignorance, standing, trial court jurisdiction, joint and several liability, proportionate responsibility, settlement credits, responsible third parties, the Foreign Corrupt Practices Act, the Investment Company Act, waiver of attorney-client privilege, and conflict of laws.

44.     They briefed expert witnesses, reviewed expert reports of Plaintiffs' experts Karyl Van Tassel, James Spindler, Charles Herring, Mike Koehler, Thomas Lemke and Defendants' experts Royal Furgeson, David Fuller, Richard Gordon, Stephen Halpert, Roberta Karmel, Patrick Kelley, Mark Perlow, Charles Stutts and Martin Weinstein.  They researched and briefed admissibility of exhibits, admissibility of expert testimony on various subjects, and permissible testimony of non-retained experts.

45.     They drafted the jury charge, pretrial order, voir dire, motions in limine and briefs in support.

46.     They took the depositions of Yolanda Suarez, Jane Bates, Rebecca Hamric, Mark Schnapp, Martin Weinstein and Royal Furgeson.  They participated in depositions of Ralph Janvey, Karyl Van Tassel, Charles Herring, David Fuller, Thomas Lemke, Carlos Loumiet, Michael Nunes, Patrick O'Brien, Mark Perlow, Deon Warner, and James Spindler.  They defended the deposition of Mike Koehler.

47.     They participated in strategy sessions with co-counsel and conferences with a jury consultant.  They drafted witness outlines for direct and cross examination for trial, *Daubert* motions to exclude or limit expert testimony, responses to motions to designate responsible third parties, a response to a motion for summary judgment, and responses to motions to strike testimony of Plaintiffs' experts.

14

48.     They participated in settlement negotiations and mediations.

49.     They prepared briefs for three appeals in the United States Court of Appeals for the Fifth Circuit.  They argued in the Fifth Circuit three times and assisted briefing in the United States Supreme Court.

50.     I have reviewed Clark Hill Strasburger time records, which record time on a daily basis, and identified the time attributable to the Greenberg Action.  As of September 17, 2019, Clark Hill Strasburger attorneys and paralegals had worked over 2,162 hours, worth over $1,428,285 at our standard hourly rates in the Greenberg Action.  I am familiar with the legal practice in federal courts in Texas and have knowledge of the usual and customary rates charged for legal services required in this and similar cases.  I am also familiar with the type and amount of legal services reasonably necessary and the nature of the work required to prosecute this type of matter.

51.     The proposed Greenberg Settlement is the direct result of many years of effort and thousands of hours of work by the Receiver, OSIC, Investor Plaintiffs and Plaintiffs' Counsel as described herein.  But for the efforts of these parties, and the efforts of myself and my law firm described herein, there would be no Greenberg Settlement, which will net the Receivership Estate and the Stanford Investors millions that they would not otherwise have received.

52.     In light of the time and expense Clark Hill Strasburger and the other Plaintiffs' Counsel have put into the overall effort to recover monies for the Stanford Receivership Estate and the Stanford Investors, all of which was necessary to the successful prosecution and resolution of the Greenberg Action, I respectfully submit that the twenty-five percent (25%) fee to be paid to Plaintiffs' Counsel for the settlement of the Greenberg Action is reasonable.

15

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _September 19_ , 2019

_JUDITH R. BLAKEWAY_

JUDITH R. BLAKEWAY

# EXHIBIT 5

## DECLARATION OF SCOTT D. POWERS

Pursuant to 28 U.S.C. § 1746, I, Scott D. Powers, hereby declare under penalty of perjury that I have personal knowledge of the following facts:

1.      My name is Scott D. Powers.   I am over the age of eighteen (18) and am competent to make this Declaration.

2.      I am admitted to practice law in the State of Texas, and am admitted to practice before various federal courts, including the U.S. Court of Appeals for the Fifth Circuit and the U.S. District Court for the Northern District of Texas.  I have been licensed to practice law since 2000, and I am a partner in the law firm of Baker Botts LLP ("Baker Botts").

3.      Baker Botts has served as lead counsel to Ralph S. Janvey, in his capacity as the Court-appointed Receiver in the Stanford Financial Group SEC receivership proceedings, since those proceedings were initiated in 2009 in the case styled *SEC v. Stanford International Bank, Ltd., et al.*, Civil Action No. 3:09-CV-0298-N.   In its role as lead counsel, Baker Botts has reviewed litigation-related expenses incurred by, and paid to, the Receiver, counsel for the Receiver, counsel for the Official Stanford Investors Committee, and expert witnesses and/or related firms, including expenses related to lawsuits such as *Janvey et al. v. Greenberg Traurig, LLP, et al.*, Civil Action No. 3:12-CV-04641-N-BQ (the "Greenberg Litigation").

4.      I have reviewed records of the Receivership related to the litigation fees and expenses incurred by the Receiver, counsel for the Receiver, counsel for the Official Stanford Investors Committee, and expert witnesses and/or related firms in the Greenberg Litigation, which are summarized in the following table:

|  | Amount | Notes |
|---|---|---|
|  | $722.67 | Baker Botts expenses – May 2018 (Invoice No. 1604292) |
|  | $523.94 | Baker Botts expenses – July 2018 (Invoice No. 1612370) |
|  | $1,901.17 | Baker Botts expenses – August 2018 (Invoice No. 1614704) |
|  | $464.14 | Baker Botts expenses – September 2018 (Invoice No. 1620841) |
|  | $69.86 | Baker Botts expenses – November 2018 (Invoice No. 1629635) |
|  | $3,835.70 | Baker Botts expenses – January 2019 (Invoice No. 1634792) |
|  | $1,781.43 | Baker Botts expenses – February 2019 (Invoice No. 1639855) |
|  | $(231.98) | Baker Botts expenses – April 2019 (Invoice No. 1650669) |
|  | $707.59 | Baker Botts expenses – June 2019 (Invoice No. 1656707) |
|  | $1,318.50 | Baker Botts expenses – July 2019 (Invoice No. 1661796) |
|  | $5,382.50 | BDO fees – November 2018 (Invoice No. 001065484) |
|  | $9,037.50 | BDO fees – December 2018 (Invoice No. 001162342) |
|  | $53,991.25 | BDO fees – January 2019 (Invoice No. 001087015) |
|  | $135,073.75 | BDO fees – February 2019 (Invoice No. 001094287) |
|  | $42,007.50 | BDO fees – March 2019 (Invoice No. 001133895) |
|  | $21,257.50 | BDO fees – April 2019 (Invoice No. 001134082) |
|  | $45,075.00 | BDO fees – May 2019 (Invoice No. 001163314) |
|  | $85,370.00 | BDO fees – June 2019 (Invoice No. 001172664) |
|  | $45,327.50 | BDO fees – July 2019 (Invoice No. 001181910) |
|  | $12,407.50 | BDO fees – August 2019 (Invoice No. 001196423) |

|  | Amount | Notes |
|---|---|---|
|  | $410.20 | Castillo Snyder expenses – November 2017 (Invoice No. 2636) |
|  | $6,884.16 | Castillo Snyder expenses – May-August 2018 (Invoice No. 2721) |
|  | $13,697.51 | Castillo Snyder expenses – September-December 2018 (Invoice No. 2719) |
|  | $12,421.71 | Castillo Snyder expenses – November 2018-February 2019 (Invoice No. 2757) |
|  | $9,467.54 | Castillo Snyder expenses – April 2019 (Invoice No. 2775) |
|  | $19,405.37 | Castillo Snyder expenses – May-June 2019 (Invoice No. 2784) |
|  | $4,003.46 | Castillo Snyder expenses – July-August 2019 (Invoice No. 2811) |
|  | $1,633.76 | Castillo Snyder expenses – October 2019 (Invoice No. 2811) |
|  | $1,786.40 | FTI fees – July 2018 (Invoice No. 7486619) |
|  | $7,001.60 | FTI fees – August 2018 (Invoice No. 7489034) |
|  | $4,373.60 | FTI fees – September 2018 (Invoice No. 7491856) |
|  | $2,226.00 | FTI fees – October 2018 (Invoice No. 7494649) |
|  | $352.80 | FTI fees – November 2018 (Invoice No. 7497727) |
|  | $5,479.60 | FTI fees – January 2019 (Invoice No. 7502675) |
|  | $2,994.80 | FTI fees – February 2019 (Invoice No. 7505311) |
|  | $1,308.00 | FTI fees – March 2019 (Invoice No. 7508909) |
|  | $34,006.80 | FTI fees – April 2019 (Invoice No. 7511619) |
|  | $40,104.80 | FTI fees – May 2019 (Invoice No. 7515448) |
|  | $479.60 | FTI fees – June 2019 (Invoice No. 7518546) |
|  | $27,650.00 | Herring & Panzer fees – October 2018 (Invoice No. 15979) |

|  | Amount | Notes |
|---|---|---|
|  | $3,710.00 | Herring & Panzer fees – November 2018 (Invoice No. 15999) |
|  | $14,595.00 | Herring & Panzer fees – December 2018 (Invoice No. 16018) |
|  | $76,930.00 | Herring & Panzer fees – January-March 2019 (Invoice No. 16015) |
|  | $144,935.00 | Herring & Panzer fees – April-June 2019 (Invoice No. 16104) |
|  | $80,191.74 | FCPA Professor (Koehler) fees and expenses – September 2018-June 2019 |
|  | $2,475.00 | FCPA Professor (Koehler) fees – July 2019 |
|  | $13,350.00 | Lemke fees – July-August 2018 |
|  | $17,097.00 | Lemke fees and expenses – October-November 2018 |
|  | $26,880.00 | Lemke fees – December 2018-January 2019 |
|  | $35,435.53 | Lemke fees and expenses – February-March 2019 |
|  | $25,935.29 | Lemke fees and expenses – April-May 2019 |
|  | $8,659.45 | Lemke fees and expenses – June 2019 |
|  | $5,700.00 | Lemke fees – July 2019 |
|  | $4,871.86 | Neligan expenses – July 2017-July 2018 (Invoice No. 24454) |
|  | $2,035.88 | Neligan expenses – August 2018 (Invoice No. 24457) |
|  | $2,413.17 | Neligan expenses – May-September 2018 (Invoice No. 24468) |
|  | $6,571.28 | Neligan expenses – October-November 2018 (Invoice No. 24494) |
|  | $1,192.14 | Neligan expenses – December 2018 (Invoice No. 24500) |
|  | $3,652.57 | Neligan expenses – January 2019 (Invoice No. 24506) |
|  | $9,968.19 | Neligan expenses – February 2019 (Invoice No. 24515) |

|  | Amount | Notes |
|---|---|---|
|  | $1,785.71 | Neligan expenses – March 2019 (Invoice No. 24518) |
|  | $1,129.76 | Neligan expenses – April 2019 (Invoice No. 24531) |
|  | $5,686.40 | Neligan expenses – May 2019 (Invoice No. 24543) |
|  | $2,703.25 | Neligan expenses – June 2019 (Invoice No. 24546) |
|  | $6,581.24 | Neligan expenses – July 2019 (Invoice No. 24562) |
|  | $2,432.20 | Neligan expenses – August 2019 (Invoice No. 24564) |
|  | $1,787.50 | Spindler fees – July 2018 |
|  | $5,037.50 | Spindler fees – September-October 2018 |
|  | $9,912.50 | Spindler fees – November-December 2018 |
|  | $20,637.50 | Spindler fees – January 2019 |
|  | $59,475.00 | Spindler fees – February 2019 |
|  | $4,550.00 | Spindler fees – March 2019 |
|  | $9,587.50 | Spindler fees – April 2019 |
|  | $57,687.50 | Spindler fees – May 2019 |
|  | $44,924.35 | Spindler fees and expenses – June 2019 |
|  | $6,175.00 | Spindler fees – July 2019 |
|  | $1,137.50 | Spindler fees – August 2019 |
|  | $252.00 | Clark Hill Straburger expenses – July 2018 |
|  | $28.00 | Clark Hill Straburger expenses – September 2018 |
|  | $757.00 | Clark Hill Straburger expenses – October 2018 |

|  | Amount | Notes |
|---|---|---|
|  | $802.97 | Clark Hill Straburger expenses – November 2018 |
|  | $1,053.92 | Clark Hill Straburger expenses – January 2019 |
|  | $4,023.45 | Clark Hill Straburger expenses – February 2019 |
|  | $12.00 | Clark Hill Straburger expenses – March 2019 |
|  | $1,165.63 | Clark Hill Straburger expenses – April 2019 |
|  | $2,425.74 | Clark Hill Straburger expenses – May 2019 |
|  | $10,099.74 | Clark Hill Straburger expenses – June 2019 |
|  | $4,896.30 | Clark Hill Straburger expenses – July 2019 |
| Total | $1,415,056.99 |  |

Executed on October 15, 2019.

Scott D. Powers

# EXHIBIT 6

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:09-cv-0298-N |
| STANFORD INTERNATIONAL BANK, LTD., et al., | § § § | |
| Defendants. | § § § | |

| | | |
|---|---|---|
| RALPH S. JANVEY, in his capacity as Court-appointed receiver for the Stanford Receivership Estate, the OFFICIAL STANFORD INVESTORS COMMITTEE; and PAM REED, Samuel Troice and MICHOACAN TRUST, individually and on behalf of a class of all others similarly situated, | § § § § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 3:12-cv-04641-N |
| GREENBERG TRAURIG, LLP, and GREENBERG TRAURIG, P.A., | § § § | |
| Defendants. | § § § | |

## ORDER APPROVING ATTORNEYS' FEES

Before the Court is the Expedited Request for Entry of Scheduling Order and Motion to

Approve Proposed Settlement with Greenberg Traurig, LLP and Greenberg Trauring, P.A.

(collectively, "Greenberg"), to Enter the Bar Order, to Enter the Final Judgment and Bar Order,

and for Plaintiffs' Attorneys' Fees and Expenses (the "Motion") of the Receiver and the Official

Stanford Investors Committee (the "Committee") (the Receiver and the Committee, collectively,

the "Plaintiffs").  *See SEC v. Stanford Int'l Bank, Ltd.,* No. 3:09-cv-0298-N (N.D. Tex.) (the

"SEC Action") [ECF No. _____]; and *Janvey v. Greenberg Traurig, LLP, et. al,* No. 3:13-cv-

0477-N-BG (N.D. Tex.) (the "Litigation") [ECF No. _____].[1]  This Order addresses the request

for approval of Plaintiffs' attorneys' fees contained within the Motion.  All relief requested in the

Motion other than the request for approval of attorneys' fees was addressed in the Court's Final

Judgment and Bar Order entered on the same date.

Having considered the Motion, the Declarations submitted in support of the Motion, the

arguments and the applicable legal authorities, the Court finds that the Plaintiffs' request for

approval of attorneys' fees contained within the Motion should be granted.  The Court finds that

the 25% contingency fee agreements between Plaintiffs and Plaintiffs' counsel is reasonable and

consistent with the percentage charged and approved by courts in other cases of this magnitude

and complexity.  The Stanford Receivership and the Litigation are extraordinarily complex and

time-consuming and have involved a great deal of risk and capital investment by Plaintiffs'

counsel as evidenced by the Declarations of Plaintiffs' counsel submitted in support of the

request for approval of their fees.  The Motion and the Declarations provide ample evidentiary

support for the award of the Plaintiffs' attorneys' fees set forth in this Order.

Trial courts can determine attorneys' fee awards in common fund cases such as this one

using different methods.  The common-fund doctrine applies when "a litigant or lawyer who

recovers a common fund for the benefit of persons other than himself or his client is entitled to a

---

[1]    Capitalized terms not defined herein shall have the meaning set forth in the Motion.

reasonable attorney's fee from the fund as a whole." *In re Harmon*, No. 10-33789, 2011 WL 1457236, at *7 (Bankr. S.D. Tex. Apr. 14, 2011) (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)).

One method for analyzing an appropriate award for Plaintiffs' attorneys' fees is the percentage method, under which the court awards fees based on a percentage of the common fund. *Union Asset Management Holding A.G. v. Dell, Inc.,* 669 F.3d 632, 642-43 (5th Cir. 2012). The Fifth Circuit is "amenable to [the percentage method's] use, so long as the *Johnson* framework is utilized to ensure that the fee award is reasonable." *Id*. at 643 (citing *Johnson v. Georgia Hwy. Express, Inc*, 488 F.2d 714 (5th Cir. 1974)). The *Johnson* factors include: (1) time and labor required; (2) novelty and difficulty of the issues; (3) required skill; (4) whether other employment is precluded; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations; (8) the amount involved and the results obtained; (9) the attorneys' experience, reputation and ability; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Johnson*, 488 F.2d at 717-19.

Thus, when considering fee awards in class action cases "district courts in [the Fifth] Circuit regularly use the percentage method blended with a *Johnson* reasonableness check." *Id*. (internal citations omitted); *see Schwartz v. TXU Corp.*, No. 3:02-CV-2243-K (lead case), 2005 WL 3148350, at *25 (N.D. Tex. Nov. 8, 2005) (collecting cases). While the Fifth Circuit has also permitted analysis of fee awards under the lodestar method, both the Fifth Circuit and district courts in the Northern District have recognized that the percentage method is the preferred method of many courts. *Dell*, 669 F.3d at 643; *Schwartz*, 2005 WL 3148350, at *25. In *Schwartz*, the court observed that the percentage method is "vastly superior to the lodestar

method for a variety of reasons, including the incentive for counsel to 'run up the bill' and the heavy burden that calculation under the lodestar method places upon the court." 2005 WL 3148350, at *25. The court also observed that, because it is calculated based on the number of attorney-hours spent on the case, the lodestar method deters early settlement of disputes. *Id*. Thus, there is a "strong consensus in favor of awarding attorneys' fees in common fund cases as a percentage of the recovery." *Id*. at *26.

While the Greenberg Settlement is not a class action settlement, because the settlement is structured as a settlement with the Receiver and the Committee, and as a bar order precluding other litigation against Greenberg arising from Stanford, this Court has analyzed the award of attorneys' fees to Plaintiffs' counsel under both the common fund and the *Johnson* approach. Whether analyzed under the common fund approach, the *Johnson* framework, or both, the 25% fee sought by Plaintiffs' counsel pursuant to their fee agreements is reasonable and is hereby approved by the Court.

Having reviewed the Declarations of Plaintiffs' counsel reflecting the investment of thousands of hours and millions of dollars of attorney time by Plaintiffs' counsel in the Stanford Receivership as a whole and in the Greenberg Litigation specifically, the Court finds that the proposed 25% fee for Plaintiffs' counsel is a reasonable percentage of the common fund (*i.e.* the $65 million settlement). "The vast majority of Texas federal courts and courts in this District have awarded fees of 25%-33% in securities class actions." *Schwartz*, 2005 WL 3148350, at *31 (collecting cases). "Indeed, courts throughout this Circuit regularly award fees of 25% and more often 30% or more of the total recovery under the percentage-of-the recovery method." *Id*.

The Court further finds that the fee is reasonable based upon the Court's analysis of the *Johnson* factors. A review of the *Johnson* factors that are discussed at length in the Motion and

supported by Plaintiffs' counsel's Declarations also demonstrates that the proposed 25% fee is reasonable and should be approved.  With respect to the time and labor required, Plaintiffs' counsel invested a tremendous amount of time and labor in this case as reflected in the Snyder, Buncher, and Blakeway Declarations filed in support of the Motion.  Castillo Snyder has invested thousands of hours, worth millions of dollars pursuing and litigating Stanford-related cases since 2009, and has invested over **2,600 hours** of time worth roughly **$1.75 million** at Castillo Snyder's applicable hourly rates specifically in the Greenberg Action, which is time incurred in the case since the settlement with Hunton & Williams was reached in August 2017.  *See* Snyder Decl., at ¶ 42.  Clark Hill Strasburger also has thousands of hours and millions of dollars of time invested in pursuing claims against third parties related to the Stanford Receivership, and **2,162 hours** of attorney and paralegal time worth **$1,428,285** specifically attributable to litigating the claims against Greenberg in the Greenberg Action.  *See* Blakeway Decl., at ¶ 50. Neligan has also invested thousands of hours and millions of dollars pursuing claims against third parties in the Stanford cases as a whole since 2009, and has invested over **2,400 hours** of attorney and paralegal time worth **$1,307,379.00** specifically attributable to litigating the claims against Greenberg in the Greenberg Action.  *See* Buncher Decl., at ¶ 18.

The issues presented in the Litigation were novel, difficult and complex.  Several of the complex legal and factual issues are outlined in the Motion.  Given the complexity of the factual and legal issues presented in this case, the preparation, prosecution and settlement of this case required significant skill and effort on the part of Plaintiffs' counsel.  Although participation in the Litigation did not necessarily preclude Plaintiffs' counsel from accepting other employment, the Declarations reveal that the sheer amount of time and resources involved in investigating, preparing, and prosecuting the Litigation, as reflected by the hours invested by Plaintiffs'

counsel, significantly reduced Plaintiffs' counsel's ability to devote time and effort to other matters.

The 25% fee requested is also substantially below the typical market rate contingency fee percentage of 33% to 40% that most law firms would demand to handle cases of this complexity and magnitude.  *See Schwartz*, 2005 WL 3148350, at \*31 (collecting cases and noting that 30% is standard fee in complex securities cases).  "Attorney fees awarded under the percentage method are often between 25% and 30% of the fund."  *Klein*, 705 F. Supp. 2d at 675 (citing Manual for Complex Litig. (Fourth) § 14.121 (2010)); *see, e.g., SEC v. Temme*, No. 4:11-cv-00655-ALM, at \*4-5 (E.D. Tex. November 21, 2012), ECF No. 162 (25% contingent fee for a $1,335,000 receivership settlement); *Billiteri v. Sec. Am., Inc.*, No. 3:09-cv-01568-F (lead case), 2011 WL 3585983, \*4-9 (N.D. Tex. 2011) (25% fee for a $80 million settlement); *Klein*, 705 F. Supp. 2d at 675-81 (30% fee for a $110 million settlement).

At the time of the Greenberg Settlement, Plaintiffs were subject to significant time limitation in the Litigation, as the Litigation was settled shortly after Plaintiffs responded to Greenberg's motion for summary judgment and motions to exclude Plaintiffs' expert witnesses, a few weeks before all pre-trial materials were due and two months before trial.  Given the breadth and scope of activity in the Litigation as described in the Declarations of Plaintiffs' counsel, including extensive document production and review, numerous fact and expert witness depositions, and the preparation of a brief in response to Greenberg's comprehensive motion for summary judgment supported by thousands of pages of exhibits and deposition transcripts, and preparation of responses to Greenberg's motions to exclude Plaintiffs' experts, Plaintiffs' counsel has been consistently under deadlines and time pressure in the Litigation.  As set forth in the Declarations, the Greenberg Litigation consumed nearly all of Plaintiffs' counsels' time over

ORDER APPROVING ATTORNEYS' FEES

the last two years.

The $65 million to be paid by Greenberg represents a substantial settlement and value to the Receivership Estate and the Stanford investors.  Thus, the amount involved and results obtained also support approval of the requested fee.

The Declarations of Plaintiffs' counsel further reflect that Plaintiffs' counsel have represented numerous receivers, bankruptcy trustees, and other parties in complex litigation matters related to equity receiverships and bankruptcy proceedings similar to the Stanford receivership proceeding.  Plaintiffs' counsel have been actively engaged in the Stanford proceeding since its inception.  Thus, the attorneys' experience, reputation and ability also support the fee award.  Given the complexity of the issues in the Litigation, the Greenberg Settlement, as well as other settlements achieved by Plaintiffs' counsel in the Stanford Receivership that have also been approved by this Court, are indicative of Plaintiffs' counsel's abilities to obtain favorable results in these proceedings.

The nature and length of Plaintiffs' counsel's professional relationship with the client also supports the fee award.  Plaintiffs' counsel have represented the Receiver, the Committee, and investor plaintiffs in numerous actions pending before the Court in connection with the Stanford Receivership since 2009, all on the same 25% contingency fee arrangement.

Finally, awards in similar cases, with which this Court is familiar, as well as those discussed in the *Schwarz* opinion, all support the fee award.  A 25% contingency fee has also previously been approved as reasonable by this Court in its order approving the Receiver's agreement with the Committee regarding the joint prosecution of fraudulent transfer and other claims by the Receiver and the Committee (the "OSIC-Receiver Agreement").  *See* SEC Action ECF No. 1267, p. 2 ("The Court finds that the fee arrangement set forth in the Agreement is

reasonable."); *see also* OSIC-Receiver Agreement SEC Action ECF No. 1208, Ex. A, p. 3 (providing a "contingency fee" of 25% of any Net Recovery in actions prosecuted by the Committee's designated professionals).

This Court has also approved a 25% contingency fee in connection with the Court's approval of the settlement of the other cases brought by the Receiver against the law firms Adams & Reese, Chadbourne, Hunton and Proskauer settlements, as well as the settlements with BDO, Kroll and Bowen Mclette & Britt ('BMB").   *See* Order approving attorneys' fees in connection with the Adams & Reese settlement [SEC Action ECF. No. 2231]; Order approving attorneys' fees in connection with the Chadbourne & Parke settlement [SEC Action ECF 2366]; Order approving attorneys' fees in connection with the Hunton settlement [SEC Action ECF No. 2702]; and Order approving attorneys' fees in connection with the Proskauer settlement [SEC Action ECF No. 2820]; *See also Official Stanford Inv'rs Comm. v. BDO USA, LLP*, No. 3:12-cv-01447-N-BG (N.D. Tex. Sept. 23, 2015) [ECF No. 80] (order approving 25% contingency fee in connection with BDO settlement); Order approving attorneys' fees for Kroll settlement [SEC Action, ECF No. 2364]; and Order approving attorneys' fees for BMB settlement [SEC Action, ECF No. 2567].

For these reasons, the Court finds the 25% contingency fee requested in connection with the Greenberg Settlement is well within the range of reasonableness for cases of the magnitude and complexity as the Greenberg Litigation.  The Court therefore hereby approves the award of Plaintiffs' attorneys' fees in the amount of $15,896,235.75 as requested in the Motion.  The Court also hereby authorizes the Receiver to reimburse the Receivership Estate from the settlement proceeds the total sum of $1,415,056.99 for expenses advanced by the Receiver in the Greenberg Litigation.

ORDER APPROVING ATTORNEYS' FEES

The Receiver is, therefore:

ORDERED to pay Plaintiffs' counsel attorneys' fees in the amount of $15,896,235.75 upon receipt of the Settlement Amount in accordance with the terms of the Greenberg Settlement Agreement.

FURTHER ORDERED that the Receiver shall reimburse expenses paid by the Receivership Estate from the settlement proceeds in the amount of $1,415,056.99.

Signed _____.

_____
David C. Godbey
United States District Judge

# EXHIBIT 7

## <u>DECLARATION OF EXAMINER JOHN J. LITTLE</u>

Pursuant to 28 U.S.C. § 1746, I, John J. Little, hereby declare under penalty of perjury that I have personal knowledge of the following facts:

1.      My name is John J. Little.  I am over the age of eighteen (18) and am competent to make this Declaration.

2.      I am admitted to practice law in the State of Texas, and am admitted to practice before various federal courts, including the United States Supreme Court, the U.S. Courts of Appeal for the Fifth and Eleventh Circuits, the United States Tax Court and the U.S. District Courts for the Northern, Eastern and Southern Districts of Texas.  I have been practicing law in Dallas, Texas since 1983, and have been a partner in the Dallas law firm Little Pedersen Fankhauser, LLP, since 1994.

3.      By Order dated April 20, 2009, I was appointed by Judge David C. Godbey (the "Court") to serve as the Examiner in the Stanford Financial Group receivership proceedings.  *SEC v. Stanford International Bank, Ltd., et al.*, Civil Action No. 3:09-CV-0298-N (the "SEC Action"), ECF No. 322 (the "Examiner Order").  Pursuant to the Examiner Order, I was directed to "convey to the Court such information as the Examiner, in his sole discretion, shall determine would be useful to the Court in considering the interests of the investors in any financial products, accounts, vehicles or

ventures sponsored, promoted or sold by any Defendants[1] in this action (the "Investors")."

4.      By Order dated August 10, 2010, the Court created the Official Stanford Investors Committee ("OSIC") to represent Stanford Investors in the Stanford Financial Receivership proceedings and all related matters.   SEC Action, ECF No. 1149 (the "OSIC Order").   The OSIC Order defined "Stanford Investors" as "the customers of SIBL who, as of February 16, 2009, had funds on deposit at SIBL and/or were holding certificates of deposit issued by SIBL."   OSIC Order at 2.   The OSIC Order conferred upon the OSIC "rights and responsibilities similar to those of a committee appointed to serve in a bankruptcy case."   The OSIC Order appointed me, as Examiner, to serve as a member of the OSIC and as its initial Chair.   I have served as the Chair of the OSIC since its formation and continue to so serve.

5.      The OSIC Order specifically authorized the OSIC to pursue claims on a contingency fee basis against (a) Stanford's pre-receivership professionals, and (b) the officers, directors and employees of any Stanford entity.[2]   OSIC Order at 8.

### A.      The Receiver and OSIC Retain Counsel

6.      In my capacity as Chair of the OSIC, I negotiated and executed an engagement agreement dated November 12, 2012, pursuant to which the OSIC retained

---

[1]      The Defendants include Stanford International Bank, Ltd., Stanford Group Company, Stanford Capital Management, LLC, Robert Allen Stanford, James M. Davis, Laura Pendergest-Holt, Stanford Financial Group, The Stanford Financial Group Bldg. Inc.  The Receivership encompasses Defendants and all entities they own or control.

[2]      This authority was limited in that the OSIC could not pursue claims that were duplicative of claims already being prosecuted by the Receiver.  OSIC Order at 8.

Castillo Snyder, P.C. ("CS"), Strasburger & Price, LLP ("SP")[3], Neligan Foley, LLP ("NF"), and Butzel Long, P.C. ("BL") to represent the OSIC in connection with the prosecution of claims against Greenberg Traurig, LLP ("Greenberg"), Hunton & Williams, LLP ("Hunton") and Yolanda Suarez ("Suarez") (the "Greenberg Claims"). The November 12, 2012 engagement agreement contemplated that the four law firms would be compensated for their services through a contingent fee of twenty-five percent (25%) of the Net Recovery realized in respect of the Greenberg Claims.

7.     The Receiver similarly executed an engagement letter with NF, dated as of June 21, 2012, to represent the Receiver with respect to the Greenberg Claims; that engagement letter also contemplated the payment of a contingent fee of twenty-five (25%) of the Net Recovery realized in respect of the Greenberg Claims.

8.     In my capacity as Chair of the OSIC, I negotiated and executed a Revised Fee Agreement with CS, SP, NF and BL with respect to the Greenberg Claims dated as of April 10, 2014.  The April 10, 2014 Revised Fee Agreement provided that the four law firms would be compensated for their services through a contingent fee of twenty-five percent (25%) of the Net Recovery realized in respect of the Greenberg Claims.  In connection with the execution of the April 10, 2014 Revised Fee Agreement, the four law firms entered into an agreement that addressed how those firms would divide the work to be done in prosecuting the Greenberg Claims and any fees paid with respect to the Greenberg Claims.

---

[3]     Neligan Foley is now known as Neligan.  As of April 11, 2018, Strasburger & Price became known as Clark Hill Strasbuger.

**DECLARATION OF EXAMINER JOHN J. LITTLE**                                    3

9.      In my capacity as Chair of the OSIC, and together with the Receiver, I negotiated and executed a Revised Fee Agreement between the Receiver and CS, SP, and NF, dated as of October 1, 2018.  The October 1, 2018 Revised Fee Agreement was executed to reflect that the OSIC was no longer going to be a named plaintiff in the action brought by the Receiver and OSIC with respect to the Greenberg Claims.  It was also executed to reflect a reduced role for BL in the prosecution of the Greenberg Claims.

10.     The October 1, 2018 Revised Fee Agreement, like all of the preceding fee agreements, contemplated that the law firms (CS, SP, NF and BL[4]) would be compensated for their services through a contingent fee of twenty-five percent (25%) of the Net Recovery realized in respect of the prosecution of the Greenberg Claims.  The "Net Recovery" was defined as the "Recovery (as defined below)[5] in connection with the Greenberg Claims, after deducting allowable expenses and disbursements."

## B.      The Greenberg Action

11.     On November 15, 2012, the Receiver and OSIC[6] filed Original Complaint in Cause No. 3:12-cv-4641 (the "Greenberg Action"), ECF No. 1.    The Complaint

---

[4]      Pursuant to the October 1, 2018 Revised Fee Agreement, BL retained an interest in any fees paid with respect to the Greenberg Claims but was no longer responsible for the on-going prosecution of the Greenberg Claims.

[5]      "Recovery" was defined as "anything of value directly or indirectly received by the [Stanford Receivership Estate] as a result of the pursuit of the Greenberg Claims, including but not limited to the proceeds of any settlement or other disposition or a direct monetary payment or award."

[6]      The Original Complaint was also filed by Samuel Troice, Michoacan Trust, Sandra Dorrell and Pam Reed (who was substituted for Sandra Dorrell), on behalf of themselves and a putative class.  Samuel Troice, Michoacan Trust, Sandra Dorrell and Pam Reed, and the putative class they sought to represent, are referred to herein collectively as the "Investor Plaintiffs."

DECLARATION OF EXAMINER JOHN J. LITTLE                                                    4

asserted claims against Greenberg for negligence, aiding and abetting breaches of fiduciary duties, breaches of fiduciary duties, fraudulent transfer/unjust enrichment, aiding and abetting fraudulent transfers, negligent retention, aiding and abetting violations of the Texas Securities Act ("TSA"), aiding and abetting a fraudulent scheme, and civil conspiracy.

12.     The Defendants filed separate motions to dismiss the claims asserted by the Receiver and OSIC and the claims brought by the Investor Plaintiffs.  Greenberg Action, ECF Nos. 27, 29, 56, 90. Troice Action in December 2009.  [Troice Action, ECF Nos. 31, 36, 44].

13.     By Orders dated December 17, 2014, Greenberg Action, ECF No. 114, and February 4, 2015, Greenberg Action, ECF No. 123, the Court granted in part and denied in part Greenberg's motions to dismiss the Complaint.  The Court dismissed with prejudice the Receiver's and OSIC's claims for aiding and abetting fraudulent transfers, the Investor Plaintiffs' TSA claims for aiding and abetting and civil conspiracy for the sale of unregistered securities and the sale of securities by an unregistered dealer arising from sales taking place prior to February 1, 2008, and the Investor Plaintiffs' TSA claims for aiding and abetting and civil conspiracy for the sale of securities through untruth or omission arising from sales taking place prior to February 1, 2006.  The Court also dismissed without prejudice the Receiver and OSIC's claims for breach of fiduciary duty. With respect to all other claims asserted against Greenberg, the Court denied the motions to dismiss.

14.     The Court issued its Class Certification Scheduling Order on August 11, 2015.  Greenberg Action,. ECF No. 142.  The parties then engaged in six months of class certification discovery and briefing, and filed all of their class certification evidence and briefing with the Court on February 26, 2016.  Greenberg Action, ECF Nos. 174-184.

15.     The Court granted Greenberg's motion for judgment on the pleadings, Greenberg Action, ECF No. 203, as to the claims asserted by the Investor Plaintiffs and dismissed those claims based upon the attorney immunity doctrine.[7]  Greenberg Action, ECF No. 248.  The Investor Plaintiffs appealed that ruling to the Fifth Circuit.

16.     On March 16, 2018, the Court entered an amended Scheduling Order pursuant to which trial was set for October 28, 2019, fact discovery was to be conducted between June 1, 2018 and May 30, 2019, and expert discovery was to be conducted between March 1 and July 1, 2019.  Greenberg Action, ECF No. 262.

17.     The Receiver, OSIC and the Investor Plaintiffs filed their Amended Complaint on October 12, 2018.  Greenberg Action, ECF No. 278.  Shortly thereafter, on November 19, 2018, the Receiver and the Investor Plaintiffs filed their Second Amended Complaint.  Greenberg Action, ECF No. 287.  The Second Amended Complaint asserted "Receiver Claims" against Greenberg for (i) aiding, abetting, or participation in breaches of fiduciary duties, (ii) breaches of fiduciary duties, (iii) fraudulent transfer/unjust enrichment, and (iv) negligent retention/negligent supervision.  It asserted "Investor Class Causes of Action" against Greenberg for (i) aiding and abetting violations of the TSA,

---

[7]     The Court's decision to grant Greenberg's motion for judgment on the pleadings rendered the Investor Plaintiffs' motion for class certification moot.

(ii) participation in/aiding and abetting breach of fiduciary duty, (iii) aiding and abetting/participation in a fraudulent scheme, (iv) civil conspiracy, and (v) respondeat superior.

18.     The Second Amended Complaint omitted OSIC from the list of parties, and brought no claims on behalf of OSIC.  Pursuant to the October 1, 2018 Revised Fee Agreement, the Second Amended Complaint was brought by CS, NF, and SP (collectively, "Plaintiffs' Counsel").

19.     Greenberg filed a motion for judgment on the pleadings as to the Receiver Claims on December 4, 2018.  Greenberg Action, ECF Nos. 292, 293.  The Receiver filed his opposition to that motion on December 17, 2018.  Greenberg Action, ECF No. 297.

20.     Pursuant to the Court's Scheduling Order dated March 16, 2018, discovery in the Greenberg Action has been extensive and exhaustive.  Plaintiffs' Counsel took the depositions of sixteen (16) fact witnesses (Yolanda Suarez, Carlos Loumiet, Tony Nunes, Patrick O'Brien, Jane Bates, Rebecca Hamric, Deon Warner, Mark Schnapp, Henry Amadio, Bowman Brown, Burt Bruton, Jennifer Demberg Cohen, Carl Fornaris, Fernando Margarit, Bonnie Moncada, and Ronald Rosengarten), and nine (9) of Greenberg's expert witnesses (Charles Stutts, Mark Perlow, Martin Weinstein, Royal Furgeson, David Fuller, Richard Gordon, Stephen Halpert, Roberta Karmel, and Patrick Kelley).  Plaintiffs' Counsel also defended the deposition of the Receiver and of five (5) expert witnesses (Karyl Van Tassel, Charles Herring, Thomas Lemke, James Spindler, and Mike Koehler).

21.     On May 9, 2019, the Fifth Circuit affirmed this Court's order granting Greenberg's motion for judgment on the pleadings, based upon the attorney immunity doctrine, as to the claims asserted by the Investor Plaintiffs.  *Troice v. Greenberg Traurig, LLP*, 921 F.3d 501 (5th Cir. 2019).  The dismissal of the claims asserted by the Investor Plaintiffs is now final.

22.     Greenberg filed its motion for summary judgment as to the Receiver Claims on July 22, 2019.  Greenberg Action, ECF Nos. 340, 341, and 342.  The Receiver filed his opposition to that motion on August 21, 2019.  Greenberg Action, ECF Nos. 345, 346.

23.     Greenberg and the Receiver reached a settlement in principal two days after the Receiver filed his response to Greenberg's motion for summary judgment (and sixty days prior to trial).

### C.     Settlements with Hunton and Suarez

24.     The Receiver, OSIC and the Investor Plaintiffs entered into a settlement agreement with Hunton dated as of August 16, 2017.  That settlement agreement was approved by the Court through the entry of a Final Judgment and Bar Order on March 26, 2018. Greenberg Action, ECF No. 265.

25.     The Receiver entered into a settlement agreement with Suarez on September 12, 2019.  The Receiver's claims against Suarez will be dismissed with prejudice once certain transfers required by the settlement agreement have been concluded.

### D.     Examiner Involvement in the Greenberg Action

26.     In my capacity as the OSIC Chair, I have worked closely with the Receiver, his counsel, Plaintiffs' counsel, and putative class counsel to coordinate the prosecution of claims against third parties for the benefit of the Receivership Estate and Stanford Investors, including the claims asserted in the Greenberg Action.

27.     In that regard, I have been involved, as Chair of OSIC, in the OSIC's prosecution of the Receiver Claims in the Greenberg Action, and have conferred regularly with Plaintiffs' Counsel concerning every aspect of the Greenberg Action.

28.     Plaintiffs' Counsel have spent several years and thousands of hours investigating and pursuing the claims asserted in the Greenberg Action.  The materials reviewed by OSIC's counsel included, among other materials, thousands of pages of SEC and other investigation materials, thousands of pages of deposition and trial testimony from the prosecution of Allen Stanford and others, thousands of emails of Stanford and Greenberg personnel, and hundreds of boxes of materials, including Greenberg materials and files, that the Receiver secured from Stanford's various offices and law firms.

29.     For the last year, Plaintiffs' Counsel have worked full time, or nearly so, to prepare the Greenberg Action for trial.  That work has included, among other things: (a) propounding written discovery to Greenberg and responding to written discovery from Greenberg; (b) working with experts to prepare expert reports; (c) preparing and presenting six (6) witnesses for depositions; (d) preparing for and taking the depositions of sixteen (16) fact witnesses and nine (9) expert witnesses; and (e) responding to Greenberg's motions for judgment on the pleadings and for summary judgment.

### E.      Settlement Efforts

30.      Three separate mediations were conducted with Greenberg.  The first occurred in 2012, prior to the filing of the Original Complaint, with McGowan Dispute Resolution in Houston, Texas.[8]  As required by the Court's Scheduling Order dated March 16, 2018, second mediation was held on May 21, 2018 with Phillips ADR in Corona del Mar, California.  Greenberg Action, ECF No. 262.  A third mediation was held on April 24, 2019 with Judge Alice Oliver-Parrot in Dallas, Texas.  I attended and participated in the second and third mediation sessions as the representative of OSIC.

31.      The parties were unable to reach any agreement at these three mediation sessions.  Negotiations continued following the mediation sessions and an agreement was finally reached in August 2019.

32.      The parties fully executed the Greenberg Settlement Agreement in October 2019.  The Greenberg Settlement Agreement calls for Greenberg to pay $65 million to settle the Greenberg Action.

### F.      Examiner's Opinion Concerning the Greenberg Settlement and The Payment of Attorneys' Fees

33.      It is my opinion that the settlement the Receiver and OSIC reached with Greenberg is fair and reasonable, in the best interests of the Stanford Receivership Estate and the Stanford Investors, and should be approved by the Court.  My opinion is based upon my involvement in the investigation and prosecution of the claims asserted in the Greenberg Actions, the risks and uncertainty inherent in any jury trial, and the length of

---

[8]      I was unable to attend the mediation held in Houston in 2012.

time it would likely take to resolve the appeals that would inevitably follow any jury verdict and judgment.

34.    Any proceeds recovered from the Greenberg Action will be distributed through the Receiver's existing (and already approved and operating) mechanism for identifying and approving claims and making distributions.  Using the Receiver's existing process will be far more efficient, and likely result in larger distributions to Stanford Investors.

35.    As noted above, the Receiver entered into a Revised Fee Agreement with Plaintiffs' Counsel that provided for the payment of a contingent fee of twenty-five percent (25%) of the Net Recovery realized in respect of the Greenberg Claims.

36.    The Court has previously approved a contingent fee arrangement between OSIC and its counsel that provides for the payment of a 25% contingent fee on net recoveries from certain lawsuits prosecuted by OSIC.[9]  SEC Action, ECF No. 1267.  The Court has also approved 25% contingent fees in connection with the Hunton settlement and in settlements of other Stanford-related lawsuits prosecuted by the OSIC.  Greenberg Action, ECF No. 264 (approving attorneys' fees in Hunton settlement); *see also* SEC Action, ECF No. 2820 (approving attorneys' fees in Proskauer settlement); SEC Action,. ECF No. 2364, (approving fees in Kroll settlement); SEC Action, ECF No. 2366 (approving fees in Chadbourne settlement); *Official Stanford Investor Committee v. BDO*

---

[9]    The referenced Order addressed the OSIC's prosecution of certain fraudulent transfer and unjust enrichment actions.

*USA, LLP*, Civil Action No. 3:12-cv-01447-N, ECF No. 80 (N.D. Tex. Sept. 23, 2015) (approving fees in BDO settlement).

37.   The Revised Fee Agreement entered between the Receiver and Plaintiffs' Counsel was modeled after the contingency fee agreement already approved by the Court in the SEC Action.  SEC Action, ECF No. 1267.

38.   For the same reasons the Court previously found the twenty-five percent (25%) contingent fee agreement between the OSIC and its counsel to be reasonable, *see id.*, p. 2, the Court should find the twenty-five percent (25%) contingent fee applicable to the settlement with Greenberg to be reasonable and approve it for payment.

39.   It is my opinion that the attorneys' fee requested is reasonable in comparison to the total net amount to be recovered for the benefit of the Stanford Investors.  The twenty-five percent (25%) contingent fee was heavily negotiated between and among the Receiver, OSIC and Plaintiffs' Counsel, and is substantially below the typical market rate contingency fee percentage of 33% to 40% that most law firms would demand to handle cases of this complexity and magnitude.

40.   I respectfully submit that an award of attorneys' fees equal to twenty-five percent (25%) of the Net Recovery from the settlement with Greenberg is reasonable, necessary and appropriate considering the significant time, effort, and resources which Plaintiffs' Counsel have invested in investigating the Stanford fraud, prosecuting and resolving the Greenberg Action, and prosecuting the other Stanford-related litigation.

Executed on October 15, 2019.

_____
John J. Little

DECLARATION OF EXAMINER JOHN J. LITTLE                                   12